# Exhibit A

Pages 1 - 29

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE EDWARD M. CHEN

ASETEK DANMARK A/S,         )
                      )
        Plaintiff,     )
                      )
  vs.                 ) No. C 19-0410 EMC
                      )
COOLIT SYSTEMS, INC.,     )
                      ) San Francisco, California
        Defendant.    ) Thursday
                      ) November 21, 2019
_____) 1:30 p.m.

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

For Plaintiff:        FINNEGAN HENDERSON LLP
                    3300 Hillview Avenue
                    2nd Floor
                    Palo Alto, California 9430
           BY:  **ARPITA BHATTACHARYYA, ESQ.**
                **ROBERT FRANCIS MCCAULEY, ESQ.**

For Defendant:        COOLEY LLP
                    3175 Hanover Street
                    Palo Alto, California 94304
           BY:  **REUBEN HO-YEN CHEN, ESQ.**
                **DEEPA KANNAPPAN, ESQ.**
                **LAM KHANH NGUYEN, ESQ.**

*Reported By:*   *Debra L. Pas, CSR 11916, CRR, RMR, RPR*
                *Official Reporter - US District Court*
                *Computerized Transcription By Eclipse*

1              **P R O C E E D I N G S**

2   **November 21, 2019**                                    **2:13 p.m.**

3              THE CLERK:  Calling Civil 19-410, Asetek Danmark as

4   versus CoolIT Systems, Incorporated.

5        Counsel, please approach the podium and state your

6   appearances for the record.

7              MS. BHATTACHARYYA:  Good afternoon, Your Honor.

8   Arpita Bhattacharyya for plaintiff Asetek Danmark A/S.

9        And with me is Mr. Robert McCauley also for Asetek.

10             THE COURT:  Great.  Welcome.  Thank you.

11             MR. CHEN:  Good afternoon, Your Honor.  Reuben Chen

12  for defendant and counter-claimant CoolIT from Cooly, LLP.

13        And with me are my colleagues Deepa Kannappan and Lam

14  Nguyen.

15             THE COURT:  Welcome, everyone.

16        Let's talk about the estoppel on the 330 and CoolIT's 330

17  first.

18        Is there pending a case before the Federal Circuit on this

19  question about scope of estoppel, whether it applies to

20  non-petitioned ground or earlier instituted?

21             MR. CHEN:  I'm not aware of any case, Your Honor.

22             MS. BHATTACHARYYA:  I'm not aware of any case either.

23             THE COURT:  So you're not expecting any late-breaking

24  story in this area?

25             MR. CHEN:  Unfortunately, no.

1      **THE COURT:**  Well, I understand that there is some

2    division here on the question about the scope of estoppel,

3    including post *Shaw*.

4      But I guess the question -- maybe it's kind of a policy

5    question -- is why shouldn't estoppel apply to grounds that

6    were available or reasonably available, but not asserted?

7      **MS. BHATTACHARYYA:**  Your Honor, Asetek is only

8    applying the case law from this district.  Specifically, the

9    *Finjan* case, which held that non-petitioned grounds are not

10   estopped.

11     And the *Finjan* case, along with the *Intellectual Ventures*

12   case from Delaware and the *Phillips* case from Massachusetts,

13   they base their estoppel decision on the Federal Circuit's

14   decision in *Shaw Industries*, which held that the IPR begins

15   with the institution.

16     So if a ground was not petitioned, it could not reasonably

17   have been raised during the *inter partes* review.  That is,

18   after institution.

19     So that's the basis for those Court's decision that

20   estoppel shouldn't extend to non-petitioned grounds.

21     **THE COURT:**  So it's the word "during," that is the

22   key.

23     **MS. BHATTACHARYYA:**  It's the word "during," yes.

24     And, Your Honor, the Supreme Court's *SAS Institute*

25   decision did not overrule *Shaw* on that point, that *inter partes*

 1   review begins with the institution.

 2          THE COURT:  And yet numerous Courts have said,

 3   notwithstanding *Shaw*, that the estoppel applies to

 4   non-petitioned grounds, and one could see at least what the

 5   policy basis would be is to make sure that, you know, they

 6   don't do things piecemeal.  They're not sort of gaming the

 7   system, that we get everything out.

 8      So what do we do with that?

 9          MS. BHATTACHARYYA:  Your Honor, I -- I'm not going to

10   argue with Your Honor on the policy questions.  It does make

11   sense to estop non-petitioned grounds.

