1   Robert F. McCauley (SBN 162056)
    robert.mccauley@finnegan.com
2   Arpita Bhattacharyya (SBN 316454)
    arpita.bhattacharyya@finnegan.com
3   Jeffrey D. Smyth (SBN 280665)
    jeffrey.smyth@finnegan.com
4   FINNEGAN, HENDERSON, FARABOW,
      GARRETT & DUNNER, LLP
5   3300 Hillview Avenue
    Palo Alto, California  94304
6   Telephone:     (650) 849-6600
    Facsimile:     (650) 849-6666
7
    Attorneys for Plaintiff
8   ASETEK DANMARK A/S

9

10                    UNITED STATES DISTRICT COURT

11                   NORTHERN DISTRICT OF CALIFORNIA

12

13

14   ASETEK DANMARK A/S                    CASE NO. 3:19-cv-00410-EMC

15              Plaintiff,                 **FIRST AMENDED COMPLAINT FOR
                                           PATENT INFRINGEMENT**
16        v.
                                           **DEMAND FOR JURY TRIAL**
17   COOLIT SYSTEMS, INC., CORSAIR
     GAMING, INC. AND CORSAIR MEMORY,
18   INC.

19              Defendant.

20

21

22

23

24

25

26

27

28

COMES NOW Plaintiff Asetek Danmark A/S ("Asetek"), by and through their attorneys, and for their Complaint against Defendants CoolIT Systems, Inc. ("CoolIT") and Corsair Gaming, Inc. and its U.S. subsidiaries, including but not limited to Corsair Memory, Inc. (collectively, "Corsair" or "the Corsair Defendants"), allege as follows:

## NATURE OF ACTION

1.   This Complaint seeks judgment that CoolIT and Corsair have infringed and continue to infringe Asetek's U.S. Patent Nos. 8,240,362 ("the '362 patent); 10,078,354 ("the '354 patent"); 10,078,355 ("the '355 patent"); 10,613,601 ("the '601 patent"); and 10,599,196 ("the '196 patent") (collectively, "the Patents-in-Suit"). Each of these patents relates to liquid cooling systems and methods for cooling heat-generating electronic components.

## THE PARTIES

2.   Asetek is a corporation organized and existing under the laws of Denmark, and has a location at Assensvej 2, DK-9220 Aalborg East, Denmark. Asetek is the owner of the Patents-in-Suit.

3.   CoolIT is a corporation operating and existing under the laws of Canada and its principal place of business is at 10 – 2928 Sunridge Way NE, Calgary, Alberta, Canada T1Y 7H9.

4.   Upon information and belief, Corsair Gaming, Inc. and Corsair Memory, Inc. are corporations operating and existing under the laws of Delaware and having their principal place of business at 47100 Bayside Parkway, Fremont, CA 94538.

5.   Upon information and belief, Corsair Components, Inc. merged into Corsair Gaming, Inc. as part of a corporate reorganization.

6.   Upon information, Corsair Gaming, Inc. assumed responsibility for liabilities of Corsair Components, Inc.

7.   Upon information and belief, prior to the Corsair reorganization described in the S-1 for Corsair Gaming, Inc., Corsair Components, Inc. was a corporation operating and existing under the laws of Delaware and having its principal place of business at 47100 Bayside Parkway, Fremont, CA 94538.

**JURISDICTION AND VENUE**

8.   This is an action for patent infringement arising under the United States Patent Laws, 35 U.S.C. § 100 *et seq*. Subject matter jurisdiction is proper under 28 U.S.C. §§ 1331 and 1338(a).

9.   This Court has personal jurisdiction over CoolIT because it has offered to sell, sold, and imported/shipped Accused Products (defined below) to one or more Corsair Defendants in the United States and in this judicial district, and because CoolIT continues to offer for sale, sell, and import/ship Accused Products to one or more Corsair Defendants in the United States and in this judicial district.

10. This Court also has personal jurisdiction over Corsair because its principal place of business is in this judicial district, and because it has offered for sale, sold, and continues to sell Accused Products in the United States and in this judicial district.

11. Upon information and belief, CoolIT and Corsair have entered into one or more contracts that govern promotion, importation/shipment, and sales of Accused Products in and into the United States and this judicial district.

12. This Court also has personal jurisdiction over CoolIT and Corsair because, on information and belief, they have worked together for the joint purposes of promoting, selling, and importing Accused Products in and into the United States without the consent or authority of Asetek.

13. Corsair maintains a website, www.corsair.com, through which it offers for sale and sells to customers in the United States and in this judicial district the Accused Products that are designed for use with personal computers.

14. CoolIT maintains a website, www.coolit.com, through which it has promoted the HydroSeries line of liquid cooling products, and directed interested buyers to www.corsair.com.

15. Upon information and belief, on www.coolit.com CoolIT has also promoted iCUE RGB PRO XT products and directed interested buyers to www.corsair.com.

16. Upon information and belief, CoolIT and Corsair derive substantial revenue from their sales in California and this judicial district of the Accused Products that are designed for use with personal computers, and CoolIT and Corsair purposefully avail themselves of the privilege of

conducting activities in California, thus invoking the benefits and protections of the laws of California.

17. Accused Products made by CoolIT are used in computers and datacenters in California and in this judicial district. Indeed, CoolIT has admitted that at least some of the Accused Products are used in computers in California and in this judicial district. Dkt. 36 ¶6.

18. Upon information and belief, the Corsair Defendants have worked as a team and in concert to promote, import, offer for sale, and sell the Accused Products that are designed for use with personal computers to customers in the United States, in California, and in this judicial district via at least Corsair's website (www.corsair.com). Upon information and belief, the Corsair Defendants have also worked as a team and in concert to establish additional promotion and sales channels for such Accused Products in the United States (including this judicial district), and have worked with their selected retailers and distributors to promote, offer for sale, sell, and/or import such Accused Products in and into the United States and this judicial district. For example, Corsair's website includes a "Find a Retailer" button that identifies, *inter alia,* brick and mortar retailers (e.g., Best Buy, Game Stop, Walmart) who are located and sell Accused Products to customers in the United States, in California, and in this judicial district. On information and belief, Corsair has entered into contracts with the retailers it identifies under its "Find a Retailer" button for the purpose of importing, promoting, offering for sale, and/or selling Accused Products to customers in the United States, in California, and in this judicial district.

