UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASETEK DANMARK A/S,<br><br>    Plaintiff,<br><br>v.<br><br>COOLIT SYSTEMS INC, et al.,<br><br>    Defendants. | Case No. 19-cv-00410-EMC<br><br>**ORDER GRANTING DEFENDANTS'**<br>**MOTION FOR LEAVE TO AMEND**<br>**ANSWERS**<br><br>Docket No. 264 |

## I. INTRODUCTION

On August 6, 2021, Defendant and Counter Claimant CoolIT Systems, Inc. ("CoolIT") and Defendants Corsair Gaming, Inc. and Corsair Memory, Inc. ("Corsair") filed a motion for leave to amend their answers to assert the affirmative defenses of collateral estoppel and judicial estoppel. Mot. for leave to amend answers ("Mot."); Docket No. 264. The motion was heard on October 7, 2021, and the Court ordered the parties to meet and confer and stipulate to applicable limits of the estoppel defenses to obviate the motion. Minute Order; Docket No. 321. However, the parties were unable to reach a complete agreement. On November 23, 2021, the parties submitted a joint statement outlining their respective positions. Joint Statement; Docket No. 342.

For the following reasons, the Court **GRANTS** Defendants' motion for leave to amend answers to add collateral and judicial estoppel defenses.

## II. BACKGROUND

On January 23, 2019, Plaintiff Asetek filed this action against Defendant CoolIT Systems, Inc. ("CoolIT"), accusing CoolIT of infringing several of Asetek's patents (U.S. Patent Nos. 8,240,362 (the "'362 Patent"); 8,245,764 (the "'764 Patent"); 9,733,681 (the "'681 Patent");

1   10,078,354 (the "'354 Patent"); and 10,078,355 (the "'355 Patent")).  Docket No. 1.  On April 11,
2   2019, CoolIT responded by filing an answer and counterclaim, accusing Asetek of infringing
3   several CoolIT patents (U.S. Patent Nos. 8,746,330 (the "'330 patent"), 9,603,284 (the "'284
4   patent"), 9,057,567 (the "'567 patent"), and 10,274,266 (the "'266 patent").  Docket No. 23.
5   Generally speaking, the patents at issue pertain to liquid cooling technology, which transfers heat
6   away from the heat-producing parts of electronic devices (such as processors and semiconductors).
7   The technology operates by absorbing heat from a heat-generating device, transporting the heat
8   away from that source, and dissipating it elsewhere.

   Notably, on December 22, 2020, this Court issued a minute order consolidating the case at
bar with the related case of *Asetek Danmark A/S v. Corsair Gaming, Inc. et al*, Case No. 3:20-cv-
06541-EMC.  Minute Order; Docket No. 207 at 1.  Asetek asserted two of the same patents in the
*Corsair* action (the '354 and '355 patents) along with the '601 and '196 patents, which it alleged
were continuations of the '354 and the '355 patents.  *Corsair* Compl. ¶¶ 1, 13.  As in the instant
case, each of these patents relates to liquid cooling technology for cooling heat-generating
electronic components.  *See id.* ¶ 1.

   After consolidating the instant case with the *Corsair* action, the Court directed the parties
to meet and confer regarding case management for pre-trial and trial, including the filing of a
consolidated complaint.  Minute Order; Docket No. 207 at 2.  The Court also directed the parties
to meet and confer and stipulate to the pre-trial limitations they previously agreed to during their
meet and confers, *e.g.*, expedited contentions for the '601 and '196 patents, with no new
infringement theories by Asetek and no new prior art by CoolIT; no claim construction for the
'601 and '196 patents; no new infringement or invalidity contentions or claim construction for the
'354 or '355 patents; and limits on the number of claims and claims per patent to be tried.  *Id.*

