# EXHIBIT 24

```
 1              IN THE UNITED STATES DISTRICT COURT

 2             FOR THE NORTHERN DISTRICT OF CALIFORNIA

 3                   SAN FRANCISCO DIVISION

 4

 5     ASETEK DANMARK A/S,          )
                                    )
 6          Plaintiff and          )
            Counter-Defendant,     )
 7                                  )
       vs.                          ) Case No. 3:19-cv-00410-EMC
 8                                  )
       COOLIT SYSTEMS, INC.,       )
 9                                  )
            Defendant and          )
10          Counter-Claimant.      )
                                    )
11     COOLIT SYSTEMS USA INC.,    )
       COOLIT SYSTEMS ASIA PACIFIC )
12     LIMITED, COOLIT SYSTEMS     )
       (SHENZHEN) CO., LTD.,       )
13                                  )
            Defendants,            )
14                                  )
       COSAIR GAMING INC., and     )
15     CORSAIR MEMORY INC.,        )
                                    )
16          Defendants.            )
       _____)
17

18          HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

19             DEPOSITION OF DAVID TUCKERMAN, Ph.D.

20                MONDAY, DECEMBER 20, 2021

21

22

23     Reported Remotely and Stenographically by:

24     JANIS JENNINGS, CSR No. 3942, CLR, CCRR

25     Job No. 4997330
```

Page 1

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1

2

3

4

5

6

7      REMOTE DEPOSITION OF DAVID TUCKERMAN, Ph.D., located

8      in Lake Stevens, Washington, taken on behalf of the

9      Defendants and Counter-Claimants CoolIT entities and

10     Corsair entities, beginning at 9:05 a.m., on Monday,

11     December 20, 2021, sworn remotely by Janis Jennings,

12     Certified Shorthand Reporter No. 3942, CLR, CCRR,

13     located in the City of Walnut Creek, County of

14     Contra Costa, State of California.

15

16

17

18

19

20

21

22

23

24

25

Page  2

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1     REMOTE APPEARANCES:

 2

 3     For Plaintiff and Counter-Defendant Asetek Danmark

 4     A/S:

 5          FINNEGAN HENDERSON FARABOW GARRETT & DUNNER LLP

 6          BY:  ARPITA BHATTACHARYYA, ESQ.

 7          3300 Hillview Avenue

 8          Palo Alto, California  94304

 9          650.849.6600

10          arpita.byattacharyya@finnegan.com

11

12     For Defendants and Counter-Claimant CoolIT entities and

13     Corsair entities:

14          COOLEY RLLP

15          BY:  REUBEN CHEN, ESQ.

16               DUSTIN KNIGHT, ESQ.

17          3175 Hanover Street

18          Palo Alto, California  94304

19          650.843.5000

20          rchen@cooley.com

21          dknight@cooley.com

22

23          Also Present:

24               SOSEH KEVORKIAN, Videographer

25
```

Page 3

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1                        I N D E X

2

3     WITNESS                                        PAGE

4     DAVID TUCKERMAN, Ph.D.

5

6

7            EXAMINATION BY MR. CHEN                  10

8            EXAMINATION BY MS. BHATTACHARYYA         249

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                                              Page 4

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
1                    E X H I B I T S

2

3     EXHIBIT                                        PAGE

4     Exhibit 259    Expert Report of Dr. David B.     39

5                    Tuckerman Regarding Invalidity

6                    of U.S. Patent Nos. 8,746,330;

7                    9,603,284; and 10,274,266

8     Exhibit 259-A  Exhibit A; Invalidity Claim Chart  70

9                    for U.S. Patent 8,746,330

10    Exhibit 259-B  Exhibit B; Invalidity Claim Chart  70

11                   for U.S. Patent 9,603,284

12    Exhibit 259-C  Exhibit C; Invalidity Claim Chart  70

13                   for U.S. Patent 10,274,266

14    Exhibit 259-D  Exhibit D; Curriculum Vitae of     70

15                   David B. Tuckerman

16    Exhibit 259-E  Exhibit E; Materials Considered in 71

17                   Preparation of Invalidity Expert

18                   Report

19    Exhibit 259-F  Exhibit F; Infringement            71

20                   Contentions photographs

21    Exhibit 260    Ph.D. Thesis by David Tuckerman    72

22                   Heat-Transfer Microstructures for

23                   Integrated Circuits

24

25
```

Page 5

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1                     E X H I B I T S

