# EXHIBIT 2

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1              IN THE UNITED STATES DISTRICT COURT
 2            FOR THE NORTHERN DISTRICT OF CALIFORNIA
 3                    SAN FRANCISCO DIVISION
 4
 5     ASETEK DANMARK A/S,           )
                                     )
 6          Plaintiff and           )
            Counter-Defendant,      )
 7                                   )
       vs.                          ) Case No. 3:19-cv-00410-EMC
 8                                   )
       COOLIT SYSTEMS, INC.,        )
 9                                   )
            Defendant and           )
10          Counter-Claimant.       )
                                     )
11     COOLIT SYSTEMS USA INC.,     )
       COOLIT SYSTEMS ASIA PACIFIC )
12     LIMITED, COOLIT SYSTEMS      )
       (SHENZHEN) CO., LTD.,        )
13                                   )
            Defendants,             )
14                                   )
       COSAIR GAMING INC., and      )
15     CORSAIR MEMORY INC.,         )
                                     )
16          Defendants.             )
       _____)
17
18          HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
19             DEPOSITION OF DAVID TUCKERMAN, Ph.D.
20                 MONDAY, DECEMBER 20, 2021
21
22
23     Reported Remotely and Stenographically by:
24     JANIS JENNINGS, CSR No. 3942, CLR, CCRR
25     Job No. 4997330
```

Page 1

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1

 2

 3

 4

 5

 6

 7        REMOTE DEPOSITION OF DAVID TUCKERMAN, Ph.D., located

 8        in Lake Stevens, Washington, taken on behalf of the

 9        Defendants and Counter-Claimants CoolIT entities and

10        Corsair entities, beginning at 9:05 a.m., on Monday,

11        December 20, 2021, sworn remotely by Janis Jennings,

12        Certified Shorthand Reporter No. 3942, CLR, CCRR,

13        located in the City of Walnut Creek, County of

14        Contra Costa, State of California.

15

16

17

18

19

20

21

22

23

24

25

                                                     Page  2
```

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1      REMOTE APPEARANCES:

 2

 3      For Plaintiff and Counter-Defendant Asetek Danmark

 4      A/S:

 5           FINNEGAN HENDERSON FARABOW GARRETT & DUNNER LLP

 6           BY:  ARPITA BHATTACHARYYA, ESQ.

 7           3300 Hillview Avenue

 8           Palo Alto, California  94304

 9           650.849.6600

10           arpita.byattacharyya@finnegan.com

11

12      For Defendants and Counter-Claimant CoolIT entities and

13      Corsair entities:

14           COOLEY RLLP

15           BY:  REUBEN CHEN, ESQ.

16                DUSTIN KNIGHT, ESQ.

17           3175 Hanover Street

18           Palo Alto, California  94304

19           650.843.5000

20           rchen@cooley.com

21           dknight@cooley.com

22

23           Also Present:

24                SOSEH KEVORKIAN, Videographer

25
```

Page 3

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1                           I N D E X

2

3    WITNESS                                              PAGE

4    DAVID TUCKERMAN, Ph.D.

5

6

7              EXAMINATION BY MR. CHEN                    10

8              EXAMINATION BY MS. BHATTACHARYYA           249

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                                             Page  4

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1                       E X H I B I T S

 2

 3     EXHIBIT                                            PAGE

 4     Exhibit 259    Expert Report of Dr. David B.         39

 5                    Tuckerman Regarding Invalidity

 6                    of U.S. Patent Nos. 8,746,330;

 7                    9,603,284; and 10,274,266

 8     Exhibit 259-A  Exhibit A; Invalidity Claim Chart     70

 9                    for U.S. Patent 8,746,330

10     Exhibit 259-B  Exhibit B; Invalidity Claim Chart     70

11                    for U.S. Patent 9,603,284

12     Exhibit 259-C  Exhibit C; Invalidity Claim Chart     70

13                    for U.S. Patent 10,274,266

14     Exhibit 259-D  Exhibit D; Curriculum Vitae of        70

15                    David B. Tuckerman

16     Exhibit 259-E  Exhibit E; Materials Considered in    71

17                    Preparation of Invalidity Expert

18                    Report

19     Exhibit 259-F  Exhibit F; Infringement               71

20                    Contentions photographs

21     Exhibit 260    Ph.D. Thesis by David Tuckerman       72

22                    Heat-Transfer Microstructures for

23                    Integrated Circuits

24

25
```

