# EXHIBIT 3

CONFIDENTIAL

```
 1              UNITED STATES DISTRICT COURT
 2             NORTHERN DISTRICT OF CALIFORNIA
 3                SAN FRANCISCO DIVISION
 4   ASETEK DANMARK A/S,              )
                                      )
 5   Plaintiff and                    )
     Counterdefendant,                )
 6                                    )
       VS.                            ) CASE NO.
 7                                    ) 3:19-CV-00410-EMC
     COOLIT SYSTEMS, INC.,            )
 8                                    )
     Defendant and Counterclaimant.  )
 9                                    )
     COOLIT SYSTEMS USA INC. COOLIT   )
10   SYSTEMS ASIA PACIFIC LIMITED,    )
     COOLIT SYSTEMS (SHENZHEN) CO.,   )
11   LTD.,                            )
                                      )
12   Defendants,                      )
                                      )
13   CORSAIR GAMING, INC. and         )
     CORSAIR MEMORY, INC.,            )
14                                    )
                 Defendants.          )
15                                    )
16      REMOTELY CONDUCTED VIDEOTAPED DEPOSITION OF
17                DAVID B. TUCKERMAN, PH.D.
18      Lake Stevens, Washington (Witness' location)
19               Friday, March 18, 2022
20
21
22
     Reported by:
23   LYDIA ZINN
     RPR, FCRR, CSR No. 9223
24   Job No. SF 5137947
25   PAGES 1 - 103
```

Page 1

CONFIDENTIAL

```
 1              UNITED STATES DISTRICT COURT
 2             NORTHERN DISTRICT OF CALIFORNIA
 3               SAN FRANCISCO DIVISION
 4   ASETEK DANMARK A/S,           )
                                   )
 5   Plaintiff and                 )
     Counterdefendant,             )
 6                                 )
       VS.                         ) CASE NO.
 7                                 ) 3:19-CV-00410-EMC
     COOLIT SYSTEMS, INC.,         )
 8                                 )
     Defendant and Counterclaimant. )
 9                                 )
     COOLIT SYSTEMS USA INC. COOLIT )
10   SYSTEMS ASIA PACIFIC LIMITED, )
     COOLIT SYSTEMS (SHENZHEN) CO., )
11   LTD.,                         )
                                   )
12   Defendants,                   )
                                   )
13   CORSAIR GAMING, INC. and      )
     CORSAIR MEMORY, INC.,         )
14                                 )
                  Defendants.      )
15                                 )
16
17              Remotely conducted videotaped deposition of
18   DAVID B. TUCKERMAN, PH.D., taken on behalf of
19   Defendant/Counterclaimants COOLIT SYSTEMS USA INC.
20   COOLIT SYSTEMS ASIA PACIFIC LIMITED, COOLIT SYSTEMS
21   (SHENZHEN) CO., LTD., CORSAIR GAMING, INC. and CORSAIR
22   MEMORY, INC., at Lake Stevens, Washington, beginning at
23   2:17 p.m. and ending at 5:59 p.m., on Friday, March 18,
24   2022, before LYDIA ZINN, Certified Shorthand Reporter
25   No. 9223.
```

Page 2

```
 1   APPEARANCES:
 2   For Plaintiff/Counterdefendant Asetek Danmark A/S:
                         Finnegan, Henderson, Farabow
 3                          Garrett & Dunner LLP
                         Stanford Research Park
 4                       3300 Hillview Avenue, 2nd Floor
                         Palo Alto, CA  94304-1203
 5                       (650) 849-6600
                         arpita.bhattacharyya@finnegan.com
 6              BY:  ARPITA BHATTACHARYYA
 7   For Defendant/Counterclaimant CoolIT Systems, Inc.; and
     Defendants CoolIT Systems USA, Inc., CoolIT Systems
 8   Asia Pacific Limited, CoolIT Systems (Shenzhen) Co.,
     Ltd.; Corsair Gaming Inc., and Corsair Memory, Inc.:
 9                       Cooley LLP
                         3175 Hanover Street
10                       Palo Alto, CA  94304-1130
                         (650) 843-5000
11                       rchen@cooley.com
                    BY:  REUBEN CHEN
12
                         Greenberg Traurig, LLP
13                       1900 University Avenue, 5th Floor
                         East Palo Alto, CA  94303
14                       (650) 289-7887
                         kchen@gtlaw.com
15                  BY:  KYLE D. CHEN
16
17
     Also Present:
18   Grant Cihlar, Videographer, Veritext
19
20
21
22
23
24
25
```

