COOLEY LLP
HEIDI L. KEEFE (178960)
(hkeefe@cooley.com)
REUBEN H. CHEN (228725)
(rchen@cooley.com)
DANIEL J. KNAUSS (267414)
(dknauss@cooley.com)
ALEXANDRA LEEPER (307310)
(aleeper@cooley.com)
DEEPA KANNAPPAN (313573)
(dkannappan@cooley.com)
3175 Hanover Street
Palo Alto, CA  94304-1130
Telephone:    (650) 843-5000
Facsimile:    (650) 849-7400

DUSTIN M. KNIGHT (*pro hac vice*)
(dknight@cooley.com)
11951 Freedom Drive, 16th Floor
Reston, VA 20190
Telephone: (703) 456-8000
Facsimile: (703) 456-8100

GREENBERG TRAURIG, LLP
KYLE D. CHEN (SBN 239501)
kchen@gtlaw.com
1900 University, Avenue, 5th Floor
East Palo Alto, CA 94304
Telephone:    (650) 289-7887
Facsimile:    (650) 328-8508

Attorneys for Defendant and Counter-claimant
COOLIT SYSTEMS, INC. and Defendants
CORSAIR GAMING, INC. and CORSAIR
MEMORY, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ASETEK DANMARK A/S,<br><br>Plaintiff and<br>Counter-defendant,<br><br>v.<br><br>COOLIT SYSTEMS, INC.,<br><br>Defendant and<br>Counter-claimant,<br><br>CORSAIR GAMING, INC. and CORSAIR<br>MEMORY, INC.,<br><br>Defendants. | Case No.  3:19-cv-00410-EMC<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO STRIKE ASETEK'S LATE-DISCLOSED ALLEGED DESIGN-AROUNDS**<br><br>Date:          May 5, 2022<br>Time:          1:30 pm<br>Location:    Courtroom 5, 17th Floor<br>Judge:        Hon. Edward M. Chen |

REDACTED/PUBLIC VERSION OF DOCUMENT FILED UNDER SEAL

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

DEFENDANTS' NOTICE OF MOTION AND MOTION
TO STRIKE
CASE NO. 3-19-CV-00410-EMC

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION TO STRIKE ........................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................. 2

I.     INTRODUCTION ........................................................................................................ 2

II.    FACTUAL BACKGROUND ......................................................................................... 2

    A.    Timeline of Asetek's untimely disclosure ...................................... 2

    B.    Accused Asetek devices ................................................................... 3

    C.    Fact discovery .................................................................................. 5

    D.    Asetek's rebuttal expert reports, CAD files, and Ansys SpaceClaim files ................................................................................................... 7

    E.    Asetek's physical samples ............................................................... 9

III.    LEGAL STANDARD ................................................................................................... 9

IV.    ARGUMENT ............................................................................................................. 9

    A.    Asetek failed to disclose its alleged design-arounds during discovery ........... 9

    B.    Asetek cannot substantially justify its failure to timely disclose evidence of its design-arounds ..................................................... 11

    C.    Asetek's untimely disclosure has harmed CoolIT and Corsair ..................... 12

    D.    All expert testimony relying on the excluded evidence should be struck .............................................................................................. 13

V.    CONCLUSION ......................................................................................................... 15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Apple v. Samsung Elecs.*,
   No. 11-CV-01846-LHK, 2012 WL 3155574 (N.D. Cal. Aug. 2, 2012)...................................14

*Asia Vital Components v. Asetek Danmark A/S*,
   377 F. Supp. 3d 990 (N.D. Cal. 2019) ....................................................................................14

*Elbit Sys. Land & C4I v. Hughes Network Sys.*,
   No. 2:15-CV-00037-RWS-RSP, 2017 WL 2651618 (E.D. Tex. June 20, 2017) ....................14

*Elliott v. Google*,
   860 F.3d 1151 (9th Cir. 2017) ...........................................................................................9, 14

*Ingenco Holdings v. Ace Am. Ins.*,
   921 F.3d 803 (9th Cir. 2019) .............................................................................................9, 13

*Innogenetics, N.V. v. Abbott Lab'ys*,
   512 F.3d 1363 (Fed. Cir. 2008)...............................................................................................14

*In re Koninklijke Philips Pat. Litig.*,
   No. 18-cv-01885-HSG, 2020 WL 7398647 (N.D. Cal. Apr. 13, 2020) ..................................14

*MLC Intell. Prop. v. Micron Tech.*,
   10 F.4th 1358 (Fed. Cir. 2021) .....................................................................................9, 11, 13

*MLC Intell. Prop. v. Micron Tech.*,
   No. 14-cv-03657-SI, 2019 WL 2863585 (N.D. Cal. July 2, 2019) .........................................13

**Other Authorities**

Fed. R. Civ.
   P. 26 ..........................................................................................................................................9
   P. 33(d)......................................................................................................................................5
   P. 37 ..............................................................................................................................9, 13, 14

