Robert F. McCauley (SBN 162056)
robert.mccauley@finnegan.com
Arpita Bhattacharyya (SBN 316454)
arpita.bhattacharyya@finnegan.com
Jeffrey D. Smyth (SBN 280665)
jeffrey.smyth@finnegan.com
**FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, LLP**
3300 Hillview Avenue
Palo Alto, California 94304
Telephone:    (650) 849-6600
Facsimile:    (650) 849-6666

Attorneys for Plaintiff and Counterdefendant
ASETEK DANMARK A/S and
Counterdefendant ASETEK USA, INC.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| ASETEK DANMARK A/S,<br><br>　　　　　Plaintiff and<br>　　　　　Counterdefendant,<br><br>ASETEK USA, INC.,<br><br>　　　　　Counterdefendant,<br><br>　　v.<br><br>COOLIT SYSTEMS, INC.,<br><br>　　　　　Defendant and<br>　　　　　Counterclaimant,<br><br>COOLIT SYSTEMS USA INC., COOLIT SYSTEMS ASIA PACIFIC LIMITED, COOLIT SYSTEMS (SHENZHEN) CO., LTD.,<br><br>　　　　　Defendants,<br><br>CORSAIR GAMING, INC. and CORSAIR MEMORY, INC.,<br><br>　　　　　Defendants. | CASE NO. 3:19-cv-00410-EMC<br><br>**ASETEK DANMARK A/S AND ASETEK USA, INC.'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date:　　　　May 5, 2022<br>Time:　　　　1:30 PM<br>Location:　　Courtroom 5, 17th Floor<br>Judge:　　　Hon. Edward M. Chen |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION

TO ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on May 5, 2022, at 1:30 PM in Courtroom 5, located on the 17th Floor of the above-entitled court at 450 Golden Gate Avenue, San Francisco, California, or a soon thereafter as the matter may be heard before Honorable Edward M. Chen, Plaintiff and Counterdefendant Asetek Danmark A/S and Counterdefendant Asetek USA, Inc. (collectively "Asetek") will and hereby does move for partial Summary Judgement under Fed. R. Civ. P. 56 and Civil Local Rule 56 and based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities and all the authorities and evidence cited therein, the Declaration of Arpita Bhattacharyya, and the accompanying exhibits, all other papers and pleadings in this action, such additional arguments and evidence as may be presented to the Court at or before the hearing on this Motion, and any other matters of which this Court may take judicial notice.

As stated in the accompanying Memorandum, Asetek moves for partial summary judgment that:

1.    The accused Asetek Generation 5, 6, and 7 products do not infringe CoolIT System, Inc.'s asserted U.S. Patent Nos. 8,746,330; 9,603,284; and 10,274,266. In the alternative, the asserted claims of these CoolIT patents are invalid for lack of written description.

2.    Claims 17 and 19 of Asetek's U.S. Patent No. 8,240,362 are not invalid under the following obviousness combinations alleged by Defendant CoolIT Systems, Inc.: Ryu in view of Wu or Batchelder; Batchelder in view of Shin, Ryu, or Wu; and Yu in view of Wu.

1

**TABLE OF CONTENTS**

2    I.    INTRODUCTION ................................................................................................1

3    II.    FACTUAL BACKGROUND ...............................................................................1

4        A.    CoolIT's Infringement Allegations Against Asetek's Generation 5, 6, and 7 Products.................................................................................................1

5

6        B.    Alleged Obviousness of Asetek's '362 Patent Claims ............................4

   III.    LEGAL STANDARD FOR SUMMARY JUDGMENT..................................4

7

8    IV.    THE COURT SHOULD GRANT SUMMARY JUDGMENT THAT ASETEK'S GENERATION 5, 6, AND 7 PRODUCTS DO NOT INFRINGE COOLIT'S ASSERTED CLAIMS BECAUSE THERE IS NO GENUINE DISPUTE THAT THE PRODUCTS DO NOT INCLUDE THE CLAIMED "PLATE" AS PROPERLY CONSTRUED....................................................................................................6

9

10

11        A.    The Court should construe "plate" as a "flat manifold body made of a rigid material"...............................................................................................7

12            1.    "Plate" has no established plain and ordinary meaning, and therefore must be construed based on the intrinsic record .........................7

13

14            2.    Asetek's construction of "plate" is consistent with the intrinsic record; CoolIT's purported construction is not.....................................9

15               a.    Asetek's construction of "plate" as a rigid manifold body is supported by the written description and the PTAB's judgment.....9

16

17               b.    The written description and prosecution history of the CoolIT's patents contradict CoolIT's proposed construction, which attempts to erase all distinctions between a rigid "plate" and a compliant manifold ...........................................................11

18

19        B.    Under the proper construction of "plate" as a manifold body made of rigid material, there is no genuine dispute that Asetek's Gen 5, 6, and 7 products do not infringe the asserted claims................................................16

20

21        C.    Notwithstanding the Federal Circuit's precedent that claim scope is limited by written description and prosecution history, if the Court nevertheless construes "plate" broadly to include manifold bodies made of compliant materials, then the asserted claims should be found invalid for lack of written description..........18

22

23        D.    Conclusion ....................................................................................21

24    V.    THE COURT SHOULD GRANT SUMMARY JUDGMENT OF NO INVALIDITY OF CLAIMS 17 AND 19 OF THE '362 PATENT UNDER OBVIOUSNESS GROUNDS 4-9 BECAUSE COOLIT CANNOT MEET ITS BURDEN TO PROVE MOTIVATION TO COMBINE THE PRIOR ART REFERENCES AND REASONABLE EXPECTATION OF SUCCESS IN DOING SO...................................22

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ActiveVideo Networks, Inc. v. Verizon Communs., Inc.*,
    694 F.3d 1312 (Fed. Cir. 2012) .................................................................................................24

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*,
    239 F.3d 1343 (Fed. Cir. 2001) .................................................................................................13

*Amgen, Inc. v. F. Hoffman-La Roche, Ltd.*,
    580 F.3d 1340 (Fed. Cir. 2009) .................................................................................................25

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ...................................................................................................................4

*Ariad Pharms., Inc. v. Eli Lilly & Co.*,
    598 F.3d 1336 (Fed. Cir. 2010) (Rader, J., concurring in part) ................................................10

*Arizona v. California*,
    530 U.S. 392 (2000) .................................................................................................................21

*Asia Vital Components Co. v. Asetek Danmark A/S*,
    377 F. Supp. 3d 990 (N.D. Cal. 2019) .................................................................................24, 25

*Atlantic Research Marketing Systems, Inc. v. Troy*,
    659 F.3d 1345 (Fed. Cir. 2011) ............................................................................................19, 20

*B&B Hardware, Inc. v. Hargis Indus.*,
    575 U.S. 138 (2015) .................................................................................................................21

*Beauchamp v. Anaheim Union High Sch. Dist.*,
    816 F.3d 1216 (9th Cir. 2016) ..................................................................................................20

*Broadcom Corp. v. Emulex Corp.*,
    732 F.3d 1325 (Fed. Cir. 2013) ................................................................................................25

*Carnegie Mellon Univ. v. Hoffmann-LaRoche, Inc.*,
    55 F. Supp. 2d 1024 (N.D. Cal. 1999) ........................................................................................5

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ...................................................................................................................4

*Cisco Sys., Inc. v. Cirrex Sys., LLC*,
    856 F.3d 997 (Fed. Cir. 2017) ..................................................................................................18

*Clark v. Bear Stearns & Co., Inc.*,
    966 F.2d 1318 (9th Cir. 1992) ..................................................................................................20

*Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*,
  868 F.2d 1251 (Fed. Cir. 1989)............................................................................................5

*Eisai Co. v. Dr. Reddy's Labs., Ltd.*,
  533 F.3d 1353 (Fed. Cir. 2008)............................................................................................5

*Eli Lilly and Co. v. Barr Labs., Inc.*,
  251 F.3d 955 (Fed. Cir. 2001)..............................................................................................5

*Eon Corp. IP Holdings v. Silver Spring Networks Inc.*,
  815 F.3d 1314 (Fed. Cir. 2016)........................................................................................8, 9

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
  721 F.3d 1330 (Fed. Cir. 2013)..........................................................................................21

*Gentry Gallery, Inc. v. Berkline Corp.*,
  134 F.3d 1473 (Fed. Cir. 1998)..................................................................................9, 10, 11

*Goldenberg v. Cytogen, Inc.*,
  373 F.3d 1158 (Fed. Cir. 2004)............................................................................................9

*Impax Labs., Inc. v. Lannett Holdings Inc.*,
  893 F.3d 1372 (Fed. Cir. 2018)..........................................................................................22

*Innogenetics, N.V. v. Abbott Labs.*,
  512 F.3d 1363 (Fed. Cir. 2008)..........................................................................................25

*Intellectual Ventures I v. Motorola Mobility LLC*,
  870 F.3d 1320 (Fed. Cir. 2017)......................................................................................10, 11

*Juno Therapeutics, Inc. v. Kite Pharma, Inc.*,
  10 F.4th 1330 (Fed. Cir. 2021) .......................................................................................18, 20

*Kaneka Corp. v. Xiamen Kingdomway Grp. Co.*,
  790 F.3d 1298 (Fed. Cir. 2015)............................................................................................8

*Laitram Corp. v. Rexnord, Inc.*,
  939 F.2d 1533 (Fed. Cir. 1991)............................................................................................5

