# EXHIBIT 3

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
1              IN THE UNITED STATES DISTRICT COURT
2            FOR THE NORTHERN DISTRICT OF CALIFORNIA
3                   SAN FRANCISCO DIVISION
4
5      ASETEK DANMARK A/S,          )
                                    )
6          Plaintiff and           )
           Counter-Defendant,      )
7                                   )
       vs.                          ) Case No. 3:19-cv-00410-EMC
8                                   )
       COOLIT SYSTEMS, INC.,        )
9                                   )
           Defendant and           )
10         Counter-Claimant.       )
                                    )
11     COOLIT SYSTEMS USA INC.,     )
       COOLIT SYSTEMS ASIA PACIFIC )
12     LIMITED, COOLIT SYSTEMS      )
       (SHENZHEN) CO., LTD.,        )
13                                  )
           Defendants,             )
14                                  )
       COSAIR GAMING INC., and      )
15     CORSAIR MEMORY INC.,         )
                                    )
16         Defendants.             )
                                    )
17
18          HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
19             DEPOSITION OF DAVID TUCKERMAN, Ph.D.
20               MONDAY, DECEMBER 22, 2021
21
22
23     Reported Remotely and Stenographically by:
24     JANIS JENNINGS, CSR No. 3942, CLR, CCRR
25     Job No. 4997336
```

Page 1

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1

2

3

4

5

6

7      REMOTE DEPOSITION OF DAVID TUCKERMAN, Ph.D., located

8      in Lake Stevens, Washington, taken on behalf of the

9      Defendants and Counter-Claimants CoolIT entities and

10     Corsair entities, beginning at 9:10 a.m., on Wednesday,

11     December 22, 2021, sworn remotely by Janis Jennings,

12     Certified Shorthand Reporter No. 3942, CLR, CCRR,

13     located in the City of Walnut Creek, County of

14     Contra Costa, State of California.

15

16

17

18

19

20

21

22

23

24

25

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
1      REMOTE APPEARANCES:

2

3      For Plaintiff and Counter-Defendant Asetek Danmark

4      A/S:

5           FINNEGAN HENDERSON FARABOW GARRETT & DUNNER LLP

6           BY:  ARPITA BHATTACHARYYA, ESQ.

7           3300 Hillview Avenue

8           Palo Alto, California  94304

9           650.849.6600

10          arpita.byattacharyya@finnegan.com

11

12     For Defendants and Counter-Claimant CoolIT entities and

13     Corsair entities:

14          COOLEY RLLP

15          BY:  REUBEN CHEN, ESQ.

16               DUSTIN KNIGHT, ESQ.

17          3175 Hanover Street

18          Palo Alto, California  94304

19          650.843.5000

20          rchen@cooley.com

21          dknight@cooley.com

22

23          Also Present:

24               SOSEH KEVORKIAN, Videographer

25
```

Page 3

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1                            I N D E X

2

3     WITNESS                                              PAGE

4     DAVID TUCKERMAN, Ph.D.

5

6

7              EXAMINATION BY MR. KNIGHT                      9

8

9

10

11                    QUESTIONS NOT ANSWERED

12

13                    PAGE           LINE

14                     53             24

15                    232             20

16

17

18

19

20

21

22

23

24

25

                                              Page  4

1                      E X H I B I T S

2

3      EXHIBIT                                          PAGE

4      Exhibit 276    Exhibit A Materials Considered in    11

5                     Preparation of Non-Infringement

6                     Expert Report

7      Exhibit 277    Corrected Supplemental Declaration   16

8                     of Donald E. Tilton IPR2020-00825

9      Exhibit 278    Excerpt page from Tuckerman          26

10                     Rebuttal Expert Report w/redlines

11     Exhibit 279    Photographs of gaskets              103

12     Exhibit 279-A  Photographs of gaskets Gen 4,       129

13                     Gen 5, Gen 6, Gen 7

14     Exhibit 280    Exhibit A to Himanshu Pokharna      161

15                     Report Re Infringement

16     Exhibit 281    United States Patent Application    189

17                     2006/0096738;

18                     ASE-CLT00044566 - 44574

19

20

21

22

23

24

25

Veritext Legal Solutions
866 299-5127

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1                  PREVIOUSLY MARKED EXHIBITS

 2

 3      EXHIBIT                                        PAGE

 4      Exhibit 259    Expert Report of Dr. David B.    115

 5                     Tuckerman Regarding Invalidity

 6                     of U.S. Patent Nos. 8,746,330;

 7                     9,603,284; and 10,274,266

 8      Exhibit 259-A  Exhibit A; Invalidity Claim Chart  144

 9                     for U.S. Patent 8,746,330

10      Exhibit 259-B  Exhibit B; Invalidity Claim Chart  144

11                     for U.S. Patent 9,603,284

12      Exhibit 259-C  Exhibit C; Invalidity Claim Chart  144

13                     for U.S. Patent 10,274,266

14      Exhibit 259-D  Exhibit D; Curriculum Vitae of     144

15                     David B. Tuckerman

16      Exhibit 259-E  Exhibit E; Materials Considered in  144

17                     Preparation of Invalidity Expert

18                     Report

19      Exhibit 259-F  Exhibit F; Infringement            144

20                     Contentions photographs

21      Exhibit 263    United States Patent No. 8,746,330  118

22      Exhibit 264    United States Patent No. 9,603,284  118

23      Exhibit 265    United States Patent No. 10,274,266  118

24

25

                                                Page  6
```

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1                    PREVIOUSLY MARKED EXHIBITS

2

3       EXHIBIT                                          PAGE

4       Exhibit 266  Rebuttal Expert Report of Dr. David    11

5                    Tuckerman Regarding Non-Infringement

6                    of U.S. Patent Nos. 8,746,330;

7                    9,603,284; and 10,274,266

8       Exhibit 273  United States Patent No. 5,998,240;   144

9                    ASE-CLT00044523 - 44537

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                                              Page  7

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1              WEDNESDAY, DECEMBER 22, 2021; 9:10 A.M.

 2

 3                                                    09:05

 4              THE VIDEOGRAPHER:  Good morning.  We are    09:05

 5   going on the record at 9:10 a.m. on December 22nd,     09:10

 6   2021.  This is media unit 1 of the video recorded     09:10

 7   deposition of Dr. David Tuckerman taken by counsel    09:10

 8   for defendant in the matter of Asetek Danmark A/S     09:10

 9   versus CoolIT Systems, Incorporated and all related   09:11

10   cross actions, filed in the United States District    09:11

11   Court for the Northern District of California.  Case  09:11

12   number 3:19-cv-00410-EMC.                             09:11

13              This deposition is being held by Veritext  09:11

14   Virtual via Zoom web conferencing.  My name is Soseh  09:11

15   Kevorkian from the firm Veritext and I'm the          09:11

16   videographer.  Our court reporter is Janis Jennings   09:11

17   also from the firm Veritext.                          09:11

18              At this time, would counsel and all present 09:11

19   please identify themselves for the record.            09:11

20              MR. KNIGHT:  I am Dustin -- oh, go ahead,   09:11

21   Arpita.                                               09:11

22              MS. BHATTACHARYYA:  No, go ahead, Dustin.   09:11

23   Go ahead.                                             09:11

24              MR. KNIGHT:  Thank you.  Thank you.         09:11

25              You have Dustin Knight and my colleague    09:11
```

Veritext Legal Solutions
866 299-5127

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | Reuben Chen with Cooley LLP on behalf of CoolIT and | 09:11 |
| 2 | Corsair. | 09:11 |
| 3 | MS. BHATTACHARYYA:  Arpita Bhattacharyya | 09:11 |
| 4 | from Finnegan LLP on behalf of plaintiffs Asetek | 09:12 |
| 5 | Denmark A/S. | 09:12 |
| 6 | THE WITNESS:  And I'm David Bazeley | 09:12 |
| 7 | Tuckerman. | 09:12 |
| 8 | THE VIDEOGRAPHER:  Okay.  Thank you. | 09:12 |
| 9 | Janis, whenever you are ready. | 09:12 |
| 10 | | |
| 11 | DAVID TUCKERMAN, Ph.D., | |
| 12 | the witness herein, was sworn and | |
| 13 | testified as follows: | |
| 14 | | 09:12 |
| 15 | DEPOSITION REPORTER:  Thank you. | 09:12 |
| 16 | Please begin, Counsel. | 09:12 |
| 17 | | |
| 18 | EXAMINATION | 09:12 |
| 19 | BY MR. KNIGHT: | 09:12 |
| 20 | Q.   Good morning, Mr. Tuckerman. | 09:12 |
| 21 | A.   Good morning. | 09:12 |
| 22 | Q.   How are you doing today? | 09:12 |
| 23 | A.   I am okay.  Thank you. | 09:12 |
| 24 | Q.   Great.  I'm doing very well.  Thank you for | 09:12 |
| 25 | asking. | 09:12 |

Page 9

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | Q.   Great. | 09:16 |
| 2 | A.   Yeah. | 09:16 |
| 3 | Q.   Okay.  Okay.  Dr. Tuckerman, when did you | 09:16 |
| 4 | begin preparing your rebuttal report on | 09:16 |
| 5 | noninfringement? | 09:16 |
| 6 | A.   Well, it -- I think it would have been | 09:16 |
| 7 | very -- well, it would have been after the report | 09:16 |
| 8 | came in, which -- I mean, it would have been after | 09:16 |
| 9 | seeing [audio interference] submission so | 09:16 |
| 10 | mid/early -- early December. | 09:16 |
| 11 | Q.   Okay.  And who did you speak with in | 09:17 |
| 12 | preparing your rebuttal report on noninfringement? | 09:17 |
| 13 | A.   Oh, Counsel, Arpita. | 09:17 |
| 14 | Q.   Was there anyone else? | 09:17 |
| 15 | A.   I mean there was -- Rob McCauley gave me | 09:17 |
| 16 | some pointers on deposition protocol, but the | 09:17 |
| 17 | technical aspects of the report were all with | 09:17 |
| 18 | Arpita. | 09:17 |
| 19 | Q.   Okay, great.  And, Dr. Tuckerman, your | 09:17 |
| 20 | counsel would already tell you this, but you should | 09:17 |
| 21 | not divulge any confidential information in terms of | 09:17 |
| 22 | conversations that you've had with your attorneys. | 09:17 |
| 23 | Do you understand that? | 09:17 |
| 24 | A.   Right.  Okay.  Yeah, I understand. | 09:17 |
| 25 | Q.   Great.  Great. | 09:17 |

Page 12

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1      Dr. Tuckerman, have you ever spoken with      09:18

2  anyone at Asetek?                                 09:18

3      A.    I have not spoken with anyone from Asetek.  09:18

4      Q.    Okay.   Okay.   And do you speak Danish,   09:18

5  Dr. Tuckerman?                                    09:18

6      A.    No, I do not.                            09:18

7      Q.    Okay.   Do you read Danish?              09:18

8      A.    I can't say that I do.                   09:18

9      Q.    Okay.   Okay.   Now, did you review any of  09:18

10  Asetek's documents in preparing your rebuttal    09:18

11  report?                                          09:18

12      A.    There -- well, there was a -- I mean, there  09:18

13  was a deposition from Eriksen that I recall.  The --  09:18

14  there was -- I mean, there was -- can I see the  09:18

15  Materials Considered list?                       09:19

16      Q.    Yes.   It should be in the folder, so feel  09:19

17  free to review that to refresh your recollection.  09:19

18          DEPOSITION REPORTER:  Dr. Tuckerman, I think  09:19

19  we're getting your notifications in the audio, if  09:19

20  you're able to shut that off, please.            09:19

21          THE WITNESS:  I don't -- really?         09:19

22          DEPOSITION REPORTER:  Well, it was       09:19

23  somebody's.  I thought it was yours, but I could be  09:19

24  wrong.                                           09:19

25          THE WITNESS:  I'm not hearing anything.  I  09:19

Page 13

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | mean, what I could do is -- let me -- I mean, I had | 09:19 |
| 2 | my mail open so that is where I had to go to open up | 09:19 |
| 3 | this Zoom meeting.  So I closed my email. | 09:19 |
| 4 | There's -- let's see -- I think -- I'm hoping you | 09:20 |
| 5 | won't hear any more.  I mean, I didn't hear | 09:20 |
| 6 | anything, but anyway... | 09:20 |
| 7 | DEPOSITION REPORTER:  Thank you. | 09:20 |
| 8 | THE WITNESS:  I don't know if it was me. | 09:20 |
| 9 | Okay.  So you asked about -- what was your | 09:20 |
| 10 | question again? | 09:20 |
| 11 | BY MR. KNIGHT: | 09:20 |
| 12 | Q.   Sure.  I just asked you if you reviewed any | 09:20 |
| 13 | Asetek documents in preparing your rebuttal | 09:20 |
| 14 | noninfringement report. | 09:20 |
| 15 | A.   I don't see anything here other than the | 09:20 |
| 16 | deposition transcript of Andre Eriksen taken on | 09:21 |
| 17 | August 24th and 25th.  So that's it. | 09:21 |
| 18 | Q.   Okay.  And that Materials Considered list, | 09:21 |
| 19 | is that a complete list of the materials that you | 09:21 |
| 20 | reviewed in preparing your noninfringement report? | 09:21 |
| 21 | A.   As far as I can recall, yes. | 09:21 |
| 22 | Q.   Okay.  Okay.  Now, for the opinions in your | 09:21 |
| 23 | rebuttal report, did you write those opinions? | 09:21 |
| 24 | A.   They were written in collaboration with | 09:21 |
| 25 | counsel. | 09:21 |

Page 14

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | Q. Okay. And is it fair to say that the | 09:21 |
| 2 | opinions in your noninfringement report are your own | 09:21 |
| 3 | though? | 09:22 |
| 4 | A. That's absolutely correct. | 09:22 |
| 5 | Q. Okay. And they're not someone else's | 09:22 |
| 6 | opinions; right? | 09:22 |
| 7 | A. That is correct. | 09:22 |
| 8 | Q. Okay. Who prepared the first draft of your | 09:22 |
| 9 | report? | 09:22 |
| 10 | A. The first draft was prepared by Arpita. | 09:22 |
| 11 | Q. Okay. Okay. Great. Okay. | 09:22 |
| 12 | So could you please turn to paragraphs 48 | 09:22 |
| 13 | and 50 in your report. And I would just like you to | 09:22 |
| 14 | read those paragraphs for me. Let me know when you | 09:22 |
| 15 | are finished. | 09:22 |
| 16 | A. Yeah. By the way, I should mention there | 09:22 |
| 17 | was back and forth before, you know, the first draft | 09:22 |
| 18 | and lots of back and forth after the first draft, | 09:22 |
| 19 | you know. | 09:22 |
| 20 | Q. Great. Great. I wouldn't expect anything | 09:22 |
| 21 | less. | 09:22 |
| 22 | A. Yes. So repeat your last question, please. | 09:22 |
| 23 | Q. Yeah. Yeah. I just asked if you could turn | 09:22 |
| 24 | to paragraphs 48 and 50 in your report and read | 09:22 |
| 25 | those paragraphs for me, and just let me know when | 09:23 |

Page 15

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | you've finished reading them. | 09:23 |
| 2 | A.   Okay.  And by the way, since I expect we | 09:23 |
| 3 | will be referring to this further, I'm also | 09:25 |
| 4 | downloading onto the disk so that I -- | 09:25 |
| 5 | Q.   Great.  Great. | 09:25 |
| 6 | A.   Yeah.  Yeah. | 09:25 |
| 7 | Q.   Let me know when you are ready. | 09:25 |
| 8 | A.   Yeah.  All right. | 09:25 |
| 9 | MR. KNIGHT:  I would like to introduce to | 09:25 |
| 10 | the record what I am labeling as Exhibit 277. | 09:26 |
| 11 | (Exhibit 277 marked for identification.) | 09:26 |
| 12 | BY MR. KNIGHT: | 09:26 |
| 13 | Q.   Let me know when you see it, Dr. Tuckerman. | 09:26 |
| 14 | A.   Yes.  It just appeared. | 09:26 |
| 15 | Q.   Okay. | 09:26 |
| 16 | A.   Okay. | 09:26 |
| 17 | Q.   Great.  Dr. Tuckerman, have you seen this | 09:26 |
| 18 | document before? | 09:26 |
| 19 | A.   Let me look at the Materials Considered. | 09:26 |
| 20 | Q.   Sure. | 09:27 |
| 21 | A.   Okay.  I don't see it on my -- wait a | 09:29 |
| 22 | minute.  No, there it is.  It's in Exhibit A. | 09:29 |
| 23 | It's -- it is the -- yeah, 2020-00825.  Yes.  Yes. | 09:29 |
| 24 | Q.   Okay.  Perhaps we should switch -- strike | 09:29 |
| 25 | that. | 09:29 |

