Robert F. McCauley (SBN 162056)
robert.mccauley@finnegan.com
Arpita Bhattacharyya (SBN 316454)
arpita.bhattacharyya@finnegan.com
Jeffrey D. Smyth (SBN 280665)
jeffrey.smyth@finnegan.com
**FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, LLP**
3300 Hillview Avenue
Palo Alto, California 94304
Telephone:     (650) 849-6600
Facsimile:     (650) 849-6666

Attorneys for Plaintiff and Counterdefendant
ASETEK DANMARK A/S and
Counterdefendant ASETEK USA, INC.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| ASETEK DANMARK A/S,<br><br>    Plaintiff and Counterdefendant,<br><br>ASETEK USA, INC.,<br><br>    Counterdefendant,<br><br>    v.<br><br>COOLIT SYSTEMS, INC.,<br><br>    Defendant and Counterclaimant,<br><br>COOLIT SYSTEMS USA INC., COOLIT SYSTEMS ASIA PACIFIC LIMITED, COOLIT SYSTEMS (SHENZHEN) CO., LTD.,<br><br>    Defendants,<br><br>CORSAIR GAMING, INC. and CORSAIR MEMORY, INC.,<br><br>    Defendants. | CASE NO. 3:19-cv-00410-EMC<br><br>**ASETEK DANMARK A/S'S NOTICE OF MOTION AND MOTION TO EXCLUDE CERTAIN OPINIONS OF DR. JOHN P. ABRAHAM UNDER *DAUBERT* FOR MISCONSTRUING AND MISAPPLYING THE PARTIES' STIPULATED CLAIM CONSTRUCTION**<br><br>Date:       May 5, 2022<br>Time:       1:30 PM<br>Location:   Courtroom 5, 17th Floor<br>Judge:      Hon. Edward M. Chen |

**NOTICE OF MOTION**

TO ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on May 5, 2022, at 1:30 p.m. in Courtroom 5, located on the 17th Floor of the above-entitled court at 450 Golden Gate Avenue, San Francisco, California, or a soon thereafter as the matter may be heard before Honorable Edward M. Chen, Plaintiff and Counterdefendant Asetek Danmark A/S ("Asetek") will and hereby does move to exclude certain opinions of Dr. John P. Abraham under *Daubert* for misconstruing and misapplying the parties' stipulated claim construction.

This Motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Arpita Bhattacharyya and the exhibits thereto, the [Proposed] Order filed concurrently herewith, all other papers or pleadings in this action, evidence and argument that the parties may present before or at the hearing on this matter, and any other matters of which this Court may take judicial notice.

i

Asetek's Mot. to Exclude Certain Opinions of Dr. J. Abraham for Misconstruing the Court's Claim Construction
Case No. 3:19-cv-00410-EMC

**TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................................1

II. BACKGROUND ....................................................................................................................1

    A. The Asetek Patents........................................................................................................1

    B. The Parties' Stipulations to the Construction of "Reservoir"...................................4

    C. Dr. Abraham's Report Advances His Opinion on What He Thinks the "Reservoir" "Actually Means" ....................................................................................4

    D. Dr. Abraham's Opinion that a Cold Plate has a Receptacle ....................................6

    E. Dr. Abraham's Non-Infringement Argument ............................................................7

III. ARGUMENT ..........................................................................................................................7

    A. Expert Testimony that Conflicts With the Parties' Stipulated Claim Construction Should Be Excluded Under *Daubert* Principles...................................7

    B. Dr. Abraham's Opinions Are Inconsistent with the Parties' Stipulated Construction of "Reservoir" and Should be Excluded as Unreliable ......................9

        1. The parties' stipulated construction of "reservoir" does not preclude the single dual-chambered reservoir from having receptacles or chambers in addition to the recited upper and lower chambers...................9

        2. Dr. Abraham's misinterpretation of "reservoir" excludes preferred embodiments, which cannot be the correct construction ...........................11

        3. Dr. Abraham's distorted and unreliable reinterpretation of "reservoir" contradicts CoolIT's arguments at the PTAB ...........................................12

IV. CONCLUSION.....................................................................................................................13

ii

ASETEK'S MOT. TO EXCLUDE CERTAIN OPINIONS OF DR. J. ABRAHAM
FOR MISCONSTRUING THE COURT'S CLAIM CONSTRUCTION
CASE NO. 3:19-CV-00410-EMC

