COOLEY LLP
HEIDI L. KEEFE (178960)
(hkeefe@cooley.com)
REUBEN H. CHEN (228725)
(rchen@cooley.com)
DANIEL J. KNAUSS (267414)
(dknauss@cooley.com)
ALEXANDRA LEEPER (307310)
(aleeper@cooley.com)
DEEPA KANNAPPAN (313573)
(dkannappan@cooley.com)
3175 Hanover Street
Palo Alto, CA 94304-1130
Telephone: (650) 843-5000
Facsimile: (650) 849-7400

DUSTIN M. KNIGHT (*pro hac vice*)
(dknight@cooley.com)
11951 Freedom Drive, 16th Floor
Reston, VA 20190
Telephone: (703) 456-8000
Facsimile: (703) 456-8100

GREENBERG TAURIG, LLP
KYLE D. CHEN (SBN 239501)
kchen@gtlaw.com
1900 University, Avenue, 5th Floor
East Palo Alto, CA 94304
Telephone: (650) 289-7887
Facsimile: (650) 328-8508

Attorneys for Defendant and Counter-claimant
COOLIT SYSTEMS, INC. and Defendants
CORSAIR GAMING, INC. and CORSAIR
MEMORY, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ASETEK DANMARK A/S,<br><br>　　　　Plaintiff and<br>　　　　Counter-defendant,<br><br>　　v.<br><br>COOLIT SYSTEMS, INC.,<br><br>　　　　Defendant and<br>　　　　Counter-claimant,<br><br>CORSAIR GAMING, INC. and CORSAIR MEMORY, INC.,<br><br>　　　　Defendants. | Case No. 3:19-cv-00410-EMC<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO STRIKE PORTIONS OF THE EXPERT REPORT OF DR. DAVID B. TUCKERMAN REGARDING INVALIDITY OF U.S. PATENT NOS. 8,746,330; 9,603,284; AND 10,274,266**<br><br>Date: May 5, 2022<br>Time: 1:30 pm<br>Location: Courtroom 5, 17th Floor<br>Judge: Hon. Edward M. Chen |

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

DEFENDANTS' NOTICE OF MOTION AND
MOTION TO STRIKE
CASE NO. 3:19-CV-00410-EMC

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION TO STRIKE ................................................................... 1
MEMORANDUM OF POINTS AND AUTHORITIES ............................................................. 2
   I.   INTRODUCTION ............................................................................................................ 2
   II.   BACKGROUND .............................................................................................................. 2
       A.   Asetek's Original *Antarctica* Invalidity Theories ................................................ 2
       B.   Dr. Tuckerman's New Invalidity Theories for *Antarctica* .................................... 3
       C.   *Danger Den-RBX* .................................................................................................. 5
       D.   Dr. Tuckerman's Reliance on *Danger Den-RBX* .................................................. 5
       E.   *Chang* .................................................................................................................... 7
   III.   LEGAL STANDARD ...................................................................................................... 7
       A.   Untimely Invalidity Theories and Prior Art References ........................................ 7
       B.   IPR Estoppel .......................................................................................................... 8
   IV.   ARGUMENT .................................................................................................................... 9
       A.   Dr. Tuckerman relies on newly proposed modifications for "microchannels" and "seal" in his *Antarctica*-based obviousness grounds ............................................ 9
       B.   Dr. Tuckerman treats *Danger Den-RBX* as a ground reference masquerading as "background art" ............................................................................................. 10
       C.   Dr. Tuckerman's *Chang* opinions violate the Court's Order on IPR estoppel .......... 14
   V.   CONCLUSION .............................................................................................................. 14

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

i

DEFENDANTS' NOTICE OF MOTION AND
MOTION TO STRIKE
CASE NO. 3:19-CV-00410-EMC

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Arendi S.A.R.L. v. Apple Inc.*,
  832 F.3d 1355 (Fed. Cir. 2016) ..................................................................................................13

*Asia Vital Components Co. v. Asetek Danmark A/S*,
  No. 16-cv-07160-JST, 2018 WL 4945316 (N.D. Cal. Oct. 11, 2018) .......................................10

*ASUS Comp. Int'l v. Round Rock Research, LLC*,
  No. 12-cv-02099-JST (NC), 2014 WL 1463609 (N.D. Cal. Apr. 11, 2014) ............................10

*Aylus Networks, Inc. v. Apple, Inc.*,
  No. C-13-4700 EMC, 2015 WL 12976113 (N.D. Cal. June 2, 2015) ................................10, 14

*Cal. Inst. of Tech. v. Broadcom Ltd.*,
  25 F.4th 976 (Fed. Cir. 2022) ......................................................................................................9

*Digital Reg of Texas, LLC v. Adobe Systems, Inc.*,
  No. C 12-1971 CW, 2014 WL 4090550 (N.D. Cal. Aug. 19, 2014) ............................11, 12, 14

*Finjan, Inc. v. Sophos, Inc.*,
  No. 14-cv-01197-WHO, 2016 WL 2988834 (N.D. Cal. May 24, 2016) ...............................8, 10

*Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*,
  No. C 03-1431 SBA, 2006 WL 1329997 (N.D. Cal. May 15, 2006) .........................................8

*Largan Precision Co. v. Genius Elec. Optical Co.*,
  No. 13-cv-02502-JD, 2014 WL 6882275 (N.D. Cal. Dec. 5, 2014) ......................................8, 12

