Robert F. McCauley (SBN 162056)
robert.mccauley@finnegan.com
Arpita Bhattacharyya (SBN 316454)
arpita.bhattacharyya@finnegan.com
Jeffrey D. Smyth (SBN 280665)
jeffrey.smyth@finnegan.com
**FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP**
3300 Hillview Avenue
Palo Alto, California 94304
Telephone: (650) 849-6600
Facsimile: (650) 849-6666

Attorneys for Plaintiff and Counterdefendant ASETEK DANMARK A/S and Counterdefendant ASETEK USA, INC.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

ASETEK DANMARK A/S,

Plaintiff and Counterdefendant,

ASETEK USA, INC.,

Counterdefendant,

v.

COOLIT SYSTEMS, INC.,

Defendant and Counterclaimant,

COOLIT SYSTEMS USA INC., COOLIT SYSTEMS ASIA PACIFIC LIMITED, COOLIT SYSTEMS (SHENZHEN) CO., LTD.,

Defendants,

CORSAIR GAMING, INC. and CORSAIR MEMORY, INC.,

Defendants.

CASE NO. 3:19-cv-00410-EMC

**ASETEK DANMARK A/S'S NOTICE OF MOTION AND MOTION FOR JUDICIAL ESTOPPEL TO PREVENT DEFENDANTS FROM TAKING NONINFRINGEMENT POSITIONS INCONSISTENT WITH PRIOR INVALIDITY POSITIONS**

Date: May 5, 2022
Time: 1:30 PM
Location: Courtroom 5, 17th Floor
Judge: Hon. Edward M. Chen

**NOTICE OF MOTION**

TO ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on May 5, 2022, at 1:30 PM in Courtroom 5, located on the 17th Floor of the above-entitled court at 450 Golden Gate Avenue, San Francisco, California, or a soon thereafter as the matter may be heard before Honorable Edward M. Chen, Plaintiff and Counterdefendant Asetek Danmark A/S will and hereby does move for judicial estoppel to prevent all Defendants and anyone on their behalf from taking noninfringement positions that are inconsistent with prior invalidity positions against Asetek patents.

This Motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Arpita Bhattacharyya and the exhibits thereto, the [Proposed] Order filed concurrently herewith, all other papers or pleadings in this action, evidence and argument that the parties may present before or at the hearing on this matter, and any other matters of which this Court may take judicial notice.

## TABLE OF CONTENTS

I. INTRODUCTION .......... 1

II. FACTUAL BACKGROUND .......... 1

A. CoolIT Invalidated Asetek's '355 Patent Based on a Collection of Components in Duan That CoolIT Argued Formed a "Reservoir" .......... 1

B. CoolIT Invalidated Asetek's '354 Patent Based on a Combination of Batchelder and Shin, Each of Which CoolIT Argued Had a "Reservoir" Formed by a Collection of Components .......... 4

III. ARGUMENT .......... 6

A. Judicial Estoppel Prohibits a Party From Taking Inconsistent Positions to Gain Unfair Advantage .......... 6

B. CoolIT Should Be Judicially Estopped from Arguing That Multiple Components Cannot Form the Claimed "Reservoir" .......... 7

1. A noninfringement position that the accused products do not have the claimed "reservoir" because they have multiple components would be clearly inconsistent with the positions CoolIT took to invalidate Asetek's patents at the PTAB .......... 8

2. The PTAB accepted CoolIT's assertion that the claimed "reservoir" can be met by a combination of distinct components .......... 9

3. Defendants would derive an unfair advantage if permitted to take inconsistent positions on "reservoir" depending on whether it is trying to invalidate or avoid infringement of Asetek's patents .......... 9

IV. CONCLUSION .......... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Hamilton v. State Farm Fire & Cas. Co.*,
270 F.3d 778 (9th Cir. 2001) ........ *passim*

*Lampi Corp. v. American Power Products, Inc.*,
228 F.3d 1365 (Fed. Cir. 2000)........6

*New Hampshire v. Maine*,
532 U.S. 742 (2001)........6, 7

*Rissetto v. Plumbers and Steamfitters Local 343*,
94 F.3d 597 (9th Cir. 1995) ........7

