# Exhibit B

```
 1              UNITED STATES DISTRICT COURT
 2             NORTHERN DISTRICT OF CALIFORNIA
 3                 SAN FRANCISCO DIVISION
 4   ASETEK DANMARK A/S,            )
                                    )
 5   Plaintiff and                 )
     Counterdefendant,             )
 6                                  )
       VS.                         ) CASE NO.
 7                                  ) 3:19-CV-00410-EMC
     COOLIT SYSTEMS, INC.,         )
 8                                  )
     Defendant and Counterclaimant.)
 9                                  )
     COOLIT SYSTEMS USA INC. COOLIT )
10   SYSTEMS ASIA PACIFIC LIMITED,  )
     COOLIT SYSTEMS (SHENZHEN) CO., )
11   LTD.,                          )
                                    )
12   Defendants,                    )
                                    )
13   CORSAIR GAMING, INC. and       )
     CORSAIR MEMORY, INC.,          )
14                                  )
                 Defendants.        )
15                                  )
16        REMOTELY CONDUCTED VIDEOTAPED DEPOSITION OF
17               DAVID B. TUCKERMAN, PH.D.
18        Lake Stevens, Washington (Witness' location)
19               Friday, March 18, 2022
20
21
22
     Reported by:
23   LYDIA ZINN
     RPR, FCRR, CSR No. 9223
24   Job No. SF 5137947
25   PAGES 1 - 103
```

Page 1

```
 1              UNITED STATES DISTRICT COURT
 2             NORTHERN DISTRICT OF CALIFORNIA
 3                SAN FRANCISCO DIVISION
 4   ASETEK DANMARK A/S,            )
                                    )
 5   Plaintiff and                 )
     Counterdefendant,             )
 6                                  )
        VS.                         ) CASE NO.
 7                                  ) 3:19-CV-00410-EMC
     COOLIT SYSTEMS, INC.,          )
 8                                  )
     Defendant and Counterclaimant. )
 9                                  )
     COOLIT SYSTEMS USA INC. COOLIT )
10   SYSTEMS ASIA PACIFIC LIMITED,  )
     COOLIT SYSTEMS (SHENZHEN) CO., )
11   LTD.,                          )
                                    )
12   Defendants,                    )
                                    )
13   CORSAIR GAMING, INC. and       )
     CORSAIR MEMORY, INC.,          )
14                                  )
                 Defendants.        )
15                                  )
16
17           Remotely conducted videotaped deposition of
18   DAVID B. TUCKERMAN, PH.D., taken on behalf of
19   Defendant/Counterclaimants COOLIT SYSTEMS USA INC.
20   COOLIT SYSTEMS ASIA PACIFIC LIMITED, COOLIT SYSTEMS
21   (SHENZHEN) CO., LTD., CORSAIR GAMING, INC. and CORSAIR
22   MEMORY, INC., at Lake Stevens, Washington, beginning at
23   2:17 p.m. and ending at 5:59 p.m., on Friday, March 18,
24   2022, before LYDIA ZINN, Certified Shorthand Reporter
25   No. 9223.
```

Page 2

```
 1    APPEARANCES:
 2    For Plaintiff/Counterdefendant Asetek Danmark A/S:
                          Finnegan, Henderson, Farabow
 3                          Garrett & Dunner LLP
                          Stanford Research Park
 4                          3300 Hillview Avenue, 2nd Floor
                          Palo Alto, CA  94304-1203
 5                          (650) 849-6600
                          arpita.bhattacharyya@finnegan.com
 6                   BY:  ARPITA BHATTACHARYYA
 7    For Defendant/Counterclaimant CoolIT Systems, Inc.; and
      Defendants CoolIT Systems USA, Inc., CoolIT Systems
 8    Asia Pacific Limited, CoolIT Systems (Shenzhen) Co.,
      Ltd.; Corsair Gaming Inc., and Corsair Memory, Inc.:
 9                          Cooley LLP
                          3175 Hanover Street
10                          Palo Alto, CA  94304-1130
                          (650) 843-5000
11                          rchen@cooley.com
                     BY:  REUBEN CHEN
12
                          Greenberg Traurig, LLP
13                          1900 University Avenue, 5th Floor
                          East Palo Alto, CA  94303
14                          (650) 289-7887
                          kchen@gtlaw.com
15                   BY:  KYLE D. CHEN
16
17
      Also Present:
18    Grant Cihlar, Videographer, Veritext
19
20
21
22
23
24
25
                                              Page  3
```

```
1                        I N D E X
2    Friday, March 18, 2022
3    WITNESS                                    PAGE
     DAVID B. TUCKERMAN, PH.D.
4    (SWORN)                                       7
     Examination by Mr. Reuben Chen                8
5
6    EXHIBITS MARKED FOR IDENTIFICATION         PAGE
     EXHIBIT 362    US Patent Application
7                   Publication US 2007/0163750
                    (Bhatti)
8                   ASE-CLT00044399 to -00044405    73
9    EXHIBIT 363    Judgment re:  IPR2020-00825,
                    Patent 10,274,266 (49 pages)    76
10
     EXHIBIT 364    US Patent Application
11                  Publication US 2006/0096738
                    (Kang)
12                  ASE-CLT00044566 to -00044574    77
13   EXHIBITS PREVIOUSLY MARKED                 PAGE
     EXHIBIT 259    Expert Report of Dr. David B.
14                  Tuckerman Regarding
                    Invalidity of US Patent Nos.
15                  8,746,330; 9,603,284; and
                    8,274,266 (75 pages)             8
16
     EXHIBIT 259A   Invalidity Claim Charts I and
17                  II for US Patent No. 8,746,330
                    (80 pages_                       8
18
     EXHIBIT 259B   Invalidity Claim Charts I
19                  through IV for US Patent No.
                    9,603,284 (77 pages)             8
20
     EXHIBIT 259C   Invalidity Claim Chart for
21                  US Patent No. 10,274,266
                    (13 pages)                       8
22
     EXHIBIT 259D   Curriculum Vitae                 8
23
     EXHIBIT 259E   Materials Considered in
24                  Preparation of Invalidity
                    Expert Report                    8
25
```

Page 4

1    MS. BHATTACHARYYA:  -- I will suspend the  2:24:54PM

2 deposition.

