COOLEY LLP
HEIDI L. KEEFE (178960)
(hkeefe@cooley.com)
REUBEN H. CHEN (228725)
(rchen@cooley.com)
DANIEL J. KNAUSS (267414)
(dknauss@cooley.com)
ALLIE LEEPER (307310)
(aleeper@cooley.com)
DEEPA KANNAPPAN (313573)
(dkannappan@cooley.com)
3175 Hanover Street
Palo Alto, CA  94304-1130
Telephone:    (650) 843-5000
Facsimile:    (650) 849-7400

DUSTIN M. KNIGHT (*pro hac vice*)
(dknight@cooley.com)
11951 Freedom Drive, 16th Floor
Reston, VA 20190
Telephone: (703) 456-8000
Facsimile: (703) 456-8100

GREENBERG TRAURIG, LLP
KYLE D. CHEN (SBN 239501)
kchen@gtlaw.com
1900 University, Avenue, 5th Floor
East Palo Alto, CA 94304
Telephone:    (650) 289-7887
Facsimile:    (650) 328-8508

Attorneys for Defendant and Counter-claimant
COOLIT SYSTEMS, INC. and Defendants
CORSAIR GAMING, INC. and CORSAIR
MEMORY, INC.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

ASETEK DANMARK A/S,

                Plaintiff and
                Counterdefendant,

    v.

COOLIT SYSTEMS, INC.,

                Defendant and
                Counterclaimant,

COOLIT SYSTEMS USA INC., COOLIT
SYSTEMS ASIA PACIFIC LIMITED, COOLIT
SYSTEMS (SHENZHEN) CO. LTD.

                Defendants,

CORSAIR GAMING, INC. and CORSAIR
MEMORY, INC.,

                Defendants.

CASE NO. 3:19-cv-00410-EMC

**OPPOSITION TO PLAINTIFF'S
MOTION TO EXCLUDE CERTAIN
OPINIONS OF DR. JOHN P. ABRAHAM**

1

## <u>**TABLE OF CONTENTS**</u>

2

**Page**

3    I.    INTRODUCTION ...................................................................................................1

4    II.   ARGUMENT ........................................................................................................1

5          A.    The parties' stipulations require the upper and lower chambers to both be
                 divided compartments within the reservoir's "single receptacle," and CoolIT's
6                H100i products do not satisfy this requirement ............................................1

7          B.    Asetek's interpretation of Dr. Abraham's opinion is wrong.........................2

8          C.    Dr. Abraham's opinion does not exclude preferred embodiments ................8

9          D.    Dr. Abraham's illustration of what a single receptacle divided into
                 compartments within it means using a product Asetek accused of infringement
10               in a prior case is accurate and does not change the meaning of "reservoir" or
                 "chamber" ....................................................................................................11

11
           E.    The nesting doll analogy is irrelevant .........................................................15
12
           F.    Dr. Abraham's opinion is not inconsistent with CoolIT's IPR positions ...................16
13
     III.  CONCLUSION.....................................................................................................18
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arctic Cat Inc. v. Bombardier Prods., Inc.*,
No. 14-cv-62369, 2016 WL 9402395 (S.D. Fla. 2016, , *related appeal* 876 F.3d
Fed. Cir. 2017) ........................................................................................................5

*Asetek Danmark A/S v. CMI USA Inc.*,
852 F.3d 1352 (Fed. Cir. 2017) .....................................................................3, 5

*Fujifilm Corp. v. Motorola Mobility LLC*,
No. 12–cv–03587–WHO, 2015 WL 1265009 (N.D. Cal. 2015) ..............................5

*Power Integrations, Inc. v. Fairchild Semiconductor Intern., Inc.*,
763 F. Supp. 2d 671 (D. Del. 2010) ........................................................................5

**Other Authorities**

Federal Rule of Evidence 703 ................................................................................5, 14

