# EXHIBIT 3

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ASETEK DANMARK A/S,<br>Plaintiff and Counter-Defendant,<br><br>v.<br><br>COOLIT SYSTEMS, INC.,<br>Defendant and Counter-Claimant,<br><br>AND<br><br>CORSAIR MEMORY, INC.,<br>Defendant. | CASE NO. 3:19-cv-00410-EMC<br><br>**Highly Confidential – Attorneys' Eyes Only**<br><br>**REBUTTAL REPORT OF<br>DR. JOHN P. ABRAHAM REGARDING<br>INFRINGEMENT OF ASETEK DANMARK<br>A/S'S ASSERTED PATENT CLAIMS** |

## I.    SUMMARY

1.      I have been retained by CoolIT Systems, Inc. ("CoolIT") as a technical expert to provide

opinions regarding non-infringement of the following patent claims (collectively the

"asserted claims") from three patents that I understand are owned by Asetek Danmark

A/S ("Asetek") and currently asserted against CoolIT in the above-referenced litigation:[1]

| *Asserted Patent* | *Asserted Claim(s)* |
|---|---|
| *U.S. Patent No. 8,240,362 ("'362 patent")* | *17, 19* |
| *U.S. Patent No. 10,599,196 ("'196 patent")* | *1, 2* |
| *U.S. Patent No. 10,613,601 ("'601 patent")* | *1, 6, 11, 12* |

---

[1] I understand the previously asserted claims of U.S. Patent Nos. 10,078,354 (the "'354" patent")
10,078,355 (the "'355 patent) have been invalidated and thus are no longer being asserted.  I also
understand the invalidation is on appeal.  To the extent any of them come back to the case after
appeal, I reserve my right to opine on them.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY



*FIG. 3*
Prior Art

'196 patent, Figure 2

51.    The asserted patents claim to provide improvements to the prior art because of their compact size and cooling efficiency. As shown in the following image, the asserted patents describe a fluid reservoir that is in close proximity to the heat-generating component. In the subsequent image, there is a depiction of the reservoir (14) in proximity to a heat-generating component and a radiator (11) that is connected to the reservoir by fluid-conveying tubes. Heat that is transferred to the liquid at the heat-generation location is subsequently removed from the liquid at the radiator.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY



'196 patent Figure 4



'196 patent Figure 7

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

52.    The asserted patents claim that the patented technology provides a small and compact liquid-cooling solution that is more efficient than existing air-cooling arrangements and can be produced at a low cost. The asserted patents also claim that the patented device may be easy to use and implement and requires a low level of maintenance, or no maintenance. It is further asserted that the patented device can be used with existing CPU systems and existing computer systems (e.g., '196, col 1, lines 57-67; '362 col. 1 line 53-63; '601 col 1, line 62 through col. 2, line 5).

53.    Dr. Tuckerman states: "The reservoir in Asetek's patented design is *a single receptacle that is divided into two chambers* (referred to as the "upper" and "lower" chambers in the '362 patent and '601 patent, and the "pump chamber" and "thermal exchange chamber" in the '196 patent)." (Tuckerman at ¶ 35.) I agree with this statement in Dr. Tuckerman's report. To illustrate what "a single receptacle that is divided into two chambers" actually means, a demonstration of a Cooler Master Seidon 120V product that Asetek claimed to be infringing the single-receptacle "reservoir" limitation as follows would be instructive:

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY



(2014 Trial Exhibit 363 (admitted into evidence, 2014 Trial Transcript at 627-628) at 02:03 (annotated).)



(2014 Trial Exhibit 363 at 02:06 (annotated).)

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY



(2014 Trial Exhibit 363 at 02:08 (annotated).)



(2014 Trial Exhibit 363 at 02:10 (annotated).)

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

54.     As can be seen below with the single receptacle's lower/thermal exchange chamber and
        upper/pump chamber shown side-by-side, the ***same*** "single receptacle … is divided into
        two chambers."  It is important to note that the ***same*** single-receptacle component contains
        within it two chambers on its top and bottom, respectively:



(2014 Trial Exhibit 363 at 02:03 (on the left, annotated) and at 02:10 (on the right, annotated).)

55.     As can be seen above, the structure separating the two chambers is ***within*** the same single
        receptacle and divides such single receptacle ***from within*** and ***into*** the two chambers ***within***
        ***it***.  The two chambers do not have their own separate and seperable enclosures, and they
        depend on the single receptacle to enclose them.  This is in sharp contrast to the prior art
        (such as Ryu) and CoolIT's new design (*see* figure below), of which the upper/pump
        chamber and the lower/thermal exchange chamber are separate and separable and ***have***
        ***their own separate and separable boundary walls***, as explained further in this report later.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY



Tuckerman infringement report

85.     Unfortunately, Dr. Tuckerman failed to recognize significant differences between the

claimed "reservoir" and the H100i Liquid Cooler. As I have already shown, the H100i

Liquid Cooler has a copper component that is attached to a plastic housing.  The copper

component has a microchannel region which allows the passage of coolant close to the

heat-generating device.  In addition, the copper component also has a separate receptacle

that serves an important fluid flow function.  I have already identified that receptacle as a

collection manifold (or exhaust manifold), as discussed above.  Such manifolds are

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

important for fluid flow management. They allow the efficient collection of flow from a multitude of flow passages. They promote the equal distribution of coolant through the microchannels so that each channel receives a similar volume of flow. The manifold also efficiently directs the collected flow away from the microchannels so it can be ducted to the radiator with minimal pressure losses. The following photograph shows a closeup of the copper component that contains the exhaust manifold. I have highlighted machining remnants which reveal the depth of the new receptacle.

