# Exhibit C

Exhibit C

```
1              IN THE UNITED STATES DISTRICT COURT
2             FOR THE NORTHERN DISTRICT OF CALIFORNIA
3                    SAN FRANCISCO DIVISION
4
5      ASETEK DANMARK A/S,          )
                                    )
6          Plaintiff and           )
           Counter-Defendant,      )
7                                   )
       vs.                         ) Case No. 3:19-cv-00410-EMC
8                                   )
       COOLIT SYSTEMS, INC.,        )
9                                   )
           Defendant and           )
10          Counter-Claimant.       )
                                    )
11     COOLIT SYSTEMS USA INC.,     )
       COOLIT SYSTEMS ASIA PACIFIC )
12     LIMITED, COOLIT SYSTEMS      )
       (SHENZHEN) CO., LTD.,        )
13                                  )
           Defendants,             )
14                                  )
       COSAIR GAMING INC., and      )
15     CORSAIR MEMORY INC.,         )
                                    )
16          Defendants.            )
                                    )
17
18
19            DEPOSITION OF DAVID TUCKERMAN, Ph.D.
20               MONDAY, DECEMBER 22, 2021
21
22
23     Reported Remotely and Stenographically by:
24     JANIS JENNINGS, CSR No. 3942, CLR, CCRR
25     Job No. 4997336
```

Page 1

1

2

3

4

5

6

7      REMOTE DEPOSITION OF DAVID TUCKERMAN, Ph.D., located

8      in Lake Stevens, Washington, taken on behalf of the

9      Defendants and Counter-Claimants CoolIT entities and

10     Corsair entities, beginning at 9:10 a.m., on Wednesday,

11     December 22, 2021, sworn remotely by Janis Jennings,

12     Certified Shorthand Reporter No. 3942, CLR, CCRR,

13     located in the City of Walnut Creek, County of

14     Contra Costa, State of California.

15

16

17

18

19

20

21

22

23

24

25

Page 2

```
1        REMOTE APPEARANCES:

2

3       For Plaintiff and Counter-Defendant Asetek Danmark

4       A/S:

5            FINNEGAN HENDERSON FARABOW GARRETT & DUNNER LLP

6            BY:  ARPITA BHATTACHARYYA, ESQ.

7            3300 Hillview Avenue

8            Palo Alto, California  94304

9            650.849.6600

10           arpita.byattacharyya@finnegan.com

11

12      For Defendants and Counter-Claimant CoolIT entities and

13      Corsair entities:

14           COOLEY RLLP

15           BY:  REUBEN CHEN, ESQ.

16                DUSTIN KNIGHT, ESQ.

17           3175 Hanover Street

18           Palo Alto, California  94304

19           650.843.5000

20           rchen@cooley.com

21           dknight@cooley.com

22

23           Also Present:

24                SOSEH KEVORKIAN, Videographer

25
```

Page 3

1                          I N D E X

2

3        WITNESS                                          PAGE

4        DAVID TUCKERMAN, Ph.D.

5

6

7             EXAMINATION BY MR. KNIGHT                    9

8

9

10

11                    QUESTIONS NOT ANSWERED

12

13                    PAGE            LINE

14                     53              24

15                    232              20

16

17

18

19

20

21

22

23

24

25

                                              Page  4

```
 1              Dr. Tuckerman, have you ever spoken with      09:18
 2    anyone at Asetek?                                       09:18
 3       A.   I have not spoken with anyone from Asetek.      09:18
 4       Q.   Okay.  Okay.  And do you speak Danish,          09:18
 5    Dr. Tuckerman?                                          09:18
 6       A.   No, I do not.                                   09:18
 7       Q.   Okay.  Do you read Danish?                      09:18
 8       A.   I can't say that I do.                          09:18
 9       Q.   Okay.  Okay.  Now, did you review any of        09:18
10    Asetek's documents in preparing your rebuttal           09:18
11    report?                                                 09:18
12       A.   There -- well, there was a -- I mean, there     09:18
13    was a deposition from Eriksen that I recall.  The --    09:18
14    there was -- I mean, there was -- can I see the         09:18
15    Materials Considered list?                              09:19
16       Q.   Yes.  It should be in the folder, so feel       09:19
17    free to review that to refresh your recollection.       09:19
18              DEPOSITION REPORTER:  Dr. Tuckerman, I think  09:19
19    we're getting your notifications in the audio, if       09:19
20    you're able to shut that off, please.                   09:19
21              THE WITNESS:  I don't -- really?              09:19
22              DEPOSITION REPORTER:  Well, it was            09:19
23    somebody's.  I thought it was yours, but I could be     09:19
24    wrong.                                                  09:19
25              THE WITNESS:  I'm not hearing anything.  I
```

                                              Page 13

```
 1    mean, what I could do is -- let me -- I mean, I had     09:19

 2    my mail open so that is where I had to go to open up    09:19

 3    this Zoom meeting.  So I closed my email.               09:19

 4    There's -- let's see -- I think -- I'm hoping you       09:20

 5    won't hear any more.  I mean, I didn't hear             09:20

 6    anything, but anyway...                                 09:20

 7             DEPOSITION REPORTER:  Thank you.               09:20

 8             THE WITNESS:  I don't know if it was me.       09:20

 9             Okay.  So you asked about -- what was your     09:20

10    question again?                                         09:20

11    BY MR. KNIGHT:                                          09:20

12        Q.   Sure.  I just asked you if you reviewed any    09:20

13    Asetek documents in preparing your rebuttal             09:20

14    noninfringement report.                                 09:20

15        A.   I don't see anything here other than the       09:20

16    deposition transcript of Andre Eriksen taken on         09:21

17    August 24th and 25th.  So that's it.                    09:21

18        Q.   Okay.  And that Materials Considered list,     09:21

19    is that a complete list of the materials that you       09:21

20    reviewed in preparing your noninfringement report?      09:21

21        A.   As far as I can recall, yes.                   09:21

22        Q.   Okay.  Okay.  Now, for the opinions in your    09:21

23    rebuttal report, did you write those opinions?          09:21

24        A.   They were written in collaboration with        09:21

25    counsel.                                                09:21
```

Page 14

| | | |
|---|---|---|
| 1 | Q.   Okay.  And is it fair to say that the | 09:21 |
| 2 | opinions in your noninfringement report are your own | 09:21 |
| 3 | though? | 09:22 |
| 4 | A.   That's absolutely correct. | 09:22 |
| 5 | Q.   Okay.  And they're not someone else's | 09:22 |
| 6 | opinions; right? | 09:22 |
| 7 | A.   That is correct. | 09:22 |
| 8 | Q.   Okay.  Who prepared the first draft of your | 09:22 |
| 9 | report? | 09:22 |
| 10 | A.   The first draft was prepared by Arpita. | 09:22 |
| 11 | Q.   Okay.  Okay.  Great.  Okay. | 09:22 |
| 12 | So could you please turn to paragraphs 48 | 09:22 |
| 13 | and 50 in your report.  And I would just like you to | 09:22 |
| 14 | read those paragraphs for me.  Let me know when you | 09:22 |
| 15 | are finished. | 09:22 |
| 16 | A.   Yeah.  By the way, I should mention there | 09:22 |
| 17 | was back and forth before, you know, the first draft | 09:22 |
| 18 | and lots of back and forth after the first draft, | 09:22 |
| 19 | you know. | 09:22 |
| 20 | Q.   Great.  Great.  I wouldn't expect anything | 09:22 |
| 21 | less. | 09:22 |
| 22 | A.   Yes.  So repeat your last question, please. | 09:22 |
| 23 | Q.   Yeah.  Yeah.  I just asked if you could turn | 09:22 |
| 24 | to paragraphs 48 and 50 in your report and read | 09:22 |
| 25 | those paragraphs for me, and just let me know when | 09:23 |

