1  COOLEY LLP
   HEIDI L. KEEFE (178960)
2  (hkeefe@cooley.com)
   REUBEN H. CHEN (228725)
3  (rchen@cooley.com)
   DANIEL J. KNAUSS (267414)
4  (dknauss@cooley.com)
   ALEXANDRA LEEPER (307310)
5  (aleeper@cooley.com)
   DEEPA KANNAPPAN (313573)
6  (dkannappan@cooley.com)
   3175 Hanover Street
7  Palo Alto, CA 94304-1130
   Telephone:  (650) 843-5000
8  Facsimile:  (650) 849-7400

   DUSTIN M. KNIGHT (*pro hac vice*)
   (dknight@cooley.com)
   11951 Freedom Drive, 16th Floor
   Reston, VA 20190
   Telephone: (703) 456-8000
   Facsimile: (703) 456-8100

   GREENBERG TRAURIG, LLP
   KYLE D. CHEN (SBN 239501)
   kchen@gtlaw.com
   1900 University, Avenue, 5th Floor
   East Palo Alto, CA 94304
   Telephone:  (650) 289-7887
   Facsimile:  (650) 328-8508

9
10 Attorneys for Defendant and Counter-claimant
   COOLIT SYSTEMS, INC. and Defendants
   CORSAIR GAMING, INC. and CORSAIR
11 MEMORY, INC.

12                    UNITED STATES DISTRICT COURT

13                    NORTHERN DISTRICT OF CALIFORNIA

14                         SAN FRANCISCO DIVISION

15

16 ASETEK DANMARK A/S,                    Case No.  3:19-cv-00410-EMC

17          Plaintiff and                 **DEFENDANTS' OPPOSITION TO ASETEK
18          Counter-defendant,            DANMARK A/S AND ASETEK USA, INC.'S
                                          MOTION FOR PARTIAL SUMMARY
19 ASETEK USA, INC.,                      JUDGMENT**
            Counter-defendant,
20                                        Date:      May 5, 2022
      v.                                  Time:      1:30 pm
21                                        Location:  Courtroom 5, 17th Floor
   COOLIT SYSTEMS, INC.,                  Judge:     Hon. Edward M. Chen
22
            Defendant and
23          Counter-claimant,

24 CORSAIR GAMING, INC. and CORSAIR
   MEMORY, INC.,
25
            Defendants.
26

27

28

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................................... 1

II.    BACKGROUND ....................................................................................................... 2

    A.    The "plate" term ............................................................................................ 2

        1.    CoolIT's infringement theories always included EPDM plates .......... 2

        2.    Asetek's pre-motion non-infringement position on "plate" ............... 3

        3.    Asetek's pre-motion § 112 invalidity position on "plate" ................. 3

        4.    Asetek's claim construction proposals ................................................. 4

    B.    Motivation to combine and reasonable expectation of success under Invalidity Grounds 4-9 provided by CoolIT's expert ....................................................... 4

III.    LEGAL STANDARD ................................................................................................ 7

    A.    Summary Judgment of Non-Infringement ....................................................... 7

    B.    Untimely Claim Construction Arguments at Summary Judgment ............................. 8

    C.    Duties to Disclose and Supplement Under Pat. L. R. and Fed. R. Civ. P. 26.............. 8

    D.    Motivation to Modify and/or Combine ........................................................... 9

IV.    ARGUMENT ............................................................................................................ 10

    A.    Asetek's motion for partial summary judgment of non-infringement based on its belated "plate" construction is untimely, procedurally inappropriate, and requires resolution of material issues of fact that should be reserved for the jury .............................................................................................................. 10

        1.    Asetek's claim construction and non-infringement arguments should be disregarded as untimely ................................................... 10

        2.    Denial is appropriate because a material fact dispute exists on whether the plain meaning of "plate" covers thin, rubber structures in the accused Gen 5, 6, and 7 products ........................... 15

        3.    Even if construed, the plain meaning for "plate" is construed by structure, relationship to other components, and function, and not by materials ............................................................................ 15

        4.    Asetek's proposed construction is untethered from the intrinsic record and impermissibly restricts the plain meaning of "plate" to avoid infringement ........................................................................ 19

        5.    Asetek's alternative invalidity argument is untimely and presupposes the Court accepts its proposed "plate" construction ...... 21

        6.    CoolIT is not collaterally estopped from mounting written description arguments for "plate" because the same issue is not before the Court .................................................................................. 23

    B.    Whether Dr. Abraham's explanations on motivation to combine and reasonable expectation of success are sufficient is a factual issue for a jury to decide ........................................................................................................... 24

V.    CONCLUSION ........................................................................................................ 25

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

i

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 3:19-CV-00410-EMC**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
   694 F.3d 1312 (Fed. Cir. 2012)....................................................................................9, 25

*Apple, Inc. v. Samsung Elecs. Co.*,
   No. 12-cv-00630-LHK, 2014 WL 252045 (N.D. Cal. Jan. 21, 2014) ..........................8, 13, 14

*Asia Vital Components Co. v. Asetek Danmark A/S*,
   No. 16-cv-07160-JST, 2018 WL 4945316 (N.D. Cal. Oct. 11, 2018)....................................22

*ASUS Comput. Int'l v. Round Rock Rsch., LLC*,
   No. 12-cv-02099-JST (NC), 2014 WL 1463609 (N.D. Cal. Apr. 11, 2014) ..........................22

*Atl. Rsch. Mktg. Sys., Inc. v. Troy*,
   659 F.3d 1345 (Fed. Cir. 2011)..........................................................................................24

*Blonder-Tongue Lab'ys v. Univ. Ill. Found.*,
   402 U.S. 313 (1971) ...........................................................................................................23

*Boston Sci. Corp. v. Johnson & Johnson*,
   534 F. Supp. 2d 1062 (N.D. Cal. 2007) ........................................................................8, 13

*In re Buchner*,
   929 F.2d 660 (Fed. Cir. 1991)............................................................................................14

*Cordis Corp. v. Boston Sci. Corp.*,
   561 F.3d 1319 (Fed. Cir. 2009)..........................................................................................22

*Cortland Line Co. v. Orvis Co.*,
   203 F.3d 1351 (Fed. Cir. 2000)..........................................................................................18

*Cumberland Pharms. Inc. v. Mylan Institutional LLC*,
   846 F.3d 1213 (Fed. Cir. 2017)....................................................................................9, 25

*Edwards Sys. Tech., Inc. v. Digital Control Sys., Inc.*,
   99 F. App'x 911 (Fed. Cir. 2004)........................................................................................15

*Elliott v. Google, Inc.*,
   860 F.3d 1151 (9th Cir. 2017) ............................................................................................9

*Enovsys LLC v. Nextel Commc'ns, Inc.*,
   614 F.3d 1333 (Fed. Cir. 2010)..........................................................................................23

*Finjan, Inc. v. Sophos, Inc.*,
   No. 14-cv-01197-WHO, 2016 WL 2988834 (N.D. Cal. May 24, 2016)................................22

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

ii

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 3:19-CV-00410-EMC**

**TABLE OF AUTHORITIES**
(Continued)

Page(s)

*Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*,
No. C 03-1431 SBA, 2006 WL 1329997 (N.D. Cal. May 15, 2006) .......................................8

*Fujifilm Corp. v. Motorola Mobility LLC*,
No. 12-cv-03587-WHO, 2015 WL 757575 (N.D. Cal. Feb. 20, 2015) .........................8, 13, 14

*Function Media, LLC v. Google, Inc.*,
708 F.3d 1310 (Fed. Cir. 2013).........................................................................................8

*Goldenberg v. Cytogen, Inc.*,
373 F.3d 1158 (Fed. Cir. 2004).......................................................................................19

*Huawei Techs., Co. v. Samsung Elecs. Co.*,
340 F. Supp. 3d 934 (N.D. Cal. 2018) ...................................................................13, 14, 15

*Hyatt v. Boone*,
146 F.3d 1348 (Fed. Cir. 1998).......................................................................................20

*ICHL, LLC v. NEC Corp. of Am.*,
No. 5:08CV65, 2010 U.S. Dist. LEXIS 38942 (E.D. Tex. Apr. 20, 2010) ...........................18

*Ingenco Holdings, LLC v. Ace Am. Ins. Co.*,
921 F.3d 803 (9th Cir. 2019) ............................................................................................9

*Intelligent Bio-Sys., Inc. v. Illumina Cambridge Ltd.*,
821 F.3d 1359 (Fed. Cir. 2016).......................................................................................25

*In re Katz Interactive Call Processing Pat. Litig.*,
639 F.3d 1303 (Fed. Cir. 2011).......................................................................................21

*Leader Techs., Inc. v. Facebook, Inc.*,
678 F.3d 1300 (Fed. Cir. 2012).......................................................................................22

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
358 F.3d 898 (Fed. Cir. 2004).........................................................................................19

*Lockheed Martin Corp. v. Space Sys./Loral, Inc.*,
324 F.3d 1308 (Fed. Cir. 2003).........................................................................................7

*MediaTek Inc. v. Freescale Semiconductor, Inc.*,
No. 11-cv-5341 YGR, 2014 WL 690161 (N.D. Cal. Feb. 21, 2014).....................................9

*MHB Indus. v. Dennis Garberg & Assocs.*,
No. 95-10199-GAO, 1996 U.S. Dist. LEXIS 11638 (D. Mass. July 26, 1999).....................18

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

iii

CASE NO. 3:19-CV-00410-EMC
DEFENDANTS' NOTICE OF MOTION AND
MOTION TO STRIKE

**TABLE OF AUTHORITIES**
(Continued)

Page(s)

