1  Robert F. McCauley (SBN 162056)
   robert.mccauley@finnegan.com
2  Arpita Bhattacharyya (SBN 316454)
   arpita.bhattacharyya@finnegan.com
3  Jeffrey D. Smyth (SBN 280665)
   jeffrey.smyth@finnegan.com
4  **FINNEGAN, HENDERSON, FARABOW,**
   **  GARRETT & DUNNER, LLP**
5  3300 Hillview Avenue
   Palo Alto, California  94304
6  Telephone:     (650) 849-6600
   Facsimile:      (650) 849-6666
7
   Attorneys for Plaintiff and Counterdefendant
8  ASETEK DANMARK A/S and
   Counterdefendant ASETEK USA, INC.
9

10                **UNITED STATES DISTRICT COURT**
                 **NORTHERN DISTRICT OF CALIFORNIA**
11                    **SAN FRANCISCO DIVISION**

12

13  ASETEK DANMARK A/S,                          CASE NO. 3:19-cv-00410-EMC

14                   Plaintiff and              **ASETEK DANMARK A/S OPPOSITION TO**
                     Counterdefendant,          **DEFENDANTS' MOTION TO STRIKE**
15                                              **ASETEK'S LATE-DISCLOSED ALLEGED**
    ASETEK USA, INC.,                           **DESIGN-AROUNDS**
16
                     Counterdefendant,
17                                              Date:          May 5, 2022
         v.                                     Time:          1:30 PM
18                                              Location:      Courtroom 5, 17th Floor
    COOLIT SYSTEMS, INC.,                       Judge:         Hon. Edward M. Chen
19
                     Defendant and
20                   Counterclaimant,

21  COOLIT SYSTEMS USA INC., COOLIT
    SYSTEMS ASIA PACIFIC LIMITED,
22  COOLIT SYSTEMS (SHENZHEN) CO.,
    LTD.,
23
                     Defendants,
24
    CORSAIR GAMING, INC. and CORSAIR
25  MEMORY, INC.,

26                   Defendants.

27

28

# **TABLE OF CONTENTS**

I.      INTRODUCTION .................................................................................................................1

II.     FACTS ...............................................................................................................................2

      A.      Asetek Properly Disclosed its Redesign During Fact Discovery Via 2D CAD Drawings, Interrogatory Responses, and Deposition Testimony..............................2

      B.      Defendants' Expert on CoolIT's Patents, Dr. Pokharna, Deliberately Chose Not to Consider or Offer Opinions About Asetek's Redesign or 2D CADs in His Expert Report ...........................................................................................................7

      C.      Dr. Stein's Simulations of Asetek's Redesign Described in His Rebuttal Expert Report .......................................................................................................................8

      D.      Defendants' Expert, Dr. Pokharna, Refused to Answer Questions About Whether Asetek's Redesign Does Not Infringe During His Deposition .................9

      E.      None of Defendants' Experts Analyzed Whether Asetek's Redesign Infringes the CoolIT Patents.........................................................................................................10

      F.      Asetek Timely Produced Production Validation Samples to Defendants Soon After They Were Created ...................................................................................................11

III.    ARGUMENT .....................................................................................................................12

      A.      Defendants' Motion Presents an Incomplete and Misleading Version of the Facts, and the Actual Facts Completely Undermine Their Claims of Prejudice and Their Motion ....................................................................................................12

      B.      The Courts In This District Will Not Permit a Party to Play the Ostrich and Later Move to Strike; If Defendants Truly Needed More Than Asetek's 2D CADs Produced During Fact Discovery, They Needed to Ask and Had Many Months to Do So ...................................................................................................13

      C.      Asetek's Redesign is Simple to Understand and Dr. Pokharna's Claim He Couldn't Understand It From Asetek's 2D CADs is Belied by His Reliance on the Simple Schematic in the Kandlikar Reference .................................................16

      D.      Defendants' Argument That Asetek was Obligated to Complete its Redesign Before Close of Discovery is Contrary to Rule 26(e) and Has No Legal Support ...............................................................................................................17

      E.      Defendants' Argument That Dr. Pokharna was Prejudiced By Not Having Earlier Access to CADs or Ansys SpaceClaim Files is Baseless .........................19

      F.      Defendants' Assertion that the Cold Plate CADs and Physical Sample Use Different Designs is Unsupported and Erroneous .................................................19

IV.     CONCLUSION...................................................................................................................20

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Airborne Athletics, Inc. v. Shoot-A-Way, Inc.*,

5
    No. CIV. 10-3785  SRN/JJK, 2012 WL 3612035 (D. Minn. Aug. 21, 2012) ..............................18

6
*Apple v. Samsung Elecs.*,
    No. 11-CV-01846-LHK, 2012 WL 3155574 (N.D. Cal. Aug. 2, 2012)......................................18

7

8
*Asia Vital Components v. Asetek Danmark A/S*,
    377 F. Supp. 3d 990 (N.D. Cal. 2019) ...................................................................................18

9
*Baxter Healthcare Corp. v. Frensenius Med. Care Holding, Inc.*,

10
    No. C 07–1359 PJH (JL), 2009 WL 904152 (N.D. Cal. Apr. 2, 2009) .......................................17

11
*Cardinal Chem. Co. v. Morton Int'l*,
    508 U.S. 83 (1993)................................................................................................................12

12

13
*Elbit Sys. Land & C4I v. Hughes Network Sys.*,
    No. 2:15-CV-00037-RWS-RSP, 2017 WL 2651618 (E.D. Tex. June 20, 2017) .........................18

14
*Elliott v. Google*,

15
    860 F. 3d 1151 (9th Cir. 2017) ..............................................................................................18

16
*Finjan, Inc. v. Bitdefender Inc.*,
    No. 17-cv-04790-HSG (TSH), 2019 WL 3564443 (N.D. Cal. Aug. 6, 2019)..............................17

17

18
*Finjan, Inc. v. Blue Coat Sys., Inc.*,
    No. 13-CV-03999-BLF, 2015 WL 3640694 (N.D. Cal. June 11, 2015) ..........................13, 14, 15

19
*Hernandez v. Polanco Enters., Inc.*,

20
    19 F. Supp. 3d 918 (N.D. Cal. 2013) .......................................................................................17

21
*Illumina, Inc. v. BGI Genomics Co., Ltd.*,
    No. 19-cv-03770-WHO, 2021 WL 4126005 (N.D. Cal. Sept. 9. 2021) .........................13, 14, 15

22

23
*Ingenco Holdings v. Ace Am. Ins.*,
    921 F.3d 803 (9th Cir. 2019) ................................................................................................18

24
*Innogenetics, N.V. v. Abbott Lab'ys*,

25
    512 F.3d 1363 (Fed. Cir. 2008)...............................................................................................18

26
*In re Koninklijke Philips Pat. Litig.*,
    No. 18-cv-01885-HSG, 2020 WL 7398647 (N.D. Cal. Apr. 13, 2020) ......................................18

