COOLEY LLP
HEIDI L. KEEFE (178960)
(hkeefe@cooley.com)
REUBEN H. CHEN (228725)
(rchen@cooley.com)
DANIEL J. KNAUSS (267414)
(dknauss@cooley.com)
ALEXANDRA LEEPER (307310)
(aleeper@cooley.com)
DEEPA KANNAPPAN (313573)
(dkannappan@cooley.com)
3175 Hanover Street
Palo Alto, CA 94304-1130
Telephone: (650) 843-5000
Facsimile: (650) 849-7400

DUSTIN M. KNIGHT (*pro hac vice*)
(dknight@cooley.com)
11951 Freedom Drive, 16th Floor
Reston, VA 20190
Telephone: (703) 456-8000
Facsimile: (703) 456-8100

GREENBERG TRAURIG, LLP
KYLE D. CHEN (SBN 239501)
kchen@gtlaw.com
1900 University, Avenue, 5th Floor
East Palo Alto, CA 94304
Telephone: (650) 289-7887
Facsimile: (650) 328-8508

Attorneys for Defendant and Counter-claimant COOLIT SYSTEMS, INC. and Defendants CORSAIR GAMING, INC. and CORSAIR MEMORY, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

ASETEK DANMARK A/S,

Plaintiff and Counter-defendant,

v.

COOLIT SYSTEMS, INC.,

Defendant and Counter-claimant,

CORSAIR GAMING, INC. and CORSAIR MEMORY, INC.,

Defendants.

Case No. 3:19-cv-00410-EMC

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO STRIKE EXHIBIT 275**

DATE: MAY 5, 2022
TIME: 1:30 PM
LOCATION: COURTROOM 5, 17TH FLOOR
JUDGE: HON. EDWARD M. CHEN

PUBLIC/REDACTED VERSION OF DOCUMENT FILED UNDER SEAL

## TABLE OF CONTENTS

**Page**

REPLY MEMORANDUM OF POINTS AND AUTHORITIES .................... 1

I. **INTRODUCTION** .................... 1

II. **ARGUMENT** .................... 2

A. Asetek introduction of Exhibit 275 was delinquent because it should have produced Exhibit 275 in response to CoolIT's document requests .................... 2

B. Asetek's introduction of Exhibit 275 was delinquent because it bears the burden of proof on invalidity .................... 3

C. Asetek cannot substantially justify its failure to produce Exhibit 275 .................... 4

D. Asetek's opposition brief confirms that CoolIT will be prejudiced .................... 7

III. **CONCLUSION** .................... 10

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

-i-

CASE NO. 3-19-CV-00410-EMC
DEFENDANTS' REPLY ISO MOTION TO STRIKE
EXHIBIT 275

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Balt. Aircoil Co. v. SPX Cooling Techs. Inc.*,
No. CCB-13-2053, 2016 WL 4426681 (D. Md. Aug. 22, 2016)....7, 9

*Bernstein v. Virgin Am., Inc.*,
No. 15-cv-02277-JST, 2018 WL 6199679 (N.D. Cal. Nov. 28, 2018)....7, 10

*Brown v. Vivint Solar, Inc.*,
No. 8:18-cv-2838-T-24 JSS, 2020 WL 5016898 (M.D. Fla. Aug. 25, 2020)....10

*Cal. Inst. of Tech. v. Broadcom Ltd.*,
No. CV 16-3714-GW(AGRx), 2019 WL 8192255 (C.D. Cal. Aug. 9, 2019)....7, 10

*Cave Consulting Grp., Inc. v. OptumInsight, Inc.*,
No. 15-cv-03424-JCS, 2018 WL 1938555 (N.D. Cal. Apr. 25, 2018)....5, 6

*Elliott v. Google, Inc.*,
860 F.3d 1151 (9th Cir. 2017)....7

*Impax Lab'ys, Inc. v. Aventis Pharms., Inc.*,
545 F.3d 1312 (Fed. Cir. 2008)....3

*Estate of McDermed v. Ford Motor Co.*,
No. 14-cv-2430-CM-TJJ, 2016 WL 1298096 (D. Kan. Apr. 1, 2016)....10

*MLC Intell. Prop., LLC v. Micron Tech., Inc.*,
10 F.4th 1358 (Fed. Cir. 2021)....7