12      As I had just mentioned before, Asetek is following the

13   case law from this district.  And if Your Honor believes that

14   *Finjan* is still good law notwithstanding the *SAS Institute*

15   decision from the Supreme Court, then Your Honor should deny

16   CoolIT's motion.

17      But if Your Honor decides that the *Finjan* case is not good

18   law, then the grounds that CoolIT moves to strike should be

19   stricken.

20          MR. CHEN:  Yes, Your Honor.  So we obviously agree

21   that for policy reasons, including judicial efficiency and

22   fairness, that there should be estoppel here.

23      Now, point of clarification.  Post *SAS* there have been no

24   District Courts or Federal Circuit ruling that comes out in

25   favor of the prior minority view that is the decision in

1    *Finjan*, Your Honor.

2         And we think that the *SAS* case, Your Honor clarified a

3    point about the *Shaw* decision that was actually not part of the

4    *Shaw* holding.   *Shaw* only dealt with petitioned non-instituted

5    grounds.

6         *Shaw* specifically did not confront the issue of

7    non-petitioned grounds and the *SAS* decision essentially focused

8    on the petition as setting forth the scope of the IPR.   And we

9    think that -- that that is correct here; that the petition

10   should govern the scope of IPR estoppel.

11        So with respect to prior art references that were raised

12   or reasonably could have been raised prior to the filing of the

13   IPR petition, there should be estoppel.

14             **THE COURT:**  Well, and even prior to *SAS* the number of

15   District Courts post *Shaw* found estoppel applicable to

16   non-petitioned grounds.

17             **MR. CHEN:**  That is correct, Your Honor.

18             **THE COURT:**  And that position is strengthened because

19   of -- sort of by implication or by the sort of general take of

20   the Supreme Court with respect to the significance of the

21   petition?

22             **MR. CHEN:**  That's correct, Your Honor.  Yes.  It was

23   the majority of district courts post *Shaw* that found that there

24   should be broader estoppel applied to IPRs, and then post *SAS*

25   there have been no district court decisions that have adopted

1    the prior minority view.

2          THE COURT:  Are there cases post -- district court

3    cases post *SAS* in the last year that looked at this question

4    specifically?

5          MR. CHEN:  Yes.  Yes, Your Honor.  Those cases we've

6    cited in our brief, and are *Trustees of Columbia University*

7    *versus Symantec* 390 F. Supp. 3d 665, Page 679, Eastern District

8    of Virginia, July 2nd, 2019.

9          There is also a *SiOnyx versus Hamamatsu Photonics* case,

10   330 F. Supp. 3d 574 at Page 602, District of Massachusetts,

11   2018.

12         And there is also a Central District of California case,

13   which is California Institute of Technology versus BroadCom,

14   case number C.V. 16-3714, 2018 Westlaw 7456042, Central

15   District of California, December 28, 2018.

16         THE COURT:  Are you aware of any cases to the

17   contrary?

18         MS. BHATTACHARYYA:  No, your Honor.  I agree with

19   CoolIT's' counsel, that there has been a few cases following

20   the *SAS Institute* decision that have extended estoppel to

21   non-petitioned grounds.

22         THE COURT:  All right.  Thank you.

23         Well, let's talk about the merits.  And assuming -- I

24   don't know if there is a question raised or not about the sort

25   of diligence, the skilled search or conducting a diligent

1   search reasonably would have expected to discover standard.   I

2   mean, it seems non-controversial.

3       And in this case there was actual knowledge.   There are

4   three prior arts in here, Hamilton, Chang and Anderson?

5             MS. BHATTACHARYYA:   Yes, Your Honor.

6             THE COURT:   And Asetek had actual knowledge of

7   Hamilton?

8             MS. BHATTACHARYYA:   Yes, Your Honor.

9             THE COURT:   And as to the -- why shouldn't -- what

10  about the other?

11            MS. BHATTACHARYYA:   Your Honor, Asetek is not

12  contending that those references would not have been found

13  through a diligent search.

14      Asetek concedes that if a diligent search had been

15  conducted, those references should have been found.

16            THE COURT:   All right.   You have no comments on that?

17            MR. CHEN:   Not really.   We obviously submitted a

18  declaration from a skilled searcher and it's -- it's an

19  unrebutted declaration at this point.