19. On information and belief, the Corsair HydroSeries, iCUE RGB PRO XT, and iCUE ELITE CAPELLIX products accused of infringement in this Complaint are used by customers in computers in California and in this judicial district.

### FACTUAL BACKGROUND

20. Asetek is a world leading provider of liquid cooling systems for heat-generating electronic components, such as CPUs and GPUs. Asetek's business is dedicated entirely to liquid-cooling, which makes up 100% of its revenue. Asetek's solutions are used by leading original equipment manufacturers ("OEM") servicing the datacenter, server, gaming, workstation, and high performance PC markets. Asetek is also the leading provider of liquid cooling products for the

enthusiast/do-it-yourself market, which includes end-users who buy and self-install liquid cooling systems into their computers.

21. Asetek's patented combination of a pump, a dual chambered reservoir, and a cold plate into a single pump unit—which is claimed in the Patents-in-Suit—provides the benefits of improved pumping and heat removal efficiencies in a compact (narrow profile) design that enables the pump unit to be installed directly on the CPU/GPU of a computer motherboard, graphics card, or a server. In addition to improved efficiency and compactness, Asetek's patented designs have greatly reduced and/or eliminated the risk of coolant leakage and have enabled pre-filled (factory assembled and sealed) liquid cooling products that are easy to install and use. Asetek's patented designs have also made manufacturing of liquid cooling products simpler and less costly.

22. Upon information and belief, since February 6, 2015, CoolIT has offered for sale and sold to one or more Corsair Defendants in the United States, and imported or shipped to one or more Corsair Defendants in the United States, products that include CoolIT's E3 + HV Pumps and Gemini Pumps.  These products include the HydroSeries line of products (which includes, e.g., the H60, H100i Extreme Performance, H100i RGB Platinum, H100i RGB Platinum SE, H110i Extreme Performance, and H115i RGB Platinum liquid coolers (and variants thereof)).

23. Upon information and belief, CoolIT continues to offer for sale, sell, and/or import or ship to one or more Corsair Defendants in the United States products that include its E3 + HV Pumps and Gemini Pumps, including products in the HydroSeries line.

24. In addition, upon information and belief, CoolIT has also sold and shipped to Corsair (Hong Kong) Ltd. various products that include CoolIT's E3 + HV Pumps and Gemini Pumps, including HydroSeries products, with the understanding that one or more Corsair Defendants would offer for sale and sell at least some of those products in the United States.

25. Since February 6, 2015, one or more Corsair Defendants has offered for sale and sold in the United States products purchased from CoolIT that include CoolIT's E3 + HV Pumps and Gemini Pumps, including HydroSeries products.

26. Upon information and belief, CoolIT has offered for sale to one or more Corsair Defendants in the United States components and/or subassemblies for Corsair's iCUE RGB PRO XT

line of products (e.g., the iCUE H60i RGB PRO XT, iCUE H100i RGB PRO XT, iCUE H115i RGB PRO XT, and iCUE H150i RGB PRO XT) which include CoolIT's Gemini Pump.

27. In addition, upon information and belief, CoolIT has also sold and shipped to Corsair (Hong Kong) Ltd. components and/or subassemblies for Corsair's iCUE RGB PRO XT which include CoolIT's Gemini Pump, with the understanding that they would be assembled into final iCUE RGB PRO XT products and that at least some of the final products would be offered for sale and sold by one or more Corsair Defendants in the United States.

28. One or more Corsair Defendants has offered for sale and sold in the United States iCUE RGB PRO XT products purchased from CoolIT.

29. Upon information and belief, CoolIT has offered for sale to one or more Corsair Defendants in the United States components and/or subassemblies for Corsair's iCUE ELITE CAPELLIX line of products (e.g., the iCUE H100i ELITE CAPELLIX, iCUE H115i ELITE CAPELLIX, and iCUE H150i ELITE CAPELLIX) which include CoolIT's Marzen Pump.

30. In addition, upon information and belief, CoolIT has also sold and shipped to Corsair (Hong Kong) Ltd. components and/or subassemblies for Corsair's iCUE ELITE CAPELLIX line of products which include CoolIT's Marzen Pump, with the understanding that they would be assembled into final iCUE ELITE CAPELLIX products and that at least some of the final products would be offered for sale and sold by one or more Corsair Defendants in the United States.

31. One or more Corsair Defendants has offered for sale and sold in the United States iCUE ELITE CAPELLIX purchased from CoolIT.

32. Since February 6, 2015, CoolIT has also offered for sale, sold and/or installed in the United States various datacenter and/or server cooling loops that include at least CoolIT's E3 + HV Pumps.  At least some of these sales and installations are identified in the document designated as COOLIT0004391 in discovery.

33. The datacenter and/or server cooling loops that include CoolIT's E3 + HV Pumps referenced in the preceding paragraph have or had active cold plates.

34. Upon information and belief, CoolIT has offered for sale, sold and/or installed in the United States datacenter and/or server cooling loops that include at least Gemini and/or Marzen Pumps.

35. Counsel for CoolIT and the Corsair Defendants have also advised the Court and Asetek's counsel that CoolIT is or will soon be selling to Corsair a new pump design, which CoolIT and Corsair have referred to as the "new design," for resale by Corsair in the United States and elsewhere.

36. All of the desktop and datacenter/server products described in ¶¶ 22-35 above and including CoolIT's E3 + HV, Gemini, Marzen and "new design" pumps are collectively referred to as "Accused Products" hereinafter.

37. Upon information and belief, each of the Accused Products having the E3 + HV, Gemini, and Marzen Pumps has the same fundamental pump unit structure and configuration; any differences between the products are irrelevant to the claims of the Patents-in-Suit and to CoolIT's infringement of the same. Accordingly, Counts I-V below refer to CoolIT's H100i RGB Platinum as a representative product for all of the Accused Products, both for desktops and datacenters, that include CoolIT's E3 + HV, Gemini, or Marzen Pumps. The "new design" shown in Counts I-V below is representative of all Accused Products that include CoolIT's "new design" pump.

38. The '362 patent was the subject of a prior patent infringement lawsuit between Asetek and CoolIT (Case No. 12-cv-04498-EMC), which was filed in 2012 and settled in June 2015. CoolIT and the Corsair Defendants have had actual knowledge of the '362 patent since 2012.

39. On information and belief, CoolIT has periodically monitored Asetek's United States patent filings and issued patents between 2015 and the present.

40. Upon information and belief, CoolIT was aware of the issued '354 and '355 patents before Asetek filed suit against CoolIT in January 2019.