   Subsequently, on January 25, 2021, a joint case management statement was filed with the
proposed deadline to add parties or amend the pleadings set for February 12, 2021.  Docket No.
213.  On February 22, 2021, Defendants filed an administrative motion to correct the joint case
management statement.  *See* Admin. Mot., Exh. A; Docket No. 222-2.  Notably, on March 2,
2021, this Court granted Defendants' administrative motion to correct the joint case management

1    statement and proposed order (Docket No. 213), retroactively setting February 12, 2021 as the
2    deadline to add parties or amend pleadings in the instant case. *See* Clerk's Notice; Docket No.
3    227.
4        With leave from the Court to amend its complaint (Docket No. 225), which was granted on
5    February 25, 2021, Asetek filed its consolidated Second Amended Complaint (the operative
6    complaint) on March 2, 2021. *See* SAC; Docket No. 228. In the SAC, Asetek accuses CoolIT and
7    Corsair of infringing five separate patents: (1) U.S. Patent No. U.S. 10,613,601 ("the '601
8    patent"); (2) U.S. Patent No. 10,599,196 ("the '196 patent"); (3) U.S. Patent No. 10,078,354 ("the
9    '354 patent"); (4) U.S. Patent No. 10,078,355 ("the '355 patent"); (5) U.S. Patent No. 8,240,362
10   ("the '362 patent"). Docket No. 228. The '196 and '601 patents, asserted in the Corsair case, but
11   not in Asetek's initial complaint herein. Asetek added these two patents in the consolidated SAC.
12   On March 16, 2021, CoolIT filed its Answer to the SAC for patent infringement and Third
13   Amended Counterclaims in which it accused Asetek of infringing, *inter alia*, the '330 patent,
14   entitled "Fluid Heat Exchanger Configured to Provide a Split Flow." Docket No. 233 ¶ 11.
15       After the February 12, 2021 deadline to file amended pleadings, Defendants now seek
16   leave to amend their answers. Defendants specifically state that they are seeking leave to amend
17   their answers after learning of Asetek's seemingly inconsistent positions made during a July 27,
18   2021 hearing on Asetek's motion for contempt sanctions in *Asetek Damark A/S v. CMI USA Inc.*
19   *and Cooler Master Co., Ltd.*, Case No. 4:13-00457-JST ("*CMI USA Inc.*") which concerns the
20   '362 patent. *See* Mot. at 1-2. Defendants request leave to amend their answers to add the
21   affirmative defenses of collateral estoppel and judicial estoppel to ensure that Asetek is estopped
22   from changing its definition of a "reservoir" that it argued in the *CMI USA Inc.* trial, a concern
23   triggered by Asetek's new position taken at the July 2021 hearing on Asetek's motion for
24   contempt sanctions in the *CMI USA Inc.* case. Mot. at 4-5.
25       The Court ordered the parties to meet and confer and stipulate to the limitations of the
26   estoppel defenses to obviate the pending motion for leave to amend answers. *See* Minute Order;
27   Docket No. 321. However, the parties were unable to reach a complete agreement regarding their
28   prior litigation positions that pertain to the estoppel defenses. Notably, the parties only stipulated

to the following:

> 1. The claimed "reservoir" in Asetek's invention is a single receptacle that is divided into an upper chamber and a lower chamber, with the upper chamber providing the pumping function and the lower chamber providing the thermal exchange function.
>
> 2. Prior art devices included a pump, a single-chamber reservoir (as that term was used in the prior art), and a cold plate as separate components that were connected using tubing or attached together with clips or screws or permanently coupled.
>
> 3. Asetek's patent claims are directed to a liquid cooling device comprising a dual- chambered reservoir bounded by a heat - exchanging interface.

Joint Statement at 2. As such, currently pending before the Court is Defendants' motion for leave to amend answers to add the estoppel defenses.