 2

 3    EXHIBIT                                          PAGE

 4    Exhibit 261  White Paper "High Flux Heat Removal    94

 5                 with Microchannels - A Roadmap of

 6                 Challenges and Opportunities";

 7                 ASE-clt00044556 - 44565

 8    Exhibit 262  United States Patent No. 5,099,311;   119

 9                 ASE_CLT00044406 - 444419

10    Exhibit 263  United States Patent No. 8,746,330     98

11    Exhibit 264  United States Patent No. 9,603,284     99

12    Exhibit 265  United States Patent No. 10,274,266    99

13    Exhibit 266  Rebuttal Expert Report of Dr. David   109

14                 Tuckerman Regarding Non-Infringement

15                 of U.S. Patent Nos. 8,746,330;

16                 9,603,284; and 10,274,266

17    Exhibit 267  User Manual WaterChill CPU Cooler      126

18                 Antarctica;

19                 ASE-CLT00045006 - 45014

20    Exhibit 268  ExtremeOverclocking.com review        129

21                 Asetek WaterChill Antarctica Water

22                 Cooling Kit; ASE-CLT00044691 - 44701

23    Exhibit 269  Guru3D.com review Asetek WaterChill    130

24                 Watercooling;

25                 ASE-CLT00044702 - 44726
```

Veritext Legal Solutions
866 299-5127

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1                      E X H I B I T S

 2

 3    EXHIBIT                                        PAGE

 4    Exhibit 270  TechwareLabs review WaterChill     133

 5                 by Asetek;

 6                 ASE-CLT00044729 - 44731

 7    Exhibit 271  Excel spreadsheet Antarctica        180

 8                 Sales Data; ASE-CLT00045045

 9    Exhibit 272  United States Patent No. 7,259,965; 183

10                 ASE-CLT00044420 - 44443

11    Exhibit 273  United States Patent No. 5,998,240; 231

12                 ASE-CLT00044523 - 44537

13    Exhibit 274  United States Patent Application    239

14                 Publication 2007/0125526;

15                 ASE-CLT00044671 - 44689

16    Exhibit 275  Asetek "Proceskontrol" document     251

17                 dated 10-13-04

18

19

20

21

22

23

24

25

                                              Page  7
```

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1              MONDAY, DECEMBER 20, 2021; 9:05 A.M.