Veritext Legal Solutions
866 299-5127

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1                        E X H I B I T S

 2

 3     EXHIBIT                                              PAGE

 4     Exhibit 261   White Paper "High Flux Heat Removal     94

 5                   with Microchannels - A Roadmap of

 6                   Challenges and Opportunities";

 7                   ASE-clt00044556 - 44565

 8     Exhibit 262   United States Patent No. 5,099,311;    119

 9                   ASE_CLT00044406 - 444419

10     Exhibit 263   United States Patent No. 8,746,330      98

11     Exhibit 264   United States Patent No. 9,603,284      99

12     Exhibit 265   United States Patent No. 10,274,266     99

13     Exhibit 266   Rebuttal Expert Report of Dr. David    109

14                   Tuckerman Regarding Non-Infringement

15                   of U.S. Patent Nos. 8,746,330;

16                   9,603,284; and 10,274,266

17     Exhibit 267   User Manual WaterChill CPU Cooler      126

18                   Antarctica;

19                   ASE-CLT00045006 - 45014

20     Exhibit 268   ExtremeOverclocking.com review         129

21                   Asetek WaterChill Antarctica Water

22                   Cooling Kit; ASE-CLT00044691 - 44701

23     Exhibit 269   Guru3D.com review Asetek WaterChill    130

24                   Watercooling;

25                   ASE-CLT00044702 - 44726
```

Veritext Legal Solutions
866 299-5127

```
 1                      E X H I B I T S

 2

 3     EXHIBIT                                          PAGE

 4     Exhibit 270  TechwareLabs review WaterChill       133

 5                  by Asetek;

 6                  ASE-CLT00044729 - 44731

 7     Exhibit 271  Excel spreadsheet Antarctica         180

 8                  Sales Data; ASE-CLT00045045

 9     Exhibit 272  United States Patent No. 7,259,965;  183

10                  ASE-CLT00044420 - 44443

11     Exhibit 273  United States Patent No. 5,998,240;  231

12                  ASE-CLT00044523 - 44537

13     Exhibit 274  United States Patent Application      239

14                  Publication 2007/0125526;

15                  ASE-CLT00044671 - 44689

16     Exhibit 275  Asetek "Proceskontrol" document       251

17                  dated 10-13-04

18

19

20

21

22

23

24

25

                                                Page  7
```

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1            MONDAY, DECEMBER 20, 2021; 9:05 A.M.

 2

 3                                                      09:05

 4            THE VIDEOGRAPHER:  Good morning.  We are  09:05

 5    going on the record at 9:05 a.m. on December 20,  09:05

 6    2021.  This is media unit 1 of the video recorded 09:05

 7    deposition of Dr. David Tuckerman taken by counsel 09:05

 8    in the matter of Asetek Danmark A/S versus CoolIT  09:06

 9    Systems Incorporated and all related cross actions 09:06

10    filed in the U.S. District Court for the Northern  09:06

11    District of California, case number               09:06

12    3:19-cv-00410-EMC.                                09:06

13            This deposition is being held by Veritext  09:06

14    Virtual via Zoom web conferencing.  My name is Soseh 09:06

15    Kevorkian from the firm Veritext and I'm the       09:06

16    videographer.  Our court reporter is Janis Jennings 09:06

17    also from the firm Veritext.                       09:06

18            At this time will counsel and all present  09:06

19    please identify themselves for the record.         09:06

20            MR. CHEN:  Absolutely.  Arpita, would you  09:06

21    like to start.                                     09:06

22            MS. BHATTACHARYYA:  Sure.  Arpita          09:06

23    Bhattacharyya from the Finnegan Law Firm here with 09:06

24    Dr. David Tuckerman.                               09:07

25            MR. CHEN:  And this is Reuben Chen from --  09:07
```