CONFIDENTIAL

```
 1                     I N D E X
 2   Friday, March 18, 2022
 3   WITNESS                                    PAGE
     DAVID B. TUCKERMAN, PH.D.
 4   (SWORN)                                       7
     Examination by Mr. Reuben Chen                8
 5
 6   EXHIBITS MARKED FOR IDENTIFICATION         PAGE
     EXHIBIT 362    US Patent Application
 7                  Publication US 2007/0163750
                    (Bhatti)
 8                  ASE-CLT00044399 to -00044405   73
 9   EXHIBIT 363    Judgment re:  IPR2020-00825,
                    Patent 10,274,266 (49 pages)   76
10
     EXHIBIT 364    US Patent Application
11                  Publication US 2006/0096738
                    (Kang)
12                  ASE-CLT00044566 to -00044574   77
13   EXHIBITS PREVIOUSLY MARKED                 PAGE
     EXHIBIT 259    Expert Report of Dr. David B.
14                  Tuckerman Regarding
                    Invalidity of US Patent Nos.
15                  8,746,330; 9,603,284; and
                    8,274,266 (75 pages)            8
16
     EXHIBIT 259A   Invalidity Claim Charts I and
17                  II for US Patent No. 8,746,330
                    (80 pages_                      8
18
     EXHIBIT 259B   Invalidity Claim Charts I
19                  through IV for US Patent No.
                    9,603,284 (77 pages)            8
20
     EXHIBIT 259C   Invalidity Claim Chart for
21                  US Patent No. 10,274,266
                    (13 pages)                      8
22
     EXHIBIT 259D   Curriculum Vitae               8
23
     EXHIBIT 259E   Materials Considered in
24                  Preparation of Invalidity
                    Expert Report                   8
25
```

Page 4

CONFIDENTIAL

```
 1    EXHIBITS PREVIOUSLY MARKED                    PAGE
      EXHIBIT 259F  Photos of CoolIT and
 2                  Asetek products                    8
 3    EXHIBIT 265   US Patent No. 10,274,266
                    (Lyon)                             31
 4
      EXHIBIT 266   Rebuttal Expert Report of
 5                  Dr. David B. Tuckerman
                    Regarding Non-Infringement of
 6                  US Patent Nos. 8,746,330;
                    9,603,284; AND 10,274,266          43
 7
      EXHIBIT 272   US Patent No. 7,259,965
 8                  (Chang)
                    ASE-CLT00044420 to -00044443       33
 9
      EXHIBIT 273   US Patent No. 5,998,240
10                  (Hamilton)
                    ASE-CLT00044523 to -00044537       36
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 5

CONFIDENTIAL

```
 1              Lake Stevens, Washington

 2           Friday, March 18, 2022, 2:17 p.m.

 3           THE VIDEOGRAPHER:  Good afternoon.  We're

 4   going on the record.  The time is 2:17 p.m. Pacific on

 5   Friday, March 18th, 2022.  Please note that the          2:17:56PM

 6   microphones are sensitive and may pick up whispering

 7   private conversations and cellular interference.

 8   Please turn off all cell phones or place them away from

 9   the microphones, as they can interfere with the

10   deposition audio.  Audio and video recording will         2:18:13PM

11   continue to take place, unless all parties agree to go

12   off the record.