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

-ii-

DEFENDANTS' NOTICE OF MOTION AND MOTION
TO STRIKE
CASE NO. 3-19-CV-00410-EMC

1

### NOTICE OF MOTION AND MOTION TO STRIKE

2

**TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORDS:**

3    PLEASE TAKE NOTICE that on May 5, 2022 at 1:30 p.m., or as soon thereafter as the matter

4    may be heard, in this Court, located at San Francisco Courthouse, Courtroom 5 – 17th Floor, 450

5    Golden Gate Ave., San Francisco, CA 94102, Defendants CoolIT Systems, Inc., Corsair Gaming, Inc.,

6    and Corsair Memory, Inc. will and hereby do move to strike the Expert Report of Dr. Carl-Fredrik

7    Stein Regarding Alternative Designs ("Stein Report") and those portions of the Rebuttal Expert Report

8    of Dr. David B. Tuckerman Regarding Non-Infringement of U.S. Patent Nos. 8,746,330; 9,603,284;

9    and 10,274,266 and the Rebuttal Report of Nisha Marie Mody, Ph.D., that rely upon the Stein Report

10   and the late-disclosed files in those reports.  This motion is based upon this notice of motion and

11   motion, the attached memorandum, the accompanying declaration of Reuben H. Chen and exhibits

12   thereto, and upon such other and further matters, papers, and arguments as may be submitted to the

13   Court at or before the hearing on this motion.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

-1-

DEFENDANTS' NOTICE OF MOTION AND MOTION
TO STRIKE
CASE NO. 3-19-CV-00410-EMC

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.    INTRODUCTION**

3          Defendants CoolIT Systems, Inc. ("CoolIT"), Corsair Gaming, Inc., and Corsair Memory, Inc.

4    (collectively "Corsair") respectfully submit this motion to strike Plaintiff Asetek's expert opinions

5    based on the late-disclosed CAD[1] files and Ansys SpaceClaim[2] files—the type of design files required

6    for meaningful technical analysis—of Asetek's alleged design-arounds.  In its rebuttal expert reports—

7    served more than three months *after* the close of fact discovery—Asetek for the first time disclosed

8    these critical design files, which Asetek's expert then employed to render opinions.[3]  Asetek further

9    produced samples of the alleged design-arounds only last month—over five months after close of fact

10   discovery.  Defendants are highly prejudiced by Asetek's belated actions, and fairness requires that

11   Asetek's tardy injection of the design files for the purported alternate designs, and any expert opinions

12   based on them, be stricken.  In the alternative, CoolIT requests leave for further 30(b)(6) deposition

13   testimony regarding the creation, design, and function of the late-disclosed design-arounds to evaluate,

14   analyze, and provide expert testimony regarding the samples provided by Asetek; and to serve reply

15   reports on infringement and damages to respond to Asetek's belated expert opinions based on the late-

16   disclosed design files.

17   **II.    FACTUAL BACKGROUND**

18          **A.    Timeline of Asetek's untimely disclosure**

19          A timeline summarizing the relevant dates of Asetek's untimely disclosure of the alleged

20   design-arounds is below, and will be further described in the following narrative.

---

24   [1] "CAD" stands for computer-aided design.  (*See, e.g.*, https://en.wikipedia.org/wiki/Computer-
25   aided_design (last visited Mar. 29, 2022) ("Computer-aided design (CAD) is the use of computers
     (or workstations) to aid in the creation, modification, analysis, or optimization of a design.").)
26   [2] "Ansys SpaceClaim" is a "3D Modeling Software" that "enables anyone to create, edit, or modify
     imported geometry[.]"  (*See* https://www.ansys.com/products/3d-design/ansys-spaceclaim (last
27   visited Mar. 29, 2022).)
     [3] In addition to relying on improper, late-disclosed evidence, Asetek's expert reports additionally fail
28   to meet the standard for reliability required by *Daubert* and thus are also subject to separately filed
     *Daubert* motions.

**During Fact Discovery**

**2019**
- 4/11 — CoolIT files its counterclaims against Asetek
- 6/25 — CoolIT serves Interrogatory No. 3 requesting Asetek's anticipated or future changes to the Asetek Accused Products

**2020**
- 11/5 — CoolIT serves Interrogatory No. 15 requesting each change Asetek has made or plans to make to the Asetek Accused Products in response to the litigation

**2021**
- 6/4 — Asetek IDs a single alleged design-around image (no labels or measurements)
- 8/20 — Asetek IDs a set of 10 images of the same alleged design-around (no labels or measurements); Deposition of Andre Eriksen, Asetek's noninfringing alternatives 30(b)(6) witness
- 8/24-8/25 — Asetek IDs 1-page simulation result for same alleged design-around, and text description of a
- 8/31 — separate alleged design-around supported by images of Asetek's *current* accused products