*Lexion Med., LLC v. Northgate Techs., Inc.*,
  641 F.3d 1352 (Fed. Cir. 2011)............................................................................................8

*In re Magnum Oil Tools Int'l, Ltd.*,
  829 F.3d 1364 (Fed. Cir. 2016)......................................................................................23, 24

*Massey v. Del Labs., Inc.*,
  118 F.3d 1568 (Fed. Cir. 1997)............................................................................................4

*MaxLinear, Inc. v. CF CRESPEL LLC*, 880 F.3d 1373 (Fed. Cir. 2018)............................................21

*Metalcraft of Mayville, Inc. v. The Toro Co.*,
  848 F.3d 1358 (Fed. Cir. 2017)...................................................................................24

*Microsoft Corp. v. Enfish*,
  *LLC*, 662 F. Appx 981 (Fed. Cir. 2016) ....................................................................22

*Mytee Products, Inc. v. Harris Research, Inc.*,
  439 Fed. Appx. 882 (Fed. Cir. 2011) ......................................................................5, 25

*Nike Inc. v. Wolverine World Wide, Inc.*,
  43 F.3d 644 (Fed. Cir. 1994)...............................................................................4, 5, 18

*In re NuVasive, Inc.*,
  842 F.3d 1376 (Fed. Cir. 2016).............................................................................22, 24

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
  521 F.3d 1351 (Fed. Cir. 2008)..................................................................................8

*On Demand Mach. Corp. v. Ingram Indus.*,
  442 F.3d 1331 (Fed. Cir. 2006)..............................................................................9, 11

*PersonalWeb Techs., LLC v. Apple, Inc.*,
  848 F.3d 987 (Fed Cir. 2017)..........................................................................23, 24, 25

*Power-One, Inc. v. Artesyn Techs., Inc.*,
  599 F.3d 1343 (Fed. Cir. 2010)...................................................................................25

*PowerOasis. Inc. v. T-Mobile USA, Inc.*,
  522 F.3d 1299 (Fed. Cir. 2008)...............................................................................6, 14

*Rivera v. Int'l Trade Comm'n*,
  857 F.3d 1315 (Fed. Cir. 2017)...............................................................................19, 20

*In re Rouffet*,
  149 F.3d 1350 (Fed. Cir. 1998)...................................................................................25

*Ruckus Wireless, Inc. v. Innovative Wireless Sols., LLC*,
  824 F.3d 999 (Fed. Cir. 2016).................................................................................9, 11

*Securus Techs., Inc. v. Glob. Tel*Link Corp.*,
  701 F. Appx. 971 (Fed. Cir. 2017)..............................................................................24

*In re Stepan Co.*,
  868 F.3d 1342 (Fed. Cir. 2017)...................................................................................25

*TQ Delta, LLC v. Cisco Sys., Inc.*,
  942 F.3d 1352 (Fed. Cir. 2019)...................................................................................24

*TriVascular, Inc. v. Samuels*,
  812 F.3d 1056 (Fed. Cir. 2016)...................................................................................23

v

*In re Warsaw Orthopedic, Inc.*,
    832 F.3d 1327 (Fed. Cir. 2016)..............................................................................22

*XY, LLC v. Trans Ova Genetics, L.C.*,
    890 F.3d 1282 (Fed. Cir. 2018)..............................................................................21

*Zoho Corp. v. Sentius Int'l, LLC*,
    494 F. Supp. 3d 693 (N.D. Cal. 2020) ...............................................18, 19, 20

**Statutes**

35 U.S.C. § 112..............................................................................................19, 20

35 U.S.C. § 282(a) ...............................................................................................5

**Other Authorities**

Fed. R. Civ. P. 56(a) ..............................................................................................4

**STATE OF RELIEF REQUESTED**

Asetek respectfully requests that the Court grant partial summary judgment that:

1)      The accused Asetek Generation 5, 6, and 7 products do not infringe CoolIT System, Inc.'s asserted U.S. Patent Nos. 8,746,330 ("the '330 patent"); 9,603,284 ("the '284 patent"); and 10,274,266 ("'266 patent"). In the alternative, the asserted claims of these CoolIT patents are invalid for lack of written description.

2)      Claims 17 and 19 of Asetek's U.S. Patent No. 8,240,362 ("the '362 patent") are not invalid under the following obviousness combinations alleged by Defendant CoolIT Systems, Inc.: Ryu in view of Wu or Batchelder; Batchelder in view of Shin, Ryu, or Wu; and Yu in view of Wu.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Asetek moves for summary judgment on two issues. First, Asetek moves for summary judgment that Asetek's accused Generation 5, 6, and 7 products do not infringe CoolIT's asserted claims. As part of that motion, Asetek asks the Court to construe the claim term "plate" that is recited in each of CoolIT's assert claims in the '330, the '284, and the '266 patents. Under the proper construction of "plate," the accused products do not infringe. If, however, the Court disagrees with Asetek's construction of "plate," and gives "plate" a broad construction as proposed by CoolIT, then CoolIT's asserted claims should be found invalid for lack of written description.

Second, Asetek moves for summary judgment that claims 17 and 19 of Asetek's '362 patent are not invalid under certain asserted obviousness combinations because CoolIT failed to present evidence on motivation to combine and reasonable expectation of success in making those alleged combinations.

## II.   FACTUAL BACKGROUND

### A.   CoolIT's Infringement Allegations Against Asetek's Generation 5, 6, and 7 Products

CoolIT's '330 and '284 patents claim priority to U.S. provisional application No. 60/954,987 filed on August 9, 2007 ("the 2007 Provisional," Ex. D[1]). CoolIT's '266 patent claims priority through a chain of continuations and a continuation-in-part application to the '330 patent, which in turn claims priority to the 2007 Provisional. Bhattacharyya Decl., ¶19. The '266 patent additionally claims priority to another provisional application No. 61/512,379 filed on July 27, 2011 ("the 2011 Provisional," Ex. E). *Id.* The 2011 Provisional included new subject matter disclosing compliant material that was not disclosed in the 2007 Provisional. Ex. E, Figs. 7, 11, and 12 (showing compliant surface 334), 21:13-23:12 (discussing "insert 334" that can be formed of a compliant material). Therefore, in an IPR filed by Asetek against the '266 patent (IPR2020-00825), Asetek argued that the 2007 Provisional did not provide any disclosure regarding the limitation "manifold body defin[ing] a pair of compliant surfaces" in independent claim 1 of the '266 patent, rather that disclosure was added in the 2011

---

[1] All exhibits are attached to the Declaration of Arpita Bhattacharyya ("Bhattacharyya Decl.")

Provisional. Bhattacharyya Decl., ¶20. Accordingly, Asetek argued that independent claim 1 of the '266 patent (and dependent claims 2, 4, 5, and 9) were not entitled to a priority date before July 27, 2011 (i.e., the filing date of the 2011 Provisional). *Id.*

Specifically, Asetek argued that:

- The 2007 Provisional disclosed a rigid "plate" (i.e., plate 240) positioned over the microchannels and fins, which cannot be compared or equated to the "compliant surfaces" recited in the '266 patent. *Id.* at ¶21. Nowhere does the 2007 Provisional disclose that the "plate" is made of complaint material or has compliant surfaces. *Id.*

- The '266 patent (and the 2011 Provisional) specifically distinguish the "plate" from a compliant member/manifold (i.e., compliant insert 334) by stating that compliant surfaces 367 of insert 334 can "reduce or eliminate the need for secondary machining operations used to make the respective distal ends of the fins generally coplanar and compatible with, for example, a rigid plate." Ex. F, 15:31-63; Ex. E, 23:2-5 (directly contrasting compliant insert 334 with plate 240). Therefore, the 2007 Provisional's disclosure regarding "plate" (i.e., plate 240) does not provide written description support for the "compliant surfaces" recited in the '266 patent claims. Bhattacharyya Decl., ¶21.

In response, CoolIT argued that the 2007 Provisional reasonably would have conveyed to a POSITA that "the inventor possessed a plate 240 made from a compliant material by August 9, 2007," that the disclosure in the 2007 Provisional was "consistent with plate 240 being made from a compliant material," and further that the "[a]dded disclosure in the 2011 Provisional and the '266 patent is consistent with plate 240 being made from a compliant material." Ex. I at 21-28.

But the PTAB rejected each of CoolIT's arguments attempting to show that plate 240 in the 2007 Provisional was made of a compliant material, and instead agreed with Asetek that there was no written description support for "manifold body defin[ing] a pair of compliant surfaces" in the 2007 Provisional. Ex. C at 23, 30. The PTAB specifically concluded the following:

- "We have reviewed the 2007 Provisional in its entirety, and nothing in the 2007 Provisional describes the material of which plate 240 is made, much less indicates that the inventor had

possession of an invention including a manifold body (i.e., plate 240) defining a pair of compliant surfaces." *Id.* at 24.

- In discussing disclosure in the 2011 Provisional of the benefits of compliant insert 334 over plate 240, the PTAB stated: **"This is objective, intrinsic evidence that the inventor, as of 2011, did not consider plate 240 to be made of what he described in the 2011 Provisional as being compliant material."** *Id.* at 24-25 (emphasis added).

- "All references in the '266 Patent to a 'compliant body' appear to derive from disclosures that were added in the 2011 Provisional." *Id.* at 25.