Page 16

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | So are you saying that you have seen this | 09:29 |
| 2 | document before? | 09:29 |
| 3 | A.   Oh, yes, indeed.   Yeah. | 09:29 |
| 4 | Q.   Okay.   Okay.   Can we switch to your | 09:29 |
| 5 | Materials Considered list. | 09:29 |
| 6 | A.   Right. | 09:29 |
| 7 | Q.   And for your Materials Considered list, can | 09:29 |
| 8 | you point me to where in that list it describes | 09:29 |
| 9 | Dr. Tilton's corrected supplemental declaration? | 09:30 |
| 10 | A.   Well, it's part of -- I mean, this is part | 09:30 |
| 11 | of a PTAB case, and I certainly remember seeing this | 09:31 |
| 12 | document.  I inferred that it is a component of the | 09:31 |
| 13 | PTAB's final written decision in IPR2020-00825, that | 09:31 |
| 14 | it would be a component of that decision. | 09:31 |
| 15 | If that's not correct, then let's -- that it | 09:32 |
| 16 | is a component of it, it doesn't change the fact | 09:32 |
| 17 | that I have seen the document. | 09:32 |
| 18 | Q.   Okay.   So I'll represent to you that | 09:32 |
| 19 | Dr. Tilton's corrected supplemental declaration is | 09:32 |
| 20 | not a component of the PTAB's final written | 09:32 |
| 21 | decision.  So to confirm -- | 09:32 |
| 22 | MS. BHATTACHARYYA:   Objection.  Okay.  Go | 09:32 |
| 23 | ahead, Dustin. | 09:32 |
| 24 | MR. KNIGHT:   Okay. | |
| 25 | MS. BHATTACHARYYA:   Finish your question. | 09:32 |

Page 17

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| 1 | MR. KNIGHT:  Yep. | 09:32 |
| 2 | BY MR. KNIGHT: | 09:32 |
| 3 |    Q.  So to confirm, the Materials Considered list | 09:32 |
| 4 | only recites that you considered the PTAB's final | 09:32 |
| 5 | written decision in IPR2020-00825; correct? | 09:32 |
| 6 |    MS. BHATTACHARYYA:  Objection.  Form. | 09:32 |
| 7 | Mischaracterizes prior testimony.  Mischaracterizes | 09:33 |
| 8 | the document. | 09:33 |
| 9 |    THE WITNESS:  Just a moment, please. | 09:33 |
| 10 | BY MR. KNIGHT: | 09:33 |
| 11 |    Q.  Of course.  Take your time. | 09:33 |
| 12 |    A.  Okay.  So repeat your question, please. | 09:34 |
| 13 |    Q.  So my question is:  In your Materials | 09:34 |
| 14 | Considered list, you only cite the final written | 09:35 |
| 15 | decision in IPR2020-00825; correct? | 09:35 |
| 16 |    MS. BHATTACHARYYA:  Same objections.  Same | 09:35 |
| 17 | objections. | 09:35 |
| 18 |    THE WITNESS:  I cite that IPR202-000825 | 09:35 |
| 19 | document in my report -- well, in Materials | 09:35 |
| 20 | Considered also, yes. | 09:35 |
| 21 | BY MR. KNIGHT: | 09:35 |
| 22 |    Q.  When you say "document," you mean the PTAB's | 09:35 |
| 23 | final written decision? | 09:35 |
| 24 |    MS. BHATTACHARYYA:  Objection. | 09:35 |
| 25 | Mischaracterizes prior testimony. | 09:35 |

Page 18

| 1 | THE WITNESS:  Well, what is -- okay.  So | 09:36 |

1     THE WITNESS:  Well, what is -- okay.  So 09:36

2 what I am saying is IPR2020-00825 is referred to in 09:36

3 this report and the Materials Considered list -- the 09:36

4 references in the Materials Considered list are -- 09:37

5 relate -- that include that IPR case are CoolIT's 09:37

6 patent owner response in IPR2020-00825 against 09:37

7 CoolIT's '266 patent.  And the PTAB's final written 09:37

8 decision in IPR2020-00825 -- 09:37

9 BY MR. KNIGHT:

10   Q.   Okay. 09:37

11   A.   -- so, yeah. 09:37

12   Q.   Okay.  Do you know what an "IPR final 09:37

13 written decision" is? 09:37

14     MS. BHATTACHARYYA:  Objection.  Calls for 09:37

15 legal conclusions. 09:37

16     THE WITNESS:  Well, I know that the PTAB is 09:37

17 like a court in the -- my understanding is that the 09:37

18 PTAB is like a court in -- associated with the 09:37

19 patent office, and they handle appeals.  And a final 09:38

20 written decision would be like a court judgment, so 09:38

21 that's the level of my understanding.  I'm not a, 09:38

22 you know, a patent attorney or, you know -- or -- so 09:38

23 that -- but that's my understanding. 09:38

24 BY MR. KNIGHT: 09:38

25   Q.   I totally understand, Dr. Tuckerman.  Hey, 09:38

Page 19

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1    I'm not a liquid cooling expert, so we each have our   09:38
 2    lanes.                                                  09:38
 3           So the PTAB's final written decision in         09:38
 4    IPR2020-00825, was that a decision that was issued      09:38
 5    by the Patent Trial and Appeal Board or Dr. Tilton?     09:38
 6       A.   Well, a court decision would be issued by       09:38
 7    the board.  It wouldn't be issued by a party to         09:38
 8    the...                                                  09:38
 9       Q.   Okay.  So just to clarify the record,           09:38
10    Dr. Tilton's corrected supplemental declaration is      09:39
11    not listed on your Materials Considered list;           09:39
12    correct?                                                09:39
13           MS. BHATTACHARYYA:  Objection.                   09:39
14    Mischaracterizes prior testimony.                       09:39
15           THE WITNESS:  Excuse me a minute.  I need a       09:39
16    couple minutes to refresh my memory on the Tilton       09:40
17    document.  I saw a great many documents since this      09:40
18    case began and some of them involved the Tilton, but    09:40
19    let me --                                               09:40
20    BY MR. KNIGHT:                                          09:40
21       Q.   I understand, Dr. Tuckerman, but that is not    09:40
22    responsive to my question.  My question is very         09:40
23    simple.  It's whether or not Dr. Tilton's corrected     09:40
24    supplemental declaration is listed on your Materials    09:40
25    Considered list.  Could you answer that question for    09:40
```

Page 20

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1   me?                                              09:40

 2          MS. BHATTACHARYYA:  Objection.  Asked and 09:40

 3   answered.                                         09:40

 4          THE WITNESS:  To me, it's a -- well, the   09:40

 5   question in my mind, and I think this is a --     09:41

 6   perhaps a legal technicality question, is whether 09:41

 7   the -- whether this exhibit was incorporated in the 09:41

 8   PTAB's final written decision.                    09:41

 9          I don't know whether it would be considered 09:41

10   as such or not.  If it is not actually physically 09:41

11   part of that decision which is, you know, a       09:41

12   significant document, then I would say it's not on 09:41

13   the list.                                         09:41

14   BY MR. KNIGHT:                                    09:41

15      Q.   Okay.                                     09:41

16      A.   On the other hand, if it was integral to it, 09:41

17   then it would be on the list is the best answer I 09:41

18   can give you.                                     09:41

19      Q.   Okay.  So sitting here -- oh, I'm sorry.  09:41

20   Did you have anything else to say, Dr. Tuckerman? 09:41

21      A.   No.                                       09:41

22      Q.   Okay.  Okay.  So sitting here today, do you 09:41

23   know if you reviewed this document by Dr. Tilton or 09:42

24   another document by Dr. Tilton?                   09:42

25      A.   Well, I mean, like I say, I have seen many 09:42
```

Page 21

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | documents by Dr. Tilton and I -- you know, this was | 09:42 |
| 2 | in a large pile of documents that was shipped to me | 09:42 |
| 3 | is -- you know, to the best of my recollection, it | 09:42 |
| 4 | was in there, among other Tilton testimony. | 09:42 |
| 5 | Q.   Okay.  Okay. | 09:42 |
| 6 | A.   I'm, you know -- I mean, like I say, there | 09:42 |
| 7 | are lots of documents.  But I'm quite sure some -- | 09:42 |
| 8 | you know, anything relevant to the case was in there | 09:42 |
| 9 | and this appears relevant so... | 09:43 |
| 10 | Q.   Okay.  Are you relying on this document if | 09:43 |
| 11 | it's not identified in your Materials Considered | 09:43 |
| 12 | list? | 09:43 |
| 13 | MS. BHATTACHARYYA:  Objection.  Form. | 09:43 |
| 14 | THE WITNESS:  Well, that gets into -- please | 09:43 |
| 15 | allow me to refresh my memory on what's in the | 09:43 |
| 16 | document. | 09:43 |
| 17 | BY MR. KNIGHT: | 09:43 |
| 18 | Q.   Go ahead. | 09:43 |
| 19 | A.   Okay.  So please repeat your question now | 09:45 |
| 20 | that I've had a chance to read it. | 09:45 |
| 21 | Q.   Uh-huh. | 09:45 |
| 22 | A.   And now that I've had a chance to refresh my | 09:45 |
| 23 | memory. | 09:45 |
| 24 | Q.   Uh-huh.  I asked you are you relying on this | 09:45 |
| 25 | document if it's not identified on your Materials | 09:45 |

Page 22

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | Considered list? | 09:45 |
| 2 | MS. BHATTACHARYYA:  Objection.  Form. | 09:45 |
| 3 | THE WITNESS:  I am not relying on it per se. | 09:45 |
| 4 | I certainly agree with Tilton, but I would have made | 09:45 |
| 5 | an identical argument, and I do make that argument. | 09:45 |
| 6 | So I'm not relying on Dr. Tilton's opinion | 09:45 |
| 7 | in this matter, although he is an expert who I have | 09:45 |
| 8 | great respect for.  So I would say I concur with | 09:45 |
| 9 | Tilton's position, but I'm not relying on it because | 09:46 |
| 10 | I would have made, and I do make, the exact same | 09:46 |
| 11 | physical arguments in the text. | 09:46 |
| 12 | BY MR. KNIGHT: | 09:46 |
| 13 | Q.   And you understand that you need to properly | 09:46 |
| 14 | identify everything that you rely on in your | 09:46 |
| 15 | Materials Considered list; right? | 09:46 |
| 16 | MS. BHATTACHARYYA:  Objection.  Form. | 09:46 |
| 17 | THE WITNESS:  Well, I am not claiming to | 09:46 |
| 18 | have relied on Tilton.  I was just saying that I | 09:46 |
| 19 | agree with Tilton.  I understood he had that | 09:46 |
| 20 | position, but my position is an independently taken | 09:46 |
| 21 | position, which -- and that is the position that's | 09:46 |
| 22 | in my report. | 09:46 |
| 23 | BY MR. KNIGHT: | 09:46 |
| 24 | Q.   I understand that, Dr. Tilton [verbatim].  I | 09:46 |
| 25 | think my question was slightly different. | 09:46 |

Page 23

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | A.   Tuckerman. | 09:46 |
| 2 | Q.   Or -- sorry.  Sorry.  The Ts. | 09:47 |
| 3 | My question was:  Do you understand that you | 09:47 |
| 4 | need to properly identify everything that you rely | 09:47 |
| 5 | on in your Materials Considered list; correct? | 09:47 |
| 6 | MS. BHATTACHARYYA:  Objection.  Form. | 09:47 |
| 7 | THE WITNESS:  That -- well, that certainly | 09:47 |
| 8 | makes sense. | 09:47 |
| 9 | BY MR. KNIGHT: | 09:47 |
| 10 | Q.   Okay.  Okay.  Turning back to Dr. Tilton's | 09:47 |
| 11 | corrected supplemental declaration.  What's the date | 09:47 |
| 12 | that appears on the document? | 09:47 |
| 13 | A.   That's dated May 10th, 2021. | 09:47 |
| 14 | Q.   Okay.  Now, Dr. Tuckerman, do paragraphs 2 | 09:47 |
| 15 | and 4 of Dr. Tilton's supplemental declaration in | 09:48 |
| 16 | IPR2020-00825 use nearly the same words verbatim as | 09:48 |
| 17 | in your paragraph 48 and 50 of your noninfringement | 09:48 |
| 18 | report? | 09:48 |
| 19 | A.   Allow me to compare. | 09:48 |
| 20 | Repeat your question, please, now. | 09:50 |
| 21 | Q.   Certainly.  So, Dr. Tuckerman, do paragraphs | 09:50 |
| 22 | 2 and 4 of Dr. Tilton's supplemental declaration in | 09:50 |
| 23 | IPR2020-00825 use nearly the same words verbatim as | 09:50 |
| 24 | in, respectively, paragraphs 48 and 50 of your | 09:50 |
| 25 | noninfringement report? | 09:50 |

Page 24

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | MS. BHATTACHARYYA:  Objection. | 09:50 |
| 2 | Mischaracterizes the documents. | 09:50 |
| 3 | THE WITNESS:  There is -- there are sections | 09:50 |
| 4 | of -- there are, shall we say -- there is the use of | 09:50 |
| 5 | the same words or a few words put together in places | 09:50 |
| 6 | that -- let's put it this way, the -- Tilton's | 09:50 |
| 7 | opinion is very sound, and there's some things that | 09:51 |
| 8 | can't really be said more clearly or better than the | 09:51 |
| 9 | way he put it. | 09:51 |
| 10 | So I didn't see any reason that -- you know, | 09:51 |
| 11 | having seen the report previously, you understand, | 09:51 |
| 12 | and agreeing with that, I didn't see any reason to | 09:51 |
| 13 | make every word different.  I didn't think that I | 09:51 |
| 14 | was, you know -- you know, being -- I didn't think | 09:51 |
| 15 | there was an issue of, you know, being accused of | 09:51 |
| 16 | plagiarism or something like that.  It's just that | 09:51 |
| 17 | in technical fields, when something is correct and | 09:51 |
| 18 | true, people say things the same way. | 09:51 |
| 19 | And so I didn't see any problem -- I don't | 09:52 |
| 20 | see any problem that, in certain places, the same | 09:52 |
| 21 | words were used as Tilton because it's -- but | 09:52 |
| 22 | it's -- it is a position that is 100 percent | 09:52 |
| 23 | defensible on its own.  And the fact that some of | 09:52 |
| 24 | the words are similar, I -- does not mean that I am | 09:52 |
| 25 | relying on his document. | 09:52 |

Page 25

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1    set them side by side.                            10:01