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Accent Packaging, Inc. v. Leggett & Platt, Inc.*,
   707 F.3d 1318 (Fed. Cir. 2013) ...................................................................................................11

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993) ............................................................................................................ *passim*

*EMC Corp. v. Pure Storage, Inc.*,
   154 F. Supp. 3d 81 (D. Del. 2016) ........................................................................................8, 9, 10

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
   575 F.3d 1312 (Fed. Cir. 2009) ...........................................................................................8, 9, 10

*Genentech, Inc. v. Chiron Corp.*,
   112 F.3d 495 (Fed. Cir. 1997) .......................................................................................................9

*Gillette Co. v. Energizer Holdings, Inc.*,
   405 F.3d 1367 (Fed. Cir. 2005) ................................................................................................9, 10

*MediaTek Inc. v. Freescale Semiconductor, Inc.*,
   No. 11-cv-5341 YGR, 2014 WL 971765 (N.D. Cal. Mar. 5, 2014) ...............................................8

*PersonalWeb Techs. LLC v. Int'l Bus. Machines Corp.*,
   No. 16-CV-01266-EJD, 2017 WL 8186294 (N.D. Cal. July 25, 2017) .........................................8

*Verizon Servs. Corp. v. Vonage Holdings Corp.*,
   503 F.3d 1295 (Fed. Cir. 2007) ...................................................................................................11

iii

ASETEK'S MOT. TO EXCLUDE CERTAIN OPINIONS OF DR. J. ABRAHAM
FOR MISCONSTRUING THE COURT'S CLAIM CONSTRUCTION
CASE NO. 3:19-CV-00410-EMC

## I. INTRODUCTION

Asetek requests that this Court exercise its gatekeeping function under *Daubert* to preclude CoolIT's expert, Dr. John P. Abraham, from improperly advancing his own claim construction for the claim term "reservoir," which the parties stipulated to as "single receptacle defining a fluid flow path." Dr. Abraham's attempts to argue his own claim construction violates precedent, conflicts with the parties' stipulated claim construction, improperly adds limitations to Asetek's claims, usurps the Court's role in construing disputed claim terms, and would result in jury confusion. Dr. Abraham's personal spin on "reservoir" is particularly erroneous because it would exclude preferred embodiments in Asetek's patents.

Dr. Abraham's personal constructions of "reservoir," and his opinions based thereon in ¶¶53-55 and 85-89 of the Rebuttal Report of Dr. John P. Abraham Regarding Infringement of Asetek Danmark A/S's Asserted Patent Claims, dated December 8, 2021 (Exhibit C), are improper, fail to meet the basic standards under *Daubert* and Federal Rule of Evidence 702, and should be excluded by the Court.

## II. BACKGROUND

### A. The Asetek Patents

André Eriksen, CEO of Asetek, invented pioneering liquid cooling technology that created the now thriving market for liquid cooling devices. Prior art liquid cooling systems were often bulky and consisted of "many components," which increased the total installation time, size, and risk of leakage. Ex. A ['362 patent], 1:41-49. An exemplary prior art liquid cooling system is shown in Figure 3 of the '362 patent (depicted below).



*Id.* at Fig. 3.

1

ASETEK'S MOT. TO EXCLUDE CERTAIN OPINIONS OF DR. J. ABRAHAM FOR MISCONSTRUING THE COURT'S CLAIM CONSTRUCTION
CASE NO. 3:19-CV-00410-EMC

Asetek overcame the problems of early generation liquid cooling systems with its inventive "small and compact" design, which is "more efficient than existing air-cooling arrangements," "can be produced at a low cost enabling high production volumes," is "easy-to-use and implement," and "requires a low level of maintenance or no maintenance at all." *Id.* at 1:53-62. Asetek's claimed invention has, among other things, an integrated pump unit that combines the pump, the "reservoir" (e.g., reservoir 14), and the heat exchange interface (aka a cold plate) into a single unit, which are connected by tubing to an external radiator (e.g., heat radiator 11), as shown in Figure 8 of the '362 patent, depicted below:



FIG. 8

*Id.* at 13:28-41; Fig. 8. This general configuration is disclosed and claimed in Asetek's liquid cooling patents, including the presently asserted '362 patent, and the other Asetek patents previously asserted in this case (including the '355 patent, '354 patent, '601 patent, and '196 patent attached as Exhibits A-E to Asetek's Second Amended Complaint (Dkt. 228)).