*Life Techs. Corp. v. Biosearch Techs., Inc.*,
  No. C 12-00852 WHA, 2012 WL 4097740 (N.D. Cal. Sept. 17, 2012) .....................................8

*MediaTek Inc. v. Freescale Semiconductor, Inc.*,
  No. 11-cv-5341 YGR, 2014 WL 690161 (N.D. Cal. Feb. 21, 2014) ..........................................8

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
  476 F.3d 1355 (Fed. Cir. 2006) ...........................................................................................10, 14

*Pavo Sols. LLC v. Kingston Tech. Co.*,
  No. 8:14-cv-01352-JLS-KES, 2019 WL 8138163 (C.D. Cal. Nov. 20, 2019) ....................8, 12

*Takeda Pharm. Co. v. TWi Pharms., Inc.*,
  No. 13-CV-02420-LHK, 2015 WL 1227817 (N.D. Cal. Mar. 17, 2015) .................................10

*Verinata Health Inc. v. Sequenom, Inc.*,
  No. C 12-00865 SI, 2014 WL 4100638 (N.D. Cal. Aug. 20, 2014) ....................................8, 10

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

ii

DEFENDANTS' NOTICE OF MOTION AND
MOTION TO STRIKE
CASE NO. 3:19-CV-00410-EMC

# TABLE OF AUTHORITIES
(Continued)

Page(s)

*Volterra Semiconductor Corp. v. Primarion, Inc.*,
    796 F. Supp. 2d 1025 (N.D. Cal. 2011) ................................................................................13

*Word to Info Inc. v. Facebook Inc.*,
    No. 15-cv-03485-WHO, 2016 WL 6276956 (N.D. Cal. Oct. 27, 2016) ..........................10, 14

**Statutes**

35 U.S.C.
    § 102 ........................................................................................................................................8
    § 103 ........................................................................................................................................8
    § 285(e) ..................................................................................................................................14
    § 311(b) ...................................................................................................................................8
    § 314(a) ...................................................................................................................................9
    § 315(e)(2) ..............................................................................................................................9
    § 318(a) ...................................................................................................................................9

**Other Authorities**

Patent Local Rule
    3-3 .......................................................................................................................................7, 8
    3-4 ...........................................................................................................................................5
    3-6 .........................................................................................................................................10
    4-3(a) ....................................................................................................................................10

iii

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

CASE NO. 3:19-CV-00410-EMC
DEFENDANTS' NOTICE OF MOTION AND
MOTION TO STRIKE

# NOTICE OF MOTION AND MOTION TO STRIKE

**TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORDS:**

PLEASE TAKE NOTICE that on May 5, 2022 at 1:30 p.m., or as soon thereafter as the matter may be heard, in this Court, located at San Francisco Courthouse, Courtroom 5 – 17th Floor, 450 Golden Gate Ave., San Francisco, CA 94102, Defendants CoolIT Systems, Inc., Corsair Gaming, Inc., and Corsair Memory, Inc. will and hereby do move to strike portions of the Expert Report of Dr. David B. Tuckerman Regarding Invalidity of U.S. Patent Nos. 8,746,330; 9,603,284; and 10,274,266. This motion is based upon this notice of motion and motion, the attached memorandum, the accompanying declaration of Reuben H. Chen and exhibits thereto, and upon such other and further matters, papers, and arguments as may be submitted to the Court at or before the hearing on this motion.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

1

DEFENDANTS' NOTICE OF MOTION AND
MOTION TO STRIKE
CASE NO. 3:19-CV-00410-EMC

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendants CoolIT Systems, Inc. ("CoolIT"), Corsair Gaming, Inc., and Corsair Memory, Inc. (collectively "Corsair") respectfully submit this motion to strike Dr. Tuckerman's opinions related to new invalidity theories, at least one undisclosed reference, and an estopped ground. Dr. Tuckerman's Invalidity Report adds new material to grapple with the Court's "seal" construction and evidentiary concerns over "microchannels," even though the theories and references are absent from Asetek's invalidity contentions. Asetek also had a clear mechanism to include the new material—seeking the Court's leave to amend upon a showing of good cause. Having elected not to do so, Asetek should not be permitted to add belated invalidity theories and references through expert reports.

Separately, Dr. Tuckerman asserts the estopped *Chang* reference against all limitations in the '330 asserted claims. Inclusion of this estopped ground and the new materials openly flouts the spirit and letter of the Patent Local Rules and this Court's Orders (ECF Nos. 42, 98). Dr. Tuckerman's opinions on these matters should be stricken.

## II. BACKGROUND

### A. Asetek's Original *Antarctica* Invalidity Theories

Asetek's original invalidity contentions asserted *Antarctica* more narrowly than Dr. Tuckerman does in his Invalidity Report. In the original *Antarctica* charts for the Asserted CoolIT Patents, Asetek just points to the grooves in *Antarctica*'s heat spreader plate as the "microchannels."

| [14.1] a plurality of juxtaposed fins defining a corresponding plurality of juxtaposed microchannels, wherein each microchannel extends between a respective first end and a respective second end; | The *Antarctica* device has a plurality of juxtaposed fins defining a corresponding plurality of juxtaposed microchannels, wherein each microchannel extends between a respective first end and a respective second end. [image showing Antarctica device with labels: Fins, Upper Surface, Microchannels, First Ends, Second Ends] |

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

2

CASE NO. 3:19-CV-00410-EMC
DEFENDANTS' NOTICE OF MOTION AND
MOTION TO STRIKE

(*E.g.*, Declaration of Reuben H. Chen ("Chen Decl."), Ex. 2 ('330 *Antarctica* chart (Chart I)) at 9.)[1,2] No other theory for "microchannels" appears in the *Antarctica* charts, and certainly no proposed modification to *Antarctica* to include "microchannels" under an obviousness theory.