*Russell v. Rolfs*,
893 F.2d 1033 (9th Cir.1990) ........1, 6

*Synopsys, Inc. v. Magma Design Automation, Inc.*,
No. C-04-3923 MMC, 2007 WL 322353 (N.D. Cal. Jan. 31, 2007)........6

## I. INTRODUCTION

The Defendants in this action should be estopped from having anyone testify or argue in this case that the accused CoolIT products do not infringe Asetek's patents based on an interpretation of "reservoir" that is inconsistent with the positions CoolIT advanced when it convinced the Patent Trial and Appeal Board (PTAB) to invalidate some of Asetek's patents. Specifically, CoolIT relied on combining multiple components of prior art references Duan, Shin, and Batchelder to "form a single receptacle" in order to teach the "reservoir" limitation in the PTAB. As a result, Defendants should be estopped from asserting to the jury or this Court that a combination of multiple receptacles or components cannot infringe. They cannot have it both ways.

The judicial estoppel doctrine dictates that a party cannot "play fast and loose with the courts" and take clearly inconsistent positions in different proceedings. *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001) (*quoting Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990). Having succeeded in convincing the PTAB to invalidate some of Asetek's patent claims, CoolIT and the Defendants must abide by the impact of their invalidity positions on their noninfringement defenses in this case. The Court should estop the Defendants and their attorneys and witnesses from asserting to the jury or the Court that the accused products do not infringe based an interpretation of "reservoir" that is contrary to CoolIT's PTAB positions.

## II. FACTUAL BACKGROUND

### A. CoolIT Invalidated Asetek's '355 Patent Based on a Collection of Components in Duan That CoolIT Argued Formed a "Reservoir"

CoolIT convinced the PTAB to invalidate certain challenged claims in Asetek's '355 patent by arguing that Duan is an anticipatory reference that discloses the "reservoir" limitation in Asetek's claims. Specifically, in its petition for *inter partes* review (IPR2020-00522), CoolIT asserted that the claims in the '355 patent "are drafted such that the reservoir refers to ***an overarching collection of components that form a single receptacle*** defining a fluid flow path." Ex. A at 14 (emphasis added). CoolIT argued to the PTAB that "[r]egarding the reservoir, Duan discloses a structure formed by an accommodation chamber 21, cap 3, and cooling plate 1 configured to pass cooling liquid there-through. . . ***These components together form the claimed reservoir***." *Id.* at 25 (emphasis added).

CoolIT asserted that "these components are described to be ***integrated to serve as a single receptacle*** defining a fluid flow path" (*id.* at 27), and CoolIT included the following annotated figure from Duan to illustrate its position to the PTAB:

*Id.* at 26. Regarding the above annotated figure, CoolIT explained its position as follows: "Duan's accommodation chamber 21 (of which the interior is colored lime green), cap 3 (light blue), and cooling plate 1 (dark blue) form the physical boundaries of a housing the discloses the claimed 'reservoir.'" *Id.* CoolIT also relied on the annotated version of Duan's Figure 7 below, explaining that "[t]he reservoir disclosed by Duan is further shown in FIG. 7 of Duan with a red outline added to show the boundaries of the reservoir."

FIG. 7

*Id.* at 27.

CoolIT submitted a declaration from its expert, Dr. Marc Hodes, in support of its position. Ex. B. Dr. Hodes testified that "In Duan, the reservoir is the structural combination of accommodation chamber 21, cap 3, and cooling plate 1, and it is configured to pass cooling liquid there-through." Ex. B, ¶ 57. Dr. Hodes included in his declaration the same color-coded figures included above, and explained with reference to the annotated version of Figure 7:

> within the red line (denoting a reservoir), Duan includes the accommodation chamber 21, cap 3, and cooling plate 1. A POSITA would have understood that these structures together form a single receptacle defining a fluid flow path. Therefore Duan discloses this limitation.

*Id.* at ¶ 61. He reaffirmed at his deposition that these three separate components form the "reservoir." Ex. C at 37:12-38:18, 47:1-48:5.