3    MR. REUBEN CHEN:  I will not do that.

4    MS. BHATTACHARYYA:  Mr. Chen, if you wanted

5 to ask questions about Antarctica, you should have  2:24:59PM

6 listed that as one of the topics.

7  I -- I mean, I can give some leeway to

8 Dr. Tuckerman and see if he recalls; but if you ask

9 in-depth questions about the Antarctica, about

10 what's -- what's in his report, then he will either  2:25:13PM

11 have to review his report or -- or you have to just

12 move on.

13  You should have listed Antarctica as one of the

14 topics, like you did with Bhatti, Kang, Hamilton,

15 secondary considerations.  You should have listed  2:25:25PM

16 Antarctica.  You just did not.  And now you cannot

17 change the scope of this deposition.

18  So you can save your questions till the end about

19 the Antarctica, and just go on and ask your other

20 questions.  2:25:41PM

21    MR. REUBEN CHEN:  Ms. Bhattacharyya, you are

22 coaching the witness right now.

23    MS. BHATTACHARYYA:  I am not coaching the

24 witness.

25    MR. REUBEN CHEN:  You should stop that.  2:25:42PM

                 Page 12

```
 1    Please --                                          2:25:46PM

 2            MS. BHATTACHARYYA:  He -- he has the topics.

 3    He got the ten topics.

 4            MR. REUBEN CHEN:  Please, please limit your

 5    statements to objections or instructions not to answer   2:25:53PM

 6    questions.

 7            MS. BHATTACHARYYA:  You can ask your

 8    question.

 9    BY MR. REUBEN CHEN:

10    Q    Dr. Tuckerman -- Dr. Tuckerman, I will repeat my   2:26:00PM

11    question.

12    A    Okay.

13    Q    You did not include any evidence of measurements

14    of the channels of the Antarctica device in your

15    report.  Correct?                                    2:26:13PM

16    A    Are you referring to the --

17            MS. BHATTACHARYYA:  Objection.  Out --

18    mischaracterizes prior testimony, Dr. Tuckerman's

19    report.  Outside the scope of this deposition.

20            THE WITNESS:  Are -- now, which report are   2:26:27PM

21    you referring to here?  Are you referring to the report

22    that's in -- that's Exhibit 259 or...

23    BY MR. REUBEN CHEN:

24    Q    Yes, your Invalidity Report, Dr. Tuckerman.

25    A    Okay.  So...                                    2:26:39PM
```

Page 13

1    Q    This would be paragraph 57 of your report.          2:26:49PM

2    A    Ah, thank you.  That speeds things up.  Okay.

3         So I...  Okay.  So I'm saying space between

4    adjacent fins is about 0.9 to 1.0 millimeters.  And,

5    while I don't specify that here, I deposed -- I was     2:27:24PM

6    deposed previously on this, and indicated that I took

7    measurements with calipers at the bottoms of the

8    microchannels on July 5th -- I think it was -- and

9    got -- didn't get any measurements above 1.0.  And they

10   were all .9-something.  But that -- that's about all.   2:27:47PM

11   I mean, I didn't.

12   Q    And you testified that you did not submit any

13   evidence of the measurements that you took in your

14   report.  Correct?

15         MS. BHATTACHARYYA:  Objection.                     2:28:07PM

16   Mischaracterizes prior testimony.  Outside the scope of

17   this deposition.

18         THE WITNESS:  Well, I mean, my assertion was

19   based on having done these measurements.  So, I mean...

20   BY MR. REUBEN CHEN:                                      2:28:25PM

21   Q    Right, but listen to the question.  The question

22   is:  Did you submit any evidence of the measurements

23   that you took and included that evidence in your

24   report?

25         MS. BHATTACHARYYA:  Same objections.               2:28:35PM

                                                      Page 14

```
 1              THE WITNESS:  I took some measurements.  And      2:28:42PM

 2   I reported that they were between .9 and 1.0.  And

 3   that -- that's all I did.

 4   BY MR. REUBEN CHEN:

 5   Q    But do you have any evidence that you submitted in     2:28:53PM

 6   your report that reflects that you took those

 7   measurements?

 8              MS. BHATTACHARYYA:  Objection.  Outside the

 9   scope of this deposition.  Mischaracterizes prior

10   testimony and the report.                                  2:29:06PM

11   BY MR. REUBEN CHEN:

12   Q    Dr. Tuckerman, you testified under oath previously

13   that you did not take any pictures of the measurements

14   that you allegedly took.  Correct?

15              MS. BHATTACHARYYA:  Objection.                  2:29:21PM

16   Mischaracterizes prior testimony.  Mischaracterizes

17   report.  Outside the scope of this deposition.

18              THE WITNESS:  I don't remember what my exact

19   words were.  I did not keep records of the

20   measurements, if that's what you mean.  I don't know       2:29:37PM

21   exactly what words I used.

22   BY MR. REUBEN CHEN:

23   Q    Right.  So there are no records of your

24   measurements that are included in your report.

25   Correct?                                                   2:29:46PM
```

Page 15

```
 1              MS. BHATTACHARYYA:  Same objections.              2:29:48PM

 2         THE WITNESS:  I didn't think it was necessary

 3    at the time.  I mean, it -- it wasn't asked to do that.

 4    BY MR. REUBEN CHEN:

 5    Q    Okay.  Now, after your report was submitted but       2:29:58PM

 6    before you were deposed in December of 2021, you

 7    reviewed a document provided by Asetek's counsel that

 8    allegedly discussed a machining tool.  Correct?

 9              MS. BHATTACHARYYA:  Objection.  Outside the

10    scope of this deposition.                                  2:30:17PM

11       Mr. Reuben, I'm going to suspend this deposition

12    now.

13       Which -- which topic are you referring to?  You

14    had ten topics in your deposition.  What are you

15    talking about?                                             2:30:26PM

16              MR. REUBEN CHEN:  Let's go off the record.

17    Let's go off the record, because you're -- you're

18    eating up time by being --

19              MS. BHATTACHARYYA:  Then go off the record

20    and discuss --                                             2:30:32PM

21              MR. REUBEN CHEN:  Let's go off the record.

22    Let's go off the record.

23              MS. BHATTACHARYYA:  Okay.

24              THE VIDEOGRAPHER:  We are going off the

25    record.  The time is 2:30 p.m. Pacific.  And this is      2:30:36PM
```