## I.   INTRODUCTION

Asetek's motion should be denied.  Dr. Abraham correctly applied the stipulated constructions and stipulated fact regarding the claimed "reservoir" and "chamber."  Contrary to Asetek's arguments, he did not advance his own construction at all.  Asetek complains about Dr. Abraham's opinions by focusing on the term "reservoir," which means "<u>single receptacle</u> defining a fluid flow path," in isolation.  But Asetek ignores how the terms "reservoir" and "chamber" interact with each other as required by the claim language and the stipulated fact because "chamber" means "compartment *within the* <u>reservoir</u>."  Asetek just does not like Dr. Abraham's opinion that, under the parties' stipulations, the accused upper and lower chambers in CoolIT's products are *not* compartments within *the* <u>single receptacle</u> of the <u>reservoir</u> and therefore do not infringe.  But that does not make his opinion unreliable, which also is *not*, as Asetek incorrectly alleges, that the "reservoir" can only have one receptacle within it under all circumstances.  Any concerns or disagreements Asetek has with Dr. Abraham's ultimate opinion can be addressed with cross-examination at trial.  But Dr. Abraham's application of the stipulated constructions and the stipulated fact is not wrong.

## II.   ARGUMENT

### A.   The parties' stipulations require the upper and lower chambers to both be divided compartments within the reservoir's "single receptacle," and CoolIT's H100i products do not satisfy this requirement

The parties stipulated to two constructions and a *fact* as follows:

(1) "reservoir" means "single receptacle defining a fluid flow path" (construction);

(2) "chamber" means "compartment *within the* <u>reservoir</u>" with "reservoir" construed as above (construction) (emphasis added);[1]

(3) *The claimed "reservoir" in Asetek's invention is a single receptacle that is divided into an upper chamber and a lower chamber*, with the upper chamber providing the pumping function and the lower chamber providing the thermal exchange function (*fact*).

(ECF Nos. 258 at 5 and 351 at 4.)  The stipulations above require that the claimed "upper chamber" and "lower chamber" in Asetek's invention be two divided "compartments" *both* "*within*" *the* same

---

[1] Emphasis is always added in this brief unless otherwise specified.

"single receptacle" of the "reservoir," a conclusion necessarily resulting from the interaction between "reservoir" and "chamber."  This is because, under the stipulated constructions of "reservoir" (1) and "chamber" (2) as applied to the stipulated fact (3) above, the following requirement follows:

> The claimed "single receptacle defining a fluid flow path" in Asetek's invention is a single receptacle that is divided into an upper *compartment within the* single receptacle defining a fluid flow path and a lower *compartment within the* single receptacle defining a fluid flow path[.]"

That is, the claimed "upper chamber" and "lower chamber" are divided "compartments" *both* "*within* *the same* "single receptacle."  It follows that, for example, if the accused upper chamber is within a first separable receptacle, and the accused lower chamber is within a second separable receptacle, then the two accused chambers are *not both* "*within*" *the same* "single receptacle," and thus do not infringe. In other words, Asetek cannot point to *two* separable receptacles as the "upper chamber" and the "lower chamber" that must be *both within the same* "single receptacle" of the "reservoir."

## B.     Asetek's interpretation of Dr. Abraham's opinion is wrong

Asetek misinterprets Dr. Abraham's opinion, which is *not* that the "reservoir" under the parties' stipulations can have within it only one receptacle under all circumstances.  Asetek ignores the required configuration of the "chambers" under the parties' stipulations.   The actual issue Dr. Abraham opines on is not how many receptacles the claimed "reservoir" can have within a single receptacle.  Rather, he opines on whether the accused "chambers" each are divided compartments *within the same* "single receptacle" of the accused "reservoir" in CoolIT's products.  As explained by Dr. Abraham, under the parties' stipulations, the claimed "upper chamber" and "lower chamber" must be, respectively, the "upper compartment" and "lower compartment" divided *within the same* "single receptacle" of the "reservoir" (ECF No. 351 at 4), which CoolIT's H100i products do not have.