Machined Step-Downs



HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

Exhaust Manifold Receptacle



86.     It is obvious that the receptacle of the copper component is capable of holding coolant

        (with proper orientation of the copper component).  Its ability to hold coolant is

        independent of any other receptacles that are present in the CoolIT H100i device.  Also,

        the receptacle I have identified has a particular engineering purpose that is not

        accomplished by any other receptacle that is present.  As Asetek's prior expert Dr. Tilton

        has admitted, this kind of copper component, as exemplified by Figure 14A of U.S.

        Patent No. 9,057,567 (the "'567 patent"), can hold liquid and thus can function like a

        receptacle, which is simply "one that receives and contains something" like a container

        (Merriam-Webster's Collegiate Dictionary (2000), at p. 972):

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY



Figure 14A of the '567 patent

Donald E. Tilton, Ph.D.

Page 37

1       THE WITNESS:  I already mentioned that.  The
2  way it's depicted, that's what appears.
3       MR. CHEN:  Okay.  Let's go ahead and take a
4  take ten-minute break and be back at 3:30, please.
5       (Break taken.)
6  BY MR. CHEN:
7       Q.  All right.  Dr. Tilton, I'd like to have you
8  take a look at Figure 1 of Bezama.  And I can share it
9  on my screen; but if you prefer, you can also use your
10  own copy.
11      A.  You can just share it, I guess.  That's fine.
12      Q.  Do you see Figure 1 of Bezama?
13      A.  Yes, I do.
14      Q.  Okay.
15      A.  Now I don't.
16      Q.  Right.  Right.  I realize that.
17          So I'd also like you to be able to take a look
18  at Figure 14A of the '567 patent at the same time.
19          Do you see in front of you Figure 14A of the
20  '567 patent?
21      A.  I do.
22      Q.  Okay.
23          I'd like you to compare Figure 1 of Bezama to
24  Figure 14A of the '567 patent.
25          So just considering these two heat exchange

Page 39

1  BY MR. CHEN:
2       Q.  Okay.  I'd like you to take a look at Figure
3  14A of the '567 patent.
4       A.  Okay.
5       Q.  Thank you.
6           If I add liquid to 320 prime, in Figure 14A of
7  the '567 patent, will it contain liquid?
8           MS. BHATTACHARYYA:  Objection.  Form.
9           THE WITNESS:  It will contain liquid up to the
10  level of the top surface – top surface -- the grooves
11  around the edges that are labeled 322 prime appear that
12  they would fill with liquid.
13  BY MR. CHEN:
14      Q.  So 322 prime will receive and hold liquid; is
15  that correct?
16      A.  That appears to be correct.
17      Q.  Could I have you take a look at Figure 13A of
18  the '567 patent.
19      A.  Okay.
20      Q.  If I add liquid to 320, that's the heat
21  exchange interface in Figure 13A of the '567 patent,
22  will it contain liquid?
23          MS. BHATTACHARYYA:  Object to form.
24          THE WITNESS:  It appears that it will.  Again,
25  up to the level of the flat surface.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

(12/19/2021 Dr. Donald Tilton Depo. at 39:1-16.)  Additionally, I understand the Court in the prior *Asetek v. CoolIT* case construed "reservoir" as "a receptacle or chamber for holding a liquid or fluid."  *Asetek Holdings, Inc., et al. v. CoolIT Systems Inc.*, Case No. 3:12-cv-04498-EMC (Dkt. No. 155 at 6.)  Under the Court's prior construction, the copper component is a "reservoir" because it is "a receptacle or chamber for holding a liquid or fluid."

87.   With this now apparent, it is my opinion that Dr. Tuckerman is incorrect, and that what he has identified as a "lower/thermal exchange chamber" actually consists of multiple receptacles.  This is because the parties have agreed that the claimed lower/thermal exchange chamber is a compartment within the ***single*** receptacle defining a fluid flow path.  Because what Dr. Tuckerman points to as the lower/thermal exchange chamber actual has two receptacles, the accused product does not infringe.



This is not a lower chamber, it has two receptacles.

Heat-exchanging interface

Lower chamber

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

# This is not a thermal exchange chamber, it has two receptacles



Thermal Exchange
Chamber (exploded view)

88.     Further, the reason why Dr. Tuckerman has to point to two receptacles to satisfy the lower/thermal exchange chamber limitation is because there is simply little to no discernable space in the plastic portion of the accused device that can serve as the lower/thermal exchange chamber, as shown below:



HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

*12(i) a frame configured to fasten the reservoir to a board on which a computer system*

*processing unit is configured to be mounted, wherein the frame has four holes, one*

*provided in each corner of the frame configured to correspond to holes in the board;*

311.   As I discussed with respect to the '362 patent, the new design does not possess the

claimed reservoir or a chamber within the claimed reservoir, and therefore does not

practice this claim element.  I adopt that prior discussion here.


*12(j) a gasket configured to seal between the reservoir and the heat exchanging interface.*

312.   As I discussed with respect to the '362 patent, the new design does not possess the

claimed reservoir or a chamber within the claimed reservoir, and therefore does not

practice this claim element.  I adopt that prior discussion here.

313.   Further, there is no inducement or contributory infringement by CoolIT because there is

no direct infringement by any of the accused products, as discussed above.  Neither

CoolIT nor Corsair induces others to infringe because the accused products do not

infringe.  Also, neither CoolIT nor Corsair contribute to others' infringement because,

again, CoolIT's accused products do not infringe.


Date: December 8, 2021

Dr. John Abraham
University of St. Thomas
School of Engineering
2115 Summit Ave
St. Paul, MN 55105-1079