Page 15

```
1    you've finished reading them.                        09:23

2       A.   Okay.  And by the way, since I expect we     09:23

3    will be referring to this further, I'm also          09:25

4    downloading onto the disk so that I --               09:25

5       Q.   Great.  Great.                                09:25

6       A.   Yeah.  Yeah.                                  09:25

7       Q.   Let me know when you are ready.               09:25

8       A.   Yeah.  All right.                             09:25

9            MR. KNIGHT:  I would like to introduce to    09:25

10   the record what I am labeling as Exhibit 277.        09:26

11           (Exhibit 277 marked for identification.)     09:26

12   BY MR. KNIGHT:                                        09:26

13      Q.   Let me know when you see it, Dr. Tuckerman.  09:26

14      A.   Yes.  It just appeared.                       09:26

15      Q.   Okay.                                         09:26

16      A.   Okay.                                         09:26

17      Q.   Great.  Dr. Tuckerman, have you seen this    09:26

18   document before?                                     09:26

19      A.   Let me look at the Materials Considered.     09:26

20      Q.   Sure.                                         09:27

21      A.   Okay.  I don't see it on my -- wait a        09:29

22   minute.  No, there it is.  It's in Exhibit A.        09:29

23   It's -- it is the -- yeah, 2020-00825.  Yes.  Yes.   09:29

24      Q.   Okay.  Perhaps we should switch -- strike    09:29

25   that.                                                09:29
```

Page 16

```
 1            So are you saying that you have seen this      09:29
 2    document before?                                       09:29
 3        A.   Oh, yes, indeed.  Yeah.                        09:29
 4        Q.   Okay.  Okay.  Can we switch to your            09:29
 5    Materials Considered list.                             09:29
 6        A.   Right.                                         09:29
 7        Q.   And for your Materials Considered list, can    09:29
 8    you point me to where in that list it describes        09:29
 9    Dr. Tilton's corrected supplemental declaration?       09:30
10        A.   Well, it's part of -- I mean, this is part     09:30
11    of a PTAB case, and I certainly remember seeing this   09:31
12    document.  I inferred that it is a component of the    09:31
13    PTAB's final written decision in IPR2020-00825, that   09:31
14    it would be a component of that decision.              09:31
15            If that's not correct, then let's -- that it   09:32
16    is a component of it, it doesn't change the fact       09:32
17    that I have seen the document.                         09:32
18        Q.   Okay.  So I'll represent to you that          09:32
19    Dr. Tilton's corrected supplemental declaration is    09:32
20    not a component of the PTAB's final written           09:32
21    decision.  So to confirm --                            09:32
22            MS. BHATTACHARYYA:  Objection.  Okay.  Go      09:32
23    ahead, Dustin.                                         09:32
24            MR. KNIGHT:  Okay.                             09:32
25            MS. BHATTACHARYYA:  Finish your question.      09:32
```

Page 17

```
 1              MR. KNIGHT:  Yep.                        09:32

 2    BY MR. KNIGHT:                                     09:32

 3        Q.   So to confirm, the Materials Considered list 09:32

 4    only recites that you considered the PTAB's final 09:32

 5    written decision in IPR2020-00825; correct?       09:32

 6              MS. BHATTACHARYYA:  Objection.  Form.   09:32

 7    Mischaracterizes prior testimony.  Mischaracterizes 09:33

 8    the document.                                      09:33

 9              THE WITNESS:  Just a moment, please.     09:33

10    BY MR. KNIGHT:                                     09:33

11        Q.   Of course.  Take your time.              09:33

12        A.   Okay.  So repeat your question, please.  09:34

13        Q.   So my question is:  In your Materials     09:34

14    Considered list, you only cite the final written  09:35

15    decision in IPR2020-00825; correct?               09:35

16              MS. BHATTACHARYYA:  Same objections.  Same 09:35

17    objections.                                        09:35

18              THE WITNESS:  I cite that IPR202-000825  09:35

19    document in my report -- well, in Materials        09:35

20    Considered also, yes.                              09:35

21    BY MR. KNIGHT:                                     09:35

22        Q.   When you say "document," you mean the PTAB's 09:35

23    final written decision?                            09:35

24              MS. BHATTACHARYYA:  Objection.           09:35

25    Mischaracterizes prior testimony.                 09:35
```

Page 18

```
 1                THE WITNESS:  Well, what is -- okay.  So      09:36
 2    what I am saying is IPR2020-00825 is referred to in    09:36
 3    this report and the Materials Considered list -- the   09:36
 4    references in the Materials Considered list are --     09:37
 5    relate -- that include that IPR case are CoolIT's      09:37
 6    patent owner response in IPR2020-00825 against         09:37
 7    CoolIT's '266 patent.  And the PTAB's final written    09:37
 8    decision in IPR2020-00825 --                           09:37
 9    BY MR. KNIGHT:                                          09:37
10        Q.   Okay.                                         09:37
11        A.   -- so, yeah.                                  09:37
12        Q.   Okay.  Do you know what an "IPR final         09:37
13    written decision" is?                                  09:37
14                MS. BHATTACHARYYA:  Objection.  Calls for  09:37
15    legal conclusions.                                     09:37
16                THE WITNESS:  Well, I know that the PTAB is 09:37
17    like a court in the -- my understanding is that the    09:37
18    PTAB is like a court in -- associated with the         09:37
19    patent office, and they handle appeals.  And a final   09:38
20    written decision would be like a court judgment, so    09:38
21    that's the level of my understanding.  I'm not a,      09:38
22    you know, a patent attorney or, you know -- or -- so   09:38
23    that -- but that's my understanding.                   09:38
24    BY MR. KNIGHT:                                          09:38
25        Q.   I totally understand, Dr. Tuckerman.  Hey,    09:38
```