*MLC Intell. Prop., LLC v. Micron Tech.*,
  10 F.4th 1358 (Fed. Cir. 2021) ............................................................................9

*Neptune Generics, LLC v. Eli Lilly & Co.*,
  921 F.3d 1372 (Fed. Cir. 2019)........................................................................9, 25

*Novartis Corp. v. Ben Venue Labs., Inc.*,
  271 F.3d 1043 (Fed. Cir. 2001)..............................................................................7

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
  521 F.3d 1351 (Fed. Cir. 2008)........................................................................13, 14

*O2 Micro Int'l, Ltd. v. Monolithic Power Sys., Inc.*,
  467 F.3d 1355 (Fed. Cir. 2006).............................................................................22

*Omega Eng'g, Inc. v. Raytek Corp.*,
  334 F.3d 1314 (Fed. Cir. 2003).............................................................................20

*Pitney Bowes, Inc. v. Hewlett-Packard Co.*,
  182 F.3d 1298 (Fed. Cir. 1999)...............................................................................7

*S3 Inc. v. NVIDIA Corp.*,
  259 F.3d 1364 (Fed. Cir. 2001).............................................................................17

*SanDisk Corp. v. Memorex Prods., Inc.*,
  415 F.3d 1278 (Fed. Cir. 2005)..........................................................................8, 13

*Sandt Tech., Ltd. v. Resco Metal & Plastics Corp.*,
  264 F.3d 1344 (Fed. Cir. 2001).............................................................................23

*Sinorgchem Co., Shandong v. Int'l Trade Comm'n*,
  511 F.3d 1132 (Fed. Cir. 2007)........................................................................20, 21

*In re Stepan Co.*,
  868 F.3d 1342 (Fed. Cir. 2017)........................................................................9, 25

*Synthes USA, LLC v. Spinal Kinetics, Inc.*,
  734 F.3d 1332 (Fed. Cir. 2013).............................................................................22

*Takeda Pharm. Co. v. TWi Pharms., Inc.*,
  No. 13-CV-02420-LHK, 2015 WL 1227817 (N.D. Cal. Mar. 17, 2015)...............................22

*Thorner v. Sony Comp. Entm't Am. LLC*,
  669 F.3d 1362 (Fed. Cir. 2012).............................................................................19

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

iv

CASE NO. 3:19-CV-00410-EMC
DEFENDANTS' NOTICE OF MOTION AND
MOTION TO STRIKE

**TABLE OF AUTHORITIES**
**(Continued)**

Page(s)

*Verinata Health Inc. v. Sequenom, Inc.*,
No. C 12-00865 SI, 2014 WL 4100638 (N.D. Cal. Aug. 20, 2014) ............................9, 21, 22

*Word to Info Inc. v. Facebook Inc.*,
No. 15-cv-03485-WHO, 2016 WL 6276956 (N.D. Cal. Oct. 27, 2016) ................................22

*Zoho Corp. v. Sentius Int'l, LLC*,
494 F. Supp. 3d 693 (N.D. Cal. 2020) ..................................................................................24

**Statutes**

35 U.S.C. § 311(b) ..........................................................................................................20, 23

**Other Authorities**

Fed. R. Civ. P.
26............................................................................................................................8, 9, 10, 11
37(c)(1) ..................................................................................................................................9

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

v

CASE NO. 3:19-CV-00410-EMC
DEFENDANTS' NOTICE OF MOTION AND
MOTION TO STRIKE

# I.  INTRODUCTION

After nearly three years of litigation, Asetek attempts to manufacture yet *another* claim construction dispute for the Asserted CoolIT Patents to evade clear evidence of infringement.  Asetek knew about CoolIT's infringement allegations against its EPDM plates since as early as July 12, 2019, but until now never raised that "plate" lacked a plain meaning.  Its newly minted claim construction theory comes after:

(1) two rounds of claim construction—where Asetek requested a second round for the '330 patent and again did not propose that "plate" needed to be construed;

(2) omission of any § 112 challenge to "plate" in its invalidity contentions or Dr. Tuckerman's Invalidity Report;

(3) omission of any non-infringement position in response to CoolIT's Interrogatory No. 8 (served June 25, 2019) turning on the *material* of the claimed "plate;" and

(4) after the Board issued its IPR2020-00825 Final Written Decision six months ago.

Asetek never moved to amend its contentions, seek additional claim construction, or otherwise notify the Court of a claim construction dispute on "plate" before discovery closed and it filed this motion.

Asetek's motion brazenly asks the Court to overlook its own case management order, the Federal Rules of Civil Procedure, and the Patent Local Rules, and instead grant summary judgment on an "issue" that has never been addressed by the parties at all.  This manufactured dispute on "plate" cannot be the *deus ex machina* to save Asetek from infringement.  It comes far too late to merit the Court's consideration and is inappropriate for summary judgment where Asetek admits to a material factual dispute.

Even if the Court belatedly considers Asetek's unsupported "plate" proposal, it now seeks to add a materials requirement by, at best, improperly reading in (nonexistent) limitations from the specifications.  Asetek justifies its proposed construction through a false equivalence, claiming that the Board's written description analysis for a *priority* determination on a *different* term ("manifold body defin[ing] a pair of compliant surfaces") should inform the Court's decision on the separately claimed "plate" because its expert now provides *ipse dixit* on what he thinks a "plate" is not.  The

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

1

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 3:19-CV-00410-EMC

Asserted CoolIT Patents do not limit the "plate" to a particular material, and non-rigid plates were well within a POSITA's understanding in 2007.

Asetek further asks the Court to decide squarely factual issues on the motivation to combine and reasonable expectation of success on certain invalidity grounds raised by CoolIT. But CoolIT's expert has explained the motivation to combine the references and the reasonable expectation of success combining them in his report. Whether his explanations are sufficient is a strict question of fact that should be decided by the jury, not by summary judgment. Asetek's motion for summary judgment of validity should be denied.

## II.    BACKGROUND

### A.    The "plate" term

#### 1.    CoolIT's infringement theories always included EPDM plates

The "plate" term appears in asserted claims 1, 12, and 14 of the '330 patent; asserted claims 1 and 15 of the '284 patent; and asserted claim 13 of the '266 patent. Claim 12 of the '330 patent provides an exemplary recitation of the "plate" term:

> a plate positioned over the juxtaposed fins and the corresponding plurality of juxtaposed microchannels, wherein the plate defines an elongate aperture extending transversely relative to each of the plurality of juxtaposed microchannels, wherein the elongate aperture is positioned between the first ends and the second ends of the plurality of juxtaposed microchannels

('330 patent (ECF No. 23-1), cl. 12.)

CoolIT accused Asetek's Gen 5 and 6 products of infringing these claims in its original Pat. L.R. 3-1 contentions, served July 12, 2019. CoolIT's infringement charts mapped the claimed "plate" to the EPDM plate in the accused Gen 5 and 6 products:



COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

2

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 3:19-CV-00410-EMC

(Ex.[1] 1 at 18; Ex. 2 at 18.)[2]  In response to its *unopposed* motion on June 8, 2020, the Court permitted CoolIT to serve amended infringement contentions further accusing new Asetek Gen 7 products of infringement.  (*See* ECF Nos. 134, 135.)  CoolIT's infringement allegations again mapped the claimed "plate" to the EPDM plate in the accused Gen 7 products.  (*See, e.g.*, ECF No. 134-2 at 28.)[3]

### 2. Asetek's pre-motion non-infringement position on "plate"

Almost three years ago, on June 25, 2019, CoolIT issued its Interrogatory No. 8 requesting Asetek's non-infringement positions vis-à-vis the claims of the Asserted CoolIT Patents:

> **INTERROGATORY NO. 8:** IDENTIFY and describe all facts that support or contradict YOUR contention in your First Affirmative Defense, if any, that ASETEK "has not infringed and does not infringe any valid, enforceable claim of the CoolIT Patents."

(Ex. 3 at 17.)  Asetek responded on August 8, 2019 by listing numerous limitations, without any detail or analysis, that it contended were unmet by the asserted claims. (*See id.* at 17-22.)  Asetek then supplemented its Interrogatory No. 8 response twice, on June 4, 2021 and August 31, 2021, including additional limitations without providing any further detail or analysis. (*See* Ex. 4 at 12-21 (adding Gen 7); Ex. 5 at 24-33 (adding limitations).)  Asetek's original response and supplements to Interrogatory No. 8 never assert non-infringement based on a requirement that the claimed "plate" must be "rigid."  Moreover, Asetek's August 31, 2021 supplement did not include *any* non-infringement position on the "plate" limitation for claim 13 of the '266 patent.  (*See* Ex. 5 at 32-33.)

### 3. Asetek's pre-motion § 112 invalidity position on "plate"

Asetek's invalidity contentions do not include the alleged lack of § 112 written description support argument for "plate" discussed for the first time in its opening brief.  The original contentions advanced indefiniteness and written description support arguments on: "adjacent" and "juxtaposed

---

[1] Unless otherwise noted, all references to "Ex." refer to exhibits to the Declaration of Reuben H. Chen, submitted herewith.

[2] CoolIT alleged the same EPDM plate as reading on the "plate" limitations in the other independent claims of the Asserted CoolIT Patents. (*See* Ex. 1 at 5 ('330 patent, claim 1), 26 ('330 patent, claim 14), 37 ('284 patent, claim 1), 55-56 ('284 patent, claim 15), 117 ('266 patent, claim 13); Ex. 2 at 5 ('330 patent, claim 1), 26 ('330 patent, claim 14), 37 ('284 patent, claim 1), 55-56 ('284 patent, claim 15), 92 ('266 patent, claim 13).)