27

28
*MLC Intell. Prop. v. Micron Tech.*,
    10 F. 4th 1358 (Fed. Cir. 2021) ..............................................................................................18

*MLC Intell. Prop. v. Micron Tech.*,
  No. 14-cv-03657-SI, 2019 WL 2863585 (N.D. Cal. July 2, 2019) ...............................................18

*Verinata Health, Inc. v. Sequenom, Inc.*,
  No. 12-CV-00865-SI, 2014 WL 4100638 (N.D. Cal. Aug. 20, 2014) .............................13, 14, 15

*Wilson Sporting Goods Co. v. David Geoffrey & Assoc.*,
  904 F.2d 677 (Fed. Cir. 1990).....................................................................................................12

*Woods v. Google, Inc.*,
  2014 WL 1321007 (N.D. Cal. Mar. 28, 2014)..............................................................................17

*Yeti by Molly, Ltc. v. Deckers Outdoor Corp.*,
  259 F.3d 1101 (9th Cir. 2001) .....................................................................................................15

**Other Authorities**

Fed. R. Civ. P. 33(d) ..............................................................................................................................3, 5

Fed. R. Civ. P. 37(c)(1)........................................................................................................................15, 16

1

## I.     INTRODUCTION

2          Defendants' motion omits key facts in an attempt to give the false impression that Asetek

3  was not forthcoming about its redesign during fact discovery, and that Defendants supposedly did

4  not understand Asetek's redesign during fact discovery. But neither of those things is true. During

5  fact discovery, Asetek provided Defendants with detailed two-dimensional (2D) CAD drawings of

6  Asetek's cold plate design around. Defendants marked those 2D CADs as exhibits during the

7  deposition of Asetek's corporate witness on design arounds, asked him about the design arounds,

8  and did not request production of any additional CADs or any other kinds of files for the redesigns.

9  Those 2D CADs are not materially different from the 3D CADs that Asetek's simulation expert used

10  for his simulations and opinion, nor are the 2D CADs materially different from recently-

11  manufactured product samples that Asetek provided Defendants under Rule 26(e).

12          Defendants' claims of prejudice and surprise are groundless. Their motives for trying to

13  prevent the jury from considering Asetek's recently-created product samples, and the simulations

14  and opinions of Asetek's expert, Dr. Stein, are purely tactical. The truth is that Defendants have been

15  well-aware since fact discovery that Asetek's redesign implements a prior art cold plate

16  configuration, which creates a real problem for Defendants. Although CoolIT would certainly like to

17  accuse Asetek's redesign of infringing CoolIT's patents, such an accusation would ensnare the prior

18  art under the case law and render CoolIT's patent claims invalid. Faced with this dilemma,

19  Defendants hatched a scheme to avoid opining on Asetek's design-around while trying to exclude it

20  from the case. Defendants had their expert literally refuse to opine during expert discovery whether

21  Asetek's redesign does not infringe CoolIT's patents, supposedly "reserving the right" to do that

22  later. They then lay in wait to file this motion to strike after the conclusion of expert discovery.

23  Defendants are thus trying to avoid the ensnarement problem while precluding Asetek from

24  presenting evidence of its product sample and its experts' opinion.  Fortunately, the Courts in this

25  district do not permit such gamesmanship, and Defendants' motion to strike should be denied.

26          It is also highly likely before trial in March 2023, Asetek will have already changed over to

27  its redesigns in its commercial products, which did not exist during fact or expert discovery and will

28  undoubtedly be admissible under Rule 26(e). And in that event, the Stein report now under attack

1

1    may be less important or unnecessary, because Asetek's commercial sales of its redesigns will prove

2    the same point as Dr. Stein's simulations and report, i.e., that Asetek's redesigns are commercially

3    acceptable alternatives to CoolIT's split flow patent claims.  Nevertheless, Defendant's motion is

4    baseless and disingenuous and should be denied.

5    **II.     FACTS**

6        **A.     Asetek Properly Disclosed its Redesign During Fact Discovery Via 2D
              CAD Drawings, Interrogatory Responses, and Deposition Testimony**

7

8            Asetek has always believed that CoolIT's split flow patents are invalid and not infringed by

9    Asetek's products. E.g., Dkt. 390-4 at 192:5-18. But in the event the jury or the Court finds CoolIT's

10   patents to be valid and infringed, Asetek's primary alternative design is a cold plate with two arrays

11   of microchannels separated by a vertical gap between them, as shown in Asetek's 2D CAD drawing

12   of its redesign shown at left below (*id*. 194:11-195:21):

13

14                                       

15

16

17

18                                                           **(b) Split-flow
                                                                 arrangement**

19

20           Top view of Asetek's proposed redesign            Kandlikar Fig. 7(b) (Prior Art) (Ex. A)
             ASE-CLT00054035 (Dkt. 390-7)

21

22   This is the same configuration as prior art Kandlikar Figure 7(b) shown at above right. Ex. A at 9.

23   (Asetek's redesign is a "silver-bullet" redesign because CoolIT cannot plausibly contend that it

24   infringes CoolIT's asserted patent claims, and any attempt by CoolIT to assert infringement under

25   the doctrine of equivalents will invalidate CoolIT's patent claims under the doctrine of ensnarement

26   because Asetek's design implements the prior art Kandlikar design, as explained more fully in the

27   Argument section below.)

28

During fact discovery, Asetek disclosed 2D CAD drawings of its alternative design, including the drawing shown above, which Defendants' motion fails to mention. And at Defendants' fact deposition of Asetek's Rule 30(b)(6) witness on its redesign, defense counsel marked these 2D CAD redesign drawings as deposition exhibits, and Asetek's designated witness answered their questions about Asetek's redesign (another fact not mentioned in Defendants' motion). More specifically, on June 4, 2021, and in response to CoolIT's Interrogatory No. 15 regarding Asetek's alternative designs, Asetek produced and identified pursuant to Fed. R. Civ. P. 33(d) a 2D CAD drawing showing a side view of a cold plate having two arrays of microchannels separated by a gap (the same configuration as Kandlikar Figure 7(b)).  Dkt. 390-3 at 2 (identifying 2D CAD Bates stamped ASE-CLT00046614 (Dkt. 390-6), later marked as Dep. Ex. 185 to Dkt. 390-4.). Without any request for more information from CoolIT, Asetek served a second supplemental response to Interrogatory No. 15 during fact discovery (on August 20, 2021) in which Asetek identified additional 2D CAD drawings that showed top, side, and bottom views of Asetek's redesign pursuant to Rule 33(d). McCauley Decl. ¶10; Dkt. 390-5 at 3 (identifying 2D CAD drawings ASE-CLT00054033-42; Dkt. 390-7 (Ex. 186 to Dkt. 390-4). These 2D CAD drawings showed top, side, and bottom of Asetek's redesign, as shown below:



1    *See* Dkt. 390-7 (Ex. 186 to Dkt. 390-4) at ASE-CLT00054033-39.

2        Defendants' counsel never complained during fact or expert discovery that they did not

3 understand these 2D CAD drawings of Asetek's redesign produced during fact discovery, or that

4 they needed 3D CADs or any other additional information to understand Asetek's redesign.