*Sherwood v. BNSF Ry. Co.*,
No. 1:16-cv-00008-EJL-REB, 2018 WL 3340571 (D. Idaho July 6, 2018)....7, 10

*Sportspower Ltd. v. Crowntec Fitness Mfg. Ltd.*,
No. 8:17-cv-02032-JLS-KES, 2020 WL 7347860 (C.D. Cal. Nov. 18, 2020)....5, 6

*Stored Value Sols., Inc. v. Card Activation Techs., Inc.*,
No. 09-495-LPS, 2010 WL 3834457 (D. Del. Sept. 27, 2010)....6

*Syngenta Crop Prot., LLC v. Willowood, LLC*,
No. 1:15-CV-274, 2017 WL 3309699 (M.D.N.C. Aug. 2, 2017)....7, 10

*Zurich Am. Ins. Co. v. Hardin*,
No. 8:14-cv-775-T-23AAS, 2020 WL 1150981 (M.D. Fla. Mar. 10, 2020)....7, 10

**Statutes**

35 U.S.C. § 282....3

## TABLE OF AUTHORITIES
## (continued)

**Page(s)**

**Other Authorities**

Civil L.R. 7-3 ....................................................................................................................4

Fed. R. Civ. P. 26 ...................................................................................................1, 3, 8, 9

Fed. R. Civ. P. 37 ...............................................................................................................3

Fed. R. Evid. 1002 .............................................................................................................8

Fed. R. Evid. 703 ...............................................................................................................9

Pat. L.R. 3-4 ......................................................................................................................4

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

iii.

CASE NO. 3-19-CV-00410-EMC
DEFENDANTS' REPLY ISO MOTION TO STRIKE
EXHIBIT 275

## REPLY MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Exhibit 275 was unequivocally called for in discovery by CoolIT's request for all documents about prior art or validity and "All Documents concerning the Antarctica 'Water Chill' Liquid Cooling Kit as it existed before August 9, 2007." (*See* Ex. 6, Req. for Prod. No. 99.)[1] As such its late introduction should be stricken. Beyond the document requests, if Asetek wanted to rely on Exhibit 275 as alleged proof of *Antarctica*'s channels, Asetek should have produced it during fact discovery or at least in Dr. Tuckerman's report for the simple reason that Asetek bears the burden to prove invalidity. Asetek did not. Nor can Asetek argue this was a new issue, since CoolIT produced empirical evidence of Dr. Pokharna's measurements of *Antarctica*'s channels during fact discovery. Instead, Asetek's counsel attempted to bring Exhibit 275 into this case on redirect after all fact discovery had closed and expert reports had been completed.

Asetek's delinquent introduction of Exhibit 275, as well as the nature of the exhibit itself, which on its face implies that there are other related, unproduced documents, is highly prejudicial to Defendants. Asetek's opposition confirms that prejudice by Asetek admitting that Dr. Tuckerman will not be laying the foundation for admissibility of Exhibit 275 (how could he), but rather an unidentified "Asetek witness" will lay the foundation. (ECF No. 414, Asetek's Opposition ("Opp.") at 13.) Yet Defendants have had no opportunity to question this unidentified witness, who may or may not have even been disclosed under Federal Rules of Civil Procedure 26. Further, Exhibit 275 is (i) only a photo of a first page of what appears to be a binder of documents, (ii) written in Danish, (iii) with a measuring instrument obscuring a portion of the Danish text, (iv) with part of a box that allegedly contained the machining blades, and (v) that has part of a label showing truncated numbers. Nor could Dr. Tuckerman speak to the document because he does not read Danish, never saw the actual document, never had the document translated to English, did not speak to anyone at Asetek to confirm what the document says, and did not personally review or inspect the machining blades and measuring

[1] All references to "Ex. 1" through "Ex. 8" are to the exhibits attached to Declaration of Reuben H. Chen in Support of Defendants' Notice of Motion and Motion to Strike Exhibit 275 (ECF No. 389-1), filed on March 31, 2022, unless otherwise noted.

tool. Defendants would be highly prejudiced if Asetek were permitted to rely on Exhibit 275 when, among other things:

- Defendants never had an opportunity to review the actual document and seek discovery on the other documents in the binder and any other related documents;
- Defendants never had the opportunity to inspect the machining tool and blades;
- Defendants never had the opportunity to inspect the measuring tool;
- Defendants never had the opportunity to depose the Asetek employee who made the alleged measurement; and
- Defendants never had the opportunity to seek discovery on the exact Antarctica sample the machining blades and measuring tool was used on.