20            THE COURT:   All right.   Well, let's talk about the

21  other side, the '764.   There are three references here, right,

22  Ryu, Yu and Lin?

23            MR. CHEN:   Correct, Your Honor.

24            THE COURT:   And --

25            MR. CHEN:   Actually, four references, excuse me.

1  There's Ryu, Lin, Yu and also a Shin reference.

2       **THE COURT:**  All right, Shin.

3    So things are a little bit more complicated because these

4  are foreign untranslated patents --

5       **MR. CHEN:**  Correct.

6       **THE COURT:**  And I know there is some

7  back-and-forth about which databases are typically used, could

8  have been used or were used to find these, but why don't you

9  respond to the -- Dr. Basi?  Is that right?

10       **MR. CHEN:**  Yes, your Honor.

11       **MS. BHATTACHARYYA:**  Yes, Your Honor.

12       **THE COURT:**  Saying that using, is it Questel database

13  and using the relevant terms and information taken from the

14  '764, he is able to identify the Ryu, Yu and Lin patents.  And

15  then Questel is a well-known database and you've got -- now

16  you've got machine translation to take care of some of the

17  language issues.

18    What's wrong with that?

19       **MR. CHEN:**  Right.  So there are actually several

20  things wrong with that.

21    So first of all, Dr. Basi's declaration was only submitted

22  in reply and not as part of Asetek's opening brief.  We think

23  it's improper that that was submitted in reply.

24    But even considering Dr. Basi's declaration, we think it

25  does not satisfy Asetek's burden for three reasons.

1     First of all, Dr. Basi fails to opine that the four

2  foreign prior art references could have been found in 2012, or

3  at least prior to the filing of the *inter partes*

4  reexaminations.

5     He basically does not include any date associated with his

6  opinions, including whether or not these machine translations

7  were available back in 2012.

8     The second thing --

9     **THE COURT:**  Is there some indication to the contrary

10  that would suggest that things were different in 2012 compared

11  to --

12     **MR. CHEN:**  I think it's unclear, Your Honor, but what

13  I can say is that CoolIT performed a diligent search and the

14  attorney that was in charge of *inter partes* reexamination hired

15  a reputable search firm, TPR, to conduct that diligent search.

16  The diligent search standard doesn't require a scorch the earth

17  search.  It's diligence.  And that does not mean that every

18  single database needs to be searched.

19     And here the SAC database that the Patent Office uses was,

20  in fact, searched.  And other databases, including the Thomson

21  MicroPatent database, which includes Japanese and WIPO patent

22  documents was, in fact, searched, but those four prior art

23  references were not returned for the '764 patent.

24     The Shin reference was returned for a separate -- for a

25  separate patent.  And we're not asserting that grounds based on

1    Shin with respect to Claims 1 to 18 should be allowed to move

2    forward in the case.

3            **THE COURT:**  Not asserting that.

4            **MR. CHEN:**  That's correct.  Solely based on Shin and

5    the other references that CoolIT was aware of or reasonably

6    could have been aware of prior to the *inter partes'*

7    re-examination filing.

8            **THE COURT:**  Well, I'm wondering whether because

9    the -- Dr. Basi raised -- his declaration was not asserted

10   until the reply, that in the interests of completion,

11   thoroughness and fairness, that your client be given a chance

12   to respond to specifically the question of whether or not this

13   is something that you would expect within the bounds of a

14   reasonable diligent search.

15       Because he says that Questel is well known and it provides

16   text coverage.  It does not -- true, it does not say what was

17   the state in 2012, which may be an issue.

18       But you haven't had a chance to counter that to say well,

19   it's not so standard.  It's not so available, or in 2012 we

20   didn't have machine translation and, therefore, the search

21   would not have easily yielded these three prior sources.

22       So at the risk of prolonging things, yet this is kind of

23   important that we resolve these things earlier than later, so

24   is there -- what are your thoughts about --

25           **MR. CHEN:**  So my thoughts on that are, of course, if

```
 1    Your Honor would like that, we're amenable to that, but we
 2    think that plaintiff has the burden and has failed to satisfy
 3    their burden here.  And, in particular, I think this actually
 4    cuts to the chase.
 5        The statutory language -- we think that Asetek has failed
 6    to satisfy their burden under the statutory language, the
 7    express language of the statute as further confirmed by the
 8    legislative history.  And in particular, if we look at
 9    Section 315(c), pre-AIA, and we look at the legislative
10    history, including the Senate record at S14720 and H11805, and
11    these are cited in our reply -- sorry, these are cited in our
12    briefs.  I also have copies of them with me.  If I may approach
13    and hand these?
14        (Whereupon documents were tendered to the Court.)
15            THE COURT:  You are looking at the language of the
16    pre-AIA?
17            MR. CHEN:  Right.  Because this applies to the
18    inter partes reexamination, which is what was filed by CoolIT.
19        It's very clear, the statutory language has the statement
20    that there should be estoppel:
21            "...on any claim finally determined to be valid
22            and patentable on any ground which the third-party
23            requester raised or could have raised during the
24            inter partes reexamination proceedings."
25        And then it goes on to say:
```