41. Upon information and belief, CoolIT was aware of the '601 and '916 patents before Asetek filed its lawsuit against Corsair on September 17, 2020.

42. Upon information and belief, Corsair knew about Asetek's '362, '354, and '355 patents in 2019, and Corsair knew in 2019 that Asetek had filed suit against CoolIT alleging that the

HydroSeries products, which are sold by Corsair in the United States, infringe Asetek's '362, '354, and '355 patents.

43. Upon information and belief, Corsair knew before September 17, 2020, that Asetek had accused the iCUE ELITE CAPELLIX products of infringing Asetek's '362, '354, and '355 patents.

44. In addition, Asetek sent a cease-and-desist letter to CoolIT in July 2016 notifying CoolIT that its liquid cooling products based on its allegedly redesigned pump unit still infringed Asetek's '362 patent. Despite its knowledge of the Patents-in-Suit and the cease-and-desist letter, CoolIT has continued to offer for sale and sell the Accused Products to customers in the United States without the consent or authority of Asetek.

45. Upon information and belief, CoolIT sent the July 16 letter described in the preceding paragraph to Corsair before Asetek filed its second lawsuit against CoolIT in January 2019.

46. Despite Corsair's apparent knowledge of Asetek's '362, '354, and '355 patents and Asetek's pending patent infringement action against CoolIT, in or about September 2020, Corsair launched the iCUE ELITE CAPELLIX products in the United States, knowing that they have pump configurations that are very similar to the HydroSeries and iCUE RGB PRO XT products that were accused of infringement in Asetek's then-pending lawsuit against CoolIT.

## COUNT I

### Infringement of U.S. Patent No. U.S. 10,613,601

47. Asetek incorporates by reference paragraphs 11 through 19 and 22 through 46.

48. Asetek owns the entire right, title, and interest in and to the '601 patent. A true and correct copy of the '601 patent is attached hereto as Exhibit A.

49. Upon information and belief, Corsair and CoolIT have directly infringed one or more claims of the '601 patent under 35 U.S.C. § 271(a) by, among other things, offering for sale, selling, importing and/or distributing the Accused Products in and into the United States.

50. The Accused Products infringe at least claim 1 of the '601 patent, either literally and/or under the doctrine of equivalents.

51. Upon information and belief, the Accused Products are cooling systems for a computer system processing unit and comprise the claimed elements of at least claim 1 of the '601 patent.

| **CoolIT's H100i RGB Platinum** | **CoolIT's "New Design"** |
|---|---|
| | |

52. Upon information and belief, the Accused Products include "a reservoir configured to circulate a cooling liquid therethrough." For example, as the images of the representative H100i RGB Platinum and the "new design" products below show, the Accused Products include a reservoir, both literally and under the doctrine of equivalents, which is configured to be coupled to a processing unit positioned on the motherboard of a computer and the reservoir is adapted to pass cooling liquid therethrough.



53. Upon information and belief, the reservoir of the Accused Products includes "an upper chamber and a lower chamber, wherein the upper chamber and the lower chamber are vertically displaced fluid-containing chambers that are each surrounded by boundary walls." For example, as the images of the representative H100i RGB Platinum and the "new design" products below show, the reservoir of the Accused Products includes an upper chamber and a lower chamber that are

vertically displaced fluid-containing chambers surrounded by boundary walls. Furthermore, the Accused Products include "a first passage that fluidly couples the lower chamber to the upper chamber, wherein the first passage is substantially central to the lower chamber," and "a second passage [that is] positioned at a perimeter of the lower chamber."

| **CoolIT's H100i RGB Platinum** | **CoolIT's "New Design"** |
|---|---|
|  |  |

54. Upon information and belief, the lower chamber of the Accused Products includes "a plurality of parallel channels configured to split the flow of cooling liquid and direct the cooling liquid from the central region toward the perimeter of the lower chamber where the cooling liquid is collected along the perimeter and directed from the lower chamber through the second passage." For example, as the images of the representative H100i RGB Platinum and the "new design" products below show, the lower chamber of the Accused Products includes a split-flow arrangement that directs the cooling liquid from the central region toward the perimeter of the lower chamber where the cooling liquid is collected along the perimeter and directed from the lower chamber through the second passage.

| CoolIT's H100i RGB Platinum | CoolIT's "New Design" |
|---|---|



55. Upon information and belief, the Accused Products include "a heat exchanging interface attached to the reservoir to form a boundary wall of the lower chamber, the heat exchanging interface configured to provide thermal contact between a processing unit and the cooling liquid." For example, as the images of the representative H100i RGB Platinum and the "new design" products below show, the Accused Products include a heat exchanging interface attached to the reservoir, wherein the heat exchanging interface forms a lower boundary wall of the lower chamber and provides thermal contact between the processing unit and the cooling liquid flowing through the reservoir.

| CoolIT's H100i RGB Platinum | CoolIT's "New Design" |
|---|---|

56. Upon information and belief, the Accused Products further include "a pump having a motor and an impeller, the impeller being positioned within the upper chamber of the reservoir." For example, as the images of the representative H100i RGB Platinum and the "new design" products below show, the Accused Products include a pump having a motor and an impeller, wherein the impeller is positioned in the upper chamber of the reservoir.

| **CoolIT's H100i RGB Platinum** | **CoolIT's "New Design"** |
|---|---|
|  | |

57. Upon information and belief, the Accused Products further include "a radiator spaced apart from and fluidly coupled to the reservoir." For example, as the images of the representative H100i RGB Platinum and the "new design" products below show, the Accused Products having CoolIT's E3 + HV, Gemini, or Marzen pumps include a radiator spaced apart from and fluidly coupled to the reservoir. Upon information and belief, Accused Products having the "new design" will include a radiator spaced apart from and fluidly coupled to the reservoir.

| **CoolIT's H100i RGB Platinum** | **CoolIT's "New Design"** |
|---|---|
|  |  |

58. Upon information and belief, Corsair and CoolIT have induced and continue to actively induce direct infringement of at least claim 1 of the '601 patent by others (such as distributors, retailers, resellers, customers, and end-users) in the United States under 35 U.S.C. § 271(b). Upon information and belief, Corsair and CoolIT knew of the '601 patent and have taken affirmative steps that have encouraged, aided and abetted (and continue to encourage, aid and abet) direct infringement by distributors, retailers, resellers, customers, and end-users in the United States, and Corsair and CoolIT have known that their acts constitute infringement of the '601 patent or have been willfully blind to the infringement. These acts include, but are not limited to, Corsair and CoolIT's manufacture/assembly and supply of the Accused Products, promotion on their websites, providing user manuals/guides instructing customers/end users how to install and use the Accused Products, and on information and belief, contracts and agreements with dealers, resellers, retailers, and distributors for the promotions, offers to sell, and sales of the Accused Products in the United States. For example, CoolIT sells the desktop Accused Products to one or more Corsair entities in the U.S. and/or in Hong Kong with the knowledge and understanding that one or more Corsair Defendants would offer for sale and sell at least some of those products in the United States. One or more Corsair Defendants sell those Accused Products to end users in the United States either directly through its website, through distributors, or through retailers such as Amazon, Best Buy, JD.com, MediaMarkt and Walmart.