### III. LEGAL STANDARD

A. Motion to Amend Under Rules 15 and 16

After a party has amended a pleading once as a matter of course, it may only amend further after obtaining leave of the court, or by consent of the adverse party. Fed. R. Civ. P. 15(a). Generally, Rule 15 advises the court that "leave shall be freely given when justice so requires." *Id*. However, "the grant or denial of a subsequent opportunity to amend is within the discretion of the district court." *Foman v. Davis*, 371 U.S. 178, 182 (1962). In determining whether leave should be granted pursuant to a district court's discretion, the Supreme Court has stated that:

> [i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Id.*

In the Ninth Circuit, the above listed factors—referred to as the *Foman* factors—are not weighed equally. *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051–52 (9th Cir. 2003) ("Not all of the factors merit equal weight. As this circuit and others have held, it is the consideration of prejudice to the opposing party that carries the greatest weight." (citing *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 185 (9th Cir. 1987)). Rather, courts have held that "the

4

1  crucial factor is the resulting prejudice to the opposing party." *Howey v. United States*, 481 F.2d
2  1187, 1190 (9th Cir. 1973). A motion may be denied, however, on grounds of futility of the
3  proposed amendments irrespective of prejudice. *See generally Hoang v. Bank of Am., N.A.*, 910
4  F.3d 1096, 1103 (9th Cir. 2018); *see also Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713
5  F.3d 502, 520 (9th Cir. 2013).

However, once a court has entered a scheduling order, the standards set forth in Rule 16 apply, and a court can modify the scheduling order only for good cause. Fed. R. Civ. P. 16(b)(4). Under Rule 16, a court's inquiry should focus on a party's diligence. *See, e.g., Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). "The pretrial schedule may be modified if it cannot reasonably be met despite the diligence of the party seeking the extension." *Zivkovic v. Southern California Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002) (*quoting Johnson*, 975 F.2d at 609) (internal quotation marks omitted). Only if the moving party establishes good cause to modify the scheduling order under Rule 16 should the court consider whether the moving party also has demonstrated that amendment is appropriate under Rule 15(a). *Johnson*, 975 F.2d at 608; *Rodarte v. Alameda Cty.*, No. 14-cv-00468-KAW, 2015 WL 5440788, at *2 (N.D. Cal. Sept. 15, 2015) ("If, however, the moving party has shown good cause under Rule 16(b), it must then demonstrate that its motion is also proper under Rule 15."). Further, it is the party opposing the amendment that carries the burden of showing why leave to amend should not be granted. *DCD Programs, Ltd.*, 833 F.2d at 187.

Because this Court has adopted a scheduling order, which set the deadline for filing amended pleadings as February 12, 2021, it appears that Rule 16 governs. *See* Clerk's Notice; Docket No. 227. As such, only if this Court concludes that Defendants have establish good cause under Rule 16 will it then consider whether Defendants have demonstrated that amendment is also appropriate under Rule 15(a). *See Johnson*, 975 F.2d at 608.

B.   Collateral Estoppel

The affirmative defense of collateral estoppel, also known as issue preclusion, bars the relitigation of issues actually adjudicated in previous litigation between the same parties. *Beauchamp v. Anaheim Union High School Dist.*, 816 F.3d 1216, 1225 (9th Cir. 2016). For the

5

doctrine to apply: (1) the issue must be identical to the one alleged in prior litigation; (2) the issue must have been "actually litigated" in the prior litigation; and (3) the determination of the issue in the prior litigation must have been "critical and necessary" to the judgment. *Id.* (quoting *Clark v. Bear Stearns & Co., Inc.*, 966 F.2d 1318, 1320 (9th Cir. 1992).

C. Judicial Estoppel

Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position. *Risetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 600 (9th Cir. 1996). The doctrine requires that (1) a party took a "clearly inconsistent" position with the one now expressed, (2) the earlier position was accepted by the court to which it was presented, and (3) the party would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001).