 2

 3                                                      09:05

 4              THE VIDEOGRAPHER:  Good morning.  We are  09:05

 5     going on the record at 9:05 a.m. on December 20,  09:05

 6     2021.  This is media unit 1 of the video recorded  09:05

 7     deposition of Dr. David Tuckerman taken by counsel  09:05

 8     in the matter of Asetek Danmark A/S versus CoolIT  09:06

 9     Systems Incorporated and all related cross actions  09:06

10     filed in the U.S. District Court for the Northern  09:06

11     District of California, case number               09:06

12     3:19-cv-00410-EMC.                                 09:06

13              This deposition is being held by Veritext  09:06

14     Virtual via Zoom web conferencing.  My name is Soseh  09:06

15     Kevorkian from the firm Veritext and I'm the       09:06

16     videographer.  Our court reporter is Janis Jennings  09:06

17     also from the firm Veritext.                       09:06

18              At this time will counsel and all present  09:06

19     please identify themselves for the record.         09:06

20              MR. CHEN:  Absolutely.  Arpita, would you  09:06

21     like to start.                                     09:06

22              MS. BHATTACHARYYA:  Sure.  Arpita         09:06

23     Bhattacharyya from the Finnegan Law Firm here with  09:06

24     Dr. David Tuckerman.                               09:07

25              MR. CHEN:  And this is Reuben Chen from --  09:07
```

Page 8

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | MS. BHATTACHARYYA:  And -- and -- sorry.  Go | 09:07 |
| 2 | ahead, Rueben.  I wanted to add that I'm here on | 09:07 |
| 3 | behalf of the plaintiff Asetek Danmark A/S. | 09:07 |
| 4 | MR. CHEN:  Thank you.  This is Rueben Chen | 09:07 |
| 5 | from Cooley LLP on behalf of CoolIT as well as | 09:07 |
| 6 | Corsair, and with me is my colleague Dustin Knight. | 09:07 |
| 7 | THE VIDEOGRAPHER:  Thank you. | 09:07 |
| 8 | And I just have a quick question for the | 09:07 |
| 9 | witness.  Your screen went dark during the read-on. | 09:07 |
| 10 | Is there any way to brighten it a little bit or? | 09:07 |
| 11 | THE WITNESS:  You know, I don't know why | 09:07 |
| 12 | it's doing that.  Let me see if I can kill lights | 09:07 |
| 13 | behind me because it may be the -- the | 09:07 |
| 14 | auto-contrast.  I wish -- I wish there was a way to | 09:07 |
| 15 | manually adjust contrast.  Oh, this is much better. | 09:07 |
| 16 | THE VIDEOGRAPHER:  Okay.  Great.  Thank you. | 09:07 |
| 17 | Yeah, that's better.  Thanks. | 09:07 |
| 18 | Janis, whenever you're ready. | 09:07 |
| 19 | | |
| 20 | DAVID TUCKERMAN, Ph.D., | |
| 21 | the witness herein, was sworn and | |
| 22 | testified as follows: | |
| 23 | | 09:08 |
| 24 | DEPOSITION REPORTER:  Thank you. | 09:08 |
| 25 | Please begin, Counsel. | 09:08 |

Page 9

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1              MR. CHEN:  Thank you, Miss Reporter.         09:08

 2

 3                       EXAMINATION                         09:08

 4   BY MR. CHEN:                                            09:08

 5       Q.   Good morning, Dr. Tuckerman.  How are you?     09:08

 6       A.   Fine, thank you.                               09:08

 7       Q.   Great.  Can you please state your full name    09:08

 8   for the record.                                         09:08

 9       A.   David Bazeley Tuckerman.  Middle initials --   09:08

10   middle name is spelled B-a-z-e-l-e-y.                   09:08

11       Q.   Great.  Thank you.                             09:08

12       A.   Last name as it sounds, T-u-c-k-e-r-m-a-n.     09:08

13       Q.   Thank you.  And can you please provide your    09:08

14   home address, please.                                   09:08

15       A.   12724 128th Avenue Northeast, Lake Stevens,    09:08

16   S-t-e-v-e-n-s, Washington State  98258.                 09:09

17       Q.   Okay.  Thank you.  And, Dr. Tuckerman, have    09:09

18   you had your deposition taken before?                   09:09

19       A.   A long time ago.                               09:09

20       Q.   Okay.  And how many times have you been        09:09

21   involved in a deposition?                               09:09

22       A.   Three prior times.                             09:09

23       Q.   Three prior times.                             09:09

24            And were those three prior times all with      09:09

25   respect to a patent case?                               09:09
```

                                                    Page 10

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | Let me introduce into the record Exhibit No. | 13:25 |
| 2 | 267, which is Bates number ASE-CLT00045006 -- | 13:26 |
| 3 | THE WITNESS:  Okay. | |
| 4 | MR. CHEN:  -- to 45014. | 13:26 |
| 5 | (Exhibit 267 marked for identification.) | 13:26 |
| 6 | BY MR. CHEN: | 13:26 |
| 7 | Q.   And you cite to this document in paragraph | 13:26 |
| 8 | 55 of your report; correct? | 13:26 |
| 9 | A.   Okay. | 13:26 |
| 10 | Q.   Correct? | 13:26 |
| 11 | A.   ACT -- 45006, yes, I did.  Oh, wait a | 13:26 |
| 12 | minute, this is 45 -- oh, I see, the pages are | 13:27 |
| 13 | sequential.  Yes.  Yes. | 13:27 |
| 14 | Q.   Okay. | 13:27 |
| 15 | A.   Yes. | |
| 16 | Q.   All right.  What is the publication date of | 13:27 |
| 17 | this document? | 13:27 |
| 18 | A.   Version 4.0 says April 6, 2004. | 13:27 |
| 19 | Q.   And is this version 4.0 or 4.1? | 13:27 |
| 20 | A.   Well, I guess it would be version 4.1. | 13:27 |
| 21 | Q.   Okay.  And what's the publication date for | 13:27 |
| 22 | version 4.1? | 13:27 |
| 23 | A.   That's October 18, 2004. | 13:27 |
| 24 | Q.   Okay.  And can you please go to Figure 2 -- | 13:27 |
| 25 | A.   Okay. | 13:27 |

Page 126

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    Q.    -- of the user manual, which is on Bates    13:27