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | MS. BHATTACHARYYA:  And -- and -- sorry.  Go | 09:07 |
| 2 | ahead, Rueben.  I wanted to add that I'm here on | 09:07 |
| 3 | behalf of the plaintiff Asetek Danmark A/S. | 09:07 |
| 4 | MR. CHEN:  Thank you.  This is Rueben Chen | 09:07 |
| 5 | from Cooley LLP on behalf of CoolIT as well as | 09:07 |
| 6 | Corsair, and with me is my colleague Dustin Knight. | 09:07 |
| 7 | THE VIDEOGRAPHER:  Thank you. | 09:07 |
| 8 | And I just have a quick question for the | 09:07 |
| 9 | witness.  Your screen went dark during the read-on. | 09:07 |
| 10 | Is there any way to brighten it a little bit or? | 09:07 |
| 11 | THE WITNESS:  You know, I don't know why | 09:07 |
| 12 | it's doing that.  Let me see if I can kill lights | 09:07 |
| 13 | behind me because it may be the -- the | 09:07 |
| 14 | auto-contrast.  I wish -- I wish there was a way to | 09:07 |
| 15 | manually adjust contrast.  Oh, this is much better. | 09:07 |
| 16 | THE VIDEOGRAPHER:  Okay.  Great.  Thank you. | 09:07 |
| 17 | Yeah, that's better.  Thanks. | 09:07 |
| 18 | Janis, whenever you're ready. | 09:07 |
| 19 | | |
| 20 | DAVID TUCKERMAN, Ph.D., | |
| 21 | the witness herein, was sworn and | |
| 22 | testified as follows: | |
| 23 | | 09:08 |
| 24 | DEPOSITION REPORTER:  Thank you. | 09:08 |
| 25 | Please begin, Counsel. | 09:08 |

Page 9

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | MR. CHEN:  Thank you, Miss Reporter. | 09:08 |
| 2 | | |
| 3 | EXAMINATION | 09:08 |
| 4 | BY MR. CHEN: | 09:08 |
| 5 | Q.   Good morning, Dr. Tuckerman.  How are you? | 09:08 |
| 6 | A.   Fine, thank you. | 09:08 |
| 7 | Q.   Great.  Can you please state your full name | 09:08 |
| 8 | for the record. | 09:08 |
| 9 | A.   David Bazeley Tuckerman.  Middle initials -- | 09:08 |
| 10 | middle name is spelled B-a-z-e-l-e-y. | 09:08 |
| 11 | Q.   Great.  Thank you. | 09:08 |
| 12 | A.   Last name as it sounds, T-u-c-k-e-r-m-a-n. | 09:08 |
| 13 | Q.   Thank you.  And can you please provide your | 09:08 |
| 14 | home address, please. | 09:08 |
| 15 | A.   12724 128th Avenue Northeast, Lake Stevens, | 09:08 |
| 16 | S-t-e-v-e-n-s, Washington State  98258. | 09:09 |
| 17 | Q.   Okay.  Thank you.  And, Dr. Tuckerman, have | 09:09 |
| 18 | you had your deposition taken before? | 09:09 |
| 19 | A.   A long time ago. | 09:09 |
| 20 | Q.   Okay.  And how many times have you been | 09:09 |
| 21 | involved in a deposition? | 09:09 |
| 22 | A.   Three prior times. | 09:09 |
| 23 | Q.   Three prior times. | 09:09 |
| 24 | And were those three prior times all with | 09:09 |
| 25 | respect to a patent case? | 09:09 |