13        This is media unit one of the video-recorded

14   deposition of Dr. David Tuckerman taken by counsel for

15   plaintiff in the matter of Asetek Danmark A/S versus      2:18:29PM

16   CoolIT Systems Incorporated, filed in the United States

17   District Court, Northern District of California.  The

18   Case Number is 19-00410-EMC.

19        This deposition is being held via remote

20   proceeding California Veritext virtual Zoom, with all     2:18:53PM

21   participants appearing remotely.  My name is

22   Grant Cihlar from the firm Veritext, and I'm the

23   videographer.  The court reporter is Lydia Zinn, from

24   the firm Veritext.  I am a notary public.  I am not

25   related to any party in this action, nor am I            2:19:13PM
```

Veritext Legal Solutions
866 299-5127

CONFIDENTIAL

| | | |
|---|---|---|
| 1 | financially interested in the outcome. | 2:19:16PM |
| 2 | Counsel and all present will now state their | |
| 3 | appearances and affiliations for the record.  If there | |
| 4 | are any objections to proceeding, please state them at | |
| 5 | the time of your appearance, beginning with the | 2:19:27PM |
| 6 | untiling attorney. | |
| 7 | MR. REUBEN CHEN:  This is Reuben Chen from | |
| 8 | the law firm Cooley LLP on behalf of CoolIT and | |
| 9 | Corsair. | |
| 10 | And just a point of clarification:  I'll be the | 2:19:40PM |
| 11 | taking attorney.  And I'm representing the defendant | |
| 12 | and counterclaimant, CoolIT.  And with me is also | |
| 13 | Dr. Kyle Chen of the Greenberg firm. | |
| 14 | MS. BHATTACHARYYA:  Arpita Bhattacharyya from | |
| 15 | Finnegan law firm.  And I'm on behalf of the plaintiff, | 2:19:58PM |
| 16 | Asetek Danmark A/S, and witness, Dr. David Tuckerman. | |
| 17 | THE VIDEOGRAPHER:  Thank you.  I stand | |
| 18 | corrected on that. | |
| 19 | Will the court reporter please swear in the | |
| 20 | witness. | 2:20:12PM |
| 21 | DAVID TUCKERMAN, PH.D., | |
| 22 | called as a witness by the Defendant, having been duly | |
| 23 | sworn, testified as follows: | |
| 24 | THE WITNESS:  Yes, I affirm. | |
| 25 | /////                                    ///// | 2:20:29PM |

Page 7

CONFIDENTIAL

```
 1                     EXAMINATION                    2:20:30PM

 2   BY MR. REUBEN CHEN:

 3   Q    Good afternoon, Dr. Tuckerman.

 4   A    Good afternoon.

 5   Q    The same procedures that we followed in your prior    2:20:34PM

 6   deposition will apply to today's deposition, so I won't

 7   repeat them, other than to ask whether there are any

 8   conditions or factors that would prevent you from

 9   giving accurate and complete testimony today, such as

10   being under the influence of any medications or          2:20:52PM

11   substances.

12   A    No, there's nothing like that.

13          MR. REUBEN CHEN:  Great.  Let's introduce

14   into the record your Invalidity Report, which are

15   Exhibits 259, along with their exhibits, which have      2:21:13PM

16   been marked as Exhibits 259A through F.

17   (Deposition Exhibits 259, 259A, 259B, 259C, 259D, 259E,

     259F previously marked for identification.)

18   BY MR. REUBEN CHEN:

19   Q    And at any time during any questions that I ask

20   you today, feel free to refer to your report if you      2:21:30PM

21   need to, Dr. Tuckerman.

22   A    Thank you.

23   Q    Okay.  So I'll begin by asking you some further

24   questions about the channels in the Antarctica device.

25   You testified during prior deposition that you did not   2:21:44PM
```

Page 8

CONFIDENTIAL

```
1    Please --                                      2:25:46PM

2            MS. BHATTACHARYYA:  He -- he has the topics.

3    He got the ten topics.

4            MR. REUBEN CHEN:  Please, please limit your

5    statements to objections or instructions not to answer    2:25:53PM

6    questions.