**After Fact Discovery**

**2022**
- 11/3 — Opening expert reports exchanged
- 12/8 — Rebuttal reports exchanged. Asetek produces CAD files and Ansys SpaceClaim files for multiple alleged design-arounds. Drs. Stein and Tuckerman rely on the late-produced files. Drs. Tuckerman and Mody rely on Dr. Stein's simulation of the late-produced files.
- 2/22 — Asetek delivers two physical samples of alleged design-arounds to Cooley's office

## B. Accused Asetek devices

CoolIT filed its counterclaims against Asetek on April 11, 2019. (ECF No. 23; *see also* ECF No. 37 (Amended Counterclaims, adding a patent, on May 2, 2019).) CoolIT presently asserts U.S. Patent Nos. 8,746,330 (the "'330 patent"), 9,603,284 (the "'284 patent") and 10,274,266 (the "'266 patent") (collectively "CoolIT patents") against Asetek's products. The accused Asetek products are liquid cooling devices to cool computer processors, such as a CPU or GPU. (*See* Declaration of Reuben H. Chen ("Chen Decl."), Ex.[4] 1 at 30 (excerpt reproduced below).) Asetek's accused cooling devices include a closed liquid loop that comprises a fluid heat exchanger to absorb heat from the processors and a pump external to the fluid heat exchanger to drive the liquid for circulation in the loop. (*See id.*)

---

[4] All references to "Ex." refer to exhibits to the Chen Declaration, unless otherwise noted.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

3.

CASE NO. 3-19-CV-00410-EMC
DEFENDANTS' NOTICE OF MOTION AND MOTION
TO STRIKE

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22





The fluid heat exchanger includes components such as a heat spreader plate (or sometimes referred to as the "cold plate," typically made of copper) with a bottom surface in contact with the processor to absorb heat, and an upper surface with "microchannels" formed by fins to dissipate the absorbed heat into the cooling liquid in circulation.  (*See* Ex. 1 at 30 (excerpt reproduced above) (gold annotation added, white annotation in original).)   Additionally, a plate (*e.g.*, a rubber gasket) is

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

4.

CASE NO. 3-19-CV-00410-EMC
DEFENDANTS' NOTICE OF MOTION AND MOTION
TO STRIKE

included to help seal the device and guide the liquid going through the fluid heat exchanger. Both the microchannel heat spreader plate (above right) and the gasket (*i.e.*, plate, above left) are accused of meeting limitations in the asserted claims of the CoolIT patents. (*See, e.g.*, *id.* at 30 (element 1[a]: "a heat spreader plate defining an upper surface") and 35 (element 1[c]: "a **plate** positioned over the distal ends of the plurality of fins") (emphasis added).)

### C. Fact discovery

Whether Asetek had any alleged design-arounds to CoolIT's patents was a key issue for which CoolIT sought discovery. During fact discovery, CoolIT served two interrogatories—Nos. 3 and 15— that asked Asetek to identify any planned changes to the Asetek Accused Products. Interrogatory No. 3 requested:

> Fully explain any changes to the ASETEK ACCUSED PRODUCTS or **any anticipated or future changes**, including a description of each such change; the circumstances that led to the change; how the change was developed (including conception, design, testing, and manufacturing); when the change was or will be implemented; any internal name or reference, trade name, or product number associated with the change; and who was involved with the changes, including identification of persons most knowledgeable of and documents related to the changes.

(Ex. 2 (June 25, 2019 CoolIT's First Set Interrogs. to Asetek) at 6 (emphasis added).) Interrogatory No. 15 requested:

> Identify with specificity and fully explain **each change that YOU have made or plan to make to the design, operation, and/or use of the ASETEK ACCUSED PRODUCTS as a result of or in response to this LITIGATION and/or the COOLIT PATENTS-IN-SUIT**, including a description of each such change; when the change was or will be implemented; any internal name or reference, trade name, or product number associated with the change; and who was involved with the changes, including identification of persons most knowledgeable of and documents related to the changes.

(Ex. 3 (Nov. 5, 2020 CoolIT's Third Set Interrog. to Asetek) at 2 (emphasis added).) Any information on the planned design-arounds to the CoolIT's patents-in-suit, including without limitation the late-disclosed CAD and Ansys SpaceClaim design files required for analysis, was unequivocally encompassed by these interrogatories.[5]  *See, e.g.*, Fed. R. Civ. P. 33(d) ("If the answer to an

---

[5] CoolIT also served Requests for Production and a 30(b)(6) deposition notice directed to Asetek's

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

5.

CASE NO. 3-19-CV-00410-EMC
DEFENDANTS' NOTICE OF MOTION AND MOTION
TO STRIKE

interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), … the responding party may answer by … specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could[.]").