- **"The inventor's substitution of the phrase 'rigid plate' for the phrase 'plate 240' [in the '266 patent] is objective, intrinsic evidence that as of 2012, the inventor considered plate 240 (which he was contrasting with compliant insert 334) to be made of a rigid, rather than compliant, material."** *Id.* at 26 (emphasis added).

- CoolIT's "arguments and the supporting testimony from Dr. Pokharna are weak on several levels and fall far short of demonstrating to a POSITA that the inventor had possession of a manifold body defin[ing] a pair of compliant surfaces in 2007." *Id.* at 27.

- **"Nothing in the 2007 Provisional would have indicated to a POSITA that the inventor envisioned making plate 240 of a compliant material in order to perform a gasketing or sealing function."** *Id.* at 28-29 (emphasis added).

Despite the PTAB's above findings, and despite that CoolIT did not appeal the PTAB's final decision or any of its findings (Bhattacharyya Decl., ¶22), CoolIT has implicitly construed the "plate"[2] (i.e., plate 240) recited in each asserted independent claim of the '330, the '284, and the '266 patents to include manifold bodies made of compliant materials, and has mapped the claimed "plate" to a compliant gasket manifold in Asetek's Gen 5, 6, and 7 products. Ex. A, 63:13-17 (CoolIT's expert agreeing that "plate" is recited in each asserted claim); *see* Section IV.B, *infra* (discussing there is no genuine dispute that the "plate" is mapped to a compliant gasket in Asetek's Gen 5, 6, and 7 products).

---

[2] Independent claim 1 of the '330 patent recites "a plate positioned over the distal ends of the plurality of fins," independent claim 12 recites "a plate positioned over the juxtaposed fins," and independent claim 14 recites "an apertured plate overlying the microchannels." Similarly, independent claims 1 and 15 of the '284 patent recite a "plate positioned over the plurality of walls," and independent claim 13 of the '266 patent recites "a plate overlying the walls."

**B.**     **Alleged Obviousness of Asetek's '362 Patent Claims**

Asetek asserts claims 17 and 19 of the '362 patent against accused CoolIT products in this case. In alleging invalidity of these claims, CoolIT relies on the expert report of Dr. John Abraham. Dr. Abraham alleges that claims 17 and 19 of the '362 patent are obvious based on <u>*nine*</u> separate obviousness combinations: 1) Shin in view of Wu (Ground 1); 2) Shin in view of Batchelder (Ground 2); 3) Shin in view of Laing (Ground 3); 4) Ryu in view of Wu (Ground 4); 5) Ryu in view of Batchelder (Ground 5); 6) Batchelder in view of Shin (Ground 6); 7) Batchelder in view of Ryu (Ground 7); 8) Batchelder in view of  Wu (Ground 8); and 9) Yu in view of Wu (Ground 9). Ex. AA, 20-21. Dr. Abraham did not assert anticipation of either claim. *Id.*

Asetek moves for summary judgment of no invalidity under Grounds 4-9. Asetek is not moving for summary judgment on the remaining three obviousness combinations (Ground 1-3) based on Shin in view of Wu, Batchelder, or Laing (although Asetek disputes the merits of those allegations).

### III.     LEGAL STANDARD FOR SUMMARY JUDGMENT

"Summary judgment is appropriate in a patent case, as in other cases, when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Nike Inc. v. Wolverine World Wide, Inc.*, 43 F.3d 644, 646 (Fed. Cir. 1994); Fed. R. Civ. P. 56(a). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence [of the nonmovant] is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (internal citations omitted). If a claim or defense is factually unsupported, it should be disposed of on summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Moreover, the moving party need not "produce evidence showing the absence of a genuine issue of material fact"; instead, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325; *Massey v. Del Labs., Inc.*, 118 F.3d 1568, 1573 (Fed. Cir. 1997) ("[T]he patent itself carries a presumption of validity, which requires proof of facts supporting invalidity to rise to the level of clear and convincing evidence. Therefore, to prevail on her motion for summary judgment of validity, [the patentee] need not have presented any factual evidence.") (internal citation omitted).

1  "To establish infringement, every limitation set forth in a patent claim must be found in an

2  accused product or process exactly or by a substantial equivalent." *Laitram Corp. v. Rexnord, Inc.*,

3  939 F.2d 1533, 1535 (Fed. Cir. 1991) (citing *Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.,* 868

4  F.2d 1251, 1259 (Fed. Cir. 1989). Summary judgment of noninfringement is appropriate where there

5  is no genuine issue of material fact that the accused product does not include one or more limitations

6  of the asserted patent claim either literally or under the doctrine of equivalents. *Nike*, 43 F.3d at 647

7  (rejecting Nike's proposed claim construction and affirming the district court's grant of summary

8  judgment of non-infringement because "no reasonable jury could have found that Wolverine's shoes

9  literally infringed any claim of the [Nike] patent" under the proper claim construction); *Carnegie*

10  *Mellon Univ. v. Hoffmann-LaRoche, Inc.,* 55 F. Supp. 2d 1024, 1043-45, 1047-48 (N.D. Cal. 1999)

11  (granting summary judgment of no infringement because the accused products did not include every

12  limitation of the asserted claims literally or by an equivalent).

13  "The burden of establishing invalidity of a patent or any claim thereof rests on the party

14  asserting such invalidity." 35 U.S.C. § 282(a). For summary judgment of no invalidity, the patentee

15  must show that "the nonmoving party, who bears the burden of proof at trial, failed to produce clear

16  and convincing evidence on an essential element of a defense upon which a reasonable jury could

17  invalidate the patent." *Eli Lilly and Co. v. Barr Labs., Inc.*, 251 F.3d 955, 962 (Fed. Cir. 2001).

18  Summary judgment of non-obviousness is appropriate where the party challenging patent validity fails

19  to show the existence of clear and convincing evidence supporting the factual bases of the legal

20  conclusion of obviousness. *See, e.g., Eisai Co. v. Dr. Reddy's Labs., Ltd.*, 533 F.3d 1353, 1356, 1358-

21  59 (Fed. Cir. 2008) (affirming district court's grant of summary judgment of non-obviousness for

22  failure to provide any reason why a skilled artisan would have modified a known compound to arrive

23  at the claimed invention); *Mytee Products, Inc. v. Harris Research, Inc.*, 439 Fed. Appx. 882, 886

24  (Fed. Cir. 2011) (affirming district court's grant of summary judgment of non-obviousness for failing

25  to "provide any reason why a person of ordinary skill would have been motivated to combine the

26  references").

27

28

5

1
2
3

**IV.    THE COURT SHOULD GRANT SUMMARY JUDGMENT THAT ASETEK'S GENERATION 5, 6, AND 7 PRODUCTS DO NOT INFRINGE COOLIT'S ASSERTED CLAIMS BECAUSE THERE IS NO GENUINE DISPUTE THAT THE PRODUCTS DO NOT INCLUDE THE CLAIMED "PLATE" AS PROPERLY CONSTRUED**

4
5
6
7
8
9
10
11
12

There is no genuine dispute that the alleged "plate" in Asetek's Gen 5, 6, and 7 products is made of a compliant material, namely EPDM rubber. Instead, the dispute between the parties is a legal question of claim scope: whether the claimed "plate" can be construed broadly to include manifold bodies made of any material — rigid (e.g., metal) or compliant (e.g., EPDM rubber). Based on the intrinsic record of the asserted CoolIT patents and the PTAB's final judgment in an IPR on a related patent (*see* Section II.A, *supra*), the claimed "plate" should be construed as a manifold body made of a rigid material. And under this proper construction, there can be no genuine dispute of material fact that Asetek's Gen 5, 6, and 7 products do not infringe CoolIT's asserted claims because the alleged "plate" in these products is made of a compliant material (and not a rigid material).

13
14
15
16
17
18
19
20
21
22

This rigid vs. compliant characteristic of the recited "plate" is relevant to claim construction because, as the PTAB has already found, there is no written description for a compliant "plate" or manifold body in CoolIT's 2007 Provisional (to which all the asserted claims claim priority); the 2007 Provisional disclosed only a rigid "plate." Indeed, four years later in the 2011 Provisional, CoolIT separately disclosed manifold bodies made of compliant materials, explicitly contrasted the rigid plate 240 disclosed in the 2007 Provisional with the compliant manifold bodies first disclosed in the 2011 Provisional, and touted the benefits of compliant over rigid materials. During prosecution of CoolIT's later patents as well, CoolIT explicitly distinguished a prior-art rigid plate from the compliant member (manifold) recited in its later patents, and CoolIT gained allowance of those later patent claims based on that rigid vs. compliant distinction.

23
24
25
26
27
28

But now in this case, in which CoolIT is asserting its older patents that claim priority to the 2007 Provisional and disclose only a rigid "plate," CoolIT is improperly attempting to construe the claimed "plate" more broadly, and beyond the written description, to include manifold bodies made of compliant materials. In so doing, CoolIT is trying to improperly capture its later-disclosed compliant material subject matter into the scope of its earlier-filed patent claims in an effort to prove infringement against Asetek, which is impermissible. *See PowerOasis. Inc. v. T-Mobile USA, Inc.*,

1    522 F.3d 1299, 1309-11 (Fed. Cir. 2008) (discussed in detail below). Significantly, because the PTAB

2    has already ruled in a final judgment that the 2007 Provisional does not provide written description

3    support for a "plate" made of compliant material, CoolIT cannot dispute the PTAB's ruling and is

4    collaterally estopped from relitigating the same written description issue in this case. Nor can CoolIT

5    legitimately dispute its statements to the Patent Office distinguishing a rigid "plate" from a compliant

6    manifold to obtain allowance of later patents.