 2       Q.   You're welcome to print them out if you'd  10:01

 3    like.                                              10:01

 4       A.   Okay.  I -- that would be really helpful.  10:01

 5    On this laptop, I can't print.  Well, let me just...  10:02

 6            MR. KNIGHT:  I'd like to go off the record.  10:02

 7            THE WITNESS:  Okay.  I'm really sorry.  I  10:02

 8    just want to be sure that this...                  10:02

 9            MR. KNIGHT:  Dr. Tilton [verbatim], while  10:02

10    you print those out, I'd like to go off the record,  10:02

11    if that's all right.                               10:02

12            THE WITNESS:  Okay.  I mean, if my counsel  10:02

13    will stipulate that this has been done correctly,  10:02

14    then I would go ahead.  I'm not trying to be       10:02

15    obstructionist.                                    10:02

16            MR. KNIGHT:  I totally understand.  I      10:02

17    understand you have got -- you've got to check all  10:02

18    this stuff and I would do the same thing so...     10:02

19            THE WITNESS:  Okay.  Should I sign off or  10:02

20    what do I do?                                      10:02

21            MS. BHATTACHARYYA:  We can go off the      10:02

22    record.                                            10:02

23            THE VIDEOGRAPHER:  We're going off the     10:02

24    record at 10:02 a.m.                               10:02

25            (Off the record.)                          10:03
```

Page 28

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | THE VIDEOGRAPHER:  We are on the record at | 10:18 |
| 2 | 10:18 a.m.  This is the beginning of media 2 in the | 10:18 |
| 3 | deposition of Dr. David Tuckerman. | 10:18 |
| 4 | BY MR. KNIGHT: | 10:19 |
| 5 | Q.   Welcome back, Dr. Tuckerman. | 10:19 |
| 6 | A.   Thank you. | 10:19 |
| 7 | Q.   Rather than have you print out and compare | 10:19 |
| 8 | the paragraphs that we discussed earlier, I'll just | 10:19 |
| 9 | represent to you that the Exhibit 278 is a | 10:19 |
| 10 | comparison of paragraphs 2 and 4 from Dr. Tilton's | 10:19 |
| 11 | corrected supplemental declaration in IPR2020-00825 | 10:19 |
| 12 | to paragraphs 48 and 50 in your noninfringement | 10:19 |
| 13 | report, and that it was generated using a computer | 10:19 |
| 14 | program. | 10:19 |
| 15 | Now, with that understanding in mind, | 10:19 |
| 16 | Dr. Tuckerman, did you ask Dr. Tilton for permission | 10:19 |
| 17 | to copy the words he used in paragraphs 2 and 4 of | 10:19 |
| 18 | his corrected supplemental declaration? | 10:20 |
| 19 | MS. BHATTACHARYYA:  Objection.  Form. | 10:20 |
| 20 | THE WITNESS:  I did not think it was | 10:20 |
| 21 | necessary in -- that this was not an issue of, you | 10:20 |
| 22 | know, publication matters that -- I should say, by | 10:20 |
| 23 | the way, that my difficulties are I'm not -- I'm a | 10:20 |
| 24 | different generation from you folks.  I'm not real | 10:20 |
| 25 | computer literate and about the most I can figure | 10:20 |

Page 29

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1   out is how to get -- I borrowed this laptop so that          10:20

2   one -- the one I'm looking at is not connected to my         10:20

3   printer, and getting more than two things on there          10:20

4   at the same time is -- I just was having trouble            10:20

5   so...                                                        10:20

6          But, anyway, you know, when something is             10:20

7   true and correct and technically correct, you know,         10:20

8   I don't feel the need to change around the words.           10:20

9   You know, if I was publishing a paper, you know,            10:21

10  then issues of permission might be relevant.  But           10:21

11  when I'm just stating a truth -- and let me be very         10:21

12  clear, I'm not relying on Dr. Tilton's opinions.  I         10:21

13  think Dr. Tilton is correct, but these are -- these         10:21

14  are exactly my own opinion on the subject because           10:21

15  they're manifestly and obviously true physical facts        10:21

16  so...                                                        10:21

17  BY MR. KNIGHT:                                               10:21

18      Q.   Okay.  Okay.  One last question on this,           10:21

19  then I think we should probably move on.                    10:21

20          And to your point about being from a                10:21

21  different generation, I'm from a different                   10:21

22  generation than -- than like my sister, for example.        10:21

23  I don't have social media, so I get it in a                 10:21

24  different context for sure.                                  10:21

25          In your professional opinion, is it                 10:21

Veritext Legal Solutions
866 299-5127

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    acceptable to copy the words of another author    10:21

2    without citing to that author?    10:22

3        MS. BHATTACHARYYA:  Objection.  Calls for a    10:22

4    legal conclusion.  Mischaracterizes the document.    10:22

5    Mischaracterizes prior testimony.    10:22

6        THE WITNESS:  Yeah.  Say the question again,  10:22

7    please.    10:22

8    BY MR. KNIGHT:    10:22

9    Q.  Sure.  Sure.  In your professional opinion,  10:22

10    do you believe it is acceptable to copy the words of  10:22

11    another author without citing that author?    10:22

12        MS. BHATTACHARYYA:  Same objection.    10:22

13    Mischaracterizes.  Mischaracterizes the documents.    10:22

14    Mischaracterizes prior testimony.  Calls for legal    10:22

15    conclusions.  Objection.  Form.    10:22

16        THE WITNESS:  I would say it depends on    10:22

17    context.  I...    10:22

18    BY MR. KNIGHT:    10:22

19    Q.  Okay.  Okay.  Let's move on.    10:22

20        So I think we should turn to the body of    10:22

21    your report.  So in your report, you opine that    10:23

22    Asetek could design around the CoolIT asserted    10:23

23    patents; is that right?    10:23

24    A.  I do opine that, yes.    10:23

25    Q.  Okay.  Okay.  Now, in paragraphs 75 to 84 of  10:23

Page 31

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | your report, does that contain the entirety of your | 10:23 |
| 2 | opinions with respect to your proposed | 10:23 |
| 3 | design-arounds? | 10:23 |
| 4 | MS. BHATTACHARYYA:  Objection. | 10:23 |
| 5 | Mischaracterizes the report. | 10:23 |
| 6 | THE WITNESS:  Let me find the paragraphs. | 10:23 |
| 7 | Which paragraph, please? | 10:23 |
| 8 | BY MR. KNIGHT: | 10:23 |
| 9 | Q.   Paragraphs 75 through 84. | 10:23 |
| 10 | A.   Okay.  And your question about these -- the | 10:24 |
| 11 | question about these is what again, please? | 10:24 |
| 12 | Q.   Yeah.  So do paragraphs 75 through 84 in | 10:24 |
| 13 | your report contain the entirety of your opinion | 10:24 |
| 14 | with respect to your proposed design-arounds? | 10:24 |
| 15 | MS. BHATTACHARYYA:  Same objections. | 10:24 |
| 16 | THE WITNESS:  I would say they represent an | 10:24 |
| 17 | opinion of mine.  I would not say that they are the | 10:24 |
| 18 | only opinions that I might have, but they are the | 10:24 |
| 19 | opinions that I've chosen to, you know, put to paper | 10:24 |
| 20 | and submit to the court. | 10:24 |
| 21 | I would reserve the right, if it's legally | 10:24 |
| 22 | appropriate, to add additional arguments in that | 10:25 |
| 23 | direction should it be, you know, necessary and | 10:25 |
| 24 | appropriate.  So I can't say that it's the entirety | 10:25 |
| 25 | of my opinions on the subject. | 10:25 |

Page 32

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1   BY MR. KNIGHT:                                     10:25

 2       Q.   Okay.  Now, could you describe for me the  10:25

 3   alternatives that are available to Asetek?          10:25

 4       A.   Well, I mean, I think the report speaks for 10:25

 5   itself.  Do you want me to walk you through it?     10:25

 6       Q.   Yeah, that would be helpful.  Just a summary 10:25

 7   would be great.                                     10:25

 8       A.   Okay.  So we are starting with paragraph 75. 10:25

 9            "...every asserted independent claim        10:25

10            of the asserted CoolIT Patents recites      10:26

11            a split-flow arrangement in the             10:26

12            plurality of microchannels wherein,         10:26

13            cooling liquid enters each microchannel      10:26

14            at a position between the microchannel       10:26

15            ends."                                       10:26

16            And then it goes on to, you know, cite to   10:26

17   specific claims.                                     10:26

18            In all cases, it is talking about between   10:26

19   the first ends -- that the inlet is between the      10:26

20   first ends and second ends of the channels.  It says 10:26

21   it slightly differently in different claims, but     10:26

22   that's the idea.                                     10:26

23       Q.   Yeah.                                       10:26

24       A.   And so we are talking about, clearly, a     10:26

25   single set of continuous microchannels and you are   10:26
```

Page 33

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    feeding them in the middle.                              10:26

2            So moving on to paragraph 76.  By designing      10:26

3    the cold plates in such a way that cooling liquid        10:27

4    enters each microchannel at the first or the second      10:27

5    end of the microchannel and not between the ends,        10:27

6    Asetek has effectively designed around CoolIT's          10:27

7    claims.                                                  10:27

8            And that is explained in some figures below      10:27

9    where the microchannel plate is actually really two      10:27

10   microchannel arrays with a space in between.  So         10:27

11   each, you know, set is roughly half the length of        10:27

12   the original microchannels, and you're now feeding       10:27

13   from the first end or second end of those individual     10:27

14   microchannel arrays, you know.  So to me, that           10:27

15   clearly gets -- you know, is outside of the scope of     10:27

16   the CoolIT claims.                                       10:27

17           And there's, you know, a picture of the          10:28

18   Gen 6 cold plate, for example, where it has that         10:28

19   space between the two microchannel arrays.               10:28

20           Yeah, go ahead.                                  10:28

21      Q.   Yeah, just -- just one question on the           10:28

22   design-around that you just mentioned.                   10:28

23      A.   Uh-huh.                                          10:28

24      Q.   Does the space in the middle have to be of a     10:28

25   certain width in order not to infringe?                  10:28

                                             Page 34

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
1        A.    I don't see that it needs to be, no.        10:28

2        Q.    Okay.  Okay.  Continue with your description 10:28

3   of the alternatives to Asetek, please.                 10:28

4        A.    Okay.  Okay.                                 10:28

5              As shown above, each cold plate is           10:28

6              to microchannel arrays..."                   10:29

7              Let's see, in this example, they have used a 10:29

8   .4 millimeter separation.  That's an engineering        10:29

9   design decision that was made for that example --       10:29

10       Q.    Okay.                                         10:29

11       A.    -- where there are no microchannels.         10:29

12             "Cooling liquid delivered through            10:29

13             the inlet opening to the gap onto            10:29

14             the bare cold plate and the liquid

15             then enters each microchannel" --

16             (Clarification requested by Reporter.)

17             THE WITNESS:  Yes.

18             DEPOSITION REPORTER:  Please read slower.

19             THE WITNESS:  "Cooling liquid is delivered   10:29

20   through the inlet opening" -- [audio disruption]        10:29

21   that wasn't me.                                         10:30

22             "Cooling liquid is delivered through         10:30

23             the inlet opening to the gap, i.e.,          10:30

24             onto the bare cold plate and the             10:30

25             liquid then enters each microchannel         10:30
```

Page 35

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | at the microchannel end adjacent to | 10:30 |
| 2 | the gap." [As read.] | 10:30 |
| 3 | Then I go on in paragraph 79 to actually | 10:30 |
| 4 | opine on some technical advantages to this approach | 10:30 |
| 5 | over injecting directly into continuous channels | 10:30 |
| 6 | where the -- that can lead to improved performance, | 10:30 |
| 7 | because I'm describing that there is a form of | 10:30 |
| 8 | impingement going on in the center in the gap when | 10:30 |
| 9 | this happens, and that can give you local advantages | 10:31 |
| 10 | in heat transfer. | 10:31 |
| 11 | I should say that the -- how much advantage | 10:31 |
| 12 | and whether one wants to use that advantage depends | 10:31 |
| 13 | on the heat map of the chip.  So these are not | 10:31 |
| 14 | simple issues, and you asked a question about the | 10:31 |
| 15 | width of the groove.  That is not a simple question. | 10:31 |
| 16 | It -- there will be typically an optimum choice for | 10:31 |
| 17 | engineering, and that's determined after extensive | 10:31 |
| 18 | numerical simulation procedures. | 10:31 |
| 19 | So it does -- it is context sensitive to | 10:31 |
| 20 | what kind of chip you're putting on there, what is | 10:31 |
| 21 | its heat map, whether you, you know, what -- how | 10:31 |
| 22 | much benefit you might get in -- in the center from | 10:31 |
| 23 | doing that. | 10:32 |
| 24 | But what I am asserting is that you can -- | 10:32 |
| 25 | with this redesign, you can generate comparable and, | 10:32 |

Page 36

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | in some cases, better performance with this kind of | 10:32 |
| 2 | structure. | 10:32 |
| 3 | I do quote Mr. Eriksen's words on this | 10:32 |
| 4 | subject from his deposition transcript. | 10:32 |
| 5 | Q.   Uh-huh. | 10:32 |
| 6 | A.   And there's just more pictures of the cold | 10:32 |
| 7 | plate. | 10:32 |
| 8 | Q.   Do you propose any other alternatives in | 10:32 |
| 9 | your report? | 10:32 |
| 10 | A.   Well, it goes on -- | 10:32 |
| 11 | MS. BHATTACHARYYA:   Objection.   It | 10:33 |
| 12 | mischaracterizes the report. | 10:33 |
| 13 | THE WITNESS:   Yeah.   Here, we're talking | 10:33 |
| 14 | just about the gap between the microchannels. | 10:33 |
| 15 | There's also issues with the gasket that it gets | 10:33 |
| 16 | into.   Yeah, that relates more to a different claim | 10:33 |
| 17 | issue. | 10:33 |
| 18 | BY MR. KNIGHT: | 10:33 |
| 19 | Q.   Uh-huh. | 10:33 |
| 20 | A.   Yeah.   So I'm just moving along. | 10:33 |
| 21 | What was the paragraph range you were asking | 10:33 |
| 22 | me about? | 10:33 |
| 23 | Q.   It was 75 to 84. | 10:33 |
| 24 | A.   Right.   Okay.   So I'm down -- now down to | 10:33 |
| 25 | 80.   Okay.   So here we go. | 10:33 |

Page 37

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | "Additionally, Asetek has redesigned | 10:33 |
| 2 | the gaskets over the microchannels | 10:33 |
| 3 | in...the Gen 4, 5, 6, and 7 products, | 10:33 |
| 4 | which overcome the alleged | 10:33 |
| 5 | infringement of the asserted claims | 10:33 |
| 6 | of the '284 patent and Claim 15 of | 10:33 |
| 7 | the '266 patent.  The two independent | 10:33 |
| 8 | claims...of the '284 recite that the | 10:33 |
| 9 | 'outlet flow path' from a centrally- | 10:34 |
| 10 | located microchannel is larger than | 10:34 |
| 11 | the 'outlet flow paths' from the outer | 10:34 |
| 12 | microchannels.  Similarly, Claim 15 | 10:34 |
| 13 | of '266 patent recites that the 'outlet | 10:34 |
| 14 | opening from the centrally located | 10:34 |
| 15 | microchannel is" -- | 10:34 |
| 16 | DEPOSITION REPORTER:  I'm sorry.  Can you | |
| 17 | start that again?  Paragraph... | |
| 18 | THE WITNESS:  Yes, I'm sorry. | |
| 19 | "Similarly, claim 15 of the '266 | |
| 20 | patent recites that 'the outlet | |
| 21 | opening from the centrally located | 10:34 |
| 22 | microchannel is larger than the | |
| 23 | outlet opening from at least one of | 10:34 |
| 24 | the larger microchannels.'" | 10:34 |
| 25 | I disagree that -- okay.  So I disagree that | 10:34 |

Page 38

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | outlet opening and outlet flow path are the same, | 10:34 |
| 2 | but Dr. Pokharna's alleged infringement analyses for | 10:34 |
| 3 | the '284 patent claims and Claim 15 of the '266 | 10:35 |
| 4 | patent are nevertheless the same.  He relies on the | 10:35 |
| 5 | beveled chamfered corners at the ends of the outlet | 10:35 |
| 6 | header regions near the outer microchannels to argue | 10:35 |
| 7 | for both patents that the outlet openings/outlet | 10:35 |
| 8 | flow path from a centrally located microchannel is | 10:35 |
| 9 | larger than the outlet openings/outlet flow paths | 10:35 |
| 10 | from the outer microchannels. | 10:35 |
| 11 | I disagree with Dr. Pokharna's infringement | 10:35 |
| 12 | analyses for the reasons explained above. | 10:35 |
| 13 | Regardless, Dr. Pokharna's infringement case for the | 10:35 |
| 14 | '284 patent claims and Claim 15 of the '266 patent | 10:35 |
| 15 | falls apart if:  One, the corners of the outlet | 10:35 |
| 16 | regions near the outer microchannels are straight, | 10:35 |
| 17 | not curved; and, two, the openings from the outlet | 10:35 |
| 18 | header regions are adjacent to centrally located | 10:35 |
| 19 | microchannels and not near the other microchannels. | 10:36 |
| 20 | So to put that all in plain language, the -- | 10:36 |
| 21 | you're relocating the outlet holes so that they're | 10:36 |
| 22 | not corner but they're central; and secondly, you're | 10:36 |
| 23 | squaring off the corners rather than leaving a | 10:36 |
| 24 | bevel.  And I'll say from an engineering point of | 10:36 |
| 25 | view, you know, a performance point of view, there's | 10:36 |

Page 39

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | no substantial difference in performance when you do | 10:36 |
| 2 | this because the -- those outlet regions are large | 10:36 |
| 3 | volume header regions and you -- you know, where you | 10:36 |
| 4 | place the hole is not -- does not create a | 10:36 |
| 5 | significant pressure drop difference. | 10:36 |
| 6 | The whole idea of microchannel cooling is | 10:37 |
| 7 | that the pressure drops -- the major pressure drops | 10:37 |
| 8 | are in the microchannel array itself, not in the | 10:37 |
| 9 | headers.  The whole function of a header is to be | 10:37 |
| 10 | pretty much a uniform pressure environment.  And so | 10:37 |
| 11 | where you choose the port to go in and out along the | 10:37 |
| 12 | length of the header is not a significant | 10:37 |
| 13 | contribution or effect on performance.  And so, you | 10:37 |
| 14 | know, relocating them to the center is fine, and | 10:37 |
| 15 | does the same thing as having a port in the corner. | 10:37 |
| 16 | And as far as the bevel, you know, that to | 10:37 |
| 17 | me is -- was an issue of sort of engineering | 10:37 |
| 18 | aesthetics.  I would think the designer thought, you | 10:37 |
| 19 | know, gee, that just kind of looks nice or | 10:37 |
| 20 | something, but there is no reason to put that bevel | 10:37 |
| 21 | on there.  That doesn't change anything.  If | 10:37 |
| 22 | anything, you know, it creates even a little more | 10:38 |
| 23 | volume in your header. | 10:38 |
| 24 | So with these two relatively trivial | 10:38 |
| 25 | changes, you get an outcome that is the same and -- | 10:38 |

Page 40

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | complete and convincing answer, I would like the | 12:12 |
| 2 | ability to refer to a document that I have cited in | 12:13 |
| 3 | my own report. | 12:13 |
| 4 | BY MR. KNIGHT: | 12:13 |
| 5 | Q.   So you're telling me, sitting here today, | 12:13 |
| 6 | that you cannot tell me what you mean by a | 12:13 |
| 7 | "meaningful competitor" without being able to | 12:13 |
| 8 | reference a separate exhibit? | 12:13 |
| 9 | MS. BHATTACHARYYA:  Objection. | 12:13 |
| 10 | Mischaracterizes prior testimony.  Mischaracterizes | 12:13 |
| 11 | Dr. Tuckerman's report. | 12:13 |
| 12 | THE WITNESS:  I am saying no such thing.  I | 12:13 |
| 13 | certainly -- well -- | 12:13 |
| 14 | BY MR. KNIGHT: | 12:13 |
| 15 | Q.   If that's the case, Dr. Tuckerman, then what | 12:13 |
| 16 | do you mean when you say a "meaningful competitor" | 12:13 |
| 17 | in paragraph 84? | 12:13 |
| 18 | A.   It was meaningful enough that CoolIT's own | 12:13 |
| 19 | internal documents had it in a competitive analysis, | 12:13 |
| 20 | and they wouldn't have done that if they didn't | 12:13 |
| 21 | consider them a meaningful competitor. | 12:13 |
| 22 | Q.   And by "they," you mean -- | 12:13 |
| 23 | A.   CoolIT -- CoolIT would have not included it | 12:14 |
| 24 | in a competitive analysis if they did not consider | 12:14 |
| 25 | that particular single-pass product to be a | 12:14 |

Page 78

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | meaningful competitor.  Why would you bother if they | 12:14 |
| 2 | were not taking some -- a meaningful amount of your | 12:14 |
| 3 | market share?  So that's just, you know, a business | 12:14 |
| 4 | common sense. | 12:14 |
| 5 |     Q.   So when you say the term "meaningful | 12:14 |
| 6 | competitor," are you talking about a meaningful | 12:14 |
| 7 | competitor to CoolIT? | 12:14 |
| 8 |     A.   Well -- | 12:14 |
| 9 |          MS. BHATTACHARYYA:  Objection.  Document | 12:14 |
| 10 | speaks for itself. | 12:14 |
| 11 |          THE WITNESS:  -- what I say in the document | 12:14 |
| 12 | is a meaningful -- "a meaningful competitor to | 12:14 |
| 13 | Asetek and CoolIT/Corsair's desktop liquid cooling | 12:14 |
| 14 | products."  I mean, it is all the same market, you | 12:15 |
| 15 | know.  They're all -- Asetek, CoolIT/Corsair, they | 12:15 |
| 16 | are going after the same market. | 12:15 |
| 17 |     And so a product that is a meaningful | 12:15 |
| 18 | competitor to CoolIT would also presumably be a | 12:15 |
| 19 | meaningful competitor to Asetek because it is taking | 12:15 |
| 20 | market share from, you know, both of them. | 12:15 |
| 21 | BY MR. KNIGHT: | 12:15 |
| 22 |     Q.   Okay.  Now, did you do any testing on the | 12:15 |
| 23 | Cooler Master product? | 12:15 |
| 24 |     A.   No, I didn't do any performance testing on | 12:15 |
| 25 | them. | 12:15 |

Page 79

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    Q.   Okay.   Did you buy or inspect the Cooler    12:15

2    Master product?    12:15

3    A.   Okay.   Let's -- Cooler Master product...    12:15

4    Let's check Materials Considered.    12:15

5        No.   It's not on the list, so it would not    12:16

6    be one that I've had my hands on.    12:16

7    Q.   Okay.   And you didn't ask Asetek about    12:16

8    whether the Cooler Master product competes with    12:16

9    Asetek's products, did you?    12:16

10    A.   As I've said --    12:16

11        MS. BHATTACHARYYA:   Objection.    12:16

12    Mischaracterizes the report.    12:16

13        THE WITNESS:   As I've said, I've never    12:16

14    spoken with Asetek, and so I don't listen to the    12:16

15    rest of any question that starts with, did I ask    12:16

16    Asetek something.    12:16

17    BY MR. KNIGHT:    12:16

18    Q.   Okay.   So do you know if Asetek considers    12:16

19    Cooler Master a competitor in all of its market    12:16

20    segments?    12:16

21        MS. BHATTACHARYYA:   Objection.   Calls for    12:16

22    speculation.    12:16

23        THE WITNESS:   I wouldn't know what segments    12:16

24    they consider them a competitor in or not.   That's    12:16

25    out -- outside of the bounds of what I was asked to    12:16

Page 80

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    opine on.                                          12:16

2    BY MR. KNIGHT:                                     12:16

3        Q.   Okay.  Okay.  Well, would it surprise you to  12:16

4    know that Asetek does not consider Cooler Master a  12:17

5    competitor in all of its market segments           12:17

6    historically?                                      12:17

7           MS. BHATTACHARYYA:  Objection.  Outside the  12:17

8    scope of the report.                               12:17

9           THE WITNESS:  Well, you said "in all of its  12:17

10   market segments," so I might infer from that that  12:17

11   you think that in some market segments they do, or  12:17

12   else you wouldn't have asked the question that way.  12:17

13          And I come back to the report.  Why was it  12:17

14   in a confidential competitive analysis if they    12:17

15   didn't care about them at all?                    12:17

16   BY MR. KNIGHT:                                     12:17

17       Q.   And that report was CoolIT's report; is that  12:17

18   correct?                                           12:17

19       A.   Well, it's the one I've asked you to pull up  12:17

20   and you haven't, you know -- which you haven't done  12:17

21   so, you know, we could discuss it more if you pull  12:17

22   it up.                                             12:17

23       Q.   So you're not going to answer my question?  12:17

24       A.   Please repeat the question.               12:18

25          MS. BHATTACHARYYA:  Objection.  Asked and   12:18

                                        Page 81

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1   answered.                                           12:18

 2   BY MR. KNIGHT:                                      12:18

 3       Q.   My question is whether the report that you 12:18

 4   referred to in your prior answer was CoolIT's       12:18

 5   report.                                             12:18

 6            MS. BHATTACHARYYA:  Objection.  Asked and  12:18

 7   answered.                                           12:18

 8            THE WITNESS:  Well, it clearly in my report 12:18

 9   says:                                               12:18

10            "CoolIT's own documents show that          12:18

11            this is not correct.  For example,         12:18

12            COOLIT00036274-88 (Exhibit 129 to          12:18

13            the Mostafavi deposition)."                12:18

14            So that is a CoolIT document.              12:18

15   BY MR. KNIGHT:                                      12:18

16       Q.   Okay.  Now, did you conduct any surveys    12:18

17   about the acceptability of the Cooler Master product 12:18

18   to Asetek's customers?                             12:18

19            MS. BHATTACHARYYA:  Objection.  Outside the 12:18

20   scope of the report.                                12:18

21            THE WITNESS:  Independently, I did not      12:18

22   conduct such surveys and was not asked to and didn't 12:18

23   think it was relevant to a noninfringement report.  12:19

24   BY MR. KNIGHT:                                      12:19

25       Q.   Okay.  And did you do anything yourself to  12:19
```