Each of the Asetek patents have claims that recite a "reservoir" that comprises an "upper" or "pump chamber," and a "lower" or "thermal exchange chamber." Bhattacharyya Decl., ¶7. Asetek's patents also include figures that illustrate preferred embodiments of the claimed invention. For

2

ASETEK'S MOT. TO EXCLUDE CERTAIN OPINIONS OF DR. J. ABRAHAM
FOR MISCONSTRUING THE COURT'S CLAIM CONSTRUCTION
CASE NO. 3:19-CV-00410-EMC

example, Asetek's '196 patent identified the product depicted in Figures 17 and 20 as a preferred embodiment.[1]

FIG. 17

FIG. 20

Ex. B ['196 patent], 10:10-20, Figs. 17, 20.

Claim 17 of the '362 patent recites, in part,

> . . .
>
> Separably thermally coupling **a heat exchanging interface of a reservoir** with the electronic component positioned at a first location on the motherboard,
>
> **the reservoir including an upper chamber and a lower chamber**,
>
> the upper chamber and the lower chamber being separate chambers that are vertically spaced apart and separated by at least a horizontal wall, the upper chamber and the lower chamber being fluidly coupled by one or more passageways, at least one of the one or more passageways being positioned on the horizontal wall, **the heat exchanging interface being removably coupled to the reservoir such that an inside surface of the heat exchanging interface is exposed to the lower chamber of the reservoir**;
>
> . . .

Ex. A, claim 17 (emphasis added).

---

[1] Asetek's expert testified that Figure 17 is a preferred embodiment of the '196 patent in ¶150 of his Infringement Report dated November 3, 2021. Asetek is not filing the Infringement Report for this undisputed point here in the interest of not burdening the Court and the parties with unnecessary administrative sealing motion.

3

ASETEK'S MOT. TO EXCLUDE CERTAIN OPINIONS OF DR. J. ABRAHAM
FOR MISCONSTRUING THE COURT'S CLAIM CONSTRUCTION
CASE NO. 3:19-CV-00410-EMC

### B.     The Parties' Stipulations to the Construction of "Reservoir"

During claim construction in this case, the parties stipulated that "reservoir" means "single receptacle defining a fluid flow path" in all the asserted Asetek patents. Dkt. 67 at ECF p. 2. The parties also stipulated that "chamber" should be construed as "compartment within the reservoir [with "reservoir" construed as indicated above]" in all the asserted Asetek patents. *Id.* at ECF p. 3. CoolIT submitted these stipulated constructions in its proposed claim construction order for the Asetek patents. Dkt. 112-1 at ECF p. 3.

### C.     Dr. Abraham's Report Advances His Opinion on What He Thinks the "Reservoir" "Actually Means"

In his December 8, 2021, rebuttal report regarding alleged noninfringement of Asetek's patents, Dr. Abraham acknowledged the parties' stipulated claim construction of "reservoir," but he then veered into his own views on what he thinks "reservoir," which the parties stipulated means "single receptacle defining a fluid flow path," "actually means." Ex. C, ¶53. In doing so he did not rely on the parties' stipulated construction of "reservoir," or the intrinsic record of the Asetek patents. Instead, he presented in his report annotated screenshots from a video exhibit of a disassembled Cooler Master Seidon 120V product from the 2014 Asetek v. CMI trial (which is not at issue in this action) to explain, in his opinion, "what 'a single receptacle that is divided into two chambers' actually means." *Id.* Significantly, Dr. Abraham did not prepare any of the annotations to the screenshots (he did not even know who added those annotation), nor did he physically inspect a Seidon 120V or verify if the annotations (likely added by CoolIT's counsel) accurately reflected the positions taken by Asetek in the 2014 trial. Ex. E, 66:14-71:3; 73:25-80:16. Dr. Abraham then offered his own opinion that a "single receptacle" must be the same as the mapping (most likely done by CoolIT's counsel) of the Cooler Master Seidon 120V product, as he explains in paragraphs 54 and 55 of his report (reproduced below):

4

ASETEK'S MOT. TO EXCLUDE CERTAIN OPINIONS OF DR. J. ABRAHAM
FOR MISCONSTRUING THE COURT'S CLAIM CONSTRUCTION
CASE NO. 3:19-CV-00410-EMC



Ex. C, ¶54.