Similarly, Asetek's *Antarctica* charts recite a "seal" because the "housing and the plate in *Antarctica* are connected." The same prose shown below appears for this limitation across all the asserted independent claims of the '330 and '284 patents:

> The housing and the plate in *Antarctica* are connected to create a seal therebetween. If they were not connected, it also would have been obvious to provide a gasket between the plate and the housing to seal the inlet and outlet openings and prevent short-circuiting of the fluid.

(*See* Ex. 2 ('330 *Antarctica* chart (Chart I)) at 5, 8-9, 11; Ex. 3 ('330 *Antarctica-Chang* chart (Chart II)) at 9, 20, 29; Ex. 5 ('284 *Antarctica* chart (Chart I)) at 14.) While this passage assumes a scenario where the regions Asetek calls a "housing" and a "plate" are not connected, it is undisputed that in *Antarctica* these two alleged regions are part of the same continuous/monolithic plastic mold.



(Ex. 7, ¶56 (Asetek's annotations from original).)

**B. Dr. Tuckerman's New Invalidity Theories for *Antarctica***

Dr. Tuckerman's Invalidity Report, however, includes new invalidity theories in his *Antarctica* grounds. With respect to "microchannels," Dr. Tuckerman injects a new theory of obviousness with alleged motivations to modify *Antarctica's* channels:

Moreover, a person of ordinary skill in the art in August 2007 would have known

---

[1] All references to "Ex." refer to exhibits to the Declaration of Reuben H. Chen, submitted herewith.
[2] This same disclosure for "microchannels" appears throughout the '330, '284, and '266 *Antarctica*-based claim charts. (*See* Ex. 2 ('330 *Antarctica* chart (Chart I)) at 2, 7, 9; Ex. 3 ('330 *Antarctica-Chang* chart (Chart II)) at 2, 14, 22-23; Ex. 5 ('284 *Antarctica* chart (Chart I)) at 1, 6-7; Ex. 4 ('266 *Antarctica-Satou* chart (Chart I)) at 1.)

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

3

CASE NO. 3:19-CV-00410-EMC
DEFENDANTS' NOTICE OF MOTION AND
MOTION TO STRIKE

that the fins in a fluid heat exchanger should be disposed in such a way that they would form microchannels between adjacent fins. This is because it was well-known by August 2007 that microchannels have large surface area-to-volume ratio, and therefore, microchannels provide a large heat transfer surface area per unit fluid flow volume as compared to macrochannels or minichannels. Accordingly, a person of ordinary skill in the art would readily form microchannels (in place of macro- or mini-channels) on a heat transfer surface of a fluid heat exchanger to enhance thermal transfer.

(Ex. 7, ¶57.) This theory is entirely absent from Asetek's invalidity contentions.

Dr. Tuckerman also injects a new proposed modification to *Antarctica* to deal with the Court's construction for "seal" as "a component that fills a gap to prevent leakage through the gap." (ECF No. 149 at 42-45.)[3] He identifies two regions in the *Antarctica* physical sample's plastic mold as the "housing" and "plate" and proposes separating them to insert a seal in between. Indeed, while he notes "[t]he housing and the apertured plate of the *Antarctica* fluid heat exchanger are continuous/monolithic, and thus sealed"—a position in direct conflict with the Court's "seal" construction—he continues:

> **If the housing and the apertured plate of the *Antarctica* waterblock were not continuous**, it would have been obvious to provide an O-ring or gasket between the plate and the housing to prevent leakage and/or short-circuiting of fluid between the inlet and outlet…. **Moreover, having the housing and the plate as separate components that are sealed would have been an obvious modification of the *Antarctica*.** *See Chang*, 6:13-19, 6:22-30. This is because the single-piece housing and plate of the *Antarctica* has to be precision machined with specialized techniques, which increases manufacturing costs and complexities. Having separate housing and plate provides greater flexibility in material choice for the housing and the plate, simplifies manufacturing and assembly of the fluid heat exchanger, and allows for better manufacturing scalability. Thus, one skilled in the art would have been motivated to separate the housing and the plate of the *Antarctica*, and would have reasonably expected success in doing so.
>
> ****
>
> Moreover, **the plate, the housing, and the seal therebetween in a modified *Antarctica*** are arranged such that the cooling fluid is directed from the housing inlet to the inlet header, then through the inlet defined by the plate and into the microchannels, from the microchannels to the outlet header, and from the outlet header to the outlet of the housing.

---

[3] Asetek did not seek leave to amend its invalidity contentions at any point after the Court issued its Claim Construction Order.