The PTAB adopted CoolIT's arguments and issued a final written decision finding that the Duan reference alone anticipated claims 1, 2, 6, 10, 11, and 13 of Asetek's '355 patent. Ex. D at 26. The PTAB accepted CoolIT's argument that Duan's structural combination of the accommodation chamber (21), cap (3), and cooling plate (1) met the patent claims' requirement of a "reservoir," notwithstanding that doing so required integrating three distinct components to form the "reservoir."

CoolIT continues to rely on the same Duan reference and arguments in its attempt to invalidate Asetek's '196 patent. In currently pending IPR2021-01196, CoolIT has again asserted that "the 'reservoir' refers to an overarching collection of components that form a single receptacle defining a fluid flow path." Ex. E at 10. And CoolIT continues to maintain that the combination of multiple components in Duan (the accommodation chamber 21, lower cover 225, cap 3, and cooling plate 1), discloses the claimed "reservoir." *Id.* at 23-24. CoolIT replaced Dr. Hodes with Dr. Pokharna, but Dr. Pokharna's opinions are the same: "these components are described to be integrated to serve as a single receptacle defining a fluid flow path." Ex. F, ¶53. Dr. Pokharna confirmed his understanding and CoolIT's position in his deposition: "Q. And is it your position that Duan's accommodation chamber 21, lower cover 225, cap 3, and cooling plate 1 components together form a single receptacle defining a fluid flow-path? Right? A. Yes." Ex. G at 8:17-21; *see also id.* at 16:13-22. A final written decision in this IPR will issue before trial in this case.

### B. CoolIT Invalidated Asetek's '354 Patent Based on a Combination of Batchelder and Shin, Each of Which CoolIT Argued Had a "Reservoir" Formed by a Collection of Components

CoolIT also convinced the PTAB to invalidate certain challenged claims of Asetek's '354 patent by relying on a collection of components described in prior art references Batchelder and Shin. CoolIT informed the PTAB it believes "the claims are drafted such that the reservoir refers to an ***overarching collection of components*** that form a single receptacle defining a fluid flow path." Ex. H at 7 (emphasis added). One prior art reference, Batchelder, describes a "thermal spreader plate 20" formed by multiple sheets (202, 204, 206, 208, 210 and 212) that are "assembled with adhesives, ultrasonic bonding, solvent bonding, or welding." Ex. I, 8:4-12. In particular, Batchelder notes that "[t]hose skilled in the art will recognize that the ***individual components*** of the active spreader plate could be molded, and that several of the described ***components can be functionally combined*** if the components are molded." *Id.* (emphases added); *see also id.* at Fig. 7. CoolIT argued that Batchelder discloses a reservoir, and specifically that the active heat spreader plate 20 of Batchelder is a "single, unitary receptacle" and thus a reservoir. Ex. H at 11-19.

Ex. H at 18. Essentially, CoolIT argued that the multiple components of Batchelder which are bonded together or can be functionally combined formed the claimed reservoir.

In the same IPR, CoolIT also argued that Shin "discloses a reservoir (e.g., an integrated structure) for providing liquid cooling of computing components." *Id.* at 12. CoolIT alleged that "a POSITA would understand that Shin discloses a reservoir (e.g., a receptacle containing a heat sink 4, flexible hose 6, coolant discharge section coupler 7, water supply coupler 9, and impeller case 11) configured to circulate a cooling liquid therethrough." *Id.* at 13-14. CoolIT included color-coded figures to show the five components that CoolIT asserted were part of the alleged "reservoir:"

 

*Id.* at 15-16. In the annotated figures, the components identified in dark blue, pink, green, light blue, and yellow are part of an integrated structure that CoolIT alleged was a "reservoir" within the meaning of Asetek's patent claims. *Id*. Notably, some of the alleged reservoir components are even separated by a motor vibration absorbing member (19) and connected by tubing. And CoolIT's position that Shin disclosed a "reservoir" was a key part of CoolIT's argument that one of ordinary skill would have been motivated to combine Shin and Batchelder. *Id.* at 44 ("Shin teaches coupling the radiator to the reservoir (to circulate liquid away) and to space it apart from the reservoir (to divert heat away from the reservoir). Adding a radiator to Batchelder would be an obvious modification to improve Batchelder's objective of cooling electronic components.").