                                                    Page 16

```
 1    the end of media unit one.                        2:30:40PM

 2    (Discussion off the record.)

 3            THE VIDEOGRAPHER:  We're going back on the

 4    record.  The time is 3:13 p.m., and this is the

 5    beginning of media unit two.  Please continue.     3:13:16PM

 6            MR. REUBEN CHEN:  Thank you.

 7    Q.   Dr. Tuckerman, after your Expert Report was

 8    submitted, but before being deposed, you reviewed a

 9    document provided by Asetek's counsel that allegedly

10    discussed a machining tool.  Correct?              3:13:34PM

11            MS. BHATTACHARYYA:  Objection.  Outside the

12    scope of the topics provided for this deposition.

13            THE WITNESS:  I do recall that, yes.

14    BY MR. REUBEN CHEN:

15    Q    And was it Ms. Bhattacharyya that showed you that   3:13:49PM

16    document?

17            MS. BHATTACHARYYA:  Same objection.

18    Mischaracterizes prior testimony.

19            THE WITNESS:  I saw a -- Ms. Bhattacharyya

20    showed me a document with a -- with a blade, and -- and   3:14:04PM

21    a measurement of the blade.

22    BY MR. REUBEN CHEN:

23    Q    Do you recall when you review --

24            MS. BHATTACHARYYA:  Dr. Tuckerman, I caution

25    you -- Dr. Tuckerman, I caution you to not reveal    3:14:15PM
```

Page 17

1    discussions with counsel.                              3:14:20PM

2              THE WITNESS:  Okay.  Yes.

3    BY MR. REUBEN CHEN:

4    Q     Did you recall when you reviewed that document?

5    A     Not exactly, no.                                 3:14:28PM

6    Q     Was it in December of 2021?

7              MS. BHATTACHARYYA:  Same objections.

8              THE WITNESS:  I don't know.

9    BY MR. REUBEN CHEN:

10   Q     Okay.  Was it as part of preparing for your      3:14:41PM

11   deposition in December of 2021?

12             MS. BHATTACHARYYA:  Same objections.

13             THE WITNESS:  Well, as I recall, the -- this

14   issue came up and -- of, you know, what -- what were

15   the dimensions.                                        3:15:10PM

16        So, I mean -- I mean, what was -- what was the

17   question again?  Sorry.

18             MR. REUBEN CHEN:  That's okay.  I'll move on

19   to the next one.

20             THE WITNESS:  Yeah.                           3:15:21PM

21   BY MR. REUBEN CHEN:

22   Q     Is that document written in Danish?

23   A     Yeah.  As I recall, it was.

24   Q     And you don't read Danish.  Correct?

25   A     I -- I do not.                                    3:15:35PM

                                              Page 18

1    Q    Did someone translate that document for you?        3:15:36PM

2    A    Nobody translated it for me.

3    Q    To your knowledge, does Ms. Bhattacharyya read

4    Danish?

5    A    I would not know.                                    3:15:50PM

6         MS. BHATTACHARYYA:  Objection.  Calls for

7    speculation.

8         THE WITNESS:  I would not know one way or the

9    other.

10   BY MR. REUBEN CHEN:                                       3:15:58PM

11   Q    Okay.  So you don't know for certain that the

12   document discusses a machining tool used to create

13   Antarctica.  Correct?

14        MS. BHATTACHARYYA:  Objection.  Calls for

15   speculation.  Foundation.                                 3:16:07PM

16        THE WITNESS:  It --

17        MS. BHATTACHARYYA:  And objection.  Outside

18   the scope of the deposition topics.

19        THE WITNESS:  It -- as I recall, it was

20   represented as having been provided by Asetek to          3:16:31PM

21   counsel as being the blade or a blade that -- that was

22   used for machining of Antarctica.

23   BY MR. REUBEN CHEN:

24   Q    Who made those representations to you?

25        MS. BHATTACHARYYA:  Objection.  Outside the          3:16:51PM

Page 19

```
1    scope of the deposition topics.                        3:16:52PM

2        I will caution Dr. Tuckerman not to reveal

3    contents of discussions with counsel.

4            MR. REUBEN CHEN:  I'm not asking for the

5    content.  I'm asking who.                               3:17:02PM

6            MS. BHATTACHARYYA:  Same.  Same objections.

7    The -- the question calls for privileged information.

8            MR. REUBEN CHEN:  I disagree with that.

9        Are you instructing the witness not to answer?

10           MS. BHATTACHARYYA:  I instruct the witness       3:17:13PM

11   not to answer any questions of discussions with

12   counsel.

13   BY MR. REUBEN CHEN:

14   Q    Same question, then.  Who --

15           MS. BHATTACHARYYA:  Same --                      3:17:22PM

16   BY MR. REUBEN CHEN:

17   Q.   Who represented to you that the document discusses

18   the machining tool used to create Antarctica?

19           MS. BHATTACHARYYA:  I will instruct the

20   witness not to answer the question.  It calls for        3:17:33PM

21   information that is protected under Rule 26.

22           MR. REUBEN CHEN:  I disagree, and so I'll

23   just reserve my right to redepose Dr. Tuckerman to ask

24   him that -- that specific question.

25   Q    Dr. Tuckerman, were you ever shown the entire       3:17:47PM
```