1    Indeed, CoolIT has consistently taken this position, which is derived from the jury verdict in

2  the *CMI* case:  "[T]he claimed 'reservoir' in Asetek's invention is **a single receptacle that is divided**

3  **into an upper chamber and a lower chamber**[.]"  (Ex. 1 at 4 (jury verdict in the *CMI* case).)  As

4  explained by Dr. Abraham, the reason why CoolIT's products do not infringe is because Asetek always

5  has to point to *two* separable receptacles in CoolIT's products to meet *both* the "upper chamber" and

6  "lower chamber" limitations.  Specifically, as to CoolIT's H100i products, Asetek has to point to a

7  *first* separable receptacle and a *second* separable receptacle that are removably attached to each other

8  to meet both the "upper chamber" and "lower chamber" limitations, as shown below (Ex. 2, 11/3/2021

9  Tuckerman Report ¶¶ 279-280 (blue annotations added; red annotation original).):

10

11

12

13

14



15

16

17

18

19

20

21

22

23

24

25

26

27

28

As Dr. Abraham points out, the copper device in CoolIT's H100i products has *not just* a heat exchanging interface – *but* it *also* has a volume that can receive and contain liquid, making it a "receptacle" under the word's plain and ordinary meaning, as shown at right (Ex. 3, 12/8/2021 Abraham Non-Infringement Report ¶¶ 85-86 (Merriam-Webster's Collegiate Dictionary: "receptacle" is "one that receives and contains something").)   Asetek's expert, Dr. Tilton, agrees:





(Ex. 4, 12/19/2021 Tilton Depo Tr. at 39:6-16, Ex. 5 (U.S. Patent No. 9,057,567 (FIG. 14A, excerpt)).)

Asetek complains that "Dr. Abraham clearly intends to explain to the jury what 'a single receptacle that is divided into two chambers' actually means," and somehow that is an improper claim construction argument to the jury.  (*See* Mot. at 8.)  But that the "claimed 'reservoir' in Asetek's invention is a single receptacle that is divided into an upper chamber and a lower chamber, with the upper chamber providing the pumping function and the lower chamber providing the thermal exchange function" is a *stipulated fact*.[2]  (*See* ECF No. 351 at 4.)  As such, Dr. Abraham is permitted to base his opinion on this stipulated fact under Federal Rule of Evidence 703.  Moreover, courts have repeatedly held that experts may opine on the implications of a court's constructions, as well as the plain and ordinary meaning of words.  *See, e.g.*, *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 763 F. Supp. 2d 671, 695 (D. Del. 2010) (denying patentee's motion to exclude and holding that "[t]he implications of the Court's constructions are matters on which the parties' experts may opine, and may disagree."); *Arctic Cat Inc. v. Bombardier Prods., Inc.*, No. 14-cv-62369, 2016 WL 9402395, *7 (S.D. Fla. 2016), *related appeal* 876 F.3d 1350 Fed. Cir. 2017) (denying motion to exclude accused infringer's technical expert's testimony and rejecting the contention that the expert was not applying the court's claim construction, and finding that the parties were just disputing how the court's claim construction applied to the accused product); *Fujifilm Corp. v. Motorola Mobility LLC*, No. 12–cv–03587–WHO, 2015 WL 1265009, *5-6 (N.D. Cal. 2015) (denying motion to strike and allowing expert to opine on "plain and ordinary meaning").  That is exactly what is happening here, and the jury deserves to hear the opinion to decide for itself.  Asetek is free to cross-examine on the points with which it disagrees.

---

[2] During the 2014 *CMI* trial, Asetek urged, the jury and the court determined, and the Federal Circuit later upheld, the same *fact* the parties stipulated to.  Ex. 6 (Asetek's Proposed Jury Form) at 3-4; Ex. 1 (Jury Verdict) at 3-4; Ex. 7 (Asetek's Proposed Findings of Fact) at 2, 7-8; Ex. 8 (Court's Findings of Fact) at 10; *Asetek Danmark A/S v. CMI USA Inc.*, 852 F.3d 1352, 1357-58 (Fed. Cir. 2017) ("the *jury* found that the claimed liquid-cooling systems differ from the prior art … because the 'reservoir' is a 'single receptacle that is divided into an upper chamber and a lower chamber'") (emphasis added).