Page 19

1    I'm not a liquid cooling expert, so we each have our    09:38

2    lanes.                                                   09:38

3          So the PTAB's final written decision in           09:38

4    IPR2020-00825, was that a decision that was issued       09:38

5    by the Patent Trial and Appeal Board or Dr. Tilton?     09:38

6       A.   Well, a court decision would be issued by       09:38

7    the board.  It wouldn't be issued by a party to         09:38

8    the...                                                   09:38

9       Q.   Okay.  So just to clarify the record,           09:38

10   Dr. Tilton's corrected supplemental declaration is      09:39

11   not listed on your Materials Considered list;           09:39

12   correct?                                                 09:39

13         MS. BHATTACHARYYA:  Objection.                     09:39

14   Mischaracterizes prior testimony.                        09:39

15         THE WITNESS:  Excuse me a minute.  I need a        09:39

16   couple minutes to refresh my memory on the Tilton       09:40

17   document.  I saw a great many documents since this      09:40

18   case began and some of them involved the Tilton, but   09:40

19   let me --                                                09:40

20   BY MR. KNIGHT:                                           09:40

21      Q.   I understand, Dr. Tuckerman, but that is not    09:40

22   responsive to my question.  My question is very         09:40

23   simple.  It's whether or not Dr. Tilton's corrected     09:40

24   supplemental declaration is listed on your Materials    09:40

25   Considered list.  Could you answer that question for    09:40

Veritext Legal Solutions
866 299-5127

```
 1    me?                                                09:40

 2            MS. BHATTACHARYYA:  Objection.  Asked and  09:40

 3    answered.                                          09:40

 4            THE WITNESS:  To me, it's a -- well, the   09:40

 5    question in my mind, and I think this is a --      09:41

 6    perhaps a legal technicality question, is whether  09:41

 7    the -- whether this exhibit was incorporated in the 09:41

 8    PTAB's final written decision.                     09:41

 9            I don't know whether it would be considered 09:41

10    as such or not.  If it is not actually physically  09:41

11    part of that decision which is, you know, a        09:41

12    significant document, then I would say it's not on 09:41

13    the list.                                          09:41

14    BY MR. KNIGHT:                                     09:41

15       Q.   Okay.                                      09:41

16       A.   On the other hand, if it was integral to it, 09:41

17    then it would be on the list is the best answer I  09:41

18    can give you.                                      09:41

19       Q.   Okay.  So sitting here -- oh, I'm sorry.   09:41

20    Did you have anything else to say, Dr. Tuckerman?  09:41

21       A.   No.                                        09:41

22       Q.   Okay.  Okay.  So sitting here today, do you 09:41

23    know if you reviewed this document by Dr. Tilton or 09:42

24    another document by Dr. Tilton?                    09:42

25       A.   Well, I mean, like I say, I have seen many 09:42
```

Page 21

```
 1    documents by Dr. Tilton and I -- you know, this was      09:42

 2    in a large pile of documents that was shipped to me      09:42

 3    is -- you know, to the best of my recollection, it       09:42

 4    was in there, among other Tilton testimony.              09:42

 5        Q.   Okay.  Okay.                                    09:42

 6        A.   I'm, you know -- I mean, like I say, there      09:42

 7    are lots of documents.  But I'm quite sure some --       09:42

 8    you know, anything relevant to the case was in there     09:42

 9    and this appears relevant so...                          09:43

10        Q.   Okay.  Are you relying on this document if      09:43

11    it's not identified in your Materials Considered         09:43

12    list?                                                    09:43

13             MS. BHATTACHARYYA:  Objection.  Form.           09:43

14             THE WITNESS:  Well, that gets into -- please    09:43

15    allow me to refresh my memory on what's in the           09:43

16    document.                                                09:43

17    BY MR. KNIGHT:                                           09:43

18        Q.   Go ahead.                                       09:43

19        A.   Okay.  So please repeat your question now       09:45

20    that I've had a chance to read it.                       09:45

21        Q.   Uh-huh.                                         09:45

22        A.   And now that I've had a chance to refresh my    09:45

23    memory.                                                  09:45

24        Q.   Uh-huh.  I asked you are you relying on this    09:45

25    document if it's not identified on your Materials        09:45
```

Page 22

```
 1   Considered list?                                    09:45

 2         MS. BHATTACHARYYA:  Objection.  Form.         09:45

 3         THE WITNESS:  I am not relying on it per se.  09:45

 4   I certainly agree with Tilton, but I would have made 09:45

 5   an identical argument, and I do make that argument.  09:45

 6         So I'm not relying on Dr. Tilton's opinion    09:45

 7   in this matter, although he is an expert who I have  09:45

 8   great respect for.  So I would say I concur with     09:45

 9   Tilton's position, but I'm not relying on it because 09:46

10   I would have made, and I do make, the exact same     09:46

11   physical arguments in the text.                      09:46

12   BY MR. KNIGHT:                                       09:46

13     Q.   And you understand that you need to properly 09:46

14   identify everything that you rely on in your         09:46

15   Materials Considered list; right?                    09:46

16         MS. BHATTACHARYYA:  Objection.  Form.         09:46

17         THE WITNESS:  Well, I am not claiming to      09:46

18   have relied on Tilton.  I was just saying that I     09:46

19   agree with Tilton.  I understood he had that         09:46

20   position, but my position is an independently taken  09:46

21   position, which -- and that is the position that's   09:46

22   in my report.                                        09:46

23   BY MR. KNIGHT:                                       09:46

24     Q.   I understand that, Dr. Tilton [verbatim].  I 09:46

25   think my question was slightly different.            09:46
```

Page 23

```
 1      A.    Tuckerman.                                09:46

 2      Q.    Or -- sorry.  Sorry.  The Ts.             09:47

 3            My question was:  Do you understand that you 09:47

 4   need to properly identify everything that you rely   09:47

 5   on in your Materials Considered list; correct?       09:47

 6            MS. BHATTACHARYYA:  Objection.  Form.     09:47

 7            THE WITNESS:  That -- well, that certainly 09:47

 8   makes sense.                                         09:47

 9   BY MR. KNIGHT:                                       09:47

10      Q.    Okay.  Okay.  Turning back to Dr. Tilton's 09:47

11   corrected supplemental declaration.  What's the date 09:47

12   that appears on the document?                        09:47

13      A.    That's dated May 10th, 2021.              09:47

14      Q.    Okay.  Now, Dr. Tuckerman, do paragraphs 2 09:47

15   and 4 of Dr. Tilton's supplemental declaration in    09:48

16   IPR2020-00825 use nearly the same words verbatim as  09:48

17   in your paragraph 48 and 50 of your noninfringement  09:48

18   report?                                              09:48

19      A.    Allow me to compare.                      09:48

20            Repeat your question, please, now.        09:50

21      Q.    Certainly.  So, Dr. Tuckerman, do paragraphs 09:50

22   2 and 4 of Dr. Tilton's supplemental declaration in  09:50

23   IPR2020-00825 use nearly the same words verbatim as  09:50

24   in, respectively, paragraphs 48 and 50 of your       09:50

25   noninfringement report?                              09:50
```