[3] Again, CoolIT alleged the same EPDM plate in Asetek's Gen 7 products as reading on the "plate" limitations in the other independent claims of the Asserted CoolIT Patents. (*See* ECF No. 134-2 at 15 ('330 patent, claim 1), 36 ('330 patent, claim 14), 47 ('284 patent, claim 1), 65-66 ('284 patent, claim 15), 93 ('266 patent, claim 13).)

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

3

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 3:19-CV-00410-EMC

with" for the '330 patent; and "outlet flow path" and "each respective inlet flow path" for the '284 patent.  (*See* Ex. 6 at 10-12.)  Nowhere do these contentions put the written description support for the "plate" term at issue.  Asetek never moved to amend these invalidity contentions, and Dr. Tuckerman did not address written description for "plate" in his Invalidity Report.

### 4.     Asetek's claim construction proposals

The Court has already issued two claim construction opinions over this multi-year litigation—both included terms from the '330 patent.  (*See* ECF Nos. 149, 258.)   Asetek never proposed "plate" for construction in either proceeding (*see* ECF Nos. 67, 237), despite insisting the Court reopen claim construction for the '330 patent in a second proceeding (*see* ECF No. 211 at 1-2).  Asetek also submitted IPR petitions challenging (among others) claims 1, 12, and 14 of the '330 patent on May 27, 2015 (IPR2015-01276) and claims 1 and 13 of the '266 patent on April 10, 2020 (IPR2020-00825).  Neither petition sought construction for "plate."  (*See* Ex. 7 at 10-14; Ex. 8 at 9-15.)

Likewise, the Board never construed "plate" in its respective Final Written Decisions for these IPR proceedings.  (*See* Ex. 9 at 9-12; Ex. 10 at 11-15.)  Asetek's opening brief refers extensively to the Board's IPR2020-00825 Final Written Decision, which issued on October 12, 2021.  There, to resolve a priority challenge to claim 1 of the '266 patent, the Board determined that a different term "manifold body defin[ing] a pair of compliant surfaces" was not entitled to the priority date of an earlier August 9, 2007 provisional application (No. 60/954,987).  (*See* Ex. 10 at 23.)  Nowhere was the "plate" term discussed.  Tellingly, since issuance of the Board's IPR2020-00825 Final Written Decision *six months ago*, Asetek did not move to amend its invalidity contentions or notify the Court (or CoolIT) that additional claim construction would be required—outside the belated and inappropriate context of this motion for partial summary judgment.

### B.     Motivation to combine and reasonable expectation of success under Invalidity Grounds 4-9 provided by CoolIT's expert

CoolIT's expert, Dr. Abraham, provided in his invalidity report pages of lengthy explanation on the motivation to combine and the reasonable expectation of success for Grounds 4-9.  For example, with respect to combining Wu with Ryu in Ground 4, Dr. Abraham opined:

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

4

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 3:19-CV-00410-EMC

Ryu … discloses: 'In recent years, due to the rapid development of technology, the data processing speed of the central processing unit (CPU) is also being improved at a rapid pace. On the other hand, since the heat generated by the operation of the central processing unit increases according to the processing speed of the central processing unit, the amount of heat generated from the central processing unit has also increased as the processing speed of the central processing unit has increased. In general, the central processing unit shows the optimum performance as its temperature is close to room temperature and if the temperature gets too high, the processing speed decreases and the possibility of error in the processing result also increases. Furthermore, if the heat generation amount of the central processing unit is too high, it may cause the computer to stop working, which may cause loss of data. If this phenomenon persists, expensive central processing units may fail or break. Therefore, in order to solve this problem, it is necessary to cool the heat generated from the central processing unit and an air-cooled cooler, which lowers the temperature of the central processing unit by the rotation of the cooling fan, was used in the past. The present invention has been presented to solve the problems described above, and the object of the present invention is to provide a water-cooled cooling device for the computer central processing unit having an impeller for cooling the heat generated from the central processing unit using the circulating cooling water. In other words, the object is to provide a water-cooled cooling processing unit for computer central processing unit that is capable of lowering the temperature of the central processing unit by passing the water, which has been cooled while going through the radiator, through the water jacket equipped to the central processing unit and cooling and circulating the water, which has been warmed up by the heat generated from the central processing unit, by pumping it to the radiator through the pump driving unit.'

(Ex. 11 ¶ 697.)  He further expounded that:

Wu in a similar manner, discloses: 'During the past decades technologies in electronics have improved tremendously. Devices [s]uch as microprocessors have been become one of the major electronic components in many products [s]uch as TVs, radios, home appliances and computers and gradually become part of people's daily life. Transistors enabled people to make microprocessor more reliable, consume less power and have a higher working [s]peed. Further developments of the integrated circuits (ICs) allowed multiple electronic circuits to be combined on the [s]ame chip. Since then, chip manufacturers tend to reduce the overall size of the microprocessors and concurrently increase the total number of transistors therein. Like many electronic devices, microprocessors have a range of operating temperature, below which the device would function well. Exceeding the operating temperature or an excessively high temperature would adversely affect the overall performance of the device. Exceeding continuously the operating temperature for a certain amount of time would result in device failure or damage. It is therefore understood that thermal management in present-day electronics plays a very important role, particularly when heat is generated during operation. The CPU produces heat during the operation of the computer. Heat must be quickly carried away from the CPU during the operation of the computer. Conventionally, thermal control is achieved by using a fan to provide ambient air to the device. This type of

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

5

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 3:19-CV-00410-EMC

cooling system generally requires a large [s]urface area [s]o that more air can be directed to the device. However, manufacturers tend to develop chips in a compact size [s]uch cooling system certainly does not meet the need. Other drawbacks of this type include slow heat transfer and energy-inefficient. Alternatively, a cooling system with water other than air can be used, and can be refrigerated rather than at the ambient temperature. Such cooling systems include those designed as [s]eparate compartments, i.e., units for radiation and absorption. With [s]uch [s]egregated components, leakage, Slow and unstable circulation resulted thereby leading to inefficient heat transfer. For example, U.S. Pat. No. 6,422,304 discloses an auxiliary cooling system for cooling a central processing unit (CPU) which includes an inner tube provided within an outer tube. A first end of the outer tube is attached to a fan and a [s]econd end of the outer tube is attached to a housing of a computer adjacent the CPU. Inlet and outlet tubes are attached to a first end and [s]econd end of the inner tube. A pump draws a cooling fluid from a cooling [s]ource and passes the cooling fluid to the inner tube. As the cooling fluid passes through the inner tube, the temperature of the air within the outer tube is decreased. A fan is used to direct the cool air onto the CPU.  Similarly, U.S. Pat. No. 6,166,907 discloses a CPU cooling system for use in a computer to dissipate heat from the CPU of the computer comprising a water tank holding a liquid coolant, radiators, a water circulation pipe assembly for circulation of the liquid coolant through the radiators, and a pump external to the water tank whereby the liquid coolant is pumped through the water circulation pipe assembly. However, as the above prior art system has separate compartments, more efficient radiation is desirable. Although use of water may remove the heat and reduce the temperature produced by electronic components, there is still a need for the development of a Stable, rapid, high energy efficient, [s]mall capacity, impact resistant and leakage-free cooling system.

(*Id.* ¶ 701 (internal citation omitted).)   He then explained that "because … Ryu … and Wu are attempting to solve similar issues and each disclose or teach known techniques that can be used for one another, a POSA, when reading them together, would have been motivated to combine … Ryu … with Wu, and vice versa."  (*Id.* ¶ 702.)

Dr. Abraham provided similar explanations for Grounds 5-9.  (*See*, *e.g.*, *id.*  ¶¶ 697, 705, 706 (explaining motivation to combine Batchelder with Ryu for Ground 5); *see also id.* ¶¶ 695, 705, 706 (explaining motivation to combine Shin with Batchelder for Ground 6); *see also id.* ¶¶ 697, 705, 706 (explaining motivation to combine Ryu with Batchelder for Ground 7); *see also id.* ¶¶ 701, 705, 706 (explaining motivation to combine Wu with Batchelder for Ground 8); *see also id.* ¶¶ 701, 703, 704 (explaining motivation to combine Wu with Yu for Ground 9).)

For Grounds 4-9, Dr. Abraham discussed how:

[E]ach of the prior art references cited herein provide sufficient detail to enable a

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

6

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 3:19-CV-00410-EMC**

person of ordinary skill in the art to practice the asserted claims without undue experimentation, and when used in combination, would provide a POSA with a reasonable expectation that the combination would be successful. That is, even if there were a requirement that each prior art reference be enabling, those references would satisfy such a requirement.

(*Id.* ¶ 712.)  With respect to Grounds 4-9, he continued, explaining:

[E]ach of the … Shin, Ryu, … Wu, Yu, [and] Batchelder … references enables a POSA to build and practice the disclosed cooling devices for their intended purposes. Each reference provides detailed drawings, figures, and/or schematics showing the structures of the disclosed cooling devices and their arrangements when used with the heat generating components that the cooling devices are supposed to cool. Each reference also provides detailed descriptions and/or drawings, figures, and/or schematics showing the inner workings of the disclosed cooling devices and how the cooling fluid flows through them. The references also all disclose or teach conventional components that would have been well known by a POSA, who would have been able to put them together in a known way with predictable results and a reasonable expectation of success.

(*Id.* ¶ 713.)  Dr. Abraham reasoned that "[w]hen the cited references are combined or modified as a POSA would have been motivated to do, the combination or modification is also based on conventional or known methods that would have yielded predictable results and been reasonably expected to be successful by a POSA."  (*Id.* ¶ 714.)