5 McCauley Decl. ¶11; Defendants' counsel marked and used these same 2D CAD drawings as

6 deposition Exhibits 185 and 186 when they deposed Asetek's Rule 30(b)(6) witness on its redesign,

7 Asetek's CEO and inventor, Andre Eriksen. Dkts. 390-6 and 390-7 (Exs. 185 and 186 to Dkt. 390-

8 4). Using those exhibits, they questioned Mr. Eriksen about Asetek's redesign during his deposition,

9 and Mr. Eriksen explained a number of points, including:

10               •  Asetek believes that CoolIT's split flow patents are invalid and not infringed by

11                  Asetek's products.  Dkt. 390-4 at 192:6-18.

12               •  But nevertheless, because there is a risk of "the verdict not going your way," Mr.

13                  Eriksen instructed his team to have a "Plan B" alternative design, which is shown in

14                  the 2D CAD drawings produced during fact discovery and shown above, which

15                  were marked as deposition Exhibits 185 and 186.  (Dkt. 390-4 at 192:6-18, 195:14-

16                  21 (marking ASE-CLT00046614 and ASE-CLT00054033-42 as deposition Exhibits

17                  185 and 186, respectively).

18               •  Mr. Eriksen explained Asetek's alternative design in Exhibits 185 and 186 as "a

19                  design that is non split-flow, so that if we should lose in court, then we have

20                  something we can carry on with." Dkt. 390-4 at 194:23-25.

21               •  Mr. Eriksen testified that Asetek's alternative design in Exhibits 185 and 186

22                  achieves the same performance levels as the Asetek Gen 4, 5, 6 and 7 products

23                  accused of infringement in this action, as shown by Asetek simulations or tests (both

24                  of which he testified are reliable).  Dkt. 390-4 at 198:1-199:1.

25               •  Mr. Eriksen testified that the alternative design in Exhibits 185 and 186 would be

26                  acceptable to Asetek's customers because they have never cared or asked about the

27                  cold plate in Asetek's products over the last twenty years.  "That I can tell you with

28                  hundred percent certainty that they would [find it acceptable], because our

customers do not ask us about the cold plate. They don't care, as I already told you earlier. They care about the package, they care about the value proposition of the product; they do not care at all about the cold plate. In fact, I don't remember ever, in the 20 years history of Asetek, I have one customer asking about the cold plate. So that is absolutely a hundred percent sure of that. If we put that in a product and the performance is acceptable to us, it will sell." Dkt. 390-4 at 200:20-201:12.

- At the time of his deposition, Asetek's alternative design in Exhibits 185 and 186 was a "work in process." Dkt. 390-4 at 200:5-8. He testified that Asetek's cold plate redesign work was done in-house at Asetek, and thus had minimal cost,  "because the cold plate itself, it doesn't really vary a lot in cost, so there's no -- you know, there's not really a big cost to moving from one cold plate to the other." *Id*. 201:15-202:5.

During that deposition of Mr. Eriksen on August 25, 2021, Defendants' counsel asked who created the 2D CAD alternative design in deposition Exhibits 185 and 186, and when it was created. Dkt. 390-4 at 196:13-197:6. These were not specific Rule 30(b)(6) deposition topics, and Mr. Eriksen testified that the designs were made by someone in Asetek's thermal department, but he did know precisely who or when. *Id*. CoolIT's counsel told Asetek's counsel during the deposition that they would like that information. *Id*. Asetek's counsel responded he would take those requests under advisement (*id*.), and Asetek answered them in a supplemental interrogatory response less than one week later, *i.e.*, on August 31, 2021.[1] Notably for purposes of this motion, Defendants' counsel did

---

[1] In Asetek's fourth supplemental response to Interrogatory No. 3 (Dkt. 390-9 at 14:25-15:3), which was served less than one week after Mr. Eriksen's deposition and on the last day of fact discovery, Asetek explained, among other things, that:

"This alternative design was created by Anders H. Saksager, Senior Specialist - Global R&D in approximately 20 hours. It was then simulated by Mahesh Khatiwada, Thermal Mechanical Engineer - Global R&D in approximately 20-30 hours, the results of which are shown in ASECLT00054056 pursuant to Rule 33(d). Mr. Saksager created this design within the last several months (in approximately the second quarter of 2021) but the design was readily available in 2019 and before, and there is no technological or other reason that Asetek could not have implemented them in 2019 or before." *Id*.

ASETEK'S OPPOSITION TO DEFS' MOTION TO STRIKE ASETEK'S
LATE-DISCLOSED ALLEGED DESIGN-AROUNDS
CASE NO. 3:19-cv-00410-EMC

1   not ask Mr. Eriksen about any 3D CAD drawings of Asetek's redesign, nor did he ask that Asetek's

2   counsel follow up and produce 3D CAD drawings (as he had for the further information he wanted

3   about the 2D CAD drawings). *See* Dkt. 390-4 at 196:13-197:6. He did not ask Asetek's counsel to

4   provide a more precise estimate of the low cost to Asetek for its redesign. *Id*.

5          As mentioned, Asetek's redesigned cold plate with two microchannel arrays separated by a

6   gap is a "silver bullet" because CoolIT cannot reasonably contend that it infringes any of CoolIT's

7   asserted patent claims. In the window between Mr. Eriksen's deposition and the close of fact

8   discovery, Asetek also identified some simple modifications to the gasket (which sits on top of the

9   cold plate) that would also prevent CoolIT from asserting infringement of some of the asserted

10  claims (McCauley Decl. ¶12), and these were also disclosed Asetek's supplemental response to

11  Interrogatory No. 3 served on August 31, 2021:

12          Asetek could also easily modify the gasket that sits atop and seals the microchannels
           in its Generation 4, 5, 6, and 7 products. That is, Asetek could easily square off the angled
13         portion of the gasket at the position(s) indicated by red circles in the photos below (photos
           copied from CoolIT's second amended infringement contentions). For Generation 5, 6, and 7
14         products, Asetek could also easily move the outlet ports of the outlet headers (shown in blue
           circles below) from near the outermost fins to a central location of the outlet headers (near
15         the central microchannels). Both of these modifications would only involve small
16         adjustments of the gasket over the microchannels

17

18

19                                  

20

21

22

23                                  

24

25

26

27

28                . . . .

1
2
　　　　All of the above alternative designs were readily available in 2019 and before, and
there is no technological or other reason that Asetek could not have implemented them in
2019 or before.

3  Dkt. 390-9 at 15:4-16:7. These minor changes to the gaskets were conceptual at that point in time;

4  no design drawings or CADs had been created as of August 31, 2021, the last day of fact discovery.

5  Ex. H at ¶ 7. Asetek's CADs for its gasket redesigns were not ready until on or about November 19,

6  2021. *Id*. These were provided to Defendants on December 8, 2021. McCauley Decl. ¶13,

7  　　　　Defendants' counsel never complained that they did not understand Asetek's redesigns or

8  supplemental responses to Interrogatory Nos. 3 or 15 during fact or expert discovery, nor did they

9  claim that they needed any additional documents or CADs to understand them.  McCauley Decl.