Asetek's failure to timely produce Exhibit 275, as well as its failure to produce the underlying documents, machining blades, and measuring tool, is hardly "substantially justified or harmless." Defendants respectfully request the Court strike Exhibit 275, and any expert testimony related to it.

## II. ARGUMENT

### A. Asetek introduction of Exhibit 275 was delinquent because it should have produced Exhibit 275 in response to CoolIT's document requests

CoolIT's document requests specifically sought all documents concerning the alleged Antarctica prior art product. (*See* Ex. 6, Req. for Prod. No. 99: "ALL DOCUMENTS concerning the ANTARCTICA 'WATER CHILL' LIQUID COOLING KIT as it existed before August 9, 2007.")[2] CoolIT also served document requests that more broadly called for all documents comprising or concerning any actual or potential prior art and all documents concerning the validity of CoolIT's patents-in-suit.[3]

[2] CoolIT also served Request for Production No. 102, which recites "ALL DOCUMENTS concerning the design, structure, and operation of the ANTARCTICA "WATER CHILL" LIQUID COOLING KIT as it existed before August 9, 2007, including but not limited to user manuals, installation manuals, technical manuals, specifications, engineering drawings, and other documentation." (Ex. 6.)

[3] Request for Production No. 53 recites "All DOCUMENTS comprising or concerning any actual or potential Prior Art to the COOLIT PATENTS-IN-SUIT, including all patents, publications, written disclosures, products, or other Prior Art of which ASETEK is aware that disclose, describe, claim, or concern the subject matter disclosed, described, or claimed in COOLIT PATENTS-IN-SUIT" and Request for Production No. 70 recites "All DOCUMENTS concerning the validity and/or enforceability of the COOLIT PATENTS-IN-SUIT." (Ex. 9; all references to "Ex. 9" through "Ex. 12" are to the exhibits attached to the Reply Declaration of Reuben H. Chen in support of this Reply brief, being filed concurrently herewith.)

Exhibit 275 is directly responsive to at least these requests. Beyond that, if Asetek wanted to use it, it should have produced it.

Yet Asetek's opposition complains that a document that was in its sole possession and that it intends to rely on in this case, did not need to be produced in response to CoolIT's document requests. Asetek even argues that "Defendants never complained or requested anything more" during discovery. (Opp. at 8.) But how could Defendants know what documents did or did not exist regarding *Antarctica*? This information was solely in Asetek's possession. And why would Defendants do so when Defendants had already reviewed the documents produced by Asetek (showing no proof of "microchannels"), and Dr. Pokharna had inspected the *Antarctica* sample and his empirical evidence showed that *Antarctica's* channels are greater than 1 mm? Under Asetek's theory, Defendants should have identified the hole in Asetek's case for it and suggested that it find and produce additional documents that Defendants were not aware existed. It is not Defendants' job to save Asetek's case from its own lack of diligence. Ultimately, the failure to produce Exhibit 275 lies completely with Asetek. Asetek was permitted to make whatever reasonable objections it thought it could make to comply with its discovery obligations under Federal Rules of Civil Procedure 26 and 37, and to withhold whatever documents it thought were non-responsive to CoolIT's discovery requests. But it must now live with the consequences of those decisions.

Because Exhibit 275 is responsive to CoolIT's document requests and because Asetek intends to rely on it, Asetek should have produced it during fact discovery. Asetek did not and, as discussed in CoolIT's opening brief and further below, Asetek's cannot substantially justify its failure or show that its failure was harmless.

**B. Asetek's introduction of Exhibit 275 was delinquent because it bears the burden of proof on invalidity**

As the Court is no doubt aware, "a party challenging patent validity has the burden to prove its case with clear and convincing evidence." *Impax Lab'ys, Inc. v. Aventis Pharms., Inc.*, 545 F.3d 1312, 1314 (Fed. Cir. 2008); *see also* 35 U.S.C. § 282 ("The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity."). Therefore, regardless of whether Exhibit 275 is responsive to CoolIT's document requests (which it was), Asetek should have produced

Exhibit 275 (and the underlying documents, machining blades, and measuring tool) during discovery if Asetek intended to rely on it.[4] Asetek failed to do so and further failed to include it with Dr. Tuckerman's expert report.