1          "This subsection does not prevent the assertion

2      of invalidity based on newly discovered prior art

3      unavailable to the third-party requester and the

4      Patent and Trademark Office at the time of the

5      *inter partes* reexamination proceeding."

6      And then when we look at the Congressional record, both

7  the Senate record at S14720 and the House record at H11805 make

8  it very clear that:

9          "There is estoppel with respect to any ground

10     that the third-party requester raised or could have

11     raised during the *inter partes* reexamination.

12     However, the third-party requester may assert

13     invalidity based on newly discovered prior art

14     unavailable at the time of the reexamination."

15     And then both the Senate and House go on to clarify what

16  the word "unavailable" means.

17          "Prior art was unavailable at the time of the

18     *inter partes* reexamination if it was not known to the

19     individuals who are involved in the reexamination

20     proceeding on behalf of the third-party requester and

21     the USPTO."

22     Here, the PTO, without a doubt, did not have the four

23  prior art references until, of course, CoolIT made it aware of

24  the Shin reference and made it aware of the Ryu reference,

25  trying to get those references in after the *inter partes*

 1   reexamination was already granted.

 2       And here plaintiff has not satisfied its burden of showing

 3   that CoolIT did not -- sorry, that CoolIT knew of these four

 4   references prior to filing the *inter partes* reexamination.

 5       Now, of course, again, with the exception of Shin, which

 6   as I've already stated was located in a different search for a

 7   different patent.

 8           **THE COURT:**  That would sort of completely blow any

 9   notion of diligence or reasonable diligence, because either you

10   knew it or you didn't.  If you knew it, then the question is

11   whether you raised it or could have raised.  If you didn't know

12   it, no matter how undiligent you were, that becomes

13   dispositive.

14           **MR. CHEN:**  Correct.

15           **THE COURT:**  And the question is, is that -- and I

16   understand that you've got one piece here of statutory

17   interpretation, which is the -- I guess this is the conference

18   report?

19           **MR. CHEN:**  The Congressional record of both the

20   Senate and the House, that's correct.

21           **THE COURT:**  This is the language that comes from

22   which -- I'm trying to figure out what is this language from?

23   Is this a conference report?

24           **MR. CHEN:**  Yeah.  House conference report and, also,

25   a Senate conference report as well.

1          **THE COURT:**  All right.  Well, we all know that that

2     is one tool of interpretation.

3          **MR. CHEN:**  Correct.

4          **THE COURT:**  There are others, but what's your

5     response to this?  This is pretty explicit.  It's in the

6     legislative history.

7          **MS. BHATTACHARYYA:**  Yes, Your Honor.  But no courts

8     have applied a subjective knowledge standard.  And even if the

9     standard were to apply, CoolIT has not provided any

10    declarations from the attorneys who were involved in preparing

11    and filing the *inter partes* reexam request.

12         So some CoolIT's counsel, who had prepared the reexam,

13    Your Honor, he's still involved in managing CoolIT's patent

14    portfolio.  He's still involved in some ongoing IPRs.

15         CoolIT had the opportunity to provide declarations from

16    that attorney who had prepared and filed the *inter partes*

17    reexam, and there is no declaration in the record showing that

18    he subjectively was unaware of these references.

19         Plus, as Your Honor has pointed out, subjective

20    unavailability or actual knowledge standard just doesn't -- we

21    cannot reconcile that with the diligence search standard.

22         And if actual knowledge were the standard, then patent

23    challengers can just remain willfully blind to a whole category

24    of prior art.  And if the *inter partes* reexam doesn't go their

25    way, they can then raise it in the district court.  That cannot

 1    be the standard.

 2        Yes, I agree that the Congressional record says that, but

 3    no courts have applied that.