59. Upon information and belief, Corsair and CoolIT have contributed to and continue to contribute to the direct infringement of at least claim 1 of the '601 patent by others (such as

distributors, retailers, resellers, customers, and end-users) in the United States under 35 U.S.C. § 271(c). Upon information and belief, Corsair and/or CoolIT supply important (material) components of the Accused Products (as well as instructions for the same) to their respective distributors, retailers, resellers, customers, and end-users in the United States. Upon information and belief, Corsair and CoolIT knew or were willfully blind that the combination for which their components were especially made was both patented and infringing, that the Accused Products are not a staple article or commodity of commerce, and that they have no substantial non-infringing uses.

60. Upon information and belief, Corsair and CoolIT have infringed the '601 patent in an egregious and willful manner and with knowledge of the '601 patent, or were willfully blind to the risk of infringement.

61. Corsair and CoolIT's infringement of the '601 patent has caused and continues to cause damages and irreparable harm to Asetek.

## **COUNT II**

### **Infringement of U.S. Patent No. 10,599,196**

62. Asetek incorporates by reference paragraphs 11 through 19 and 22 through 46.

63. Asetek owns the entire right, title, and interest in and to the '196 patent. A true and correct copy of the '196 patent is attached hereto as Exhibit B.

64. Upon information and belief, Corsair and CoolIT have directly infringed one or more claims of the '196 patent under 35 U.S.C. § 271(a) by, among other things, offering for sale, selling, importing and/or distributing the Accused Products in and into the United States.

65. The Accused Products infringe at least claim 1 of the '196 patent, either literally and/or under the doctrine of equivalents.

66. Upon information and belief, the Accused Products are cooling systems for cooling heat-generating components comprising the claimed elements of at least claim 1 of the '196 patent.

| CoolIT's H100i RGB Platinum | CoolIT's "New Design" |
|---|---|
|  | |

67. Upon information and belief, the Accused Products include "a reservoir configured to circulate a cooling liquid therethrough." For example, as the images of the representative H100i RGB Platinum and the "new design" products below show, the Accused Products include a reservoir, both literally and under the doctrine of equivalents, which is configured to circulate a cooling liquid therethrough.

| CoolIT's H100i RGB Platinum | CoolIT's "New Design" |
|---|---|
|  | |

68. Upon information and belief, the reservoir of the Accused Products includes "a pump chamber housing an impeller and defined at least in part by an impeller cover and a double-sided chassis, the impeller being positioned on one side of the chassis and a stator of the pump is positioned on an opposite side of the chassis." For example, as the images of the representative

H100i RGB Platinum and the "new design" products below show, the reservoir of the Accused Products includes a pump chamber that houses a pump impeller on the underside of the double-sided chassis, the pump chamber being defined by at least an impeller cover and the chassis. A stator of the pump is positioned on the upper side of the chassis. The pump chamber further includes "an inlet defined by the impeller cover positioned below a center of the impeller configured to enable a cooling liquid to flow into the center of the pump chamber," and "an outlet defined by the impeller cover positioned tangentially to the circumference of the impeller."

| **CoolIT's H100i RGB Platinum** | **CoolIT's "New Design"** |
|---|---|



69. Upon information and belief, the Accused Products include a reservoir that further includes "a thermal exchange chamber configured to be disposed between the pump chamber and a heat-generating component when the system is installed on a heat-generating component." For example, as the images of the representative H100i RGB Platinum and the "new design" products below show, the reservoir of the Accused Products includes a thermal exchange chamber disposed between the pump chamber and a heat-generating component when the system is installed.

| CoolIT's H100i RGB Platinum | CoolIT's "New Design" |
|---|---|
|  | |

70. Upon information and belief, the thermal exchange chamber of the reservoir of the Accused Products further includes "a heat-exchanging interface forming a boundary wall of the thermal exchange chamber, the heat-exchanging interface has an outer surface configured to be placed in thermal contact with a surface of a heat-generating component and an inner surface that defines a plurality of channels that direct the flow of the cooling liquid within the thermal exchange chamber." For example, as the images of the representative H100i RGB Platinum and the "new design" products below show, the Accused Products include a heat-exchanging interface that forms a boundary wall of the thermal exchange chamber and is configured with one side to be placed in thermal contact with a surface of the heat-generating component. The inner surface of the heat-exchanging interface defines a plurality of channels that direct the flow of the cooling liquid within the thermal exchange chamber.

| **CoolIT's H100i RGB Platinum** | **CoolIT's "New Design"** |
|---|---|
|  |  |

71. Upon information and belief, the Accused Products include a "a heat radiator adapted to pass the cooling liquid therethrough, the heat radiator being fluidly coupled to the reservoir via fluid conduits, the heat radiator being configured to dissipate heat from the cooling liquid." For example, as the images of the representative H100i RGB Platinum and the "new design" products below show, the Accused Products having CoolIT's E3 + HV, Gemini, or Marzen pumps include a heat radiator fluidly coupled to the reservoir and configured to dissipate heat from the cooling liquid. Upon information and belief, Accused Products having the "new design" will include a heat radiator configured to be fluidly coupled to the reservoir to dissipate heat from the cooling liquid.

| **CoolIT's H100i RGB Platinum** | **CoolIT's "New Design"** |
|---|---|
|  |  |

72. Upon information and belief, the Accused Products include "a first passage fluidly coupling the pump chamber and the thermal exchange chamber, wherein the first passage is configured to direct the cooling liquid from the outlet of the pump chamber into the thermal exchange chamber between a first end and a second end of the thermal exchanger chamber." For example, as the images of the representative H100i RGB Platinum and the "new design" products below show, the Accused Products include a passage configured to direct cooling liquid from the outlet of the pump chamber into the thermal exchange chamber between a first end and a second end of the thermal exchanger chamber.