## IV. DISCUSSION

A. Rule 16

1. Good Cause/Diligence

Rule 16(b)'s good cause standard considers the diligence of the party seeking the amendment and is less liberal than Rule 15(a)'s amendment policy. *Synopysys, Inc. v. Magma Design Automation, Inc.* 2007 WL 420184, at *3 (N.D. Cal. Feb. 6, 2007) (citing *Johnson*, 975 F.2d. at 609).

As noted above, Defendants proposed amendments to add the collateral and judicial estoppel affirmative defenses arise from seemingly new and contradictory arguments raised by Asetek in the July 27, 2021 *CMI USA Inc.* motion for contempt sanctions hearing. Mot. 6-7. Asetek's motion for contempt sanctions followed the *CMI USA Inc.* trial, wherein Asetek's '362 and '764 patents, were found to not be invalid over prior art because the patents' "reservoir limitation" required a "single receptacle" that is divided into an upper chamber and lower chamber, whereas the prior art did not. Notably, the jury in *CMI USA Inc.* found that Asetek's '362 patent was valid over prior art because of this single receptacle reservoir limitation, and the Federal Circuit affirmed based on Asetek's single receptacle reservoir limitation. *Id.* at 3.

6

However, at the July 27, 2021 hearing on Asetek's motion for contempt sanctions in *CMI USA Inc.*, Asetek asserted that CMI's product with two separate and separable receptacles infringed the '362 patent. Notably, Asetek claimed that the single receptacle reservoir argument was not the "crucial distinction" for distinguishing the claimed invention from the prior art. *Id.* at 8. Yet, as noted, this was a distinction the *CMI USA Inc.* jury relied upon in finding that the Asetek patents were not invalid over prior art. *Id.* The significance of the single receptacle reservoir distinction is important here because Defendants contend there are reservoir design similarities between CoolIT's product and the Ryu prior art at issue in *CMI USA Inc.* Reply at 3. Defendants argue that both have reservoir designs that have separate and separable receptacles rather than one receptacle contained within another. *Id.* Because of the reservoir design similarities of CoolIT's product and the Ryu prior art at issue in *CMI USA Inc.*, Defendants claim that they should be able to assert collateral and judicial estoppel defenses to Asetek's infringement claims, and prevent Asetek from now pivoting to a new position as it appears to have taken at the July 27, 2021 contempt sanctions hearing. Mot. at 8.

Asetek argues that Defendants failed to demonstrate good cause because they missed the Court-adopted February 12, 2021 deadline for filing amended pleadings and were on notice of Asetek's reservoir limitation definition since it was made clear in its Second Amended Infringement Contentions ("SAIC") on February 5, 2021. Opp'n at 5. Asetek also claims that its SAIC explains the '362 patent's reservoir limitation and how CoolIT's new design allegedly infringes upon it. *Id.* at 6. Notably, in the SAIC, Asetek appears to define its reservoir limitation as "separably thermally coupling a heat exchanging interface of a reservoir with the electronic component positioned at a first location on the motherboard." Opp'n at 6; *see also* SAIC at 1, Docket No. 276-3. Asetek further contends that CoolIT's new design meets Asetek's reservoir limitation since "[t]he reservoir of the 'new design' is formed by two mated and interconnected subcomponents that together form a single housing and a single receptacle defining a fluid path therethrough." Opp'n at 6. Notwithstanding this infringement contention, CoolIT answered the operative amended complaint on March 16, 2021 without asserting the collateral and judicial estoppel defenses. *Id.* at 7.