2    No. ASE-CLT00045008.    13:28

3    A.    Yeah.    13:28

4    Q.    Which part would you describe as the fluid    13:28

5    heat exchanger in Figure 2?    13:28

6    A.    Well, it's a -- an integrated unit.  You    13:28

7    know, I mean, it's -- it collectively functions as    13:28

8    a -- as a fluid heat exchanger.    13:28

9    Q.    So what --    

10    A.    You have to put all the parts together.    13:28

11    Q.    Okay.  So it's not -- it's not No. 1?    13:28

12    A.    I would say you'd have to assemble it for it    13:28

13    to be -- function as a fluid heat exchanger.    13:29

14    Q.    Okay.  So there are multiple versions of    13:29

15    user manuals for Antarctica; correct?    13:29

16    A.    I don't know that.  I only know that this    13:29

17    document shows that there was a version 4.0 and a    13:29

18    4.1.  That's all I know.    13:29

19    Q.    Okay.  So you wouldn't know how many    13:29

20    versions of user manuals there are; correct?    13:29

21    A.    No, I have no idea.    13:29

22    Q.    Okay.  Could you please go to paragraph 54    13:29

23    in your report.  And at paragraph 54, you state:    13:29

24         "Asetek invented and sold the    13:30

25         Antarctica WaterChill CPU cooler in    13:30

Page 127

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | the U.S. in 2004, prior to the | 13:30 |
| 2 | August 9, 2007 priority date of the | 13:30 |
| 3 | '330 patent." | 13:30 |
| 4 | Correct? | 13:30 |
| 5 | A.   That's what it says, yes. | 13:30 |
| 6 | Q.   Okay.  And what did you rely on for your | 13:30 |
| 7 | understanding that the specific Antarctica device | 13:30 |
| 8 | that you inspected in Palo Alto was publicly | 13:30 |
| 9 | available before August of 2007? | 13:30 |
| 10 | A.   What I was shown was that they -- documents | 13:30 |
| 11 | showing that Antarctica was sold around 2004. | 13:30 |
| 12 | The -- I mean, clearly the object I was shown was | 13:30 |
| 13 | not sold because they still had it, so I couldn't | 13:31 |
| 14 | comment on -- on that. | 13:31 |
| 15 | Q.   Do you know for a fact if the specific model | 13:31 |
| 16 | that you inspected was, in fact, sold prior to | 13:31 |
| 17 | August 9, 2007? | 13:31 |
| 18 | MS. BHATTACHARYYA:  Objection.  Calls for a | 13:31 |
| 19 | legal conclusion. | 13:31 |
| 20 | THE WITNESS:  I can't say that I know that | 13:31 |
| 21 | for certain.  That would have to be a question for | 13:31 |
| 22 | Asetek, I guess. | 13:31 |
| 23 | MR. CHEN:  Okay.  I'd like to introduce | 13:31 |
| 24 | Exhibit 268 into the record.  Exhibit 268 is a | 13:31 |
| 25 | document bearing Bates No. ASE-CLT00044691 to 44701. | 13:32 |

Page 128

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | (Exhibit 268 marked for identification.) | 13:32 |
| 2 | BY MR. CHEN: | 13:32 |
| 3 | Q.   Dr. Tuckerman, have you ever seen this | 13:32 |
| 4 | document before? | 13:32 |
| 5 | A.   It does not look familiar. | 13:32 |
| 6 | Q.   Okay.  I don't think you relied on it in | 13:32 |
| 7 | your report. | 13:33 |
| 8 | A.   Right.  And I wouldn't have seen it.  If it | 13:33 |
| 9 | was at all relevant, we would -- I would have | 13:33 |
| 10 | included it, you know. | 13:33 |
| 11 | Q.   So I'm going to go ahead and point you to a | 13:33 |
| 12 | sentence that's on ASE-CLT00044694.  And it's the | 13:33 |
| 13 | first sentence that reads: | 13:33 |
| 14 | "The CPU blocks are where the | 13:33 |
| 15 | WaterChill Antarctica kits really vary | 13:33 |
| 16 | from the first generation water blocks." | 13:33 |
| 17 | [As read.] | |
| 18 | Do you see that? | 13:33 |
| 19 | A.   Yes. | 13:33 |
| 20 | Q.   Were there multiple generations of | 13:33 |
| 21 | WaterChill Antarctica? | 13:33 |
| 22 | A.   I don't know. | 13:33 |
| 23 | MR. CHEN:  I'd like to introduce | 13:33 |
| 24 | Exhibit 269, which is Bates numbered ASE-CLT00044702 | 13:33 |
| 25 | to 44726. | 13:34 |