Page 10

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | the right one.  So we're talking about the '330 | 13:45 |
| 2 | patent specifically right now? | 13:45 |
| 3 | Q.   That's correct, yeah. | 13:45 |
| 4 | A.   Ok. | 13:45 |
| 5 | Q.   And if you -- if you want, we can go through | 13:45 |
| 6 | claim 1. | 13:46 |
| 7 | A.   Just a moment, please. | 13:46 |
| 8 | Q.   Uh-huh. | 13:46 |
| 9 | A.   Okay.  All right.  So I have -- I mean, | 13:46 |
| 10 | Exhibit A, chart 1, obvious in view of Antarctica, | 13:46 |
| 11 | so that's my position. | 13:46 |
| 12 | Q.   Right.  Again, that's -- so yes, so let me | 13:46 |
| 13 | just repeat the question. | 13:46 |
| 14 |     So do the Antarctica pictures and | 13:46 |
| 15 | discussions in the user manual render obvious each | 13:46 |
| 16 | and every element of the asserted claims of the '330 | 13:46 |
| 17 | patent? | 13:46 |
| 18 |     MS. BHATTACHARYYA:  Objection.  Calls for a | 13:46 |
| 19 | legal conclusion.  Mischaracterizes the record.  And | 13:46 |
| 20 | mischaracterizes Dr. Tuckerman's report on | 13:46 |
| 21 | invalidity of the '330 patent. | 13:46 |
| 22 |     THE WITNESS:  So the user manual isn't the | 13:46 |
| 23 | whole story.  I mean, I had to examine it myself to, | 13:46 |
| 24 | you know, render these conclusions.  I wouldn't have | 13:46 |
| 25 | been able -- you know, I wouldn't have done it just | 13:46 |

Page 136

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | based on not seeing the device. | 13:47 |
| 2 | BY MR. CHEN: | 13:47 |
| 3 | Q.   Are you aware that Asetek has produced | 13:47 |
| 4 | videos of Antarctica in this case? | 13:47 |
| 5 | A.   I was not aware of that. | 13:47 |
| 6 | Q.   Okay.  So you haven't seen those videos; | 13:47 |
| 7 | correct? | 13:47 |
| 8 | A.   That is correct. | 13:47 |
| 9 | Q.   Let's turn to paragraph 57 of your report. | 13:47 |
| 10 | Why don't you go ahead and read that paragraph and | 13:47 |
| 11 | let me know when you're finished. | 13:47 |
| 12 | A.   Okay.  All right. | 13:48 |
| 13 | Q.   Okay.  You've had a chance to review | 13:48 |
| 14 | paragraph 57; correct? | 13:48 |
| 15 | A.   Yeah, I have. | 13:49 |
| 16 | Q.   Okay.  And you state in paragraph 57 that | 13:49 |
| 17 | the space between adjacent fins is about 0.9 to 1 | 13:49 |
| 18 | millimeter; correct? | 13:49 |
| 19 | A.   Yes. | 13:49 |
| 20 | Q.   What evidence do you point to in your report | 13:49 |
| 21 | for this opinion? | 13:49 |
| 22 | A.   Well, okay.  So first there is Eriksen's | 13:49 |
| 23 | deposition; however, I didn't think that was | 13:49 |
| 24 | sufficient to be something I was going to swear to, | 13:49 |
| 25 | so I wanted to inspect the device personally.  And I | 13:49 |