7            MS. BHATTACHARYYA:  You can ask your

8    question.

9    BY MR. REUBEN CHEN:

10   Q    Dr. Tuckerman -- Dr. Tuckerman, I will repeat my    2:26:00PM

11   question.

12   A    Okay.

13   Q    You did not include any evidence of measurements

14   of the channels of the Antarctica device in your

15   report.  Correct?                                       2:26:13PM

16   A    Are you referring to the --

17           MS. BHATTACHARYYA:  Objection.  Out --

18   mischaracterizes prior testimony, Dr. Tuckerman's

19   report.  Outside the scope of this deposition.

20           THE WITNESS:  Are -- now, which report are    2:26:27PM

21   you referring to here?  Are you referring to the report

22   that's in -- that's Exhibit 259 or...

23   BY MR. REUBEN CHEN:

24   Q    Yes, your Invalidity Report, Dr. Tuckerman.

25   A    Okay.  So...                                       2:26:39PM
```

Page 13

CONFIDENTIAL

| | | |
|---|---|---|
| 1 | Q    This would be paragraph 57 of your report. | 2:26:49PM |
| 2 | A    Ah, thank you.  That speeds things up.  Okay. | |
| 3 | So I...  Okay.  So I'm saying space between | |
| 4 | adjacent fins is about 0.9 to 1.0 millimeters.  And, | |
| 5 | while I don't specify that here, I deposed -- I was | 2:27:24PM |
| 6 | deposed previously on this, and indicated that I took | |
| 7 | measurements with calipers at the bottoms of the | |
| 8 | microchannels on July 5th -- I think it was -- and | |
| 9 | got -- didn't get any measurements above 1.0.  And they | |
| 10 | were all .9-something.  But that -- that's about all. | 2:27:47PM |
| 11 | I mean, I didn't. | |
| 12 | Q    And you testified that you did not submit any | |
| 13 | evidence of the measurements that you took in your | |
| 14 | report.  Correct? | |
| 15 | MS. BHATTACHARYYA:  Objection. | 2:28:07PM |
| 16 | Mischaracterizes prior testimony.  Outside the scope of | |
| 17 | this deposition. | |
| 18 | THE WITNESS:  Well, I mean, my assertion was | |
| 19 | based on having done these measurements.  So, I mean... | |
| 20 | BY MR. REUBEN CHEN: | 2:28:25PM |
| 21 | Q    Right, but listen to the question.  The question | |
| 22 | is:  Did you submit any evidence of the measurements | |
| 23 | that you took and included that evidence in your | |
| 24 | report? | |
| 25 | MS. BHATTACHARYYA:  Same objections. | 2:28:35PM |

Veritext Legal Solutions
866 299-5127

CONFIDENTIAL

```
 1              THE WITNESS:  I took some measurements.  And       2:28:42PM

 2    I reported that they were between .9 and 1.0.  And

 3    that -- that's all I did.

 4    BY MR. REUBEN CHEN:

 5    Q    But do you have any evidence that you submitted in      2:28:53PM

 6    your report that reflects that you took those

 7    measurements?

 8              MS. BHATTACHARYYA:  Objection.  Outside the

 9    scope of this deposition.  Mischaracterizes prior

10    testimony and the report.                                    2:29:06PM

11    BY MR. REUBEN CHEN:

12    Q    Dr. Tuckerman, you testified under oath previously

13    that you did not take any pictures of the measurements

14    that you allegedly took.  Correct?

15              MS. BHATTACHARYYA:  Objection.                     2:29:21PM

16    Mischaracterizes prior testimony.  Mischaracterizes

17    report.  Outside the scope of this deposition.

18              THE WITNESS:  I don't remember what my exact

19    words were.  I did not keep records of the

20    measurements, if that's what you mean.  I don't know        2:29:37PM

21    exactly what words I used.