Asetek's first substantive response to either interrogatory (in this case, Interrogatory No. 15) identified only one single-page document consisting of an apparently computer-generated image supposedly of an alleged design-around ███████████████████████████████████ ████████████████████████████████. (Ex. 4 (June 4, 2021 Suppl. Resp. to Interrog. No. 15) at 2.) The image lacked any labels, measurements, or explanations. (*See* Ex. 7.) Two business days before the deposition of Asetek's 30(b)(6) witness on non-infringing alternatives, Andre Eriksen, Asetek supplemented its response to Interrogatory No. 15 and identified just one additional set of ten images apparently of the same design-around. (*See* Ex. 5 (Eriksen Depo. Tr.) at 188:25-189:6, 194:20-25, 195:14-21; Ex. 6 (Aug. 20, 2021 Second Suppl. Resp. to Interrog. No. 15) at 3.) Those images also failed to include any details, such as dimensions, measurements, functions, labels, or other explanations, let alone the specifics ██████████████████████████████████████ █████. (Ex. 6 (Aug. 20, 2021 Second Suppl. Resp. to Interrog. No. 15) at 3; *see also* Ex. 8.) Asetek—through its corporate designee Mr. Eriksen—was unable to answer basic questions about the documents including who authored the documents, when they were created, who at Asetek created the alleged design around, and whether any simulations or testing had been performed on the design. (Ex. 5 (Eriksen Depo. Tr.) at 189:2-203:4; Exs. 7-8.)

**After the deposition regarding Topic Nos. 20-21 on alternative designs**, on the last day of fact discovery, Asetek again supplemented its interrogatory responses, citing to one more Bates-numbered page of an alleged simulation result of the supposed design-around, without any information about how or based on what the result was produced, other than providing the name of the person who performed the simulation and an explanation that it took ████████████████ (Ex. 9 (Aug. 31, 2021 Third Suppl. Resp. to Interrog. No. 15) at 3; Ex. 10 (Aug. 31, 2021 Suppl. Resp. to Interrog.

---

design-arounds. (Ex. 18 (June 25, 2019 CoolIT's First Set of RFPs to Asetek, RFPs 71-72) at 15-16; Ex. 19 (July 9, 2021 CoolIT's 30(b)(6) Deposition Notice to Asetek, Topics 20-21) at 7.)

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

6.

CASE NO. 3-19-CV-00410-EMC
DEFENDANTS' NOTICE OF MOTION AND MOTION
TO STRIKE

1  No. 3) at 14-16.)  Additionally, Asetek's last-day supplemental response attempted to describe a
2  separate design around for the very first time regarding ███████████████████████████████
3  ██████████████████████████████████.  (Ex. 10 (Aug. 31, 2021 Suppl. Resp. to Interrog.
4  No. 3) at 14-16.)  But Asetek did not even include a single drawing or sketch of this alleged design,
5  instead pointing only to pictures ███████████████████████████████████████████████████
6  ████████████████████████████████████████████████████████████████████████, again
7  without any technical details.  (Id.)  Additionally, no models, working prototypes, or physical samples
8  of either alleged design-around (███████████████████████████) were ever produced
9  during fact discovery.

10        These disclosures—eleven single-page images and one single-page summary of a supposed
11  simulation result—were the only supporting evidence for Asetek's alleged design-arounds that were
12  produced during fact discovery, so were the only supporting evidence available for analysis at the time
13  CoolIT prepared and served its opening expert reports on November 3, 2021, including CoolIT's
14  expert reports on infringement and damages.  CoolIT's experts relied upon Asetek's disclosures as
15  they existed at the close of fact discovery, including in their analysis of any alleged non-infringing
16  alternatives.  (See Ex. 11 at 17-20 (CoolIT's opening damages report discussing non-infringing
17  alternatives with reliance on input from CoolIT expert Dr. Abraham).)

18        **D.    Asetek's rebuttal expert reports, CAD files, and Ansys SpaceClaim files**

19        On December 8, 2021, the day rebuttal expert reports were due and more than three months
20  after the close of fact discovery, Asetek produced for the first time detailed CAD files and Ansys
21  SpaceClaim files corresponding to alleged design-arounds analyzed in Asetek's rebuttal expert
22  reports, including the Expert Report of Dr. Carl-Fredrik Stein Regarding Alternative Designs (the
23  "Stein Report"), apparently in rebuttal to CoolIT's analysis of the alleged non-infringing alternatives
24  Asetek disclosed during fact discovery.  (Chen Decl. ¶ 13; Ex. 12 (Stein Report).)

25        Tellingly, the Stein Report cited to none of the documents identified during fact discovery.
26  Rather, the Stein Report explains that he was ███████████████████████████████████████
27  █████████████████████████████████████████████████████████████████████████
28  █████████████████████████████████████████████████████████████████████████

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO
7.
CASE NO. 3-19-CV-00410-EMC
DEFENDANTS' NOTICE OF MOTION AND MOTION
TO STRIKE

1  (Ex. 12 (Stein Report) ¶ 4.)  Specifically, Dr. Stein explains that Asetek provided him with

2  ███████████████████████████████████████████████████████

3  ███████████████████████████████████████████████████████

4  ███████████████████████████████████████████████████████

5  ██████████████████████████████████ (Ex. 12 (Stein Report) ¶ 11.)