7        Nevertheless, if the Court finds that "plate" could be construed broadly to include manifold

8    bodies made of any material (rigid or compliant), which Asetek respectfully submits the Court should

9    not, then the Court should grant Asetek summary judgment of invalidity of the CoolIT patents under

10   Section 112, ¶1 because, as the PTAB already found in a final judgment, the 2007 Provisional does

11   not provide written description support for the full scope of "plate" as construed, including compliant

12   manifold bodies.

13       **A.    The Court should construe "plate" as a "flat manifold body made of a rigid
              material"**

14       The parties' experts agree that a "plate" in the context of CoolIT's claimed invention is flat

15   and is positioned over the microchannels and fins. Ex. A, 92:1-13, 94:14-22 (CoolIT's expert agreeing

16   that the "plate" is "flat" or "substantially flat" and "cover[s] the top of the channels"); Ex. B, ¶42.

17   CoolIT's expert, however, has argued that "plate" can include manifolds of any material, e.g., "metal,"

18   "EPDM," "silicone" or "Styrofoam" as long as the "plate" "perform[s] a job of covering the top of the

19   channels." Ex. A, 92:1-95:7. In contrast, Asetek's expert has argued that the "plate" is made of a rigid

20   material, e.g., metal. Ex. B, ¶42. Thus, the only dispute between the parties and their experts is whether

21   the "plate" is limited to rigid material (Asetek's position), or whether "plate" can include manifold

22   bodies made of compliant material (CoolIT's position). For the reasons explained below, CoolIT and

23   its expert's implicit construction of "plate," and their application of that construction to Asetek's Gen

24   5, 6, and 7 products, are incorrect. "Plate" should properly be construed as a "flat manifold body made

25   of a rigid material." Ex. B, ¶42.

26       **1.    "Plate" has no established plain and ordinary meaning, and
              therefore must be construed based on the intrinsic record**

27       The claim term "plate" was not previously construed, and might have been accorded a plain

28   and ordinary meaning, but as this case has progressed through fact and expert discovery, and after the

7

*Markman* hearings and parallel IPR proceedings, it has become clear that claim construction of "plate" will be necessary to resolve the parties' disputes over alleged infringement and validity for both trial and summary judgment proceedings. If this claim construction dispute is not resolved by the Court prior to trial, it will likely create jury confusion regarding the scope of CoolIT's asserted claims, and force the jury to decide the issue of the claim scope, which would be legal error. *Eon Corp. IP Holdings v. Silver Spring Networks Inc.*, 815 F.3d 1314, 1319 (Fed. Cir. 2016) (finding that leaving the question of claim scope to the jury is legal error). It is also necessary to resolve this claim construction dispute regarding "plate" to resolve pending summary judgment issues, including non-infringement and written description, because the first step of those analyses is to determine the scope and specificity of the claims. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1361 (Fed. Cir. 2008) ("[When] the 'ordinary' meaning of a term does not resolve the parties' dispute, . . . [then] claim construction requires the court to determine what claim scope is appropriate in the context of the patents-in-suit").

Here, the principal reason for the parties' claim construction dispute is that the claim term "plate" does not have a single, established plain and ordinary meaning that can be harmonized with the patent disclosures. *Lexion Med., LLC v. Northgate Techs., Inc.*, 641 F.3d 1352, 1356 (Fed. Cir. 2011) ("The customary meaning of a claim term is not determined in a vacuum and should be harmonized, to the extent possible, with the intrinsic record, as understood within the technological field of the invention."). Asetek's expert has opined that a person skilled in the art would not consider a compliant object, such as a gasket, to be a "plate." Ex. B, ¶¶42, 43. In contrast, CoolIT's expert has opined that the ordinary meaning of "plate" would include structures made of any material, rigid or compliant, as long as the "plate" is "perform[ing] a job of covering the top of the channels." Ex. A, 92:1-93:14, 94:14-95:7. The parties' experts' disagreement on the meaning of "plate," and the failure of the claims themselves to provide a single, well-understood meaning, shows that "plate" is a technical term that does not have a plain and ordinary meaning in the field of computer liquid cooling and/or CoolIT's patents. That is why the Court should construe "plate" in the context of CoolIT's patents' written description and prosecution history. *See Kaneka Corp. v. Xiamen Kingdomway Grp. Co.*, 790 F.3d 1298, 1305 (Fed. Cir. 2015) (finding that because the term "sealed" may have more than

one plain and ordinary meaning, the appropriate definition needed to be ascertained from the intrinsic evidence); *Goldenberg v. Cytogen, Inc.*, 373 F.3d 1158, 1164 (Fed. Cir. 2004) ("Where a claim term has no ordinary and customary meaning, a court must resort to the remaining intrinsic evidence—the written description and the prosecution history—to obtain the meaning of that term.").

So not only is claim construction of "plate" necessary under *Eon Corp.* and other Federal Circuit precedent, it is necessary to resolve the experts' conflicting interpretations of "plate" in view of the intrinsic record for summary judgment and to avoid jury confusion from conflicting expert testimony at trial.

**2.    Asetek's construction of "plate" is consistent with the intrinsic record; CoolIT's purported construction is not**

**a.    Asetek's construction of "plate" as a rigid manifold body is supported by the written description and the PTAB's judgment**

As Asetek's expert has explained, a person skilled in the art would understand from the intrinsic record of the CoolIT patents that the claimed "plate" is made of rigid material, e.g., metal. Ex. B, ¶42. Asetek's expert further explained that a person skilled in the art "would not likely refer to a compliant object," such as the compliant gasket in Asetek's Gen 5, 6, and 7 products, "as a 'plate,' rather it would have been likely referred to as a gasket, elastomer, flexible seal, compliant member, compliant body, etc. (but not a plate)." *Id.* The PTAB agreed with Asetek's expert and found, contrary to CoolIT and its expert's argument, that there is no written description support in the 2007 Provisional for the "plate" being made of a "complaint material"; rather, the PTAB ruled that at the time of the alleged invention in 2007, the inventor considered the claimed "plate" to be made of rigid material. Ex. C at 25, 26; *see also* Section II.A, *supra.* Given that the scope of the claim cannot exceed the inventor's disclosure in the specification, Asetek's proposed construction of "plate" as made of a rigid material is correct. *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1480 (Fed. Cir. 1998) (holding that a claim "may be no broader than the supporting disclosure, and therefore [] a narrow disclosure will limit claim breadth"); *On Demand Mach. Corp. v. Ingram Indus.*, 442 F.3d 1331, 1340 (Fed. Cir. 2006) ("[T]he role of the specification is to describe and enable the invention. In turn, the claims cannot be of broader scope than the invention that is set forth in the specification."); *Ruckus Wireless, Inc. v. Innovative Wireless Sols., LLC*, 824 F.3d 999, 1010 (Fed. Cir. 2016) ("Because the

1  specification makes no mention of wireless communications, construing the instant claims to

2  encompass that subject matter would likely render the claims invalid for lack of written description")

3  (citing *Gentry Gallery*); *Intellectual Ventures I v. Motorola Mobility LLC*, 870 F.3d 1320, 1326-27

4  (Fed. Cir. 2017) (finding claim terms "should be construed to exclude long-term or permanent storage"

5  because they are not within "the scope of the invention," and that "the proper result is not that [the

6  claim] fails for lack of written description but that it should be construed 'in view of the

7  specification' to be limited.") (citation omitted).

8       The *Intellectual Ventures I* case is particularly instructive here. There, defendant Motorola

9  argued that the claim should be interpreted broadly to include "long-term or permanent storage"

10  because the plain language of the claim "neither plainly includes nor plainly excludes long-term or

11  permanent storage." 870 F.3d at 1325-26. But, because the patent specification "exclude[s] long-term

12  or permanent storage from the scope of the invention," Motorola argued that the claim should instead

13  be found invalid for lack of written description. *Id.* at 1324-25. Both the district court and the Federal

14  Circuit agreed with Motorola that long-term or permanent storage was outside the written description,

15  but instead of finding the claim invalid for lack of written description, both courts concluded that the

16  claim limitation "must be construed in view of the specification" to "exclude long-term or permanent

17  storage" from the claim scope. *Id.* at 1326 (internal citation and quotation omitted). Here, just as in

18  *Intellectual Ventures I*, CoolIT seems to be asserting that the claim term "plate" should be construed

19  broadly to include manifold bodies made of any material (including both rigid and compliant

20  materials) because the plain language of the claims does not limit the material of the "plate." *See, e.g.*,

21  Ex. A, 95:4-7. But as the PTAB has found, there is no written description for "plate" made of compliant

22  material. Therefore, following the Federal Circuit's guidance in *Intellectual Ventures I*, the correct

23  result would be to construe "plate" in view of the written description to exclude manifold bodies made

24  of compliant materials (instead of finding CoolIT's asserted claims invalid for lack of written

25  description). 870 F.3d at 1326-27; *see also Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1365

26  (Fed. Cir. 2010) (Rader, J., concurring in part) (explaining that if claims are properly construed to "not

27  enlarge what the inventor has described, then the claims would never have a scope that exceeds the

28  disclosure in the rest of the specification" and that it be would be error to construe claims broadly and

1   then find them invalid for lack of written description). Accordingly, Asetek's proposed construction

2   of "plate" as a "flat manifold body made of rigid material" is correct in view of the written description

3   and should thus be adopted. And if not, then the claims should be found invalid, as explained below.