Page 82

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    determine whether the Cooler Master product is a          12:19

2    meaningful competitor to the Asetek and                   12:19

3    CoolIT/Corsair desktop liquid cooling products?           12:19

4         MS. BHATTACHARYYA:   Objection.                      12:19

5    Mischaracterizes the report.  Outside the scope of        12:19

6    the report.                                               12:19

7         THE WITNESS:  I saw this internal CoolIT             12:19

8    document, which I have referenced, in which there         12:19

9    was about half a dozen products evaluated for their       12:19

10   thermal performance.  This particular Cooler Master       12:19

11   product was among that small group.                       12:19

12        And I, as a -- a person with some not                12:19

13   inconsiderable experience in high-tech business and       12:19

14   electronics and pack- -- in electronic packaging,         12:19

15   I -- you know, and an MBA, by the way, from               12:20

16   Stanford, in addition to my Ph.D., it seemed a very       12:20

17   reasonable conclusion, just based on that report,         12:20

18   that they were considered a meaningful competitor.        12:20

19   You know, to what extent meaningful?  I don't know,       12:20

20   but I can assure you no one would have bothered to        12:20

21   put it in a report where there's only five or six         12:20

22   items looked at if they didn't consider it                12:20

23   meaningful.                                               12:20

24   BY MR. KNIGHT:                                            12:20

25        Q.   Okay.  Okay.  Great.  Just a few more           12:20

                                            Page 83

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | questions and I think it would be a good time to | 12:20 |
| 2 | break for lunch.  All right. | 12:20 |
| 3 | All right.  So let's go back to paragraph 80 | 12:20 |
| 4 | of your report.  And look at the images on page 43, | 12:20 |
| 5 | 44, and 45. | 12:21 |
| 6 | A.   Okay. | 12:21 |
| 7 | Q.   Do you see those? | 12:21 |
| 8 | A.   Yes. | 12:21 |
| 9 | Q.   Great.  Where did you get those drawings | 12:21 |
| 10 | from? | 12:21 |
| 11 | MS. BHATTACHARYYA:  Again, Dr. Tuckerman, I | 12:21 |
| 12 | can -- I'll caution you about the Rule 26 | 12:21 |
| 13 | protections. | 12:21 |
| 14 | THE WITNESS:  They were supplied by counsel | 12:21 |
| 15 | and included in the first draft of the report. | 12:21 |
| 16 | BY MR. KNIGHT: | 12:21 |
| 17 | Q.   Okay.  And what format did you receive those | 12:21 |
| 18 | drawings in? | 12:21 |
| 19 | MS. BHATTACHARYYA:  Again, same cautions as | 12:21 |
| 20 | before.  And, Mr. Knight, do we have that | 12:21 |
| 21 | stipulation in place that if I let Dr. Tuckerman | 12:21 |
| 22 | answer questions about this communication, the | 12:21 |
| 23 | format of communication, that it does not waive any | 12:21 |
| 24 | of the protection -- does not any -- Rule 26 | 12:21 |
| 25 | protections? | 12:22 |

Page 84

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | now, just so you're aware, is on the record, and so | 13:42 |
| 2 | there's no grounds for misinterpretation.  We | 13:43 |
| 3 | totally understand what your reservations are. | 13:43 |
| 4 | So if you could just go ahead and annotate | 13:43 |
| 5 | what you consider to be the elongated groove and -- | 13:43 |
| 6 | with the understanding that your caveats that you | 13:43 |
| 7 | mentioned earlier apply, that would be great. | 13:43 |
| 8 | A.   Okay.  I don't seem to have control right | 13:43 |
| 9 | now.  Oh, wait a minute.  Sorry. | 13:43 |
| 10 | Q.   All good? | 13:43 |
| 11 | A.   Is there an undo or like a control -- | 13:43 |
| 12 | Q.   I believe there is an undo. | 13:43 |
| 13 | A.   Oh, yeah.  Okay, good.  That works at least. | 13:43 |
| 14 | Okay, so... | 13:43 |
| 15 | Q.   So one point of clarification before we | 13:44 |
| 16 | continue to the annotations.  I want to understand. | 13:44 |
| 17 | The hole that you're referring to, is that | 13:44 |
| 18 | two-dimensional? | 13:44 |
| 19 | A.   It's an opening so, I mean, it -- fluid | 13:44 |
| 20 | flows through it. | 13:44 |
| 21 | Q.   Okay. | 13:44 |
| 22 | A.   So, I mean, so it has -- no, I mean, it | 13:44 |
| 23 | has -- it has a vertical dimension in this -- in | 13:44 |
| 24 | this view. | 13:44 |
| 25 | Q.   Okay.  Is it fair to assume that the plane | 13:44 |

Page 113

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | of the opening is two-dimensional? | 13:44 |
| 2 | MS. BHATTACHARYYA:  Objection.  Outside the | 13:44 |
| 3 | scope of the report.  Vague. | 13:44 |
| 4 | THE WITNESS:  Yeah.  I don't know what it | 13:45 |
| 5 | means to say "the plane of the opening."  I mean, | 13:45 |
| 6 | you can -- you know, you can take cross sections. | 13:45 |
| 7 | BY MR. KNIGHT: | 13:45 |
| 8 | Q.   That's what I'm asking about, about | 13:45 |
| 9 | the elong- -- you mentioned that an opening has a | 13:45 |
| 10 | vertical component to it at the -- at the top of the | 13:45 |
| 11 | vertical component, if we look at that cross | 13:45 |
| 12 | section, is that a two-dimensional cross section, or | 13:45 |
| 13 | is that -- | 13:45 |
| 14 | MS. BHATTACHARYYA:  Same objection. | 13:45 |
| 15 | THE WITNESS:  Well, I would like to go to my | 13:45 |
| 16 | report and the language that I used. | 13:45 |
| 17 | BY MR. KNIGHT: | 13:45 |
| 18 | Q.   You can do that, but it seems like this is a | 13:45 |
| 19 | question that you can answer. | 13:45 |
| 20 | A.   Well, what I do say is that "the | 13:46 |
| 21 | opening/" -- paragraph 57: | 13:46 |
| 22 | "The opening/hole in the gasket, | 13:46 |
| 23 | depicted by the red boxes..., is the | 13:46 |
| 24 | actual inlet into the microchannels. | 13:46 |
| 25 | But the opening/hole in the gasket | 13:46 |

Page 114

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | is not" elongated -- "'elongate,' as | 13:46 |
| 2 | required by claims 1 and 15." | 13:46 |
| 3 | You know, and I should mention that, to my | 13:46 |
| 4 | mind, "elongate" means significantly longer than its | 13:46 |
| 5 | width. | 13:46 |
| 6 | Q.   Okay.  So maybe this will help -- oh, I'm | 13:46 |
| 7 | sorry, Dr. Tuckerman.  Is there anything else you | 13:46 |
| 8 | wanted to say? | 13:46 |
| 9 | A.   [No audible response.] | |
| 10 | Q.   I will take that as a no.  All right. | 13:47 |
| 11 | What is the definition of "opening" that you | 13:47 |
| 12 | applied in your report? | 13:47 |
| 13 | MS. BHATTACHARYYA:  Objection.  Form. | 13:47 |
| 14 | THE WITNESS:  Just a moment, please.  I want | 13:47 |
| 15 | to make sure I am speaking correctly on these | 13:47 |
| 16 | issues.  I know that patent language gets very | 13:47 |
| 17 | technical. | 13:47 |
| 18 | Can I have my invalidity report in there as | 13:48 |
| 19 | an exhibit? | 13:48 |
| 20 | BY MR. KNIGHT: | 13:48 |
| 21 | Q.   Sure.  I can provide it to you.  For the | 13:48 |
| 22 | record, I am reintroducing what has previously been | 13:49 |
| 23 | designated as Exhibit 259, which is Dr. Tuckerman's | 13:49 |
| 24 | expert report on the invalidity of the asserted | 13:49 |
| 25 | CoolIT patents. | 13:49 |

Page 115

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | A.   Is it there yet? | 13:49 |
| 2 | Q.   I am introducing it now. | 13:49 |
| 3 | A.   Okay. | 13:49 |
| 4 | Q.   Okay.  It should be there.  Do you see it, | 13:50 |
| 5 | Dr. Tuckerman? | 13:50 |
| 6 | A.   Oh, yes.  There it is.  Okay.  Wait a | 13:50 |
| 7 | minute.  What exhibit was it?  It's not showing up. | 13:50 |
| 8 | Q.   Exhibit 259. | 13:50 |
| 9 | A.   Oh, okay.  I see it.  It came up.  I didn't | 13:50 |
| 10 | go to the bottom of the list.  That's why.  Okay. | 13:50 |
| 11 | Yeah.  All right.  Check something out here. | 13:51 |
| 12 | Okay.  I am just checking.  We are at | 13:51 |
| 13 | paragraph 34 of the report says: | 13:51 |
| 14 | "I further understand that the Court | 13:51 |
| 15 | has declined to construe the terms | 13:51 |
| 16 | 'inlet,' 'inlet opening,' 'aperture,' | 13:51 |
| 17 | 'outlet opening,' 'inlet/outlet flow | 13:51 |
| 18 | path'...," and some other things, | 13:51 |
| 19 | "found that these claim terms should | 13:51 |
| 20 | be given their plain and ordinary | 13:51 |
| 21 | meaning." | 13:51 |
| 22 | So ergo, your question was about the meaning | 13:51 |
| 23 | of "opening"? | 13:51 |
| 24 | Q.   Uh-huh.  What is the definition that you | 13:51 |
| 25 | applied for opening in your noninfringement report? | 13:51 |

Page 116

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1      A.   It has a plain and ordinary --            13:51