> 55. As can be seen above, the structure separating the two chambers is *within* the same single receptacle and divides such single receptacle *from within* and *into* the two chambers *within it*. The two chambers do not have their own separate and seperable enclosures, and they depend on the single receptacle to enclose them. This is in sharp contrast to the prior art (such as Ryu) and CoolIT's new design (*see* figure below), of which the upper/pump chamber and the lower/thermal exchange chamber are separate and separable and *have their own separate and separable boundary walls*, as explained further in this report later.

*Id.* at ¶55.

As shown by the excerpts from his report above, Dr. Abraham created and applied a different and much narrower construction of the term "reservoir" than the parties' stipulated construction for that term. Dr. Abraham's construction includes various limitations — such as "the structure separating the two chambers is *within* the same single receptacle and divides such single receptacle *from within* and *into* the two chambers *within it*" and that the "two chambers do not have their own separate and seperable [sic] enclosures . . . they depend on the single receptacle to enclose them." (*see* emphasized

5

ASETEK'S MOT. TO EXCLUDE CERTAIN OPINIONS OF DR. J. ABRAHAM
FOR MISCONSTRUING THE COURT'S CLAIM CONSTRUCTION
CASE NO. 3:19-CV-00410-EMC

text in ¶55 reproduced above) — that were never discussed between the parties or stipulated to by Asetek. Bhattacharyya Decl., ¶8. Worse still, these additional limitations added by Dr. Abraham into the construction of "reservoir" are based on attorney annotations of a Cooler Master device (Seidon 120V) that Dr. Abraham did not "physically inspect" nor did he independently verify if the attorney annotations accurately capture positions taken by Asetek in the 2014 CMI trial. Ex. E, 73:25-80:16.

### D. Dr. Abraham's Opinion that a Cold Plate has a Receptacle

Dr. Abraham also offers his own opinion on the meaning of "receptacle," and based on that he argues that the copper cold plate (also referred to as copper component by Dr. Abraham) at the base of the accused H100i Liquid Cooler has a "receptacle." Ex. C, ¶¶85, 86. An exemplary copper cold plate in the accused H100i Liquid Cooler is shown in the photos below:




Ex. C, ¶85. Dr. Abraham alleges that the copper cold plate in the accused H100i Liquid Cooler has its own "separate receptacle" — the alleged "collection manifold (or exhaust manifold)" around the microchannels — because it is "capable of holding coolant (with proper orientation of the copper component)." *Id.*, ¶¶ 85, 86. Dr. Abraham cites the Merriam-Webster's Collegiate Dictionary to support his interpretation of receptacle ("receptacle" is "one that receives and contains something"); he does not rely on the intrinsic record of the '362 patent or any other Asetek patent. *Id.*

6

ASETEK'S MOT. TO EXCLUDE CERTAIN OPINIONS OF DR. J. ABRAHAM
FOR MISCONSTRUING THE COURT'S CLAIM CONSTRUCTION
CASE NO. 3:19-CV-00410-EMC

      **E.**      **Dr. Abraham's Non-Infringement Argument**

In ¶87 of his report (Exhibit C), Dr. Abraham combines his personal construction of "reservoir" (explained above), his opinion on the meaning of "receptacle," and his argument that the copper cold plate in the accused products has a "receptacle," to argue that the accused H100i Liquid Cooler does not infringe the '362 patent claims. Ex. C., ¶¶85-87. Specifically, he argues that because the copper cold plate has its own receptable (the alleged "exhaust manifold" shown in the images above), "the lower/thermal exchange chamber [in the H100i Liquid Cooler] has two receptacles" instead of "only a single receptacle," and thus cannot infringe:



*Id.*, ¶¶85-87, 89.