Cooley LLP
Attorneys At Law
Palo Alto

4

Case No. 3:19-cv-00410-EMC
Defendants' Notice of Motion and
Motion to Strike

(*E.g.*, Ex. 8 (Tuckerman '330 *Antarctica* chart (Chart I)) at 20-22 (emphasis added).) Dr. Tuckerman is even more explicit about modifying *Antarctica* to separate the alleged "plate" and "housing" regions in the main body of his report. (*See* Ex. 7, ¶¶65-72.) Again, this invalidity theory does not appear anywhere in Asetek's invalidity contentions—presumably because Asetek thought in 2019 that its proposed construction for "seal" would carry the day.

### C. *Danger Den-RBX*

Asetek never asserted *Danger Den-RBX*[4] as prior art before Dr. Tuckerman's Invalidity Report. Asetek's invalidity contentions asserted only *Anderson*, *Antarctica*, *Bhatti*, *Chang*, *Hamilton*, *Kang*, and *Satou* (*see* Ex. 1 at 3-6), and Asetek dropped *Anderson* when required to narrow to six references per patent under the Court's Amended Case Management and Pretrial Order (ECF No. 42). (*See* Ex. 6 (Asetek's Final Election of Prior Art) at 1.) Asetek never sought leave to amend its invalidity contentions or its final election in the intervening years, even after claim construction orders.

In fact, CoolIT learned of *Danger Den-RBX* for the first time in the final months of fact discovery during Dr. Pokharna's planned June 25, 2021 inspection of the *Antarctica* physical sample. When Dr. Pokharna arrived for inspection, Asetek's counsel surprised CoolIT with a physical sample it claimed to be *Danger Den-RBX*—almost two years after Asetek's Pat. L. R. 3-4 disclosure deadline. Asetek then produced documentation related to *Danger Den-RBX* on the final day of fact discovery.

### D. Dr. Tuckerman's Reliance on *Danger Den-RBX*

Just as with his newly proposed *Antarctica* modifications, Dr. Tuckerman relies on *Danger Den-RBX* to grapple with the Court's "seal" construction. He points to *Danger Den-RBX* as support to separate *Antarctica*'s alleged "housing" and "plate" regions and insert a separate "seal," citing *Danger Den-RBX* as a "good example" that is "very similar to the *Antarctica* in structure, function, and operation." (Ex. 7, ¶68.) Of course, he distinguishes *Danger Den-RBX* from *Antarctica* as having "separate housing and plate that are mated together with a seal therebetween"—the precise limitation he acknowledges *Antarctica* lacks because of the Court's "seal" construction. (*Id.*)

Even though he does not explicitly identify *Danger Den-RBX* as part of an asserted ground,

---

[4] *Danger Den-RBX* is a liquid cooling device Asetek made available for inspection on June 25, 2021 ("*Danger Den-RBX*").

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

5

CASE NO. 3:19-CV-00410-EMC
DEFENDANTS' NOTICE OF MOTION AND
MOTION TO STRIKE

1  Dr. Tuckerman nevertheless provides a date of U.S. sale—presumably to qualify the device as prior art—and a color-coded mapping of device components to limitations in the Asserted Claims:





(*Id.*, ¶68.) He then uses this color-coded device in his '284 *Antarctica* chart. (Ex. 9 (Tuckerman '284 *Antarctica* Chart (Chart I)) at 7-8, 16-17.) Curiously, he acknowledges that *Danger Den-RBX* lacks "microchannels" and then proposes modifying his "good example" to substitute its minichannels for microchannels. (Ex. 7, ¶69.) He even provides the same motivations to modify *Danger Den-RBX* to include microchannels as he did with *Antarctica*. (*Compare id.*, ¶69, *with id.*, ¶57.)

Dr. Tuckerman's report also describes the fluid flow path through *Danger Den-RBX* using language from the '330 patent claims. (*See* Ex. 7, ¶69 (*e.g.*, "[f]rom the inlet header, the cooling fluid

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

6

CASE NO. 3:19-CV-00410-EMC
DEFENDANTS' NOTICE OF MOTION AND
MOTION TO STRIKE

enters the channels in the heat spreader plate (aka cold plate) via an *elongate opening/aperture* in the plate.") (emphasis added).) In doing so, he also explains how *Danger Den-RBX* meets certain fluid flow limitations in, *e.g.*, the '284 patent. (*Id.*, ¶89 (noting *Danger Den-RBX* includes an "outlet flow path from a centrally-positioned channel first end is longer than an outlet flow path from an outer channel first end.").) He again applies color-coded annotations of the limitations to *Danger Den-RBX*:



(*Id.*)

### E. *Chang*

Separate from these "seal"-inspired issues, Dr. Tuckerman's reliance on *Chang* contravenes IPR estoppel. Asetek's invalidity contentions originally included *Chang* grounds against the '330 patent based on anticipation and single-reference obviousness. (*See* Ex. 1 at 4 (A-3).) CoolIT successfully moved the Court to strike these grounds under IPR estoppel, as Asetek had previously challenged and failed to invalidate the '330 patent claims in IPR2015-01276. (*See* ECF No. 98.) Despite the Court's Order, Dr. Tuckerman's Invalidity Report includes an *Antarctica-Chang* ground where he asserts that *"Chang* discloses every limitation of the asserted claims, including a seal extending between the housing and the plate." (Ex. 7, ¶73.) Dr. Tuckerman's *Antarctica-Chang* '330 claim chart includes *Chang* disclosures for <u>all</u> limitations. (*See generally* Ex. 8 (Chart II).)