CoolIT supported its arguments with a declaration from Dr. Hodes, which declaration included the same color-coded figures shown above. Ex. H at 23. Dr. Hodes explained "a POSITA would understand that Shin discloses or suggests a reservoir (the structural combination of heat sink 4, flexible hose 6, coolant discharge section coupler 7, water supply coupler 9, and impeller case 11) configured to circulate a cooling liquid there-through." *Id.* at ¶ 58. And Dr. Hodes confirmed his

opinion that Shin's combination of elements formed a "reservoir" during his deposition. Ex. C at 54:16-55:11.

In its final written decision, the PTAB relied on CoolIT's annotated version of Batchelder and mapping of Batchelder to the elements of the Asetek claims, including the "reservoir." Ex. J at 11. ("Claim 1 requires both an 'upper chamber' and a 'lower chamber,' which Petitioner maps to the flow channels on the top and bottom of Batchelder's active spreader plate, respectively. Pet. 16–18 (showing annotated versions of Batchelder's Figures 2, 7, and 8)." The PTAB accepted CoolIT's arguments and found that CoolIT "has shown by a preponderance of the evidence that the combination of Batchelder and Shin discloses the limitations of claim 1." *Id.* at 19-20.

## III. ARGUMENT

### A. Judicial Estoppel Prohibits a Party From Taking Inconsistent Positions to Gain Unfair Advantage

CoolIT and all Defendants should be precluded under the doctrine of judicial estoppel from taking positions before this Court that are clearly inconsistent with the positions CoolIT succeeded on before the PTAB. Having prevailed in the PTAB in invalidating some of Asetek's patents, the Court should bar CoolIT from taking a contrary position in this case to avoid infringement of the patents that remain. The purposes of judicial estoppel is to protect the integrity of the courts and of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment. *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001) (citing cases). The Ninth Circuit "invokes judicial estoppel not only to prevent a party from gaining an advantage by taking inconsistent positions, but also because of 'general consideration[s] of the orderly administration of justice and regard for the dignity of judicial proceedings,' and to 'protect against a litigant playing fast and loose with the courts.'" *Hamilton*, 270 F.3d at 782 (*quoting Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir.1990). [1] Moreover, judicial estoppel is not an affirmative defense, but instead a doctrine invoked

---

[1] Judicial estoppel raises procedural issues not unique to patent law, and therefore, regional circuit law shall control. *Lampi Corp. v. American Power Products, Inc.*, 228 F.3d 1365, 1377 (Fed. Cir. 2000). Judicial estoppel applies equally to positions taken before the United States Patent and Trademark Office. *See Synopsys, Inc. v. Magma Design Automation, Inc.*, No. C-04-3923 MMC, 2007 WL 322353, at *25 (N.D. Cal. Jan. 31, 2007) (noting the Ninth Circuit has held that the doctrine is also applicable where the prior proceeding was administrative rather than judicial).

by the Court at its discretion. *Rissetto v. Plumbers and Steamfitters Local 343*, 94 F.3d 597, 601–602 (9th Cir. 1995) (judicial estoppel is equitable doctrine invoked by court at its discretion). Because judicial estoppel is intended to prevent a misuse of "judicial machinery," it is an equitable defense invoked by the court at its discretion. *New Hampshire*, 532 U.S. at 750. There are no "inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel. Additional considerations may inform the doctrine's application in specific factual contexts." *Id*.[2]

The Court should apply judicial estoppel when it finds three factors identified by the Supreme Court are met: (1) the party's position is "clearly inconsistent" with its earlier position, (2) the party succeeded in persuading a court to accept the earlier position, and (3) the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001). These same factors have been applied by courts in the Ninth Circuit. *See, e.g.*, *Hamilton*, 270 F.3d at 782; Dkt. 351 at 6.