Page 20

```
1    document, or just a picture of one page of that          3:17:49PM

2    document?

3    A    I -- I saw only one -- that one page.

4    Q    A picture of that one page?

5          MS. BHATTACHARYYA:  Objection.                      3:18:04PM

6    Mischaracterizes exhibits and prior testimony.

7          THE WITNESS:  Well, yeah.  I mean, I didn't

8    have the physical page.  It was, you know, a JPG or

9    whatever.

10   BY MR. REUBEN CHEN:                                       3:18:17PM

11   Q    You didn't have the physical document in front of

12   you.  There was just a JPEG of one page of the

13   document.  Is that -- is that accurate?

14         MS. BHATTACHARYYA:  Objection.  Objection.

15   Mischaracterizes prior -- mischaracterizes the record    3:18:26PM

16   and prior testimony.

17         THE WITNESS:  I mean, I don't -- I don't know

18   if it was a JPEG.  I -- I was shown an image that

19   appeared to be from a machining manual.

20   BY MR. REUBEN CHEN:                                       3:18:51PM

21   Q    So there was an image of one page of a document --

22   correct? -- that you reviewed?

23         MS. BHATTACHARYYA:  Objection.  Outside the

24   scope of deposition topics.  Mischaracterizes prior

25   testimony and exhibits from prior depositions.           3:19:03PM
```

Page 21

1    Mischaracterizes the record.                        3:19:07PM

2          THE WITNESS:  That's what it appeared to be.

3    BY MR. REUBEN CHEN:

4    Q    Okay.  But you never reviewed the entire document.

5    Correct?                                            3:19:16PM

6          MS. BHATTACHARYYA:  Objection.  Foundation.

7    Outside the scope of the deposition.

8          THE WITNESS:  I was shown that one page.

9    BY MR. REUBEN CHEN:

10   Q    Okay.  And it wouldn't have mattered anyway,    3:19:29PM

11   because you don't read Danish.  Right?

12         MS. BHATTACHARYYA:  Objection.  Outside the

13   scope of the deposition.

14         THE WITNESS:  As I said, it was represented

15   to me that that was the blade that was -- that -- a   3:19:48PM

16   blade that had been used in Antarctica.

17   BY MR. REUBEN CHEN:

18   Q    And there was an alleged measurement of the

19   machining tool.  Correct?

20         MS. BHATTACHARYYA:  Objection.              3:19:35PM

21   Mischaracterizes exhibit.  Prior testimony.  Outside

22   the scope of the deposition topics.

23         THE WITNESS:  So the picture showed the tool

24   being measured with -- with calipers.  The width.  The

25   blade width it showed.                               3:20:21PM

                                             Page 22

```
 1    BY MR. REUBEN CHEN:                                      3:20:24PM

 2    Q    Do you know who measured the machining tool?

 3              MS. BHATTACHARYYA:  Same objections.

 4              THE WITNESS:  I do not.

 5    BY MR. REUBEN CHEN:                                      3:20:31PM

 6    Q    You did not measure the machining tool.  Correct?

 7    A    No, I never laid hands on the tool.

 8    Q    Do you know how the machining tool was measured?

 9              MS. BHATTACHARYYA:  Same objections.

10              THE WITNESS:  It was -- it appeared to be,     3:20:48PM

11    from the picture, measured in a very conventional

12    manner, the same way I would have measured it, which

13    was to put it in calipers, and -- and measure it.

14    BY MR. REUBEN CHEN:

15    Q    Do you know that for certain; that a caliper was   3:21:04PM

16    used to measure the machining tool?

17              MS. BHATTACHARYYA:  Same objections.

18              THE WITNESS:  Well, I mean, I don't have the

19    image in front of me, but unless I'm recalling wrongly,

20    there was a pair of digital calipers clamped on the --  3:21:24PM

21    on the blade, you know.  So it -- it -- that was how

22    anyone of ordinary skill in the art would have made

23    that sort of measurement.

24    BY MR. REUBEN CHEN:

25    Q    Now, as a matter of physics and manufacturing      3:21:47PM
```

Page 23

```
1    practice, an actual channel in Antarctica is going to        3:21:50PM

2    be wider than the width of the component in the

3    machining tool used to create that channel.  Correct?

4           MS. BHATTACHARYYA:  Objection.  Outside the

5    scope of the deposition topics.  Foundation.             3:22:07PM

6    Mischaracterizes the record.

7           THE WITNESS:  So generally with that type of

8    machining with blades, you -- you get a taper.  Okay?

9    There's blade wobble, and such.  And you -- you know,

10   you get something that's wider at the top than at the    3:22:31PM

11   bottom.

12      At the bottom you would expect to get -- you know,

13   either exactly the blade width, or if the blade has

14   worn, you know, because when blades have been used for

15   a while they can, you know, get -- get narrower, maybe   3:22:48PM

16   it would be even less.  But you know, that -- like I

17   say, you get a taper.  And you're going to get -- you

18   know, I think I kind of answered that.

19   BY MR. REUBEN CHEN:

20   Q   Now, just to be clear, you testified that it was     3:23:20PM

21   represented to you that the document discusses the

22   machining tool used to create Antarctica.  Correct?

23          MS. BHATTACHARYYA:  Same objections.

24          THE WITNESS:  Not -- not necessarily that

25   particular Antarctica unit; but I mean, it -- it was     3:23:45PM
```

Page 24

1    represented as a -- a machining tool that was used in          3:23:50PM

2    the production of Antarcticas.  There's -- there was no

3    representation made that that particular tool was used

4    on that particular Antarctica.  As I think I mentioned

5    in the past, for all I know it was -- you know, maybe        3:24:08PM

6    it was an out-of-spec unit.

7        I mean, who -- you know, it was -- it was just one

8    physical sample that I measured.  And I was mainly just

9    concerned that, you know, it -- it wasn't grossly out

10   of line on dimensions.  So I put the calipers in; made      3:24:25PM

11   the measurements.

12       None of them that I measured were above

13   1 millimeter.  And I was -- I was satisfied.

14   BY MR. REUBEN CHEN:

15   Q    So your opinion that Antarctica has channels that       3:24:41PM

16   are between 0.9 to 1 millimeters -- are you relying on

17   the representation that the document in Danish

18   discusses the machining tool that was used to create

19   Antarctica?

20           MS. BHATTACHARYYA:  Objection.  Outside the           3:25:08PM

21   scope of the deposition topics.  Mischaracterizes prior

22   deposition testimony.