1    A key factual point Dr. Abraham makes here is that Asetek's infringement theory *requires* the

2    copper device's volume that can receive and contain liquid to satisfy "the lower chamber *providing*

3    *the thermal exchange function*."  (ECF No. 342 at 2 of 48.)  This is because, as shown below (Ex. 3,

4    12/8/2021 Abraham Non-Infringement Report ¶¶ 88 (excerpt)), there is virtually no space *within* the



15   "first separable receptacle" (which includes the "upper

16   chamber/compartment") for Asetek to map to the "lower

17   chamber/compartment" to provide the required thermal

18   exchange function under the parties' stipulation. (*Compare*

19   Ex. 2, 11/3/2021 Tuckerman Report  ¶¶ 279-280, 284 (blue

20   annotations added; red annotation original) *with* Ex. 3,

21   12/8/2021 Abraham Non-Infringement Report ¶¶ 85-86, 88

22   (excerpt); *see also* ECF No. 351 at 4 ("the lower chamber

23   providing the thermal exchange function").) Asetek *needs* the

24   volume in the "second separable receptacle," *i.e.*, the copper

25   device, to map to the "lower chamber/compartment" to



provide the required thermal exchange function (*id.*), as shown in the illustrative cross-sectional view of the H100i schematics below-right:



**Illustrative Cross-Sectional View of H100i**

(*Compare* Ex. 2, 11/3/2021 Tuckerman Report ¶¶ 279-280, 284 (excerpt rotated clockwise by 90°; blue annotations added; red annotation original) *with* Ex. 3, 12/8/2021 Abraham Non-Infringement Report ¶¶ 85-86 (excerpt rotated clockwise by 90°).)

And there lies the rub. By requiring a *second* separable receptacle, *i.e.*, the copper device including the volume to receive and contain liquid, to map to the "lower chamber/compartment" limitation, Asetek's infringement theory violates the parties' stipulation that *both* the "upper chamber" and the "lower chamber" are "compartments within ***the*** <u>reservoir</u>," *i.e.*, ***the same*** "<u>single receptacle</u> defining a fluid flow path."

And that is Dr. Abraham's actual non-infringement opinion as shown in the figure below reproduced from his non-infringement report. The accused "[l]ower chamber" in CoolIT's H100i products pointed to by Asetek's expert, Dr. Tuckerman, is *not* "a lower chamber" within *the same single receptacle* defining a fluid flow path, as required by the parties' stipulation.



(Ex. 3, 12/8/2021 Ex. 3, Abraham Non-Infringement Report ¶ 87 (blue annotations added; red annotation original).)  As can be seen above, the accused "Lower chamber" is a compartment within *two* separable receptacles that are removably attached to each other using screws.  (*Compare id. with id.* at ¶¶ 85-86.)

**C.     Dr. Abraham's opinion does not exclude preferred embodiments**

Dr. Abraham's opinion that the claimed upper chamber and lower chamber must be divided compartments *within **the** same* "single receptacle" of the "reservoir" does not exclude any preferred embodiment.  As can be seen in Asetek's own annotations of Figure 15 below, the "reservoir 14" includes within its *same* "single receptacle" (outlined and colored in green) both the upper chamber/compartment and the lower chamber/compartment (colored in pink):



(Ex. 9 (4/4/2011 Reply to Office Action), at 4, 6, 13-14 (green color and outline, red circles, and pink color added).)  Specifically, during prosecution of the parent application of the '362 patent (with the same written description), Asetek amended its claims to recite a reservoir with an upper and a lower chamber and annotated FIG. 15 to show the upper and the lower chambers are compartments contained within the same "reservoir 14."  Thus, Dr. Abraham's opinion is consistent with Asetek's own file history and annotations, and does not exclude this preferred embodiment in the '362 patent.

Asetek also cites and annotates an embodiment found in Figures 17 and 20 in other Asetek patents, but not included in the '362 patent, to argue Dr. Abraham's opinion somehow excludes the embodiment in those figures.  (Mot. at 11.)  Since the '362 patent is the only one that is at issue right now, Asetek's arguments based on Figures 17 and 20 are irrelevant and should be ignored on procedural grounds alone.  (*See* Scheduling Order (ECF No. 380) (specifying current motions are only about the '362 patent).)  But even on the merits, Asetek's own annotations to Figure 20 in a prior filing show that Dr. Abraham's opinion does not exclude the embodiment:

Figure 20

(Asetek's Opening Claim Construction Brief (ECF No. 104) at 3-4 (annotations and colors original).)  As can be seen above, Asetek points to the "reservoir" in Figure 20 that is the *same* "single receptacle" (green) to include both the "upper/pump chamber" and the "lower/thermal exchange chamber" (pink). Critically, Asetek does not need any space in a *second* receptacle to map the "lower/thermal exchange chamber" to in either Figure 15 or 20.  In Figure 15, Asetek points to the compartment (pink) as the lower chamber within the *same* single receptacle (green) of the reservoir that also includes the upper chamber.  Similarly, in Figure 20, Asetek points to the compartment (pink) as the thermal exchange chamber within the *same* single receptacle (green) of the reservoir that also includes the pump chamber (light blue).  Further, the heat exchanging interfaces in Figures 15 and 20 are not "receptacles" as they do not hold or contain liquid.  Therefore, Dr. Abraham's opinion does not exclude any preferred embodiments.

**D.    Dr. Abraham's illustration of what a single receptacle divided into compartments within it means using a product Asetek accused of infringement in a prior case is accurate and does not change the meaning of "reservoir" or "chamber"**

Asetek incorrectly accuses Dr. Abraham of concocting his own interpretation of what the stipulated fact means outside of the stipulated constructions of "reservoir" and "chamber."  Not so. He is just opining on how he believes the stipulated constructions apply to the stipulated fact here. That is his job, and it is up to the jury to decide if they agree.  In forming his opinion, Dr. Abraham analyzed a video exhibit from a prior trial to demonstrate the internal structures of a product Asetek had previously accused.  He then had frames of the video exhibit annotated to show how the stipulated constructions apply to the stipulated fact.  Specifically, Dr. Abraham states in his report that, "[t]o illustrate what 'a single receptacle that is divided into two chambers' actually means, a demonstration of a Cooler Master Seidon 120V product that Asetek claimed to be infringing the single-receptacle 'reservoir' limitation as follows would be instructive:"



(2014 Trial Exhibit 363 (admitted into evidence, 2014 Trial Transcript at 627-628) at 02:03 (annotated).)

As can be seen in the frame above, Dr. Abraham merely indicates a lower/thermal exchange chamber in dark red as a compartment within a single-receptacle reservoir when the reservoir is viewed from its *bottom* side.  The reservoir is then flipped over towards the reader to show what it looks like from the other side, as shown in the later frames below:



(2014 Trial Exhibit 363 at 02:06 (annotated).)

As can be seen in the frames above and below, as the single-receptacle reservoir is being flipped over towards the reader, the upper/pump chamber in dark blue as a compartment within the single-receptacle reservoir is revealed when the reservoir's *top* side can be viewed.



(2014 Trial Exhibit 363 at 02:08 (annotated).)

1
2
3
4
5
6
7
8
9
10
11



(2014 Trial Exhibit 363 at 02:10 (annotated).)

Dr. Abraham then explains: "[a]s can be seen below with the single receptacle's lower/thermal exchange chamber and upper/pump chamber shown side-by-side, the same "single receptacle … is divided into two chambers." "It is important to note that the same single-receptacle component contains within it two chambers on its top and bottom," respectively:

(2014 Trial Exhibit 363 at 02:03 (on the left, annotated) and at 02:10 (on the right, annotated).)

Dr. Abraham continues: "[a]s can be seen above, the structure separating the two chambers is *within* the same single receptacle and divides such single receptacle *from within* and *into* the two chambers

OPPOSITION TO MOTION TO EXCLUDE ABRAHAM
CASE NO. 3:19-CV-00410-EMC

*within it*.  The two chambers do not have their own separate and seperable enclosures, and they depend on the single receptacle to enclose them" (emphasis original).

Asetek alleges that, by illustrating above what "a single receptacle that is divided into two chambers" actually means, Dr. Abraham somehow created his own construction of "reservoir."  But that allegation is wrong.  (Mot., at 4.)  The statement Dr. Abraham actually illustrates in his report, "a single receptacle that is divided into two chambers" (Ex. 3, 12/8/2021 Abraham Report ¶ 53), is part of the parties' stipulated fact:

> The claimed "reservoir" in Asetek's invention is ***a single receptacle that is divided into an upper chamber and a lower chamber***, with the upper chamber providing the pumping function and the lower chamber providing the thermal exchange function.