Page 24

```
 1            MS. BHATTACHARYYA:  Objection.           09:50
 2    Mischaracterizes the documents.                  09:50
 3            THE WITNESS:  There is -- there are sections 09:50
 4    of -- there are, shall we say -- there is the use of 09:50
 5    the same words or a few words put together in places 09:50
 6    that -- let's put it this way, the -- Tilton's   09:50
 7    opinion is very sound, and there's some things that 09:51
 8    can't really be said more clearly or better than the 09:51
 9    way he put it.                                   09:51
10            So I didn't see any reason that -- you know, 09:51
11    having seen the report previously, you understand, 09:51
12    and agreeing with that, I didn't see any reason to 09:51
13    make every word different.  I didn't think that I 09:51
14    was, you know -- you know, being -- I didn't think 09:51
15    there was an issue of, you know, being accused of 09:51
16    plagiarism or something like that.  It's just that 09:51
17    in technical fields, when something is correct and 09:51
18    true, people say things the same way.            09:51
19            And so I didn't see any problem -- I don't 09:52
20    see any problem that, in certain places, the same 09:52
21    words were used as Tilton because it's -- but     09:52
22    it's -- it is a position that is 100 percent      09:52
23    defensible on its own.  And the fact that some of 09:52
24    the words are similar, I -- does not mean that I am 09:52
25    relying on his document.                         09:52
```

Page 25

| | | |
|---|---|---|
| 1 | MR. KNIGHT:  Okay.  I would like to | 09:52 |
| 2 | introduce as Exhibit 278, a redline comparing | 09:52 |
| 3 | paragraphs 2 and 4 of Dr. Tilton's supplemental | 09:52 |
| 4 | declaration in IPR2020-00825 to paragraphs 48 and 50 | 09:52 |
| 5 | of your noninfringement report. | 09:53 |
| 6 | (Exhibit 278 marked for identification.) | 09:53 |
| 7 | THE WITNESS:  Is it uploaded?  I don't see | 09:53 |
| 8 | any exhibit. | 09:53 |
| 9 | BY MR. KNIGHT: | 09:53 |
| 10 | Q.   Give me one moment, Dr. Tuckerman. | 09:53 |
| 11 | A.   Oh, surely.  I will take a drink. | 09:53 |
| 12 | Q.   Yeah.  We are doing a lot of talking. | 09:53 |
| 13 | A.   Yeah. | 09:53 |
| 14 | Q.   I'm getting parched as well. | 09:53 |
| 15 | All right.  Dr. Tuckerman, I have uploaded | 09:54 |
| 16 | the redline.  Let me know if you can see it. | 09:54 |
| 17 | A.   Yes. | 09:54 |
| 18 | Q.   Dr. Tuckerman, is this redline an accurate | 09:54 |
| 19 | representation to you of the differences between | 09:54 |
| 20 | Dr. Tilton's supplemental declaration at paragraphs | 09:54 |
| 21 | 2 and 4, and your noninfringement report at | 09:54 |
| 22 | paragraphs 48 and 50? | 09:54 |
| 23 | MS. BHATTACHARYYA:  Objection. | 09:54 |
| 24 | Mischaracterizes the document. | 09:54 |
| 25 | THE WITNESS:  Allow me to make my own | 09:54 |

Page 26

```
 1   set them side by side.                          10:01
 2      Q.   You're welcome to print them out if you'd  10:01
 3   like.                                           10:01
 4      A.   Okay.  I -- that would be really helpful.  10:01
 5   On this laptop, I can't print.  Well, let me just...  10:02
 6           MR. KNIGHT:  I'd like to go off the record.  10:02
 7           THE WITNESS:  Okay.  I'm really sorry.  I  10:02
 8   just want to be sure that this...               10:02
 9           MR. KNIGHT:  Dr. Tilton [verbatim], while  10:02
10   you print those out, I'd like to go off the record,  10:02
11   if that's all right.                            10:02
12           THE WITNESS:  Okay.  I mean, if my counsel  10:02
13   will stipulate that this has been done correctly,  10:02
14   then I would go ahead.  I'm not trying to be    10:02
15   obstructionist.                                 10:02
16           MR. KNIGHT:  I totally understand.  I     10:02
17   understand you have got -- you've got to check all  10:02
18   this stuff and I would do the same thing so...  10:02
19           THE WITNESS:  Okay.  Should I sign off or  10:02
20   what do I do?                                   10:02
21           MS. BHATTACHARYYA:  We can go off the     10:02
22   record.                                         10:02
23           THE VIDEOGRAPHER:  We're going off the    10:02
24   record at 10:02 a.m.                            10:02
25           (Off the record.)                       10:03
```

Page 28

| | | |
|---|---|---|
| 1 | THE VIDEOGRAPHER:  We are on the record at | 10:18 |
| 2 | 10:18 a.m.  This is the beginning of media 2 in the | 10:18 |
| 3 | deposition of Dr. David Tuckerman. | 10:18 |
| 4 | BY MR. KNIGHT: | 10:19 |
| 5 | Q.    Welcome back, Dr. Tuckerman. | 10:19 |
| 6 | A.    Thank you. | 10:19 |
| 7 | Q.    Rather than have you print out and compare | 10:19 |
| 8 | the paragraphs that we discussed earlier, I'll just | 10:19 |
| 9 | represent to you that the Exhibit 278 is a | 10:19 |
| 10 | comparison of paragraphs 2 and 4 from Dr. Tilton's | 10:19 |
| 11 | corrected supplemental declaration in IPR2020-00825 | 10:19 |
| 12 | to paragraphs 48 and 50 in your noninfringement | 10:19 |
| 13 | report, and that it was generated using a computer | 10:19 |
| 14 | program. | 10:19 |
| 15 | Now, with that understanding in mind, | 10:19 |
| 16 | Dr. Tuckerman, did you ask Dr. Tilton for permission | 10:19 |
| 17 | to copy the words he used in paragraphs 2 and 4 of | 10:19 |
| 18 | his corrected supplemental declaration? | 10:20 |
| 19 | MS. BHATTACHARYYA:  Objection.  Form. | 10:20 |
| 20 | THE WITNESS:  I did not think it was | 10:20 |
| 21 | necessary in -- that this was not an issue of, you | 10:20 |
| 22 | know, publication matters that -- I should say, by | 10:20 |
| 23 | the way, that my difficulties are I'm not -- I'm a | 10:20 |
| 24 | different generation from you folks.  I'm not real | 10:20 |
| 25 | computer literate and about the most I can figure | 10:20 |

Page 29

| | | |
|---|---|---|
| 1 | out is how to get -- I borrowed this laptop so that | 10:20 |
| 2 | one -- the one I'm looking at is not connected to my | 10:20 |
| 3 | printer, and getting more than two things on there | 10:20 |
| 4 | at the same time is -- I just was having trouble | 10:20 |
| 5 | so... | 10:20 |
| 6 | But, anyway, you know, when something is | 10:20 |
| 7 | true and correct and technically correct, you know, | 10:20 |
| 8 | I don't feel the need to change around the words. | 10:20 |
| 9 | You know, if I was publishing a paper, you know, | 10:21 |
| 10 | then issues of permission might be relevant.  But | 10:21 |
| 11 | when I'm just stating a truth -- and let me be very | 10:21 |
| 12 | clear, I'm not relying on Dr. Tilton's opinions.  I | 10:21 |
| 13 | think Dr. Tilton is correct, but these are -- these | 10:21 |
| 14 | are exactly my own opinion on the subject because | 10:21 |
| 15 | they're manifestly and obviously true physical facts | 10:21 |
| 16 | so... | 10:21 |
| 17 | BY MR. KNIGHT: | 10:21 |
| 18 | Q.   Okay.  Okay.  One last question on this, | 10:21 |
| 19 | then I think we should probably move on. | 10:21 |
| 20 | And to your point about being from a | 10:21 |
| 21 | different generation, I'm from a different | 10:21 |
| 22 | generation than -- than like my sister, for example. | 10:21 |
| 23 | I don't have social media, so I get it in a | 10:21 |
| 24 | different context for sure. | 10:21 |
| 25 | In your professional opinion, is it | 10:21 |