## III. LEGAL STANDARD

### A. Summary Judgment of Non-Infringement

Summary judgment of noninfringement requires a two-step analysis.  "First, the claims of the patent must be construed to determine their scope.  Second, a determination must be made as to whether the properly construed claims read on the accused device."  *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1304 (Fed. Cir. 1999) (citation omitted).  "[A] determination of infringement, both literal and under the doctrine of equivalents, is a question of fact."  *Lockheed Martin Corp. v. Space Sys./Loral, Inc.*, 324 F.3d 1308, 1318 (Fed. Cir. 2003).  "Summary judgment of noninfringement may only be granted if, after viewing the alleged facts in the light most favorable to the nonmovant and drawing all justifiable inferences in the nonmovant's favor, there is no genuine issue whether the accused device is encompassed by the patent claims."  *Novartis Corp. v. Ben Venue Labs., Inc.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001).

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

7

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 3:19-CV-00410-EMC

### B.     Untimely Claim Construction Arguments at Summary Judgment

Courts are not obligated to hear and rule on belated claim construction arguments raised for the first time in summary judgment briefing.  *See SanDisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278, 1292 (Fed. Cir. 2005) (affirming N.D. Cal. district court refusal to entertain untimely claim construction arguments under the patent local rules); *Boston Sci. Corp. v. Johnson & Johnson*, 534 F. Supp. 2d 1062, 1075 (N.D. Cal. 2007); *see also Function Media, LLC v. Google, Inc.*, 708 F.3d 1310, 1325 (Fed. Cir. 2013) ("[T]he denial of a pre-trial motion for summary judgment of noninfringement does not, by itself, show that the district court delegated claim construction to the jury.").  This is because "the patent local rules 'did not set out a particular process for resolving claim construction disputes only to let the parties make additional arguments at the summary judgment phase untethered to those carefully structured rules.'"  *Fujifilm Corp. v. Motorola Mobility LLC*, No. 12-cv-03587-WHO, 2015 WL 757575, at *6 (N.D. Cal. Feb. 20, 2015) (quoting *Apple, Inc. v. Samsung Elecs. Co.*, No. 12-cv-00630-LHK, 2014 WL 252045, at *4 (N.D. Cal. Jan. 21, 2014)).

Untimely claim construction arguments raised for the first time in summary judgment briefs may nevertheless be considered as "part of the infringement analysis, not part of the claim construction."  *Apple*, 2014 WL 252045, at *4 (quoting *Thorner v. Sony Comp. Entm't Am. LLC*, 669 F.3d 1362, 1369 (Fed. Cir. 2012)).  To that end, a court's role is to "view the parties' disputes through the lens of whether a reasonable jury, armed with the Court's claim construction as to certain terms and an instruction that the plain and ordinary meaning controls as to others, could or would necessarily conclude that the asserted claim reads on an accused device (or that a prior art reference reads on an asserted claim)."  *Id*. at *5.

### C.     Duties to Disclose and Supplement Under Pat. L. R. and Fed. R. Civ. P. 26

The purpose of the Patent Local Rules is to "require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed."  *Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*, No. C 03-1431 SBA, 2006 WL 1329997, at *4 (N.D. Cal. May 15, 2006) (citation omitted).  "Given the purpose behind [these] disclosure requirements, a party may not use an expert report to introduce new infringement theories, new infringing instrumentalities, new invalidity theories, or new prior art references not disclosed in the parties'

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

8

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 3:19-CV-00410-EMC**

infringement contentions or invalidity contentions." *Verinata Health Inc. v. Sequenom, Inc.*, No. C 12-00865 SI, 2014 WL 4100638, at \*3 (N.D. Cal. Aug. 20, 2014) (internal quotation marks and citation omitted). "Any invalidity theories not disclosed pursuant to Local Rule 3-3 are barred … from presentation at trial (whether through expert opinion testimony or otherwise)." *MediaTek Inc. v. Freescale Semiconductor, Inc.*, No. 11-cv-5341 YGR, 2014 WL 690161, at \*1 (N.D. Cal. Feb. 21, 2014).

Similarly, Federal Rule of Civil Procedure 26(e) requires a party to timely supplement or correct its discovery responses and expert witness reports. Fed. R. Civ. P. 26(e)(2). "When a party fails to disclose information required by Rule 26, Rule 37(c)(1) provides that the improperly withheld information should be excluded, unless the failure to disclose is 'substantially justified or harmless.'" *Ingenco Holdings, LLC v. Ace Am. Ins. Co.*, 921 F.3d 803, 821 (9th Cir. 2019) (quoting Fed. R. Civ. P. 37(c)(1)) (affirming exclusion of evidence not included in an interrogatory responses or damages disclosure). "The Ninth Circuit affords district courts 'particularly wide latitude' in applying Rule 37(c)(1) to exclude information that a party failed to provide under Rule 26." *See MLC Intell. Prop., LLC v. Micron Tech.*, 10 F.4th 1358, 1370 (Fed. Cir. 2021) (citation omitted); *see also Elliott v. Google, Inc.*, 860 F.3d 1151, 1161 (9th Cir. 2017) (affirming exclusion of evidence not disclosed during discovery).

### D.  Motivation to Modify and/or Combine

"Whether a person of ordinary skill in the art would have been motivated to modify or combine teachings in the prior art, and whether he would have had a reasonable expectation of success, are questions of fact." *See, e.g.*, *In re Stepan Co.*, 868 F.3d 1342, 1346 (Fed. Cir. 2017); *see also Neptune Generics, LLC v. Eli Lilly & Co.*, 921 F.3d 1372, 1375 (Fed. Cir. 2019) ("Motivation to combine is a question of fact.") (citing *Intelligent Bio-Sys., Inc. v. Illumina Cambridge Ltd.*, 821 F.3d 1359, 1366 (Fed. Cir. 2016)); *see also Cumberland Pharms. Inc. v. Mylan Institutional LLC*, 846 F.3d 1213, 1222 (Fed. Cir. 2017) ("The presence or absence of a reasonable expectation of success is a question of fact.") (citing cases). "[A] question of fact … should be decided by a jury." *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1332 (Fed. Cir. 2012).

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

9

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 3:19-CV-00410-EMC

## IV.   ARGUMENT

Asetek disguises a third claim construction brief as a motion for partial summary judgment in a bid to evade infringement.  Its newly minted non-infringement theory is premised on an incredible (and new) assumption it took almost three years and two claim construction proceedings to develop— that the simple term "plate" somehow lacks an established plain meaning. Asetek had numerous opportunities throughout this litigation to properly raise the belated claim construction "dispute" it now asks the Court to resolve.  Instead, Asetek chose to flout the rules and ambush CoolIT at summary judgment.[4]  Such gamesmanship should not be rewarded.[5]  Regardless, Asetek's opening brief reveals a disagreement as to a real factual dispute between the parties reserved for the jury —application of the plain meaning of the claimed "plate" to the accused Asetek Gen 5, 6, and 7 products. Summary judgment should be denied.

As to Asetek's request for summary judgment of validity for its '362 patent against Invalidity Grounds 4-9, CoolIT's expert provided lengthy explanations on the motivation to combine and the reasonable expectation of success for Invalidity Grounds 4-9.   Whether these explanations are sufficient is strictly a factual matter to be decided by a jury.  Asetek's motion for summary judgment should therefore be denied.

### A.   Asetek's motion for partial summary judgment of non-infringement based on its belated "plate" construction is untimely, procedurally inappropriate, and requires resolution of material issues of fact that should be reserved for the jury

#### 1.   Asetek's claim construction and non-infringement arguments should be disregarded as untimely

Asetek's claim construction and non-infringement arguments come far too late and should not be considered.  CoolIT put Asetek on notice almost *three years ago*, when it served initial infringement contentions, that it considered the claimed "plate" in the Asserted CoolIT Patents to cover EPDM plates.  Asetek now ambushes CoolIT with untimely claim construction arguments outside of the

---

[4]  Presumably, Asetek introduced this plate "dispute" after discovery to prevent CoolIT from developing an infringement theory on its EPDM plates under the doctrine of equivalents. Had "plate" somehow been construed as a "rigid plate" before summary judgment, CoolIT would have had good cause to amend its infringement contentions under Pat L.R. 3-6.

[5]  Asetek's belated "plate" arguments contravene at least its duty to supplement/disclose under Fed. R. Civ. P. 26, the Court's Case Management Order (Dkt. No. 42), and Pat. L.R. 3-3, 3-6, 4-1, 4-3, 4-5, and 4-7.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

10

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 3:19-CV-00410-EMC

District's "carefully structured rules" for such disputes and outside of normal Fed. R. Civ. P. 26 requirements.  As further shown below, this new "plate" theory is also untethered from the record.  If Asetek truly believed its current contention that "plate" lacks an established plain meaning, it had multiple opportunities under the Patent Local Rules and Fed. R. Civ. P. 26 to bring this issue before CoolIT and the Court.

Consistent with its disclosure obligations under Pat. L.R. 3-3, Asetek *could* have included a § 112 written description support challenge to CoolIT's interpretation of "plate" in its invalidity contentions.  It did not, and never sought leave to amend its contentions at any point in the litigation.  Similarly, under Pat. L.R. 4-1 Asetek *could* have identified "plate" for construction during the parties' first round of claim construction in 2019, and again when the Court permitted supplemental claim construction for the '330 patent in 2021. Asetek never raised its present claim construction concern on "plate" during either proceeding or requested additional claim construction afterward.

Asetek appears to suggest the impetus for its new "plate" argument lies with developments in IPR2020-00825.  But the compliant versus rigid distinction arose in a priority dispute on a separate term found in claim 1 of the '266 patent—*i.e.*, "manifold body defin[ing] a pair of compliant surfaces." The parties never disputed the plain meaning of "plate" in claim 13 that Asetek also challenged and CoolIT overcame in the same IPR.  The Board did not construe "plate" in its Final Written Decision as no one asked for it to be construed.  Indeed, Asetek's petition in IPR2020-00825 sought construction of several '266 claim terms—including an unsuccessful redo request on the Court's prior "exhaust manifold," "outlet opening," and "seal" constructions—but did not include "plate" in its request.