10  ¶14.[2]

11
12
### B.  Defendants' Expert on CoolIT's Patents, Dr. Pokharna, Deliberately Chose Not to Consider or Offer Opinions About Asetek's Redesign or 2D CADs in His Expert Report

13  　　　　CoolIT has two technical experts in this case, one for Asetek's patents (Dr. Abraham), one

14  for CoolIT's patents (Dr. Pokharna). Dr. Pokharna served his opening report on Asetek's alleged

15  infringement of CoolIT's patents on September 16, 2021. The Court extended the opening date for

16  expert reports another six weeks to November 3, 2021 (Dkt. 325), and Dr. Pokharna served a

17  supplemental infringement report on that date as well. Ex. B.  Although Dr. Pokharna's report states

18  that he considered Asetek's interrogatory responses and the Eriksen deposition testimony in his list

19  of materials considered (Ex. B at Appendix B "List of Materials Considered"), his infringement

20  report did not mention, much less discuss or evaluate, the alternative designs that CoolIT requested

21  in its Interrogatory Nos. 3 and 15, and which Asetek had disclosed during fact discovery as

22  discussed above. *See id.*

23
24
25
26
27
28

_____

[2] Asetek's responses to CoolITs Interrogatory Nos. 15 and 3 also described another non-infringing alternative, a single microchannel array with no split flow (described as the "single pass" configuration in Kandlikar Figure 7(a)), which is used in a Cooler Master product that CoolIT identified in its own analysis of market competitors. Dkt. 390 at 3, Dkt. 390-9 at 14-16.  Although that alternative is also an acceptable non-infringing design that was available at the relevant time, Dr. Stein did not simulate it, and it is not challenged in Defendants' motion to strike, so it will not be further discussed in this opposition.

1    On December 8, 2021, Dr. Pokharna served a rebuttal report (responding to Asetek's

2  invalidity report against the CoolIT's patents). Ex. C. Dr. Pokharna's report includes a list of

3  materials considered that omits Asetek's responses to CoolIT's interrogatories, but does cite the

4  August 25, 2021 transcript and exhibits of Asetek's Mr. Eriksen's deposition, which includes

5  Asetek's 2D CAD redesign drawings produced in discovery (deposition Exhibits 185 and 186).  Ex.

6  D at 2.  In that December 8 report, Dr. Pokharna acknowledged that he understands that Asetek's

7  redesign is based on the prior art Kandlikar Figure 7(b) (Ex. C,  ¶47), but his report did not even

8  mention Asetek's 2D CAD redesign drawings that had been disclosed more than three months prior

9  during fact discovery, nor did he discuss the merits of Asetek's redesign with two microchannel

10  arrays separated by a gap. *See* Ex. C. Instead, he attempted to duck all of that and dropped a footnote

11  in which purported to "reserve the right" to comment on Asetek's redesign at a future time. *Id*., ¶47

12  and n.5.

13  **C.    Dr. Stein's Simulations of Asetek's Redesign Described in His Rebuttal Expert Report**

14

15    In response to Dr. Pokharna's November 3, 2021 expert report alleging infringement of

16  CoolIT's patents, Asetek served a rebuttal expert report by Dr. Carl-Fredrik Stein on December 8,

17  2021, in which Dr. Stein opined that Asetek's redesign had acceptable thermal performance. Dkt.

18  390-11. Dr. Stein is a supremely qualified expert on computer simulations using Computational

19  Fluid Dynamics (CFD) and Finite Element Analyses and pump technology. His simulation work is

20  relied upon in the real world by, for example, nuclear power plants and municipal water companies

21  who trust his simulations to make real-world decisions about how and whether to repair and

22  maintain nuclear power plants, municipal water systems, and many other applications. Ex. E at

23  256:13-262:20.

24    Dr. Stein's report explained his detailed, state-of-the-art CFD computer simulations of

25  Asetek's redesign for each of the accused product generations, and his results showed that the

26  thermal performance was not only acceptable, in most instances it was actually superior to Asetek's

27  existing products. Dkt. 390-11.  Dr. Stein used 3D CAD files of Asetek's redesign to perform his

28  simulations, and these 3D CAD files were sent to Defendants' counsel simultaneously with Dr.

Stein's report on December 8, 2021, the date for rebuttal reports.  McCauley Decl. ¶13.

ASETEK'S OPPOSITION TO DEFS' MOTION TO STRIKE ASETEK'S
LATE-DISCLOSED ALLEGED DESIGN-AROUNDS
CASE NO. 3:19-CV-00410-EMC

**D. Defendants' Expert, Dr. Pokharna, Refused to Answer Questions About Whether Asetek's Redesign Does Not Infringe During His Deposition**

Defendants' expert, Dr. Pokharna, was not deposed on his expert reports until January 6 and 10, 2022. At his deposition, he refused to answer any substantive questions about Asetek's redesign, including whether it did not infringe the asserted CoolIT patent claims, as explained below. His testimony on these points was evasive and confusing. He admitted that he had reviewed drawings of Asetek's redesign, and that as a result he had "some understanding" of Asetek's redesign. Ex. F at 94:3-95:4 and 96:22-97:1. He admitted he had compared the "Kandlikar [prior art design] to [the] purported Asetek redesign," and that he had compared "Kandlikar's specific design" to the CoolIT patents, but he refused to opine on whether Asetek's redesign did or did not infringe CoolIT's patents. Ex. F at 96:4-17 ("I am comparing Kandlikar's specific design . . . to CoolIT patents," and "I am comparing Kandliker to purported Asetek redesign, but I am not providing an opinion on Asetek's redesign in the context of CoolIT patents.").

Dr. Pokharna refused to answer whether Asetek's cold plate redesign has two arrays of microchannels that are separated by a gap. Ex. F at 97:2-14. He refused to answer that question even though he testified that Kandlikar Figure 7(b), which he called a schematic and a "cartoon" (*id*. 91:8-13), discloses two microchannel arrays separated by a gap. *Id*. 92:17-96:2. He insisted that it would not be "prudent" for him to opine on whether the Asetek redesign does not infringe, or even whether it has two microchannel arrays separated by a gap, from CAD drawings. *Id*. 94:2-95:4. He claimed that he needed a "manufactured product," and proof that the redesign was "manufacturable," to opine on whether Asetek's alternative design did not infringe CoolIT's patents. *Id*. Dr. Pokharna would not budge from this position even after he admitted he had used CAD drawings to provide his non-infringement opinions for CoolIT's Tamriel design. *Id*. 99:21-24.[3] He also admitted that he had received the 3D CADs of Asetek's redesign with Dr. Stein's report more than one month earlier, but

---

[3] "Q: You based a lot of your opinions about the Tamriel -- or the first iteration of the Tamriel just based on looking at CADs; right?

A. Uh-huh. Right. Right."

Ex. F at 99:21-24.