Asetek spends pages attempting to defend Dr. Tuckerman's methodology in analyzing *Antarctica* (Opp. at 2-4, 10),[5] but none of that is relevant to this motion.[6] Asetek ignores that it bears the burden to prove invalidity. As such, there is no excuse for Dr. Tuckerman failing to include *any* empirical evidence on the widths of *Antarctica's* channels in his report. Dr. Tuckerman could have included photos and videos of his measurements similar to the measurements Dr. Pokharna performed and CoolIT produced during fact discovery long before Dr. Tuckerman's report was due. Dr. Tuckerman did not. Dr. Tuckerman also could have included the Danish document (with an English translation), the machining blades, and the measuring tool allegedly shown in Exhibit 275. He did not. All this information has always been in Asetek's possession.

So, even if Exhibit 275 were not responsive to CoolIT's document requests, Asetek had an obligation to produce it during discovery and at the very least with Dr. Tuckerman's report because Asetek alone bears the burden to prove invalidity and to show that Antarctica's channels are "microchannels." Because Asetek bears the burden, this alone makes Asetek's failure to produce Exhibit 275 (and underlying materials about it) inexcusable.

**C. Asetek cannot substantially justify its failure to produce Exhibit 275**

Asetek's additional excuses do not justify its failure to produce the exhibit and the underlying document, machining blades, and measuring tool. Asetek argues that Dr. Tuckerman's reliance on Exhibit 275 "was in direct response to the criticisms in Dr. Pokharna's rebuttal report, and critically did not advance any *new* opinions[.]" (Opp. at 10.) Not so. First, Asetek is the party who bears the

---

[4] Indeed, to the extent the underlying document and machining tool are alleged prior art, Asetek was also required to produce them under Patent Local Rule 3-4.

[5] Asetek appears to have run out of pages in its opposition to Defendants' motion to Daubert Dr. Tuckerman. (ECF No. 422.) And, despite Local Rule 7-3, Asetek has instead included irrelevant background information in its opposition brief to this motion.

[6] As Dr. Pokharna explained during his deposition, taking measurements at the base of the Antarctica channels is "not reasonable because at the base there was a little bit of a radius" "that's not really representative of the channel gap." (Ex. 10 (1/10/22 Pokharna Depo. Tr.) at 119:18-120:8.) Dr. Pokharna further opined that "at the base it is fraught with most errors and -- and inconsistencies[.]" (*Id.* at 120:9-121:5.)

burden on invalidity, so these should have been in discovery and Dr. Tuckerman's opening report. That Dr. Pokharna criticized Dr. Tuckerman's failure to include any empirical evidence in his report, such as photos and videos of his purported measurements of the Antarctica sample, is no excuse for Dr. Tuckerman to then try and introduce *new* purported evidence, during a deposition re-direct. It is CoolIT that should have had the opportunity to respond to the purported evidence Asetek should have produced in the first place to comply with its burden. Asetek's failure to do so is all the more puzzling considering CoolIT produced photos and videos of the measurements Dr. Pokharna took during an inspection at the offices of Asetek's counsel where Asetek's counsel observed Dr. Pokharna and CoolIT 's counsel taking the photos and videos.[7] (Declaration of Kyle Chen, Ph.D., being filed concurrently herewith; Ex. 12 (Declaration of Himanshu Pokharna, Ph.D.).)

Second, Dr. Tuckerman's attempt to rely on Exhibit 275 and his related deposition testimony is unquestionably a new opinion. Exhibit 275 is a new document—a photo showing a page in a binder of documents, purportedly describing a machining tool used to create *Antarctica's* channels. But Dr. Tuckerman included no such opinions in his expert report. Nor did Dr. Pokharna. Rather, both experts opined on the *actual* channels of the Antarctica sample, rather than a purported, unproduced machining tool. Dr. Pokharna recorded his measurements and that empirical evidence was produced during fact discovery. Dr. Tuckerman failed to record his alleged measurements. Dr. Tuckerman then allegedly only realized a need for empirical evidence after reading Dr. Pokharna's report. But then Dr. Tuckerman response was not to take photos and videos of actual measurements of *Antarctica's* channels and produce them (which would have also been late, but at least logical). Instead, Dr. Tuckerman decided to wait until his deposition redirect to rely on a *new* document to form a *new* opinion concerning a tool rather than the actual channels. This approach is unjustified and not supported by the three cases Asetek cites: *Cave Consulting Group, Inc. v. OptumInsight, Inc.*, No. 15-cv-03424-JCS, 2018 WL 1938555, at *4 (N.D. Cal. Apr. 25, 2018); *Sportspower Ltd. v. Crowntec Fitness Mfg. Ltd.*, No. 8:17-cv-02032-JLS-KES, 2020 WL 7347860, at *3 (C.D. Cal. Nov. 18, 2020);