 4        And, in fact, CoolIT, ignoring the Federal Circuit

 5    decision in *In Re Affinity Labs of Texas*, and very specifically

 6    says that:

 7            "Pre-AIA Section 315(c) prohibits a challenge to

 8        a patent claim which has been finally determined to be

 9        valid in an *inter partes* proceeding."

10        CoolIT is ignoring all the existing case law for an

11    *inter partes* reexam and --

12        **THE COURT:**  What does that case say that is contrary

13    to the actual knowledge?

14        **MS. BHATTACHARYYA:**  It's not saying anything

15    contrary, but it has interpreted Section 315(c) and says that

16    that statute does -- estoppel statute prohibits a challenge to

17    a patent claim that has been finally determined to be valid in

18    an IPR proceeding.

19        So once a claim is found to be valid, all challenges to

20    that claim is prohibited in district court.

21        That is the Federal Circuit saying that.  The Federal

22    Circuit has not created any caveat for an actual knowledge

23    standard or even a diligent search standard.

24        It specifically, categorically says that if a claim is

25    found to be valid after an *inter partes* reexam, then the same

1    requester is prohibited from bringing a challenge to that claim

2    in district court.

3        So what CoolIT is trying to do here is ignore all the

4    inter partes reexam case law and borrow case law from

5    *inter partes* review proceedings, but *inter partes* reexam and

6    *inter partes* review are different proceedings that are -- that

7    are governed by different statute, different administrative

8    law.

9        There is no reason to even bring the diligent search

10   standard from *inter partes* review into *inter partes* reexam.

11   The language of these two statutes are very different.

12       *Inter partes* reexam says that estoppel extends to any

13   grounds that could have been raised.  Whereas, *inter partes*

14   review says estoppel extends to grounds that reasonably could

15   have been raised.

16            **THE COURT:**  What about the fact that this language

17   about this subsection does not prevent the assertion of newly

18   discovered invalidity based on newly discovered prior art

19   unavailable to the requester and to the PTO at the time of the

20   reexamination.  Whereas, the new post AIA 315(e)(2) doesn't

21   seem to have that language.

22            **MS. BHATTACHARYYA:**  It does not have that language,

23   Your Honor.

24       Your Honor, the *Polaris Industries case v BRP* case from

25   the District of Minnesota, which we have cited in our opening

1   brief, ties this unavailability standard to access, whether the

2   requester had access to the reference in concern.

3        By "access" it means whether they could have found it

4   if -- if they had looked.  It's not whether they knew about it

5   or not, whether they had access to it.

6        And here CoolIT definitely had access to databases that

7   carry machine translated references of foreign patent

8   documents.

9            **THE COURT:**  Is there anything in the legislative

10  history in the AIA regarding this -- this other change in

11  language?

12       People focus on the "reasonably" language, but what about

13  the "unavailability," the deletion or omission of the

14  "unavailability" language in the post AIA Section 315(e)(2)?

15  Is there any legislative history of that?

16           **MS. BHATTACHARYYA:**  There is nothing in the

17  legislative history of the AIA statute.  Although there is a

18  statement from Senator Kyl that suggests that the pre-AIA

19  estoppel statute, that is the estoppel statute for reexam,

20  requires scorched earth search, as compared to a diligent

21  search.

22       And, Your Honor, I just wanted to point out that

23  Dr. Basi's declaration, which is at Docket 57-1, does state

24  that the Questel database which is routinely used in prior art

25  searches was available at least since 2012.

1    So there is evidence in the record from Dr. Basi that the

2    Questel database, which has machine translations of foreign

3    documents, was available at least since 2012.

4         **THE COURT:**  All right.  What's your response to the

5    procedural question that this was not raised until the reply

6    and, therefore, CoolIT has not had a chance to counter that

7    affidavit?

8         **MS. BHATTACHARYYA:**  Yes.  Your Honor, our position is

9    that the diligent search search standard only applies to *inter*

10   *partes* review.  It does not extend to *inter partes* reexams.

11   There is no case law, not even in the Congressional history,

12   that says that a diligent search standard should apply to *inter*

13   *partes* reexam.

14        CoolIT is borrowing this case law, this test from

15   *inter partes* review.  And once they did that in their

16   responsive brief, we responded with our own declaration showing

17   that what -- that CoolIT's declaration is deficient and -- and

18   Dr. Basi's declaration has shown that the full references at

19   issue could have been found had CoolIT done a more

20   comprehensive search that encompassed foreign databases, that

21   encompassed foreign references.