| __CoolIT's H100i RGB Platinum__ | __CoolIT's "New Design"__ |
|---|---|



73. Upon information and belief, Corsair and CoolIT have induced and continue to actively induce direct infringement of at least claim 1 of the '196 patent by others (such as distributors, retailers, resellers, customers, and end-users) in the United States under 35 U.S.C. § 271(b). Upon information and belief, Corsair and CoolIT knew of the '196 patent and have taken affirmative steps that have encouraged, aided and abetted (and continue to encourage, aid and abet) direct infringement by distributors, retailers, resellers, customers, and end-users in the United States, and

1    Corsair and CoolIT have known that their induced acts constitute infringement of the '196 patent or

2    have been willfully blind to the infringement. These acts include, but are not limited to, Corsair and

3    CoolIT's manufacture/assembly and supply of the Accused Products, promotion on their websites,

4    providing user manuals/guides instructing customers/end users how to install and use the Accused

5    Products, and on information and belief, contracts and agreements with dealers, resellers, retailers,

6    and distributors for the promotions, offers to sell, and sales of the Accused Products in the United

7    States. For example, CoolIT sells the desktop Accused Products to one or more Corsair entities in

8    the U.S. and/or in Hong Kong with the knowledge and understanding that one or more Corsair

9    Defendants would offer for sale and sell at least some of those products in the United States. One or

10    more Corsair Defendants sell those purchased Accused Products to end users in the United States

11    either directly through its website, through distributors, or through retailers such as Amazon, Best

12    Buy, JD.com, MediaMarkt and Walmart.

13    74. Upon information and belief, Corsair and CoolIT have contributed to and continue to

14    contribute to the direct infringement of at least claim 1 of the '196 patent by others (such as

15    distributors, retailers, resellers, customers, and end-users) in the United States under 35 U.S.C.

16    § 271(c). Upon information and belief, Corsair and/or CoolIT supply important (material)

17    components of the Accused Products (as well as instructions for the same) to their respective

18    distributors, retailers, resellers, customers, and end-users in the United States. Upon information and

19    belief, Corsair and CoolIT knew or were willfully blind that the combination for which their

20    components were especially made was both patented and infringing, that the Accused Products are

21    not a staple article or commodity of commerce, and that they have no substantial non-infringing

22    uses.

23    75. Upon information and belief, Corsair and CoolIT have infringed the '196 patent in an

24    egregious and willful manner and with knowledge of the '196 patent, or were willfully blind to the

25    risk of infringement.

26    76. Corsair and CoolIT's infringement of the '196 patent has caused and continues to cause

27    damages and irreparable harm to Asetek.

28

1

**COUNT III**

2

**Infringement of U.S. Patent No. 10,078,354**

3

77. Asetek incorporates by reference paragraphs 11 through 19 and 22 through 46.

4

78. Asetek owns the entire right, title, and interest in and to the '354 patent. A true and

5

correct copy of the '354 patent is attached hereto as Exhibit C.

6

79. Upon information and belief, Corsair and CoolIT have directly infringed one or more

7

claims of the '354 patent under 35 U.S.C. § 271(a) by, among other things, offering for sale, selling,

8

importing and/or distributing the Accused Products in and into the United States.

9

80. The Accused Products infringe at least claim 15 of the '354 patent, either literally and/or

10

under the doctrine of equivalents.

11

81. Upon information and belief, the Accused Products are cooling systems for computer

12

processing units comprising the claimed elements of at least claim 15 of the '354 patent.

13

| **CoolIT's H100i RGB Platinum** | **CoolIT's "New Design"** |
|---|---|

14

15

16

17

18

19

20

21



22

82. Upon information and belief, the Accused Products include "a reservoir configured to

23

circulate a cooling liquid therethrough." For example, as the images of the representative H100i

24

RGB Platinum and the "new design" products below show, the Accused Products include a

25

reservoir, both literally and under the doctrine of equivalents, which is configured to circulate a

26

cooling liquid therethrough.

27

28

| **CoolIT's H100i RGB Platinum** | **CoolIT's "New Design"** |
| --- | --- |
|  | |

83. Upon information and belief, the reservoir of the Accused Products includes "an upper and a lower chamber, wherein the upper chamber and the lower chamber are vertically displaced fluid-containing chambers that are each surrounded by boundary walls." For example, as the images of the representative H100i RGB Platinum and the "new design" products below show, the reservoir of the Accused Products includes an upper chamber and a lower chamber that are vertically displaced and fluid-containing and are surrounded by boundary walls.

| **CoolIT's H100i RGB Platinum** | **CoolIT's "New Design"** |
| --- | --- |
|  | |

FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT
CASE NO. 3:19-CV-00410-EMC

84. Upon information and belief, the reservoir of the Accused Products includes "a first passage that fluidly couples the lower chamber to the upper chamber" and "a second passage positioned at a perimeter of the lower chamber." For example, as the images of the representative H100i RGB Platinum and the "new design" products below show, the reservoir of the Accused Products includes a first passage that fluidly couples the lower chamber and the upper chamber, and the reservoir also has a second passage positioned at a perimeter of the lower chamber.

| **CoolIT's H100i RGB Platinum** | **CoolIT's "New Design"** |
| --- | --- |
|  | |

85. Upon information and belief, the first passage of the Accused Products "directs the cooling liquid into the lower chamber where the cooling liquid splits and is directed along a plurality of channels from a central region of the lower chamber outward, where the cooling liquid is collected and directed from the lower chamber through the second passage." For example, as the images of the representative H100i RGB Platinum and the "new design" products below show, the first passage of the reservoir of the Accused Product directs cooling liquid into the lower chamber where the cooling liquid splits and is directed along a plurality of channels from the center outward. The cooling liquid is collected and then directed from the lower chamber through the second passage.

| **CoolIT's H100i RGB Platinum** | **CoolIT's "New Design"** |
|---|---|



86. Upon information and belief, the reservoir of the Accused Products includes "a heat exchanging interface attached to the reservoir to form a boundary wall of the lower chamber, the heat exchanging interface provides thermal contact between the processing unit and the cooling liquid." For example, as the images of the representative H100i RGB Platinum and the "new design" products below show, the reservoir of the Accused Products have a heat exchanging interface attached to the reservoir to form a boundary wall of the lower chamber and that provides thermal contact between the processing unit and the cooling liquid.