1    Defendants claim that Asetek's contentions in the SAIC differ from Asetek's infringement
2    theory to which the judicial and collateral estoppel defenses are now directed and thus, Defendants
3    did not have notice of these seemingly inconsistent positions until Asetek took this new position in
4    connection with the *CMI USA Inc*. contempt sanctions motion. Reply at 2. Defendants argue that
5    the proposed estoppel defenses are specifically directed at Asetek's recent argument made in the
6    July 27, 2021 *CMI USA Inc.* hearing that a device with *multiple separable receptacles can satisfy*
7    *the single receptacle reservoir limitation*, a position not previously articulated in the SAIC. *Id*.
8    Defendants state that the SAIC alleges that CoolIT's new design infringes based on the reservoir
9    limitation because the CoolIT design has a single receptacle reservoir that is formed by "two
10   mated and interconnected subcomponents that together form a **single housing and single**
11   **receptacle** defining a fluid path therethrough." *Id., see also* SAIC at 2. Defendants emphasize
12   that the proposed estoppel defenses are directed at a "wholly different argument altogether—that a
13   cooling device with *multiple receptacles* can satisfy the 'reservoir' limitation." Reply at 2,
14   emphasis in original. Moreover, Defendants note that Asetek's contentions in the SAIC do not
15   articulate that "the 'reservoir' need not be a *single receptacle broadly **divided** into functional pump*
16   *and thermal exchange chambers*, which was what the jury found in the claimed invention to be
17   different from Ryu's two separable receptacles joined together." *Id.* (emphasis in original).
18   Although Defendants did not file the instant motion until five months after the February
19   12, 2021 deadline for filing amended pleadings, Defendants claim that they did file the motion
20   promptly on August 6, 2021, after being apprised of Asetek's new reservoir design arguments that
21   were made in the July 27, 2021 *CMI USA Inc.* contempt sanctions hearing. Mot. at 10. In short,
22   they argue that Asetek's assertions at the July 27, 2021 hearing provided them a good cause to
23   tender the proposed amendment.
24   Defendants' arguments have merit. Asetek arguably asserts a broader infringement theory
25   at the *CMI USA Inc*. hearing than that disclosed in the SAIC. This arguable change in
26   infringement theory provides good cause for the amendment sought by CoolIT, as it was this
27   hearing which alerted CoolIT that Asetek might take a new position. *Cf. Synopsys, Inc. v. Magma*
28   *Design Automation, Inc.*, 2007 WL 420184 (N.D. Cal. Feb. 6, 2007) (denying Defendants' motion

8

for leave to amend for failing to show good cause because documents, filed before the amendment deadline, revealed the "new evidence" that Defendants relied upon, and Defendants did not demonstrate that they were unaware of the documents). The mere fact that Defendants filed this motion five months after the February 12, 2021 amendment deadline is not dispositive. *See Fujitsu Ltd. v. Nanya Technology Corp.*, 2008 WL 962146 (N.D. Cal. Apr. 08, 2008) (finding good cause to amend more than one year after the amendment deadline because discovery revealed new information); *see also Finjan Inc. v. Blue Coat Systems Inc.*, 2014 WL 6626227 (N.D. Cal. Nov. 20, 2014) (finding good cause to amend nine months after the amendment deadline because defendants could not have uncovered new facts underlying their new asserted defenses before the deadline).

As such, Defendants have demonstrated good cause and diligence under Rule 16. Thus, the Court now determines if leave to amend should be granted under Rule 15.

B.  Rule 15

1.  Prejudice to Asetek/Undue Delay

Notably, prejudice to the opposing party carries the greatest weight in a court's analysis, and it is the party opposing leave to amend that bears the burden of showing prejudice. *See Eminence Capital*, 316 F.3d at 1052; *see also DCD Programs, Ltd.,* 833 F.2d at 187. In determining whether there is prejudice, courts consider whether the amendment would "greatly change the parties' positions in the action" and require the assertion of new defenses. *Align Technology, Inc. v. Strauss Diamond Instruments, Inc.*, 2019 WL 861422, at *3 (N.D. Cal. Feb 22, 2019).