Page 129

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | (Exhibit 269 marked for identification.) | 13:34 |
| 2 | BY MR. CHEN: | 13:34 |
| 3 | Q.   And I'd like to point -- have you seen this | 13:34 |
| 4 | document before, Dr. Tuckerman? | 13:34 |
| 5 | A.   I don't believe -- I don't believe so. | 13:34 |
| 6 | Q.   Okay.  And could I direct your attention to | 13:34 |
| 7 | the page Bates numbered ASE-CLT00044702. | 13:34 |
| 8 | A.   Oh, 702.  Okay.  It's up near the front. | 13:35 |
| 9 | All right. | 13:35 |
| 10 | Q.   And are you there? | 13:35 |
| 11 | A.   I am there. | 13:35 |
| 12 | Q.   Okay.  Thank you. | 13:35 |
| 13 | Do you see the second to last paragraph that | 13:35 |
| 14 | reads: | 13:35 |
| 15 | "The kit we received from Asetek is | 13:35 |
| 16 | pretty much their best kit.  It's | 13:35 |
| 17 | called the K12AT-L30/220V/Dual | 13:35 |
| 18 | Radiator Socket LGA755 kit, a | 13:35 |
| 19 | CPU/VGA/Chipset kit.  We opted the | 13:35 |
| 20 | version with the thick 1/2" tubing | 13:35 |
| 21 | for optimal flow.  Next to that the | 13:35 |
| 22 | kit has the heavy Hydor L30-II | 13:36 |
| 23 | included, a pump that can push | 13:36 |
| 24 | 1200 liters of water per hour." | 13:36 |
| 25 | Do you see that? | 13:36 |

Page 130

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1     all-in-one is a bit vague here.  In this case I          13:39

2     would use the language that they described it.  It       13:39

3     contains all these components.                            13:39

4     BY MR. CHEN:                                              13:39

5         Q.   And there were others besides Asetek that       13:39

6     prior to Asetek's invention sold all-in-one with the     13:39

7     coolers; correct?                                         13:39

8              MS. BHATTACHARYYA:  Objection.  Outside the     13:39

9     scope of the report.                                      13:39

10             THE WITNESS:  Yeah.  That's not a question I     13:39

11    researched.                                               13:39

12             MR. CHEN:  Okay.  All right.  No problem.        13:39

13             Let me introduce the next exhibit, which is     13:39

14    Exhibit 270, and that is Bates numbered                   13:39

15    ASE-CLT00044729 to 44731.                                 13:39

16             (Exhibit 270 marked for identification.)        13:40

17    BY MR. CHEN:                                              13:40

18        Q.   Do you see that?                                 13:40

19        A.   I do.                                            13:40

20        Q.   Okay.  And have you ever seen this document     13:40

21    before?                                                   13:40

22        A.   I don't believe so.                             13:40

23        Q.   Okay.  Let me direct your attention back to     13:40

24    the user manual, which is Exhibit 267.                    13:40

25             You rely on this user manual for your           13:40

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | report; correct? | 13:40 |
| 2 | A.   Yeah.  I mean, I cite it. | 13:40 |
| 3 | Q.   Right.  Okay.  Not a trick question.  All | 13:41 |
| 4 | right. | 13:41 |
| 5 | Would a person of ordinary skill in the art | 13:41 |
| 6 | looking at the user manual consider that the device | 13:41 |
| 7 | that's shown in the user manual to be the same | 13:41 |
| 8 | device that you inspected in Palo Alto? | 13:41 |
| 9 | A.   Well, it -- it differs in one respect for | 13:41 |
| 10 | sure, and that is that the -- the location of the | 13:41 |
| 11 | ports don't appear to be the same.  And so I don't | 13:41 |
| 12 | know if it's intended to be a schematic, you know, | 13:42 |
| 13 | wherein the Y connection is implied.  Let's see, | 13:42 |
| 14 | well, I mean, I guess it has to be.  Yeah. | 13:42 |
| 15 | So it's a -- it has to be that the outlet | 13:42 |
| 16 | shown there is -- is the output of the Y and they're | 13:42 |
| 17 | just not, you know, showing that detail because it's | 13:42 |
| 18 | kind of a vertical view.  Yeah. | 13:42 |
| 19 | Q.   Okay.  Do the Antarctica pictures and | 13:42 |
| 20 | discussions in the user manual disclose each and | 13:42 |
| 21 | every element of the asserted claims of the '330 | 13:42 |
| 22 | patent? | 13:42 |
| 23 | MS. BHATTACHARYYA:  Objection.  Calls for a | 13:42 |
| 24 | legal conclusion. | 13:42 |
| 25 | THE WITNESS:  Well, what I -- I don't think | 13:43 |

Page 134

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1   that's what I said.  I mean, I -- what I said was          13:43