Page 137

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | used like -- I used calipers to measure the fins at | 13:49 |
| 2 | the base which is where I felt the most relevant | 13:49 |
| 3 | dimension was because the base of the fins is where | 13:49 |
| 4 | the most heat transfer occurs. | 13:49 |
| 5 | As fins -- you go up in fin height, they | 13:50 |
| 6 | become less effective.  And so to me, the base was | 13:50 |
| 7 | the relevant dimension to measure it at.  And I got | 13:50 |
| 8 | readings, you know, between 9.9 and 1.0, so I was | 13:50 |
| 9 | okay with that. | 13:50 |
| 10 | Q.   Did you make those measurements prior to | 13:50 |
| 11 | submitting your report or after you submitted your | 13:50 |
| 12 | report? | 13:50 |
| 13 | A.   I made them prior. | 13:50 |
| 14 | Q.   Okay.  Did you record those measurements | 13:50 |
| 15 | anywhere? | 13:50 |
| 16 | A.   I did not, no. | 13:50 |
| 17 | Q.   And you don't include any evidence of those | 13:50 |
| 18 | measurements in your report; correct? | 13:50 |
| 19 | A.    No.  I felt that the readings were close | 13:50 |
| 20 | enough that I didn't need to -- that combined with | 13:50 |
| 21 | the -- you know, Eriksen's testimony and my own | 13:50 |
| 22 | measurements.  I did -- I will say that after I saw | 13:51 |
| 23 | the rebuttal report from Dr. Pokharna, I got | 13:51 |
| 24 | concerned.  He measured the fins at the top; I had | 13:51 |
| 25 | measured them at the bottom. | 13:51 |

Page 138

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | I would say that when you -- the | 13:51 |
| 2 | measurement -- first of all, I would have expected | 13:51 |
| 3 | fins to be larger at the top, that is an inherent -- | 13:51 |
| 4 | channel widths to be larger at the top.  That's an | 13:51 |
| 5 | inherent feature of machining.  And the technique | 13:51 |
| 6 | that Dr. Pokharna used to measure is subject to | 13:51 |
| 7 | error if you, you know, apply excessive force to | 13:51 |
| 8 | the -- you know, to it because the copper is very, | 13:51 |
| 9 | very soft.  And so the slightest little bit of force | 13:51 |
| 10 | will put an indentation in the copper and give you a | 13:51 |
| 11 | high reading. | 13:52 |
| 12 | But, you know, I had the additional concern | 13:52 |
| 13 | that, you know, was there any further corroboration, | 13:52 |
| 14 | you know, besides my own measurements at the base. | 13:52 |
| 15 | And counsel provided me a picture of the machining | 13:52 |
| 16 | document for the Antarctica device, and it showed | 13:52 |
| 17 | them with -- it showed the blades that they say they | 13:52 |
| 18 | used with calipers measuring that blade. | 13:52 |
| 19 | And they to got -- it was 0.93 millimeters | 13:52 |
| 20 | on the -- on the blade, because these were solid | 13:52 |
| 21 | grooves.  And so -- and then the box on the -- that | 13:52 |
| 22 | was next to it that the blades was identified with a | 13:52 |
| 23 | legend that led me to believe that it was a blade | 13:53 |
| 24 | that was intended to give you a nominal 1-millimeter | 13:53 |
| 25 | cut. | 13:53 |

Page 139

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | And that made sense to me because you always | 13:53 |
| 2 | get a cut that's wider than your blade.  And so a | 13:53 |
| 3 | blade that is nominally designed to cut metal at 1 | 13:53 |
| 4 | millimeter might well be 0.93 millimeters wide.  So, | 13:53 |
| 5 | you know, I, you know, concluded that, okay, it was | 13:53 |
| 6 | designed for nominally 1 millimeter and I got | 13:53 |
| 7 | measurements at the base 0.91.  Dr. Pokharna got | 13:53 |
| 8 | higher measurements, I know that. | 13:53 |
| 9 | But, you know, I did say the space between | 13:53 |
| 10 | the adjacent pins is about a 0.9 to 1.0.  I didn't | 13:53 |
| 11 | say precisely.  I didn't take it out to the next | 13:54 |
| 12 | decimal digit.  So that's all the information I have | 13:54 |
| 13 | on the microchannel spacing. | 13:54 |
| 14 | Q.  But none of the information that you're | 13:54 |
| 15 | referring to is actually cited and included in your | 13:54 |
| 16 | report; correct?  Other than Dr. -- excuse me, | 13:54 |
| 17 | Mr. Eriksen's deposition testimony? | 13:54 |
| 18 | A.  Well, that's right.  Because I didn't -- at | 13:54 |
| 19 | the time I thought that was good enough.  You know, | 13:54 |
| 20 | I had his -- Eriksen's information and I had my own | 13:54 |
| 21 | measurements at the base, and I didn't think there | 13:54 |
| 22 | was going to be a dispute on the issue, so I didn't | 13:54 |
| 23 | pursue it further. | 13:54 |
| 24 | Q.  Did you see that Mr. Eriksen in his | 13:54 |
| 25 | deposition said that 0.6 to 0.8 was his best guess? | 13:54 |