22    BY MR. REUBEN CHEN:

23    Q    Right.  So there are no records of your

24    measurements that are included in your report.

25    Correct?                                                     2:29:46PM
```

Page 15

CONFIDENTIAL

```
 1            MS. BHATTACHARYYA:  Same objections.          2:29:48PM

 2            THE WITNESS:  I didn't think it was necessary

 3    at the time.  I mean, it -- it wasn't asked to do that.

 4    BY MR. REUBEN CHEN:

 5    Q    Okay.  Now, after your report was submitted but    2:29:58PM

 6    before you were deposed in December of 2021, you

 7    reviewed a document provided by Asetek's counsel that

 8    allegedly discussed a machining tool.  Correct?

 9            MS. BHATTACHARYYA:  Objection.  Outside the

10    scope of this deposition.                              2:30:17PM

11        Mr. Reuben, I'm going to suspend this deposition

12    now.

13        Which -- which topic are you referring to?  You

14    had ten topics in your deposition.  What are you

15    talking about?                                         2:30:26PM

16            MR. REUBEN CHEN:  Let's go off the record.

17    Let's go off the record, because you're -- you're

18    eating up time by being --

19            MS. BHATTACHARYYA:  Then go off the record

20    and discuss --                                         2:30:32PM

21            MR. REUBEN CHEN:  Let's go off the record.

22    Let's go off the record.

23            MS. BHATTACHARYYA:  Okay.

24            THE VIDEOGRAPHER:  We are going off the

25    record.  The time is 2:30 p.m. Pacific.  And this is    2:30:36PM
```

Page 16

CONFIDENTIAL

```
 1    the end of media unit one.                        2:30:40PM

 2    (Discussion off the record.)

 3            THE VIDEOGRAPHER:  We're going back on the

 4    record.  The time is 3:13 p.m., and this is the

 5    beginning of media unit two.  Please continue.     3:13:16PM

 6            MR. REUBEN CHEN:  Thank you.

 7    Q.   Dr. Tuckerman, after your Expert Report was

 8    submitted, but before being deposed, you reviewed a

 9    document provided by Asetek's counsel that allegedly

10    discussed a machining tool.  Correct?              3:13:34PM

11            MS. BHATTACHARYYA:  Objection.  Outside the

12    scope of the topics provided for this deposition.

13            THE WITNESS:  I do recall that, yes.

14    BY MR. REUBEN CHEN:

15    Q    And was it Ms. Bhattacharyya that showed you that  3:13:49PM

16    document?

17            MS. BHATTACHARYYA:  Same objection.

18    Mischaracterizes prior testimony.

19            THE WITNESS:  I saw a -- Ms. Bhattacharyya

20    showed me a document with a -- with a blade, and -- and  3:14:04PM

21    a measurement of the blade.

22    BY MR. REUBEN CHEN:

23    Q    Do you recall when you review --

24            MS. BHATTACHARYYA:  Dr. Tuckerman, I caution

25    you -- Dr. Tuckerman, I caution you to not reveal   3:14:15PM
```

CONFIDENTIAL

```
1    discussions with counsel.                        3:14:20PM

2            THE WITNESS:  Okay.  Yes.

3    BY MR. REUBEN CHEN:

4    Q    Did you recall when you reviewed that document?

5    A    Not exactly, no.                            3:14:28PM

6    Q    Was it in December of 2021?

7            MS. BHATTACHARYYA:  Same objections.

8            THE WITNESS:  I don't know.

9    BY MR. REUBEN CHEN:

10   Q    Okay.  Was it as part of preparing for your   3:14:41PM

11   deposition in December of 2021?

12           MS. BHATTACHARYYA:  Same objections.

13           THE WITNESS:  Well, as I recall, the -- this

14   issue came up and -- of, you know, what -- what were

15   the dimensions.                                  3:15:10PM

16       So, I mean -- I mean, what was -- what was the

17   question again?  Sorry.

18           MR. REUBEN CHEN:  That's okay.  I'll move on

19   to the next one.