6  None of this information was ever provided during fact discovery, so none was available for analysis

7  by any of CoolIT's experts.

8       Asetek served two other rebuttal expert reports that relied at least in part upon the Stein Report

9  based on the late-produced design documents: (1) the Rebuttal Expert Report of Dr. David B.

10  Tuckerman Regarding Non-Infringement of U.S. Patent Nos. 8,746,330; 9,603,284; and 10,274,266

11  ("Tuckerman Non-Infringement Report") and (2) the Rebuttal Report of Nisha Marie Mody, Ph.D.

12  ("Mody Rebuttal Report").  (Ex. 13 (Tuckerman Non-Infringement Report) ¶ 82; Ex. 14 (Mody

13  Rebuttal Report) ¶ 40.)  The Tuckerman Non-Infringement Report also references and extensively

14  relies upon the late-produced CAD files.[6]  (Ex. 13 (Tuckerman Non-Infringement Report) ¶¶ 76-81.)

15  Dr. Mody provides no new technical analysis of any alleged non-infringing alternative, but instead

16  quotes Asetek's supplemental response to Interrogatory No. 3 and then states: █████████

17  ███████████████████████████████████████████████████████

18  ███████████████████████████████████████ (Ex. 14 (Mody

19  Rebuttal Report) ¶¶ 39-40.)

20       During deposition, Asetek's experts additionally admitted that they were not sure whether any

21  prototypes of the alleged design-arounds existed at the time and, therefore, did not evaluate any

22  prototypes.  (Ex. 15 (Jan. 13, 2022 Stein Depo. Tr.) at 28:1-29:11; Ex. 16 (Dec. 22, 2021 Tuckerman

23  Depo. Tr.) at 56:21-57:1.)  The case schedule did not allow for reply reports, so no CoolIT experts

24  were able to submit any reports analyzing or discussing any of the late-produced evidence of alleged

25  design-arounds.

26

27  [6] Dr. Tuckerman's report references one of the documents produced during discovery, but then opines on ███████████████████████████████████ (Ex. 13 ¶ 78.)

28  This information was not provided with the documents produced during discovery, which included no measurements whatsoever.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

8.

CASE NO. 3-19-CV-00410-EMC
DEFENDANTS' NOTICE OF MOTION AND MOTION
TO STRIKE

E.      **Asetek's physical samples**

On February 22, 2022 – more than five months after the close of fact discovery – Asetek delivered two physical samples of the alleged design-arounds to Cooley's office. (*See* Ex. 17.)

III.    **LEGAL STANDARD**

Rule 26(e) requires a party to timely supplement or correct its interrogatory responses.  Fed. R. Civ. P. 26(e)(1).  "When a party fails to disclose information required by Rule 26, Rule 37(c)(1) provides that the improperly withheld information should be excluded, unless the failure to disclose is 'substantially justified or harmless.'"  *Ingenco Holdings v. Ace Am. Ins.*, 921 F.3d 803, 821 (9th Cir. 2019) (quoting Fed. R. Civ. P. 37(c)(1)) (affirming exclusion of evidence not included in an interrogatory responses or damages disclosure).  "The Ninth Circuit affords district courts 'particularly wide latitude' in applying Rule 37(c)(1) to exclude information that a party failed to provide under Rule 26."  *See MLC Intell. Prop. v. Micron Tech.*, 10 F.4th 1358, 1370 (Fed. Cir. 2021); *see also Elliott v. Google*, 860 F.3d 1151, 1161 (9th Cir. 2017) (affirming exclusion of evidence not disclosed during discovery).

IV.    **ARGUMENT**

The Stein Report relies entirely upon evidence of alleged design-arounds that were not properly disclosed in discovery.  Asetek's failure to disclose its alleged design-arounds was neither substantially justified nor harmless, so the Court should exercise its wide latitude to exclude evidence of these alleged design arounds, including striking the entirety of the Stein Report and those portions of the Tuckerman Non-Infringement Report and Mody Rebuttal Report that rely upon the Stein Report based on the CAD and Ansys files that were never disclosed during fact discovery.  Specifically, the Court should strike Tuckerman Non-Infringement Report paragraphs 76-78, the first portion of paragraph 79 (all sentences preceding "I agree with Mr. Eriksen …"), and paragraphs 80-82.  The Court should strike Mody Rebuttal Report paragraph 40.

A.      **Asetek failed to disclose its alleged design-arounds during discovery.**

Had Asetek wanted to advance the design arounds set forth in the CAD files and Ansys SpaceClaim files the Stein Report is based on, it should have produced them during fact discovery. CoolIT served not one but <u>two</u> interrogatories on Asetek seeking Asetek's future plans and designs

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

9.