4                    **b.   The written description and prosecution history of the CoolIT's**
                           **patents contradict CoolIT's proposed construction, which**
5                          **attempts to erase all distinctions between a rigid "plate" and a**
                           **compliant manifold**

6          In contrast to Asetek's construction, CoolIT's construction is impermissibly broad and

7   incorrect for four separate reasons: 1) there is no written description support for CoolIT's proposed

8   construction of "plate"; 2) it would improperly exclude the plate material (and whether it is rigid or

9   compliant) even though the material (property) is a defining characteristic of the claimed "plate," 3) it

10  would allow CoolIT to capture subject matter not disclosed until nearly almost _four years after_ the

11  effective filing date/priority date of the asserted claims, which is impermissible; and 4) CoolIT

12  expressly distinguished a rigid "plate" from a compliant manifold member during prosecution of its

13  later U.S. Patent No. 9,057,567 ("the '567 patent)[3] that claims priority to the 2011 Provisional.

14         First, CoolIT's proposed construction would include manifold bodies made of any material,

15  including compliant material, within the scope of the recited "plate," even though the PTAB expressly

16  found that there is no written description support for a "plate" made of compliant material, as explained

17  in Section IV.C, _infra_. CoolIT's proposed construction should be rejected for that reason alone. _Gentry_

18  _Gallery_, 134 F.3d at 1480; _On Demand Mach. Corp._, 442 F.3d at 1340; _Ruckus Wireless_, 824 F.3d at

19  1010; _Intellectual Ventures I,_ 870 F.3d at 1326-27.

20         Second, CoolIT's construction disregards the material property of the "plate," which is a

21  defining characteristic of the manifold body disclosed in the specification. The rigid vs. compliant

22  property of the "plate" is an important feature that CoolIT itself contrasts in its later patent disclosures.

23  Specifically, CoolIT's 2011 Provisional, which introduced a compliant manifold body (i.e., compliant

24  insert 334) for the first time, disclosed the following:

25                 In a working embodiment, the [manifold] body 360 is formed of a compliant
                   polymeric material that generally conforms to and seals against adjacent surfaces.
26                 Ex. E, 23:8-9.

27

28  _____
    [3] The '567 patent was in the same family as CoolIT's '266 still asserted against Asetek. After the
    PTAB found all of CoolIT's asserted claims in the '567 patent unpatentable in an IPR filed by
    Asetek on that patent, the '567 patent is no longer at issue in this case.

ASETEK'S MOTION FOR PARTIAL SUMMARY JUDGMENT
                                               CASE NO. 3:19-CV-00410-EMC

1    Several pages later, the 2011 Provisional described the benefits of compliant insert 334 over

2    the plate 240 disclosed in the 2007 Provisional:

3         By incorporating the compliant insert 334, secondary machining
          operations that would tend to dull the sharp pieces 405 can be
4         eliminated to reduce heat losses in the coolant, while still reducing or
          eliminating leakage between adjacent microchannels that might
5         otherwise occur from using "raw" fins due to gaps that would be
          formed between the fins and, e.g., a generally planar plate 240.
6

7         *Id.* at 26:13-17.

8    CoolIT further explained in the 2011 Provisional that the conformable surfaces 367 of

9    compliant insert 334 can "conform[] to variations in height among the plurality of fins," and thereby

10   "can reduce or eliminate the need for secondary machining operations used to make the respective

11   distal ends of the fins generally coplanar and compatible with, for example*, the plate 240*." *Id.* at

12   22:26-23:5 (emphasis added). Indeed, the PTAB, upon reading the above disclosures in the 2011

13   Provisional, which contrast and tout the benefits of compliant insert 334 over plate 240, concluded

14   that **"[t]his is objective, intrinsic evidence that the inventor, as of 2011, did not consider plate 240**

15   **to be made of what he described in the 2011 Provisional as being compliant material."** Ex. C at

16   24-25 (emphasis added).

17   In CoolIT's issued '266 patent, which claims priority to the 2011 Provisional, CoolIT again

18   distinguished the earlier-disclosed rigid plate 240 from the new compliant insert 334. The language in

19   the '266 patent is nearly identical to that in the 2011 Provisional except that it explicitly described the

20   plate over the microchannels as "rigid" by substituting the phrase "rigid plate" for the phrase "plate

21   240," as shown by the relevant language underlined in the passages below:

22        "The conformable surfaces 367 can reduce or eliminate the need for
          secondary machining operations used to make the respective distal ends of the
23        fins generally coplanar and compatible with, for example, ~~the~~ a <u>rigid</u> plate
          ~~240~~."
24

25   *Compare* Ex. F ['266 patent], 15:60-63 (referring to "rigid plate") *with* Ex. E [2011 Provisional],

26   23:2-5 (referring to "plate 240") (interlineation added to show change).

27   Based on these distinctions and changes by the applicant, the PTAB found that **"[t]he**

28   **inventor's substitution of the phrase 'rigid plate' for the phrase 'plate 240,' is objective, intrinsic**

12

1   **evidence that as of 2012 [when the '266 patent application was filed], the inventor considered**

2   **plate 240 (which he was contrasting with compliant insert 334) to me made of a rigid, rather**

3   **than compliant, material."** Ex. C at 25-26 (emphasis added).

4        As discussed above, and as the PTAB found, CoolIT itself distinguishes a rigid "plate"

5 disclosed in the 2007 Provisional from a compliant manifold body disclosed for the first time in the

6 2011 Provisional. Accordingly, CoolIT cannot now argue that the rigid vs. compliant material

7 characteristic is unimportant in distinguishing the claimed "plate" from the later-disclosed compliant

8 manifold body, or that "plate" should be construed so broadly that it covers both a rigid plate (as in

9 Asetek's Gen 4 products) as well as a compliant manifold body (as in Asetek's Gen 5, 6, and 7

10 products). Although CoolIT remained silent on the material of the "plate" in its construction, its

11 technical expert has opined that the plate can be made of any material (rigid or compliant), which

12 CoolIT obviously intends to argue in this case and to the jury. This is improper for the many reasons

13 discussed in this motion and should be corrected by adopting Asetek's construction of "plate."

14        Third, CoolIT's construction would also allow it to improperly capture later-disclosed subject

15 matter within the scope of the claims for purposes of infringement, while continuing to claim the

16 benefit of the 2007 priority date for purposes of validity. More specifically, CoolIT contends that the

17 earliest priority date of the asserted claims is August 2007, thus avoiding prior art disclosures between

18 August 2007 and July 2011. Ex. A, 52:15-53:5 (CoolIT's expert agreeing he applied the 2007 priority

19 date for claims 13 and 15 of the '266 patent); Dkt. 23-1 at PDF p. 2 and 23-2 at PDF pp. 2, 3 (cover

20 pages showing the '330 and the '284 patents claim earliest priority date of August 2007). But at the

21 same time, in an attempt to prove infringement by Asetek's Gen 5, 6, and 7 products, CoolIT contends

22 that "plate" should be interpreted broadly to include manifold bodies made of any material, rigid or

23 compliant, even though the disclosure about compliant manifold bodies was not added until July 2011.

24 CoolIT cannot have it both ways: it may not assert a broad claim construction for purposes of

25 infringement and a narrower construction for purposes of validity. *Amazon.com, Inc. v.*

26 *Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001) ("[T]he claims must be interpreted

27 and given the same meaning for purposes of both validity and infringement analyses.").

28

   ASETEK'S MOTION FOR PARTIAL SUMMARY JUDGMENT CASE NO. 3:19-CV-00410-EMC

In *PowerOasis*, the Federal Circuit rejected an argument similar to CoolIT's here. 522 F.3d at 1309-11. There, patentee PowerOasis argued for and received a broad construction of the claim term "customer interface" even though the priority patent application (i.e., the first application in the patent chain to which PowerOasis claimed priority) did not provide written description support for the breadth of PowerOasis's construction; instead, support for the broad construction came only from material added to a later-filed continuation-in-part (CIP) application. *Id.* As a result, the district court correctly found that the broadly-construed claims urged by PowerOasis were not entitled to an effective filing date of the earlier-filed priority application, but were instead accorded the effective filing date of the later-filed CIP application. *Id*. at 1302-03. Based on that finding, the trial court then correctly entered summary judgment of invalidity based on prior art dated after the priority application but before the CIP application. *Id*. at 1302-03. The Federal Circuit affirmed (*id*. at 1307, 1311) and rejected PowerOasis's arguments that it was entitled to the effective filing date of the priority application because it supported a narrower construction of the disputed term (even though the broader construction was not fully supported by the priority application). *See id.* (explaining that to get the benefit of the priority application date, the priority application had to support "the broader construction of a 'customer interface'" that was granted by the district court). Similarly, here the 2007 Provisional may support a narrower construction of "plate" as a rigid manifold body, but it indisputably cannot support the broader construction of a "plate" as a manifold body made of any material (rigid or compliant), which CoolIT needs to prove infringement by Asetek's Gen 5, 6, and 7 products. Allowing CoolIT to claim the effective filing date of the 2007 Provisional (and thus avoid prior art between 2007 and 2011), and at the same time giving "plate" a broad construction that is not supported by the 2007 Provisional, would violate the Federal Circuit's precedent in *PowerOasis* and black letter patent law that claims must be construed the same for purposes of infringement and validity.