 2           MS. BHATTACHARYYA:  Objection.  Vague.    13:51

 3           THE WITNESS:  It has a plain -- it has a   13:52

 4   plain and ordinary meaning.                       13:52

 5   BY MR. KNIGHT:                                     13:52

 6      Q.   Okay.  And what does -- what is the plain  13:52

 7   and ordinary meaning of "opening" to you?         13:52

 8      A.   In the context of a fluidic system like    13:52

 9   this, it means like a -- like a port, a hole,     13:52

10   something that the fluid is, you know, passing    13:52

11   through to get from one portion of your device to 13:52

12   another.                                          13:52

13           So it's a -- it's for fluid transport.  It's 13:52

14   not for fluid distribution.  Fluid distribution  13:52

15   would be -- into microchannels should be a function 13:52

16   of a header.                                      13:52

17      Q.   Okay.  So is an opening two-dimensional or 13:52

18   three-dimensional?                                13:52

19      A.   Well, it can -- honestly, it can be either. 13:52

20   You know, it depends on context.                  13:53

21      Q.   Okay.  In the context of the CoolIT patents, 13:53

22   is opening two-dimensional or three-dimensional?  13:53

23      A.   In the context of these patents, let me take 13:53

24   a look at the -- do we have the patents -- are the 13:53

25   patents actually in the exhibits here?  I would like 13:53
```

Page 117

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | them in the exhibits, please, since we are going to | 13:53 |
| 2 | talk about them. | 13:53 |
| 3 | Q.   Sure. | 13:53 |
| 4 | A.   Yeah. | 13:53 |
| 5 | Q.   So for the record, I am reintroducing what | 13:53 |
| 6 | has been previously designated as Exhibit 263, which | 13:53 |
| 7 | is U.S. 8,746,330; Exhibit 264, which is U.S. | 13:54 |
| 8 | 9,603,284; and Exhibit 265, which is U.S. | 13:54 |
| 9 | 10,274,266. | 13:54 |
| 10 | They should be in the folder now, | 13:54 |
| 11 | Dr. Tuckerman. | 13:54 |
| 12 | A.   Okay.  I will refresh.  Yeah.  Okay.  So I | 13:54 |
| 13 | mean, what patent are we talking about for the | 13:54 |
| 14 | purposes of this discussion right now? | 13:55 |
| 15 | Q.   For the purposes of this discussion, let's | 13:55 |
| 16 | refer to the '330 patent. | 13:55 |
| 17 | A.   All right.  Let me open that. | 13:55 |
| 18 | And the other item I would like in the | 13:55 |
| 19 | exhibits available to me is Pokharna's report on | 13:55 |
| 20 | infringement. | 13:55 |
| 21 | MR. KNIGHT:  Dr. Tuckerman, I don't think | 13:55 |
| 22 | it's appropriate for you to have to go through all | 13:56 |
| 23 | of the patents and Dr. Pokharna's report in order to | 13:56 |
| 24 | be able to tell me what you apply as a definition | 13:56 |
| 25 | for opening. | 13:56 |

Page 118

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | If we are going to do that, then I think | 13:56 |
| 2 | we're going to need more time to depose you because | 13:56 |
| 3 | you should be prepared for that already, having | 13:56 |
| 4 | already refreshed yourself on your report. | 13:56 |
| 5 | MS. BHATTACHARYYA: Mr. Knight, that is not | 13:56 |
| 6 | appropriate. If Dr. Tuckerman needs time to look at | 13:56 |
| 7 | his report and look at the patents to answer his | 13:56 |
| 8 | question, then he should have the time and he at | 13:56 |
| 9 | that time will go on the record. | 13:56 |
| 10 | MR. KNIGHT: I disagree, Arpita, but I note | 13:56 |
| 11 | your objection. | 13:56 |
| 12 | THE WITNESS: Well, I do think it's | 13:56 |
| 13 | appropriate because what I'm addressing are | 13:56 |
| 14 | assertions by Dr. Pokharna, and I -- you know, where | 13:56 |
| 15 | possible, I would like to use interpretations that, | 13:56 |
| 16 | you know, CoolIT has already agreed upon because, as | 13:56 |
| 17 | I mentioned, you know, in the case of an opening, | 13:57 |
| 18 | even the question of whether it should be considered | 13:57 |
| 19 | three-dimensional or two-dimensional needs to be | 13:57 |
| 20 | construed in the context of a patent, because those | 13:57 |
| 21 | are not precise engineering terms. | 13:57 |
| 22 | You know, to say something has a plain and | 13:57 |
| 23 | ordinary meaning, doesn't mean it has a precise | 13:57 |
| 24 | meaning, you know; rather, the opposite sometimes. | 13:57 |
| 25 | So that's why I'm asking for it because I feel it's | 13:57 |

Page 119

| | | |
|---|---|---|
| 1 | most appropriate to be responding to -- where | 13:57 |
| 2 | possible, to constructions that Dr. Pokharna used. | 13:57 |
| 3 | BY MR. KNIGHT: | 13:57 |
| 4 | Q.   Are you saying that the term "opening" | 13:57 |
| 5 | cannot be understood by persons of ordinary skill in | 13:57 |
| 6 | the art without the reference to the CoolIT patents? | 13:57 |
| 7 | MS. BHATTACHARYYA:  Objection. | 13:57 |
| 8 | Mischaracterizes prior testimony. | 13:57 |
| 9 | THE WITNESS:  What I'm saying is "opening" | 13:58 |
| 10 | is a sufficiently broad term that, in isolation, I | 13:58 |
| 11 | don't think you can say that.  You have to look at | 13:58 |
| 12 | what the context of the invention is, where this | 13:58 |
| 13 | opening is referred to, because as I've already | 13:58 |
| 14 | said, whether it's two-dimensional or | 13:58 |
| 15 | three-dimensional is -- can be context sensitive in | 13:58 |
| 16 | the -- in ordinary meanings.  It has both ordinary | 13:58 |
| 17 | meanings, in my view, so that's why I'm asking for | 13:58 |
| 18 | those documents. | 13:58 |
| 19 | BY MR. KNIGHT: | 13:58 |
| 20 | Q.   Okay.  So just so I understand, do you | 13:58 |
| 21 | understand what the plain and ordinary meaning is of | 13:58 |
| 22 | "opening"? | 13:59 |
| 23 | MS. BHATTACHARYYA:  Objection.  Calls for a | 13:59 |
| 24 | legal conclusion. | 13:59 |
| 25 | THE WITNESS:  It's -- I know it when I see | 13:59 |

Page 120

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1   it in context.  As I said, it doesn't have, all by    13:59
 2   itself, a -- a definition without context.  There's   13:59
 3   many words whose plain and ordinary meaning is a       13:59
 4   function of context.                                   13:59
 5   BY MR. KNIGHT:                                         13:59
 6       Q.   Okay.  So looking at the context that is the  13:59
 7   '330 specification, what is your understanding of      13:59
 8   the plain and ordinary meaning of the term             13:59
 9   "opening"?                                             13:59
10       A.   Right.  Well, let me open it up and take a    13:59
11   look at it, please.                                    13:59
12       Q.   You have the '330 patent.                     13:59
13       A.   Right.  I have the '330 patent.  And I would  13:59
14   also like the Pokharna document, please.               13:59
15       Q.   I will not provide the Pokharna document.     13:59
16   You have the '330 patent.  You told me that it has     14:00
17   to be understood with context.  The context for the    14:00
18   term "opening" in the claims would be the '330         14:00
19   patent.  So please, Dr. Tuckerman, answer my           14:00
20   question.                                              14:00
21           MS. BHATTACHARYYA:  Mr. Knight, that is --     14:00
22   that is not proper.  If he wants to refer to           14:00
23   Dr. Pokharna's report because he is rebutting          14:00
24   Dr. Pokharna's report.  So his opinions are rebuttal   14:00
25   to Dr. Pokharna's opinion.  So I do not understand     14:00
```

Page 121

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | why you're refusing to show him Dr. Pokharna's | 14:00 |
| 2 | report. | 14:00 |
| 3 | MR. KNIGHT:  Okay.  Another question -- | 14:00 |
| 4 | MS. BHATTACHARYYA:  He's not giving | 14:00 |
| 5 | independent -- | 14:00 |
| 6 | BY MR. KNIGHT: | 14:00 |
| 7 | Q.  Another question then for you, | 14:00 |
| 8 | Dr. Tuckerman.  In order to be able to establish the | 14:00 |
| 9 | plain and ordinary meaning of the term "opening" | 14:00 |
| 10 | within the context of the '330 patent, do you have | 14:00 |
| 11 | to rely on the infringement report of Dr. Pokharna? | 14:00 |
| 12 | MS. BHATTACHARYYA:  Objection.  Form. | 14:00 |
| 13 | Mischaracterizes prior testimony.  Calls for legal | 14:00 |
| 14 | conclusions. | 14:01 |
| 15 | THE WITNESS:  Well, I'll put it this way. | 14:01 |
| 16 | These patents with CoolIT are quite -- the claims | 14:01 |
| 17 | are quite intricately written and, you know, | 14:01 |
| 18 | frankly, compared with many patents I've seen that | 14:01 |
| 19 | are rather straightforward, have almost been, you | 14:01 |
| 20 | know, craftily created to have broad potential | 14:01 |
| 21 | interpretations. | 14:01 |
| 22 | And I think that, you know, CoolIT, you | 14:01 |
| 23 | know, needs to have their position of what it means, | 14:02 |
| 24 | and that's currently Dr. Pokharna's position, and I | 14:02 |
| 25 | think I would like to start from there. | 14:02 |

Page 122

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1          The -- as I say, these are intricately          14:02

2   worded patents, and I don't like to work from memory   14:02

3   on these kind of things.                               14:02

4   BY MR. KNIGHT:                                         14:02

5      Q.   Okay.  Let's -- that is just not responsive,   14:02

6   Dr. Tuckerman, so I think let's just restart it.  If   14:02

7   you don't want to give me a definition of opening,     14:02

8   that's fine.                                           14:02

9          But with the understanding that what you're     14:02

10   annotating doesn't include the opening, can you draw   14:02

11   what you consider to be the elongated groove in the    14:02

12   Gen 4, Gen 5, Gen 6 and Gen 7 products?                14:02

13      A.   Okay.  I am drawing an elongated groove.  I    14:02

14   did.                                                   14:03

15          MS. BHATTACHARYYA:  Dr. Tuckerman, are you      14:03

16   drawing it on Gen 5?                                   14:03

17          THE WITNESS:  No.  I'm trying to scroll.        14:03

18   It's like this -- to get out of -- how do I get into   14:03

19   scroll mode?  I think I'm in annotation.  I'm going    14:03

20   to do an undo.  How do I -- what do I click to be      14:03

21   able to scroll rather than --                          14:03

22   BY MR. KNIGHT:                                         14:03

23      Q.   I think there is a -- there's a scroll bar     14:03

24   all the way to the right, right on the outskirts.      14:03

25      A.   Oh, okay.  Yeah, people's images are           14:03

Page 123

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | covering it.  I will move them over. | 14:03 |
| 2 | Q.    Yeah, there you go. | 14:03 |
| 3 | A.    There I go. | 14:03 |
| 4 | Q.    And then there is an inner scroll bar that | 14:03 |
| 5 | will allow you to scroll down on the exhibit.  It's | 14:03 |
| 6 | to the right of the stamp that says "Exhibit 0279." | 14:03 |
| 7 | A.    I'm sorry.  Say that again.  There's an -- | 14:04 |
| 8 | Q.    Yeah.  So if you go to the stamp | 14:04 |
| 9 | Exhibit 0279, to the right of that, slightly to the | 14:04 |
| 10 | right, is another scroll bar, and that will allow | 14:04 |
| 11 | you to scroll up and down the exhibit itself. | 14:04 |
| 12 | A.    Oh, okay.  I get you.  All right. | 14:04 |
| 13 | Q.    Uh-huh. | 14:04 |
| 14 | A.    Okay. | |
| 15 | Q.    There you go. | 14:04 |
| 16 | A.    Oh, okay.  Well, what I'm going to do is | 14:04 |
| 17 | just put a notation.  Can I type in text or | 14:04 |
| 18 | something? | 14:04 |
| 19 | Q.    Yeah.  There's text right there | 14:04 |
| 20 | (indicating), free text. | 14:04 |
| 21 | A.    Okay.  I guess what I am going to say is | 14:04 |
| 22 | "groove could be construed as extending over the" -- | 14:05 |
| 23 | I don't know what happened.  This thing is all of a | 14:05 |
| 24 | sudden not letting me type. | 14:06 |
| 25 | MS. BHATTACHARYYA:  Dr. Tuckerman, you can | 14:06 |

Page 124

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | came up in the deposition, and I can't recall | 19:03 |
| 2 | specific testimony about, you know, using the words | 19:03 |
| 3 | that you used. | 19:03 |
| 4 | I can -- you know, it was a -- it looked | 19:03 |
| 5 | like it certainly disclosed a split-flow so, you | 19:03 |
| 6 | know, if we want to talk about how it applies, we | 19:03 |
| 7 | should go to my claim chart. | 19:03 |
| 8 | BY MR. KNIGHT: | 19:03 |
| 9 | Q. Dr. Tuckerman, this is well beyond the scope | 19:03 |
| 10 | of the question and, in fact, in your answer, it | 19:03 |
| 11 | seems to me you're saying you do not recall. Is | 19:04 |
| 12 | that correct? | 19:04 |
| 13 | A. I don't recall specifically using exactly | 19:04 |
| 14 | the words that you said. | 19:04 |
| 15 | Q. Okay. | 19:04 |
| 16 | A. Maybe I did, maybe I didn't. | 19:04 |
| 17 | Q. Okay. Okay. Okay. | 19:04 |
| 18 | MS. BHATTACHARYYA: Can we take a break? I | 19:04 |
| 19 | need to reload real time. | 19:04 |
| 20 | MR. KNIGHT: Yes. | 19:04 |
| 21 | Miss court reporter, can we go off the | 19:04 |
| 22 | record so that we can look into real time. | 19:04 |
| 23 | THE WITNESS: Okay. | 19:04 |
| 24 | THE VIDEOGRAPHER: Off the record at | 19:04 |
| 25 | 3:10 p.m. | 19:04 |

Page 150

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | (Off the record.) | 19:04 |
| 2 | THE VIDEOGRAPHER:  We are on the record at | 15:16 |
| 3 | 3:16 p.m.  This is the beginning of media 7 in the | 15:16 |
| 4 | deposition of Dr. David Tuckerman. | 15:16 |
| 5 | BY MR. KNIGHT: | 15:17 |
| 6 | Q.   Mr. Tuckerman, could you please go to | 15:17 |
| 7 | Figure 11 and 12 of Hamilton and, correspondingly, | 15:17 |
| 8 | in your invalidity report to Exhibit B, Chart 4, at | 15:17 |
| 9 | pages 3 to 6.  Let me know when you're there. | 15:17 |
| 10 | A.   Okay. | 15:17 |
| 11 | Q.   Okay.  Can you describe for me the fluid | 15:17 |
| 12 | flow from the housing inlet opening to the | 15:17 |
| 13 | microchannels in Hamilton? | 15:17 |
| 14 | A.   Yeah.  The -- the coolant comes in the | 15:17 |
| 15 | housing.  It's -- that section is labeled -- let's | 15:18 |
| 16 | see, it comes in through 86 so in plane view.  So | 15:18 |
| 17 | there's a port 86, and then it -- then there is a | 15:18 |
| 18 | plate 24 prime in Figure 12 that is an elongate | 15:19 |
| 19 | inlet opening.  And then after that -- so the fluid | 15:19 |
| 20 | flows in through this port on the end, and then it | 15:19 |
| 21 | goes into the channel labeled "82." | 15:19 |
| 22 | I guess 82 in Figure 11 must be the same as | 15:19 |
| 23 | 92 in Figure 12.  Well, I should probably check -- | 15:20 |
| 24 | check the -- let me pull up the patent itself. | 15:20 |
| 25 | Hamilton patent, is that in the -- | 15:20 |

Page 151

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1     Q.   Yep, it should be.                              15:20