**III.**    **ARGUMENT**

      **A.**      **Expert Testimony that Conflicts With the Parties' Stipulated Claim Construction Should Be Excluded Under *Daubert* Principles**

Because expert testimony has the potential to 'be both powerful and quite misleading,' the district court acts as a gatekeeper to 'ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.' *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595, 597 (1993). "'As expert testimony inconsistent with the Court's claim construction is unreliable

7

ASETEK'S MOT. TO EXCLUDE CERTAIN OPINIONS OF DR. J. ABRAHAM
FOR MISCONSTRUING THE COURT'S CLAIM CONSTRUCTION
CASE NO. 3:19-CV-00410-EMC

and unhelpful to the finder of fact,' it should be excluded under the *Daubert* standard." *EMC Corp. v. Pure Storage, Inc.*, 154 F. Supp. 3d 81, 109 (D. Del. 2016) (citations omitted); *see also Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1321 (Fed. Cir. 2009) (reversing jury finding of infringement in part based on statement to jury inconsistent with claim construction and holding that "[n]o party may contradict the court's construction to a jury").

Because the opinions by Dr. Abraham at issue in this motion are inconsistent with the parties' stipulated construction of "reservoir," they will be unhelpful to the jury and should be excluded under the *Daubert* standard. *EMC Corp.*, 154 F. Supp. 3d at 109; *see also Exergen Corp.*, 575 F.3d at 1321. His own construction of "reservoir" is different and far narrower than the parties' stipulated construction for "reservoir," and the same is true of his noninfringement opinions based on his own (incorrect) construction of "reservoir." In particular, Dr. Abraham's construction of "reservoir," and his application of that construction to his noninfringement positions on the H100i Liquid Cooler, are improper because 1) it reads limitations into the parties' stipulated construction of "reservoir," and 2) his interpretation would exclude preferred embodiments of the invention.

Furthermore, Dr. Abraham clearly intends to explain to the jury "what 'a single receptacle that is divided into two chambers' actually means." Ex. C, ¶53. But explaining the meaning of the claim terms is the responsibility of the Court, not an expert witness. "Arguing claim construction to the jury is inappropriate because it risks confusion and the likelihood that jury will render a verdict not supported by substantial evidence." *MediaTek Inc. v. Freescale Semiconductor, Inc.*, No. 11-cv-5341 YGR, 2014 WL 971765, at *4 (N.D. Cal. Mar. 5, 2014); *PersonalWeb Techs. LLC v. Int'l Bus. Machines Corp.*, No. 16-CV-01266-EJD, 2017 WL 8186294, at *5 (N.D. Cal. July 25, 2017) (citing *MediaTek*, 2014 WL 971765, at *4).

Dr. Abraham's opinions should be excluded under *Daubert* and Rule of Evidence 702.[2]

---

[2] Federal Rule of Evidence 702 allows a jury to hear expert testimony if its proponent can establish that the testimony is based on "sufficient facts or data," is the "product of reliable principles and methods," and if it "will help the trier of fact to understand the evidence or determine a fact in issue." Fed. R. Evid. 702; *Daubert*, 509 U.S. at 597.

8

Asetek's Mot. to Exclude Certain Opinions of Dr. J. Abraham
for Misconstruing the Court's Claim Construction
Case No. 3:19-cv-00410-EMC

### B. Dr. Abraham's Opinions Are Inconsistent with the Parties' Stipulated Construction of "Reservoir" and Should be Excluded as Unreliable

#### 1. The parties' stipulated construction of "reservoir" does not preclude the single dual-chambered reservoir from having receptacles or chambers in addition to the recited upper and lower chambers

Dr. Abraham's noninfringement opinions attempt to narrow the scope of Asetek's patents by improperly importing limitations into the stipulated construction of "reservoir" that were never discussed or stipulated to by Asetek. Because his reimagining of "reservoir" is inconsistent with the operative claim construction of "reservoir," which CoolIT agreed to and asked the Court to enter, Dr. Abraham's opinions are unreliable and should be excluded. *EMC Corp.*, 154 F. Supp. 3d at 109; *see also Exergen Corp.*, 575 F.3d at 1321.