## III. LEGAL STANDARD

### A. Untimely Invalidity Theories and Prior Art References

Patent Local Rule 3-3 requires serving invalidity contentions that identify "each item of prior art that allegedly anticipates each asserted claim or renders it obvious." The purpose of this rule is to

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

7

CASE NO. 3:19-CV-00410-EMC
DEFENDANTS' NOTICE OF MOTION AND
MOTION TO STRIKE

"require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed." *Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*, No. C 03-1431 SBA, 2006 WL 1329997, at *4 (N.D. Cal. May 15, 2006) (citation omitted). "Given the purpose behind [these] disclosure requirements, a party may not use an expert report to introduce new infringement theories, new infringing instrumentalities, new invalidity theories, or new prior art references not disclosed in the parties' infringement contentions or invalidity contentions." *Verinata Health Inc. v. Sequenom, Inc.*, No. C 12-00865 SI, 2014 WL 4100638, at *3 (N.D. Cal. Aug. 20, 2014) (internal quotation marks and citation omitted). "Any invalidity theories not disclosed pursuant to Local Rule 3-3 are barred … from presentation at trial (whether through expert opinion testimony or otherwise)." *MediaTek Inc. v. Freescale Semiconductor, Inc.*, No. 11-cv-5341 YGR, 2014 WL 690161, at *1 (N.D. Cal. Feb. 21, 2014).

With respect to previously undisclosed references, while some courts in this district have declined to strike references used only as "background" material, "the line between when a reference is used as background material, and when it is used as an anticipation or obviousness reference, can be difficult to draw." *Finjan, Inc. v. Sophos, Inc.*, No. 14-cv-01197-WHO, 2016 WL 2988834, at *11-12 (N.D. Cal. May 24, 2016). The Court should look past clever labeling to determine if the use of a reference is an attempt to elude the Patent Local Rules. *See Life Techs. Corp. v. Biosearch Techs., Inc.*, No. C 12-00852 WHA, 2012 WL 4097740, at *1-2 (N.D. Cal. Sept. 17, 2012); *Largan Precision Co. v. Genius Elec. Optical Co.*, No. 13-cv-02502-JD, 2014 WL 6882275, at *6 (N.D. Cal. Dec. 5, 2014) (striking portions of expert report relying on undisclosed reference in motivation to modify analysis); *MediaTek*, 2014 WL 690161, at *2 (striking portions of expert report relying on undisclosed reference in invalidity mapping under guise of a "damage mitigation theory"); *Pavo Sols. LLC v. Kingston Tech. Co.*, No. 8:14-cv-01352-JLS-KES, 2019 WL 8138163, at *10-11 (C.D. Cal. Nov. 20, 2019) (striking portions of expert report relying on an undisclosed "background" reference analyzed for certain claim limitations using the court's claim construction).

### B.   IPR Estoppel

Petitions for IPR are limited to raising grounds for invalidity under 35 U.S.C. §§ 102 and 103 and only "on the basis of prior art consisting of patents or printed publications." 35 U.S.C. § 311(b).

Cooley LLP
Attorneys At Law
Palo Alto

8

Case No. 3:19-cv-00410-EMC
Defendants' Notice of Motion and
Motion to Strike

1  The PTAB reviews IPR petitions and may institute trial if it "determines that the information presented
2  in the petition … shows that there is a reasonable likelihood that the petitioner would prevail with
3  respect to at least 1 of the claims challenged[.]" 35 U.S.C. § 314(a). After trial, the PTAB issues a
4  final written decision pursuant to 35 U.S.C. § 318(a). After the final written decision issues, 35 U.S.C.
5  § 315(e)(2) provides that "[t]he petitioner in an *inter partes* review of a claim in a patent under this
6  chapter that results in a final written decision under section 318(a), … may not assert either in a civil
7  action arising in whole or in part under section 1338 of title 28 … that the claim is invalid on any
8  ground that the petitioner raised or reasonably could have raised during that *inter partes* review." The
9  Federal Circuit recently clarified that this estoppel provision "applies not just to claims and grounds
10 asserted in the petition and instituted for consideration by the Board, but to all grounds not stated in
11 the petition but which reasonably could have been asserted against the claims included in the petition."
12 *Cal. Inst. of Tech. v. Broadcom Ltd.*, 25 F.4th 976, 991 (Fed. Cir. 2022); (*see also* ECF No. 98 at 8-12
13 (adopting same reasoning).)

14 **IV.   ARGUMENT**

15    Dr. Tuckerman's Invalidity Report adds new invalidity theories for *Antarctica*, and at least one
16 new reference, to deal with the Court's "seal" construction and evidentiary concerns over
17 "microchannels." Separately, his use of *Chang* is judicially estopped. These disclosures openly flout
18 the spirit and letter of the Patent Local Rules and the Court's Orders. Asetek also had a clear
19 mechanism to include the new material—seeking the Court's leave to amend upon a showing of good
20 cause. Having elected not to do so, Asetek should not be permitted to shove in belated invalidity
21 theories and references through expert reports.