### B. CoolIT Should Be Judicially Estopped from Arguing That Multiple Components Cannot Form the Claimed "Reservoir"

Through Dr. Abraham's noninfringement opinions, CoolIT is likely to take the position that multiple components cannot form the "reservoir" recited in Asetek's claims. That position would be clearly inconsistent with the positions that CoolIT advanced and the PTAB adopted when Asetek's other patents were invalidated. Allowing CoolIT to advance those position here would be unfair to Asetek and they should be barred under the judicial estoppel doctrine.

---

[2] Although the Corsair Defendants were not parties to the IPR proceedings in which CoolIT convinced the PTAB to find Asetek's '354 and '355 patents unpatenable, this Court should exercise its discretion to apply judicial estoppel against the Corsair Defendants as well as the CoolIT Defendants for the reasons in the above paragraph. Moreover, CoolIT is indemnifying and defending its customer Corsair in this action based on its purchase and resale of CoolIT products, and both the Corsair Defendants and CoolIT have represented to this Court that CoolIT is the real defendant who is defending this action on behalf of its customer, Corsair. *Asetek v. Corsair*, Case 3:20-cv-06541-EMC, Dkt. 20 at 6-7. A product purchase agreement governs Corsair's purchase of CoolIT's liquid cooling technology, and further provides that CoolIT will indemnify Corsair and assume its defense if a third party accuses CoolIT-supplied technology of patent infringement, which is the case here. *Id*. at 7. The CoolIT and Corsair Defendants are also represented by the same counsel in this action.

### 1. A noninfringement position that the accused products do not have the claimed "reservoir" because they have multiple components would be clearly inconsistent with the positions CoolIT took to invalidate Asetek's patents at the PTAB

A noninfringement position in this case—that multiple components cannot be combined to form a "reservoir"— would be clearly inconsistent with the positions CoolIT took before the PTAB, where it argued that multiple, separate components in Duan, Batchelder, and Shin formed the claimed "reservoir." This clear inconsistency establishes the first judicial estoppel factor.

To invalidate Asetek's '355 patent in the PTAB, CoolIT combined separate components in Duan (accommodation chamber 21, cap 3, and cooling plate 1) to argue that the Duan prior art anticipated every element of the challenged claims, including the reservoir. Ex. A, at 25 (referring to Duan's separate elements as "components" and alleging that "[t]hese components together form the claimed reservoir."). CoolIT illustrated its point with an annotated figure from Duan (section II.A above), and unambiguously asserted that "Duan's accommodation chamber 21 (of which the interior is colored lime green), cap 3 (light blue), and cooling plate 1 (dark blue) form the physical boundaries of a housing the [sic] discloses the claimed 'reservoir.' . . . ***these components are described to be integrated to serve as a single receptacle*** defining a fluid flow path." *Id.* at 26-27 (emphasis added). CoolIT also drew a red line around these components in its annotated version of Duan's Figure 7 (*see* Section II.A above) to illustrate that Duan had the claimed "reservoir." And only by combining these separate components could CoolIT argue that Duan taught a "reservoir." CoolIT has continued to assert this position in its current IPRs, with Dr. Pokharna confirming CoolIT's position that Duan's accommodation chamber 21, lower cover 225, cap 3, and cooling plate 1 components ***together form a single receptacle*** defining a fluid flow-path. Ex. G at 8:17-21.

Similarly, to invalidate Asetek's '354 patent in the PTAB, CoolIT combined different pieces of Batchelder and Shin to form a "reservoir" as claimed in the Asetek patents. CoolIT identified five separate components of Shin that together formed the "reservoir" — "heat sink 4, flexible hose 6, coolant discharge section coupler 7, water supply coupler 9, and impeller case 11" Ex. H at 13-14 (discussing Shin's "reservoir"). CoolIT argued that the separate yellow and blue components together formed the claimed "reservoir," even though they are not only separate components, but are also

separated by a motor and connected by tubing. Ex. H at 13-14 ("Shin discloses a reservoir (e.g., a receptacle containing a heat sink 4, flexible hose 6, coolant discharge section coupler 7, water supply coupler 9, and impeller case 11) configured to circulate a cooling liquid therethrough.") For Batchelder, CoolIT argued that multiple components that are bonded together can form a "single, unitary receptacle" and thus the claimed "reservoir." Ex. H at 11-19; Ex. I, 7:23-8:12, Fig. 7. Dr. Pokharna confirmed. Ex. G at 24:9-24.