23           THE WITNESS:  So the -- the only thing I can

24   actually assert about the dimensions of that particular

25   Antarctica were the measurements that I took on that         3:25:37PM

                                                        Page 25

```
 1    particular sample, which I measured with calipers at        3:25:43PM

 2    the base of the samples, and got numbers that were

 3    close to but not in excess of 1 millimeter.

 4         The other information, you know, about the blade I

 5    just viewed as plausible corroboration that that's a         3:26:04PM

 6    blade that was used in Antarctica machining, and

 7    therefore that you would expect that the channel widths

 8    would be the order of a millimeter from that sort of

 9    blade.  And so it -- it kind of tied, but I certainly

10    wasn't taking anyone's word for -- for that.                3:26:36PM

11         Like I say, I didn't -- you know, I was asked in

12    the deposition about it.  And I believe -- you know, I

13    don't remember exactly what I said, but the -- it -- it

14    seemed very plausible that that kind of blade would

15    have been used to make the structure -- to make the         3:26:58PM

16    structures that I measured on that Antarctica sample.

17         But the only thing I can factually assert to you

18    is I made measurements at the bases of the channels on

19    that Antarctica with calipers; did not get any

20    measurements above 1 millimeter.  But they were very        3:27:17PM

21    close, you know.  Nine-something.  So...

22    BY MR. REUBEN CHEN:

23    Q.   Are you relying on what you call the "plausible

24    corroboration" of that document for your ultimate

25    opinion that Antarctica's channels satisfy the              3:27:31PM
```

Page 26

```
 1    microchannels limitation?                          3:27:37PM

 2           MS. BHATTACHARYYA:  Objection.  Outside the

 3    scope of the deposition topics.  Mischaracterizes prior

 4    testimony.

 5           THE WITNESS:  First of all, I considered the   3:28:03PM

 6    issue rather immaterial, since the obviousness of using

 7    microchannels is so blatant, given that I invented

 8    them, you know -- I -- I published them, you know, in

 9    the 1981-1984 time frame.  And, you know, here we're

10    talking, you know, 2000 -- mid 2000s in this          3:28:24PM

11    litigation.

12        So the -- you know, it was -- the idea that these

13    could be microchannels was so obvious that I didn't

14    think it needed a lot of --

15        But you know, I understand there's this legal      3:28:46PM

16    definition for the purposes of this litigation.  And

17    so -- like I say, which I consider not something that a

18    person skilled in the art would have considered as a

19    relevant limitation, because of the known obviousness

20    of microchannels.                                     3:29:08PM

21        So the fact that I had this sample and got

22    channels not more than a millimeter wide in my

23    measurements -- you know, I felt it -- it helped, but I

24    didn't consider it super important.

25        So, you know, I can't -- I don't have really any    3:29:27PM
```

Page 27

| | | |
|---|---|---|
| 1 | more information about Antarctica than, you know, the | 3:29:35PM |
| 2 | documents that -- that I think you've all seen, and | |
| 3 | those measurements that I made. | |
| 4 | The -- but -- but I -- you know, when I understood | |
| 5 | that this blade was used for machining of at least some | 3:29:55PM |
| 6 | Antarcticas I thought, yeah, that -- you know, that | |
| 7 | ties. | |
| 8 | You know, you'll get channels nominally a | |
| 9 | millimeter.  They -- they'd be a little bit less with | |
| 10 | that blade at the base, you know.  So it -- it fit | 3:30:13PM |
| 11 | the -- you know, the claim that that blade was used | |
| 12 | fit/tied with my measurements. | |
| 13 | But you know, I can't -- I can only tell you | |
| 14 | what -- you know, what I know.  And I've told you, I | |
| 15 | think, what I know. | 3:30:35PM |
| 16 | MR. REUBEN CHEN:  Okay.  I'm going to object | |
| 17 | to everything in your answer except for your | |
| 18 | discussion -- except for your discussion regarding the | |
| 19 | blade that was used for machining as nonresponsive to | |
| 20 | my question. | 3:30:50PM |
| 21 | MS. BHATTACHARYYA:  I disagree, but go ahead. | |
| 22 | BY MR. REUBEN CHEN: | |
| 23 | Q   It sounds like you are relying on that Danish | |
| 24 | document as part of your opinion on the channels of | |
| 25 | Antarctica.  Correct? | 3:31:06PM |

Page 28

```
 1              MS. BHATTACHARYYA:  Objection.  Form.         3:31:10PM

 2    Outside the scope of this deposition -- of this

 3    deposition topics.  Mischaracterizes prior testimony.

 4              THE WITNESS:  So what I was relying on --

 5    BY MR. REUBEN CHEN:                                    3:31:34PM

 6    Q    Let me just -- let me just ask you about the

 7    Danish document.  Are you --

 8              MS. BHATTACHARYYA:  No.

 9    BY MR. REUBEN CHEN:

10    Q    -- or are you not relying on the Danish document  3:31:35PM

11    for your opinion regarding the channels of Antarctica?

12              MS. BHATTACHARYYA:  Mr. Chen, are you

13    withdrawing your prior question?

14              MR. REUBEN CHEN:  Yes, I withdraw my prior

15    question.                                             3:31:52PM

16    Q    I'll ask a fresh question.  That question is:

17    Dr. Tuckerman, are you or are you not relying on the

18    Danish document for your opinion regarding the channels

19    of Antarctica?

20              MS. BHATTACHARYYA:  Objection.  Form.         3:32:08PM

21    Outside the scope of this deposition.  Mischaracterizes

22    prior testimony.

23              THE WITNESS:  So, I mean, I can say what I

24    said already.  The -- the unit that I measured, I

25    measured at the bases of the channels.  The widths did  3:32:28PM
```