(ECF No. 351 at 4) (*see* n.2 *supra* (Asetek itself proposed and had the jury determine this *fact*).)  Thus, contrary to Asetek's allegation, Dr. Abraham did not concoct his own construction of "reservoir" by illustrating what the factual statement, "a single receptacle that is divided into two chambers," means.  Fed. R. Evid. 703 ("An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed.")  Further, as shown in an illustrative cross-sectional view of the accused Cooler Master Seidon 120V product below, Dr. Abraham's illustration above does not change the parties' stipulated construction of "reservoir" or "chamber" at all:



**Illustrative Cross-Sectional View of
Accused Cooler Master Seidon 120V**

As can be seen above, nothing in Dr. Abraham's illustration alters in any way the stipulated construction of "reservoir" or "chamber."  Indeed, he applies them faithfully.  "The same single

1   receptacle reservoir divided into two chambers" referred to by Dr. Abraham is a "single receptacle

2   defining a fluid flow path."  The "upper/pump chamber containing the pump, including the impeller"

3   and the "lower/thermal exchange chamber" are "compartments within the reservoir," with "reservoir"

4   construed as "single receptacle defining a fluid flow path."  Also, the heat exchange interface in the

5   Cooler Master Seidon 120V product does not hold or contain liquid, and thus is not a "receptacle"

6   under its plain and ordinary meaning.

7          Dr. Abraham's demonstration above is also supported by Asetek's own annotations to the

8   figures in the patents, as shown (again) below:



18   (Ex. 9 (4/4/2011 Reply to Office Action), at 4, 6, 13-14 (green color and outline, red circles, and pink

19   color added); Asetek's Opening Claim Construction Brief (ECF No. 104) at 3-4 (green and pink

20   annotations in Figure 15 added; other annotations and colors original).)  Thus, Dr. Abraham's

21   demonstration stays faithful to the parties' stipulation and does not change the meaning of "reservoir"

22   or "chamber" at all, as even shown by Asetek's own annotations.

23          **E.      The nesting doll analogy is irrelevant**

24          Asetek's recitation of Judge Tigar's nesting doll analogy is a red herring and is irrelevant to

25   Dr. Abraham's opinion.  As explained above, Dr. Abraham's opinion was never that the "reservoir"

26   can only have one receptacle within it under the parties' stipulation.  Further, the premise of the

27   analogy requires the smaller dolls – or receptacles – be contained *completely within* the biggest doll

28   that is supposed to be the "single receptacle."  But no such smaller receptacles are completely

contained within the biggest receptacle in CoolIT's products, nor is it otherwise discussed by Dr. Abraham.  Instead, as explained above and again shown below, the second separable receptacle is actually *outside of* the first separable receptacle and is not contained within, let alone completely, the first separable receptacle.  Thus, Asetek's argument based on the nesting doll analogy is irrelevant and should be ignored.



**Illustrative Cross-Sectional View of H100i**

(*Compare* Ex. 2, 11/3/2021 Tuckerman Report ¶¶ 279-280, 284 (excerpt rotated clockwise by 90°; blue annotations added; red annotation original) *with* Ex. 3, 12/8/2021 Abraham Non-Infringement Report ¶¶ 85-86 (excerpt rotated clockwise by 90°).)

    **F.**    **Dr. Abraham's opinion is not inconsistent with CoolIT's IPR positions**

    Nothing in Dr. Abraham's non-infringement opinion explained above is inconsistent with CoolIT's IPR positions nor prohibits other components from being added or made part of the claimed "reservoir" or its "single receptacle."  In fact, the claim language of the '355 makes clear that other

components can be part of the "reservoir."  For example, claim 1 of the '355 includes the following claim elements: "the reservoir including:  a pump chamber housing an impeller and defined at least in part by an impeller cover and a double sided chassis, the impeller being positioned on one side of the chassis and a stator of the pump is positioned on an opposite side of the chassis."  As the claim language shows, there are multiple additional components that are included in the "reservoir," including at least "an impeller," an "impeller cover," and a "double-sided chassis."