Page 30

```
 1    acceptable to copy the words of another author          10:21

 2    without citing to that author?                          10:22

 3              MS. BHATTACHARYYA:  Objection.  Calls for a    10:22

 4    legal conclusion.  Mischaracterizes the document.       10:22

 5    Mischaracterizes prior testimony.                       10:22

 6              THE WITNESS:  Yeah.  Say the question again,   10:22

 7    please.                                                 10:22

 8    BY MR. KNIGHT:                                          10:22

 9       Q.   Sure.  Sure.  In your professional opinion,     10:22

10    do you believe it is acceptable to copy the words of    10:22

11    another author without citing that author?              10:22

12              MS. BHATTACHARYYA:  Same objection.           10:22

13    Mischaracterizes.  Mischaracterizes the documents.      10:22

14    Mischaracterizes prior testimony.  Calls for legal      10:22

15    conclusions.  Objection.  Form.                         10:22

16              THE WITNESS:  I would say it depends on        10:22

17    context.  I...                                          10:22

18    BY MR. KNIGHT:                                          10:22

19       Q.   Okay.  Okay.  Let's move on.                    10:22

20              So I think we should turn to the body of      10:22

21    your report.  So in your report, you opine that         10:23

22    Asetek could design around the CoolIT asserted          10:23

23    patents; is that right?                                 10:23

24       A.   I do opine that, yes.                           10:23

25       Q.   Okay.  Okay.  Now, in paragraphs 75 to 84 of    10:23
```

                                                      Page 31

| | | |
|---|---|---|
| 1 | your report, does that contain the entirety of your | 10:23 |
| 2 | opinions with respect to your proposed | 10:23 |
| 3 | design-arounds? | 10:23 |
| 4 | MS. BHATTACHARYYA:  Objection. | 10:23 |
| 5 | Mischaracterizes the report. | 10:23 |
| 6 | THE WITNESS:  Let me find the paragraphs. | 10:23 |
| 7 | Which paragraph, please? | 10:23 |
| 8 | BY MR. KNIGHT: | 10:23 |
| 9 | Q.   Paragraphs 75 through 84. | 10:23 |
| 10 | A.   Okay.  And your question about these -- the | 10:24 |
| 11 | question about these is what again, please? | 10:24 |
| 12 | Q.   Yeah.  So do paragraphs 75 through 84 in | 10:24 |
| 13 | your report contain the entirety of your opinion | 10:24 |
| 14 | with respect to your proposed design-arounds? | 10:24 |
| 15 | MS. BHATTACHARYYA:  Same objections. | 10:24 |
| 16 | THE WITNESS:  I would say they represent an | 10:24 |
| 17 | opinion of mine.  I would not say that they are the | 10:24 |
| 18 | only opinions that I might have, but they are the | 10:24 |
| 19 | opinions that I've chosen to, you know, put to paper | 10:24 |
| 20 | and submit to the court. | 10:24 |
| 21 | I would reserve the right, if it's legally | 10:24 |
| 22 | appropriate, to add additional arguments in that | 10:25 |
| 23 | direction should it be, you know, necessary and | 10:25 |
| 24 | appropriate.  So I can't say that it's the entirety | 10:25 |
| 25 | of my opinions on the subject. | 10:25 |

Page 32

| | | |
|---|---|---|
| 1 | out to be correct in certain context, certain gap | 11:58 |
| 2 | widths, certain types of chip heat maps. | 11:58 |
| 3 | But having Dr. Stein's simulation results | 11:58 |
| 4 | certainly gave me more confidence in stating what I | 11:58 |
| 5 | stated.  So, you know, like I said, I have the | 11:58 |
| 6 | issues -- this word "rely" is constantly used, and I | 11:58 |
| 7 | don't know if it has a legal meaning.  I probably | 11:58 |
| 8 | should learn that.  I'm not a lawyer.  But I find it | 11:58 |
| 9 | a very strong supporting material for my opinion. | 11:58 |
| 10 | BY MR. KNIGHT: | 11:58 |
| 11 | Q.   Okay.  Okay.  Now, is it your understanding | 11:58 |
| 12 | that the testing Dr. Stein did was using both the | 11:58 |
| 13 | cold plate design-arounds and the gasket | 11:59 |
| 14 | design-arounds together? | 11:59 |
| 15 | MS. BHATTACHARYYA:  Objection. | 11:59 |
| 16 | Mischaracterizes the report. | 11:59 |
| 17 | THE WITNESS:  Okay.  I cannot recall for | 11:59 |
| 18 | sure if the gasket change was in the simulation. | 11:59 |
| 19 | It -- I wouldn't have expected it to make a material | 11:59 |
| 20 | difference so... but I -- my memory is failing me on | 11:59 |
| 21 | the point of -- of that.  It -- | 11:59 |
| 22 | BY MR. KNIGHT: | 11:59 |
| 23 | Q.   Okay. | 11:59 |
| 24 | A.   Yeah.  Like I say, I wouldn't have expected | 11:59 |
| 25 | it to matter, but it -- I'm just having -- I was | 11:59 |

Page 70

```
 1    more concerned with the -- what would really change    11:59
 2    the thermal performance, which was the microchannel    12:00
 3    plate.                                                 12:00
 4         Q.   Okay.   Okay.   Yep.   Whatever you remember, 12:00
 5    Dr. Tuckerman.                                         12:00
 6              Okay.   So in paragraph 84, you reference    12:00
 7    Asetek's Gen 3 and Cooler Master products, and you     12:00
 8    opine that those are acceptable design-arounds;        12:00
 9    correct?                                               12:00
10         A.   Paragraph 84; right?                         12:00
11         Q.   That's right.                                12:00
12              MS. BHATTACHARYYA:   Objection.              12:00
13    Mischaracterizes the report.                           12:00
14              THE WITNESS:   Okay.   But the actual words I 12:00
15    used -- okay, I say that the CoolIT Exhibit 129        12:00
16    shows that:                                            12:01
17              "Cooler Master's MasterLiquid 240R           12:01
18              does not have split flow (...it has          12:01
19              end-to-end flow in the microchannels),       12:01
20              but its thermal resistance at a given        12:01
21              fan speed is better than the comparable      12:01
22              Corsair product that has split flow in       12:01
23              the microchannels."                          12:01
24              "...counsel for Asetek independently         12:01
25              confirmed that" it does not have --          12:01
```