Developments in IPR2020-00825 had little influence on Asetek's timing for bringing its current claim construction arguments. By the time Asetek requested a second round of claim construction, the parties' dispute on the priority issue for "manifold body" was readily apparent. Asetek advanced its priority challenge to "manifold body" in its Petition, and CoolIT filed its Preliminary Patent Owner Response disputing lack of priority.  The Board's Institution Decision addressed the priority issue. Asetek made its second request to the Court for claim construction briefing *after* receiving the Board's Institution Decision and CoolIT's Patent Owner Response.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

11

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 3:19-CV-00410-EMC**

| Event | Date |
|---|---|
| Asetek's IPR2020-00825 Petition | April 10, 2020 |
| CoolIT's Patent Owner Preliminary Response | July 14, 2020 |
| Board's Institution Decision | October 13, 2020 |
| CoolIT's Patent Owner Response | January 11, 2021[6] |
| **Asetek's Request for 2nd Claim Construction** | **January 21, 2021** |

The Board's IPR2020-00825 Final Written Decision (which did not address the term "plate") issued on October 12, 2021.  Tellingly, six months have since passed and Asetek never approached CoolIT or the Court requesting construction on "plate."  Nor did it move to amend its invalidity contentions, and Dr. Tuckerman does not address written description for "plate" in his Invalidity Report.

The practical effect of Asetek's belated "plate" arguments has been to prejudice CoolIT's ability to properly develop its claim construction and infringement positions during discovery and the expert report period.  Had Asetek brought its proposed construction for "plate" for the Court's consideration under Patent Local Rule 4, CoolIT would have had far more than two mere weeks to marshal arguments and evidence in support of its opposition to this new proposal.  The parties would also have had a fair opportunity to depose witnesses on a POSITA's understanding of "plate," rather than permitting Asetek to clandestinely conduct claim construction after fact and expert discovery had closed.  Finally, if the Court had timely adopted Asetek's belated construction, CoolIT would have had good cause to amend its infringement contentions under Pat. L.R. 3-6(a)—which it would have done to assert infringement under the doctrine of equivalents against Asetek's EPDM plates.  CoolIT would have also had its expert deal with the issue.  CoolIT could not undertake any of these actions because Asetek withheld its new "plate" theory until after the close of claim construction, fact, and expert discovery.  The theory first surfaced in Dr. Tuckerman's non-infringement *rebuttal* report (and was absent from Dr. Tuckerman's opening invalidity expert report), barring Dr. Pokharna from any opportunity to investigate or respond.[7]

---

[6] A corrected Patent Owner Response was filed on January 19, 2021.
[7] The case schedule does not permit reply reports during expert discovery.  (*See* ECF No. 325.)

Cooley LLP
Attorneys At Law
Palo Alto

12

Defendants' Opposition to Plaintiff's
Motion for Partial Summary Judgment
Case No. 3:19-cv-00410-EMC

1    Asetek's ambush tactics and lack of diligence are inexcusable.  If Asetek "wanted to tee up

2    summary judgment positions based on particular construction[]," it "could (and should) have sought

3    … construction[] to [that] effect[]."  *Apple*, 2014 WL 252045, at *3 (quoting *ePlus, Inc. v. Lawson*

4    *Software, Inc.*, 700 F.3d 509, 520 (Fed. Cir. 2012)).  The Court should not reopen claim construction,

5    particularly when it has conducted two rounds already.  *See, e.g.*, *Huawei Techs., Co. v. Samsung*

6    *Elecs. Co.*, 340 F. Supp. 3d 934, 947-48 (N.D. Cal. 2018), *Fujifilm Corp.*, 2015 WL 757575, at *4-5,

7    *Boston Sci. Corp.*, 534 F. Supp. 2d at 1074-75, *Apple*, 2014 WL 252045, at *4-5; *SanDisk Corp.*, 415

8    F.3d at 1292 (affirming district court refusal to entertain claim construction arguments made "after the

9    relevant cut-off dates" under the N.D. Cal. local patent rules and the scheduling order). Judge Koh

10   explained in *Apple* that "[s]ound practical reasons" may guide a court to decline to address claim

11   construction arguments first raised during summary judgment:

12       The Northern District of California's local rules require the parties to narrow the
         number of disputed terms to 10 as part of their joint claim construction statement.
13       *See* Patent L.R. 4–3(c). In accordance with those rules, the parties made their
         selections at claim construction as to "the terms whose construction will be most
14       significant to the resolution of the case." *Id.* This requirement forces parties to
         identify potential case-dispositive terms at an early stage and also forces parties to
15       help manage the scope of patent cases. The Court painstakingly adjudged the
         parties' claim construction disputes during the claim construction phase based on
16       their in-depth technology tutorials and voluminous submissions of intrinsic and
         extrinsic evidence. The local rules and this Court did not set out a particular process
17       for resolving claim construction disputes only to let the parties make additional
         arguments at the summary judgment phase untethered to those carefully structured
18       rules.

19

20   *Apple*, 2014 WL 252045, at *4.  The Court has more than fulfilled its "duty to resolve fundamental

21   disputes regarding claim scope" by providing two thorough claim construction opinions in this case.

22   *See id.* at *3; *see also O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed.

23   Cir. 2008) ("[D]istrict courts are not (and should not be) required to construe *every* limitation present

24   in a patent's asserted claims.").  The term "plate" should be accorded "the 'full range' of its plain and

25   ordinary meaning 'according to the customary understanding of a person of ordinary skill in the art

26   who reads [it] in the context of the intrinsic record.'" *Fujifilm Corp.*, 2015 WL 757575, at *11 (quoting

27   *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1342 (Fed. Cir. 2001), *Agilent Techs., Inc. v.*

28   *Affymetrix, Inc.*, 567 F.3d 1366, 1376 (Fed. Cir. 2009)).  The Court also need not decide precisely

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

13

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 3:19-CV-00410-EMC

what the plain and ordinary meaning is at this time, as doing so undermines the purpose of the Patent Local Rules.  *Id*. at *6 ("[T]he goal [at this stage] is not to complete the Sisyphean task of providing definitive guidance as to a term's plain and ordinary meaning.").

This case is unlike *Eon Corp*. and *O2 Micro*, where the parties appropriately raised and adjudicated claim construction disputes in accord with court procedures.  In *Eon Corp*., the parties selected and actively disputed the scope of the terms "portable" and "mobile" during claim construction proceedings.  The Federal Circuit held that the district court erred by ruling that the terms should be given their plain meaning *after* being put in dispute during claim construction proceedings, leaving the question of claim scope unanswered for the jury to decide.  Similarly, the Federal Circuit in *02 Micro* held that the district court erred when it declined to resolve a claim scope dispute raised during claim construction.  These cases are distinguishable because the parties here never raised the dispute for claim construction.  Instead, here, the Court already resolved the parties' disputes over claim scope *twice* at the claim construction stage.  *See Apple*, 2014 WL 2520245, at *3, *Huawei Techs.*, 340 F. Supp. 3d at 947-48.

Asetek attempts to reframe an infringement issue (whether "plate" reads on a generally thin, flat rubber structure that covers fluid channels) as a claim construction dispute (that there is no established meaning for "plate") by pointing to Dr. Tuckerman's Non-Infringement Rebuttal Report and arguing that its expert "opined that a person skilled in the art would not consider a compliant object, such as a gasket, to be a 'plate.'"  (Op. Br. at 8.)  Dr. Tuckerman's statement on the plain meaning of "plate" is pure (and unreliable) *ipse dixit* (*see* Ex. 12, 12/8/2021 Tuckerman Rpt. ¶ 42).[8] Because his non-infringement opinions related to "plate" rely on this conclusory, late claim interpretation, they should be stricken.  *In re Buchner*, 929 F.2d 660, 661 (Fed. Cir. 1991) ("[A]n expert's opinion on the ultimate legal issue must be supported by something more than a conclusory statement.").

---

[8] Dr. Tuckerman then appears to make impermissible claim construction arguments throughout paragraphs 41-53.  (*See* Ex. 12 ¶¶ 41-53; *see also id*. ¶¶ 59-61, 66-69 (incorporation by reference).)  These claim construction arguments are further evidence that Dr. Tuckerman acts as a mouthpiece for his attorneys.  (*See also* CoolIT's Tuckerman *Daubert* Motion, ECF No. 397.)  Dr. Tuckerman's position also contradicts the intrinsic record by imposing a materials requirement that does not exist.

2.     **Denial is appropriate because a material fact dispute exists on whether the plain meaning of "plate" covers thin, rubber structures in the accused Gen 5, 6, and 7 products**

Beyond its tardiness, under the proper inquiry, Asetek's motion for partial summary judgment should be denied because material fact disputes exist on the application of a "plate" to a component in Asetek's accused Gen 5, 6, and 7 products. The question is whether a thin, flat rubber structure that covers fluid channels falls within the plain meaning of the term "plate" in the context of the claims. Dr. Pokharna considers this structure to be within the plain meaning of "plate" and applies that understanding in his mapping to Asetek's Gen 5, 6, and 7 EPDM plates.[9]  (*See* Ex. 13 ('330 patent) at 35, 47, 54, 66, 77, 84, 96, 107, 114; Ex. 14 ('284 patent) at 28, 42, 50, 65, 73, 88; Ex. 15 ('266 patent) at 29, 51, 74.)  Dr. Tuckerman relies on semantics and improper (and belated) claim construction arguments to contend that this same structure is a "gasket, elastomer, flexible seal, compliant member, compliant body, etc. (but not a plate)."  (Ex. 12 ¶¶ 42-53.)  It is on this factual question of application— a matter for the jury—that the experts disagree.  The parties are free to introduce evidence at trial to illustrate the plain meaning "so long as the evidence does not amount to 'arguing claim construction to the jury,'" *Huawei Techs.*, 340 F. Supp. 3d at 949 (citation omitted), but *applying* that meaning in an infringement analysis is not the Court's role.  Indeed, a battle of the experts such as this raises a classic question of fact for the jury to decide. *See, e.g., Edwards Sys. Tech., Inc. v. Digital Control Sys., Inc.*, 99 F. App'x 911, 921 (Fed. Cir. 2004).