ASETEK'S OPPOSITION TO DEFS' MOTION TO STRIKE ASETEK'S
LATE-DISCLOSED ALLEGED DESIGN-AROUNDS
CASE NO. 3:19-CV-00410-EMC

1   that he hadn't even opened them for the same reasons (his claim he needed a manufactured product).

2   *Id.*, 93:1-95:4.

3       When Asetek's counsel confronted Dr. Pokharna during his deposition with the above

4   inconsistencies and unreasonable refusal to opine on Asetek's redesign, he simply asserted "I'm not

5   prepared to provide that testimony because I have not really analyzed the redesigned Asetek product

6   . . . for its infringement of the CoolIT patents." Ex. F at 97:2-15. Instead, he testified that "I reserve

7   my right to provide that opinion at a later time." *Id.* 95:23-96:2.

8       **E.    None of Defendants' Experts Analyzed Whether Asetek's Redesign**
        **Infringes the CoolIT Patents**
9

10      None of Defendants' experts addressed Asetek's various evidence or its expert reports that

11  support Asetek's position that its redesign does not infringe the asserted CoolIT patent claims.

12  Defendants' have two technical experts. Dr. Pokharna, their technical expert on the CoolIT patents,

13  refused to opine on that issue as described in the preceding section. Dr. Abraham, their technical

14  expert on Asetek's patents, similarly did not opine on Asetek's redesign and noninfringement

15  position.

16      Nor did Defendants' damages expert, Mr. Hansen, opine on whether Asetek's redesign does

17  not infringe CoolIT patents (which is not surprising because he is not qualified). Instead,

18  Defendants' motion claims that their damages expert supposedly "relied" on the state of Asetek's

19  disclosures of its redesign during fact discovery "to opine that Asetek has not presented any

20  evidence that it would be able to offer commercially acceptable desktop product for sale without

21  utilizing the CoolIT Patents-In-Suit." Dkt. 390-2 at 10. To support that assertion, Mr. Hansen cites

22  an undocumented discussion with Defendants' technical expert on *Asetek's* patents, Dr. Abraham,

23  not their expert on CoolIT's patents, Dr. Pokharna.[4] Mr. Hansen's assertion never addresses contrary

24  evidence that Asetek provided during fact discovery, including (1) Andre Eriksen's testimony that

25  customers would find Asetek's redesigned cold plate acceptable (described above), and (2) Asetek's

26  Mahesh Khatiwada documented performed simulations showing acceptable performance as

27

28

___

[4] *See* Dkt. 390-10 at ¶¶47 and 49, and n. 73, n.74, and n.80.

ASETEK'S OPPOSITION TO DEFS' MOTION TO STRIKE ASETEK'S
LATE-DISCLOSED ALLEGED DESIGN-AROUNDS
CASE NO. 3:19-CV-00410-EMC

1   documented in ASE-CLT00054056, as explained in Asetek's August 31, 2021 supplemental

2   response to interrogatory No. 3. Dkt. 390-9 at 14:13-15-3. Significantly, Mr. Hansen's damages

3   report does not claim that he discussed Asetek's redesign drawings, non-infringement position, or

4   Kandlikar with either of Defendants' technical experts.

5          In sum, none of Defendants' experts expressed any opinion on Asetek's evidence that its

6   alternative design does not infringe.

7          **F.      Asetek Timely Produced Production Validation Samples to Defendants
                      Soon After They Were Created**

8

9          Production validation samples of Asetek's redesign were made and available for shipment

10  from Asetek's contract manufacturer no earlier than January 26, 2022. Ex. H at ¶ 8. Asetek's counsel

11  learned of this about two weeks later, and on February 15, 2022, Asetek's counsel offered to hand

12  deliver samples to Defendants' counsel's office or make them available for pick up at Asetek's

13  counsel's office (at their option). McCauley Decl. ¶16, Ex. G (RMcCauley email to RChen 2/15/22

14  at 11:28 a.m.).  When Defendants' counsel resisted accepting the physical samples, Asetek's counsel

15  explained that

16         Pursuant to and as required by FRCP 26(e), we are supplementing prior discovery
           responses to keep you apprised of Asetek's ongoing implementation of its
17         redesigns previously disclosed to you during both fact and expert discovery, and
           about which you questioned both Andre Eriksen and David Tuckerman during
18         their depositions. It is hornbook law that 26(e) supplementation is required after
           close of fact and/or expert discovery, and Asetek will rely on its implementation
19         of its redesigns at trial.  Let me know if you have a preference for pick up or
           delivery.
20

21  *Id*. (RMcCauley email to RChen 2/16/22)

22         Defendants' counsel did not respond for a week, then claimed that Asetek's service of the

23  samples was too late because fact discovery had closed, and also contended that the validation

24  samples were adding new redesigns to the case. *Id*. Asetek's counsel disagreed and delivered two

25  product validation samples to Defendants' counsel's office on February 22, 2022. *Id*. Asetek's

26  counsel further advised via email that the physical samples were only recently created, implemented

27  essentially the same the same two microchannel array redesign that had been disclosed in discovery,

28

1   and were thus entirely proper under Rule 26(e), and that Defendants' and their experts' continued

2   attempts to ignore Asetek's redesign was transparent gamesmanship.[5]

3   **III.   ARGUMENT**

4       **A.    Defendants' Motion Presents an Incomplete and Misleading Version of
            the Facts, and the Actual Facts Completely Undermine Their Claims of
5            Prejudice and Their Motion**

6           Defendants' motion deliberately omits many facts that belie their false narrative that

7   (1) Asetek and its corporate witness, Mr. Eriksen, supposedly hid the ball regarding Asetek's

8   redesign during fact and expert discovery, and (2) that their expert was supposedly prejudiced by not

9   receiving CADs during fact discovery. The true and complete facts show that Asetek disclosed

10  CADs of its redesign during fact discovery, which Defendants ignore in their motion, and which

11  their expert ignored during fact and expert discovery. This was a tactical decision by Defendants; it

12  was part of their scheme to avoid having to accuse Asetek's redesign of infringement, because doing

13  so would put them square between the horns of an ensnarement dilemma they are desperately trying

14  avoid. *See Wilson Sporting Goods Co. v. David Geoffrey & Assoc.*, 904 F.2d 677, 687 (Fed. Cir.

15  1990) (overruled on other grounds in *Cardinal Chem. Co. v. Morton Int'l,* 508 U.S. 83, n.12 (1993)).

16  As part of their scheme, Dr. Pokharna took the implausible position that he could not opine on

17  whether Asetek's redesign does not infringe CoolIT's patents based on CAD drawings (either the 2D

18  CADs produced in fact discovery, or the 3D CADs produced more than one month before his

19

_____

20  [5] The email from Asetek's counsel stated:

21          Your email is inaccurate in many respects, but especially your suggestion that Asetek is
22          adding a new design around to the case, which is incorrect.  As you know, Asetek's
            redesigns, which are simple and straightforward, were disclosed during fact discovery.
23          Indeed, you questioned two witnesses (one fact, one expert) about them in depositions.
            Rather than address Asetek's redesigns on the merits, which your experts could have and
24          should have done, you instead had your experts bury their heads in the sand and not opine on
            the redesigns in their reports or depositions.  The physical samples of Asetek's redesigns,
25          which implement substantially the same redesigns as the 2D CAD drawings and CADs
26          produced during fact and expert discovery, were only recently created and were timely and
            properly produced under Rule 26(e).