---

[7] Asetek's counsel claims that it would have had to review "about 150 documents measuring all aspects of the physical prior art devices." (Opp. at 10 n.2.) Even if that were true, 150 documents is hardly a large number of documents to review in a case of this magnitude.

and *Stored Value Solutions, Inc. v. Card Activation Technologies, Inc.*, No. 09-495-LPS, 2010 WL 3834457, at *2 (D. Del. Sept. 27, 2010). (Opp. at 9-10.)

The court in *Cave* specifically ordered that experts "may not present **new opinions, arguments, or evidence** as *alternatives* to opinions, arguments, or evidence that [the other side's] experts criticized." *Cave*, 2018 WL 1938555, at *4 (bolding added, italics in original). But that is precisely what Asetek and Dr. Tuckerman have done by trying to introduce Exhibit 275 into this case on Dr. Tuckerman's redirect. As the court in *Cave* stated: "true rebuttal to criticism is permitted—facts and opinions that should have been in the original reports are not." *Id.* Similarly, the court in *Sportswear*, quoting the court in *Cave*, stated: "While 'facts and opinions that should have been in the original reports' are not a proper subject of deposition testimony, 'true rebuttal to criticism is permitted' during a deposition. *Sportspower*, 2020 WL 7347860, at *3 (quoting *Cave*, 2018 WL 1938555, at *4). Finally, *Stored Value* is distinguishable for multiple reasons. *Stored Value*, 2010 WL 3834457, at *2. First, the expert in that case submitted her responsive opinions in a sur-rebuttal report served *before* the expert's deposition. *Id.* Second, the court found that there were *no new opinions*. *Id.* Third, the expert *did not cite to any new documents* instead only citing "to additional portions of authorities on which she relied in her opening report[.]" *Id.* Therefore, none of these cases support the facts here where Dr. Tuckerman indisputably testified regarding *new* Exhibit 275, and further offered *new* opinions regarding the exhibit.

Asetek nevertheless argues that "Dr. Tuckerman and Asetek provided Exhibit 275 to CoolIT less than two weeks after receiving Dr. Pokharna's rebuttal report" (Opp. at 10), further stating that "[t]he timing of Asetek's *production* of Exhibit 275 … was substantially justified under the circumstances." (*Id.* at 10-11 (emphasis added).) This argument is not true. Asetek never actually "*produced*" Exhibit 275.[8] Rather, Asetek's counsel attempted to bring Exhibit 275 into this case (over

[8] Asetek implies in its opposition that Exhibit 275 was originally withheld from production purposefully in accordance with its objections to discovery requests. This is a red herring. The nature of the "document" itself shows that it is not a document kept in the ordinary course of business as it is a photo of a single page of a larger document with objects superimposed over the page. The timing of its generation and use suggests that Asetek's counsel was not even aware of the documents and objects illustrated in Exhibit 275 prior to the close of fact discovery. Accordingly, they were not "withheld" pursuant to any objection.