22        Your Honor, CoolIT deliberately skimmed on its search and

23   just looked at U.S. patents and published applications.  Now,

24   CoolIT tries to paint its prior art search as an international

25   search, but the declaration from CoolIT's prior art searcher,

```
 1   Ms. Kelly Bowman, does not support that.

 2        Ms. Bowman had never said in her declaration that the

 3   search was international.

 4        To the contrary, Your Honor, she says that the -- for

 5   patent literature TPR primarily use the United States east

 6   database, which, Your Honor, only carries English translations

 7   of abstracts.  It does not show -- it does not carry

 8   translations of -- of the full documents, which is available in

 9   databases like Questel.

10        And as Dr. Basi said, if you just look at abstracts, that

11   search is not comprehensive.  That search will not cover all

12   relevant databases.

13        Ms. Bowman goes on to say that her search or her firm's

14   search focused on the following U.S. patent classification

15   classes and subclasses, and then she lists five classes.  So

16   Ms. Bowman in her declaration never says that she had conducted

17   an international search.  She specifically says that she

18   focused on only U.S. patents and applications.  She never

19   looked in any foreign databases.  She does not provide any

20   search strings, any key words or anything that refers to any

21   foreign searches.  CoolIT willfully remained blind to foreign

22   references and now it wants to bring in these foreign

23   references.

24        And, Your Honor, I just want to point out that similarly

25   situated defendants have found these references.  So in the
```

1    *Asetek v CMI* case, CMI found and asserted the Ryu reference

2    against the '764 patent.

3         In the *Asetek v AVC* case, AVC found the Ryu reference and

4    asserted it against the '764 patent.

5         And CoolIT has already admitted that they found the Shin

6    reference two weeks before filing the *inter partes* reexam, but

7    chose not to use it.

8         As to the Lin reference goes, Your Honor, CoolIT has not

9    provided any information as to when they became aware of the

10   Lin reference.  Presumably they became aware of the Lin

11   reference in 2019 before they served the invalidity

12   contentions.  And CoolIT has not identified any difficulty or

13   barrier that would have produced a different search result in

14   2019 as compared to 2012.

15        In a similar -- in similar circumstances, Your Honor,

16   according to Southern District of California in the *WI-LAN v LG*

17   case has said that the -- the fact defendant LG found a

18   reference at issue goes to show -- it is clear evidence that

19   had defendant conducted a diligent search previously, they

20   could have raised the reference in the *inter partes* review.

21        **THE COURT:**  Let me ask:  Is it accurate that

22   Dr. Bowman -- there is no claim that Dr. Bowman examined any

23   databases that specialized in international patent

24   publications.

25        **MR. CHEN:**  The Thomson database includes both

1  Japanese documents as well as WIPO documents, Your Honor.

2          THE COURT:  All right.  But including -- I don't know

3  what --

4          MR. CHEN:  And a Japanese reference was actually

5  returned, which is included in her declaration.

6          THE COURT:  But other than that, there was no

7  systematic query into a database that specialized or that

8  focused on international patent publications?

9          MR. CHEN:  Other than the Thomson database, I don't

10  believe there was a -- any additional searches of international

11  databases.  But that's not to say that the search was not

12  diligent, given the amount that was at stake in the prior case

13  and just the facts of the case.  A diligent search is not a

14  search of every single database that's out there, we propose

15  anyways.

16      If I can address a few of the points?

17          THE COURT:  Briefly.

18          MR. CHEN:  Briefly, okay.  So with respect to the

19  timing of Dr. Basi's declaration, in the opening brief that

20  Asetek filed on Page 6 they mention Senator Kyl's testimony

21  during the Congressional hearings on the AIA.  And specifically

22  during those hearings, Senator Kyl stated that the prior 315(c)

23  could be interpreted as either -- you know, reasonably could

24  have raised standard or could be interpreted as a

25  scorched-earth standard.  And he wanted to make it clear that

1    under the AIA that it's not going to fall under this

2    scorched-earth standard.

3        So plaintiff was clearly aware that there was a diligent

4    search for standard out there and could have submitted the Basi

5    declaration in the opening declaration, but failed to do that.

6        With respect to *Affinity Labs*, Your Honor, the federal

7    circuit case does not at all address the "could have raised"

8    language.  And it definitely does not address the express

9    exception of whether or not a reference was unavailable to a

10   third-party requester and the Patent Office.