| CoolIT's H100i RGB Platinum | CoolIT's "New Design" |
|---|---|
|  | |

87. Upon information and belief, the reservoir of the Accused Products includes "a pump having a motor and an impeller, the impeller being positioned within the upper chamber of the reservoir." For example, as the images of the representative H100i RGB Platinum and the "new design" products below show, the reservoir of the Accused Products have a pump that includes a motor and an impeller, and the impeller is positioned within the upper chamber.

| CoolIT's H100i RGB Platinum | CoolIT's "New Design" |
|---|---|
|  | |

88. Upon information and belief, the Accused Products include "a radiator spaced apart from and fluidly coupled to the reservoir." For example, as the images of the representative H100i RGB Platinum and the "new design" products below show, the Accused Products having CoolIT's E3 + HV, Gemini, or Marzen pumps include a radiator spaced apart from and fluidly coupled to the reservoir. Upon information and belief, Accused Products having the "new design" will include a radiator spaced apart from and fluidly coupled to the reservoir.

| **CoolIT's H100i RGB Platinum** | **CoolIT's "New Design"** |
|---|---|
|  |  |

89. Upon information and belief, Corsair and CoolIT have induced and continue to actively induce direct infringement of at least claim 15 of the '354 patent by others (such as distributors, retailers, resellers, customers, and end-users) in the United States under 35 U.S.C. § 271(b). Upon information and belief, Corsair and CoolIT knew of the '354 patent and have taken affirmative steps that have encouraged, aided and abetted (and continue to encourage, aid and abet) direct infringement by distributors, retailers, resellers, customers, and end-users in the United States, and Corsair and CoolIT have known that their induced acts constitute infringement of the '354 patent or have been willfully blind to the infringement. These acts include, but are not limited to, Corsair and CoolIT's manufacture/assembly and supply of the Accused Products, promotion on their websites, providing user manuals/guides instructing customers/end users how to install and use the Accused Products, and on information and belief, contracts and agreements with dealers, resellers, retailers, and distributors for the promotions, offers to sell, and sales of the Accused Products in the United

1   States. For example, CoolIT sells the desktop Accused Products to one or more Corsair entities in

2   the U.S. and/or in Hong Kong with the knowledge and understanding that one or more Corsair

3   Defendants would offer for sale and sell at least some of those products in the United States. One or

4   more Corsair Defendants sell those Accused Products to end users in the United States either directly

5   through its website, through distributors, or through retailers such as Amazon, Best Buy, JD.com,

6   MediaMarkt and Walmart.

7          90. Upon information and belief, Corsair and CoolIT have contributed to and continue to

8   contribute to the direct infringement of at least claim 15 of the '354 patent by others (such as

9   distributors, retailers, resellers, customers, and end-users) in the United States under 35 U.S.C.

10  § 271(c). Upon information and belief, Corsair and/or CoolIT supply important (material)

11  components of the Accused Products (as well as instructions for the same) to their respective

12  distributors, retailers, resellers, customers, and end-users in the United States. Upon information and

13  belief, Corsair and CoolIT knew or were willfully blind that the combination for which their

14  components were especially made was both patented and infringing, that the Accused Products are

15  not a staple article or commodity of commerce, and that they have no substantial non-infringing

16  uses.

17         91. Upon information and belief, Corsair and CoolIT have infringed the '354 patent in an

18  egregious and willful manner and with knowledge of the '354 patent, or were willfully blind to the

19  risk of infringement.

20         92. Corsair and CoolIT's infringement of the '354 patent has caused and continues to cause

21  damages and irreparable harm to Asetek.

22                                  **COUNT IV**

23                  **Infringement of U.S. Patent No. 10,078,355**

24         93. Asetek incorporates by reference paragraphs 11 through 19 and 22 through 46.

25         94. Asetek owns the entire right, title, and interest in and to the '355 patent. A true and

26  correct copy of the '355 patent is attached hereto as Exhibit D.

27

28

95. Upon information and belief, Corsair and CoolIT have directly infringed one or more claims of the '355 patent under 35 U.S.C. § 271(a) by, among other things, offering for sale, selling, importing and/or distributing the Accused Products in and into the United States.

96. The Accused Products infringe at least claim 1 of the '355 patent, either literally and/or under the doctrine of equivalents.

97. Upon information and belief, the Accused Products are liquid cooling systems for cooling a heat-generating component of a computer comprising the claimed elements of at least claim 1 of the '355 patent.

| **CoolIT's H100i RGB Platinum** | **CoolIT's "New Design"** |
|---|---|
|  |  |

98. Upon information and belief, the Accused Products include "a reservoir configured to circulate a cooling liquid therethrough." For example, as the images of the representative H100i RGB Platinum and the "new design" products below show, the Accused Products include a reservoir, both literally and under the doctrine of equivalents, which is configured to be coupled to a processing unit positioned on the motherboard of a computer and the reservoir is adapted to pass cooling liquid therethrough.

| **CoolIT's H100i RGB Platinum** | **CoolIT's "New Design"** |
|---|---|



99. Upon information and belief, the reservoir of the Accused Products includes "a pump chamber housing an impeller and defined at least in part by an impeller cover and a double-sided chassis, the impeller being positioned on one side of the chassis and a stator of the pump is positioned on an opposite side of the chassis." For example, as the images of the representative H100i RGB Platinum and the "new design" products below show, the reservoir of the Accused Products includes a pump chamber housing an impeller and defined in part by an impeller cover and a double-sided chassis, and the impeller is positioned on one side of the chassis and a stator of the pump is on the opposite side of the chassis.

| **CoolIT's H100i RGB Platinum** | **CoolIT's "New Design"** |
|---|---|
|  | |

100.    Upon information and belief, the reservoir of the Accused Products includes "a thermal exchange chamber disposed between the pump chamber and the heat-generating component when the system is installed on the heat-generating component." For example, as the images of the representative H100i RGB Platinum and the "new design" products below show, the reservoir of the Accused Products includes a thermal exchange chamber positioned between the pump chamber and the heat generating component when the system is installed on the heat-generating component.

| **CoolIT's H100i RGB Platinum** | **CoolIT's "New Design"** |
|---|---|
|  |  |