Defendants argue that it is unlikely that granting the instant motion for leave to amend answers will result in prejudice to Asetek. Mot. at 10. Defendants claim that Asetek has been well-aware of the bases in which it won a Federal Circuit affirmance of the jury verdict in *CMI USA Inc.* and note that as a party in *CMI USA Inc.*, Asetek is in control of, or at least privy to, all factual information in support of Defendants' collateral estoppel and judicial estoppel defenses. *Id.* at 11. Additionally, Defendants emphasize that discovery would not be extended because Defendants would not have any documents to produce other than what is already public record in

9

1  *CMI USA Inc.*, in which Asetek was also a party. *Id.* Further, Defendants note that the collateral
2  and judicial estoppel defenses are based on an undisputed documentary record from the *CMI USA*
3  *Inc.* trial and IPR proceedings and are unlikely to require in-depth factual discovery and
4  emphasize that here, the collateral and judicial estoppel defenses would simply be used to preempt
5  Asetek from changing their position on the single receptacle reservoir limitation. *Id.*

6  In response, Asetek argues that granting leave to amend will cause undue delay because
7  factual discovery may have to be reopened and would significantly alter the case schedule. Opp'n
8  at 18. Further, Asetek claims that it has a right to question CoolIT's witnesses and experts and
9  conduct discovery based on the new defenses. *Id*. *See Muench Photography, Inc. v. Pearson*
10 *Educ. Inc.*, No. 12-cv-01927-WHO, 2013 WL 4426493 at *3 ("granting Muench's motion would
11 cause prejudice because discovery would have to be reopened partially on each of the 485 licenses
12 involved in this matter.").

13 Asetek fails to specify exactly what type of discovery it needs or the length of time
14 required to reopen discovery. The issue of judicial and collateral estoppel appear to turn on the
15 record. Even if some limited discovery were warranted, trial is set for May 9, 2022 – five months
16 hence. If specific discovery keyed to these defenses are needed, it is not clear why such focused
17 discovery could not be accommodated quickly. Further, it is unclear exactly how Asetek's
18 position in the litigation would be changed by adding the affirmative defenses. The affirmative
19 defenses of collateral and judicial estoppel would arguably not expand issues at trial.

20 As such, Asetek has failed to meet its prejudice burden. Moreover, even if Asetek is
21 prejudiced, the prejudice would arguably be *de minimis*. *Cf. Medtronic, Inc. v. AGA Medical*
22 *Corp.*, 2009 WL 416538 (N.D. Cal. Feb. 18, 2009) (Court found that the nonmoving party would
23 be prejudiced because the moving party sought to add a counterclaim with a different factual basis
24 distinct from the underlying claims).

25 2. Bad Faith by Defendants

26 Bad faith generally refers to efforts to amend the pleadings late in the litigation obtain an
27 unfair tactical advantage. *Align Technology, Inc.*, 2019 WL 861422, at *2. Examples include
28 when the moving party seeks to amend merely to prolong the litigation by adding "new but

baseless legal theories," including amendments filed frivolously or for improper purpose. *Griggs v. Pace American Group, Inc.,* 170 F.3d 877, 881 (9th Cir. 1999); *see also Westlake North Prop. Owners Ass'n v. City of Thousand Oaks*, 915 F.2d 1301, 1305 (9th Cir. 1990).

Asetek argues that Defendants' motion is in bad faith because it is Defendants who took contradictory positions in IPRs against Asetek's '354 and '355 patents, arguing that Defendants made conflicting arguments about the reservoir limitation. Opp'n at 14. However, Defendants argue that the IPRs raised the issue of obviousness under § 103, which is a different analysis from the present issue—infringement under the doctrine of equivalents, and claim that their assertion of the estoppel defenses is actually consistent with the positions CoolIT took in IPR. Reply at 5-7. Defendants emphasize that their argument that prior art disclosing multiple receptacles can be used to render Asetek's patents invalid based on obviousness grounds, has no bearing on the infringement issues regarding the reservoir limitation definition here. *Id*. at 5. Here, the amendment seeks to estop Asetek from taking inconsistent positions in asserting infringement by CoolIT. Mot. at 11. Whether Defendants should be estopped based on IPR proceedings is a separate issue that has nothing to do with the assertion of estoppel against Asetek. As such, Asetek fails to demonstrate bad faith for CoolIT's pending motion.