2   that I viewed those claims as obvious in view of           13:43

3   Antarctica.                                                13:43

4   BY MR. CHEN:                                               13:43

5       Q.   Right.  Right.  Right.  And that -- well,          13:43

6   that's my question to you.  Let me rephrase, then.         13:43

7           Do the Antarctica pictures and discussions         13:43

8   in the user manual render obvious each and every           13:43

9   element of the asserted claims of the '330 patent?         13:43

10          MS. BHATTACHARYYA:  Objection.  Calls for a         13:44

11  legal conclusion.  Mischaracterizes the record.           13:44

12          THE WITNESS:  Just a moment.  I mean... Let         13:44

13  me just refresh my memory on what I said.  So can we       13:44

14  go to the claim -- the relevant claim chart?              13:45

15  BY MR. CHEN:                                               13:45

16      Q.   Yeah.  Actually, let's go to the patent --        13:45

17  let's go to --                                             13:45

18      A.   Well, I'd like to go to the claim chart to        13:45

19  answer this question.                                      13:45

20      Q.   You're welcome to.  You're welcome to.  I'm       13:45

21  just trying to search -- you're welcome.  You've got       13:45

22  the whole report in front of you, so I'm trying to         13:45

23  short-circuit it.  You also have Exhibit 263 which         13:45

24  is the '330 patent as well.                                13:45

25      A.   Yeah.  Okay.  Let me just make sure I got

Page 135

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1   based on not seeing the device.                13:47