Page 140

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1      A.    Well, yeah, I did see that.              13:54

2      Q.    Uh-huh.  Did you speak with Mr. Eriksen   13:54

3  before you signed your expert report?            13:54

4      A.    No.  I had never spoken with Mr. Eriksen.  13:54

5      Q.    Okay.                                     13:54

6      A.    As I said, I wasn't relying on -- I wouldn't  13:54

7  have signed a report relying just on his say so.   13:55

8  That's why I measured them myself.  And in point of  13:55

9  fact, they were larger than -- than his            13:55

10  recollection.                                      13:55

11      Q.    And to your knowledge, did Mr. Eriksen    13:55

12  measure Antarctica's channel widths?              13:55

13      A.    I don't know what he did.  Like I said, I've  13:55

14  never had contact with him.                        13:55

15      Q.    Okay.                                     13:55

16      A.    And I'll also mention I don't know that the  13:55

17  device I got is representative.  I mean, you know,  13:55

18  there is manufacturing variations.  So, you know,   13:55

19  this is one sample.  Why did they have the sample;  13:55

20  maybe it was a reject they happened to have lying   13:55

21  around out of spec.  I just don't know.  You know, I  13:55

22  only know what I measured.                         13:55

23      Q.    Right.  There is no way for you to say with  13:55

24  certainty that the channel widths of the Antarctica  13:56

25  device that was on sale prior to August 9, 2007 was  13:56

Page 141

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | THE VIDEOGRAPHER:  That's Exhibit Share | 18:47 |
| 2 | which I'm not in charge of.  I think Janis can help. | 18:47 |
| 3 | If you want to share an exhibit, I've enabled you to | 18:47 |
| 4 | share the screen. | 18:47 |
| 5 | MS. BHATTACHARYYA:  I would have to mark | 18:47 |
| 6 | that exhibit as well.  So, Janis, do you -- do you | 18:47 |
| 7 | know what would be the best way of handling this? | 18:47 |
| 8 | THE VIDEOGRAPHER:  Should we go off the | 18:47 |
| 9 | record. | 18:47 |
| 10 | MR. CHEN:  Off the record. | 18:47 |
| 11 | MS. BHATTACHARYYA:  Sure. | 18:47 |
| 12 | THE VIDEOGRAPHER:  We're going off the | 18:47 |
| 13 | record at 6:47 p.m.  This is the end of media 8. | 18:47 |
| 14 | (Off the record.) | 18:51 |
| 15 | THE VIDEOGRAPHER:  We are on the record at | 18:57 |
| 16 | 6:57 p.m.  This is the beginning of media 10 in the | 18:57 |
| 17 | deposition of Dr. David Tuckerman. | 18:57 |
| 18 | (Exhibit 275 marked for identification.) | 18:57 |
| 19 | BY MS. BHATTACHARYYA: | 18:57 |
| 20 | Q.   Dr. Tuckerman, I just marked as Exhibit 275, | 18:57 |
| 21 | a document that -- it's an Asetek document, and I'm | 18:58 |
| 22 | sharing that on the screen now so that counsel and | 18:58 |
| 23 | you can see it. | 18:58 |
| 24 | Do you -- do you see -- do you see that on | 18:58 |
| 25 | the screen?  It's marked as Exhibit 275. | 18:58 |