20           THE WITNESS:  Yeah.                       3:15:21PM

21   BY MR. REUBEN CHEN:

22   Q    Is that document written in Danish?

23   A    Yeah.  As I recall, it was.

24   Q    And you don't read Danish.  Correct?

25   A    I -- I do not.                              3:15:35PM
```

Page 18

```
1    Q    Did someone translate that document for you?         3:15:36PM

2    A    Nobody translated it for me.

3    Q    To your knowledge, does Ms. Bhattacharyya read

4    Danish?

5    A    I would not know.                                    3:15:50PM

6         MS. BHATTACHARYYA:  Objection.  Calls for

7    speculation.

8         THE WITNESS:  I would not know one way or the

9    other.

10   BY MR. REUBEN CHEN:                                       3:15:58PM

11   Q    Okay.  So you don't know for certain that the

12   document discusses a machining tool used to create

13   Antarctica.  Correct?

14        MS. BHATTACHARYYA:  Objection.  Calls for

15   speculation.  Foundation.                                 3:16:07PM

16        THE WITNESS:  It --

17        MS. BHATTACHARYYA:  And objection.  Outside

18   the scope of the deposition topics.

19        THE WITNESS:  It -- as I recall, it was

20   represented as having been provided by Asetek to          3:16:31PM

21   counsel as being the blade or a blade that -- that was

22   used for machining of Antarctica.

23   BY MR. REUBEN CHEN:

24   Q    Who made those representations to you?

25        MS. BHATTACHARYYA:  Objection.  Outside the          3:16:51PM
```

Page 19

```
 1    scope of the deposition topics.                        3:16:52PM

 2        I will caution Dr. Tuckerman not to reveal

 3    contents of discussions with counsel.

 4            MR. REUBEN CHEN:  I'm not asking for the

 5    content.  I'm asking who.                              3:17:02PM

 6            MS. BHATTACHARYYA:  Same.  Same objections.

 7    The -- the question calls for privileged information.

 8            MR. REUBEN CHEN:  I disagree with that.

 9        Are you instructing the witness not to answer?

10            MS. BHATTACHARYYA:  I instruct the witness    3:17:13PM

11    not to answer any questions of discussions with

12    counsel.

13    BY MR. REUBEN CHEN:

14    Q    Same question, then.  Who --

15            MS. BHATTACHARYYA:  Same --                    3:17:22PM

16    BY MR. REUBEN CHEN:

17    Q.   Who represented to you that the document discusses

18    the machining tool used to create Antarctica?

19            MS. BHATTACHARYYA:  I will instruct the

20    witness not to answer the question.  It calls for      3:17:33PM

21    information that is protected under Rule 26.

22            MR. REUBEN CHEN:  I disagree, and so I'll

23    just reserve my right to redepose Dr. Tuckerman to ask

24    him that -- that specific question.

25    Q    Dr. Tuckerman, were you ever shown the entire     3:17:47PM
```

CONFIDENTIAL

```
 1    document, or just a picture of one page of that          3:17:49PM

 2    document?

 3    A    I -- I saw only one -- that one page.

 4    Q    A picture of that one page?

 5            MS. BHATTACHARYYA:  Objection.                    3:18:04PM

 6    Mischaracterizes exhibits and prior testimony.

 7            THE WITNESS:  Well, yeah.  I mean, I didn't

 8    have the physical page.  It was, you know, a JPG or

 9    whatever.

10    BY MR. REUBEN CHEN:                                       3:18:17PM

11    Q    You didn't have the physical document in front of

12    you.  There was just a JPEG of one page of the

13    document.  Is that -- is that accurate?

14            MS. BHATTACHARYYA:  Objection.  Objection.

15    Mischaracterizes prior -- mischaracterizes the record    3:18:26PM

16    and prior testimony.

17            THE WITNESS:  I mean, I don't -- I don't know

18    if it was a JPEG.  I -- I was shown an image that

19    appeared to be from a machining manual.