CASE NO. 3-19-CV-00410-EMC
DEFENDANTS' NOTICE OF MOTION AND MOTION
TO STRIKE

for the Asetek Accused Products, in addition to Requests for Production and 30(b)(6) deposition topics directed to alleged non-infringing alternatives and alternate designs. Asetek apparently understood its obligation to disclose its design-arounds, as it scrambled to inject bare-bones alternate designs towards the end of fact discovery. But Asetek did <u>not</u> disclose the specific alleged design-arounds reflected in the CAD files and related Ansys SpaceClaim files critical for analysis, such as the kind of simulations described in the Stein Report. Generating CAD files, then Ansys SpaceClaim files based on CAD files, and finally simulations using the Ansys SpaceClaim files each takes time: Asetek plainly knew before December 8, 2021 that it had additional alleged design-arounds but elected not to disclose <u>anything</u> about their development or existence before serving rebuttal reports.

Indeed, all of the alleged design-arounds analyzed in the Stein Report are based on CAD files that were never produced to CoolIT until December 8, 2021 – after CoolIT had already submitted the report of Dr. Himanshu Pokharna on Asetek's infringement of CoolIT's patents and the report of Dr. John Hansen on CoolIT's damages. This was more than three months after Asetek's final supplemental interrogatory responses were served (on August 31, 2021, the close of fact discovery). And it was more than a month after CoolIT served opening expert reports (including CoolIT's expert reports on infringement and damages) on November 3, 2021 that relied on Asetek's discovery as of that date to opine that "Asetek has not presented any evidence that it would be able to offer a commercially acceptable desktop product for sale without utilizing the CoolIT Patents-In-Suit." (*See* Ex. 11 ¶ 51.)

The Stein Report includes illustrations of the changed products supposedly embodied by the CAD files, but as shown below, these illustrations do not show how, or even if, they match the drawings in the documents cited in Asetek's interrogatory responses. (*Compare* Ex. 12 (Stein Report) at 5-6 *with* Ex. 8 (Depo. Ex. 186) at ASE-CLT00054033-42.) In fact, if anything,

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████████████████. (*Compare* Ex. 12 (Stein Report) at 5-6 *with* Ex. 8 (Depo. Ex. 186).)

Because Asetek was obligated to disclose its alleged design arounds during discovery and

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

10.

CASE NO. 3-19-CV-00410-EMC
DEFENDANTS' NOTICE OF MOTION AND MOTION
TO STRIKE

failed to do so, Asetek may not rely upon its late-disclosed design-around evidence unless Asetek's failure to properly disclose its evidence was either "substantially justified or harmless." But Asetek has no justification for failing to disclose its design arounds, and CoolIT has been prejudiced by Asetek's omission, so Asetek cannot rely upon its late-disclosed theories and evidence.

**B.    Asetek cannot substantially justify its failure to timely disclose evidence of its design-arounds.**

CoolIT served its <u>two</u> interrogatories seeking Asetek's design plans for the Asetek Accused Products on June 25, 2019 (Interrogatory No. 3) and November 5, 2020 (Interrogatory No. 15). This meant Asetek had over two years—from June 2019 to August 2021—to formulate its theories and develop evidence of alleged design-arounds, and then to timely disclose them to CoolIT before the August 31, 2021 close of fact discovery. But over the course of more than 2 years, Asetek disclosed only twelve Bates-numbered pages showing limited information (with no measurements and no design specifications) for only one of its supposed design-around theories. Those documents consisted of eleven single-page drawings with no dimensions, measurements, functions, labels, or other explanations and one page produced on the last day of discovery allegedly summarizing simulation results for the design depicted in the drawings. **<u>None of those pages were actually relied on by Dr. Stein.</u>**

Rather than stand on the alleged design arounds and evidence Asetek disclosed over the course of two years of fact discovery, Asetek in the three months *after* close of fact discovery developed a new set of plans for multiple alleged design-arounds, this time supported by the detailed CAD files and Ansys SpaceClaim files required for any analysis. Asetek could and should have developed and produced those CAD and Ansys SpaceClaim design files before the August 31, 2021 close of fact discovery, or at least well before the November 3, 2021 service of CoolIT's opening expert report on infringement. It was entirely within Asetek's control to develop these theories and evidence, but they did not do so on time. *Cf. MLC Intell. Prop.*, 10 F.4th at 1371 (affirming exclusion of late-disclosed reliance on evidence that was in plaintiff's possession "from the outset of the case").

Further, Asetek produced no actual samples of the alleged design-arounds until last month. Their late disclosure of CAD files, Ansys SpaceClaim files, and physical samples was untimely and

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

11.

CASE NO. 3-19-CV-00410-EMC
DEFENDANTS' NOTICE OF MOTION AND MOTION
TO STRIKE

1  improper.