Fourth, during prosecution of CoolIT's '567 patent, CoolIT distinguished prior art asserted by the examiner by contrasting rigid plates in the prior art from the compliant member (manifold) disclosed in CoolIT's '567 patent application. Specifically, CoolIT made the following statement:

> Nelson's plate 36 is not equivalent to a claimed compliant member. ***Nelson's plate 36 is also understood to be stiff and rigid***, in part because Nelson refers to it as a "plate" rather than another term

connoting flexibility, conformability, or compliance, such as, for example, "gasket" or "seal."

Ex. J at PDF p. 27.

Thus, CoolIT not only distinguished "plate" from a compliant member, CoolIT also asserted to the Patent Office that the term "plate" itself connotes lack of compliance, whereas terms like "gasket" or "seal" connote compliance. *See id.* (N.B. This point by CoolIT's prosecution attorney is exactly the point made by Asetek's technical expert (Ex. B, ¶42), and which CoolIT's expert now tries to dispute in an attempt to assert the '266 patent against Asetek's products that have compliant gaskets instead of plates (Ex. A, 92:1-94:22)).  Following these arguments made by CoolIT, the examiner allowed the '567 patent claims, relying largely on CoolIT's distinction between the prior-art "plate" and the claimed compliant manifold:

> The closest prior art of record Nelson US Patent No.: 4,909,315 discloses a heat sink with fins that have a groove and a cover above the fins, ***but not a cover that is a compliant member*** that has an opening positioned over every fin and distribute fluid transverse to the fins and then parallel to the fins as claimed. Although it is well known to provide a heat sink within a housing for a pump, *there is no teaching in the prior art of record that would, reasonably and absent impermissible hindsight, motivate one having ordinary skill in the art to modify the teachings of the prior art to incorporate **a compliant member** aligned above a heat sink with grooves to distribute fluid in the manner as claimed.* Thus, for at least the foregoing reasons, the prior art of record neither anticipates nor rendered obvious the present invention as set forth in claims 49 and 80.

Ex. J at PDF pp. 11-12 (emphasis added).

Similarly, during prosecution of the '266 patent, which also claims priority to the 2011 Provisional, CoolIT again asserted the significance of the compliant manifold over the prior art by telling the Patent Office that the prior art is "silent regarding, and does not appreciate the desirability of providing, a pair of compliant surfaces urging against the fins." Ex. K, PDF p. 6. CoolIT should not be permitted to now walk back the distinctions it made between a rigid (non-compliant) "plate" (disclosed in 2007) and compliant manifold (disclosed in 2011) to gain allowance of its patent claims. Rather, CoolIT's statements to the Patent Office should bind CoolIT to a claim construction of "plate" that does not include the later-disclosed compliant manifold.

In sum, CoolIT's broad interpretation of "plate" as a manifold body made of any material (rigid or compliant) is not supported by the written description of the 2007 Provisional, and therefore

15

CoolIT's construction cannot be correct. Moreover, CoolIT expressly distinguished a rigid "plate" from a compliant manifold during prosecution of its patents, so its present (incorrect) position that "plate" should be construed broadly to include both rigid and compliant materials is improper. Asetek's construction of "plate" as a manifold body made of rigid material is the only construction that is supported by, and consistent with, the 2007 Provisional disclosure and CoolIT's prosecution history. Therefore, Asetek's construction is the correct construction and should be adopted.

**B.     Under the proper construction of "plate" as a manifold body made of rigid material, there is no genuine dispute that Asetek's Gen 5, 6, and 7 products do not infringe the asserted claims**

CoolIT's expert, Dr. Himanshu Pokharna, agrees that in his infringement opinion(s) he has mapped the claimed "plate" to a compliant gasket that overlies the microchannels and fins in Asetek's accused Generation 5, 6, and 7 products:

> Q. I'm not talking about the heat spreader
> plate. I'm talking about the gasket that overlies the
> microchannels and fins of the heat spreader plate.
> That gasket, and especially the portion of the gasket
> that overlies the microchannel and microchannel fins,
> is made of a compliant material; right?
> . . .
> A. Yeah. **So that portion of
> gasket that overlies the microchannel is what I'm
> referring to as the plate.** And I'm -- I'm agreeing
> that that entire assembly is made out of the same
> material.
> . . .
> Q. **And that same material is the compliant
> material; correct?**
> . . .
> A. **Because it has to perform the
> seal operation, where the compliance is really
> important, it is -- the entire part is made out of
> what you would call a compliant material.**

Ex. A, 80:21-81:17. (emphases added); *see also id.* at 91:12-24 (Q. "With respect to Asetek's accused Gen 5, 6, and 7 products, you are referring to the portion of the gasket structure that overlies the microchannels -- microchannels and microchannel fins of the heat spreader plate as the claimed plate; correct? A. **That's correct**. Q. In Asetek's accused Gen 5, 6, and 7 products, the portion of the gasket structure that overlies the microchannels and microchannel fins of the heat spreader plate is made of EPDM; correct? … A. **Yes, it's made of EPDM**.") and 77:2-17 (Q. "And EPDM is a compliant

material; correct?" A. "EPDM is a soft material, **yes**."); *see also id.* at 66:3-12, 67:17-69:6, 79:16-80:9, 81:22-82:23, 85:20-86:10 (CoolIT's expert agreeing that the portion of the Asetek products mapped to the claimed "plate" is made of compliant material).

Scientific articles and published U.S. patents also indisputably demonstrate that rubber, including EPDM rubber, which constitutes the gasket (the alleged "plate") in Asetek's Gen 5, 6, and 7 products, is a compliant material. *See* Ex. L [U.S. Patent No. 9,130,198], 62:6-9 (identifying EPDM rubber as a compliant material); Ex. M [U.S. Patent No. 9,308,490], 2:38-40, 25:33-35 (same); Ex. N [U.S. Patent No. 9,631,759], 5:9-11, 10:46-48 (same); Ex. O [U.S. Patent No. 10,543,637], 10:26-37 (same); Ex. P [Ashby] at 29, 34 (discussing low modulus materials as floppy, i.e., compliant, and providing rubber as an example of such floppy material).

CoolIT's expert's annotated images of the gaskets in Asetek's Gen 5, 6, and 7 products, as shown below, further demonstrate that CoolIT agrees the gaskets (which CoolIT asserts are the claimed "plate") is made of a compliant material:

| | CoolIT's expert's annotations of the gaskets in Asetek's Gen 5, 6, 7 products as the alleged "plate" | CoolIT's expert's annotations of the same alleged "plate" as having compliant surfaces |
|---|---|---|
| Gen 5 |  |  |
| Gen 6 |  |  |

Gen 7



Ex. G at 29, 51, 74 (images on the left); Ex. H at 19, 41, 64 (images on the right).

Asetek's expert, Dr. Tuckerman, also agrees that CoolIT's expert mapped the claimed "plate" to a gasket made of a compliant material in the accused Asetek Gen 5, 6, and 7 products. Ex. B, ¶42 ("CoolIT maps the compliant rubber gasket positioned over the fins and microchannels to the claimed 'plate.'"); ¶¶43, 59-61, 66-68. Thus, there is no factual dispute that for each of Asetek's accused Generation 5, 6, and 7 products, CoolIT has mapped the claimed "plate" to a gasket made of compliant material (specifically, EPDM which is a form of synthetic rubber). Accordingly, if "plate" is construed correctly to mean a manifold body made of a rigid material, then there can be no genuine dispute that Asetek's Gen 5, 6, and 7 products do not include the claimed "plate" and thus do not infringe the asserted claims. Summary judgment of no infringement of CoolIT's asserted claims by Asetek's Gen 5, 6, and 7 products should therefore be granted. *Nike*, 43 F.3d at 647.

**C.**   **Notwithstanding the Federal Circuit's precedent that claim scope is limited by written description and prosecution history, if the Court nevertheless construes "plate" broadly to include manifold bodies made of compliant materials, then the asserted claims should be found invalid for lack of written description**

If "plate" is construed broadly to include both rigid and non-rigid (compliant) materials, then CoolIT cannot satisfy the written description requirement for its asserted claims. That is, if CoolIT obtains a claim construction that includes manifold bodies made of compliant materials within the scope of the claims, then the claims are invalid for lack of written description because CoolIT cannot show that the inventor possessed the *__full scope__* of the claims at the time of the invention in August 2007. *See, e.g., Zoho Corp. v. Sentius Int'l, LLC*, 494 F. Supp. 3d 693, 704 (N.D. Cal. 2020) ("[T]he scope of the written description must be commensurate with the scope of the claims.") (citing *Cisco Sys., Inc. v. Cirrex Sys., LLC*, 856 F.3d 997, 1007-08 (Fed. Cir. 2017); *see also Juno Therapeutics,*

1   *Inc. v. Kite Pharma, Inc.*, 10 F.4th 1330, 1336 (Fed. Cir. 2021) (requiring the asserted patent's "written

2   description [to] sufficiently demonstrate[] that the inventors possessed the full scope of the claimed

3   invention"); *Rivera v. Int'l Trade Comm'n,* 857 F.3d 1315, 1319-21 (Fed. Cir. 2017) (affirming that

4   "the specification did not provide the necessary written description support for the full breadth of the

5   asserted claims," where the claims were broadly directed to a "container . . . adapted to hold brewing

6   material" while the specification disclosed only a "pod adapter assembly" or "receptacle" designed to

7   hold a "pod") (ellipsis in original).