2     A.   -- in the exhibits?

3     Q.   Exhibit 2 -- 0273.                              15:20

4     A.   20273.  0273.  Okay.

5     Q.   Yep.

6     A.   Okay.  All right.  [Talking to self.]  I'm     15:20

7  opening up yet another window.  Screwed up here...     15:21

8  okay.  So I got that up.                               15:22

9          Okay.  Well, he's using -- because he's got    15:22

10 different figures, it appears to me he's using         15:22

11 different numbering, but it's quite clear that fluid   15:22

12 is going in the inlet port -- the circular inlet       15:22

13 port 86, and then, you know, it should be, you know,   15:22

14 the housing -- in the housing and housing 24           15:22

15 prime in the -- well, no, wait a minute.  I'm sorry.   15:22

16     Q.   Perhaps we can walk through it together.      15:22

17     A.   Yeah.  Yeah, sure.  Okay.                      15:22

18     Q.   Yeah.  So -- just so -- I will tell you my    15:22

19 understanding and you can tell me whether I'm right    15:22

20 or wrong.  So now, does fluid flow from the housing    15:22

21 inlet port to the inlet port 86?                       15:22

22          MS. BHATTACHARYYA:  Objection.                15:23

23 Mischaracterizes the reference.                        15:23

24          THE WITNESS:  Well, I consider it clear from  15:23

25 the figures and the text that the inlet ports are      15:23

Veritext Legal Solutions
866 299-5127

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | circular, and they would be part of 56 prime, you | 15:23 |
| 2 | know. | 15:23 |
| 3 | BY MR. KNIGHT: | 15:23 |
| 4 | Q.    Uh-huh.  Yep.  Yeah, I was just asking if | 15:23 |
| 5 | the housing inlet port -- fluid flowed from the | 15:23 |
| 6 | housing inlet port to the inlet port 86. | 15:23 |
| 7 | A.    Well, the inlet port 86 is -- I think we | 15:23 |
| 8 | should go to his text -- | 15:23 |
| 9 | Q.    Okay.  Sure. | 15:24 |
| 10 | A.    -- before we can be specific here. | 15:24 |
| 11 | So -- okay, the die, column 6 of the patent, | 15:24 |
| 12 | the die 20 double prime sits on a ceramic frame 24 | 15:25 |
| 13 | prime -- I just lost my copy.  There we go again. | 15:25 |
| 14 | Okay.  Die 20 double prime figure 10 sits | 15:25 |
| 15 | on a ceramic frame -- | 15:25 |
| 16 | DEPOSITION REPORTER:  Dr. Tuckerman, is this | 15:25 |
| 17 | for the record? | |
| 18 | THE WITNESS:  Well, yes.  Yeah. | |
| 19 | DEPOSITION REPORTER:  Can you please adjust | |
| 20 | your camera and read a little slower.  Thank you. | 15:25 |
| 21 | THE WITNESS:  Oh, I'm sorry.  Yes.  Very | 15:25 |
| 22 | small print.  Okay. | |
| 23 | "The die 20 prime sits on a ceramic | 15:25 |
| 24 | frame 24 prime which now includes | 15:26 |
| 25 | three generally rectangular coolant | |

Page 153

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | manifolds 80, 82 and 84 which are | 15:26 |
| 2 | spaced apart as shown in Figure 11." | 15:26 |
| 3 | [Talking to self]  Okay.  Okay. | 15:26 |
| 4 | So -- ah, yeah.  Right.  Okay.  I'm | 15:26 |
| 5 | remembering now.  The die in Hamilton, I believe, | 15:26 |
| 6 | was integrated -- yeah, yeah, yeah, okay.  Sure.  So | 15:26 |
| 7 | it's a microchannel heat sink.  It just happens that | 15:26 |
| 8 | the -- it's -- actually, the die itself is the | 15:26 |
| 9 | substrate for the microchannels. | 15:26 |
| 10 | And so the -- over that is the plate that | 15:26 |
| 11 | has the slots, and over -- over the slots is 56 | 15:27 |
| 12 | prime, which would be your housing, and the -- | 15:27 |
| 13 | there's a circular hole coming out. | 15:27 |
| 14 | So is that clear enough?  You're going in -- | 15:27 |
| 15 | BY MR. KNIGHT: | |
| 16 | Q.  If you could summarize for me what the fluid | 15:27 |
| 17 | flow is, I think that would be helpful for the | 15:27 |
| 18 | record. | 15:27 |
| 19 | A.  Okay.  It is...  Yeah. | 15:27 |
| 20 | So the -- so what we're -- yeah, so "the | 15:28 |
| 21 | bottom" -- in the claim chart: | 15:28 |
| 22 | "The bottom plain/face of manifold | 15:28 |
| 23 | 82," which is the plate, "defines an | 15:28 |
| 24 | elongate inlet opening in fluidic | 15:28 |
| 25 | communication with each of the | 15:28 |

Page 154

| | | |
|---|---|---|
| 1 | microchannels 68 prime.  The elongate | 15:28 |
| 2 | inlet opening extends transversely in | 15:28 |
| 3 | relation to the length of each of the | 15:29 |
| 4 | microchannels.  Moreover, the elongate | 15:29 |
| 5 | inlet opening is positioned midway | 15:29 |
| 6 | along the length of the microchannels." | 15:29 |
| 7 | Yeah.  [As read.] | 15:29 |
| 8 | Q.   Mr. Tuckerman, are you reading directly from | 15:29 |
| 9 | your report right now? | 15:29 |
| 10 | A.   Yeah.  From my claim chart, sure. | 15:29 |
| 11 | Q.   Okay.  Okay.  So can you tell me the fluid | 15:29 |
| 12 | flow path from the housing's inlet opening to the | 15:29 |
| 13 | microchannels? | 15:29 |
| 14 | MS. BHATTACHARYYA:  Objection.  Vague. | 15:29 |
| 15 | BY MR. KNIGHT: | 15:29 |
| 16 | Q.   Are you unable to do that sitting here | 15:29 |
| 17 | today, Dr. Tuckerman? | 15:29 |
| 18 | A.   Can you give me a minute, please? | 15:29 |
| 19 | Q.   I have given you many minutes, | 15:29 |
| 20 | Dr. Tuckerman. | 15:29 |
| 21 | MS. BHATTACHARYYA:  And while Dr. Tuckerman | 15:30 |
| 22 | is reviewing his report, Mr. Knight, are you going | 15:30 |
| 23 | to ask a question about the noninfringement report, | 15:30 |
| 24 | or do you plan to continue asking questions about | 15:30 |
| 25 | the invalidity report, which was the subject of the | 15:30 |

Page 155

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | deposition two days ago? | 15:30 |
| 2 | MR. KNIGHT:  I understand -- I understand | 15:30 |
| 3 | that, Arpita.  You have to lay a certain foundation | 15:30 |
| 4 | in order to be able to talk about the infringement | 15:30 |
| 5 | report, and Dr. Tuckerman thus far has taken an | 15:30 |
| 6 | extended period of time to answer each question.  So | 15:30 |
| 7 | we will get there.  I cannot tell you how long it | 15:30 |
| 8 | will take though. | 15:30 |
| 9 | MS. BHATTACHARYYA:  Okay.  I'm just -- I'm | 15:30 |
| 10 | just curious because, you know, you're asking | 15:30 |
| 11 | questions about a report that was the subject of a | 15:30 |
| 12 | deposition two days ago, so he hasn't studied this | 15:30 |
| 13 | report for the deposition today.  So it's | 15:31 |
| 14 | understandable that he needs some time to reacquaint | 15:31 |
| 15 | himself with his report which was the subject of his | 15:31 |
| 16 | deposition two days ago and the prior art references | 15:31 |
| 17 | and everything. | 15:31 |
| 18 | So if he needs some time, he'll need some | 15:31 |
| 19 | time, but that's why I want to make sure that -- | 15:31 |
| 20 | MR. KNIGHT:  Yep.  Nope. | 15:31 |
| 21 | MS. BHATTACHARYYA:  Is this a foundational | |
| 22 | question? | |
| 23 | MR. KNIGHT:  Your concern is well taken, | 15:31 |
| 24 | Arpita, and we will get there. | 15:31 |
| 25 | THE WITNESS:  Okay.  So please go ahead with | 15:31 |

Page 156

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1    BY MR. KNIGHT:                                        15:58

 2       Q.   No, I understand that.  My question is just  15:58

 3    whether that cross-sectional -- if you take a cross   15:58

 4    section, and there's that rectangular, is that        15:58

 5    present in each of the accused Asetek Gen devices?     15:58

 6            MS. BHATTACHARYYA:  Same objection.  Asked    15:58

 7    and answered.                                         15:58

 8            THE WITNESS:  You will -- you will have a --   15:58

 9    if you take a cross section of that region in the     15:58

10    plane of the -- you know, in a plane parallel to the  15:58

11    microchannels --                                      15:58

12    BY MR. KNIGHT:

13       Q.   Uh-huh.

14       A.   -- you will have a rectangle.                 15:58

15       Q.   Okay.  Okay.  And does fluid flow through     15:58

16    that rectangle?                                       15:58

17            MS. BHATTACHARYYA:  Objection.                15:58

18    Mischaracterizes Dr. Pokharna's report.  Outside the  15:58

19    scope of Dr. Tuckerman's report.  Also, objection     15:59

20    vague.                                                15:59

21            THE WITNESS:  Well, that's -- the fluid       15:59

22    accesses the microchannels, and if you take a         15:59

23    cross-sectional cut in the right place, you know, so  15:59

24    fluid would be flowing, you know, initially           16:00

25    perpendicular to it.                                  16:00
```

Page 168

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | BY MR. KNIGHT: | 16:00 |
| 2 | Q.   Okay.   Okay.   Okay.   So, Dr. Tuckerman, why | 16:00 |
| 3 | is the two-dimensional rectangle beneath inlet | 16:00 |
| 4 | manifold 82 in Hamilton an elongated inlet opening, | 16:00 |
| 5 | but the two-dimensional rectangle beneath what | 16:00 |
| 6 | Dr. Pokharna labels the "inlet header" not an | 16:00 |
| 7 | elongated inlet opening? | 16:00 |
| 8 | MS. BHATTACHARYYA:   Objection. | 16:00 |
| 9 | Mischaracterizes Dr. Pokharna's report.   Outside the | 16:00 |
| 10 | scope of Dr. Tuckerman's report. | 16:00 |
| 11 | THE WITNESS:   Okay.   Repeat the question, | 16:00 |
| 12 | please. | 16:00 |
| 13 | BY MR. KNIGHT: | 16:00 |
| 14 | Q.   Uh-huh.   Why is the two-dimensional | 16:00 |
| 15 | rectangle beneath inlet manifold 82 in Hamilton an | 16:00 |
| 16 | elongated inlet opening, but the two-dimensional | 16:00 |
| 17 | rectangle beneath what Dr. Pokharna labels the | 16:01 |
| 18 | "inlet header" not an elongated inlet opening? | 16:01 |
| 19 | MS. BHATTACHARYYA:   Same objections as | 16:01 |
| 20 | before. | 16:01 |
| 21 | THE WITNESS:   Well, for one thing, if you -- | 16:01 |
| 22 | you have the issue of -- let's see.   Let me look at | 16:01 |
| 23 | the whole claim.   I want to go to my invalidity | 16:01 |
| 24 | report, just... Remind me what my invalidity report | 16:02 |
| 25 | exhibit number is. | 16:02 |

Page 169

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | BY MR. KNIGHT: | 16:02 |
| 2 | Q. Sure. I will pull it up. There are a lot | 16:02 |
| 3 | of exhibits. | 16:02 |
| 4 | A. There are. | 16:02 |
| 5 | Q. It is Exhibit 259. | 16:03 |
| 6 | A. Okay. And is there a particular patent that | 16:03 |
| 7 | is at issue here in your question? | 16:03 |
| 8 | Q. Yes. So Hamilton -- the Hamilton ground | 16:03 |
| 9 | that you discussed in your invalidity report relates | 16:03 |
| 10 | to the '284 patent. | 16:03 |
| 11 | A. '284 patent. All right. | 16:03 |
| 12 | Q. Uh-huh. | |
| 13 | A. Wait. I'm sorry. I didn't mean invalidity | 16:03 |
| 14 | report. I meant the infringement report. I want to | 16:03 |
| 15 | go to the infringement report. What was that | 16:03 |
| 16 | exhibit? | 16:03 |
| 17 | Q. So just to be clear, do you want -- | 16:03 |
| 18 | A. Noninfringement. | 16:03 |
| 19 | Q. Your noninfringement. Okay. | 16:03 |
| 20 | A. Yes. | |
| 21 | Q. Okay. I will give that to you now. Okay. | 16:03 |
| 22 | A. That's what exhibit? | |
| 23 | Q. That is Exhibit 266. | 16:03 |
| 24 | A. Okay. [Talking to self.] I guess I didn't | 16:03 |
| 25 | download it yet, so let me download it now. | 16:04 |

Page 170

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | Q.   Okay. | 16:04 |
| 2 | A.   266.  I actually don't see it. | 16:04 |
| 3 | MS. BHATTACHARYYA:  Dr. Tuckerman, that | 16:04 |
| 4 | should be at the very top of the list, I believe. | 16:04 |
| 5 | THE WITNESS:  Oh, it says Exhibit 001 and it | 16:04 |
| 6 | was kind of cut off.  Thank you.  That's why I | 16:04 |
| 7 | didn't see it. | 16:04 |
| 8 | MR. KNIGHT:  Thank you, Arpita. | 16:04 |
| 9 | THE WITNESS:  Yeah.  All right.  Okay. | 16:04 |
| 10 | Maybe I already downloaded it.  I'm not sure, but I | 16:04 |
| 11 | will download it again.  Okay.  There it goes. | 16:04 |
| 12 | Okay.  It confused me to call it 001.  All right. | 16:04 |
| 13 | Okay.  Now I can open it.  All right.  And | 16:05 |
| 14 | you said the '284 patent; right? | 16:05 |
| 15 | BY MR. KNIGHT: | 16:05 |
| 16 | Q.   Your mapping of Hamilton relates to the '284 | 16:05 |
| 17 | patent.  Yes? | 16:05 |
| 18 | A.   Right.  And -- all right.  So in my report, | 16:05 |
| 19 | I start discussing it on page 24, it appears. | 16:05 |
| 20 | Okay.  So paragraph 57, the opening/hole in | 16:06 |
| 21 | the gasket depicted by red boxes that are shown | 16:06 |
| 22 | in -- on page 27 is the actual inlet into the | 16:06 |
| 23 | microchannels.  The opening hole in the gasket is | 16:06 |
| 24 | not elongate, so that little low-aspect ratio | 16:06 |
| 25 | rectangle, I would not consider elongate.  It's not. | 16:06 |

Page 171

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | And it's even clearer on the Gen 5, it's not | 16:06 |
| 2 | elongate, nor does it open to or is in direct fluid | 16:06 |
| 3 | communication with each of the microchannels. | 16:07 |
| 4 | Rather, the opening hole is short and | 16:07 |
| 5 | extends over only a few of the fins microchannels, | 16:07 |
| 6 | so the opening hole by itself, without the groove in | 16:07 |
| 7 | the gasket, does not satisfy the limitations of the | 16:07 |
| 8 | independent claim so -- so that's the assertion, my | 16:07 |
| 9 | assertion.  And so it would seem that it's not -- at | 16:07 |
| 10 | that point, it becomes not relevant, you know, | 16:07 |
| 11 | what -- | 16:07 |
| 12 | Q.   Well, a couple things, Dr. Tuckerman.  One, | 16:07 |
| 13 | that wasn't responsive to my question; and two, | 16:07 |
| 14 | regardless of whether you think it is relevant or | 16:07 |
| 15 | not, you still have an obligation to answer my | 16:07 |
| 16 | question. | 16:07 |
| 17 | A.   Of course. | 16:07 |
| 18 | Q.   So my question to you again is:  Why is a | 16:08 |
| 19 | two-dimensional rectangle beneath inlet manifold 82 | 16:08 |
| 20 | in Hamilton an elongated inlet opening, but the | 16:08 |
| 21 | two-dimensional rectangle beneath what Dr. Pokharna | 16:08 |
| 22 | labels as the "inlet header" not an elongated inlet | 16:08 |
| 23 | opening? | 16:08 |
| 24 | MS. BHATTACHARYYA:   Objection. | 16:08 |
| 25 | Mischaracterizes prior testimony.  Asked and | 16:08 |

Page 172

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1   answered.  Mischaracterizes Dr. Pokharna's report        16:08

 2   and outside the scope of Dr. Tuckerman's report.         16:08

 3           THE WITNESS:  Do I say it's not an elongated 16:08

 4   opening anywhere in my report?                           16:08

 5   BY MR. KNIGHT:                                           16:08

 6       Q.   You do not.                                     16:08

 7       A.   Okay.                                           16:08

 8       Q.   So are you saying it is an elongated inlet      16:08

 9   opening?                                                 16:08

10           MS. BHATTACHARYYA:  Objection.                   16:08

11   Mischaracterizes prior testimony.  The document         16:08

12   speaks for itself.  And by "document," I mean            16:08

13   Dr. Tuckerman's noninfringement report.                 16:08

14           THE WITNESS:  Well, you know, I don't see        16:09

15   that I need to take positions on things that are         16:09

16   not, you know, required to make the case.  It            16:09

17   just --                                                 16:09

18   BY MR. KNIGHT:                                           16:09

19       Q.   I mean --                                       16:09

20           MS. BHATTACHARYYA:  I think we lost Dustin.  16:09

21           MR. KNIGHT:  Sorry about that.  I'm having       16:09

22   technical difficulties.                                 16:09

23   BY MR. KNIGHT:                                           16:09

24       Q.   Dr. Tuckerman, I know you haven't served as 16:10

25   an expert before, but you are an expert, and I am        16:10
```

Page 173

1    asking your opinion.  And so are you able to answer          16:10

2    my question?                                                  16:10

3            MS. BHATTACHARYYA:  Objection.  Asked and            16:10

4    answered.  Outside the scope of Dr. Tuckerman's               16:10

5    report.                                                       16:10

6            THE WITNESS:  Repeat the question again,             16:10

7    please.                                                       16:10

8    BY MR. KNIGHT:                                                16:10

9        Q.   Sure.  Give me one moment.  So just to give         16:10

10   context, so I originally asked you the question,             16:10

11   "Why is a two-dimensional rectangle beneath inlet            16:10

12   manifold 82 in Hamilton an elongated opening, but            16:10

13   the two-dimensional rectangle beneath what                   16:10

14   Dr. Pokharna labels as an "inlet header" is not an           16:10

15   elongated in let opening?"                                   16:10

16           And your response to me was, "Do I say it's          16:10

17   not an elongated opening anywhere in my report?"             16:10

18           I respond to you, "You do not."                      16:11

19           And then my question to you after that was,          16:11

20   "So are you saying it is an elongated inlet                  16:11

21   opening?"                                                     16:11

22           MS. BHATTACHARYYA:  Objection.                       16:11

23   Mischaracterizes prior testimony.  Asked and                16:11

24   answered.  Mischaracterizes Dr. Pokharna's report.          16:11

25   Outside the scope of Dr. Tuckerman's report.                16:11

                                              Page 174

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1        THE WITNESS:  I would have to think about it  16:11

2   in the cont - -- you know, if we're talking in the   16:11

3   context of CoolIT's claims.  It just -- I didn't      16:11

4   need that argument to -- I mean, I think a            16:11

5   noninfringement argument -- that question as to       16:11

6   whether -- I don't see -- I don't see that it comes   16:11

7   up.  I mean...                                         16:12

8   BY MR. KNIGHT:

9       Q.   Well, Dr. Tuckerman, we are entitled to     16:12

10  explore inconsistencies between your noninfringement  16:12

11  and your invalidity position.  So just to be clear,   16:12

12  are you refusing to answer my question?               16:12

13      A.   No, I'm not.  I'm not --                     16:12

14        MS. BHATTACHARYYA:  Mr. Knight, he's not.       16:12

15  You know he's not.  You know his noninfringement      16:12

16  report is a rebuttal to the infringement report,      16:12

17  right?  So maybe you should just --                   16:12

18        MR. KNIGHT:  Arpita, are you testifying?  Is    16:12

19  there an objection here?  Because if there is not, I  16:12

20  would ask you to stop.                                16:12

21        MS. BHATTACHARYYA:  You are accusing him of     16:12

22  not answering questions.  He is.                      16:12

23        MR. KNIGHT:  I'm asking if he can answer my

24  question.