Specifically, Dr. Abraham's position that the asserted claims require that the "reservoir" just have *one* receptacle *within it*, to the exclusion of other receptacles, ignores the word "comprising" in the preamble of independent claim 17 of the '362 patent (Exhibit A), and ignores the fact that Asetek never agreed to (and does not agree to) that restriction. Importantly, the word "comprising" in the claim preamble is open-ended and allows for additional, unrecited elements within an infringing device. *Genentech, Inc. v. Chiron Corp.*, 112 F.3d 495, 501 (Fed. Cir. 1997) ("'Comprising' is a term of art used in claim language which means that the named elements are essential, but other elements may be added and still form a construct within the scope of the claim."); *Gillette Co. v. Energizer Holdings, Inc.*, 405 F.3d 1367, 1371-73 (Fed. Cir. 2005) (finding that a claim to "a safety razor blade unit comprising a guard, a cap, and a group of first, second, and third blades" encompasses razors with more than three blades because the transitional phrase "comprising" in the preamble is open-ended). Accordingly, devices covered by the '362 patent claims can have additional receptacles, whether inside or outside the "reservoir," so long as there is a single overarching receptacle comprising upper and lower chambers.

Moreover, CoolIT is aware of the problems with Dr. Abraham's new interpretation of "reservoir" because Judge Tigar rejected a similar argument when CoolIT's same counsel presented it in the Asetek v. CMI USA case. *See Asetek v. CMI USA*, *Inc.*, et al., Case 4:13-cv-00456, Dkt. 426. Specifically, Cooler Master/CMI argued that due to the presence of a copper sub-chamber (which they

9

ASETEK'S MOT. TO EXCLUDE CERTAIN OPINIONS OF DR. J. ABRAHAM
FOR MISCONSTRUING THE COURT'S CLAIM CONSTRUCTION
CASE NO. 3:19-CV-00410-EMC

termed a "receptacle") within the lower chamber of the accused Cooler Master product, the product contained more than one receptacle *within* the "reservoir" identified by Asetek, and thus did not infringe. Judge Tigar disagreed with that argument, explaining "it could be that even if the copper sub-chamber is a receptacle, that would not change the fact that the reservoir is a single receptacle divided into an upper chamber and lower chamber – the lower chamber would merely include or consist entirely of a smaller receptacle or sub-chamber. For example, **nesting dolls contain many receptacles. But the smaller dolls – or receptacles – do not affect whether the biggest doll is a 'single receptacle'.**" *Id.* at ECF p. 6 (emphasis added).

Judge Tigar is correct. Due to the "comprising" language in the preamble, a product with an overarching single receptacle structure can satisfy the patent claims notwithstanding the presence of smaller receptacles or sub-chambers within the overarching receptacle. Asetek never agreed to (nor it would agree to) Dr. Abraham's erroneous interpretation that the "single receptacle defining a fluid flow path" cannot have any other smaller receptacle (or chamber) *within* the single receptacle defining the "reservoir." **The biggest error in Dr. Abraham's interpretation is that CoolIT (or any other defendant) can simply point to any nook or cranny within the "single receptacle defining a fluid flow path" that can hold liquid (with proper orientation) and call it another receptacle within the boundaries of the "single receptacle."** In fact, that is exactly what Dr. Abraham has done: he points to the alleged "exhaust manifolds" in the cold plate of the H100i Liquid Cooler as another receptacle within the single receptacle, and on that basis argues that the H100i Liquid Cooler does not meet the "reservoir" limitation because it includes more than one receptacle within the lower/thermal exchange chamber. But Dr. Abraham's interpretation of "single receptacle" as having only one receptacle within it (and his related noninfringement argument) fails for the same reasons noted by Judge Tigar in the CMI USA case (quoted above). *Id*. Because the fundamental assumption of Dr. Abraham's noninfringement opinion (that a receptacle cannot contain other smaller receptacles) is wrong, his opinions are an unreliable misapplication of the stipulated claim construction that should be excluded to avoid confusing and misleading the jury as to the Court's claim constructions. *EMC*, 154 F. Supp. 3d at 109; *see also Exergen*, 575 F.3d at 1321.

10

ASETEK'S MOT. TO EXCLUDE CERTAIN OPINIONS OF DR. J. ABRAHAM
FOR MISCONSTRUING THE COURT'S CLAIM CONSTRUCTION
CASE NO. 3:19-CV-00410-EMC

### 2. Dr. Abraham's misinterpretation of "reservoir" excludes preferred embodiments, which cannot be the correct construction