22    **A.   Dr. Tuckerman relies on newly proposed modifications for "microchannels" and
23        "seal" in his *Antarctica*-based obviousness grounds**

24    Dr. Tuckerman includes new proposed modifications to *Antarctica* that were absent from
25 Asetek's invalidity contentions. Asetek's invalidity contentions say nothing about modifying
26 *Antarctica* to include "microchannels," and it makes little sense why Dr. Tuckerman should add a
27 common-sense obviousness theory to his Invalidity Report as he does if he truly believed when
28 measuring the *Antarctica* sample's channel widths that they were "between 0.9 – 1.0 mm." (Ex. 7,

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

9

CASE NO. 3:19-CV-00410-EMC
DEFENDANTS' NOTICE OF MOTION AND
MOTION TO STRIKE

¶57.) Likewise, Dr. Tuckerman proposes separating the alleged "housing" and "plate" regions in *Antarctica* to insert a separate seal in a belated attempt to read *Antarctica* on the claims consistent with the Court's "seal" construction ("a component that fills a gap to prevent leakage through the gap")—which he admits that *Antarctica* does not have. (*Id.*, ¶¶65, 73, 114.) These invalidity theories appear for the first time in Dr. Tuckerman's Invalidity Report—they should be stricken. *Verinata Health*, 2014 WL 4100638, at *3; *Asia Vital Components Co. v. Asetek Danmark A/S*, No. 16-cv-07160-JST, 2018 WL 4945316, at *2 (N.D. Cal. Oct. 11, 2018); *ASUS Comp. Int'l v. Round Rock Research, LLC*, No. 12-cv-02099-JST (NC), 2014 WL 1463609, at *1 (N.D. Cal. Apr. 11, 2014); *see also Takeda Pharm. Co. v. TWi Pharms., Inc.*, No. 13-CV-02420-LHK, 2015 WL 1227817, at *9 (N.D. Cal. Mar. 17, 2015) (striking theory not disclosed in invalidity contentions); *Finjan, Inc.*, 2016 WL 2988834, at *13 (same).

This is true even if Asetek were to move to amend its contentions now based on the Court's 2020 Claim Construction Order. The Court's Amended Case Management and Pretrial Order, consistent with Pat. L.R. 3-6, is clear that "amendment to contentions/preliminary elections" can be made "only by order of Court upon **timely** showing of good cause." (ECF No. 42 (emphasis added).) As almost two years have passed since the Court's Claim Construction Order, Asetek clearly would not been diligent in seeking amendment now—which it has not even bothered to do.[5] *See, e.g.*, *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 476 F.3d 1355, 1367 (Fed. Cir. 2006) (affirming district court ruling that three-month delay was not diligent); *Aylus Networks, Inc. v. Apple, Inc.*, No. C-13-4700 EMC, 2015 WL 12976113, at *1 (N.D. Cal. June 2, 2015) (Chen, J.) (eight-month delay after receiving opposing counsel's proposed construction not diligent); *Word to Info Inc. v. Facebook Inc.*, No. 15-cv-03485-WHO, 2016 WL 6276956, at *6 (N.D. Cal. Oct. 27, 2016) (four-month delay after receiving opposing counsel's proposed construction not diligent).

### B. Dr. Tuckerman treats *Danger Den-RBX* as a ground reference masquerading as "background art"

*Danger Den-RBX* also appears in Dr. Tuckerman's Invalidity Report for the first time precisely

---

[5] A diligence showing on "microchannels" is irrelevant because the parties stipulated to the operative construction of "channels with widths up to 1 millimeter" under Pat. L. R. 4-3(a). (ECF No. 67.)

Cooley LLP
Attorneys At Law
Palo Alto

10

Case No. 3:19-cv-00410-EMC
Defendants' Notice of Motion and
Motion to Strike

because of the tension between *Antarctica*'s single-piece plastic mold (where Asetek alleges there is a "plate" and "housing" region) and the Court's "seal" construction.  Dr. Tuckerman's treatment of *Danger Den-RBX* goes well beyond use as "background" to show the state of the art or POSITA knowledge.  His report: (1) recites a priority date for the device (Ex. 7, ¶68); (2) discusses how the device satisfies the "seal" limitation missing in *Antarctica* (*id.*); (3) color-codes components to the '330 / '284 claim limitations and explains the fluid flow path through them (*id.*, ¶¶68-69); and (4) provides a motivation to modify analysis to incorporate "microchannels" into the *Danger Den-RBX* device (*id.*, ¶69).  He even admitted the reason he included this proposed modification:

> Q. Right. So you're relying on Danger Den as a ground of obviousness; correct?
>
> A. Well, I'm -- what I'm saying is that if you make that one modification, which is an obvious modification, **it seems to fulfill every aspect of the CoolIT claims**.

(Ex. 10 at 173:23-174:6 (emphasis added) (objections omitted); *see also id.* at 175:10-20 ("I wouldn't have included it if it was not useful to – to the arguments."), *id.* at 175:23-177:11 (discussing *Danger Den-RBX* as a comparable device to *Antarctica* with a separate housing and plate).)

Why does he do this? Because Dr. Tuckerman treats *Danger Den-RBX* as an analog to *Antarctica* that, unlike *Antarctica*, could satisfy the "seal" limitation and render the '330 and '284 patents obvious.  That is, if a POSITA could additionally modify *Danger Den-RBX*'s minichannels to be "microchannels." Dr. Tuckerman provides motivations to modify *Danger Den-RBX* to include microchannels—as an expert would do with a ground reference. (*See* Ex. 7, ¶69.)  In a more overt act of using it as a ground reference, he includes a color-annotated *Danger Den-RBX* image in his *Antarctica* '284 chart for dependent claims 4 and 19,[6] pointing to the device as "an obvious design alternative or modification of the *Antarctica*." (Ex. 9 (Chart I) at 9, 17.)  Dr. Tuckerman's actions bely any attempt to masquerade *Danger Den-RBX* as background; it is used as invalidating prior art.