Because CoolIT has taken positions before the PTAB that multiple components in the prior art can "form a single receptacle" or are "integrated to serve as a single receptacle," Defendants should not be allowed in this litigation to take the opposite position when arguing that the CoolIT-made products do not infringe the same "reservoir" limitation.

**2. The PTAB accepted CoolIT's assertion that the claimed "reservoir" can be met by a combination of distinct components**

The PTAB accepted CoolIT's argument that a "reservoir" is met by separate components formed as a single receptacle and invalidated the challenged claims of Asetek's '354 and '355 patents, establishing the second judicial estoppel factor.

Specifically, the PTAB found Duan anticipated the challenged claims of Asetek's '355 patent, and thus necessarily found that Duan's separate components (accommodation chamber 21, cap 3, and cooling plate 1) were the claimed "reservoir" as CoolIT argued. Ex. D at 23. The PTAB also accepted CoolIT's position that Batchelder and Shin have reservoirs. Ex. J at 19-20. The PTAB did not reject or disagree with CoolIT's characterizations.

Accordingly, the second element of judicial estoppel has been established, and could potentially be established again in the current IPR against Asetek's '196 patent before we reach trial in this case.

**3. Defendants would derive an unfair advantage if permitted to take inconsistent positions on "reservoir" depending on whether it is trying to invalidate or avoid infringement of Asetek's patents**

Defendants would derive an unfair advantage if CoolIT were permitted to attack—and indeed invalidate—Asetek's patents in the PTAB by asserting that the multiple components of Duan, Batchelder, and Shin can form a "reservoir," but then have Defendants apply a contrary interpretation

of "reservoir" to argue to the jury or Court that the accused products do not infringe. Accordingly, the third judicial estoppel factor is met.

Specifically, CoolIT advanced a broad understanding of the "reservoir" limitation so that it could find prior art to invalidate some of Asetek's patents, and prevailed at the PTAB by asserting that a "reservoir" could be a combination of separate and distinct components that form a single receptacle. Defendants would gain an unfair advantage if now allowed to tell the jury or Court that the reservoir cannot have separate components (as the accused CoolIT-made products do). Such manipulation of the judicial process is exactly the harm that the equitable doctrine of judicial estoppel was created to stop. *Hamilton*, 270 F.3d at 782.

The additional and clear harm to Asetek of allowing Defendants to take inconsistent positions is that Asetek would not be able to effectively cross examine Dr. Abraham (CoolIT's noninfringement expert) to establish their inconsistent positions. CoolIT strategically chose to use different experts in the IPRs and the district court case, probably so that Dr. Abraham could profess ignorance.

Faced with clearly conflicting positions, CoolIT made a strategic choice to try and invalidate Asetek's patents at the PTAB where it argued that multiple components could form a single receptacle. The result of that choice is that Defendants cannot take an inconsistent position on infringement. Asetek should not be prejudiced by CoolIT's strategic, litigation driven decisions.

Because Defendants will receive an unfair advantage and impose an unfair detriment on Asetek if Dr. Abraham is permitted to testify that a collection/integration of components cannot meet the "reservoir" limitation, the third judicial estoppel factor is met.

## IV.    CONCLUSION

CoolIT has successfully argued at the PTAB that the claimed "reservoir" can be formed from a combination of separate components and Defendants cannot now take a clearly inconsistent position in front of the jury to avoid infringement. Judicial estoppel applies and the Court should bar Defendants from taking inconsistent positions.

Dated: March 31, 2022

FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP

By: */s/ Arpita Bhattacharyya*
Arpita Bhattacharyya
Attorneys for Plaintiff and Counterdefendant ASETEK DANMARK A/S and Counterdefendant ASETEK USA, INC.