Page 29

```
 1    not exceed 1 millimeter.  That was represented to me as      3:32:33PM

 2    being an Antarctica product.

 3        I -- I don't know -- I mean, obviously, it wasn't

 4    one that was shaped, because it was, you know -- you

 5    know, in -- but the -- it -- if that sample was             3:32:49PM

 6    representative of other Antarcticas, then I felt that

 7    it was -- you know, that it -- it met the -- the legal

 8    definition.

 9        And the -- as regards the Danish document, I -- I

10    thought, okay.  That's -- that's nice information.          3:33:23PM

11    That certainly, you know, adds further support in it.

12        But "rely" is a pretty strong word.  I'm -- I'm

13    not saying that I rely on it.

14    BY MR. REUBEN CHEN:

15    Q   Okay.  Let me switch to a different topic.  Let's       3:33:38PM

16    go to claim 13 of the '266 patent, which I will now

17    enter into the record.

18            MS. BHATTACHARYYA:  Mr. Chen, again, claim 13

19    is not one of your deposition topics.

20            THE WITNESS:  Yeah.  I thought claim 13 --          3:33:59PM

21            MR. REUBEN CHEN:  There is a claim limitation

22    in claim 13 that is definitely one of the deposition

23    topics.

24            MS. BHATTACHARYYA:  Okay.  So you are going

25    to ask about the fluid passages, if that's what -- the     3:34:08PM
```

Page 30

```
 1    one you're referring to.                        3:34:11PM

 2            MR. REUBEN CHEN:  That is exactly where I'm

 3    going.  Please give --

 4            MS. BHATTACHARYYA:  Okay.  That's fine.

 5            MR. REUBEN CHEN:  -- me a little bit more    3:34:13PM

 6    benefit of the doubt.  Thank you.

 7            MS. BHATTACHARYYA:  Okay.

 8            THE WITNESS:  So claim 13 rather than claim

 9    15?  Is this what we're looking at?

10    BY MR. REUBEN CHEN:                             3:34:27PM

11    Q    Yeah.  Let's start with claim 13.  If we have

12    time, we will talk about claim 15 as well.

13        So in claim --

14            THE WITNESS:  Wait, wait.  Hold on.  I've got

15    to get the patent up.  Is it on the exhibit list?   3:34:36PM

16            MR. REUBEN CHEN:  I entered it into the

17    record.  So I've entered previously marked Exhibit 265

18    in the record.

19    (Deposition Exhibit 265 previously marked for

      identification.)

20            THE WITNESS:  Ah, okay.  Yeah.  All right.    3:34:52PM

21    Claim 13.

22    BY MR. REUBEN CHEN:

23    Q    And I specifically want to ask you about the

24    limitation "a fluid outlet passage configured to

25    receive the heat-exchange fluid..."            3:35:23PM
```

Page 31

```
 1    A    Okay.  So second-from-last clause in that claim?      3:35:41PM

 2    That's what you're saying?

 3    Q    Right.

 4    A    All right.

 5    Q    Yeah.                                                  3:35:46PM

 6    A    Okay.

 7    Q    So you see the words "fluid outlet passage."

 8    Correct?

 9    A    I do.

10    Q    Okay.  So would you agree that the fluid outlet       3:35:53PM

11    passage starts at the openings of the microchannels?

12           MS. BHATTACHARYYA:  Objection.

13    Mischaracterizes the record.

14           THE WITNESS:  Let's find the definition of...

15        Oh, okay.  Fluid outlet passage.  That's 106.          3:36:33PM

16    Okay.  So fluid outlet passage 106 -- okay -- which in

17    the illustrated embodiment includes one or more fluid

18    outlet openings 124 from the microporous fluid channels

19    103, a header, and an outlet port 128 opening from the

20    housing.                                                   3:38:44PM

21        So it would -- okay.  So -- so repeat your

22    question, please.

23    BY MR. REUBEN CHEN:

24    Q    Sure.  Would you agree that the fluid outlet

25    passage starts at the openings of the microchannels?       3:38:58PM
```

Page 32

```
 1    really see the difference.  It -- it sits atop the       5:37:33PM

 2    plate --

 3    BY MR. REUBEN CHEN:

 4    Q     Mm-hm.

 5    A     -- in the CoolIT patent.  And the shoulder sits     5:37:37PM

 6    atop the plate here in Kang.  I mean...

 7            MR. REUBEN CHEN:  Okay.  I have questions

 8    about Hamilton and how you've used it with respect to

 9    other claim elements that we haven't discussed, but I

10    think -- I think Ms. Bhattacharyya's probably going to    5:37:58PM

11    stop me from asking you those questions, so...

12            MS. BHATTACHARYYA:  Mr. Chen, you spent quite

13    a lot of time on Hamilton.  I was actually doing a

14    tally.  You had ten topics, and you have asked

15    questions on nine of them, including Hamilton.  The      5:38:13PM

16    only topic that we haven't touched is claim 15 of the

17    '266 patent.

18        If you want -- if you have any questions on claim

19    15 of the '266 patent, I'll let you a few minutes to

20    ask that.                                                5:38:30PM

21        We have now been, like, close to 25 minutes -- at

22    least 23 minutes over the two-hour limit.  If the

23    videographer can actually give me a read of the time we

24    have on the record, that would be good.  You know, you

25    had a two-hour deposition.                               5:38:55PM
```

Page 87

```
 1        And, like I said, if you have any questions about      5:38:57PM

 2   claim 15 of the '266, which is the tenth topic on your

 3   list -- the only topic that you have not asked

 4   questions on -- I'll let you a few minutes to do that.

 5   Otherwise, we'll have to wrap it up.                        5:39:11PM

 6             MR. REUBEN CHEN:  I do have questions about

 7   claim 15.  I will ask them.

 8        And I do also have additional questions about

 9   Hamilton.  And there's obviously that one question

10   where you instructed Dr. Tuckerman not to answer with      5:39:24PM

11   respect to privilege.  So I will reserve my rights with

12   respect to questions that I wanted to ask with respect

13   to Hamilton, and also that one question regarding

14   privilege.

15        And I do appreciate you letting me ask questions      5:39:39PM

16   about claim 15 of the '266 patent.

17        I will put on the record that I think that with

18   respect to certain questions -- in particular, the

19   fluid outlet passage, and then questions about the

20   fluid flow through Hamilton and through Chang -- that     5:39:56PM

21   Dr. Tuckerman took a long time answering those

22   questions.  I think that's why.

23             MS. BHATTACHARYYA:  Mr. Chen, I disagree.

24   But even if it took one or two extra minutes, I have

25   given you close to 25 extra minutes.  And I'm willing     5:40:13PM
```