CoolIT's IPR statements are consistent with the actual non-infringement opinion of Dr. Abraham.  Asetek mischaracterizes CoolIT's IPR statements and takes them out of context.  CoolIT's mapping of Duan to the "reservoir" limitation, like the '355 claim language, points to a structure, while comprising other components, includes a <u>single receptacle</u> that is divided into an upper chamber/compartment and a lower chamber/compartment within the *same* <u>single receptacle</u>.  As the claim language makes clear, the reservoir can include other components.  That the single receptacle of Duan's reservoir is divided into an upper chamber/compartment and a lower chamber/compartment within the same single receptacle is shown in the following figure (within the thick, dark red outlines).



Asetek argues, without any evidentiary support, that "[e]ach of those components are 'capable of holding coolant' if properly orientated." (Mot. at 12.) But whether those other components can or cannot hold liquid is irrelevant. The only relevant issue is whether Duan discloses or teaches a single receptacle divided into an upper chamber/compartment and a lower chamber/compartment within the same single receptacle. And as can be seen above, it does, which is consistent with Dr. Abraham's opinion. Therefore, there is nothing contradictory between Dr. Abraham's opinion and CoolIT's IPR positions, and Asetek's argument to the contrary should be rejected.

## III.   CONCLUSION

For at least the above reasons, Asetek's motion should be denied.

1   Dated: April 14, 2022                    COOLEY LLP

2
                                             By:    *Reuben H. Chen*
3                                                   Reuben H. Chen

4                                            Heidi L. Keefe (SBN 178960)
                                             hkeefe@cooley.com
5                                            Reuben H. Chen (SNB 228725)
                                             rchen@cooley.com
6                                            Daniel J. Knauss (SBN 267414
                                             dknauss@cooley.com
7                                            Lam K. Nguyen (SNB 265285)
                                             lnguyen@cooley.com
8                                            Deepa Kannappan (SBN 313573)
                                             dkannappan@cooley.com
9                                            Alexandra Leeper (SBN 307310)
                                             aleeper@cooley.com
10                                           **COOLEY LLP**
                                             3175 Hanover Street
11                                           Palo Alto, CA 94304-1130
                                             Telephone: (650) 843-5000
12                                           Facsimile:  (650) 849-7400

13                                           Dustin M. Knight (*pro hac vice*)
                                             dknight@cooley.com
14                                           **COOLEY LLP**
                                             11951 Freedom Drive, 16th Floor
15                                           Reston, VA 20190
                                             Telephone: (703) 456-8000
16                                           Facsimile:  (703) 456-8100

17                                           *Attorneys for Defendant and Counterclaimant*
                                             *COOLIT SYSTEMS, INC. and Defendants COOLIT*
18                                           *SYSTEMS USA INC., COOLIT SYSTEMS ASIA*
                                             *PACIFIC LIMITED, COOLIT SYSTEMS*
19                                           *(SHENZHEN) CO., LTD., CORSAIR GAMING,*
                                             *INC. and CORSAIR MEMORY, INC.*
20
                                             Kyle D. Chen (SBN 239501)
21                                           kchen@gtlaw.com
                                             **GREENBERG TRAURIG, LLP**
22                                           1900 University, Avenue, 5th Floor
                                             East Palo Alto, CA 94304
23                                           Telephone: (650) 289-7887
                                             Facsimile:  (650) 328-8508
24
                                             *Attorneys for Defendant and Counterclaimant*
25                                           *COOLIT SYSTEMS, INC.*

26                                           Kenneth J. Dyer (SBN 191192)
                                             KDyer@dickinsonwright.com
27                                           **DICKINSON WRIGHT RLLP**
                                             800 West California Avenue, Suite 110
28                                           Sunnyvale, CA 94086
                                             Telephone: (408) 701-6170

1    Facsimile:  (884) 670-6009

2    *Attorneys for Defendant and Counterclaimant
     COOLIT SYSTEMS, INC. and Defendants COOLIT*
3    *SYSTEMS USA INC., COOLIT SYSTEMS ASIA
     PACIFIC LIMITED, COOLIT SYSTEMS*
4    *(SHENZHEN) CO., LTD.*

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO MOTION TO EXCLUDE ABRAHAM
CASE NO. 3:19-CV-00410-EMC