Page 71

| | | |
|---|---|---|
| 1 | "the MasterLiquid 240R does not have | 12:01 |
| 2 | split flow.  It is further my | 12:01 |
| 3 | understanding that the Cooler Master | 12:01 |
| 4 | Liquid 240 is a meaningful competitor | 12:01 |
| 5 | to Asetek and CoolIT/Corsair's | 12:01 |
| 6 | desktop liquid cooling products. | 12:01 |
| 7 | It is, therefore, reasonable to infer | 12:01 |
| 8 | that the thermal performance of the | 12:01 |
| 9 | nonsplit-flow Cooler Master product | 12:01 |
| 10 | is acceptable to customers of desktop | 12:01 |
| 11 | liquid cooling products." | 12:02 |
| 12 | So in the context -- so what that -- in | 12:02 |
| 13 | simple words, what that's saying is that here is a | 12:02 |
| 14 | nonsplit-flow design that is performing comparable | 12:02 |
| 15 | to other split-flow designs, and given that, there's | 12:02 |
| 16 | a -- it would seem to be a perfectly acceptable | 12:02 |
| 17 | option for customers. | 12:02 |
| 18 | BY MR. KNIGHT: | 12:02 |
| 19 | Q.   Okay.   Okay.   And to your knowledge, why | 12:02 |
| 20 | hasn't Asetek implemented either of those designs? | 12:02 |
| 21 | MS. BHATTACHARYYA:   Objection.   Outside the | 12:02 |
| 22 | scope of the report. | 12:02 |
| 23 | THE WITNESS:   I cannot speculate on why | 12:02 |
| 24 | Asetek makes design choices. | 12:02 |
| 25 | / / / | 12:02 |

Page 72

```
 1    BY MR. KNIGHT:                                    12:02

 2        Q.   Would you agree that these design-arounds   12:02

 3    are easy to implement?                            12:03

 4        A.   Would I agree that they're what?         12:03

 5        Q.   That the design-arounds that you described  12:03

 6    in paragraph 84 would be easy to implement?       12:03

 7        A.   Relatively, yes.                         12:03

 8        Q.   Okay.  And you understand that CoolIT is  12:03

 9    asserting Asetek owes it millions of dollars for  12:03

10    past sales of the infringing products; right?     12:03

11        A.   I don't know the dollar figures, but I know  12:03

12    there's money involved.                           12:03

13        Q.   Okay.  So if the design-arounds are easy to  12:03

14    implement and provide the performance that you say  12:03

15    that they do, why doesn't Asetek implement those  12:03

16    design-arounds to avoid paying the millions of more  12:03

17    dollars?                                          12:03

18             MS. BHATTACHARYYA:  Objection.  Outside the  12:03

19    scope of the report.  Calls for speculation.      12:03

20             THE WITNESS:  Well, yes, I mean, that is  12:03

21    certainly calling for speculation.                12:04

22             What I can say is that engineering product  12:04

23    design is a matter of trade-offs and the -- you   12:04

24    know, I -- you know -- first of all, you know, I  12:04

25    think, you know, we have a position that there is  12:04
```

Page 73

| | | |
|---|---|---|
| 1 | not infringement in the first place.  Okay.  So, you | 12:04 |
| 2 | know why would you redesign something when you don't | 12:04 |
| 3 | believe that there's genuine infringement? | 12:04 |
| 4 | The split-flow is just an embodiment of a | 12:04 |
| 5 | concept that was in my Ph.D. thesis that says if you | 12:04 |
| 6 | have shorter channels, you can optimize for higher | 12:04 |
| 7 | performance, all other things being the same.  But | 12:04 |
| 8 | things -- all other things are not the same in the | 12:05 |
| 9 | design. | 12:05 |
| 10 | It may make more sense to, you know, just | 12:05 |
| 11 | use a different pump rather than doing split-flow | 12:05 |
| 12 | and that may end up being a cheaper solution, you | 12:05 |
| 13 | know, and give you the same performance.  It's | 12:05 |
| 14 | not -- you can -- these are just engineering and | 12:05 |
| 15 | manufacturing decisions that people make, and | 12:05 |
| 16 | they're -- they're quite -- they're not -- there's | 12:05 |
| 17 | no simple answers to what's the best structure. | 12:05 |
| 18 | BY MR. KNIGHT: | 12:05 |
| 19 | Q.   Okay.  Okay.  Okay.  Let's move on to | 12:05 |
| 20 | another sentence in paragraph 84.  You opine that: | 12:05 |
| 21 | "It is further my understanding that | 12:05 |
| 22 | the Cooler Master MasterLiquid 240R is | 12:05 |
| 23 | a meaningful competitor to Asetek and | 12:05 |
| 24 | CoolIT/Corsair's desktop liquid cooling | 12:05 |
| 25 | products." | 12:06 |

Page 74

| | | |
|---|---|---|
| 1 | Correct? | 12:06 |
| 2 | A.   Yeah, I see that sentence, yes. | 12:06 |
| 3 | Q.   Okay.  What is that understanding based on? | 12:06 |
| 4 | MS. BHATTACHARYYA:  Dr. Tuckerman, again, I | 12:06 |
| 5 | can -- I'll caution you about the Rule 26 | 12:06 |
| 6 | protection.  You can provide an answer as to any | 12:06 |
| 7 | fact or data that was provided by counsel to you, | 12:06 |
| 8 | but that's the extent of the answer that you should | 12:06 |
| 9 | provide. | 12:06 |
| 10 | THE WITNESS:  Yeah, I mean, I'd have to -- | 12:06 |
| 11 | I'd have to check something that's -- look up | 12:06 |
| 12 | something to -- to go further on that.  May I have a | 12:07 |
| 13 | minute or two? | 12:07 |
| 14 | BY MR. KNIGHT: | 12:07 |
| 15 | Q.   Certainly.  Take the time that you need. | 12:07 |
| 16 | Dr. Tuckerman, I think we lost you on video. | 12:07 |
| 17 | A.   Sorry about that.  I pushed the wrong | 12:07 |
| 18 | button. | 12:07 |
| 19 | Sorry.  Those notifications are mine, and I | 12:09 |
| 20 | don't know how to mute them. | 12:09 |
| 21 | MS. BHATTACHARYYA:  Dr. Tuckerman, are you | 12:09 |
| 22 | reading your report? | 12:09 |
| 23 | THE WITNESS:  No.  I was trying to look up | 12:10 |
| 24 | something. | 12:10 |
| 25 | Okay.  So I -- yeah, I mean, I don't have -- | 12:10 |