3.     **Even if construed, the plain meaning for "plate" is construed by structure, relationship to other components, and function, and not by materials**

To the extent the Court feels it appropriate to define the plain meaning at this stage (which it need not do), the term "plate" is defined by and corresponds to its structure, relationship to other components, and function, not by a material it is made of.  A POSITA would have understood it to

---

[9] Asetek misrepresents Dr. Pokharna's testimony in its opening brief by claiming that he "agrees that in his infringement opinion(s) he has mapped the claimed 'plate' to a compliant gasket that overlies the microchannels and fins in Asetek's accused Generation 5, 6, 7" and then heavily excerpting a cherry-picked portion of his deposition testimony.  (*See* Op. Br. at 16-17.)  CoolIT invites the Court to read the transcript in context, where it will undoubtedly find that Asetek's counsel spent over an hour trying to force Dr. Pokharna to characterize the EPDM plates as "gaskets." (*See* Pokharna Decl. Ex. A at 65:21-69:6, 79:16-80:9, 82:15-23, 83:12-20; 88:14-89:14, 90:3-11, 90:18-91:7, 92:1-93:2, 98:14-99:4.)  The record is unequivocal that Dr. Pokharna considers this structure to be a plate and took issue with counsel's mischaracterization of the structure as a gasket.

refer to a generally thin, flat structure that covers and closes off heat spreader plate channels. (Declaration of Himanshu Pokharna, Ph.D. ("Pokharna Decl.") ¶ 9.) The intrinsic record does not specify a material requirement in any of the Asserted CoolIT Patents. (*Id.* ¶¶ 10-11.) Rather, the specifications identify plates by their structure and relationship to other components. (*See* '330 patent at 6:65-7:1 ("A plate **240** may be installed over the walls **210** to close off the channels across the upper limits of walls **210**"), 7:40-57, FIGs. 1, 3-5; '284 patent (ECF No. 23-2) at 7:11-12, 7:55-61, FIGs. 1, 3-5; '266 patent (ECF No. 27-4) at 12:36-37, 21:8-14, FIGs. 2, 4-6.) Illustrated embodiments depict a plate as a generally thin and planar structure (in red):



The intrinsic record is consistent with testimony from Asetek's former expert (used at claim construction) in this case, Dr. Tilton, who opined on the plain meaning in IPR2020-00825 that "[a] plate is a – generally some kind of flat structure." (Ex. 16 at 11:1-8.) Contemporaneous dictionary definitions and textbooks likewise define plates by their structure. (Pokharna Decl. Ex. B ("a smooth flat thin piece of material"); Pokharna Decl. Ex. D ("flat structural elements with thickness much smaller than the other dimensions."); Pokharna Decl. ¶¶ 12-13 (identifying multiple textbook definitions for "plate").) Dr. Pokharna similarly testified to a POSITA's understanding of the plain meaning of "plate" in the context of the Asserted CoolIT Patents:

> There [are] no material limitations for the plate in the disclosure of '266 and various other CoolIt patents. ***And it has a structure that is substantially two-dimensional*** . . . a structure that is ***substantially flat, and it has to perform a job of covering the top of the channels***. And both the metal plate and the EPDM are performing that

Cooley LLP
Attorneys At Law
Palo Alto

16

**Defendants' Opposition to Plaintiff's
Motion for Partial Summary Judgment
Case No. 3:19-cv-00410-EMC**

1
2

job. There are lots of other material properties which could have additional limitations, but those limitations are not present in the disclosure or the claims of '26[6].

3
4
5
6
7
8
9
10
11
12
13
14

(Pokharna Decl. Ex. A at 92:6-18 (emphasis added); *see also id.* at 66:24-69:7 (noting unimportance of material so long as the claimed plate-seal assembly's structure and function is such that it covers the tops of each microchannels), 72:8-15, 76:2-12, 84:4-85:15, 86:18-21; 88:2-4 (noting that stiff materials can have compliancy and vice versa); *see also* Pokharna Decl. ¶ 10.) Dr. Pokharna made clear time and again that a plate's material was not a critical feature of the inventive fluid heat exchanger, and one could use many materials in the plate to accomplish its function, including rubber. (*Id.*; *see also* Pokharna Decl. Ex. A at 93:9-95:3 (noting various examples of plates, including silicone, Styrofoam, and rubber plates).) *See, e.g.*, *S3 Inc. v. NVIDIA Corp.*, 259 F.3d 1364, 1371 (Fed. Cir. 2001) ("The law is clear that patent documents need not include subject matter that is known in the field of the invention and is in the prior art, for patents are written for persons experienced in the field of the invention. To hold otherwise would require every patent document to include a technical treatise for the unskilled reader." (citation omitted)).

15
16
17
18
19
20
21
22
23
24

Numerous scientific articles, patents, and publications also support that plates are defined by structure and function, and that the use of non-rigid plates (including rubber) was well known in the art decades before August 2007.  (*See* Pokharna Decl. ¶¶ 16-19[10]; *see also* Exs. G-M.)  As several non-limiting examples, U.S. Patent No. 4,748,495 ("High Density Multi-Chip Interconnection and Cooling Package"), issued May 31, 1988, describes "a flexible plate or membrane for mounting heat sink elements in an array which corresponds to the array of integrated circuit chips" and identifies "elastomeric material such as silicone rubber." (Pokharna Decl. Ex. P at 4:51-54, 14:53-54, 16:34-35 (referring to "elastomer plate **130**").)   U.S. Patent 4,744,414 ("Plastic Film Plate-Type Heat Exchanger"), issued May 17, 1988, also discloses within its assembly "separator plates made of

25
26
27
28

---

[10] The practice of including a modifier to connote material, discussed at paragraphs 14-19, is consistent with how the inventor discussed materials in the '567 and '266 patents. (*See* '567 patent, cl. 1 ("*compliant* member"); '266 patent, cl. 1 ("manifold body defin[ing] a pair of *compliant* surfaces"). *See also* Ex. 17 (IPR2020-00825 Patent Owner Response (Paper 25)), at 27-28 (explaining that removal of "rigid" from the '266 non-provisional application connoted to a POSITA that the inventor meant to "emphasize additional benefits of a thicker insert **334** [not a plate] that matingly engages the housing of the pump.").)

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

17

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 3:19-CV-00410-EMC**

flexible materials" so "the need for gaskets between the plates can be eliminated."  (Pokharna Decl. Ex. M at 6:34-36.)  And U.S. Patent No. 3,228,465 ("Heat Exchanger"), issued January 11, 1966, discusses how **sealing** plates may be "made of any suitable sealant material, but preferably [] made of a material which will both provide a satisfactory seal and be non-hemolytic, such as rubber." (Pokharna Decl. Ex. O at 3:65-68.) In fact, use of EPDM rubber in plates was well-established by 2007.  (*See, e.g.*, Pokharna Decl. Ex. K.)  Dr. Pokharna includes in his declaration many additional examples of flexible, non-rigid plates from pre-August 2007 literature.[11]  (*See* Pokharna Decl. ¶¶ 16-18.)

Multiple courts have also identified the plain meaning of "plate" by its structure and relationship to other components.  *See, e.g.*, *Cortland Line Co. v. Orvis Co.*, 203 F.3d 1351, 1356 (Fed. Cir. 2000) (assigning plain meaning of "plate" as "broad, flat piece of material," consistent with words and drawings in specification), *ICHL, LLC v. NEC Corp. of Am.*, No. 5:08CV65, 2010 U.S. Dist. LEXIS 38942, at *44 (E.D. Tex. Apr. 20, 2010) (construing a "cover plate partially enclosing said fin structures" in an air-cooled heat sink as "a flat member positioned to partially enclose the fin structures" based on plain meaning of "plate" and relationship between components).  *Accord MHB Indus. v. Dennis Garberg & Assocs.*, No. 95-10199-GAO, 1996 U.S. Dist. LEXIS 11638, at *10 (D. Mass. July 26, 1999) ("A 'plate' suggests a more or less flat surface.").

Giving the "full range" to the plain meaning for "plate" a jury could easily conclude that the "plate" limitation in the claims of the Asserted CoolIT Patents reads on the EPDM plates in the accused Gen 5, 6, and 7 products.  There is no dispute that the identified structure for "plate" in the accused Gen 5, 6, and 7 products is thin with generally flat surfaces, or that it covers the heat spreader plate microchannels.  The only question is whether a POSITA considering the plain meaning for "plate" in the context of the Asserted CoolIT Patents could reasonably find that this thin, flat rubber structure

---

[11] Dr. Pokharna also ran Google Scholar searches for pre-2007 articles and generated: 4190 results for "flexible plate"; 2470 results for "rubber plate"; 727 results for "soft plate"; 181 results for "compliant plate"; and 71 results for "compressible plate."  (Pokharna Decl. ¶ 14.)  Dr. Pokharna could not possibly sift through these thousands of results within 14 days to further confirm his understanding that non-rigid plates were well-known before 2007.  (*Id*. ¶ 15.)  However, the sheer volume of hits is indication enough.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

18

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 3:19-CV-00410-EMC

reads on the claims.  As Dr. Pokharna suggests, it can.  (*See, e.g.*, Ex. 13 ('330 patent) at 35, 47, 54, 66, 77, 84, 96, 107, 114; Ex. 14 ('284 patent) at 28, 42, 50, 65, 73, 88; Ex. 15 ('266 patent) at 29, 51, 74.)  Summary judgment should be denied.