27          In short, you have no basis to complain, and your gamesmanship is transparent.

28  Ex. G (RMcCauley email to RChen 2/25/22).

1    deposition). Defendant's motion fails to mention this dubious testimony by their expert. This

2    testimony completely belies their argument that their expert was supposedly prejudiced by not

3    receiving earlier the 3D CADs that he refused to consider—after already refusing to consider the 2D

4    CADs produced earlier—because their expert supposedly could not offer any opinion on whether

5    Asetek's design around does not infringe without having actual manufactured products.  Defendants'

6    argument and claims of prejudice are a false house of cards that does not withstand any amount of

7    scrutiny.

8            Defendants' refusal to consider Asetek's redesign has been part of their calculated and

9    improper scheme to avoid an ensnarement dilemma, and it should not be countenanced by this

10   Court. Asetek's experts had no problem using the 2D and 3D CADs to opine that Asetek's redesign

11   does not infringe, and Dr. Pokharna could have and should have done the same.  And if Defendants

12   truly believed that the 2D CADs they received during fact discovery were insufficient for their

13   purposes, they could have and should have requested 3D CADs, much as they have often requested

14   additional and follow up information on other issues during the course of this case.  But Defendants

15   instead deliberately put their heads in the sand and bided their time with a pre-planned motion to

16   strike in the hopes of avoiding their ensnarement dilemma.  The Courts in this district will not permit

17   or reward such ostrich-like behavior; instead the Courts require a party to request additional

18   information if needed, and they deny tactical motions to strike like Defendants' here, as discussed

19   below.

20           **B.      The Courts In This District Will Not Permit a Party to Play the Ostrich
21                     and Later Move to Strike; If Defendants Truly Needed More Than
                       Asetek's 2D CADs Produced During Fact Discovery, They Needed to Ask
22                     and Had Many Months to Do So**

23           The Courts in this district do not permit a party to play "the (apocryphal) ostrich, burying its

24   head in the sand until it was safe to raise the issue" by raising a motion to strike after close of fact

25   and expert discovery, which is exactly what Defendants have done here. *See Illumina, Inc. v. BGI*

26   *Genomics Co., Ltd.,* No. 19-cv-03770-WHO, 2021 WL 4126005, at *7 (N.D. Cal. Sept. 9. 2021)

27   (citing *Finjan, Inc. v. Blue Coat Sys., Inc.*, No. 13-CV-03999-BLF, 2015 WL 3640694, at *2 (N.D.

28   Cal. June 11, 2015)); *see also* id., quoting *Verinata Health, Inc. v. Sequenom, Inc.*, No. 12-CV-

1   00865-SI, 2014 WL 4100638, at *3 (N.D. Cal. Aug. 20, 2014) (Judge Illston held that "if the claim

2   charts caused [the plaintiff] to suffer any confusion as to what particular obviousness combinations

3   were being asserted, then the proper recourse would have been for [the plaintiff] to compel [the

4   defendant] to amend its invalidity contentions, not for [the plaintiff] to wait until expert discovery

5   and then move to strike the expert report.").

6          In the event an apocryphal ostrich (like Defendants here) moves to strike something it should

7   have tried to clear up during discovery, then the ostrich's motion to strike should be denied as

8   untimely, as Judge Orrick ruled in *Illumina*.  In that case, Plaintiff Illumina filed a motion to strike

9   two theories in an expert report as allegedly untimely, contending they were not previously raised in

10  contentions or otherwise. Illumina did not file its motion to strike until after close of fact and expert

11  discovery, and prior to that time, Illumina "never sought supplemental briefing or clarification nor

12  moved to compel BGI to amend its contentions." *See Illumina*, 2021 WL 4126005, at *8.  Illumina

13  waited until "a few weeks after the close of expert discovery to file its motion to strike, burying its

14  head in the sand until it was safe to raise the issue of the [allegedly new] theories with the court."

15  *Illumina*, 2021 WL 4126005, at *8 (citing *Blue Coat*, 2015 WL 3640694, at *5). Judge Orrick ruled

16  that under these circumstances, Illumina's motion to strike was "untimely," and he refused to strike

17  the two allegedly new theories from the expert's report.  *Id.*; *see also Blue Coat*, 2015 WL 3640694,

18  at *5; *Verinata Health*, 2014 WL 4100638, at *6.

19         The same is true here, and Defendants' motion should be denied for the same reasons as in

20  *Illumina, Blue Coat*, and *Verinata Health.* Asetek provided 2D CAD drawings of its redesign during

21  fact discovery with no complaint, requests for 3D CADs, or requests for any additional information

22  or details during discovery. Defense counsel marked Asetek's 2D CADs as deposition exhibits and

23  questioned Asetek's 30(b)(6) witness, Andre Eriksen, about them without complaint or requesting

24  additional information.

25         If Defendants truly thought the 2D CAD drawings produced in discovery were not sufficient,

26  and that they needed 3D CADs or more for Dr. Pokharna to understand and opine on the redesign,

27  then it was incumbent on them to ask for the 3D CADs under *Illumina, Blue Coat*, and *Verinata*

28  *Health*. Indeed, that was what Asetek's counsel did early in this case when it did not understand

vague mappings and annotations in CoolIT's infringement contentions. Asetek's counsel requested a meeting to discuss the annotations.  McCauley Decl. ¶17. At that meeting, CoolIT's attorneys better explained their annotations and positions, and the issues were resolved without any need for motion practice. *Id*. And Defendants' counsel have not been shy about asking for additional information when they believed they needed or were entitled to it. Quite the contrary, in fact. As explained above, when Mr. Eriksen testified that he did not know who specifically prepared the 2D CAD drawings, defense counsel asked Asetek's counsel to follow up with that information, and Asetek's counsel provided it in a supplemental interrogatory response less than a week later. Dkt. 392-6. [Asetek 4th Supp response to rog 3 8/31/21]. Similarly, after Asetek's expert Dr. Stein produced his opening expert report regarding pump impeller designs on September 16, 2021, Defendants counsel contacted Asetek's counsel and insisted that Asetek produce the CADs and simulation files that Dr. Stein used for his analyses.  McCauley Decl. ¶21.  Counsel for the parties met and conferred, agreed upon parameters, Asetek's counsel provided those files, and Defendants' expert Dr. Abraham used those files for purposes of preparing his rebuttal expert report. *Id*.