objections from CoolIT's counsel) for the first time during redirect of Dr. Tuckerman through a series of leading questions. (Ex. 2 at 261:18-264:17; Ex. 11 (Tuckerman Depo. Exhibit 275).) Tellingly, Dr. Tuckerman admitted that he reviewed the document before his deposition. (*Id.* at 139:15-18; Ex. 3 at 18:22-20:21, 22:10-16, 24:20-25:6.) Yet neither Asetek's counsel nor Dr. Tuckerman bothered to provide Exhibit 275 to CoolIT before Dr. Tuckerman's deposition. Asetek simply cannot show its actions in producing Exhibit 275 four months after the close of fact discovery were "substantially justified." Indeed, numerous courts have struck documents under less egregious circumstances. *See Balt. Aircoil Co. v. SPX Cooling Techs. Inc.*, No. CCB-13-2053, 2016 WL 4426681, at *18-19 (D. Md. Aug. 22, 2016) (finding that production of responsive documents before the end of fact discovery was not substantially justified because it was more than a year after service of an applicable request for production, several months after service of an applicable interrogatory, and after the completion of fact depositions); *Zurich Am. Ins. Co. v. Hardin*, No. 8:14-cv-775-T-23AAS, 2020 WL 1150981, at *2-3 (M.D. Fla. Mar. 10, 2020) (finding that untimely production of documents relied upon for expert opinions was not substantially justified even though the opposing party could have recreated the contents of the document in question based on other timely produced documents because of the significant burden imposed); *MLC Intell. Prop., LLC v. Micron Tech., Inc.*, 10 F.4th 1358, 1371 (Fed. Cir. 2021) (striking late-disclosed reliance on evidence that was in plaintiff's possession "from the outset of the case"); *accord Elliott v. Google, Inc.*, 860 F.3d 1151, 1161 (9th Cir. 2017); *Bernstein v. Virgin Am., Inc.*, No. 15-cv-02277-JST, 2018 WL 6199679, at *3-4 (N.D. Cal. Nov. 28, 2018); *Cal. Inst. of Tech. v. Broadcom Ltd.*, No. CV 16-3714-GW(AGRx), 2019 WL 8192255, at *11 (C.D. Cal. Aug. 9, 2019); *Syngenta Crop Prot., LLC v. Willowood, LLC*, No. 1:15-CV-274, 2017 WL 3309699, at *4-5 (M.D.N.C. Aug. 2, 2017); *Sherwood v. BNSF Ry. Co.*, No. 1:16-cv-00008-EJL-REB, 2018 WL 3340571, at *4 (D. Idaho July 6, 2018).

### D. Asetek's opposition brief confirms that CoolIT will be prejudiced

Asetek's delinquent introduction of Exhibit 275 is far from harmless. In fact, Asetek's opposition confirms that Defendants would be highly prejudiced if Exhibit 275 were not struck. Asetek admits that Dr. Tuckerman will not be laying the foundation for admissibility of Exhibit 275, but rather an ***unidentified*** "Asetek witness" will lay the foundation. (Opp. at 13.) CoolIT still does

not even know if this is someone who has been or should have been disclosed under Rule 26. But discovery closed eight months ago and Defendants had no opportunity to question this unidentified witness regarding Exhibit 275 during discovery. Further, Exhibit 275 is (i) only a photo of a first page of what appears to be a binder of documents, (ii) written in Danish,[9] (iii) with a measuring instrument obscuring a portion of the Danish text, (iv) with part of a box that allegedly contained the machining blades, and (v) that has part of a label showing truncated numbers.[10]

[redacted]

---

[9] Asetek argues that Exhibit 275 "is not entirely in Danish." (Opp. at 4.) Defendants invite the Court to review Exhibit 275 closely – every word appears to be in Danish. Asetek's statement is based on on a label present on the box in the lower righthand corner of Exhibit 275. Arguing that the truncated numbers on the label relieve Exhibit 275 from its Danish-language foundation is simply not credible.

[10] Should Exhibit 275 not be struck based on Asetek's failure to timely produce Exhibit 275, CoolIT reserves the right and will as part of pretrial papers object to Exhibit 275 as violating, at least, the ***best evidence rule*** under Federal Rule of Evidence 1002.

Further, because Dr. Tuckerman admits he only spoke to Asetek's counsel about the photo, does not read Danish, never saw the actual document, never had the document translated to English, did not speak to anyone at Asetek to confirm what the document says, and did not personally review or inspect the machining blades and measuring tool, Defendants' deposition of Dr. Tuckerman was far from sufficient discovery on Exhibit 275. Additionally, Asetek admits that it was "Asetek's counsel [that] represented that Exhibit 275 is an Asetek document that was provided via counsel to Dr. Tuckerman" "and Dr. Tuckerman properly relied on these representations under Rule 703." (ECF No. 422, Asetek's Opp. to Defs' Mot. to Exclude Certain Opinions of Dr. Tuckerman, at 10.) Yet Asetek's counsel refused to allow Dr. Tuckerman to answer questions about those discussions. (Ex. 3 at 19:11-20:24.) Such discussions relied on by an expert are not protected under Federal Rule of Civil Procedure 26(b)(4)(C).[11]