11       And there, frankly, is just a derth of case law with

12   respect to estoppel on *inter partes* reexamination versus IPR

13   estoppel.  There are no cases that have adopted the

14   scorched-earth approach, none at all.

15       And there is just silence on this, which means that the

16   statute, the language of the statute, the express language of

17   the statute with the express exception with the Congressional

18   history should control.

19           **MS. BHATTACHARYYA:**  Your Honor may I respond --

20           **MR. CHEN:**  And then -- sorry.

21           **THE COURT:**  Let him finish.

22           **MR. CHEN:**  Then with respect to *Cooler Master* and

23   *AVC*, these other defendants in other cases being able to find

24   these references, those are actually both Taiwanese companies'

25   employees that can read and write Mandarin.  I know because I

1    represent Cooler Master.

2            THE COURT:  All right.  I'll give you one thing to

3    say and I'm going to conclude.

4            MS. BHATTACHARYYA:  Sure.  Your Honor, CoolIT has no

5    evidence that the Shin, Lin, Yu and Ryu references were not

6    unavailable.  As Asetek's prior art searcher Dr. Basi has

7    shown, that even in 2012 --

8            THE COURT:  Well, it depends on how you construe

9    "unavailable."  They construe it in a different way.

10           MS. BHATTACHARYYA:  Yes, Your Honor.  Our position is

11   that a subjective knowledge standard should not apply

12   because --

13           THE COURT:  Right.  It's unavailable as an objective

14   matter.  It existed out there.  Then the only question is what

15   level of diligence is required.

16           MS. BHATTACHARYYA:  Yes, Your Honor.  So Ms. Bowman

17   has one sentence that says that she looked at Thomson

18   MicroPatent.  And CoolIT's counsel just said that Thomson

19   MicroPatent has -- has -- carries some Japanese prior art.

20       The Japanese prior art at issue here is Shin, Your Honor,

21   and Shin was available to CoolIT.  CoolIT admits that two weeks

22   prior to filing their *inter partes* reexam request.  So they

23   could have raised Shin in the *inter partes* reexam.  They chose

24   not to do so.  So Shin should not be under consideration here.

25       And as to the Lin, Ryu and Yu references go, there is no

1    evidence in the record that Ms. Bowman even looked in any

2    database that covered Taiwanese, Chinese or Korean references.

3          And, Your Honor, particularly in the electronics art, as

4    Mister -- Dr. Basi has testified, patent challengers routinely

5    even do native language searches because the countries like

6    Korea, Taiwan, China here, they are known for their prominence

7    in high tech and the associated intellectual property

8    development.  So patent challengers routinely do native

9    language searchers.  And here CoolIT did not even look in

10   databases that have machine translations, yet alone do native

11   language searches.

12         Your Honor, they deliberately turned a blind eye to

13   foreign references and focused primarily on U.S. references.

14   That under any standard cannot be considered diligent.  If that

15   kind of search is considered diligent, then patent challengers

16   can just willfully remain blind to foreign references.

17         And there cannot be a different standard for if a

18   defendant is from China, then they should be -- you know,

19   provide Chinese references.  The standard should be uniform for

20   all defendants.

21         And most defendants, particularly in the electronics art,

22   do look for references in Asian countries because, as I said,

23   of the prominence of high tech industries there.

24              THE COURT:  All right.  Here is what we're going to

25   do.  I've got to move on.

1          **MS. BHATTACHARYYA:**  Yes, Your Honor.

2          **THE COURT:**  I'm going to allow CoolIT to file a reply

3   in the form of either a declaration or something very specific

4   key to the Basi declaration.  Not any new arguments.  Try to

5   supplement, you know, what it did in a factual way.

6          But to be fair, if there is something about Dr. Basi's

7   declaration -- for instance, saying that Questel database is a

8   well-known patent search database, et cetera, et cetera,

9   et cetera.  If there is something to rebut that or counter that

10  or impeach that kind of testimony, I will allow that.

11         So it's like cross examination.  Scope is going to be

12  limited to this surrebuttal, which I'm allowing, to be limited

13  to the scope of the declaration that was introduced on reply by

14  Dr. Basi.  I'd like to have that filed in a week.

15         **MR. CHEN:**  Thank you, Your Honor.

16         **THE COURT:**  And then I'll take it under submission at

17  that point.  Okay.

18         **MR. CHEN:**  Thank you.

19         **MS. BHATTACHARYYA:**  Thank you.