101.     Upon information and belief, the reservoir of the Accused Products includes "a heat-exchanging interface forming a boundary wall of the thermal exchange chamber, the heat-exchanging interface has an outer surface configured to be placed in thermal contact with a surface of the heat-generating component and an inner surface that defines a plurality of channels that direct the flow of a cooling liquid within the thermal exchange chamber." For example, as the images of the representative H100i RGB Platinum and the "new design" products below show, the reservoir of the Accused Products have a heat-exchanging interface forming a boundary wall of the thermal exchange chamber and has an outer surface configured to be placed in thermal contact with a surface of the heat-generating component and an inner surface that defines a plurality of channels that direct the flow of a cooling liquid within the thermal exchange chamber.

| CoolIT's H100i RGB Platinum | CoolIT's "New Design" |
|---|---|
| | |



102.    Upon information and belief, the Accused Products include "a heat radiator adapted to pass the cooling liquid therethrough, the heat radiator being fluidly coupled to the reservoir via fluid conduits, the heat radiator being configured to dissipate heat from the cooling liquid." For example, as the images of the representative H100i RGB Platinum and the "new design" products below show, the Accused Products having CoolIT's E3 + HV, Gemini, or Marzen pumps include a radiator spaced apart from and fluidly coupled to the reservoir. Upon information and belief, Accused Products having the "new design" will include a radiator spaced apart from and fluidly coupled to the reservoir.

| CoolIT's H100i RGB Platinum | CoolIT's "New Design" |
|---|---|
| | |



103.     Upon information and belief, the pump chamber of the Accused Products includes "an inlet defined by the impeller cover positioned below a center of the impeller configured to enable the cooling liquid to flow into the center of the pump chamber." For example, as the images of the representative H100i RGB Platinum and the "new design" products below show, the pump chamber of the Accused Products have an inlet defined by the impeller cover positioned below a center of the impeller configured to enable the cooling liquid to flow into the center of the pump chamber.

| **CoolIT's H100i RGB Platinum** | **CoolIT's "New Design"** |
|---|---|
|  |  |

104.     Upon information and belief, the pump chamber of the Accused Products includes "an outlet defined by the impeller cover positioned tangentially to the circumference of the impeller." For example, as the images of the representative H100i RGB Platinum and the "new design" products below show, the pump chamber of the Accused Products have an outlet defined by the impeller cover positioned tangentially to the circumference of the impeller.

| **CoolIT's H100i RGB Platinum** | **CoolIT's "New Design"** |
|---|---|
|  | |

105.     Upon information and belief, Corsair and CoolIT have induced and continue to actively induce direct infringement of at least claim 1 of the '355 patent by others (such as distributors, retailers, resellers, customers, and end-users) in the United States under 35 U.S.C. § 271(b). Upon information and belief, Corsair and CoolIT knew of the '355 patent and have taken affirmative steps that have encouraged, aided and abetted (and continue to encourage, aid and abet) direct infringement by distributors, retailers, resellers, customers, and end-users in the United States, and Corsair and CoolIT have known that their induced acts constitute infringement of the '355 patent or has been willfully blind to the infringement. These acts include, but are not limited to, Corsair and CoolIT's manufacture/assembly and supply of the Accused Products, promotion on their websites, providing user manuals/guides instructing customers/end users how to install and use the Accused Products, and on information and belief, contracts and agreements with dealers, resellers, retailers, and distributors for the promotions, offers to sell, and sales of the Accused Products in the United States. For example, CoolIT sells the desktop Accused Products to one or more Corsair entities in the U.S. and/or in Hong Kong with the knowledge and understanding that one or more Corsair Defendants would offer for sale and sell at least some of those products in the United States. One or more Corsair Defendants sell those Accused Products to end users in the United States either

1  directly through its website, through distributors, or through retailers such as Amazon, Best Buy,

2  JD.com, MediaMarkt and Walmart.

3       106.    Upon information and belief, Corsair and CoolIT have contributed to and continue to

4  contribute to the direct infringement of at least claim 1 of the '355 patent by others (such as

5  distributors, retailers, resellers, customers, and end-users) in the United States under 35 U.S.C.

6  § 271(c). Upon information and belief, Corsair and/or CoolIT supply important (material)

7  components of the Accused Products (as well as instructions for the same) to their respective

8  distributors, retailers, resellers, customers, and end-users in the United States. Upon information and

9  belief, Corsair and CoolIT knew or were willfully blind that the combination for which their

10  components were especially made was both patented and infringing, that the Accused Products are

11  not a staple article or commodity of commerce, and that they have no substantial non-infringing

12  uses.

13       107.    Upon information and belief, Corsair and CoolIT have infringed the '355 patent in an

14  egregious and willful manner and with knowledge of the '355 patent, or were willfully blind to the

15  risk of infringement.

16       108.    Corsair and CoolIT's infringement of the '355 patent has caused and continues to

17  cause damages and irreparable harm to Asetek.

18                   **COUNT V**

19          **Infringement of U.S. Patent No. 8,240,362**

20       109.    Asetek incorporates by reference paragraphs 11 through 19 and 22 through 46.

21       110.    Asetek owns the entire right, title, and interest in and to the '362 patent. A true and

22  correct copy of the '362 patent is attached hereto as Exhibit E.

23       111.    Upon information and belief, Corsair and CoolIT have directly infringed one or more

24  claims of the '362 patent under 35 U.S.C. § 271(a) by, among other things, using the Accused

25  Products in the United States, for example, during demonstrations, testing and repair.

26       112.    Customers and/or end users also directly infringe at least claim 17 of the '362 patent

27  when they install and operate Accused Products in computers and/or servers in accordance with

28  product instructions.

113.    The operation of the Accused Products infringes at least claim 17 of the '362 patent, either literally and/or under the doctrine of equivalents.

114.    Upon information and belief, the Accused Products are liquid cooling systems for electronic components (e.g., processing units) positioned on a motherboard of a computer system.

| CoolIT's H100i RGB Platinum | CoolIT's "New Design" |
|---|---|
|  | |

115.    Upon information and belief, and as the images of the representative H100i RGB Platinum and the "new design" products below show, operation of the Accused Products includes "separably thermally coupling a heat exchanging interface of a reservoir with the electronic component positioned at a first location on the motherboard, the reservoir including an upper chamber and a lower chamber, the upper chamber and the lower chamber being separate chambers that are vertically spaced apart and separated by at least a horizontal wall, the upper chamber and the lower chamber being fluidly coupled by one or more passageways, at least one of the one or more passageways being positioned on the horizontal wall, the heat exchanging interface being removably coupled to the reservoir such that an inside surface of the heat exchanging interface is exposed to the lower chamber of the reservoir."

| **CoolIT's H100i RGB Platinum** | **CoolIT's "New Design"** |
|---|---|
|  | |

116.    Upon information and belief, and as the image of the representative H100i RGB Platinum product shows, operation of the Accused Products having E3 + HV, Gemini, or Marzen Pumps includes "positioning a heat radiator at a second location horizontally spaced apart from the first location, the heat radiator and the reservoir being fluidly coupled together by tubing that extends from the first location to the second location."