### 3. Futility

A proposed amendment is futile if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Collaboration Props. v. Tandberg ASA*, 2007 WL 205065, at *2 (N.D. Cal. Jan. 25, 2017). Evaluating whether an amendment is futile requires courts to determine whether the amendment would withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Fujifilm Corp. v. Motorola Mobility LLC*, 2014 WL 2730724, at *2 (N.D. Cal. June 16, 2014) (conducting a futility analysis by determining whether two proposed defenses were sufficiently pled to make the defenses plausible). To survive a motion to dismiss, a "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

a.     Collateral Estoppel

For the doctrine of collateral estoppel to apply: (1) the issue must be identical to the one alleged in prior litigation; (2) the issue must have been "actually litigated" in the prior litigation; and (3) the determination of the issue in the prior litigation must have been "critical and necessary" to the judgment. *Beauchamp*, 816 F.3d at 1225 (quoting *Clark v. Bear Stearns & Co., Inc.*, 966 F.2d 1318, 1320 (9th Cir. 1992)). Collateral estoppel may apply to construction of a claim. *See International Gamco, Inc. v. Multimedia Games*, Inc., 732 F.Supp.2d 1082, 1090 (S.D. Cal 2010).

Asetek argues that Defendants are unable to satisfy the first prong because the issue litigated in *CMI USA Inc.* was whether the Ryu prior art rendered Asetek's claims obvious, which is different from the issue of whether CoolIT's new design cooler infringes on Asetek's claim. Opp'n at 13. However, Defendants contend that the precise issue here is identical to the issue in *CMI USA Inc.*: whether a reservoir is defined as "**a single receptacle *divided* into an upper and lower chamber** with the upper chamber providing the **pumping function** and the lower chamber providing the **thermal exchange function**." Reply at 4 (emphasis in original).

As such, the construction of "reservoir" in *CMI USA Inc.*, is arguably an identical issue in this case. Additionally, as noted above, Asetek's single receptacle reservoir limitation was accepted by the court in *CMI USA Inc.*, as it was a finding made by the jury and relied upon by the Federal Circuit when affirming the decision. Thus it appears that Defendants have stated sufficient facts to support a collateral estoppel defense because the reservoir limitation was litigated and necessary to the final judgment. *See* Mot. at 11; *CMI USA Inc.* Verdict Form, Case No: 4:13-00457-JST; Docket No. 219. Therefore, the Court finds that the proposed amendment to add the affirmative defense of collateral estoppel is not futile.

b.     Judicial Estoppel

As for the judicial estoppel affirmative defense, the doctrine requires that (1) a party took a "clearly inconsistent" position with the one now expressed, (2) the earlier position was accepted by the court to which it was presented, and (3) the party would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *New Hampshire v. Maine*, 532

12

U.S. 742, 750-51 (2001).

Asetek points to Judge Tigar's finding that Asetek's positions in the July 27, 2021 *CMI USA Inc.* Motion hearing are not "clearly inconsistent" with the position Asetek previously took during the *CMI USA Inc.* trial. Opp'n at 13-14. However, Defendants note that Judge Tigar only made that statement in reference to the Ryu prior art and redesigned the Cooler Master product, not CoolIT's product at issue here. Reply at 2. Defendants contend that Judge Tigar's observation has no applicability to determining whether Asetek's arguments against the CoolIT product would be inconsistent with the arguments it made in *CMI USA Inc.* because the accused products are not the same. *Id.* at 4. Defendants explain that Judge Tigar's order only considered judicial estoppel "in the context of the particular copper 'thermal exchange chamber' design of the Cooler Master product at issue in *CMI USA*." *Id.* at 2. Defendants note that Judge Tigar posited "a possible scenario in which the Cooler Master configuration could be analogized to 'nesting dolls' in which a smaller receptacle is fully contained within a larger receptacle. (*See* Bhattacharyya Decl., Ex. B, at 6 ('[T]he lower chamber would merely include or consist entirely of a smaller receptacle or sub-chamber. For example, nesting dolls contain many receptacles. But the smaller dolls—or receptacles—do not affect whether the biggest doll is a "single receptacle."').)" Reply at 2-3. Defendants emphasize that this "was a key issue in rejecting the judicial estoppel argument in *CMI USA*, as it suggested a potential way in which the Cooler Master products differed from the Ryu prior art at the 2014 trial." *Id.* at 3.