 2   BY MR. CHEN:                                    13:47

 3       Q.   Are you aware that Asetek has produced 13:47

 4   videos of Antarctica in this case?             13:47

 5       A.   I was not aware of that.               13:47

 6       Q.   Okay.  So you haven't seen those videos; 13:47

 7   correct?                                        13:47

 8       A.   That is correct.                       13:47

 9       Q.   Let's turn to paragraph 57 of your report. 13:47

10   Why don't you go ahead and read that paragraph and 13:47

11   let me know when you're finished.              13:47

12       A.   Okay.  All right.                      13:48

13       Q.   Okay.  You've had a chance to review   13:48

14   paragraph 57; correct?                         13:48

15       A.   Yeah, I have.                          13:49

16       Q.   Okay.  And you state in paragraph 57 that 13:49

17   the space between adjacent fins is about 0.9 to 1 13:49

18   millimeter; correct?                           13:49

19       A.   Yes.                                   13:49

20       Q.   What evidence do you point to in your report 13:49

21   for this opinion?                              13:49

22       A.   Well, okay.  So first there is Eriksen's 13:49

23   deposition; however, I didn't think that was   13:49

24   sufficient to be something I was going to swear to, 13:49

25   so I wanted to inspect the device personally.  And I 13:49
```

Page 137

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | used like -- I used calipers to measure the fins at | 13:49 |
| 2 | the base which is where I felt the most relevant | 13:49 |
| 3 | dimension was because the base of the fins is where | 13:49 |
| 4 | the most heat transfer occurs. | 13:49 |
| 5 | As fins -- you go up in fin height, they | 13:50 |
| 6 | become less effective.  And so to me, the base was | 13:50 |
| 7 | the relevant dimension to measure it at.  And I got | 13:50 |
| 8 | readings, you know, between 9.9 and 1.0, so I was | 13:50 |
| 9 | okay with that. | 13:50 |
| 10 | Q.   Did you make those measurements prior to | 13:50 |
| 11 | submitting your report or after you submitted your | 13:50 |
| 12 | report? | 13:50 |
| 13 | A.   I made them prior. | 13:50 |
| 14 | Q.   Okay.  Did you record those measurements | 13:50 |
| 15 | anywhere? | 13:50 |
| 16 | A.   I did not, no. | 13:50 |
| 17 | Q.   And you don't include any evidence of those | 13:50 |
| 18 | measurements in your report; correct? | 13:50 |
| 19 | A.   No.  I felt that the readings were close | 13:50 |
| 20 | enough that I didn't need to -- that combined with | 13:50 |
| 21 | the -- you know, Eriksen's testimony and my own | 13:50 |
| 22 | measurements.  I did -- I will say that after I saw | 13:51 |
| 23 | the rebuttal report from Dr. Pokharna, I got | 13:51 |
| 24 | concerned.  He measured the fins at the top; I had | 13:51 |
| 25 | measured them at the bottom. | 13:51 |

Page 138

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | I would say that when you -- the | 13:51 |
| 2 | measurement -- first of all, I would have expected | 13:51 |
| 3 | fins to be larger at the top, that is an inherent -- | 13:51 |
| 4 | channel widths to be larger at the top.  That's an | 13:51 |
| 5 | inherent feature of machining.  And the technique | 13:51 |
| 6 | that Dr. Pokharna used to measure is subject to | 13:51 |
| 7 | error if you, you know, apply excessive force to | 13:51 |
| 8 | the -- you know, to it because the copper is very, | 13:51 |
| 9 | very soft.  And so the slightest little bit of force | 13:51 |
| 10 | will put an indentation in the copper and give you a | 13:51 |
| 11 | high reading. | 13:52 |
| 12 | But, you know, I had the additional concern | 13:52 |
| 13 | that, you know, was there any further corroboration, | 13:52 |
| 14 | you know, besides my own measurements at the base. | 13:52 |
| 15 | And counsel provided me a picture of the machining | 13:52 |
| 16 | document for the Antarctica device, and it showed | 13:52 |
| 17 | them with -- it showed the blades that they say they | 13:52 |
| 18 | used with calipers measuring that blade. | 13:52 |
| 19 | And they to got -- it was 0.93 millimeters | 13:52 |
| 20 | on the -- on the blade, because these were solid | 13:52 |
| 21 | grooves.  And so -- and then the box on the -- that | 13:52 |
| 22 | was next to it that the blades was identified with a | 13:52 |
| 23 | legend that led me to believe that it was a blade | 13:53 |
| 24 | that was intended to give you a nominal 1-millimeter | 13:53 |
| 25 | cut. | 13:53 |

Page 139

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1              And that made sense to me because you always  13:53
 2    get a cut that's wider than your blade.  And so a      13:53
 3    blade that is nominally designed to cut metal at 1     13:53
 4    millimeter might well be 0.93 millimeters wide.  So,   13:53
 5    you know, I, you know, concluded that, okay, it was    13:53
 6    designed for nominally 1 millimeter and I got          13:53
 7    measurements at the base 0.91.  Dr. Pokharna got       13:53
 8    higher measurements, I know that.                      13:53
 9              But, you know, I did say the space between   13:53
10    the adjacent pins is about a 0.9 to 1.0.  I didn't     13:53
11    say precisely.  I didn't take it out to the next       13:54
12    decimal digit.  So that's all the information I have   13:54
13    on the microchannel spacing.                           13:54
14        Q.   But none of the information that you're       13:54
15    referring to is actually cited and included in your    13:54
16    report; correct?  Other than Dr. -- excuse me,         13:54
17    Mr. Eriksen's deposition testimony?                    13:54
18        A.   Well, that's right.  Because I didn't -- at   13:54
19    the time I thought that was good enough.  You know,    13:54
20    I had his -- Eriksen's information and I had my own    13:54
21    measurements at the base, and I didn't think there     13:54
22    was going to be a dispute on the issue, so I didn't    13:54
23    pursue it further.                                     13:54
24        Q.   Did you see that Mr. Eriksen in his           13:54
25    deposition said that 0.6 to 0.8 was his best guess?    13:54
```

Page 140

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | A.   Well, yeah, I did see that. | 13:54 |
| 2 | Q.   Uh-huh.  Did you speak with Mr. Eriksen | 13:54 |
| 3 | before you signed your expert report? | 13:54 |
| 4 | A.   No.  I had never spoken with Mr. Eriksen. | 13:54 |
| 5 | Q.   Okay. | 13:54 |
| 6 | A.   As I said, I wasn't relying on -- I wouldn't | 13:54 |
| 7 | have signed a report relying just on his say so. | 13:55 |
| 8 | That's why I measured them myself.  And in point of | 13:55 |
| 9 | fact, they were larger than -- than his | 13:55 |
| 10 | recollection. | 13:55 |
| 11 | Q.   And to your knowledge, did Mr. Eriksen | 13:55 |
| 12 | measure Antarctica's channel widths? | 13:55 |
| 13 | A.   I don't know what he did.  Like I said, I've | 13:55 |
| 14 | never had contact with him. | 13:55 |
| 15 | Q.   Okay. | 13:55 |
| 16 | A.   And I'll also mention I don't know that the | 13:55 |
| 17 | device I got is representative.  I mean, you know, | 13:55 |
| 18 | there is manufacturing variations.  So, you know, | 13:55 |
| 19 | this is one sample.  Why did they have the sample; | 13:55 |
| 20 | maybe it was a reject they happened to have lying | 13:55 |
| 21 | around out of spec.  I just don't know.  You know, I | 13:55 |
| 22 | only know what I measured. | 13:55 |
| 23 | Q.   Right.  There is no way for you to say with | 13:55 |
| 24 | certainty that the channel widths of the Antarctica | 13:56 |
| 25 | device that was on sale prior to August 9, 2007 was | 13:56 |