Page 261

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
1              MR. CHEN:  I object to the introduction of     18:58

2    this exhibit.  It was not included in               18:58

3    Dr. Tuckerman's report.  It was not identified in   18:58

4    any materials considered by Dr. Tuckerman.  It is   18:58

5    late.  It is improper to be introducing this exhibit 18:58

6    as part of this deposition.  I reserve all rights to 18:58

7    move to strike it and all the rights with respect to 18:58

8    expunging it.                                        18:58

9    BY MS. BHATTACHARYYA:                                18:58

10       Q.   Dr. Tuckerman, earlier in your deposition   18:58

11   when CoolIT and Corsair's counsel was questioning    18:58

12   you, you mentioned at looking at a machining         18:58

13   document.  Is Exhibit 275 the document that you were 18:58

14   referring to?                                        18:59

15             MR. CHEN:  And, Counsel, can I just get a   18:59

16   continuing objection on this exhibit?               18:59

17             MS. BHATTACHARYYA:  Sure.                  18:59

18             THE WITNESS:  Yes, I recall you show -- you 18:59

19   showing this to me.                                  18:59

20   BY MS. BHATTACHARYYA:                                18:59

21       Q.   And is this Exhibit 275 the document that   18:59

22   you referred to as the Asetek machining document     18:59

23   earlier in your deposition?                          18:59

24             MR. CHEN:  Objection.  Leading in addition  18:59

25   to my standing objection.                            18:59
```

Page 262

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1              THE WITNESS:  It is what I referred to, yes. 18:59
 2    BY MS. BHATTACHARYYA:                               18:59
 3       Q.   You said that this document show -- showed  18:59
 4    you that the tool that was used to --               18:59
 5              (Clarification requested by reporter.)    19:00
 6    BY MS. BHATTACHARYYA:                               19:00
 7       Q.   To machine the microchannels in the         19:00
 8    Antarctica had a width of 0.93 millimeter.  Do you  19:00
 9    recall that?                                        19:00
10              MR. CHEN:  In addition to my standing     19:00
11    objection, leading.                                 19:00
12              THE WITNESS:  Would you repeat the question, 19:00
13    please.                                             19:00
14    BY MS. BHATTACHARYYA:                               19:00
15       Q.   Earlier in your deposition you said that    19:00
16    Exhibit 275 showed you a tool that was -- that is,  19:00
17    based on your understanding, the tool that was used 19:00
18    to machine the microchannels in the Antarctica      19:00
19    device.  You do you recall that?                    19:00
20              MR. CHEN:  In objection -- in addition to my 19:00
21    standing objection, objection.  Leading.            19:00
22    Mischaracterizes testimony.                         19:00
23              THE WITNESS:  Yes.  It's my understanding 19:01
24    that it's Asetek's assertion that this is the blade 19:01
25    that was used to cut the microchannels, and it is   19:01
```

Veritext Legal Solutions
866 299-5127

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | evident from the picture that it had a diameter of | 19:01 |
| 2 | 0.93 millimeters, which -- and then the box that | 19:01 |
| 3 | it's showing below, you may want to zoom out a | 19:01 |
| 4 | little bit, the -- Asetek asserts that that box | 19:01 |
| 5 | contains, I believe, the saw blades. | 19:01 |
| 6 | And the labeling on the box, I am a making | 19:01 |
| 7 | an inference from the 50-by-1-by-13, that the 50 is | 19:01 |
| 8 | probably a blade diameter, and the 1 refers to the | 19:01 |
| 9 | thick -- the nominal thickness of the cut that it's | 19:02 |
| 10 | supposed to make.  In other words, you know, if | 19:02 |
| 11 | you're trying to make a nominal 1-millimeter cut, | 19:02 |
| 12 | you're going to use a blade that is thinner than | 19:02 |
| 13 | that because there's what's called a kerf width that | 19:02 |
| 14 | you always get when you cut.  So it always -- you | 19:02 |
| 15 | always end up with a groove that's a little larger | 19:02 |
| 16 | than your blade.  But that blade would be consistent | 19:02 |
| 17 | with the kind of channels I saw on Antarctica. | 19:02 |
| 18 | BY MS. BHATTACHARYYA: | 19:02 |
| 19 |     Q.   And, Dr. Tuckerman, in your answer, I | 19:02 |
| 20 | believe you said the blades had a diameter of 0.93 | 19:02 |
| 21 | millimeters.  Do you -- | 19:02 |
| 22 |     A.   I would -- of thickness.  Thickness. | 19:02 |
| 23 | Thickness.  I'm sorry. | 19:02 |
| 24 |     MR. CHEN:  In addition to my standing | 19:02 |
| 25 | objection, objection.  Leading.  Mischaracterizes | 19:02 |