20    BY MR. REUBEN CHEN:                                       3:18:51PM

21    Q    So there was an image of one page of a document --

22    correct? -- that you reviewed?

23            MS. BHATTACHARYYA:  Objection.  Outside the

24    scope of deposition topics.  Mischaracterizes prior

25    testimony and exhibits from prior depositions.           3:19:03PM
```

Page 21

```
 1    Mischaracterizes the record.                        3:19:07PM

 2            THE WITNESS:  That's what it appeared to be.

 3    BY MR. REUBEN CHEN:

 4    Q    Okay.  But you never reviewed the entire document.

 5    Correct?                                            3:19:16PM

 6            MS. BHATTACHARYYA:  Objection.  Foundation.

 7    Outside the scope of the deposition.

 8            THE WITNESS:  I was shown that one page.

 9    BY MR. REUBEN CHEN:

10    Q    Okay.  And it wouldn't have mattered anyway,   3:19:29PM

11    because you don't read Danish.  Right?

12            MS. BHATTACHARYYA:  Objection.  Outside the

13    scope of the deposition.

14            THE WITNESS:  As I said, it was represented

15    to me that that was the blade that was -- that -- a  3:19:48PM

16    blade that had been used in Antarctica.

17    BY MR. REUBEN CHEN:

18    Q    And there was an alleged measurement of the

19    machining tool.  Correct?

20            MS. BHATTACHARYYA:  Objection.              3:19:35PM

21    Mischaracterizes exhibit.  Prior testimony.  Outside

22    the scope of the deposition topics.

23            THE WITNESS:  So the picture showed the tool

24    being measured with -- with calipers.  The width.  The

25    blade width it showed.                              3:20:21PM
```

Page 22

CONFIDENTIAL

```
 1   BY MR. REUBEN CHEN:                              3:20:24PM

 2   Q    Do you know who measured the machining tool?

 3            MS. BHATTACHARYYA:  Same objections.

 4            THE WITNESS:  I do not.

 5   BY MR. REUBEN CHEN:                              3:20:31PM

 6   Q    You did not measure the machining tool.  Correct?

 7   A    No, I never laid hands on the tool.

 8   Q    Do you know how the machining tool was measured?

 9            MS. BHATTACHARYYA:  Same objections.

10            THE WITNESS:  It was -- it appeared to be,    3:20:48PM

11   from the picture, measured in a very conventional

12   manner, the same way I would have measured it, which

13   was to put it in calipers, and -- and measure it.

14   BY MR. REUBEN CHEN:

15   Q    Do you know that for certain; that a caliper was    3:21:04PM

16   used to measure the machining tool?

17            MS. BHATTACHARYYA:  Same objections.

18            THE WITNESS:  Well, I mean, I don't have the

19   image in front of me, but unless I'm recalling wrongly,

20   there was a pair of digital calipers clamped on the --    3:21:24PM

21   on the blade, you know.  So it -- it -- that was how

22   anyone of ordinary skill in the art would have made

23   that sort of measurement.

24   BY MR. REUBEN CHEN:

25   Q    Now, as a matter of physics and manufacturing    3:21:47PM
```

Page 23

```
 1    practice, an actual channel in Antarctica is going to      3:21:50PM

 2    be wider than the width of the component in the

 3    machining tool used to create that channel.  Correct?

 4             MS. BHATTACHARYYA:  Objection.  Outside the

 5    scope of the deposition topics.  Foundation.              3:22:07PM

 6    Mischaracterizes the record.

 7             THE WITNESS:  So generally with that type of

 8    machining with blades, you -- you get a taper.  Okay?

 9    There's blade wobble, and such.  And you -- you know,

10    you get something that's wider at the top than at the     3:22:31PM

11    bottom.

12       At the bottom you would expect to get -- you know,

13    either exactly the blade width, or if the blade has

14    worn, you know, because when blades have been used for

15    a while they can, you know, get -- get narrower, maybe    3:22:48PM

16    it would be even less.  But you know, that -- like I

17    say, you get a taper.  And you're going to get -- you

18    know, I think I kind of answered that.