2  **C.    Asetek's untimely disclosure has harmed CoolIT and Corsair.**

3  CoolIT and Corsair have been prejudiced by Asetek's untimely disclosure of its new design-

4  around theories and evidence, so the late disclosure is not harmless and should be struck.

5  Asetek did not disclose the CAD files and Ansys SpaceClaim design files required for analysis,

6  such as the simulation performed by Dr. Stein, until December 8, 2021, the same day it served the

7  Stein Report.  This was over a month after CoolIT served its opening expert report on infringement

8  (served November 3, 2021), and the case schedule does not allow for reply reports.  As such, this

9  clearly an ambush to which Asetek knew CoolIT would have no ability to respond.  CoolIT's

10  infringement expert, Dr. Himanshu Pokharna, did not have an opportunity to opine upon whether any

11  of the alleged design arounds described in the Stein Report are, in fact, still infringing (e.g., under the

12  doctrine of equivalents) because at the time Asetek had not produced any detailed evidence describing

13  the alleged design-arounds, for example the CAD and Ansys SpaceClaim design files.  Such technical

14  specifications and detailed evidence would have been necessary for Dr. Pokharna to perform any

15  meaningful analysis, such as the kind of simulations performed by Dr. Stein, that would have been

16  critical for, *e.g.*, an infringement theory under the doctrine of equivalents.[7]  Likewise, CoolIT's

17  damages expert was unable to opine on these late-disclosed alleged design-arounds.  CoolIT also was

18  unable to perform any actual testing of the design-around because no actual samples were produced

19  until last month.  CoolIT further was unable to obtain any fact discovery regarding these alleged design

20  arounds—such as regarding their design process, functionality, or cost and time to implement—

21  because they were not disclosed until more than three months after the close of fact discovery.  In fact,

22  to date, Asetek still has not supplemented its responses to Interrogatories No. 3 and 15 to describe

23  these new design-arounds, nor offered Mr. Eriksen for additional 30(b)(6) deposition testimony

24  regarding the alleged design-arounds.

25  CoolIT's inability to seek fact discovery or provide expert testimony regarding the late-

26

27  _____

[7] Indeed (and in sharp contrast), in Asetek's infringement case against CoolIT, CoolIT produced the

28  detailed design files, including without limitation CAD files, for CoolIT's new design prior to close
of fact discovery.  (Chen Decl. ¶ 22.)

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

12.

CASE NO. 3-19-CV-00410-EMC
DEFENDANTS' NOTICE OF MOTION AND MOTION
TO STRIKE

1    disclosed design-arounds is prejudicial and harmful to CoolIT.  *See, e.g., MLC Intell. Prop.*, 10 F.4th

2    at 1370-71 ("[W]e agree with the district court that, had MLC disclosed this information, Micron could

3    have sought fact discovery regarding this contention.").  As a result, Asetek's late-disclosed design-

4    arounds, including Bates Numbers ASE-CLT00054279-94 and ASE-CLT00054299-306, should be

5    excluded from this case.

6            **D.    All expert testimony relying on the excluded evidence should be struck.**

7            Because Asetek cannot rely upon its late-disclosed evidence, the Stein Report should be struck

8    in its entirety.  The simulations and opinions described in the Stein Report are entirely based on the

9    CAD files and related Ansys SpaceClaim design files for Asetek's new design-around plans produced

10   long after close of fact discovery.  Asetek should not be allowed to rely upon such late-disclosed

11   evidence.  The Stein Report does not simulate or rely upon any other design-around theories or

12   evidence disclosed prior to close of fact discovery, and in particular does not rely upon any of the

13   theories or evidence actually disclosed in Asetek's responses to Interrogatories No. 3 and 15.  As a

14   result, the entirety of the Stein Report should be struck.

15           Furthermore, two other Asetek rebuttal reports—the Tuckerman Non-Infringement Report and

16   the Mody Rebuttal Report—each expressly invoke and rely upon the Stein Report (and, in the case of

17   the Tuckerman Non-Infringement Report, the late-produced CAD files) for certain of their conclusions

18   and analyses.  (Ex. 13 (Tuckerman Non-Infringement Report) ¶¶ 76-82; Ex. 14 (Mody Rebuttal

19   Report) ¶ 40.)  To the extent these reports rely upon the Stein Report and the late-produced CAD files

20   and Ansys SpaceClaim design files, those portions of the Tuckerman Non-Infringement Report and

21   Mody Rebuttal Report should also be struck.  This includes at a minimum Paragraphs 76-78, first

22   portion of 79, and 80-82 of the Tuckerman Non-Infringement Report and the first sentence of

23   Paragraph 40 of the Mody Rebuttal Report.

24           Under Rule 37, the appropriate sanction for Asetek's failure to timely disclose its theories and

25   evidence during fact discovery is to exclude all such evidence, as courts in this district and throughout

26   the Ninth Circuit have routinely found.  *See, e.g., MLC Intell. Prop. v. Micron Tech.*, No. 14-cv-03657-