8        In *Zoho*, the court expressly adopted patentee Sentius' broad construction of the claim term

9   "offset value" as "'a value from a beginning point'—*any* beginning point—and rejected Zoho's

10  proposed construction based on 'pure byte offsets.'" 494 F. Supp. 3d. at 708-09 (citation omitted;

11  emphasis in original). As the court explained, "[t]his broad claim construction"—which patentee

12  Sentius argued for and received—"now precludes Sentius from arguing that an offset necessarily

13  involves determining a beginning address in an electronic database." *Id.* Accordingly, the court found

14  that the specification failed to provide written description for the disputed claim term and granted

15  summary judgment of invalidity for lack of written description under 35 U.S.C. § 112. *Id.*

16       Similarly, in *Atlantic Research Marketing Systems, Inc. v. Troy*, patentee Atlantic Research

17  advocated for and received—based on the alleged "plain meaning of claim language" and "substantive

18  differences between claims"—a broad claim construction "that would cover a barrel nut-only design,

19  perhaps to support its infringement arguments against the accused products (the accused products

20  undisputedly attach to and receive support from only the barrel nut)." 659 F.3d 1345, 1355 (Fed. Cir.

21  2011). Accordingly, the Federal Circuit had to "incorporate the barrel nut-only claim construction into

22  the written description analysis." *Id.* The Federal Circuit agreed with the district court that there was

23  no written description support for the barrel-nut only design, even though the claims as construed

24  "clearly cover[ed] such a design." *Id.* As the Federal Circuit further explained, the claims "exceed[ed]

25  in scope the subject matter that [the] inventor [] chose to disclose to the public in the written

26  description" and thus held that the district court properly granted summary judgment invalidating the

27  claims for failing to satisfy the written description requirement of 35 U.S.C. § 112. *Id.*

28       Here, just as in *Zoho* and *Atlantic Research*, CoolIT is advocating for a broad construction of

"plate" as covering manifold bodies made of either rigid or compliant materials in order to support its infringement arguments against Asetek's Gen 5, 6, and 7 products (which undisputedly have a manifold body made of compliant material). But if CoolIT were to receive such a broad construction for "plate" that covers manifold bodies made of compliant materials, then the asserted claims should be found invalid under 35 U.S.C. § 112 for failing to satisfy the written description requirement. *Zoho*, 494 F. Supp. 3d. at 708-09; *Atlantic Research*, 659 F.3d at 1355, *Juno Therapeutic*s, 10 F.4th at 1336; *Rivera*, 857 F.3d at 1319-21.

Although it is correct that written description is a factual determination, here there are no genuine material disputes of fact regarding whether the relevant specifications disclose manifold bodies made of compliant materials. CoolIT's expert's reports fail to assert written description support for manifolds made of compliant materials in the 2007 Provisional. And the PTAB has already found that CoolIT's expert's written description arguments "are weak on several levels and fall far short of demonstrating to a POSITA that the inventor had possession of a manifold body defin[ing] a pair of compliant surfaces in 2007." Ex. C at 27.

The PTAB's written description finding is significant here because CoolIT is issue-precluded from relitigating written description support for compliant manifold bodies in the district court as this exact written description issue was previously adjudicated in the IPR proceeding between the same parties. *Beauchamp v. Anaheim Union High Sch. Dist.*, 816 F.3d 1216, 1225 (9th Cir. 2016). Specifically, in the Ninth Circuit, issue preclusion requires that (1) the issue must be identical to the one alleged in prior litigation; (2) the issue must have been "actually litigated" in the prior litigation; and (3) the determination of the issue in the prior litigation must have been "critical and necessary" to the judgment. *Id.* (quoting *Clark v. Bear Stearns & Co., Inc.*, 966 F.2d 1318, 1320 (9th Cir. 1992). Here, all three factors for issue preclusion are met. First, the issue of whether there is written description for compliant manifold bodies is the identical issue that was litigated in the PTAB.[4] Second, this issue was "actually litigated," and in fact, it was the only issue relating to patentability of

---

[4] At the PTAB, CoolIT's only argument for patentability was that the challenged claims 1, 2, 5, and 9 of the '266 patent are entitled to the 2007 priority date because the 2007 Provisional allegedly shows that "the inventor had possession of a manifold body made of compliant material, namely plate 240." Ex. C at 22-23. The PTAB rejected that argument and found there was no written description support for manifold body made of compliant material. *Id.* at 23-24.

challenged claims 1, 2, 4, 5, and 9 of the '266 patent that was litigated between the parties in the PTAB. *See generally* Ex. C at 21-32. Third, the determination of lack of written description was critical and necessary to the PTAB's final decision that the claims 1, 2, 4, 5, and 9 of the '266 patent are unpatentable. *Id.* at 30.

CoolIT has thus had a full and fair opportunity to litigate the issue of written description support in the 2007 Provisional in the IPR proceeding at the PTAB. Moreover, it declined to appeal the PTAB's decision to the Federal Circuit, thus rendering the PTAB's decision a final judgment on this issue. Bhattacharyya Decl., ¶22. The PTAB decision therefore precludes CoolIT from continuing to litigate this same issue in this Court. Indeed, the Federal Circuit has repeatedly found that a final judgment from the PTAB has an issue-preclusive effect on any pending district court action involving the same issue. *XY, LLC v. Trans Ova Genetics, L.C.*, 890 F.3d 1282, 1294 (Fed. Cir. 2018) (a final judgment from the PTAB "has an immediate issue-preclusive effect on any pending or co-pending actions involving the patent" because "a patentee, *having been afforded the opportunity to exhaust his remedy of appeal from a holding of invalidity*, has had his day in court[.]") (emphasis added) (citation and quotation marks omitted); *see also Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330, 1344 (Fed. Cir. 2013) ("[T]here is no basis for distinguishing between the effects of a final, affirmed court decision determining invalidity and a final, affirmed PTO decision determining invalidity on a pending litigation."); *MaxLinear, Inc. v. CF CRESPE LLC*, 880 F.3d 1373, 1376 (Fed. Cir. 2018) ("[It is] clear that issue preclusion is not limited to those situations in which the same issue is before two courts. Rather, where a single issue is before a court and an administrative agency, preclusion also often applies.") (alteration in original) (emphasis omitted) (quoting *B&B Hardware, Inc. v. Hargis Indus.*, 575 U.S. 138, 148, (2015)). The preclusive effect of a final PTAB judgment applies even though the district court and PTAB have different burdens of proof. *See XY*, 890 F.3d at 1294. Moreover, this Court can apply collateral estoppel *sua sponte* to avoid "unnecessary judicial waste[.]" *Id.* at 1295 (citing and quoting *Arizona v. California*, 530 U.S. 392, 412 (2000)).

**D.   Conclusion**

"Plate" should be construed as a "flat manifold body made of rigid material." Specifically, "plate" should not be construed broadly to include manifolds made of compliant materials, because

21

1    there is no written description support for that, as the PTAB has already found in a final judgment.

2    When "plate" is construed correctly to not include compliant manifolds, there is no genuine dispute

3    that Asetek's accused Gen 5, 6, and 7 products do not include the claimed "plate," rather they each

4    have a compliant gasket manifold, and therefore they do not infringe the asserted claims, and summary

5    judgment should be granted accordingly. If, however, "plate" is construed broadly to include manifold

6    bodies made of compliant material (as in Asetek's accused Gen 5, 6, and 7 products), then the claims

7    are invalid for lack of written description under Section 112, ¶1 and CoolIT is issue-precluded from

8    arguing otherwise in this case, and the Court should grant summary judgment accordingly.

9    **V.   THE COURT SHOULD GRANT SUMMARY JUDGMENT OF NO INVALIDITY OF
10         CLAIMS 17 AND 19 OF THE '362 PATENT UNDER OBVIOUSNESS GROUNDS 4-9
           BECAUSE COOLIT CANNOT MEET ITS BURDEN TO PROVE MOTIVATION TO
11         COMBINE THE PRIOR ART REFERENCES AND REASONABLE EXPECTATION
           OF SUCCESS IN DOING SO**

12            It is well-settled that a party alleging obviousness must establish, *inter alia*, a motivation to

13    combine the asserted prior art references and a reasonable expectation of success for doing so. *See,*

14    *e.g., Microsoft Corp. v. Enfish*, LLC, 662 F. Appx 981, 990 (Fed. Cir. 2016) (affirming finding of non-

15    obviousness because patent challenger "did not articulate a sufficient motivation to combine," even

16    though the prior art references "arguably disclose[d] every limitation" of the challenged claims); *In re*

17    *Warsaw Orthopedic, Inc.,* 832 F.3d 1327, 1333 (Fed. Cir. 2016) ("As part of the obviousness inquiry,

18    we consider whether a PHOSITA would have been motivated to combine the prior art to achieve the

19    claimed invention and whether there would have been a reasonable expectation of success in doing

20    so.") (internal quotation marks, brackets and citation omitted); *Impax Labs., Inc. v. Lannett Holdings*

21    *Inc.*, 893 F.3d 1372, 1380-81 (Fed. Cir. 2018) (affirming the district court's finding of non-

22    obviousness because a skilled artisan would not have been motivated to make the claimed invention

23    with a reasonable expectation of success); *In re NuVasive, Inc.,* 842 F.3d 1376, 1381-82 (Fed. Cir.