25        MS. BHATTACHARYYA:  If you ask the              16:12

Page 175

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | question -- I just ask -- | 16:12 |
| 2 |      MR. KNIGHT:  Arpita, please stop. | 16:12 |
| 3 | BY MR. KNIGHT: | 16:12 |
| 4 |   Q.   Dr. Tuckerman, are you able to answer my | 16:12 |
| 5 | question? | 16:12 |
| 6 |      MS. BHATTACHARYYA:  Rephrase your question | 16:12 |
| 7 | or move on. | 16:12 |
| 8 | BY MR. KNIGHT: | 16:12 |
| 9 |   Q.   Are you refusing to answer my question, | 16:12 |
| 10 | Dr. Tuckerman? | 16:12 |
| 11 |   A.   I'm not refusing to answer the question.  I | 16:12 |
| 12 | would say that one could potentially take that | 16:13 |
| 13 | position.  If you were going to take that position, | 16:13 |
| 14 | which was not taken in Dr. Pokharna's report, I | 16:13 |
| 15 | would reserve the right to challenge the reasoning, | 16:13 |
| 16 | if -- if necessary. | 16:13 |
| 17 |      I just don't have the, shall we say, the | 16:13 |
| 18 | cognitive ability to work through all the issues of | 16:13 |
| 19 | taking that position because it is not the position | 16:13 |
| 20 | that Dr. Pokharna took.  So I won't rule out that | 16:13 |
| 21 | you could take a position like that.  And if you'd | 16:13 |
| 22 | like to take a position like that, then we can, you | 16:13 |
| 23 | know, do a follow-up filing or something, I guess is | 16:13 |
| 24 | the way I'd answer the question. | 16:14 |
| 25 |      MR. KNIGHT:  Okay.  I think it's a good time | 16:14 |

Page 176

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1       Q.   Okay.  So in claims 1, 12 and 14, do those        16:35

2    claims expressly recite that the claimed plate           16:35

3    has compliant surfaces?                                   16:35

4       A.   Let me --                                         16:35

5            DEPOSITION REPORTER:  Excuse me.  Mr.             16:35

6    Knight, can I have that question again?                   16:35

7            "So in claims 1, 12 and 14..."                    16:35

8    BY MR. KNIGHT:                                             16:35

9       Q.   Yeah.  Do claims 1, 12 and 14 of the '330        16:35

10   patent expressly recite that the claim plate has          16:35

11   compliant surfaces?                                       16:35

12      A.   Well, I mean, I just did a search on the PDF 16:35

13   for the word "compliant" and found it nowhere in the      16:36

14   patent, so I would say no.                                16:36

15      Q.   Okay.  And do claims 1, 12 and 14 of the         16:36

16   '330 patent expressly recite the material of the          16:36

17   claimed plate?                                            16:36

18      A.   No.  It's -- they're silent on the issue of 16:36

19   material.                                                 16:36

20      Q.   Okay.  Dr. Tuckerman, in preparation for         16:36

21   your noninfringement report, did you review the           16:37

22   PTAB's final written decision in the IPR of the '266 16:37

23   patent?                                                   16:37

24      A.   You know, I reviewed it a long time ago.         16:37

25      Q.   Okay.                                             16:37

Page 182

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1      A.    Yeah.

2      Q.    But you did review it; is that correct?     16:37

3      A.    Well, let me -- let me make sure we are     16:37

4   talking about the right thing.  Can I see my -- let   16:37

5   me look at the Materials Considered list.            16:37

6      Q.    It should be there.  And just for your       16:37

7   reference, the IPR of the '266 patent is             16:37

8   IPR2020-00825.                                       16:37

9      A.    My Materials Considered exhibit is which    16:38

10  one, if you can help me out?                         16:38

11     Q.    Yeah.  Let me pull up the list.  It should   16:38

12  be Exhibit 276.                                      16:38

13     A.    Yes.  Okay.  All right.  And the document    16:38

14  you're referring to is?                              16:38

15     Q.    It's the final written decision in          16:38

16  IPR2020-00825.                                        16:38

17     A.    Yes.  That is in Materials Considered.      16:38

18     Q.    Okay.  Now, Dr. Tuckerman, is it your       16:38

19  understanding from the PTAB decision that they       16:38

20  construed the term "plate" and decided there was no  16:38

21  support and specification for a plate made of        16:38

22  compliant material?                                  16:38

23         MS. BHATTACHARYYA:  Objection.  Calls for a   16:39

24  legal conclusion.                                    16:39

25         THE WITNESS:  Just one moment, please.        16:39

Veritext Legal Solutions
866 299-5127

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    BY MR. KNIGHT:

2         Q.    Uh-huh.

3         A.    So I think, you know, in paragraph 52 of my    16:41

4    noninfringement report --                                  16:41

5         Q.    Uh-huh.                                          16:41

6         A.    -- I state:                                      16:41

7                "In fact, in the IPR filed by Asetek           16:41

8                against CoolIT's '266 patent..."               16:41

9          By the way, is that the patent you had me            16:41

10   pull up, or did you have me pull up a different one?       16:41

11        Q.    I had you pull up the '330 patent, but the      16:41

12   '266 patent and the '330 patent both refer to a            16:41

13   plate.                                                     16:41

14        A.    Right.  Okay.  So in...  But in regard to       16:41

15   the '266 patent:                                           16:41

16               "The PTAB agreed with Asetek that the          16:41

17               2007 provisional does not contain a            16:41

18               disclosure that would have conveyed            16:41

19               to a person of ordinary skill in the           16:41

20               art that the inventor had possession           16:41

21               of a manifold body defining a pair             16:41

22               of compliant surfaces (PTAB                    16:42

23               IPR2020-00825 final written decision           16:42

24               at 23)."  [As read.]                           16:42

25               So that is the document you're referring to?   16:42

Page 184

| | | |
|---|---|---|
| 1 | Q. Uh-huh. | |
| 2 | A. "PTAB also found that the inventor | 16:42 |
| 3 | substitution of the phrase 'rigid | 16:42 |
| 4 | plate' for the phrase 'plate 240' | 16:42 |
| 5 | in the '266 patent is objective | 16:42 |
| 6 | intrinsic evidence that, as of 2012, | 16:42 |
| 7 | the inventor considered plate 240, | 16:42 |
| 8 | which he was contrasting with | 16:42 |
| 9 | compliant insert 334, to be made of | 16:42 |
| 10 | a rigid rather than compliant | 16:42 |
| 11 | material.  As the PTAB found the term | 16:42 |
| 12 | 'plate' in the '330 patent claims, as | 16:42 |
| 13 | well as the '284 patent claims in | 16:42 |
| 14 | claims 13 and 15 of the '266 patent" -- | 16:42 |
| 15 | [As read.] | |
| 16 | Remind me again, was that the one we were | 16:43 |
| 17 | looking at or -- | 16:43 |
| 18 | Q.  We were looking at the '330 patent, but | 16:43 |
| 19 | again, both the '330 patent and the '266 patent | 16:43 |
| 20 | include the term "plate." | 16:43 |
| 21 | A.  Right.  Okay. | 16:43 |
| 22 | "The '330 patent claim cannot be | 16:43 |
| 23 | construed to include both a rigid | 16:43 |
| 24 | plate as well as a compliant gasket | 16:43 |
| 25 | manifold because there is no written | 16:43 |

Page 185

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1            description support for a compliant         16:43

 2            manifold body in the 2007 provisional        16:43

 3            or the '330 patent."  [As read.]             16:43

 4            Does that answer the question or...          16:43

 5       Q.   I understand that you recited for me what is 16:43

 6   in your report, but I don't think it answers my       16:43

 7   question.  So I will ask my question again.           16:43

 8            Is it your understanding that -- from the    16:43

 9   PTAB decision, that they construed the term "plate"   16:43

10   and then they decided there was no support in the     16:43

11   specification for a plate made of compliant           16:43

12   material?                                             16:43

13            MS. BHATTACHARYYA:  Objection.  Asked and    16:43

14   answered.                                             16:43

15            THE WITNESS:  I have -- I mean, I quoted you 16:44

16   verbatim from the report.  It --                      16:44

17   BY MR. KNIGHT:                                        16:44

18       Q.   I understand that, Dr. Tuckerman, and        16:44

19   then you --                                           16:44

20       A.   I don't -- I will put it this way.  I don't  16:44

21   see support for a compliant plate, you know, in -- I  16:44

22   mean, I guess I'm not sure where -- how to answer     16:44

23   it.  I thought it kind of -- the excerpts here, I     16:44

24   thought, speak for themselves.  Or is -- is there a   16:44

25   different -- does your question mean something        16:45
```

Page 186

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1   different than what I just said, and if so, what do    16:45
 2   you see --                                             16:45
 3        Q.   Yeah.  So I'm not asking you to read your    16:45
 4   report.  I'm actually asking you a question about      16:45
 5   whether your understanding is that the PTAB in the     16:45
 6   final written description construed the term           16:45
 7   "plate."                                               16:45
 8           MS. BHATTACHARYYA:  Objection.  Vague.         16:45
 9   Asked and answered.  Calls for a legal conclusion.     16:45
10           THE WITNESS:  I would have to re-read that     16:45
11   report in detail to see if they construed the term     16:45
12   "plate."  Do you want me to take a look through the    16:45
13   report or --                                           16:45
14   BY MR. KNIGHT:                                         16:45
15        Q.   I don't.                                     16:45
16        A.   Okay.                                        16:45
17        Q.   Now, but just to be clear, Dr. Tuckerman,    16:45
18   you considered the final written decision when         16:45
19   preparing the noninfringement report; is that          16:45
20   correct?                                               16:45
21        A.   Yes, as indicated by excerpts from it.       16:45
22        Q.   Okay.  And did you read the final written    16:46
23   decision in IPR2020-00825 from beginning to end in     16:46
24   preparation for your noninfringement report?           16:46
25        A.   I have read -- object -- sorry.  You have an 16:46
```

Page 187

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | objection, Arpita? | 16:46 |
| 2 | MS. BHATTACHARYYA:  No.  Just go ahead and | 16:46 |
| 3 | answer. | 16:46 |
| 4 | THE WITNESS:  Okay.  I have read thousands | 16:46 |
| 5 | of pages of material that were given to me, and that | 16:46 |
| 6 | report was included in it.  So at one time, it was | 16:46 |
| 7 | read through, you know, in the limited time there | 16:46 |
| 8 | was to prepare this rebuttal, the -- I can't say for | 16:46 |
| 9 | sure that I read the whole report through again. | 16:46 |
| 10 | I think that having a -- you know, having | 16:47 |
| 11 | material -- you know, I mean, if I give a textbook, | 16:47 |
| 12 | say, as Materials Considered that doesn't mean | 16:47 |
| 13 | everything in the textbook is relevant.  So what's | 16:47 |
| 14 | excerpted here are, in my view, relevant passages. | 16:47 |
| 15 | BY MR. KNIGHT: | 16:47 |
| 16 | Q.  So sitting here today, you can't tell me | 16:47 |
| 17 | whether the PTAB final written decision provides a | 16:47 |
| 18 | construction for the term "plate" or not, can you? | 16:47 |
| 19 | MS. BHATTACHARYYA:  Objection.  Same | 16:47 |
| 20 | objections.  Asked and answered multiple times now. | 16:47 |
| 21 | THE WITNESS:  Without an opportunity to | 16:47 |
| 22 | refresh my memory by reading the report in its | 16:47 |
| 23 | entirety, I cannot answer that affirmatively. | 16:47 |
| 24 | BY MR. KNIGHT: | 16:47 |
| 25 | Q.  Okay.  Okay.  All right.  In your invalidity | 16:47 |

Page 188

| | | |
|---|---|---|
| 1 | report, you map the claimed plate to several prior | 16:48 |
| 2 | art references; is that correct? | 16:48 |
| 3 | A.   Yeah, I -- | 16:48 |
| 4 | Q.   Okay.  Great.  It is just to confirm.  It is | 16:48 |
| 5 | not a trick question.  I'm just laying a foundation. | 16:48 |
| 6 | A.   That wasn't a fair -- | 16:48 |
| 7 | MR. KNIGHT:  Yeah.  Okay. | 16:48 |
| 8 | I would like to introduce into the record | 16:48 |
| 9 | what I will designate as Exhibit 0281. | 16:48 |
| 10 | (Exhibit 281 marked for identification.) | 16:48 |
| 11 | BY MR. KNIGHT: | 16:48 |
| 12 | Q.   Exhibit 0281 is United States Patent | 16:48 |
| 13 | Application Publication 2006/0096738 to Kang. | 16:48 |
| 14 | MS. BHATTACHARYYA:  I'm not seeing the | 16:49 |
| 15 | exhibit yet. | 16:49 |
| 16 | MR. KNIGHT:  Okay.  I just introduced the | 16:49 |
| 17 | exhibit.  Can you let me know if you see it? | 16:49 |
| 18 | THE WITNESS:  What is the number of the | 16:49 |
| 19 | exhibit? | 16:49 |
| 20 | MR. KNIGHT:  It should be exhibit 0281. | 16:49 |
| 21 | THE WITNESS:  Okay.  I got it. | 16:49 |
| 22 | BY MR. KNIGHT: | 16:49 |
| 23 | Q.   Great.  If you can open that up for me. | 16:49 |
| 24 | A.   It's open. | 16:49 |
| 25 | Q.   Great.  Okay.  Can you go to Figure 2 in | 16:49 |