Further, the preferred embodiments in Asetek's patents demonstrate conclusively that Dr. Abraham's new "reservoir" construction would exclude those preferred embodiments, and thus his construction cannot be correct. "[A] claim interpretation that excludes a preferred embodiment from the scope of the claim is rarely, if ever, correct." *Accent Packaging, Inc. v. Leggett & Platt, Inc.*, 707 F.3d 1318, 1326 (Fed. Cir. 2013); *see also Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1305 (Fed. Cir. 2007) (courts "normally do not interpret claim terms in a way that excludes disclosed examples in the specification."). For example, the embodiments shown in Figures 17 and 20 of the '196 patent (Exhibit B) have several internal components/regions that are "capable of holding coolant (with proper orientation)" and thus would be smaller receptacles within the "reservoir":




Ex. B, Figs. 17, 20 (annotated). Dr. Abraham's interpretation of "reservoir" would exclude these preferred embodiments because they all have various spaces, nooks and crannies that contain fluid to the same extent as the cold plate in the H100i Liquid Cooler does. That is, under the analysis Dr. Abraham applied to the H100i Liquid Cooler cold plate, the preferred embodiments comprise multiple smaller receptacles within the "single receptacle" defining the "reservoir" and, as a result, could not practice the claimed invention. But of course that is nonsensical and conflicts with the Federal Circuit's *Accent Packaging* and *Verizon Services Corp.* decisions cited above. This is yet another reason this

11

ASETEK'S MOT. TO EXCLUDE CERTAIN OPINIONS OF DR. J. ABRAHAM
FOR MISCONSTRUING THE COURT'S CLAIM CONSTRUCTION
CASE NO. 3:19-CV-00410-EMC

Court should exclude Dr. Abraham's opinions as unreliable under the principles of *Daubert*, Rule 702, and the other authorities cited in this brief.

### 3. Dr. Abraham's distorted and unreliable reinterpretation of "reservoir" contradicts CoolIT's arguments at the PTAB

Dr. Abraham's misinterpretation of "reservoir" as having only one receptacle within it is also contradicted by the "reservoir" positions CoolIT took to invalidate Asetek's patents at the PTAB. If Dr. Abraham's opinion that anything capable of holding coolant is a receptacle and that the "reservoir" can only have one receptacle within it, are accepted, then CoolIT's PTAB arguments on alleged prior-art "reservoirs" should have failed. Specifically, CoolIT relied on prior art references where the alleged "reservoir" has more than one receptacle (under Dr. Abraham's definition of receptacle as any structure/region/space that can hold liquid (under proper orientation)). For example, CoolIT argued to the PTAB in IPR2020-00522 involving Asetek's '355 patent that "[r]egarding the reservoir, Duan discloses a structure formed by an accommodation chamber 21, cap 3, and cooling plate 1 configured to pass cooling liquid there-through. . . ***These components together form the claimed reservoir***." Ex. D [CoolIT IPR petition] at 25-26 (emphasis added).



Each of those components are "capable of holding coolant" if properly orientated. CoolIT cannot take a clearly inconsistent position now for purposes of avoiding infringement (as explained in Asetek's motion for judicial estoppel).

12

ASETEK'S MOT. TO EXCLUDE CERTAIN OPINIONS OF DR. J. ABRAHAM
FOR MISCONSTRUING THE COURT'S CLAIM CONSTRUCTION
CASE NO. 3:19-CV-00410-EMC

For all these reasons, Dr. Abraham's opinion that the "reservoir" can only have one receptacle within it, and that the H100i Liquid Cooler does not infringe because the lower/thermal exchange chamber has two receptacles, is improper and should be excluded under Rule 702 and the *Daubert* framework.

## IV.    CONCLUSION

Dr. Abraham has offered noninfringement positions that contradict the parties' stipulated construction of "reservoir," attempting to usurp the Court's role in the construction of claim terms. Dr. Abraham's opinions are unreliable and should be excluded as such under the *Daubert* standard.

Dated: March 31, 2022

FINNEGAN, HENDERSON, FARABOW,
    GARRETT & DUNNER, LLP

By:    /s/ *Arpita Bhattacharyya*
    Arpita Bhattacharyya
    Attorneys for Plaintiff and Counterdefendant
    ASETEK DANMARK A/S and
    Counterdefendant ASETEK USA, INC.

13

ASETEK'S MOT. TO EXCLUDE CERTAIN OPINIONS OF DR. J. ABRAHAM
FOR MISCONSTRUING THE COURT'S CLAIM CONSTRUCTION
CASE NO. 3:19-CV-00410-EMC