Recent case law affirms the Court should go beyond Asetek's "clever labeling" and strike *Danger Den-RBX* as belatedly asserted prior art.  In *Digital Reg of Texas, LLC v. Adobe Systems, Inc.*,

---

[6] Claims 4 and 19 require a "spreader plate, wherein the plurality of walls extends upwardly of the spreader plate and the housing contacts the spreader plate." Dr. Tuckerman relies on *Danger Den-RBX* for a proposed modification of *Antarctica* that discloses "the housing contacts the spreader plate." (Ex. 9 (Chart I) at 7-9, 15-17.)

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

11

CASE NO. 3:19-CV-00410-EMC
DEFENDANTS' NOTICE OF MOTION AND
MOTION TO STRIKE

Adobe sought to use undisclosed references to demonstrate limitations not covered by its ground references, arguing that these references need not be previously disclosed because of their use to show the state of the art and POSITA knowledge. The court disagreed, pointing out that "demonstrating a separate limitation is disclosed in the prior art, constitutes another prior art reference that should have been disclosed in [Adobe's] Prior Art Election." *Digit. Reg*, No. C 12-1971 CW, 2014 WL 4090550, at *9 (N.D. Cal. Aug. 19, 2014). That is precisely what Dr. Tuckerman does throughout his report. As mentioned, he maps the *Danger Den-RBX* components to limitations found in the Asserted Claims.

Similarly, in *Pavo Solutions*, the defendant averred that its expert did not and would not use a previously undisclosed reference as invalidating prior art. 2019 WL 8138163, at *11. However, the expert's report made repeated use of claim terms and the court's construction in analyzing the reference to determine that it disclosed certain claim limitations. *Id*. The court concluded that this behavior "goes beyond the use of the [reference] as a mere background reference and crosses the line into prior art bearing on invalidity." *Id*. Dr. Tuckerman analyzed *Danger Den-RBX* like the defendant's expert in *Pavo Solutions*, providing color-coded annotations for various limitations to the '330 and '284 asserted claims in a manner consistent with his *Antarctica* annotations. (*See* Ex. 7, ¶¶68-69, 114 (color-coding for "housing," "seal," "plate", "inlet header," "outlet headers," "heat spreader plate"); *id*, ¶89 (*Danger Den-RBX* discloses a particular interpretation for "outlet flow path" recited in the '284 patent's asserted independent claims).) Dr. Tuckerman's actions demonstrate that he uses *Danger Den-RBX* as invalidating prior art.

Even if, *arguendo*, Dr. Tuckerman is just using *Danger Den-RBX* as a "good example" of why/how to modify *Antarctica*, courts in this District have nevertheless struck such references used to provide a motivation to modify. For example, in *Largan Precision* the court struck portions of an expert's report where he relied on a previously undisclosed reference "as an example of a reference that teaches the benefits of [an optical feature] that would motivate modifying" a ground reference to include a missing claim limitation. 2014 WL 6882275, at *6. The court noted that the undisclosed reference did not appear within the background section, but rather the substantive analysis of the report. *Id*. Similarly, here, Dr. Tuckerman alleges that *Danger Den-RBX* is a "good example" that would motivate a POSITA to modify *Antarctica* to, *e.g.*, separate the alleged "housing" and "plate"

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

12

CASE NO. 3:19-CV-00410-EMC
DEFENDANTS' NOTICE OF MOTION AND
MOTION TO STRIKE

regions in *Antarctica*'s single-piece plastic mold to insert a "seal." (*See* Ex. 7, ¶¶68-69, 114.) *DangerDen-RBX* appears in his analysis under "Summary of Prior Art That Renders the Asserted Claims of the ['330 / '284] Patent Invalid" and his *Antarctica*-based invalidity charts, not the background.

Dr. Tuckerman's invalidity charts also lay bare that he intends *Danger Den-RBX* as a secondary reference for *Antarctica* rather than "background." His *Antarctica* single-reference obviousness grounds must rely on POSITA "common sense" to gap-fill deficiencies in *Antarctica*. However, the PTAB in IPR2020-00825 (for the '266 patent) held that application of "common sense" for this subject matter ought not apply because "the technology at issue is not simple, and it is apparent that multiple modifications to [the prior art reference] would likely be necessary for success." (Ex. 11 at 38-39); *see also Arendi S.A.R.L. v. Apple Inc.*, 832 F.3d 1355, 1361-62 (Fed. Cir. 2016) (noting, *inter alia*, that "common sense is typically invoked to provide a known motivation to combine, not to supply a missing claim limitation" and also where the technology is "particularly straightforward."). As Asetek cannot lean purely on "common sense," *Danger Den-RBX* appears *numerous* times in Dr. Tuckerman's '330 and '284 *Antarctica* charts.[7] In contrast, Dr. Tuckerman makes a single mention of *Danger Den-RBX* in his *Antarctica-Chang* chart where he can rely on *Chang* for the "seal."[8]

If Asetek wanted to use *Danger Den-RBX* as prior art to the Asserted CoolIT Patents, it should have moved the Court to amend its invalidity contentions.[9] Doing so requires showing diligence under the good cause standard, which Asetek has not met. Asetek should not be permitted an end run around the Patent Local Rules, and the Court's limitations on asserted references (ECF No. 42), through clandestine use of *Danger Den-RBX* to shore up *Antarctica*'s issues with the Court's "seal"

---

[7] Claim 13 of the '266 patent recites a "seal that is a part of the plate" and does not require the "seal" extend between the "housing" and "plate." Asetek and Dr. Tuckerman thus point to a rubber gasket recessed into the bottom of *Antarctica*'s single-piece plastic mold.