Page 88

```
 1    to give you more.  I just don't want to be here all          5:40:16PM
 2    night.  I mean, Judge Beeler specifically said two
 3    hours.  And, you know, you have had -- had now, like,
 4    close to two and a half hours.  So I -- you know, we
 5    have to end at some point.  So --                            5:40:30PM
 6         And, you know, if you want to rephrase your
 7    question about that question where there was a
 8    privilege objection, maybe you can rephrase that and
 9    ask.
10         And, you know, I'll -- let me be clear.  The           5:40:42PM
11    reason I -- I objected was the way you phrased it, a
12    yes/no answer would reveal privileged discussions.  So
13    you are free to rephrase it and ask it.  And I'll
14    assess it.  And, you know, Dr. Tuckerman can answer.
15         I -- I just -- the way you had phrased it, even a      5:41:02PM
16    yes/no answer or who revealed it to you would --
17    would -- would reveal information that is protected
18    under Rule 26.  So I'm going to give you an opportunity
19    to ask that again, but be careful about how you phrase
20    your question.                                              5:41:21PM
21            MR. REUBEN CHEN:  Yeah.  I disagree, but let
22    me go ahead and try to rephrase so that we can avoid
23    this dispute.
24    Q    So, Dr. Tuckerman, with respect to the Danish
25    document that allegedly discusses the tool that was        5:41:38PM
```

Page 89

```
 1   used to create channels in the Antarctica device, since      5:41:43PM

 2   you did not read Danish, you relied on the

 3   representation that was provided to you regarding that

 4   document.  Correct?

 5          MS. BHATTACHARYYA:  Objection.  Form.               5:42:19PM

 6   Mischaracterizes prior testimony and the document

 7   referred to here.

 8       Since this was not one of the deposition topics,

 9   Mr. Chen, maybe you can show Dr. Tuckerman the

10   document.                                                    5:42:40PM

11          MR. REUBEN CHEN:  I don't think that's

12   necessary.

13          MS. BHATTACHARYYA:  This is not one of the

14   deposition topics, so I'm not sure --

15          MR. REUBEN CHEN:  I disagree.  And I think it         5:42:51PM

16   falls into microchannel.  So we don't need to have that

17   fight again.  So --

18          MS. BHATTACHARYYA:  No, I'm not --

19   (Crosstalk.)

20          MR. REUBEN CHEN:  -- submitted.                       5:42:51PM

21          MS. BHATTACHARYYA:  Okay.  I am letting you

22   ask the question again, you know, half an hour after

23   your deposition time was over.  Okay?  So be fair with

24   me -- with me here, Mr. Chen.

25       You're asking about a document that you have not         5:43:09PM
```

Page 90

```
 1    introduced as an exhibit today.  And you are -- you're        5:43:11PM

 2    misrepresenting the document.

 3         And I'm just saying just maybe show it to him.

 4              MR. REUBEN CHEN:  I'm not going to show any

 5    document to him that's written in Danish, because he          5:43:24PM

 6    can't read Danish.  There's no point.

 7              MS. BHATTACHARYYA:  You should know.  That's

 8    what I'm saying there.  You are misrepresenting the

 9    document.  It's not all in Danish.  You are

10    misrepresenting the document because -- show               5:43:37PM

11    Dr. Tuckerman the document.

12              MR. REUBEN CHEN:  I'm -- I'm not going to do

13    that.  So...

14              MS. BHATTACHARYYA:  I'm telling you it's not

15    all in Danish.                                             5:43:49PM

16              MR. REUBEN CHEN:  I'm not going to introduce

17    a document.  And I -- I disagree.  So...

18              MS. BHATTACHARYYA:  Let me get the record

19    straight.  You are going to keep asking Dr. Tuckerman

20    about an exhibit that --                                   5:44:26PM

21              MR. REUBEN CHEN:  We --

22              MS. BHATTACHARYYA:  -- he -- he -- is outside

23    the deposition topics today.  He's not prepared.  And

24    you would not show that exhibit to him.  So you are

25    asking him to answer from memory.  Is that correct?       5:44:39PM
```

Page 91

```
 1              MR. REUBEN CHEN:  We -- I believe we're all      5:43:45PM

 2   referring to -- there's only one document in Danish he

 3   was shown after he had submitted his report, before his

 4   deposition in December, that allegedly shows a tool or

 5   discusses a tool that -- that was used to create the      5:45:09PM

 6   channels in Antarctica.  So there's -- there's no

 7   dispute about it.

 8       I'm asking him what is he relying on for his

 9   understanding of that document, since he obviously

10   doesn't read Danish.                                      5:45:26PM

11              MS. BHATTACHARYYA:  And I'm telling you --

12              MR. REUBEN CHEN:  And he said that -- he made

13   a representation about that document.

14       And I'm trying to figure out:  Who -- who provided

15   that representation to him?                               5:45:35PM

16       He's obviously relying on it.  Right?  Otherwise,

17   I wouldn't be allowed to say anything about it.

18              MS. BHATTACHARYA:  Mr. Chen, I am

19   representing to you that it is an Asetek document.

20   That was -- that's from Asetek.  That was provided via    5:45:49PM

21   counsel to Dr. Tuckerman.

22   (Crosstalk.)

23              MS. BHATTACHARYA:  Does that satisfy your

24   inquiry?

25              MR. REUBEN CHEN:  Sure, but Dr. Tuckerman has  5:46:09PM
```