Page 75

| | | |
|---|---|---|
| 1 | I thought maybe I had something, but I don't. | 12:10 |
| 2 | Repeat your -- oh, your question was -- | 12:10 |
| 3 | repeat the question, please. | 12:10 |
| 4 | BY MR. KNIGHT: | 12:10 |
| 5 | Q.   I want to know what was the basis for your | 12:10 |
| 6 | understanding when you say, "It is further my | 12:10 |
| 7 | understanding that the Cooler Master MasterLiquid | 12:10 |
| 8 | 240R is a meaningful competitor to Asetek and | 12:10 |
| 9 | CoolIT/Corsair's desktop liquid cooling products" in | 12:10 |
| 10 | paragraph 84. | 12:10 |
| 11 | A.   Okay. | 12:10 |
| 12 | MS. BHATTACHARYYA:  Same precautions as | 12:10 |
| 13 | before. | 12:10 |
| 14 | THE WITNESS:  Yeah.  And your stipulation, | 12:10 |
| 15 | Arpita, was again, what -- about what I could say? | 12:10 |
| 16 | MS. BHATTACHARYYA:  If it's -- if counsel | 12:10 |
| 17 | provided you a fact or a data that you considered, | 12:10 |
| 18 | then you can -- you can mention that.  But that's | 12:11 |
| 19 | the extent to which you should answer your question. | 12:11 |
| 20 | THE WITNESS:  Okay.  So I was shown a | 12:11 |
| 21 | document that was -- oh, well, yeah.  Exhibit 129, I | 12:11 |
| 22 | mean, there it is.  Right?  Yeah, that's it.  That's | 12:11 |
| 23 | what I was looking for. | 12:11 |
| 24 | Can I see Exhibit 129, please to the -- | 12:11 |
| 25 | Exhibit 129 to the Mostafavi deposition, CoolIT | 12:11 |

Page 76

```
 1    0036274-88.  If you would upload that, please.        12:11

 2            MR. KNIGHT:  Okay.  We can do that later.     12:11

 3    BY MR. KNIGHT:                                         12:11

 4        Q.   So I have another question.  So what do you  12:11

 5    mean in that sentence when you say "a meaningful       12:11

 6    competitor"?                                           12:11

 7        A.   Well, I feel I could answer that more         12:11

 8    clearly if I had that document uploaded, please.       12:12

 9        Q.   I understand that it might be easier to do    12:12

10    that, but I mean, these opinions are yours in your     12:12

11    report; correct?                                       12:12

12        A.   They certainly are and it relies --          12:12

13        Q.   And you adopted those opinions; correct?     12:12

14        A.   My --                                         12:12

15            MS. BHATTACHARYYA:  Objection.                 12:12

16    Mischaracterizes the report.                           12:12

17    BY MR. KNIGHT:                                         12:12

18        Q.   So, presumably, you have an understanding of 12:12

19    what a "meaningful competitor" is when you opine on    12:12

20    it in your report; correct?                            12:12

21            MS. BHATTACHARYYA:  Objection.                 12:12

22    Mischaracterizes the report.                           12:12

23            THE WITNESS:  Well, when these -- this         12:12

24    report relied on certain documents, and I would like  12:12

25    to have the right to the -- in order to give a         12:12
```

Page 77

| | | |
|---|---|---|
| 1 | complete and convincing answer, I would like the | 12:12 |
| 2 | ability to refer to a document that I have cited in | 12:13 |
| 3 | my own report. | 12:13 |
| 4 | BY MR. KNIGHT: | 12:13 |
| 5 | Q.   So you're telling me, sitting here today, | 12:13 |
| 6 | that you cannot tell me what you mean by a | 12:13 |
| 7 | "meaningful competitor" without being able to | 12:13 |
| 8 | reference a separate exhibit? | 12:13 |
| 9 | MS. BHATTACHARYYA:   Objection. | 12:13 |
| 10 | Mischaracterizes prior testimony.   Mischaracterizes | 12:13 |
| 11 | Dr. Tuckerman's report. | 12:13 |
| 12 | THE WITNESS:   I am saying no such thing.   I | 12:13 |
| 13 | certainly -- well -- | 12:13 |
| 14 | BY MR. KNIGHT: | 12:13 |
| 15 | Q.   If that's the case, Dr. Tuckerman, then what | 12:13 |
| 16 | do you mean when you say a "meaningful competitor" | 12:13 |
| 17 | in paragraph 84? | 12:13 |
| 18 | A.   It was meaningful enough that CoolIT's own | 12:13 |
| 19 | internal documents had it in a competitive analysis, | 12:13 |
| 20 | and they wouldn't have done that if they didn't | 12:13 |
| 21 | consider them a meaningful competitor. | 12:13 |
| 22 | Q.   And by "they," you mean -- | 12:13 |
| 23 | A.   CoolIT -- CoolIT would have not included it | 12:14 |
| 24 | in a competitive analysis if they did not consider | 12:14 |
| 25 | that particular single-pass product to be a | 12:14 |

Page 78

```
 1    meaningful competitor.  Why would you bother if they    12:14
 2    were not taking some -- a meaningful amount of your     12:14
 3    market share?  So that's just, you know, a business     12:14
 4    common sense.                                           12:14
 5        Q.   So when you say the term "meaningful           12:14
 6    competitor," are you talking about a meaningful         12:14
 7    competitor to CoolIT?                                   12:14
 8        A.   Well --                                        12:14
 9         MS. BHATTACHARYYA:  Objection.  Document           12:14
10    speaks for itself.                                      12:14
11         THE WITNESS:  -- what I say in the document        12:14
12    is a meaningful -- "a meaningful competitor to          12:14
13    Asetek and CoolIT/Corsair's desktop liquid cooling      12:14
14    products."  I mean, it is all the same market, you      12:15
15    know.  They're all -- Asetek, CoolIT/Corsair, they      12:15
16    are going after the same market.                        12:15
17         And so a product that is a meaningful              12:15
18    competitor to CoolIT would also presumably be a         12:15
19    meaningful competitor to Asetek because it is taking    12:15
20    market share from, you know, both of them.              12:15
21    BY MR. KNIGHT:                                          12:15
22        Q.   Okay.  Now, did you do any testing on the      12:15
23    Cooler Master product?                                  12:15
24        A.   No, I didn't do any performance testing on     12:15
25    them.                                                   12:15
```

Page 79

```
 1        Q.   Okay.  Did you buy or inspect the Cooler       12:15
 2   Master product?                                          12:15
 3        A.   Okay.  Let's -- Cooler Master product...       12:15
 4   Let's check Materials Considered.                        12:15
 5             No.  It's not on the list, so it would not     12:16
 6   be one that I've had my hands on.                        12:16
 7        Q.   Okay.  And you didn't ask Asetek about         12:16
 8   whether the Cooler Master product competes with          12:16
 9   Asetek's products, did you?                              12:16
10        A.   As I've said --                                12:16
11             MS. BHATTACHARYYA:  Objection.                 12:16
12   Mischaracterizes the report.                             12:16
13             THE WITNESS:  As I've said, I've never         12:16
14   spoken with Asetek, and so I don't listen to the         12:16
15   rest of any question that starts with, did I ask         12:16
16   Asetek something.                                        12:16
17   BY MR. KNIGHT:                                           12:16
18        Q.   Okay.  So do you know if Asetek considers      12:16
19   Cooler Master a competitor in all of its market          12:16
20   segments?                                                12:16
21             MS. BHATTACHARYYA:  Objection.  Calls for      12:16
22   speculation.                                             12:16
23             THE WITNESS:  I wouldn't know what segments    12:16
24   they consider them a competitor in or not.  That's       12:16
25   out -- outside of the bounds of what I was asked to      12:16
```