Asetek erects a strawman of "no plain meaning" in search of a safe haven from infringement under *Goldenberg* and its progeny.  This is not a real dispute—otherwise, why would Asetek wait almost three years after being put on notice about its EPDM plates to bring this "issue" to the Court's attention?[12]  Regardless, the *Goldenberg* case line was never intended to cabin the plain meaning of a single, well-understood, and simple term like "plate."  *Goldenberg* involved a more ambiguous term "marker substance" that the parties *agreed* had no accepted meaning to a POSITA.  *Goldenberg v. Cytogen, Inc.*, 373 F.3d 1158, 1164 (Fed. Cir. 2004).  Here, the parties clearly disagree.  *Lexion* and *Kaneka* are equally distinguishable, as both merely stand for the basic proposition that a plain meaning construction must be consistent with the intrinsic record.  The Asserted CoolIT Patents place no restriction on "plate" that would clash with the plain meaning. Asetek asks for essentially a negative limitation (*i.e.*, it cannot be a non-rigid material) when the patentee did not act as his own lexicographer or make a clear, unmistakable disavowal of claim scope for "plate."  *Thorner*, 669 F.3d at 1365.

### 4. Asetek's proposed construction is untethered from the intrinsic record and impermissibly restricts the plain meaning of "plate" to avoid infringement

The real purpose for Asetek's manufactured "no plain meaning" argument is to try to jam the Board's § 112 priority determination in the IPR2020-00825 Final Written Decision for a "manifold body defin[ing] a pair of compliant surfaces" into the unrelated term "plate," found in completely different claims, to avoid infringement.  But as discussed above, the § 112 inquiry before the Board was never about "plate," or even a claim containing that term.  Nor did the Board construe the term "plate."  To the extent "plate" was implicated in the Board's § 112 priority analysis, it was with reference to a particular embodiment (plate **240**) in a 2007 provisional application to the '266 patent. At best, Asetek's proposed construction—seizing on this discussion—would violate cardinal rules of claim construction by reading into "plate" an unsupported negative limitation from a preferred embodiment in the specifications. *Liebel-Flarsheim Co. v. Medrad, Inc*., 358 F.3d 898, 906 (Fed. Cir.

---

[12] As noted, Asetek's former expert Dr. Tilton also already agreed in IPR2020-00825 that "plate" had a plain meaning consistent with Dr. Pokharna and CoolIT's understanding of the term.

Cooley LLP
Attorneys At Law
Palo Alto

19

Defendants' Opposition to Plaintiff's
Motion for Partial Summary Judgment
Case No. 3:19-cv-00410-EMC

2004) ("Even when the specification describes only a single embodiment, the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using 'words or expressions of manifest exclusion or restriction.'" (citation omitted)).

Consideration of the Board's § 112 priority analysis for a separate term in a separate claim is altogether irrelevant to a POSITA's understanding of the "plate" term in the context of the Asserted CoolIT Patents.  First, the Board is not authorized to make § 112 *patentability* determinations and did not do so here.  35 U.S.C. § 311(b).  Moreover, the *priority* written description inquiry requires unambiguous disclosure for *claimed and novel* features of the invention.  *See Hyatt v. Boone*, 146 F.3d 1348, 1353 (Fed. Cir. 1998) (noting that written description for priority requires the specification unambiguously describe all limitations, but also acknowledging that "known details need not be included in a patent specification.").  The Board's analysis concluded the 2007 provisional lacked written description support for "a pair of compliant surfaces" for the "manifold body," which is a different (and arguably more expansive) term than "plate."  The material of the claimed "plate" was never at issue, and in contrast to the "manifold body" in claim 1 of the '266 patent, claim 13 does not restrict the material of the recited "plate."

Asetek also draws on a false syllogism that, because a plate can be a "manifold body," and the Board determined that the 2007 provisional's written description did not support "defin[ing] a pair of compliant surfaces" for a "manifold body," that the claimed plate cannot be made of compliant material.  But the specifications of the Asserted CoolIT Patents do not use the terms "plate" and "manifold body" interchangeably and nowhere does the intrinsic record impose a material requirement to "plate."  The term "manifold body" does not appear in the '330 and '284 specifications. To adopt Asetek's proposal would require the Court to construe "plate" using new matter introduced into the '266 patent related to a separate term.  *See Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1334 (Fed. Cir. 2003) ("Unless otherwise compelled, [] the same claim term in the same patent or related patents carries the same construed meaning."); *e.g.*, *Sinorgchem Co., Shandong v. Int'l Trade Comm'n*, 511 F.3d 1132, 1139 n.5 (Fed. Cir. 2007) (noting that "[a]dditional examples included in the specification" of a continuation-in-part application cannot alter the meaning of a term appearing in both the parent and later continuation-in-part application).

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

20

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 3:19-CV-00410-EMC

Asetek misunderstands and misconstrues statements made during the '567 and '266 prosecution histories as supportive of its construction.  In overcoming Nelson's plate 36 during the '567 prosecution on the term "compliant *member*" (not plate), the applicant merely noted that Nelson's use of the term "plate" in the context of Nelson's device does not connote "flexibility, conformability, or compliance, such as, for example, 'gasket' or 'seal.'"  This is consistent with the plain meaning for "plate," which does not connote a material.  The applicant's remarks actually *support* that the claimed "plate" may be compliant, as the '330 specification expressly teaches that "seal **230** may be installed as a portion of plate **240**." ('330, 7:5-6; *see also id.*, FIGs. 4, 5 (showing seal monolithic with plate).)  Asetek omits that the applicant went on to state that "the arrangement of Nelson's device suggests the plate 36 is stiff and rigid" because its housing-plate configuration would permit the plate to "lift from the fins under the force of the fluid flow" were the plate compliant.[13]   (Ex. 18 at 14.)  Nelson's configuration is not present in the claimed inventions of the Asserted CoolIT Patents, where a compliant seal extends between the housing and plate and can be a portion of the plate.  (*See, e.g.*, '330 patent, FIGs. 1, 3, 6:52-55, 7:5-6.)  Similarly, in the '266 patent prosecution, the applicant's statement was made with respect to the '266 patent *claim 1*, which recites a "manifold body defin[ing] a pair of compliant surfaces," not a "plate." (Ex. 19 at 7.)  Neither example comes close to evincing a clear, unmistakable disavowal of scope for "plate" that could warrant Asetek's proposed "non-rigid" negative limitation.

### 5.    Asetek's alternative *invalidity* argument is untimely and presupposes the Court accepts its proposed "plate" construction

Despite knowing about CoolIT's "plate" interpretation after receiving CoolIT's July 2019 infringement contentions, Asetek makes a written description challenge for "plate" at summary judgment after failing to raise the argument in its invalidity contentions or in Dr. Tuckerman's Invalidity Report.  This belated theory should also be disregarded as untimely.[14]  *Verinata Health*,

---

[13] The applicant *also* distinguished Nelson as not disclosing any structure equivalent to "a compliant member that occupies a recessed region defined by the second side of the housing, let alone one that urges against a corresponding wall of the recessed region."  (Ex. 18 at 14.)

[14] "[C]laim construction is inherent in any written description analysis" as well.  *In re Katz Interactive Call Processing Pat. Litig.*, 639 F.3d 1303, 1319 (Fed. Cir. 2011).  If the Court disregards Asetek's "plate" claim construction arguments as untimely, this provides another reason for declining to consider Asetek's belated § 112 written description challenge.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

21

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 3:19-CV-00410-EMC

2014 WL 4100638, at \*3; *Asia Vital Components Co. v. Asetek Danmark A/S*, No. 16-cv-07160-JST, 2018 WL 4945316, at \*2 (N.D. Cal. Oct. 11, 2018); *ASUS Comput. Int'l v. Round Rock Rsch., LLC*, No. 12-cv-02099-JST (NC), 2014 WL 1463609, at \*1 (N.D. Cal. Apr. 11, 2014); *see also Takeda Pharm. Co. v. TWi Pharms., Inc.*, No. 13-CV-02420-LHK, 2015 WL 1227817, at \*9 (N.D. Cal. Mar. 17, 2015) (striking theory not disclosed in invalidity contentions); *Finjan, Inc. v. Sophos, Inc.*, No. 14-cv-01197-WHO, 2016 WL 2988834, at \*13 (N.D. Cal. May 24, 2016) (same).

This is true even if Asetek were to move to amend its invalidity contentions now based on a charitable interpretation of the Board's IPR2020-00825 Final Written Decision. The Court's Amended Case Management and Pretrial Order, consistent with Pat. L.R. 3-6, is clear that "amendment to contentions/preliminary elections" can be made "only by order of Court upon *timely* showing of good cause." (ECF No. 42 (emphasis added).)  As almost six months have passed since the Board rendered its decision, Asetek clearly would not have been diligent in seeking amendment now—which it has not done.  *See, e.g.*, *O2 Micro Int'l, Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1367 (Fed. Cir. 2006) (affirming district court ruling that three-month delay was not diligent); *Word to Info Inc. v. Facebook Inc.*, No. 15-cv-03485-WHO, 2016 WL 6276956, at \*6 (N.D. Cal. Oct. 27, 2016) (four-month delay after receiving opposing counsel's proposed construction not diligent).