Thus, Defendants' counsel have been assertive about asking for further discovery when they think they need or are entitled to it in this action, and Asetek has been reasonable in providing such information when requested. The parties' course of dealing stands in stark contrast to Defendants' calculated head-in-the sand tactic over Asetek's redesigns, which exposes their ulterior motives. Defendants' failure to ask for additional information during fact and expert discovery, combined with their motion to strike, was a ploy driven by their desire to avoid providing opinions that would lead to ensnarement problems for CoolIT's patents. The Court should recognize these tactical ploys for what they are: Defendants are behaving exactly like the apocryphal ostriches whose motions to strike were denied as untimely and inappropriate by Judges Orrick, Freeman and Illston in *Illumina, Blue Coat*, and *Verinata Health.* And even if there were any merit to any of Defendants' arguments, Asetek's disclosures of its redesign were both justified and harmless, either of which also warrants denial of their motion under Rule 37. Fed. R. Civ. P. 37(c)(1) (court should not exclude evidence under Rule 37 if nondisclosure was justified or harmless). *Yeti by Molly, Ltc. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) ("Two express exceptions ameliorate the harshness of

1   [potential exclusion under ]Rule 37(c)(1): The information may be introduced if the parties' failure to

2   disclose the required information is substantially justified or harmless. Fed. R. Civ. P. 37(c)(1).")

3   Asetek's actions were justified given that it disclosed its 2D CADs in discovery without complaint

4   or request for additional information, and they were harmless in view of Dr. Pokharna's testimony

5   that he could not use CAD files for his opinion anyway (mor on this below), that he required a

6   product that did not exist at that time.

7          And given Defendants' head-in-the-sand tactics in this case, they are in no position to be

8   demanding that they be permitted further time to depose Asetek witnesses regarding its design

9   around, or to serve additional expert reports.  But if the Court is inclined to allow further discovery

10  on any of these issues, it should not permit further depositions of Mr. Eriksen or Asetek witnesses,

11  and should allow Asetek to depose Defendants' experts on any additional reports they may issue

12  regarding Asetek's redesigns.

13          **C.**     **Asetek's Redesign is Simple to Understand and Dr. Pokharna's Claim He
                        Couldn't Understand It From Asetek's 2D CADs is Belied by His
14                      Reliance on the Simple Schematic in the Kandlikar Reference**

15          Asetek's redesigned cold plate, which implements same two microchannel array

16  configuration as Kandlikar Figure 7(b), is simple to understand. Dr. Pokharna had no problem

17  comparing Kandlikar Figure 7(b) to CoolIT's patent claims, or to Asetek's redesign.  Ex. F at 96:4-

18  17 ("I am comparing Kandlikar's specific design . . . to CoolIT patents," and "I am comparing

19  Kandliker to purported Asetek redesign, but I am not providing an opinion on Asetek's redesign in

20  the context of CoolIT patents.").

21          Dr. Pokharna never claimed he needed more detail, 3D CADs, or a physical product to

22  understand Kandlikar Figure 7(b) when comparing it to CoolIT's claims and/or Asetek's redesign.

23  Yet Dr. Pokharna and the defense take the literally incredible position that they cannot understand

24  Asetek's 2D CAD drawings produced in discovery, even though they are more detailed than

25  Kandlikar Figure 7(b), which Dr. Kandlikar referred to as a mere schematic and a "cartoon."[6] Dr.

26  _____

27          [6] Defendants' argument that Asetek's redesign 2D CAD drawings did not include any
    "dimensions, measurements, functions, labels or other explanations" (Dkt 391 at 11) is laid bare by
28  the fact that the same is true for Kandlikar Figure 7(b), which Dr. Pokharna had no problem

(continued...)

1   Pokharna and the defense are taking this incredible and inconsistent position because arguing

2   infringement of Asetek's redesign, which practices the prior art and lacks the continuous channels

3   which CoolIT's Dr. Pokharna has admitted are required by CoolIT's patent claims,[7] will likely

4   invalidate CoolIT's patent claims under the ensnarement doctrine. The Court should not enable

5   CoolIT's unfair and litigation-driven tactics.

6 7   ### D.   Defendants' Argument That Asetek was Obligated to Complete its Redesign Before Close of Discovery is Contrary to Rule 26(e) and Has No Legal Support

8   Defendants' cite no authority for their argument that Asetek was supposedly obligated to

9   complete its redesign before close of fact discovery, and/or that Asetek cannot supplement its

10   discovery responses after close of fact discovery with the 3D CADs and physical samples.  These

11   arguments are legally erroneous.  For example, Rule 26(e) not only permits supplementation of

12   discovery responses after the fact discovery cut-off, it requires it. *See, e.g.*, *Finjan, Inc. v.*

13   *Bitdefender Inc.*, No. 17-cv-04790-HSG (TSH), 2019 WL 3564443 at *2 (N.D. Cal. Aug. 6, 2019)

14   (citing *Woods v. Google, Inc.*, 2014 WL 1321007, at *4 (N.D. Cal. Mar. 28, 2014) ("The Court can

15   definitively state that the Rule 26(e) duty to supplement or correct incomplete or incorrect responses

16   does, in fact, extend beyond the discovery cutoff date.") and *Hernandez v. Polanco Enters., Inc.*, 19

17   F. Supp. 3d 918, 933 (N.D. Cal. 2013) ("Federal Rule of Civil Procedure 26(e) places litigants under

18   an affirmative duty to supplement non-deposition discovery responses, even after the discovery cut-

19   off date.")); *see also Baxter Healthcare Corp. v. Frensenius Med. Care Holding, Inc.*, No. C 07–

20   1359 PJH (JL), 2009 WL 904152,*3 (N.D. Cal. Apr. 2, 2009) ("Given the complexity of the issues

21   in this case and the flurry of activity toward the end of fact discovery, the Court finds that Fresenius

22   had a substantial justification for supplementing its answer after the close of fact discovery and

23   hereby DENIES Plaintiff's motion.")

24

25

26   understanding, as well as the fact that Defendants never asked for any more detailed information
    concerning the redesigns during fact or expert discovery.

27

28   [7] Ex. F at 89:1-91:17 (admitting CoolIT's asserted claims require continuous microchannels, and that Kandlikar Figure 7(b) is different in that it has two separate arrays of microchannels, separated by a gap or header).

1   As explained in the statement of facts above, Asetek duly and timely produced its CADs and

2   product samples as they developed over time, in full compliance with Rule 26(e). *Id.*; *see also*

3   *Airborne Athletics, Inc. v. Shoot-A-Way, Inc.*, No. CIV. 10-3785 SRN/JJK, 2012 WL 3612035, at *2,

4   *6 (D. Minn. Aug. 21, 2012) (disclosure of redesign after close of discovery was appropriate under

5   Rule 26(e); denying motion in limine to exclude new redesign products from trial).  Defendants'

6   allegations, and Dr. Pokharna's insistence that he could not opine on Asetek's redesign until he

7   received a manufactured product sample, are also undermined by the fact that Defendants did not

8   produce a manufactured product sample of their Tamriel redesign until more than one month after

9   close of fact discovery. McCauley Decl. ¶18. Defendants themselves thus did not supplement their

10  redesign disclosures with a product sample until after close of fact discovery under Rule 26(e), just

11  as Asetek has done.  Asetek did not move to strike and Defendants' motion is baseless.