Moreover, Defendants would be highly prejudiced if Asetek were permitted to rely on a delinquent and obscure picture of an untranslated document in support of its position that Antarctica has "microchannels" without the opportunity to take fact discovery about it. Defendants and Dr. Pokharna should have been afforded the opportunity to review the actual underlying document purportedly describing the machining tool and specifically an English translation of the document, and seek discovery on the other documents in the binder and any other related documents. Defendants and Dr. Pokharna should have also been afforded the opportunity to inspect the machining tool and blades. Additionally, Defendants and Dr. Pokharna should have been afforded the opportunity to inspect the measuring tool. Further, Defendants should have been provided the opportunity to depose the Asetek employee who made the alleged measurement. Defendants also should have been provided the opportunity to seek additional fact discovery regarding the documents and the exact Antarctica sample(s) that the machining blades and measuring tool was used on. All of this greatly harms Defendants. *See Balt. Aircoil*, 2016 WL 4426681, at *18-19 (striking responsive documents produced

[11] As to Dr. Tuckerman's reliance on *double hearsa*y, CoolIT further addresses that in its reply in support of its Daubert motion on Dr. Tuckerman, filed concurrently herewith. As further explained in CoolIT's reply, the Rule 703 exception does not apply because a reasonable expert would not rely on a picture of a document the expert is unable to read that was never translated for the expert and the mere secondhand representations of what is shown in the picture via attorney argument.

before the end of fact discovery, but after the deposition of the relevant witness because the late disclosure "preclude[d] significant investigation by" the opposing party); *Zurich Am. Ins.*, 2020 WL 1150981, at *3 (excluding documents relied on by an expert witness that were produced after the close of fact discovery but before the deposition of the expert witness in part because the "late disclosure deprived [the opposing party] 'of a meaningful opportunity to perform discovery and depositions related to the documents in question'"); *accord Bernstein*, 2018 WL 6199679, at *4-5; *Cal. Inst. of Tech.*, 2019 WL 8192255, at *11; *Brown v. Vivint Solar, Inc.*, No. 8:18-cv-2838-T-24 JSS, 2020 WL 5016898, at *2 (M.D. Fla. Aug. 25, 2020) (slip copy); *Sygenta*, 2017 WL 3309699, at *5; *Estate of McDermed v. Ford Motor Co.*, No. 14-cv-2430-CM-TJJ, 2016 WL 1298096, at *10 (D. Kan. Apr. 1, 2016); *Sherwood*, 2018 WL 3340571, at *4.

## III. CONCLUSION

For the foregoing reasons and those set forth in Defendants' opening brief, Defendants respectfully request that the Court grant their Motion to Strike Exhibit 275, and any expert testimony related to Exhibit 275.

Dated: April 21, 2022

*/s/ Reuben H. Chen*

COOLEY LLP
HEIDI L. KEEFE (178960)
(hkeefe@cooley.com)
REUBEN H. CHEN (228725)
(rchen@cooley.com)
DANIEL J. KNAUSS (267414)
(dknauss@cooley.com)
ALEXANDRA LEEPER (307310)
(aleeper@cooley.com)
DEEPA KANNAPPAN (313573)
(dkannappan@cooley.com)
3175 Hanover Street
Palo Alto, CA 94304-1130
Telephone: (650) 843-5000
Facsimile: (650) 849-7400

DUSTIN M. KNIGHT (*pro hac vice*)
(dknight@cooley.com)
11951 Freedom Drive, 16th Floor
Reston, VA 20190
Telephone: (703) 456-8000
Facsimile: (703) 456-8100

*Attorneys for Defendant and Counter-claimant COOLIT SYSTEMS, INC. and Defendants CORSAIR GAMING, INC. and CORSAIR MEMORY, INC.*

GREENBERG TRAURIG, LLP
KYLE D. CHEN (SBN 239501)
(kchen@gtlaw.com)
1900 University Avenue
East Palo Alto, CA 94303
Telephone: (650) 289-7887
Facsimile: (650) 328-8508

*Attorneys for Defendant CoolIT Systems, Inc.*

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

11.

CASE NO. 3-19-CV-00410-EMC
DEFENDANTS' REPLY ISO MOTION TO STRIKE
EXHIBIT 275