20         **MR. CHEN:**  Oh, it's Thanksgiving next week, Your

21  Honor.

22         **THE COURT:**  That's true.  That is true.  I forgot.  I

23  don't want to force you to work on Friday, but I imagine a lot

24  of -- I would like to get something sooner rather than later.

25  What do you propose?

1          **MR. CHEN:**  Could it be two weeks, Your Honor?  Is

2     that fair given the, a lot of people are going to be out next

3     week and in case we need --

4          **THE COURT:**  Let's say by Tuesday of next week, it

5     gives you a couple extra days.  Tuesday.

6          **MR. CHEN:**  Okay.  Thank you.

7          **THE COURT:**  By 3:00 o'clock.  3:00 o'clock Tuesday.

8          **MR. CHEN:**  Thank you.

9          **MR. McCAULEY:**  Your Honor, Rob McCauley.  I'm

10    assuming the Court doesn't need a case management conference or

11    status conference.  We can wait, if you'd like to.

12         **THE COURT:**  Well, let me ask.  I don't know what I

13    did with the case management statement.  In terms of timing, I

14    forget whether you have made mention.  I always ask a question

15    about ADR, whether there is any kind of ADR plan on the

16    horizon.

17         **MR. McCAULEY:**  Yes, there is.  With Magistrate Judge

18    Kim, Your Honor.

19         **MR. CHEN:**  On the 19th.

20         **THE COURT:**  19th?  Well, that's good.  Do you need

21    anything before then or any kind of guidance or anything else

22    before you embark on that?

23         **MR. CHEN:**  I don't think so, Your Honor.

24         **THE COURT:**  Other than resolve this motion.

25         **MR. McCAULEY:**  That would help.

```
 1              THE COURT:  Well, what I would like to do is maybe we
 2    should schedule shortly a -- not too long after you have that
 3    settlement conference with Judge Kim, to come back and then set
 4    dates, depending on what happens in that proceeding.  And if it
 5    looks like the case is not headed towards some kind of
 6    resolution, then we can set dates --
 7              MR. CHEN:  That sounds --
 8              THE COURT:  -- through claim construction and --
 9    sorry.  I don't have it with me.  I left it back in chambers.
10    Did you propose a schedule?  I can't remember now.
11              MR. CHEN:  Yes.  We have a schedule for claim
12    construction.
13              THE COURT:  Does that take into account the
14    settlement conference?
15              MR. CHEN:  It does, I believe, yes.
16              THE COURT:  Pretty much?
17              MR. CHEN:  We have opening briefs due on
18    January 10th.
19              THE COURT:  All right.  And you stipulated to that?
20              MR. McCAULEY:  Yes.
21              THE COURT:  You agree?
22         All right.  Then in all likelihood I'll adopt that, and
23    we'll get out a scheduling order.  I'll look at that one more
24    time and make sure there is no tweaking we have to do.
25         But if you've already thought that through and the timing
```

```
 1   vis-a-vis any settlement conference, then I'm inclined to adopt
 2   that.
 3               MR. McCAULEY:  I think it's already been ordered,
 4   Your Honor.
 5               THE COURT:  Did I?
 6               MR. CHEN:  Yes.  Yes, Your Honor.
 7               THE COURT:  Oh, well, then --
 8               MR. McCAULEY:  I don't think the Court needs to do
 9   anything, which is why I came up here, in an abundance of
10   caution.
11               THE COURT:  I got ahead of myself then.  Good.  I'm
12   glad I did what I did.
13         All right.  Well, then let's -- when do you think would be
14   an appropriate time to come back here for status check then?
15   Do we need one prior to --
16               MR. CHEN:  Markman?  I don't think so.
17               THE COURT:  If you don't, then I won't drag you back
18   here.  If there is something in the interim you think might be
19   useful, I can.
20         But we set Markman for -- what's the date?
21               MR. McCAULEY:  It's in February.  I don't remember
22   the exact date.
23               THE COURT:  That's close enough where unless there is
24   something urgent that comes up, I'll just -- we'll see you at
25   the Markman hearing.
```

1          **MR. McCAULEY:**  Thank you, Your Honor.

2          **MR. CHEN:**  Thank you, Your Honor.

3          **THE COURT:**  Great.  Thank you.

4       (Proceedings adjourned.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## <u>CERTIFICATE OF OFFICIAL REPORTER</u>

    I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.


_____

Debra L. Pas, CSR 11916, CRR, RMR, RPR

Sunday, December 1, 2019