117.    Upon information and belief, operation of the "new design" products will also include "positioning a heat radiator at a second location horizontally spaced apart from the first location, the heat radiator and the reservoir being fluidly coupled together by tubing that extends from the first location to the second location."

| **CoolIT's H100i RGB Platinum** | **CoolIT's "New Design"** |
|---|---|
|  |  |

118.    Upon information and belief, and as the images of the representative H100i RGB Platinum and the "new design" products below show, operation of the Accused Products includes "activating a pump to circulate a cooling liquid through the reservoir and the heat radiator, the pump including a motor and an impeller having curved blades, the impeller being positioned in the reservoir." The impeller of the Accused Products is equivalent to the claimed "impeller having curved blades."

| **CoolIT's H100i RGB Platinum** | **CoolIT's "New Design"** |
|---|---|
|  |  |

FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT
CASE NO. 3:19-CV-00410-EMC

119.    Upon information and belief, and as the image of the representative H100i RGB Platinum product below shows, operation of the Accused Products includes "activating a fan to direct air through the heat radiator, the fan being operated by a motor separate from the motor of the pump."

120.    Upon information and belief, operation of the "new design" products will also include "activating a fan to direct air through the heat radiator, the fan being operated by a motor separate from the motor of the pump."

| **CoolIT's H100i RGB Platinum** | **CoolIT's "New Design"** |
| --- | --- |
|  |  |

121.    Upon information and belief, Corsair and CoolIT have actively induced and continue to actively induce direct infringement of at least claim 17 of the '362 patent by others (such as customers and end-users) in the United States under 35 U.S.C. § 271(b). Corsair and CoolIT knew of the '362 patent, and upon information and belief, Corsair and CoolIT have taken affirmative steps that have encouraged, aided and abetted (and continue to encourage, aid and abet) direct infringement by its customers and end-users in the United States, and Corsair and CoolIT have known that their induced acts constitute infringement of the '362 patent or have been willfully blind to the infringement. These acts include, but are not limited to, Corsair and/or CoolIT's manufacture/assembly and supply of the Accused Products, promotion on their websites, providing user manuals/guides instructing customers/end users how to install and use the Accused Products,

and on information and belief, contracts and agreements with dealers, resellers, retailers, and distributors for the promotions, offers to sell, and sales of the Accused Products in the United States. For example, CoolIT sells the desktop Accused Products to one or more Corsair entities in the U.S. and/or in Hong Kong with the knowledge and understanding that one or more Corsair Defendants would offer for sale and sell at least some of those products in the United States, and with the understanding that operation of the Accused Products by customers/end-users will directly infringe at least claim 17 of the '362 patent. One or more Corsair Defendants have sold and continue to sell the Accused Products to end users in the United States either directly through their website, through distributors, or through retailers such as Amazon, Best Buy, JD.com, MediaMarkt and Walmart with the understanding that operation of the Accused Products by customers/end-users will directly infringe at least claim 17 of the '362 patent.

122.    Upon information and belief, Corsair and CoolIT have contributed to and continue to contribute to the direct infringement of at least claim 17 of the '362 patent by others (such as customers and end-users) in the United States under 35 U.S.C. § 271(c). Upon information and belief, Corsair and/or CoolIT supply important (material) components of the Accused Products (as well as instructions for the same) to customers and end-users in the United States. Upon information and belief, Corsair and/or CoolIT knew or were willfully blind that the combination for which their components were especially made was both patented and infringing, that the Accused Products are not a staple article or commodity of commerce, and have no substantial non-infringing uses.

123.    Upon information and belief, Corsair and CoolIT have infringed the '362 patent in an egregious and willful manner and with knowledge of the '362 patent, or were willfully blind to the risk of infringement.

124.    Corsair and CoolIT's infringement of the '362 patent has caused and continues to cause damages and irreparable harm to Asetek.

## **PRAYER FOR RELIEF**

WHEREFORE, Asetek respectfully prays that the Court enter judgment in its favor and award the following relief against CoolIT:

1    A.    A judgment in favor of Asetek that CoolIT and Corsair have infringed (directly,

2 contributorily, and by inducement) the Patents-in-Suit;

3    B.    A judgment in favor of Asetek that CoolIT and Corsair's infringement of the Patents-

4 in-Suit has been willful;

5    C.    Preliminarily and permanently enjoin CoolIT and Corsair, and their officers,

6 directors, employees, agents, licensees, representatives, affiliates, related companies, servants,

7 successors and assigns, and any and all persons acting in privity or in concert with any of them, from

8 further infringing upon the Patents-in-Suit;

9    D.    Award Asetek actual damages pursuant to 35 U.S.C. § 284, in an amount to be

10 determined at trial, as a result of CoolIT and Corsair's infringement of the Patents-in-Suit;

11    E.    Award Asetek pre- and post-judgment interest on all damages awarded, as well as

12 supplemental damages;

13    F.    Order that damages for infringement of the Patents-in-Suit be trebled as provided for

14 by 35 U.S.C. § 284 for CoolIT and Corsair's willful infringement of the Patents-in-Suit;

15    G.    Find this to be an exceptional case and award Asetek its costs and attorney's fees

16 under 35 U.S.C. § 285; and

17    H.    Award and grant Asetek such other and further relief as the Court deems just and

18 proper under the circumstances.

19    **<u>DEMAND TRIAL BY JURY</u>**

20    Asetek demands a jury trial on all matters triable to a jury.

21

22 Dated: January 22, 2021                FINNEGAN, HENDERSON, FARABOW,
                                         GARRETT & DUNNER, LLP
23

24                                       By:   /s/ *Robert F. McCauley*
                                         Robert F. McCauley
25                                       Attorneys for Plaintiff
                                         ASETEK DANMARK A/S
26

27

28