Further, Defendants note that Judge Tigar never addressed whether the "nesting dolls" argument had any substantive merit and emphasize that the analogy is inapplicable to CoolIT's new design "because whatever wiggle room Asetek had to distinguish the Cooler Master and Ryu designs simply does not exist here." *Id.* Additionally, Defendants argue that their table comparing side-by-side CoolIT's new design to the Ryu prior art reference shows that CoolIT's new design parallels the reservoir design of Ryu, "with separate and separable receptacles that cannot be described as one receptacle contained within another." *Id.* Finally, Defendants emphasize that CoolIT and Corsair were not parties in the *CMI USA Inc.* matter and that Judge Tigar ultimately "ruled in CMI USA and Cooler Master's favor and against Asetek in the

13

sanctions motion, such that the estoppel question ultimately was not dispositive" and as such, "the resolution of the sanctions motion in *CMI USA* can have no bearing on whether CoolIT and Corsair can assert collateral and/or judicial estoppel as defenses against new arguments by Asetek in this case." *Id.* at 4.

An example of the "clearly inconsistent" standard is articulated in *Kruse Technology Partnership v. DMAX, Ltd.*, 2010 WL 11519252 (C.D. Cal. Sept. 21, 2010), where the Court found that the plaintiff's proposed claim construction was clearly inconsistent because the plaintiff previously argued in another proceeding that its proposed claim construction *did not* have a temporal limitation, but presently argued that its proposed claim construction *did* have a temporal limitation. *Id.* at *2. Here, should Asetek now argue in the instant case that a reservoir encompasses multiple receptacles like it did at the July 27, 2021 *CMI USA Inc.* hearing, this argument would appear to be inconsistent with its previous argument in *CMI USA Inc.* that a reservoir limitation requires a single receptacle. Further, as noted above, Asetek's single receptacle reservoir limitation was accepted by the court in *CMI USA Inc.*, as it was a finding made by the jury and relied upon by the Federal Circuit when affirming the decision. This satisfies the second element of judicial estoppel. As to the last element, Asetek's new arguably contradictory definition of reservoir limitation would be unfair to Defendants, who are relying on this very distinction to further their noninfringement arguments. *See Kruse Technology Partnership*, 2010 WL 11519252, at *2 (finding that the unfairness prong was met because the plaintiff would receive a second benefit of adopting its proposed construction after receiving in its initial benefit of defeating summary judgment in a prior case if not estopped). Conversely, Asetek received its initial benefit by prevailing in the *CMI USA Inc.* case with its reservoir limitation and would arguably receive an unfair benefit by adopting a contradicting construction to establish CoolIT's infringement.

Therefore, the Court finds that the proposed amendment to add the affirmative defense of judicial estoppel is not futile. As such, it appears that Defendants have stated sufficient facts which would support both affirmative defenses.

14

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Leave to Amend Answers to add estoppel defenses. Defendants have thirty (30) days from the issuing of this order to file their amended answers with the Court. Since Defendants filed proposed amended answers as exhibits to the motion (Docket Nos. 264-1 and 264-2), the Court directs Defendants to file them as amended answers.

This order disposes of Docket No. 264.

**IT IS SO ORDERED**.

Dated: January 7, 2022

_____
EDWARD M. CHEN
United States District Judge