Page 141

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    1 millimeter or less; correct?                          13:56

2         MS. BHATTACHARYYA:  Objection.  Calls for a        13:56

3    legal conclusion.  Mischaracterizes the record.         13:56

4    Mischaracterizes prior testimony.                       13:56

5         THE WITNESS:  Yeah.  I would have no way of         13:56

6    knowing that.  I was given a device that I              13:56

7    understood to be representative, and, you know, I       13:56

8    measured it.                                            13:56

9    BY MR. CHEN:                                            13:56

10      Q.   Right.  Okay.  In your report you state         13:56

11   that:                                                   13:56

12           "A person of ordinary skill in the art          13:56

13           would have known that the fins in a             13:56

14           fluid heat exchanger should be disposed         13:57

15           in such a way that they would form              13:57

16           microchannels between adjacent fins."           13:57

17           Correct?

18           (Clarification requested by Reporter.)

19           MR. CHEN:  "...between adjacent fins."

20           DEPOSITION REPORTER:  Thank you.

21           THE WITNESS:  Well, sure.  I mean, like I       13:57

22   say, microchannels had been known at that time for      13:57

23   26 years and their benefits were well understood by     13:57

24   then.                                                   13:57

25   / / /

Veritext Legal Solutions
866 299-5127

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1    BY MR. CHEN:                                          13:57
 2        Q.   And you also state in your report that:     13:57
 3             "This is because microchannels have          13:57
 4             large surface area to volume ratios          13:57
 5             and provide a large heat transfer            13:57
 6             surface area per unit fluid flow             13:57
 7             volume as compared to macro channels         13:57
 8             or mini channels."                           13:57
 9             Is that right?                               13:57
10        A.   Yeah.  I mean, it is correct.  There's       13:57
11    additional benefits that --                           13:58
12        Q.   No, no, I'm asking about your report.        13:58
13        A.   Yeah, that's what my report says, yeah.      13:58
14        Q.   Okay.  And in your report, is that the only  13:58
15    opinion you're -- you offer for why a person of       13:58
16    ordinary skill in the art would have implemented      13:58
17    microchannels?                                        13:58
18        A.   So in my Ph.D. thesis for sure I discussed   13:58
19    the higher heat transfer coefficient that you get.    13:58
20    I can't recall whether that is specifically           13:58
21    discussed in the report.  I -- it -- because it's a   13:58
22    subtler point.  But there is -- there is this         13:58
23    twofold effect that it's getting more surface area    13:59
24    and it's getting -- the narrower channels have        13:59
25    higher heat transfer coefficients, and both are --    13:59
```

Page 143

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1
 2
 3
 4
 5
 6            I, DAVID TUCKERMAN, Ph.D., do hereby declare
 7    under penalty of perjury that I have read the foregoing
 8    transcript; that I have made corrections as appear
 9    noted, in ink, initialed by me, or attached hereto; that
10    my testimony as contained herein, as corrected, is true
11    and correct.
12            EXECUTED this ____ day of _____,
13    2022, at _____, _ _____.
14                  (City)                    (State)
15
16
17
18                      DAVID TUCKERMAN
19
20
21
22
23
24
25
                                            Page 269
```

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1          I, JANIS JENNINGS, CSR No. 3942, Certified

2     Shorthand Reporter, certify:

3          That the foregoing proceedings were taken

4     before me at the time and place therein set forth, at

5     which time the witness was duly sworn by me;

6          That the testimony of the witness, the

7     questions propounded, and all objections and statements

8     made at the time of the examination were recorded

9     stenographically by me and were thereafter transcribed;

10         That the foregoing pages contain a full, true

11    and accurate record of all proceedings and testimony.

12         Pursuant to F.R.C.P. 30(e)(2) before

13    completion of the proceedings, review of the transcript

14    [X] was [ ] was not requested.

15         I further certify that I am not a relative or

16    employee of any attorney of the parties, nor financially

17    interested in the action.

18         I declare under penalty of perjury under the

19    laws of California that the foregoing is true and

20    correct.

21    Dated this 4th day of January, 2022.

22

23    _____

24    JANIS JENNINGS, CSR NO. 3942

25    CLR, CCRR

Page 270