Page  264

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1   testimony.                                          19:02

 2          THE WITNESS:  Yeah, I'm sorry, I -- yeah, I  19:02

 3   didn't think I said it had a diameter of 0.93, but  19:02

 4   if I did, I misspoke.  It has -- they're measuring   19:03

 5   the thickness of the blade, 0.93 millimeter.         19:03

 6   BY MS. BHATTACHARYYA:                                19:03

 7      Q.   So the thick -- okay.  Just so the record is 19:03

 8   clear, the thickness of the blade used to cut the    19:03

 9   microchannels in Antarctica is 0.93 millimeters;     19:03

10   correct?                                             19:03

11          MR. CHEN:  In addition -- in addition to my   19:03

12   standing objection, objection.  Leading.            19:03

13          THE WITNESS:  Yeah.  That -- that's the       19:03

14   information Asetek is providing me, you know, or you 19:03

15   and me.                                              19:03

16          MS. BHATTACHARYYA:  Okay.  I do not have any  19:03

17   further questions for Dr. Tuckerman.                 19:03

18          MR. CHEN:  Let me take a five-minute break.   19:03

19          THE VIDEOGRAPHER:  We are going off the       19:03

20   record at 7:03 p.m.  This is the end of media 10.    19:03

21          (Off the record.)                             19:04

22          THE VIDEOGRAPHER:  We are on the record at    19:05

23   7:05 p.m.  This is the beginning of media 11 in the  19:05

24   deposition of Dr. David Tuckerman.                   19:05

25          MR. CHEN:  I do not have further questions    19:05
```

Page 265

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1

2

3

4

5

6          I, DAVID TUCKERMAN, Ph.D., do hereby declare

7     under penalty of perjury that I have read the foregoing

8     transcript; that I have made corrections as appear

9     noted, in ink, initialed by me, or attached hereto; that

10    my testimony as contained herein, as corrected, is true

11    and correct.

12          EXECUTED this ____ day of _____,

13    2022, at _____, _ _____.

14                    (City)                    (State)

15

16

17

18                    DAVID TUCKERMAN

19

20

21

22

23

24

25

Page 269

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1            I, JANIS JENNINGS, CSR No. 3942, Certified

2    Shorthand Reporter, certify:

3            That the foregoing proceedings were taken

4    before me at the time and place therein set forth, at

5    which time the witness was duly sworn by me;

6            That the testimony of the witness, the

7    questions propounded, and all objections and statements

8    made at the time of the examination were recorded

9    stenographically by me and were thereafter transcribed;

10           That the foregoing pages contain a full, true

11   and accurate record of all proceedings and testimony.

12           Pursuant to F.R.C.P. 30(e)(2) before

13   completion of the proceedings, review of the transcript

14   [X] was [ ] was not requested.

15           I further certify that I am not a relative or

16   employee of any attorney of the parties, nor financially

17   interested in the action.

18           I declare under penalty of perjury under the

19   laws of California that the foregoing is true and

20   correct.

21           Dated this 4th day of January, 2022.

22

23           _____

24           JANIS JENNINGS, CSR NO. 3942

25           CLR, CCRR

                                            Page 270