19    BY MR. REUBEN CHEN:

20    Q    Now, just to be clear, you testified that it was     3:23:20PM

21    represented to you that the document discusses the

22    machining tool used to create Antarctica.  Correct?

23             MS. BHATTACHARYYA:  Same objections.

24             THE WITNESS:  Not -- not necessarily that

25    particular Antarctica unit; but I mean, it -- it was      3:23:45PM
```

1    represented as a -- a machining tool that was used in          3:23:50PM

2    the production of Antarcticas.  There's -- there was no

3    representation made that that particular tool was used

4    on that particular Antarctica.  As I think I mentioned

5    in the past, for all I know it was -- you know, maybe         3:24:08PM

6    it was an out-of-spec unit.

7        I mean, who -- you know, it was -- it was just one

8    physical sample that I measured.  And I was mainly just

9    concerned that, you know, it -- it wasn't grossly out

10   of line on dimensions.  So I put the calipers in; made       3:24:25PM

11   the measurements.

12       None of them that I measured were above

13   1 millimeter.  And I was -- I was satisfied.

14   BY MR. REUBEN CHEN:

15   Q   So your opinion that Antarctica has channels that        3:24:41PM

16   are between 0.9 to 1 millimeters -- are you relying on

17   the representation that the document in Danish

18   discusses the machining tool that was used to create

19   Antarctica?

20           MS. BHATTACHARYYA:  Objection.  Outside the          3:25:08PM

21   scope of the deposition topics.  Mischaracterizes prior

22   deposition testimony.

23           THE WITNESS:  So the -- the only thing I can

24   actually assert about the dimensions of that particular

25   Antarctica were the measurements that I took on that         3:25:37PM

                                                      Page 25

1    particular sample, which I measured with calipers at        3:25:43PM

2    the base of the samples, and got numbers that were

3    close to but not in excess of 1 millimeter.

4        The other information, you know, about the blade I

5    just viewed as plausible corroboration that that's a        3:26:04PM

6    blade that was used in Antarctica machining, and

7    therefore that you would expect that the channel widths

8    would be the order of a millimeter from that sort of

9    blade.  And so it -- it kind of tied, but I certainly

10   wasn't taking anyone's word for -- for that.                3:26:36PM

11       Like I say, I didn't -- you know, I was asked in

12   the deposition about it.  And I believe -- you know, I

13   don't remember exactly what I said, but the -- it -- it

14   seemed very plausible that that kind of blade would

15   have been used to make the structure -- to make the         3:26:58PM

16   structures that I measured on that Antarctica sample.

17       But the only thing I can factually assert to you

18   is I made measurements at the bases of the channels on

19   that Antarctica with calipers; did not get any

20   measurements above 1 millimeter.  But they were very        3:27:17PM

21   close, you know.  Nine-something.  So...

22   BY MR. REUBEN CHEN:

23   Q.   Are you relying on what you call the "plausible

24   corroboration" of that document for your ultimate

25   opinion that Antarctica's channels satisfy the              3:27:31PM

CONFIDENTIAL

1          I, the undersigned, a Certified

2    Shorthand Reporter of the State of California, do

3    hereby certify:

4          That the foregoing proceedings were taken before

5    me at the time and place herein set forth; that any

6    witnesses in the foregoing proceedings, prior to

7    testifying, were placed under oath; that a verbatim

8    record of the proceedings was made by me using machine

9    shorthand which was thereafter transcribed under my

10   direction; further, that the foregoing is an accurate

11   transcription thereof.

12          I further certify that I am neither financially

13   interested in the action nor a relative or employee of

14   any attorney or any of the parties.

15       IN WITNESS WHEREOF, I have this date subscribed my

16   name.

17

18   Dated: March 22, 2022

19

20

21

22

23          LYDIA ZINN, RPR, FCRR

24          CSR No. 9223

25

Page 100