27   SI, 2019 WL 2863585, at *14-15 (N.D. Cal. July 2, 2019) (striking under Rule 37 expert opinions for

28   which factual basis was not timely disclosed during fact discovery), *aff'd*, 10 F.4th at 1373; *Ingenco*

Cooley LLP
Attorneys At Law
Palo Alto
13.
CASE No. 3-19-CV-00410-EMC
DEFENDANTS' NOTICE OF MOTION AND MOTION
TO STRIKE

*Holdings*, 921 F.3d at 821 (affirming Rule 37 exclusion of evidence not timely disclosed); *Elliott*, 860 F.3d at 1161 (same); *In re Koninklijke Philips Pat. Litig.*, No. 18-cv-01885-HSG, 2020 WL 7398647, at *5 (N.D. Cal. Apr. 13, 2020) (excluding noninfringing alternatives disclosed in rebuttal expert report but not interrogatory responses); *Asia Vital Components v. Asetek Danmark A/S*, 377 F. Supp. 3d 990, 1003-05 (N.D. Cal. 2019) (excluding theories disclosed in rebuttal expert report but not interrogatory responses); *Apple v. Samsung Elecs.*, No. 11-CV-01846-LHK, 2012 WL 3155574, at *5 (N.D. Cal. Aug. 2, 2012) (same); *see also Innogenetics, N.V. v. Abbott Lab'ys*, 512 F.3d 1363, 1375-76 (Fed. Cir. 2008) (excluding arguments disclosed for the first time on last day of discovery); *cf. Elbit Sys. Land & C4I v. Hughes Network Sys.*, No. 2:15-CV-00037-RWS-RSP, 2017 WL 2651618, at *12 (E.D. Tex. June 20, 2017 (prejudice of disclosure of alleged alternative design in expert reports "is significant" because the plaintiff "has not had a chance to test the underlying merits of these conclusions through discovery").

Asetek's attempt to bypass the normal process of fact and expert discovery on its noninfringing alternatives theories is wholly improper and unfairly prejudicial to CoolIT, who is left with no opportunity to understand let alone fully analyze Asetek's new theories and evidence.  If the Court nevertheless is not inclined to strike the Stein Report and the portions of the Tuckerman and Mody Reports that rely upon the late-disclosed evidence and/or the Stein Report, however, the Court should grant CoolIT leave to take discovery including further deposition testimony from Mr. Eriksen on the purported design-arounds, and/or to at least submit reply reports that respond to Asetek's late-disclosed theories and evidence.  The reply reports alone would not fully address the prejudice CoolIT incurred from its inability to seek further fact discovery about the late-disclosed design-around theories, if not granted.  But leave to file reply reports on infringement and damages would help alleviate the prejudice to CoolIT at least by allowing its experts to address whether or not Asetek's alleged new design arounds are in fact non-infringing, as Asetek claims, and any resulting impact to CoolIT's damages.  Because Asetek's egregious and improper litigation tactics precipitated any such further discovery, Asetek should additionally bear the incremental costs for CoolIT's further fact and expert discovery, if the Court is not inclined to strike the improper, late-disclosed evidence.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

14.

CASE NO. 3-19-CV-00410-EMC
DEFENDANTS' NOTICE OF MOTION AND MOTION
TO STRIKE

**V.    CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court grant their Motion to Strike Asetek's reliance upon late-produced evidence, including the entire Stein Report, Paragraphs 76-78, first portion of 79, and 80-82 of the Tuckerman Non-Infringement Report and the first sentence of Paragraph 40 of the Mody Rebuttal Report.

Dated:        March 31, 2022                    */s/  Reuben H. Chen*

COOLEY LLP
HEIDI L. KEEFE (178960)
(hkeefe@cooley.com)
REUBEN H. CHEN (228725)
(rchen@cooley.com)
DANIEL J. KNAUSS (267414)
(dknauss@cooley.com)
ALEXANDRA LEEPER (307310)
(aleeper@cooley.com)
DEEPA KANNAPPAN (313573)
(dkannappan@cooley.com)
3175 Hanover Street
Palo Alto, CA  94304-1130
Telephone:    (650) 843-5000
Facsimile:     (650) 849-7400

DUSTIN M. KNIGHT (*pro hac vice*)
(dknight@cooley.com)
11951 Freedom Drive, 16th Floor
Reston, VA 20190
Telephone: (703) 456-8000
Facsimile: (703) 456-8100

*Attorneys for Defendant and Counter-claimant COOLIT SYSTEMS, INC. and Defendants CORSAIR GAMING, INC. and CORSAIR MEMORY, INC.*

GREENBERG TRAURIG, LLP
KYLE D. CHEN (SBN 239501)
(kchen@gtlaw.com)
1900 University Avenue
East Palo Alto, CA 94303
Telephone: (650) 289-7887
Facsimile: (650) 328-8508

*Attorneys for Defendant CoolIT Systems, Inc.*