24    2016) (same). Here, Dr. Abraham failed to opine on a motivation and a reasonable expectation of

25    success for combining Ryu with Wu or Batchelder in Grounds 4 and 5; Batchelder with Shin, Ryu, or

26    Wu in Grounds 6-8; and Yu in view of Wu in Ground 9. The following are at least some of deficits in

27    each of Grounds 4-9, which establish that Dr. Abraham's obviousness analyses in Grounds 4-9 are

28    deficient as a matter of law:

**Grounds 4 and 5 (Ryu in view of Wu or Batchelder):** Dr. Abraham admits that Ryu does not disclose the claimed "reservoir" having dual chambers, as required by independent claim 17 of the '362 patent, but argues that Wu and/or Batchelder discloses such a "reservoir." Ex. AA at ¶¶169, 186. But even if Wu or Batchelder discloses such a "reservoir" (which Asetek disputes), Dr. Abraham did not explain _how_ or _why_ Ryu would have been combined with Wu or Batchelder to arrive at the "reservoir" element of claim 17. _See id._ at ¶169 (simply asserting that "[a] POSA would have been motivated to modify Ryu in view of Wu to combine Ryu's pump driving unit and water jacket into a 'single receptacle defining a fluid flow path'" without any further explanation); _id_ at ¶186 (same with respect to Batchelder). Dr. Abraham's conclusory assertion that Wu or Batchelder discloses the claimed "reservoir," without further explanation of _how_ Ryu would have been combined with Wu or Batchelder, or _why_ one skilled in the art would have been motivated to do so, is insufficient to render claims 17 and 19 obvious. _In re Magnum Oil Tools Int'l, Ltd._, 829 F.3d 1364, 1379 (Fed. Cir. 2016) (reversing obviousness finding because, _inter alia_, the patent challenger "failed to provide any analysis of _how_ or _why_" the asserted prior art could be combined) (emphasis added); _PersonalWeb Techs., LLC v. Apple, Inc._, 848 F.3d 987, 994 (Fed Cir. 2017) (reversing because, _inter alia_, "the Board nowhere clearly explained, or cited evidence showing, _how_ the combination of the two references was supposed to work.") (emphasis added); _TriVascular, Inc. v. Samuels_, 812 F.3d 1056, 1066 (Fed. Cir. 2016) (requiring explanation of _how_ or _why_ references would be combined to produce the claimed invention).

**Grounds 6, 7, and 8 (Batchelder in view of Shin, Ryu, or Wu):** With respect to Grounds 6-8, Dr. Abraham simply asserts that the "combination of Batchelder and Shin," the "combination of Batchelder and Ryu," and the "combination of Batchelder and Wu" disclose the limitations of claims 17 and 19. _See generally_ Ex. AA at ¶¶208-238. Dr. Abraham has not provided a single sentence explaining _how_ or _why_ Batchelder would have been combined with Shin, Ryu, or Wu to arrive at Asetek's claimed invention, without which CoolIT's obviousness combination in Grounds 6-8 fail. _In re Magnum Oil,_ 829 F.3d at 1379; _PersonalWeb_, 848 F.3d at 994.

**Ground 9 (Yu in view of Wu):** Dr. Abraham asserts in his Invalidity Report that he has "explained" how Yu in view of Wu renders claims 17 and 19 of the '362 patent obvious. Ex. AA at ¶¶239-248. But there is no such explanation in his Report. Nor has he explained _how_ or _why_ a person skilled in

1    the art would have combined Yu and Wu to arrive at the invention claimed in the '362 patent. Ground

2    9 fails to show obviousness of claims 17 and 19 of the '362 patent for that reason alone. *In re Magnum*

3    *Oil,* 829 F.3d at 1379; *PersonalWeb*, 848 F.3d at 994.

4            Ultimately, Dr. Abraham's motivation to combine allegations distil down to: "because [the

5    asserted prior art references] are attempting to solve similar issues and each disclose or teach known

6    techniques that can be used for one another, a POSA, when reading all of these references together,

7    would have been motivated to combine [the references]." *See* Ex. AA at ¶¶693-771. But such a

8    conclusory assertion that the prior art references fall within the same alleged field, without an

9    explanation of how a skilled artisan would have combined them and how the proposed combination

10   would have worked, is not a legally sufficient motivation for combining any of the prior art references.

11   *ActiveVideo Networks, Inc. v. Verizon Communs., Inc.*, 694 F.3d 1312, 1327 (Fed. Cir. 2012) (finding

12   obviousness analysis "not sufficient and fraught with hindsight bias" when it "failed to explain how

13   specific references could be combined . . . or how any specific combination would operate or read on

14   the asserted claims") (citing *KSR,* 550 U.S. at 418 ("A patent composed of several elements is not

15   proved obvious by merely demonstrating that each of its elements was, independently, known in the

16   prior art.")); *Securus Techs., Inc. v. Glob. Tel*Link Corp.*, 701 F. Appx. 971, 977 (Fed. Cir. 2017)

17   (finding the "broad characterization" of the references as falling within the same alleged field, without

18   an explanation of "how or why" they would be combined, was insufficient to support obviousness);

19   *see also Asia Vital Components Co. v. Asetek Danmark A/S*, 377 F. Supp. 3d 990, 1013 (N.D. Cal.

20   2019) ("Ultimately, '[w]ithout any explanation as to how or why the references would be combined

21   to arrive at the claimed invention,' the Court is 'left with only hindsight bias that *KSR* warns against.'")

22   (quoting *Metalcraft of Mayville, Inc. v. The Toro Co.,* 848 F.3d 1358, 1367 (Fed. Cir. 2017)).

23          At bottom, Dr. Abraham's alleged motivations to combine in Grounds 4-9 are conclusory and

24   legally deficient. He alleges that certain claim elements disparately existed in the prior art and that a

25   skilled artisan would have combined them. But such conclusory assertions of motivation are not

26   sufficient to support a finding of obviousness. *TQ Delta, LLC v. Cisco Sys., Inc.*, 942 F.3d 1352, 1358-

27   59 (Fed. Cir. 2019) ("[A] conclusory assertion with no explanation is inadequate to support a finding

28   that there would have been a motivation to combine"); *Nuvasive*, 842 F.3d at 1383. Rather, a legally

1   sufficient motivation to combine analysis requires an explanation of why a skilled artisan would pick

2   out particular references and combine them in the manner claimed, which Dr. Abraham failed to do.

3   *In re Rouffet,* 149 F.3d 1350, 1357 (Fed. Cir. 1998) (requiring a showing that a skilled artisan "would

4   select the elements from the cited prior art references for combination in the manner claimed.");

5   *Personal Web Techs., LLC v. Apple, Inc.*, 848 F.3d 987, 993-94 (Fed. Cir. 2017) (requiring "a

6   motivation to pick out [the asserted] references and combine them to arrive at the claimed invention.");

7   *Innogenetics, N.V. v. Abbott Labs.,* 512 F.3d 1363, 1373 (Fed. Cir. 2008) (same). Dr. Abraham's

8   motivation to combine allegations in Grounds 4-9 are therefore deficient as a matter of law.

9        Even if the Court were to find a motivation to combine the references in Grounds 4-9 (it should

10  not for the reasons explained above), Dr. Abraham's obviousness allegations in Grounds 4-9 still fail

11  as a matter of law because he failed to show that a person skilled in the art would have had a reasonable

12  expectation of success in combining the asserted references. *Amgen, Inc. v. F. Hoffman-La Roche,*

13  *Ltd.*, 580 F.3d 1340, 1362 (Fed. Cir. 2009). ("An obviousness determination requires that a skilled

14  artisan would have perceived a reasonable expectation of success in making the invention in light of

15  the prior art."). Dr. Abraham simply contends that "a POSA, when reading all of these references

16  together, would have been motivated to combine [the references]." *See* Ex. AA at ¶¶693-771. But that

17  is insufficient to establish that a person skilled in the art would have reasonably expected success in

18  such combination. *See In re Stepan Co.*, 868 F.3d 1342, 1347 (Fed. Cir. 2017). Rather, "a finding of

19  obviousness at the time of invention requires a 'plausible rational[e] as to why the prior art references

20  would have worked together.'" *Broadcom Corp. v. Emulex Corp.,* 732 F.3d 1325, 1335 (Fed. Cir.

21  2013) (quoting *Power-One, Inc. v. Artesyn Techs., Inc.,* 599 F.3d 1343, 1351 (Fed. Cir. 2010)).

22       Given that fact and expert discovery have closed, and CoolIT failed to present legally sufficient

23  evidence on the motivation to combine and reasonable expectation of success elements of obviousness

24  for Grounds 4-9, CoolIT cannot meet its burden to prove obviousness of the challenged claims under

25  Grounds 4-9. *Mytee,* 439 Fed. Appx. at 886. Summary judgment of no invalidity of claims 17 and 19

26  of the '362 patent is therefore appropriate. *Id.*; *see also Asia Vital Components*, 377 F. Supp. 3d at

27  1014 (granting summary judgment of no obviousness because AVC failed to present evidence from

28  which a jury could reasonably find motivation to combine and reasonable expectation of success).

1

Dated: March 31, 2022

FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP

2

3

By: ___/s/ Arpita Bhattacharyya___
Arpita Bhattacharyya
Attorneys for Plaintiff and Counterdefendant
ASETEK DANMARK A/S and
Counterdefendant ASETEK USA, INC.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

26