Page 189

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1    outlet region and the second outlet region through    17:49
 2    that white connected region below, both outlet        17:49
 3    regions?                                              17:49
 4         A.    No.  It's certainly not supposed to, no.   17:49
 5         Q.    So it can't is what you're saying?         17:49
 6         A.    No.                                        17:50
 7         Q.    Okay.                                      17:50
 8         A.    No.                                        17:50
 9         Q.    Okay.                                      17:50
10         A.    I mean, there's a -- this basically -- this 17:50
11    central thing makes -- makes a seal between the two.  17:50
12         Q.    So -- okay.                                17:50
13         A.    You can't -- you can't go connect between. 17:50
14         Q.    So you're saying that the seal isolates one 17:50
15    of the outlet passages from the other?               17:50
16         A.    Yeah.  I mean, until you -- they do -- I   17:50
17    mean, obviously, the flows have to -- they're coming  17:50
18    together in this -- in this upper volume.  There's    17:50
19    some open space between this assembly and here        17:50
20    (indicating), and they would converge at this hole    17:50
21    here.  So that's where the flows would -- would       17:51
22    recombine and they're actually, you know, going --    17:51
23    going into the pump in this case.                     17:51
24         Q.    Uh-huh.  And is that -- that point where   17:51
25    they recombine, is that before the outlet of the      17:51
```

Page 211

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1   housing?                                          17:51

 2       A.   I'm sorry, I didn't hear the question.   17:51

 3       Q.   The point that you -- the area that you  17:51

 4   pointed to where the flows recombine, is that before  17:51

 5   the outlet of the housing, or is it after?         17:51

 6            MS. BHATTACHARYYA:  Objection.           17:51

 7   Mischaracterizes -- objection.  Mischaracterizes   17:51

 8   prior testimony.  Mischaracterizes Dr. Tuckerman's  17:51

 9   noninfringement report.                            17:51

10            THE WITNESS:  Well, so in Dr. Pokharna's  17:52

11   claim construction, it says in my report:          17:52

12            "He does not indicate the outlet port    17:52

13            and/or the passageway leading out of      17:52

14            the fluid heat exchanger housing (to      17:52

15            the pump or radiator), as part of the     17:52

16            outlet passage" --

17            (Clarification requested by Reporter.)

18            THE WITNESS:  Oh, "to the" -- where did I

19   stop?

20            "...(to the pump or radiator), as         17:52

21            part of the outlet passage.               17:53

22            Therefore, under Dr. Pokharna's own       17:53

23            mappings, Asetek's Gen 4, 5, 6 and 7      17:53

24            products do not meet the limitation,      17:53

25            the two subflows recombine in the outlet  17:53
```

Page  212

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1           passage."  [As read.]                    17:53

2           So in his mapping, which -- you know, which  17:53

3   is what I'm using.                               17:53

4   BY MR. KNIGHT:                                   17:53

5      Q.   I understand that you have recited to me  17:53

6   what you believe his mapping to be.  But I'm asking  17:53

7   in your opinion.  So I will repeat my question just  17:53

8   to get your opinion on this.                     17:53

9           Give me a moment.  So the area that you  17:53

10  pointed to where the flows recombine, is that before  17:53

11  the outlet of the housing, or is it after?       17:53

12          MS. BHATTACHARYYA:  Objection.           17:53

13  Mischaracterizes prior testimony and Dr. Tuckerman's  17:53

14  noninfringement report.                          17:53

15          THE WITNESS:  Let's go to the claim chart.  17:53

16  BY MR. KNIGHT:                                   17:54

17     Q.   Dr. Tuckerman, are you unable to answer that  17:54

18  question without referencing your report?        17:54

19     A.   I'm kind of tired and so I, you know, want  17:54

20  to make sure I just am, you know, not just spewing  17:54

21  random words out of tiredness.  And I think it's  17:54

22  appropriate, given that I am responding to Pokharna,  17:54

23  to put up the claim chart.  So you could save time  17:54

24  if you could identify the relevant claim chart.  17:54

25     Q.   What claim chart are you referring to,  17:54

Veritext Legal Solutions
866 299-5127

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1    Dr. Tuckerman?                                    17:54

 2         A.   Not claim chart.  Noninfringement exhibit is  17:54

 3    what I meant.  Well --                            17:55

 4         Q.   I'm not following, Dr. Tuckerman.       17:55

 5         A.   Hang on just a moment.                  17:55

 6         Q.   Uh-huh.

 7         A.   Wait a minute.  I'm at Pokharna's charting,  17:55

 8    but I mean, I don't -- I guess I don't really need  17:55

 9    that.                                             17:55

10         Q.   Yeah.  You have the device in front of you;  17:55

11    correct?                                          17:55

12         A.   I do have the device in front of me.    17:55

13         Q.   And you pointed out where the two flows can  17:55

14    recombine; is that correct?                       17:55

15         A.   Yes, at this hole (indicating).         17:55

16         Q.   Right.  And my question is just:  Do those  17:55

17    two flows recombine before the housing outlet or  17:55

18    after the housing outlet?                         17:56

19              MS. BHATTACHARYYA:  Objection.          17:56

20    Mischaracterizes prior testimony.  Mischaracterizes  17:56

21    the CoolIT's patent claims.  Mischaracterizes     17:56

22    Dr. Pokharna's infringement report.               17:56

23              THE WITNESS:  Yeah.  I mean, I think I need  17:56

24    Dr. Pokharna's infringement report so I can -- I  17:56

25    want to make sure I'm being consistent with his   17:56
```

Page 214

| | | |
|---|---|---|
| 1 | tests to form your opinion with respect to the | 18:18 |
| 2 | outlet flow passage? | 18:18 |
| 3 | MS. BHATTACHARYYA:  Objection.  Compound. | 18:18 |
| 4 | BY MR. KNIGHT: | 18:19 |
| 5 | Q.   Let me rephrase.  With respect to the Gen 5 | 18:19 |
| 6 | product, did you perform any tests to form your | 18:19 |
| 7 | opinion regarding the outlet flow passage? | 18:19 |
| 8 | A.   I didn't -- | 18:19 |
| 9 | MS. BHATTACHARYYA:  Objection.  Outside the | 18:19 |
| 10 | scope of the report. | 18:19 |
| 11 | BY MR. KNIGHT: | 18:19 |
| 12 | Q.   Okay.  With respect to the Gen 6 accused | 18:19 |
| 13 | product, did you perform any tests to form your | 18:19 |
| 14 | opinion regarding the outlet flow passage? | 18:19 |
| 15 | A.   I did not. | 18:19 |
| 16 | MS. BHATTACHARYYA:  Same objection. | 18:19 |
| 17 | BY MR. KNIGHT: | 18:19 |
| 18 | Q.   And with respect to Gen 7 accused device, | 18:19 |
| 19 | did you perform any tests to form your opinion with | 18:19 |
| 20 | respect to the outlet flow passage? | 18:19 |
| 21 | MS. BHATTACHARYYA:  Same objection. | 18:19 |
| 22 | THE WITNESS:  I did not feel it was | 18:19 |
| 23 | necessary to render this opinion. | 18:19 |
| 24 | BY MR. KNIGHT: | 18:19 |
| 25 | Q.   Okay.  Now, for the Gen 5 through 7 | 18:19 |

Page  228

1    products, do the flows recombine before the fluid        18:19

2    exits the outlet port?                                    18:20

3              MS. BHATTACHARYYA:  Objection.  Compound.       18:20

4              THE WITNESS:  They recombine at the outlet      18:20

5    port.                                                     18:20

6              MR. KNIGHT:  Okay.  One moment.                 18:20

7    BY MR. KNIGHT:                                            18:20

8       Q.   Is it fair to say that they recombine at a        18:20

9    two-dimensional surface before the outlet port?          18:20

10             MS. BHATTACHARYYA:  Objection.                  18:20

11   Mischaracterizes Dr. Pokharna's report and               18:20

12   Dr. Tuckerman's report.                                  18:20

13             THE WITNESS:  I have a real problem with the    18:21

14   meaning of that question.  It's not a precise            18:21

15   question in technical terminology so I --                18:21

16   BY MR. KNIGHT:                                            18:21

17      Q.   What don't you understand about that              18:21

18   question?                                                 18:21

19      A.   Repeat the question again.                        18:21

20      Q.   Sure.  My question originally was:  Is it          18:21

21   fair to say that the two subflows recombine at a         18:21

22   two-dimensional surface before the outlet port?          18:21

23             MS. BHATTACHARYYA:  Objection.                  18:21

24   Mischaracterizes Dr. Pokharna's report and               18:21

25   Dr. Tuckerman's noninfringement report.                  18:21

                                          Page  229

1          THE WITNESS:  Well, that's not something I      18:21

2    took a position on, nor did Pokharna, and it is --     18:22

3    I'm not even sure a meaningful question in the         18:22

4    context of fluid mechanics.  You --                    18:22

5    BY MR. KNIGHT:

6         Q.   I am asking you the question now though,     18:22

7    Dr. Tuckerman.                                         18:22

8         A.   The what?                                    18:22

9         Q.   I'm asking you the question now though,      18:22

10   Dr. Tuckerman.                                         18:22

11        A.   Yeah.  And I'm saying, technically, I        18:22

12   consider that not a question that makes sense.         18:22

13        Q.   Right.  And I have asked you what about that  18:22

14   question doesn't make sense?                           18:22

15          MS. BHATTACHARYYA:  Dustin, do you want to      18:22

16   repeat the question?                                   18:22

17          MR. KNIGHT:  Yeah.  I can do that.              18:22

18   BY MR. KNIGHT:                                         18:22

19        Q.   So my question was originally, was it -- is  18:22

20   it fair to say that the two subflows recombine at a    18:22

21   point that is represented by a two-dimensional         18:22

22   surface before the outlet port?                        18:23

23          MS. BHATTACHARYYA:  Objection.                  18:23

24   Mischaracterizes Dr. Pokharna's report and             18:23

25   Dr. Tuckerman's noninfringement report.                18:23

Page 230

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | BY MR. KNIGHT: | 18:23 |
| 2 | Q.   I can rephrase it for you a little bit. | 18:23 |
| 3 | For the Gen 5 through 7 products, do the two | 18:23 |
| 4 | subflows recombine at a point before they enter the | 18:23 |
| 5 | hole of the outlet port? | 18:23 |
| 6 | MS. BHATTACHARYYA:  Objection.  Compound. | 18:23 |
| 7 | Objection.  Mischaracterizes Dr. Pokharna's report | 18:23 |
| 8 | and Dr. Tuckerman's noninfringement report. | 18:23 |
| 9 | THE WITNESS:  Let me...  Just a moment. | 18:23 |
| 10 | MS. BHATTACHARYYA:  Soseh, while | 18:24 |
| 11 | Dr. Tuckerman is looking through his report, can you | 18:24 |
| 12 | give me a read on the time? | 18:24 |
| 13 | THE VIDEOGRAPHER:  Yeah.  Just one second. | 18:24 |
| 14 | So we had 42 minutes left and we have been | 18:24 |
| 15 | on the record for 41 minutes. | 18:24 |
| 16 | MS. BHATTACHARYYA:  Thank you, Soseh. | 18:25 |
| 17 | THE WITNESS:  Okay.  Well, I'm going to | 18:26 |
| 18 | quote from a section from the report. | 18:26 |
| 19 | "In each generation of Asetek product, | 18:26 |
| 20 | the gaskets/'seal' separates the flow" -- | 18:26 |
| 21 | this is paragraph 65 of my rebuttal -- | 18:26 |
| 22 | "...the gaskets/'seal' separates the | 18:26 |
| 23 | flow paths of cooling liquid from the | 18:26 |
| 24 | first and second 'outlet regions' to | 18:26 |
| 25 | the outlet port, such so there is no | 18:26 |

Page 231

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | |
|---|---|
| 1 | recombination/mixing of the cooling   18:26 |
| 2 | liquid received by the first and |
| 3 | second outlet regions.  In particular,   18:26 |
| 4 | Asetek's Generation 5 and 7 products,   18:26 |
| 5 | cooling liquid received by the 'second   18:26 |
| 6 | outlet region' flows directly to the   18:26 |
| 7 | outlet port, and cooling liquid |
| 8 | received by the 'first outlet region' |
| 9 | takes a separate, longer path to the |
| 10 | outlet port."   18:27 |
| 11 | That was the picture I showed where it went   18:27 |
| 12 | like that (indicating).   18:27 |
| 13 | "Therefore, the two sub flows do not   18:27 |
| 14 | recombine, nor is there a single   18:27 |
| 15 | outlet passage (per Dr. Pokharna's   18:27 |
| 16 | mapping), in which the two sub flows   18:27 |
| 17 | recombine before reaching the outlet   18:27 |
| 18 | port."   18:27 |
| 19 | BY MR. KNIGHT:   18:27 |
| 20 | Q.   Dr. Tuckerman, my question didn't ask you to 18:27 |
| 21 | read back your report to me.  I would ask you -- I   18:27 |
| 22 | would ask you to answer my question.  Do the two   18:27 |
| 23 | flows recombine at a point before they enter the   18:27 |
| 24 | hole of the outlet for the Gen 5 through 7 products?  18:27 |
| 25 | MS. BHATTACHARYYA:  Dr. Tuckerman, I'm   18:27 |

Page  232

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | instructing you not to answer any more questions. | 18:27 |
| 2 | Counsel had seven hours of deposition time with you | 18:27 |
| 3 | on the record and seven hours is up, so this | 18:27 |
| 4 | deposition, Counsel, cross-examination is over. | 18:27 |
| 5 | MR. KNIGHT:  Just for the record, I am | 18:27 |
| 6 | keeping Dr. Tuckerman's deposition open because I | 18:27 |
| 7 | was not able to finish my questioning due to the | 18:28 |
| 8 | amount of time Dr. Tuckerman took in answering many | 18:28 |
| 9 | of my questions and his general lack of preparedness | 18:28 |
| 10 | for this deposition, as well as the numerous | 18:28 |
| 11 | speaking objections and interruptions by Asetek's | 18:28 |
| 12 | counsel throughout the day.  I reserve my right to | 18:28 |
| 13 | move to compel for additional time to complete | 18:28 |
| 14 | Dr. Tuckerman's deposition. | 18:28 |
| 15 | MS. BHATTACHARYYA:  I disagree. | 18:28 |
| 16 | Dr. Tuckerman answered all your questions | 18:28 |
| 17 | completely, truthfully and to the best of his | 18:28 |
| 18 | ability.  You did not use your seven hours of | 18:28 |
| 19 | deposition time appropriately.  You wasted a lot of | 18:28 |
| 20 | time asking improper and irrelevant questions and | 18:28 |
| 21 | asking incomplete and improper hypotheticals. | 18:28 |
| 22 | Dr. Tuckerman tried -- did his best to answer to the | 18:28 |
| 23 | best of his ability.  Your seven hours is up.  You | 18:28 |
| 24 | should have used your time better. | 18:28 |
| 25 | MR. KNIGHT:  I respectfully disagree. | 18:28 |

Veritext Legal Solutions
866 299-5127

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1

2

3

4

5          I, David B. Tuckerman, do hereby declare under

6     penalty of perjury that I have read the foregoing

7     transcript; that I have made corrections as appear

8     noted, in ink, initialed by me, or attached hereto; that

9     my testimony as contained herein, as corrected, is true

10    and correct.

11          EXECUTED this ____ day of _____,

12    2022, at _____, _ _____.

13                (City)                    (State)

14

15

16

                    _____

17                  David B. Tuckerman

18

19

20

21

22

23

24

25

                                            Page  235

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1          I, JANIS JENNINGS, CSR No. 3942, Certified

2     Shorthand Reporter, certify:

3          That the foregoing proceedings were taken

4     before me at the time and place therein set forth, at

5     which time the witness was duly sworn by me;

6          That the testimony of the witness, the

7     questions propounded, and all objections and statements

8     made at the time of the examination were recorded

9     stenographically by me and were thereafter transcribed;

10         That the foregoing pages contain a full, true

11    and accurate record of all proceedings and testimony.

12         Pursuant to F.R.C.P. 30(e)(2) before

13    completion of the proceedings, review of the transcript

14    [X] was [ ] was not requested.

15         I further certify that I am not a relative or

16    employee of any attorney of the parties, nor financially

17    interested in the action.

18         I declare under penalty of perjury under the

19    laws of California that the foregoing is true and

20    correct.

21         Dated this 3rd day of January 2022.

22

23

24    JANIS JENNINGS, CSR NO. 3942

25    CLR, CCRR

Page 236

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1
2
3
4
5          I, David B. Tuckerman, do hereby declare under
6     penalty of perjury that I have read the foregoing
7     transcript; that I have made corrections as appear
8     noted, in ink, initialed by me, or attached hereto; that
9     my testimony as contained herein, as corrected, is true
10    and correct.
11          EXECUTED this  1st  day of ___February___,
12    2022, at ____Lake Stevens____, _ Washington .
13                    (City)                    (State)
14
15
16
                    _David B Tuckerman_____
17                    David B. Tuckerman
18
19
20
21
22
23
24
25
                                        Page 235

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
1    RE: ASETEK DANMARK A/S VS. COOLIT SYSTEMS, INC.

2    DAVID TUCKERMAN, PH.D., JOB NO. 4997336

3                   E R R A T A   S H E E T

4    PAGE 35   LINE 5-6 CHANGE "each cold plate is to microchannel

5    arrays" to "each cold plate has two microchannel arrays."

6    REASON  Transcription error

7    PAGE 232  LINE 4  CHANGE "Asetek's" to "in Asetek's"

8    _____

9    REASON  Transcription error

10   PAGE_____ LINE_____ CHANGE_____

11   _____

12   REASON_____

13   PAGE_____ LINE_____ CHANGE_____

14   _____

15   REASON_____

16   PAGE_____ LINE_____ CHANGE_____

17   _____

18   REASON_____

19   PAGE_____ LINE_____ CHANGE_____

20   _____

21   REASON_____

22

23   David B. Tuckerman              1 February 2022

24   WITNESS                         Date

25
                                        Page 239
```