[8] Claim element 14.4 in the *Antarctica-Chang* chart is the exception, but *Danger Den-RBX* is still used as a gap-filler. Dr. Tuckerman merely provides at least two separate mappings for this limitation, one being to modify *Antarctica* using *Danger Den-RBX* as a guide. (Ex. 8 (Chart II) at 53.)

[9] Asetek's surprise disclosure of *Danger Den-RBX* at Dr. Pokharna's June 25, 2021 inspection does not discharge its duty to amend. *Volterra Semiconductor Corp. v. Primarion, Inc.*, 796 F. Supp. 2d 1025, 1119 (N.D. Cal. 2011) ("[T]he fact that Defendants may have produced some of the prior art references in discovery or disclosed them in expert reports does not excuse Defendants from their obligation to amend their invalidity contentions under the Patent Local Rules.").

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

13

CASE NO. 3:19-CV-00410-EMC
DEFENDANTS' NOTICE OF MOTION AND
MOTION TO STRIKE

construction. *Digit. Reg*, 2014 WL 4090550, at *9. It is far too late now. *O2 Micro*, 476 F.3d at 1367; *Aylus*, 2015 WL 12976113, at *1; *Word to Info*, 2016 WL 6276956, at *6.

Dr. Tuckerman likewise uses *Kandlikar, Bonde,* and his own thesis in his Invalidity Report as unnamed secondary ground references to gap-fill missing limitations in his single-reference obviousness grounds based on *Antarctica*, *Kang*, and *Bhatti*. (*See* Ex. 7, ¶69 (microchannels for *Antarctica*), *id.*, ¶102 (*Bonde, Kandlikar* for single split flow for *Kang*), *id.*, ¶116 (same for *Bhatti*).) These grounds would otherwise have had to rely on "common sense" obviousness arguments that the PTAB in IPR2020-00825 found insufficient. (Ex. 11 at 38-39.) Dr. Tuckerman admitted under oath that he relied on these references as prior art that discloses certain limitations of the Asserted CoolIT Patents. (Ex. 10 at 119:13-120:13, 95:2-20, 72:11-74:18.) These references should also be stricken for some of the same reasons as *Danger Den-RBX*, including exceeding the Court's prior art limits.

### C. Dr. Tuckerman's *Chang* opinions violate the Court's Order on IPR estoppel

Dr. Tuckerman's overbroad reliance on *Chang* is also legally impermissible. The Court already struck *Chang* from Asetek's invalidity contentions for the '330 patent pursuant to 35 U.S.C. § 285(e). (*See* ECF No. 98 at 14.) Dr. Tuckerman's paragraph 73 opinion that "*Chang* discloses every limitation of the asserted claims" should be stricken for the same reasons. As Asetek is judicially estopped from asserting *Chang* in this manner, Dr. Tuckerman's '330 *Antarctica-Chang* chart should also be stricken because it includes *Chang* disclosures for <u>all</u> limitations.

## V. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their Motion and strike the portions of Dr. Tuckerman's opinions discussed above with respect to his Invalidity Report and any related deposition testimony.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

14

CASE NO. 3:19-CV-00410-EMC
DEFENDANTS' NOTICE OF MOTION AND
MOTION TO STRIKE

Dated: March 31, 2022

/s/ *Reuben H. Chen*

COOLEY LLP
HEIDI L. KEEFE (178960)
(hkeefe@cooley.com)
REUBEN H. CHEN (228725)
(rchen@cooley.com)
DANIEL J. KNAUSS (267414)
(dknauss@cooley.com)
ALEXANDRA LEEPER (307310)
(aleeper@cooley.com)
DEEPA KANNAPPAN (313573)
(dkannappan@cooley.com)
3175 Hanover Street
Palo Alto, CA 94304-1130
Telephone: (650) 843-5000
Facsimile: (650) 849-7400

DUSTIN M. KNIGHT (*pro hac vice*)
(dknight@cooley.com)
11951 Freedom Drive, 16th Floor
Reston, VA 20190
Telephone: (703) 456-8000
Facsimile: (703) 456-8100

*Attorneys for Defendant and Counter-claimant COOLIT SYSTEMS, INC. and Defendants CORSAIR GAMING, INC. and CORSAIR MEMORY, INC.*

GREENBERG TRAURIG, LLP
KYLE D. CHEN (SBN 239501)
(kchen@gtlaw.com)
1900 University Avenue
East Palo Alto, CA 94303
Telephone: (650) 289-7887
Facsimile: (650) 328-8508

*Attorneys for Defendant CoolIT Systems, Inc.*