Page 92

```
 1    testified that he's never spoken with anybody at        5:46:11PM

 2    Asetek.

 3         And so I'm asking him -- it was very clear that it

 4    was counsel that provided the representation to him.

 5    That's all I want to get.  He relied on something --     5:46:19PM

 6    (Crosstalk.)

 7              MS. BHATTACHARYYA:  -- correct in that

 8    assumption.  You are not correct in that assumption,

 9    Mr. Chen.  You are -- you are assuming a lot of things

10    here.                                                   5:46:29PM

11              MR. REUBEN CHEN:  Okay.

12              MS. BHATTACHARYA:  And you are again -- you

13    are assuming a lot of things here.

14              MR. REUBEN CHEN:  Fine.

15              MS. BHATTACHARYA:  I will tell you one thing.   5:46:36PM

16    If you show the exhibit, it will become clear, because

17    it's not all in Danish.

18              MR. REUBEN CHEN:  I'm not going to show the

19    exhibit.  So --

20              MS. BHATTACHARYA:  Okay.  Then I think we'll    5:46:44PM

21    just have to end this line of questions, because --

22              MR. REUBEN CHEN:  No.  I'm going to rephrase,

23    actually.

24    Q    Dr. Tuckerman, just to be clear, you've never

25    spoken with anybody at Asetek.  Correct?                5:46:53PM
```

Page 93

```
 1    A    To the best of my knowledge, that's correct.        5:46:58PM

 2    Q    Okay.  So no one from Asetek spoke -- spoke to you

 3    about the Danish document that allegedly shows a

 4    machining tool that was used to create the channels in

 5    Antarctica.  Correct?                                    5:47:21PM

 6             MS. BHATTACHARYA:  Objection.  Form.

 7    Mischaracterizes the document referred.  Asked and

 8    answered.

 9             THE WITNESS:  So, as Arpita did mention,

10    it -- she's refreshed my memory.  It -- it wasn't        5:47:35PM

11    entirely in Danish.  There were some words I -- I -- I

12    believe I could understand.  I certainly could --

13         Anyway, the -- yeah.  As I said, I -- I haven't

14    spoken with anyone from Asetek.  And so I -- I clearly

15    didn't get it directly from them, you know.              5:47:59PM

16    BY MR. REUBEN CHEN:

17    Q    Okay.  I'm going to ask you about claim 15 of the

18    '266 patent now.

19    A    All right.

20    Q    Okay.  So -- and specifically the language that     5:48:15PM

21    requires the outlet opening from the centrally located

22    microchannel is larger than the outlet opening from at

23    least one of the outer microchannels.

24    A    Okay.  So you're talking about the last -- the

25    last clause in -- in paragraph -- in claim 15?          5:48:53PM
```

Page 94

| | | |
|---|---|---|
| 1 | Q    Correct. | 5:49:08PM |
| 2 | A    Okay. | |
| 3 | Q    Okay.  So am I correct that your opinion is that | |
| 4 | an outlet opening is limited to a two-dimensional | |
| 5 | plane? | 5:49:25PM |
| 6 |        MS. BHATTACHARYA:  Objection.  Form. | |
| 7 | Mischaracterizes the report. | |
| 8 |        THE WITNESS:  I -- in -- let's see.  And | |
| 9 | where in my report did I -- did I get into this? | |
| 10 | Remind me.  Maybe I can just search on it.  All right. | 5:50:02PM |
| 11 | Good. | |
| 12 | BY MR. REUBEN CHEN: | |
| 13 | Q    I believe you discuss that limitation starting at | |
| 14 | paragraph 70 of your report. | |
| 15 | A    Thank you.  Okay.  Well, okay.  Unless I'm | 5:51:21PM |
| 16 | mistaken, I don't see in 70 to 73 that I'm using the | |
| 17 | phrase "outlet opening" in those paragraphs.  Let's | |
| 18 | see.  Seventy-three. | |
| 19 | I mean, I understand outlet opening in the context | |
| 20 | of the '266 patent.  I believe I do.  And that is | 5:53:31PM |
| 21 | the -- there's a figure, like Figure 2.  And there's | |
| 22 | this -- there are these scalloped regions.  And the -- | |
| 23 | to me, the -- the -- that top surface of the exposed | |
| 24 | microchannels is the outlet opening in -- in that | |
| 25 | figure.  So in the context of that patent, that's what | 5:54:17PM |

Page 95

1    I understand outlet opening to -- to be.                    5:54:25PM

2    Q    So is outlet opening two dimensional or three

3    dimensional?

4            MS. BHATTACHARYYA:  Objection.  Vague.

5    Hypothetical.  Incomplete hypothetical.                     5:54:36PM

6            THE WITNESS:  In my view, it's -- it's --

7    it's the plane surface.  Yeah.  Yeah.  Yeah.

8    BY MR. REUBEN CHEN:

9    Q    Okay.  In fluid mechanics, does a bend with a

10   larger turning radius typically have a lower pressure        5:55:00PM

11   loss than a bend with a smaller turning radius?

12           MS. BHATTACHARYA:  Objection.  Form.

13   Incomplete hypothetical.  Outside the scope of the

14   deposition topic.

15       Mr. Chen, are you moving to a different topic now?      5:55:14PM

16           MR. REUBEN CHEN:  No.

17           MS. BHATTACHARYA:  Does it have anything to

18   do with claim 15?

19           MR. REUBEN CHEN:  This exactly has to do with

20   claim 15 in the record.                                     5:55:24PM

21           MS. BHATTACHARYA:  I'll give leeway for

22   Dr. Tuckerman to answer, but I don't see how it

23   relates.

24       But go ahead, Dr. Tuckerman.

25

                                                        Page 96

1              I, the undersigned, a Certified

2    Shorthand Reporter of the State of California, do

3    hereby certify:

4         That the foregoing proceedings were taken before

5    me at the time and place herein set forth; that any

6    witnesses in the foregoing proceedings, prior to

7    testifying, were placed under oath; that a verbatim

8    record of the proceedings was made by me using machine

9    shorthand which was thereafter transcribed under my

10   direction; further, that the foregoing is an accurate

11   transcription thereof.

12         I further certify that I am neither financially

13   interested in the action nor a relative or employee of

14   any attorney or any of the parties.

15       IN WITNESS WHEREOF, I have this date subscribed my

16   name.

17

18   Dated: March 22, 2022

19

20

21

22              *Lydia Zinn*

23              LYDIA ZINN, RPR, FCRR

24              CSR No. 9223

25

                                        Page 100