Page 80

```
 1   opine on.                                          12:16

 2   BY MR. KNIGHT:                                     12:16

 3      Q.   Okay.  Okay.  Well, would it surprise you to 12:16

 4   know that Asetek does not consider Cooler Master a  12:17

 5   competitor in all of its market segments            12:17

 6   historically?                                       12:17

 7           MS. BHATTACHARYYA:  Objection.  Outside the 12:17

 8   scope of the report.                                12:17

 9           THE WITNESS:  Well, you said "in all of its 12:17

10   market segments," so I might infer from that that   12:17

11   you think that in some market segments they do, or  12:17

12   else you wouldn't have asked the question that way. 12:17

13           And I come back to the report.  Why was it  12:17

14   in a confidential competitive analysis if they      12:17

15   didn't care about them at all?                      12:17

16   BY MR. KNIGHT:                                      12:17

17      Q.   And that report was CoolIT's report; is that 12:17

18   correct?                                            12:17

19      A.   Well, it's the one I've asked you to pull up 12:17

20   and you haven't, you know -- which you haven't done  12:17

21   so, you know, we could discuss it more if you pull   12:17

22   it up.                                              12:17

23      Q.   So you're not going to answer my question?  12:17

24      A.   Please repeat the question.                 12:18

25           MS. BHATTACHARYYA:  Objection.  Asked and   12:18
```

                                               Page 81

```
 1    answered.                                        12:18

 2    BY MR. KNIGHT:                                   12:18

 3        Q.    My question is whether the report that you    12:18

 4    referred to in your prior answer was CoolIT's    12:18

 5    report.                                          12:18

 6            MS. BHATTACHARYYA:  Objection.  Asked and  12:18

 7    answered.                                        12:18

 8            THE WITNESS:  Well, it clearly in my report  12:18

 9    says:                                            12:18

10            "CoolIT's own documents show that          12:18

11            this is not correct.  For example,         12:18

12            COOLIT00036274-88 (Exhibit 129 to          12:18

13            the Mostafavi deposition)."                12:18

14            So that is a CoolIT document.             12:18

15    BY MR. KNIGHT:                                   12:18

16        Q.    Okay.  Now, did you conduct any surveys    12:18

17    about the acceptability of the Cooler Master product  12:18

18    to Asetek's customers?                           12:18

19            MS. BHATTACHARYYA:  Objection.  Outside the  12:18

20    scope of the report.                             12:18

21            THE WITNESS:  Independently, I did not      12:18

22    conduct such surveys and was not asked to and didn't  12:18

23    think it was relevant to a noninfringement report.  12:19

24    BY MR. KNIGHT:                                   12:19

25        Q.    Okay.  And did you do anything yourself to   12:19
```

Page 82

| | | |
|---|---|---|
| 1 | determine whether the Cooler Master product is a | 12:19 |
| 2 | meaningful competitor to the Asetek and | 12:19 |
| 3 | CoolIT/Corsair desktop liquid cooling products? | 12:19 |
| 4 | MS. BHATTACHARYYA:  Objection. | 12:19 |
| 5 | Mischaracterizes the report.  Outside the scope of | 12:19 |
| 6 | the report. | 12:19 |
| 7 | THE WITNESS:  I saw this internal CoolIT | 12:19 |
| 8 | document, which I have referenced, in which there | 12:19 |
| 9 | was about half a dozen products evaluated for their | 12:19 |
| 10 | thermal performance.  This particular Cooler Master | 12:19 |
| 11 | product was among that small group. | 12:19 |
| 12 | And I, as a -- a person with some not | 12:19 |
| 13 | inconsiderable experience in high-tech business and | 12:19 |
| 14 | electronics and pack- -- in electronic packaging, | 12:19 |
| 15 | I -- you know, and an MBA, by the way, from | 12:20 |
| 16 | Stanford, in addition to my Ph.D., it seemed a very | 12:20 |
| 17 | reasonable conclusion, just based on that report, | 12:20 |
| 18 | that they were considered a meaningful competitor. | 12:20 |
| 19 | You know, to what extent meaningful?  I don't know, | 12:20 |
| 20 | but I can assure you no one would have bothered to | 12:20 |
| 21 | put it in a report where there's only five or six | 12:20 |
| 22 | items looked at if they didn't consider it | 12:20 |
| 23 | meaningful. | 12:20 |
| 24 | BY MR. KNIGHT: | 12:20 |
| 25 | Q.   Okay.  Okay.  Great.  Just a few more | 12:20 |

Page 83

```
 1    questions and I think it would be a good time to      12:20
 2    break for lunch.  All right.                          12:20
 3           All right.  So let's go back to paragraph 80   12:20
 4    of your report.  And look at the images on page 43,   12:20
 5    44, and 45.                                           12:21
 6      A.   Okay.                                          12:21
 7      Q.   Do you see those?                              12:21
 8      A.   Yes.                                           12:21
 9      Q.   Great.  Where did you get those drawings       12:21
10    from?                                                 12:21
11           MS. BHATTACHARYYA:  Again, Dr. Tuckerman, I    12:21
12    can -- I'll caution you about the Rule 26             12:21
13    protections.                                          12:21
14           THE WITNESS:  They were supplied by counsel    12:21
15    and included in the first draft of the report.        12:21
16    BY MR. KNIGHT:                                        12:21
17      Q.   Okay.  And what format did you receive those   12:21
18    drawings in?                                          12:21
19           MS. BHATTACHARYYA:  Again, same cautions as    12:21
20    before.  And, Mr. Knight, do we have that             12:21
21    stipulation in place that if I let Dr. Tuckerman      12:21
22    answer questions about this communication, the        12:21
23    format of communication, that it does not waive any   12:21
24    of the protection -- does not any -- Rule 26          12:21
25    protections?                                          12:22
```

Page 84

1              I, JANIS JENNINGS, CSR No. 3942, Certified

2       Shorthand Reporter, certify:

3              That the foregoing proceedings were taken

4       before me at the time and place therein set forth, at

5       which time the witness was duly sworn by me;

6              That the testimony of the witness, the

7       questions propounded, and all objections and statements

8       made at the time of the examination were recorded

9       stenographically by me and were thereafter transcribed;

10             That the foregoing pages contain a full, true

11      and accurate record of all proceedings and testimony.

12             Pursuant to F.R.C.P. 30(e)(2) before

13      completion of the proceedings, review of the transcript

14      [X] was [ ] was not requested.

15             I further certify that I am not a relative or

16      employee of any attorney of the parties, nor financially

17      interested in the action.

18             I declare under penalty of perjury under the

19      laws of California that the foregoing is true and

20      correct.

21             Dated this 3rd day of January 2022.

22

23

24             JANIS JENNINGS, CSR NO. 3942

25             CLR, CCRR

Page 236