The potential harm to CoolIT is significant.   Written description support is a factual determination, including for priority date purposes. *Cordis Corp. v. Boston Sci. Corp.*, 561 F.3d 1319, 1331-32 (Fed. Cir. 2009). *See, e.g.*, *Leader Techs., Inc. v. Facebook, Inc.*, 678 F.3d 1300, 1304 (Fed. Cir. 2012) (reviewing jury's determination of a patent's priority date); *Synthes USA, LLC v. Spinal Kinetics, Inc.*, 734 F.3d 1332, 1341 (Fed. Cir. 2013) (reviewing jury's determination of invalidity for lack of adequate written description).  By not putting "plate" at issue before summary judgment, Asetek robbed CoolIT of the opportunity to conduct discovery or offer expert testimony on this issue.[15] This appears to be the objective all along, as Asetek now argues that no genuine issue of fact exists because "CoolIT's expert's reports fail to assert written description support."  Patents are presumed

---

[15] Numerous courts in this District do not require a showing of prejudice where, as here, the offending party did not exercise diligence in seeking leave to amend. *See, e.g.*, *Takeda*, 2015 WL 1227817, at \*6-8; *Verinata Health*, 2014 WL 4100639, at \*5; *accord ASUS Comput.*, 2014 WL 1463609, at \*8 (striking expert reports even in the absence of showing of prejudice).

Cooley LLP
Attorneys At Law
Palo Alto

22

Defendants' Opposition to Plaintiff's
Motion for Partial Summary Judgment
Case No. 3:19-cv-00410-EMC

valid; it is Asetek's burden to prove invalidity, not the other way around.  *Sandt Tech., Ltd. v. Resco Metal & Plastics Corp.*, 264 F.3d 1344, 1350 (Fed. Cir. 2001).  Because Asetek bears that burden and neither Asetek nor Dr. Tuckerman put written description support for "plate" at issue (in a priority challenge or for invalidity) before this motion, Dr. Pokharna had no reason to address it in his reports.[16]

### 6. CoolIT is not collaterally estopped from mounting written description arguments for "plate" because the same issue is not before the Court

Collateral estoppel does not apply for several reasons.  First, the PTAB is not authorized to make § 112 patentability determinations during IPR of the kind that Asetek now seeks.  *See* 35 U.S.C. § 311(b) (only §§ 102 & 103 grounds allowed).  Second, the PTAB in IPR2020-00825 provided § 112 written description analysis for a different issue (priority) involving a different claim term ("manifold body defin[ing] a pair of compliant surfaces") from a continuation-in-part many generations removed from the earlier '330 and '284 patents.  Asetek's estoppel argument presupposes: (1) that the Court is willing to conflate two separately claimed terms "plate" and "manifold body defin[ing] a pair of compliant surfaces" (*compare* '266 patent, c1. 1, *with* cl. 13)*;* and (2) that a § 112 priority determination is the same as a § 112 invalidity determination.  Collateral estoppel requires issue identity that is not present here.  *Enovsys LLC v. Nextel Commc'ns, Inc.*, 614 F.3d 1333, 1342-43 (Fed. Cir. 2010) (applying California law).  In addition, CoolIT has not had a fair opportunity to address Asetek's new written description attack on "plate," having confronted it for the first time in response to this motion.[17]  *See Blonder-Tongue Lab'ys v. Univ. Ill. Found.*, 402 U.S. 313, 333 (1971) (providing a safeguard to collateral estoppel accusations in patent litigation where the patentee "did not have a fair opportunity procedurally, substantively, and evidentially to pursue his claim the first time." (citation omitted)).

---

[16] To the extent Asetek argues that Dr. Tuckerman argued that written description support does not exist in his Non-Infringement Rebuttal Report, Dr. Pokharna still had no opportunity to offer expert testimony because the case schedule does not permit reply reports.  (*See* ECF No. 325.)

[17] Of relevance to the *Blonder Tongue* analysis, CoolIT was unable to select the forum to litigate § 112 issues, as Asetek sought IPR of the '266 patent claims before the PTAB.  Moreover, narrow, expedited discovery procedures at the PTAB inhibited CoolIT's opportunity "procedurally, substantively, and evidentially" to argue for written description support on "plate."  This issue was not before the PTAB and Asetek decided to use a different invalidity expert in district court who has not opined on lack of written description for "plate" in his Invalidity Report, let alone what the plain meaning of this term is across any of his expert reports.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

23

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 3:19-CV-00410-EMC

Asetek's reliance on *Zoho* and *Atlantic Research* is misplaced.  In *Zoho*, the Court found the term "textual source material stored in an electronic database" lacked written description support because the specification was silent to the material being "stored in an electronic database."  *Zoho Corp. v. Sentius Int'l, LLC*, 494 F. Supp. 3d 693, 707 (N.D. Cal. 2020).  The *specific claim language—* a novel aspect of the invention—lacked disclosure.  In contrast, here there is no dispute that the term "plate" has intrinsic support.  Moreover, the claims do not recite a material requirement for the "plate" term—it is not a novel aspect of the invention.  *Zoho*, 494 F. Supp. 3d at 703-04 ("well-known elements require less description," particularly in the predictable arts and depending on the background state of the art)  In *Atlantic Research*, the Federal Circuit affirmed that claims directed to a distinct *structure*, lacked written description support where the Court construed the claim more expansively to cover another structure that was unsupported by the specification.  *Atl. Rsch. Mktg. Sys., Inc. v. Troy*, 659 F.3d 1345, 1352-55 (Fed. Cir. 2011).  Here, "plate" is accorded its plain meaning (because Asetek never put it at issue) and there is no reasonable dispute that written description support exists for "plate" that covers the Gen 5, 6, and 7 structure of the EPDM plates.  *Zoho* and *Atlantic Research* would only be relevant if the Court adopted Asetek's belated claim construction position and imported a (non-existent) material limitation from a preferred embodiment in the specifications.

### B.   Whether Dr. Abraham's explanations on motivation to combine and reasonable expectation of success are sufficient is a factual issue for a jury to decide

Contrary to Asetek's allegations, Dr. Abraham provided lengthy explanations on the motivations to combine and the reasonable expectation of success for Invalidity Grounds 4-9.  (*See, e.g.*, Ex. 11 ¶¶ 697, 701, 702 (explaining motivation to combine Wu with Ryu for Ground 4); *see also id.* ¶¶ 697, 705, 706 (explaining motivation to combine Batchelder with Ryu for Ground 5); *see also id.* ¶¶ 695, 705, 706 (explaining motivation to combine Shin with Batchelder for Ground 6); *see also id.* ¶¶ 697, 705, 706 (explaining motivation to combine Ryu with Batchelder for Ground 7); *see also id.* ¶¶ 695, 701, 706 (explaining motivation to combine Wu with Batchelder for Ground 8); *see also id.* ¶¶ 701, 703, 704 (explaining motivation to combine Wu with Yu for Ground 9); *see also id.* ¶¶ 712-714 (explaining reasonable expectation for success for Grounds 4-9).)   In his lengthy explanations, Dr. Abraham painstakingly pointed out in each of the cited references why and how a

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

24

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 3:19-CV-00410-EMC

1    POSITA, when reading such references together, would have been motivated to combine these

2    references, with a reasonable expectation of success in the combinations, contrary to Asetek's

3    incorrect allegations.  (*See, e.g.*, Section II.B, *supra*.)  "Whether a person of ordinary skill in the art

4    would have been motivated to modify or combine teachings in the prior art, and whether he would

5    have had a reasonable expectation of success, are questions of fact."  *See, e.g.*, *In re Stepan*, 868 F.3d

6    at 1346; *Neptune*, 921 F.3d at 1375; *Intelligent Bio-Sys.*, 821 F.3d at 1366; *Cumberland Pharms.*, 846

7    F.3d at 1222.  Because "a question of fact … should be decided by a jury[,]" Asetek's motion for

8    validity based on its challenge of the sufficiency of motivation to combine and reasonable expectation

9    of success should be denied.  *ActiveVideo*, 694 F.3d at 1332.

10    **V.    CONCLUSION**

11         For the foregoing reasons, Defendants respectfully request that the Court deny Asetek's

12    Motion for Partial Summary Judgment.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

25

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 3:19-CV-00410-EMC**

Dated:       April 14, 2022                    /s/ Reuben H. Chen

COOLEY LLP
HEIDI L. KEEFE (178960)
(hkeefe@cooley.com)
REUBEN H. CHEN (228725)
(rchen@cooley.com)
DANIEL J. KNAUSS (267414)
(dknauss@cooley.com)
ALEXANDRA LEEPER (307310)
(aleeper@cooley.com)
DEEPA KANNAPPAN (313573)
(dkannappan@cooley.com)
3175 Hanover Street
Palo Alto, CA  94304-1130
Telephone:    (650) 843-5000
Facsimile:     (650) 849-7400

DUSTIN M. KNIGHT (*pro hac vice*)
(dknight@cooley.com)
11951 Freedom Drive, 16th Floor
Reston, VA 20190
Telephone: (703) 456-8000
Facsimile: (703) 456-8100

*Attorneys for Defendant and Counter-claimant*
*COOLIT SYSTEMS, INC. and Defendants*
*CORSAIR GAMING, INC. and CORSAIR*
*MEMORY, INC.*

GREENBERG TRAURIG, LLP
KYLE D. CHEN (SBN 239501)
(kchen@gtlaw.com)
1900 University Avenue
East Palo Alto, CA 94303
Telephone: (650) 289-7887
Facsimile: (650) 328-8508

*Attorneys for Defendant CoolIT Systems, Inc.*

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

26

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 3:19-CV-00410-EMC