12      It is also highly likely that before trial in March 2023, Asetek will have already changed over

13  to its redesigns in its products, which did not exist during fact or expert discovery and will

14  undoubtedly be admissible under Rule 26(e). And in that event, the Stein report now under attack

15  may be unnecessary or less important, because Asetek's sales of its redesigns will prove the same

16  point as Dr. Stein's simulations and report, i.e., that Asetek's redesigns are commercially acceptable

17  alternatives to CoolIT's split flow patent claims.

18      All of the cases cited in Defendants' motion are inapposite for a variety of reasons, starting

19  with the fact that they all addressed preexisting discovery not disclosed in any form during fact

20  discovery, which is not the case here. *See Apple v. Samsung Elecs.*, No. 11-CV-01846-LHK, 2012

21  WL 3155574 (N.D. Cal. Aug. 2, 2012); *Asia Vital Components v. Asetek Danmark A/S*, 377 F. Supp.

22  3d 990 (N.D. Cal. 2019); *Elbit Sys. Land & C4I v. Hughes Network Sys.*, No. 2:15-CV-00037-RWS-

23  RSP, 2017 WL 2651618 (E.D. Tex. June 20, 2017); *Elliott v. Google*, 860 F. 3d 1151 (9th Cir.

24  2017); *Ingenco Holdings v. Ace Am. Ins.*,  921 F.3d 803 (9th Cir. 2019); *Innogenetics, N.V. v. Abbott

25  Lab'ys*, 512 F.3d 1363 (Fed. Cir. 2008); *In re Koninklijke Philips Pat. Litig.*, No. 18-cv-01885-HSG,

26  2020 WL 7398647 (N.D. Cal. Apr. 13, 2020); *MLC Intell. Prop. v. Micron Tech.*, 10 F. 4th 1358

27  (Fed. Cir. 2021); *MLC Intell. Prop. v. Micron Tech.*, No. 14-cv-03657-SI, 2019 WL 2863585 (N.D.

28  Cal. July 2, 2019)).

1

2

### E.   Defendants' Argument That Dr. Pokharna was Prejudiced By Not Having Earlier Access to CADs or Ansys SpaceClaim Files is Baseless

3      Defendants ignore the record, not to mention their duty of candor, in arguing that they were

4   prejudiced because during fact discovery Asetek had "not produced any detailed evidence describing

5   the alleged design-arounds, for example the CAD and Ansys SpaceClaim design files." Dkt. 391 at

6   12. Their assertion about CAD files belied and contradicted by Dr. Pokharna's refusal to consider

7   CAD files. He essentially ignored the 2D CADs produced in discovery, and didn't even open the 3D

8   CADs he received more than one month before his deposition, claiming that it would not have been

9   "prudent" for him to rely on CADs to provide an opinion on Asetek's redesigns, and that he needed

10   a manufactured product. *Id*. 94:2-95:4. Defendants argument about CADs should be summarily

11   rejected based on their own expert's testimony that CAD files were not useful for his analysis, that

12   he could only use an actual product sample.  It should also be rejected based on Defendant's failure

13   to request 3D CADs in addition to the 2D CADs produced in discovery, as explained above.

14      And although Dr. Pokharna's assertion that he could not opine based on CADs is absurd, it

15   also betrays more hypocrisy by the defense because CoolIT did not provide Asetek with

16   manufactured product samples of its Tamriel redesign until October 2021, more than one month

17   after the fact discovery cutoff. McCauley Decl. ¶18.

18      Defendants' arguments about not receiving Ansys SpaceClaim files before receipt of Dr.

19   Stein's report on December 8, 2021 are even more groundless.  The Ansys SpaceClaim files were

20   created by Dr. Stein, as part of his expert analysis conducted after the close of fact discovery, not by

21   Asetek. Thus, Asetek did not have the Ansys SpaceClaim files to produce during fact discovery.

22   And even though they were produced to Dr. Pokharna more than one month before his deposition, he

23   ignored them anyway for tactical reasons. This argument should also be rejected because Defendants

24   did not request Ansys SpaceClaim files in discovery, and if they thought they needed them during

25   fact discovery, they should have asked, as explained above.

26   ### F.   Defendants' Assertion that the Cold Plate CADs and Physical Sample Use Different Designs is Unsupported and Erroneous

27      Defendants' motion baldly asserts that Asetek's redesign 2D CAD drawings produced in

28   discovery use a different design than in the CADs used by Dr. Stein and the physical sample

1    produced to Defendants' counsel.  Dkt. 391 at 10, 11. This argument is not only unsupported, it is

2    groundless. Tellingly, even though Defendants have had the redesign 3D CADs for five months, and

3    even though they have had the physical samples for nearly two months, they make no attempt to

4    illustrate or support their assertion about alleged differences in their motion. In fact, the 2D and 3D

5    CAD drawings and physical samples all implement the two microchannel array configuration

6    disclosed in Kandlikar Figure 7(b), and the 3D CADs and physical samples are not materially

7    different from the 2D CADs disclosed during fact discovery. McCauley Decl. ¶19; *compare* 2D

8    CAD drawing ASE-CLT00054033 shown above, to 2D image of 3D CAD in the Stein report cited

9    in Defendants Motion at 10, i.e., Dkt. 391-13.[8]

10   **IV.    CONCLUSION**

11        For the reasons explained above, the Court should deny Defendants' motion to strike the

12   Stein report on design arounds; paragraphs 76-78, first portion of 79, and 80-82 of the Tuckerman

13   Non-Infringement Report; and the first sentence of paragraph 40 of the Mody Rebuttal Report.

14   Defendants' have no basis to request additional depositions given their deliberate head-in-the-sand

15   tactics with Asetek's redesign.  But if the Court is inclined to give them any further deposition time,

16   it should be strictly limited in time and scope.

17

18   Dated: April 14, 2022                    FINNEGAN, HENDERSON, FARABOW,
                                                GARRETT & DUNNER, LLP
19

20                                          By:    */s/ Robert F. McCauley*
                                                Robert F. McCauley
21                                              Attorneys for Plaintiff and Counterdefendant
                                                ASETEK DANMARK A/S and
22                                              Counterdefendant ASETEK USA, INC.

23   _____

24        [8] Defendants' argument includes the following statement, the point of which Asetek does not
     understand: "In fact, if anything, the purported design-around cited by the interrogatory responses
25   had features that look similar to the 'Sigrid *original*' (emphasis added), with is Asetek's 'Gen 7
     original,' illustrated in the Stein report and which is included in the *currently accused Asetek
26   products*, not in any design around." Dkt. 391 at 10. It is not surprising that the original Sigrid/Gen
     7 has features similar to the redesigned Sigrid/Gen 7; although the single microchannel array in the
27   original was changed to two separate microchannel arrays in the redesign (as shown in the excerpt of
     the Stein report cited by Defendants), the two designs are otherwise substantially the same.

28