1   COOLEY LLP
    HEIDI L. KEEFE (178960)
2   (hkeefe@cooley.com)
    REUBEN H. CHEN (228725)
3   (rchen@cooley.com)
    DANIEL J. KNAUSS (267414)
4   (dknauss@cooley.com)
    ALEXANDRA LEEPER (307310)
5   (aleeper@cooley.com)
    DEEPA KANNAPPAN (313573)
6   (dkannappan@cooley.com)
    3175 Hanover Street
7   Palo Alto, CA  94304-1130
    Telephone:    (650) 843-5000
8   Facsimile:    (650) 849-7400

DUSTIN M. KNIGHT (*pro hac vice*)
(dknight@cooley.com)
11951 Freedom Drive, 16th Floor
Reston, VA 20190
Telephone: (703) 456-8000
Facsimile: (703) 456-8100

GREENBERG TRAURIG, LLP
KYLE D. CHEN (SBN 239501)
kchen@gtlaw.com
1900 University, Avenue, 5th Floor
East Palo Alto, CA 94304
Telephone:    (650) 289-7887
Facsimile:    (650) 328-8508

9

10  Attorneys for Defendant and Counter-claimant
    COOLIT SYSTEMS, INC. and Defendants
11  CORSAIR GAMING, INC. and CORSAIR
    MEMORY, INC.

12
                        UNITED STATES DISTRICT COURT
13
                      NORTHERN DISTRICT OF CALIFORNIA
14
                          SAN FRANCISCO DIVISION
15

16
    ASETEK DANMARK A/S,                        Case No.  3:19-cv-00410-EMC
17
                   Plaintiff and               **DEFENDANTS' REPLY IN SUPPORT OF ITS
18                 Counter-defendant,           MOTION TO EXCLUDE CERTAIN
                                                OPINIONS OF DR. DAVID B. TUCKERMAN
19          v.                                  REGARDING INVALIDITY OF THE
                                                ASSERTED COOLIT PATENTS, NON-
20  COOLIT SYSTEMS, INC.,                       INFRINGEMENT OF THE ASSERTED
                                                COOLIT PATENTS, AND INFRINGEMENT
21                 Defendant and                OF THE ASSERTED ASETEK PATENT**
                   Counter-claimant,
22                                              Date:      May 5, 2022
     CORSAIR GAMING, INC. and CORSAIR           Time:      1:30 pm
23  MEMORY, INC.,                               Location:  Courtroom 5, 17th Floor
                                                Judge:     Hon. Edward M. Chen
24                 Defendants.

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT ................................................................................................................. 2

    A.     Asetek's arguments against exclusion of Dr. Tuckerman's opinions on *Antarctica*'s channels are unavailing. ............................................................. 2

           1.     Dr. Tuckerman's deposition testimony does not cure his report's lack of disclosure regarding "microchannels." ....................................... 2

           2.     Asetek's inapposite case law does not inoculate Dr. Tuckerman's opinions from exclusion. ................................................................. 4

           3.     Exhibit 275 is double hearsay and improper for Dr. Tuckerman to rely on under Fed. R. Evid. 703. ................................................................. 7

    B.     Dr. Tuckerman was unfamiliar with the products he proposed as non-infringing alternatives and his opinions regarding those products should be excluded. ................................................................................................. 8

    C.     Asetek marshals inapposite case law and fails to account for the *totality* of indicia suggesting Dr. Tuckerman did not "prepare" his reports under Fed. R. Civ. P. 26. ................................................................................................. 10

    D.     Dr. Tuckerman's DOE opinions are demonstratively unreliable ............................. 12

           1.     Dr. Tuckerman's DOE opinions are unreliable because the "curved blades" limitation captures its equivalents' antithesis--"radial blades" ......... 13

           2.     Asetek's opposition does not cure Dr. Tuckerman's illogical definitions of the "curved" equivalents nor their inconsistencies ................. 15

III. CONCLUSION ............................................................................................................ 15

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

**CASE NO. 3-19-CV-00410-EMC**
**DEFENDANTS' REPLY ISO MOTION**
**TO EXCLUDE TUCKERMAN**

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alvarado v. FedEx Corp.*,
  2006 WL 1761276 (N.D. Cal. June 27, 2006) ...............................................................6

*Atmel Corp. v. Info. Storage Devices, Inc.*,
  189 F.R.D. 410 (N.D. Cal. 1999) ..............................................................................6, 7

*Aylus Networks, Inc. v. Apple Inc.*,
  856 F.3d 1353 (Fed. Cir. 2017) ...................................................................................15

*DataQuill Ltd. v. Handspring, Inc.*,
  No. 01-cv-4635, 2003 WL 737785 (N.D. Ill. Feb. 28, 2003) ...............................2, 10

*Daubert v. Merrell Dow Pharms.*,
  509 U.S. 579 (1993) .......................................................................................................7

*Godo Kaisha IP Bridge 1 v. Broadcom Ltd.*,
  No. 2:16-cv-134-JRG-RSP, 2017 WL 2839492 (E.D. Tex. Apr. 19, 2017).........4, 5

*Numatics, Inc. v. Balluff, Inc.*,
  66 F. Supp. 3d 934 (E.D. Mich. 2014)........................................................................10

*Orthoflex, Inc. v. ThermoTek, Inc.*,
  986 F. Supp. 2d 776 (N.D. Tex. 2013) ........................................................................10

*Salgado v. Gen. Motors Corp.*,
  150 F.3d 735 (7th Cir. 1998) .........................................................................................6

*Tubular Rollers, LLC v. Maximus Oilfield Prods., LLC*,
  No. 4:19-CV-03113, 2021 WL 5991744 (S.D. Tex. Dec. 16, 2021).........................8

*Vehicular Techs. Corp. v. Titan Wheel Int'l, Inc.*,
  212 F.3d 1377 (Fed. Cir. 2000).....................................................................................13

*Wilson Sporting Goods Co. v. David Geoffrey & Associates*,
  904 F.2d 677 (Fed. Cir. 1990).......................................................................................15

*Wong v. Regents of the Univ. of Cal.*,
  379 F.3d 1097 (9th Cir. 2004) .......................................................................................6

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

-ii-

CASE NO. 3-19-CV-00410-EMC
DEFENDANTS' REPLY ISO MOTION
TO EXCLUDE TUCKERMAN

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

**Other Authorities**

Fed. R. Civ. P.
    26................................................................................................................ *passim*
    30(b)(6) ...............................................................................................................9
    37.................................................................................................................6, 12

Fed. R. Evid. 703 .................................................................................................1, 7, 10

1    **I.      INTRODUCTION**

2          Faced with a shaky (or nonexistent) foundation for Dr. Tuckerman's opinions, Asetek's

3    Opposition misrepresents the law and mischaracterizes facts in an attempt to save Dr. Tuckerman from

4    exclusion.  Despite Asetek's protestations to the contrary:

5                 • CoolIT **did** and does dispute the reliability or appropriateness of Dr. Tuckerman's

6                    belated methodology for "microchannels";

7                 • CoolIT **did** articulate prejudice that it still suffers;

8                 • it is **not** reasonable under Fed. R. Evid. 703 for Dr. Tuckerman to rely on pure attorney

9                    representation and double hearsay in forming his opinions; and

10                • Dr. Tuckerman **does** need to know what a product is or does to render an opinion about

11                   whether it is an acceptable and available non-infringing alternative.

12         The Opposition further calls into question whether Dr. Tuckerman prepared his Invalidity and

13   Non-Infringement Rebuttal Reports, as Asetek admits its counsel wrote his drafts and tries to justify,

14   with inapposite case law, why Dr. Tilton's opinions appear throughout both reports.

15         With respect to Dr. Tuckerman's DOE opinions, the Opposition also offers nothing more than

16   *counsel's* opinions offered through the mouth of the expert without evidentiary support.  As an initial

17   matter, Dr. Tuckerman's opinions do not, and cannot, stand on their own.  He never performed an

18   independent function-way-result test nor employed the insubstantial difference methodology *required*

19   under DOE and instead relies on Dr. Stein's report and opinion, which is the subject of a co-pending

20   *Daubert* motion.  Beyond his reliance on Dr. Stein's faulty opinion, Dr. Tuckerman's opinions

21   attempting to equate "curved" with "nonradial" are also unreliable because they only consider impeller

22   blades in two dimensions rather than in their real-life three dimensions, and his opinions on the original

23   "curved" limitation would literally capture its equivalents' antithesis: straight "radial blades," as

24   admitted by Dr. Stein.  Asetek also cannot explain away the inconsistencies in the various and

25   conflicting definitions of "radial" by Asetek's own experts.  Dr. Tuckerman's DOE opinions should

26   be stricken.

27

28

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

1.

CASE NO. 3-19-CV-00410-EMC
DEFENDANTS' REPLY ISO MOTION
TO EXCLUDE TUCKERMAN

## II.   ARGUMENT

### A.   Asetek's arguments against exclusion of Dr. Tuckerman's opinions on *Antarctica's* channels are unavailing.

#### 1.   Dr. Tuckerman's deposition testimony does not cure his Invalidity Report's lack of disclosure regarding "microchannels."

Asetek does not dispute that Dr. Tuckerman offers *ipse dixit* numbers for *Antarctica's* "microchannels" in his Invalidity Report.[1]  Nor does Asetek dispute or try to explain why Dr. Tuckerman's report *only* relies on Mr. Eriksen's uncorroborated and speculative testimony for support. It also makes no attempt whatsoever to substantially justify why Dr. Tuckerman failed to record measurements of the *Antarctica* channel widths or proffer evidence demonstrating his methodology. Indeed, Dr. Tuckerman testified that *Asetek's counsel never asked him to*—even after Asetek's counsel witnessed Dr. Pokharna take and record measurements at his June 25, 2021 inspection of the purported *Antarctica* sample at the offices of Asetek's counsel, and after receiving photographs and videos showing Dr. Pokharna's measurements and methodology on July 8, 2021.  (*See* Ex. 5[2] at 15:12-16:3; Ex. 22[3] (Declaration of Himanshu Pokharna, Ph.D.) ¶ 4.)

Instead, Asetek makes two dizzying allegations in its defense.  First, Asetek claims that the Court should disregard this *Daubert* challenge because CoolIT does not dispute the reliability or appropriateness of Dr. Tuckerman's methodology for measuring channel widths in *Antarctica* (which

---

[1] Asetek seems to say that Dr. Tuckerman's *ipse dixit* conclusions are sufficient because he swore under penalty of perjury in his Invalidity Report to all statements made therein.  Setting aside that swearing under penalty of perjury is not required for expert reports, it does not absolve Dr. Tuckerman of his obligations under Fed. R. Civ. P. 26 to prepare a complete written report.  Nor is it the proper focus for the *Daubert* inquiry. *See DataQuill Ltd. v. Handspring, Inc.*, No. 01-cv-4635, 2003 WL 737785, at *4 (N.D. Ill. Feb. 28, 2003) (excluding expert opinions as unreliable where expert signed his report under penalty of perjury).

Regardless, Dr. Tuckerman's "swearing under penalty of perjury" is not factually persuasive.  For example, while the Materials Considered to his Non-Infringement Rebuttal Report list does not include Dr. Tilton's Corrected Supplemental Declaration from IPR2020-00825, two paragraphs from that declaration nevertheless appear virtually verbatim in his Non-Infringement Rebuttal Report. Either Dr. Tilton perjured himself, or those opinions are not his own.

[2] All references to "Ex. 1" through "Ex. 21" are to the exhibits attached to Declaration of Reuben H. Chen in Support of Defendants' Motion to Exclude Certain Opinions of Dr. David B. Tuckerman Regarding Invalidity of the Asserted CoolIT Patents, Non-infringement of the Asserted CoolIT Patents, and Infringement of the Asserted Asetek Patent (ECF No. 397-1), filed on March 31, 2022, unless otherwise noted.

[3] All references to "Ex. 22" through "Ex. 27" are to the exhibits attached to the Reply Declaration of Reuben H. Chen in support of this Reply brief, being filed concurrently herewith.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

2.

CASE NO. 3-19-CV-00410-EMC
DEFENDANTS' REPLY ISO MOTION
TO EXCLUDE TUCKERMAN

1    CoolIT absolutely disputes).   (*See* ECF No. 422, Asetek's Opposition ("Opp.") at 4.)   But even

2    reaching that conclusion requires an assumption that Dr. Tuckerman presented evidence of his

3    measurements and methodology for CoolIT, Dr. Pokharna, and the Court to evaluate for reliability

4    and appropriateness.  He did not.  (*See* Ex. 5.)  Asetek does not (because it cannot) reasonably dispute

5    that Dr. Tuckerman failed to disclose any data or methodology in his Invalidity Report.  It was only

6    *after* exchange of reports that Dr. Tuckerman discussed an unverifiable methodology during his

7    depositions.  There is still no documentary evidence of what Dr. Tuckerman did or did not do.

8          Even if the Court accepted Dr. Tuckerman's untimely recitation of a "methodology," its

9    reliability and appropriateness are most certainly in dispute. Asetek omits that its own counsel pressed

10   Dr. Pokharna on whether he measured fins at the base of the heat spreader plate in the purported

11   *Antarctica* physical sample.   Dr. Pokharna emphasized how nonsensical and unreliable Dr.

12   Tuckerman's recited methodology was:

13   Q. When you measured … the gap between the two adjacent fins, you took that
14   measurement … at the top of the gap between the fins; right?

15   A. Yes. Those gaps appeared to be machined where I would expect the gap on top
     to be the representative of the entire gap. If at all, the -- because of -- the reason
16   they are machined and not cast or not extruded, the top might be the narrowest point
     on this. And, therefore, I inspected the device for its substantial kind of gap in
17   uniform because, again, if it were not a machined part and extruded part, like the
     aluminum channels might be, then I you could always go back and -- you know, in
18   a U, take some distance measurement that is kind of like -- you know, could be
     anything. But to a person of ordinary skill in the art, a mechanical engineer who
19   understands how these devices function, how these devices are machined, I believe
20   I took the measurement at the right place, which is the top.

21   Q. And I'm not asking you what is the best way to take measurement… I just want
22   to get it -- I just want to note, when you inspected the Antarctica device in Asetek's
     counsel's office, you only took measurements at the -- at the top of the
23   microchannels and you did not take any measurements at the base; right?

24   A. **Yeah. Because at the base it is fraught with most errors and …**
     **inconsistencies, which are pretty apparent in this entire argument from … Dr.**
25   **Tuckerman, which, you know, sometimes talks .6 to .7 and sometimes talk**
     **about .9 to point -- 1.0. And sometimes talks about .93**. But he -- I can explain
26   away a lot those inconsistencies because the way the measurement was done was
27   not in a place that was appropriate for the measurement of the gap of the channel.

28

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

3.

CASE NO. 3-19-CV-00410-EMC
DEFENDANTS' REPLY ISO MOTION
TO EXCLUDE TUCKERMAN

But to answer your question, yes, I did not measure it at a place where I did not think it was reasonable to measure that gap.

Q. So you -- so you did not measure the … microchannels of the Antarctica at the base; right?

A. Yeah. Not at the point where there is like -- there is a possibility of inconsistent measurement, where there is a possibility of making a measurement that is smaller than the tool that was used to create that gap. That's clearly inconsistent and not really representative of the gap. The tool was .93 based on the testimony that I read from Dr. Tuckerman. And he measured .9.  There is no person -- a person of ordinary skill -- or **there is no reasonable person who can say that they can make a gap using a tool to make that gap that is smaller than the tool itself. Just simply physically impossible**.  And that's the reason that I did not take a measurement at a place which is indeterminate because it has a feature that is, you know, just impossible to really measure.  **I can measure literally, probably even, you know, zero width … at the bottom of that particular section. Right. That is not representative of the gap. To a person of ordinary skill, when you see a gap, this is the gap that is present between those two channels. And that's what I measured**.

Q. Dr. Pokharna, did you or did you not take any measurements of the microchannels in the Antarctica device at the base of the channel?

A. **The base of the channels are indeterminant; so I did not take any measurement in the place where I did not think it made any sense**.

Q. Dr. Pokharna, did you or did you not take any measurements of the microchannels in the Antarctica device at the base of the microchannel?

A I could take a zero measurement also at the base, and I think that is also nonsensical.

(Ex. 23 (1/10/2022 Pokharna Depo. Tr.) at 118:13-122:21 (emphasis added).)  In other words, the reliability and appropriateness of Dr. Tuckerman's "methodology" have always been in dispute. Indeed, there is no way to make heads or tails of whether Dr. Tuckerman reliably applied his purported methodology, because he provided *no* evidence showing what he did or the results that he received. CoolIT and the Court are left with his uncorroborated, belated word and nothing more.

**2.      Asetek's inapposite case law does not inoculate Dr. Tuckerman's opinions from exclusion.**

Asetek's reliance on *Godo Kaisha* is misplaced. In *Godo Kaisha*, the expert disclosed a methodology within his report, and the Court's opinion discussed the sufficiency of that disclosure.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO
4.
CASE NO. 3-19-CV-00410-EMC
DEFENDANTS' REPLY ISO MOTION
TO EXCLUDE TUCKERMAN

1    *Godo Kaisha IP Bridge 1 v. Broadcom Ltd.*, No. 2:16-cv-134-JRG-RSP, 2017 WL 2839492, at *1-2

2    (E.D. Tex. Apr. 19, 2017).  The Court discussed how, in measuring a distance between gate electrodes,

3    the expert "measured the distance on a high-resolution image" and that, "**[i]n his report**, [the expert]

4    includes superimposed red arrows and circles to indicate approximately **where he made these**

5    **measurements**."  *Id*. at *1 (emphasis added). The Court reasoned that the expert's opinions were

6    "verifiable because he disclosed his methodology."  *Id*. at *2.  Here, there is no dispute that Dr.

7    Tuckerman failed to disclose any facts, data, or methodology animating the *ipse dixit* numbers in his

8    Invalidity Report.  His results cannot be verified because they were never recorded.  No one knows or

9    can test, for example: (1) what Dr. Tuckerman means by "the base" of the heat spreader plate; (2) the

10   specific tool he used; (3) the degrees of precision for that tool, (4) how he measured the channels at

11   "the base" using the tool; (5) which and how many channels he measured in the heat spreader plate;

12   (6) how he calculated his *ipse dixit* numbers (*e.g.*, is it an average, does it factor in uncertainty and

13   manufacturing tolerances, what the distribution of his measurements show); or (7) if or how he

14   accounted for the errors and uncertainties that Dr. Pokharna identified during his deposition.

15           Second, Asetek relies on two out-of-circuit Delaware district court cases, *nCube* and *Power*

16   *Integrations*, to argue that Fed. R. Civ. P. 26 permits Dr. Tuckerman's deposition testimony because

17   it is "consistent with his Report and is a reasonable synthesis and/or elaboration of the opinions

18   contained in [the] report."  (Opp. at 5.)  But no "reasonable synthesis or elaboration" exists where an

19   expert, like Dr. Tuckerman, provides (some) foundation for his opinion for the ***first time*** at deposition

20   and fails to supply any corroboration—otherwise, what would be the point of the Rule?

21           Citing cases and Advisory Committee Notes, the Seventh Circuit described the purpose of Rule

22   26, and this reasoning that has been adopted by numerous courts in this District:

23           Rule 26(a) expert reports must be "detailed and complete." A complete report must
             include the substance of the testimony which an expert is expected to give on direct
24           examination together **with the reasons therefor**. The report must be complete such
             that opposing counsel is not forced to depose an expert in order to avoid ambush at
25           trial; and moreover the report must be sufficiently complete so as to shorten or
             decrease the need for expert depositions and thus to conserve resources. Expert
26           reports must not be sketchy, vague or preliminary in nature. Disclosures must not
             be used as a means to extend a discovery deadline. **Expert reports must include**
27           **"how" and "why" the expert reached a particular result, not merely the**
             **expert's conclusory opinions**.
28

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

5.

CASE NO. 3-19-CV-00410-EMC
DEFENDANTS' REPLY ISO MOTION
TO EXCLUDE TUCKERMAN

Compliance with Rule 26, in particular with the requirement of total disclosure, is emphasized in the Advisory Committee comments. The "incentive for total disclosure" is the threat that expert testimony not disclosed in accordance with the rule **can be excluded pursuant to Rule 37(c)(1)**. The availability of this sanction "put[s] teeth into the rule." The rule presents alternatives less severe than exclusion of the expert testimony, however. If the expert's report contains only incomplete opinions, the court may choose to restrict the expert's testimony to those opinions alone.

*Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 741 n.6 (7th Cir. 1998) (citations omitted) (emphasis added).  *See, e.g.*, *Alvarado v. FedEx Corp.*, 2006 WL 1761276, at *3-4 (N.D. Cal. June 27, 2006) (citing *Salgado* and excluding expert opinions violating Rule 26 where counsel "repeatedly displayed a flagrant disregard for the Federal Rules of Civil Procedure and the Local Rules of this Court.").  A court in this District further recognized in *Atmel Corp. v. Info. Storage Devices, Inc.* that:

To allow now [the expert] to testify on direct examination to matters deliberately ignored in his Rule 26(a)(2)(B) report would simply encourage litigants to evade the expert-disclosure rules.  It would disrupt the orderly process of trial preparation to require a new round of expert reports and a new round of expert depositions. And the Court does not have resources to spare in order to manage cases in which counsel create foreseeable delay through violation of the rules.

189 F.R.D. 410, 416 (N.D. Cal. 1999) (citing *Salgado* and excluding expert methodology provided during deposition).  *Accord Wong v. Regents of the Univ. of Cal.*, 379 F.3d 1097, 1103 (9th Cir. 2004).[4]

*nCube* and *Power Integrations* do not state otherwise and are altogether inapplicable.  Both cases address Rule 26 in the context of expert hearing or trial testimony made *after* expert discovery.  They certainly do not stand for the proposition that Dr. Tuckerman can backfill Rule 26 deficiencies in his report, going to the foundation of his *ipse dixit* conclusions, during deposition.

In an attempt to evade the "bite" of Rule 37(c)(1) sanctions, Asetek circularly argues that CoolIT's opening brief somehow fails to identify prejudice or harm for Dr. Tuckerman's belated

---

[4] The *Wong* court likewise emphasized:

In these days of heavy caseloads, trial courts in both the federal and state systems routinely set schedules and establish deadlines to foster the efficient treatment and resolution of cases. Those efforts will be successful only if the deadlines are taken seriously by the parties, and the best way to encourage that is to enforce the deadlines. Parties must understand that they will pay a price for failure to comply strictly with scheduling and other orders, and that failure to do so may properly support severe sanctions and exclusions of evidence.

*Id.*

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

6.

CASE NO. 3-19-CV-00410-EMC
DEFENDANTS' REPLY ISO MOTION
TO EXCLUDE TUCKERMAN

1  explanation of a "methodology."  (Opp. at 6.)  But CoolIT repeatedly described how Dr. Tuckerman's

2  failure to disclose the data and methodology to corroborate his *ipse dixit* numbers prevented CoolIT,

3  Dr. Pokharna, and the Court from properly investigating and evaluating the reliability of Dr.

4  Tuckerman's opinions.  (ECF No. 397 at 2, 10-11 ("Defendants and the Court are left only with his

5  contradictory 'word' as the basis that he measured the heat spreader plate grooves… No assessment

6  of the reliability of Dr. Tuckerman's opinion can be made."), 12-13 (explaining, *inter alia*, that Dr.

7  Pokharna had no way to independently test and opine on Dr. Tuckerman's new purported

8  methodology).)

9          Asetek now tries to rewrite the record by claiming Dr. Tuckerman's Invalidity Report

10  contained the "general testimony" that he "reasonably elaborated" on during his deposition.  But, as

11  described above, whatever "elaboration" Dr. Tuckerman could provide through deposition does not

12  supply the methodological foundation for his "microchannels" conclusion in the Invalidity Report.  He

13  never recorded or provided evidence of any methodology or data, and critically, ***counsel never asked***

14  ***him to do so***.  *Atmel Corp.*, 189 F.R.D. at 417 (excluding expert opinion where expert did not apply

15  professionally reasonable practices to form opinion at suggestion of litigation counsel).   Dr.

16  Tuckerman simply cannot elaborate on that which was never there in the first place.

17                    **3.      Exhibit 275 is double hearsay and improper for Dr. Tuckerman to rely on**
                              **under Fed. R. Evid. 703.**
18
           Asetek misunderstands CoolIT's objections to Dr. Tuckerman's deposition testimony related
19
    to Exhibit 275, arguing that Fed. R. Evid. 703 permits an expert to rely on hearsay.  The possibility
20
    that an expert *may* rely on hearsay is not in dispute.  But, as explained in CoolIT's opening brief and
21
    related Motion to Strike Exhibit 275, expert reliance on hearsay is not unqualified.  It is the exception,
22
    not the rule.  The Supreme Court in *Daubert* explained that "Rule 703 provides that expert opinions
23
    based on otherwise inadmissible hearsay are to be admitted **only** if the facts or data are 'of a type
24
    reasonably relied upon by experts in the particular field in forming opinions or inferences upon the
25
    subject."  *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 595 (1993) (emphasis added).  The
26
    Opposition does not dispute that Exhibit 275 is double hearsay and provides *no* explanation for why
27
    Dr. Tuckerman's reliance on Exhibit 275 is "of a type reasonably relied upon by experts" in his field.
28

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

7.

CASE NO. 3-19-CV-00410-EMC
DEFENDANTS' REPLY ISO MOTION
TO EXCLUDE TUCKERMAN

As discussed in the opening brief, Dr. Tuckerman can only contextualize and render opinions on the contents of Exhibit 275 by accepting as true the uncorroborated representations from Asetek's counsel about what the image shows—hearsay—when the image itself is hearsay of a machining tool (and not linked to the physical sample Dr. Tuckerman relies on in his Invalidity Report). Such reliance is unreasonable, and Dr. Tuckerman's opinions interpreting the belated Exhibit 275 should be stricken. *See, e.g., Tubular Rollers, LLC v. Maximus Oilfield Prods., LLC*, No. 4:19-CV-03113, 2021 WL 5991744, at *1-2 (S.D. Tex. Dec. 16, 2021) (excluding expert opinions grounded in double hearsay).

Asetek also disputes that Dr. Tuckerman could have read Exhibit 275. But Asetek's follow-on arguments confirm time and again that Dr. Tuckerman drew inferences based on representations from counsel. (Opp.at 9-10.) They could not have come directly from Asetek, because, as Dr. Tuckerman admits, he never spoke to anyone at Asetek. Asetek also argues that Dr. Tuckerman could read certain elements of Exhibit 275 that were "in English," pointing to a truncated set of **numbers** on a box label. Numbers do not separate Danish from English, and nothing in the image suggests what this incomplete label describes, let alone that it is a "legend"[5]—*unless* Dr. Tuckerman made logical leaps based on representations from Asetek's counsel as to what Exhibit 275 shows.

Dr. Tuckerman's "microchannels" opinions should thus be excluded in their entirety.

**B.**      **Dr. Tuckerman was unfamiliar with the products he proposed as non-infringing alternatives and his opinions regarding those products should be excluded.**

As discussed in CoolIT's opening brief, Dr. Tuckerman admitted that he was "not at all" familiar with Asetek's Gen 3 product and had not inspected or performance tested the CoolerMaster Liquid 240R product. He therefore lacks an independent basis to assess whether the thermal performance of these products would be acceptable to Asetek customers, let alone whether these products do or do not infringe. The Opposition attempts several sleights-of-hand to argue that Dr. Tuckerman's baseless testimony was proper, but none withstand scrutiny.

First, Asetek tries to cabin Dr. Tuckerman's admissions to a failure to personally inspect. That is not what he said. With respect to the Gen 3 product, he said he was "[n]ot at all" familiar with the Asetek Gen 3 product and could not identify whether or not it has a "split-flow cold plate." (Ex. 5 at

---

[5] The very characterization of the label as a "legend" is a representation from Asetek's counsel.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

8.

CASE NO. 3-19-CV-00410-EMC
DEFENDANTS' REPLY ISO MOTION
TO EXCLUDE TUCKERMAN

67:2-11.)  Asetek asserts that Dr. Tuckerman reviewed Asetek documentation produced in discovery that discloses that Asetek's Gen 3 does not have a split-flow design, pointing to its Exhibit E.  The record does not support this assertion, as Exhibit E *is not disclosed* in the "Materials Considered" of Dr. Tuckerman's Non-Infringement Rebuttal Report. (*See* Ex. 8.)  It is also further indicia that Dr. Tuckerman did not prepare his report, as he discussed how the Gen 3 plate implements "end-to-end flow" in paragraph 84 but later testified that he lacks any familiarity with the Gen 3 product.

Asetek now claims that it will have Mr. Eriksen testify "whether a non-split flow design similar to Gen 3 would be acceptable to customers" instead of Mr. Tuckerman.  This about-face does not negate that ***Dr. Tuckerman*** baselessly opined on the availability and customer acceptability of Gen 3 in his Non-Infringement Rebuttal Report.[6]  Dr. Mody's rebuttal report confirmed as much, explaining that "Dr. David B. Tuckerman … expressed opinions **concerning the availability and acceptability** of non-infringing designs which I have considered" and pointing to Dr. Tuckerman's Non-Infringement Rebuttal Report.  (ECF No. 392-3, ¶ 40 (emphasis added); *see also* Ex. 8, ¶ 84 ("Asetek could possibly revert to **its** non-split flow (i.e., end-to-end flow) design and such redesigned products **would be acceptable non-infringing alternatives** to the accused Gen 4, 5, 6, and 7 desktop products.") (emphasis added).)  As such, Dr. Tuckerman's opinions on the customer availability and acceptability for Gen 3, a product he is "not at all" familiar with, should be stricken.

Having Mr. Eriksen opine on the customer acceptability of Gen 3 at this late juncture is procedurally improper.  CoolIT specifically noticed Asetek under Fed. R. Civ. P. 30(b)(6) to put up a witness on "[a]ny product Asetek contends is a non-infringing substitute or alternative to the CoolIT Patents-in-Suit."  (*See* Ex. 24 (Depo. Topic No. 21) at 7.)  Asetek designated Mr. Eriksen for this topic (*see* Ex. 25), who refused to answer questions from CoolIT's counsel on this issue under the veil of "privilege" and never mentioned Gen 3 in this context.  (*See* Ex. 26 (8/25/2021 Eriksen Depo. Tr.) at 189:15-194:19.)  Mr. Eriksen should not now be permitted to testify to this topic at trial.

Asetek's arguments against excluding Dr. Tuckerman's opinions on the CoolerMaster Liquid 240R product are also unavailing because, as discussed in CoolIT's opening brief, he does not know

---

[6] As discussed in CoolIT's opening brief, Dr. Tuckerman did not speak to anyone at Asetek, including Mr. Eriksen.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

9.

CASE NO. 3-19-CV-00410-EMC
DEFENDANTS' REPLY ISO MOTION
TO EXCLUDE TUCKERMAN

1    whether this product infringes the Asserted CoolIT Patents or if Asetek's customers would find it

2    acceptable.  Asetek admits that Dr. Tuckerman only assumes that this product does not infringe based

3    on representations again *from Asetek's counsel*.   Paragraph 84 does not refer to any deposition

4    testimony in support of Dr. Tuckerman's "understanding," let alone the citations that the Opposition

5    now provides.  Attorney representations, a form of hearsay from a non-technical and interested party,

6    are not a reliable basis for forming an expert opinion under Fed. R. Evid. 703.  *E.g.*, *Orthoflex, Inc. v.*

7    *ThermoTek, Inc.*, 986 F. Supp. 2d 776, 798-99 (N.D. Tex. 2013) ("Although in forming an independent

8    opinion an expert can rely on information provided by a party's attorney, an expert cannot forgo his

9    own independent analysis and rely exclusively on what an interested party tells him."); *DataQuill*,

10   2003 WL 737785, at *4 ("We doubt the value to the trier of fact of a hired expert's opinion when the

11   party hiring him has put words in his mouth … leaving him, in essence, a highly qualified puppet.");

12   *Numatics, Inc. v. Balluff, Inc.*, 66 F. Supp. 3d 934, 941-42 (E.D. Mich. 2014).

13          Dr. Tuckerman also did nothing to confirm whether the CoolerMaster Liquid 240R product

14   would be acceptable to Asetek customers. He never talked to anyone at Asetek, conducted any surveys

15   to determine Asetek customer requirements, or laid hands on the CoolerMaster Liquid 240R product

16   so he could reasonably determine the technical differences between the CoolerMaster product and

17   Asetek's Gen 4, 5, 6, and 7 products, and whether those differences would have been acceptable to

18   Asetek's customers.  (Ex. 3 at 79:22-81:1, 82:16-23.)  He relies purely on a CoolIT testing document

19   that shows the CoolerMaster Liquid 240R product has ***worse*** thermal performance than NZXT Kraken

20   x53, an Asetek Gen 7 product accused of infringement in this case.  (*See* ECF No. 421-3, Ex. F at 5;

21   *see also* Ex. 27 (CoolIT's 11/17/2020 Infringement Contentions) at 3.)  Accordingly, Dr. Tuckerman's

22   opinions on whether Asetek's Gen 3 product and the CoolerMaster Liquid 240R are acceptable non-

23   infringement alternatives should be excluded.

24          **C.      Asetek marshals inapposite case law and fails to account for the *totality* of indicia**
            **suggesting Dr. Tuckerman did not "prepare" his reports under Fed. R. Civ. P. 26**
25
            Proof that Dr. Tuckerman did not "prepare" his reports lies in what the Opposition *does not*
26
     say.[7]  Asetek does not dispute that the charts attached to Dr. Tuckerman's Invalidity Report recycle
27

28   ───────────────────
     [7] No rational actor would openly admit to nominal participation in preparing their reports, and so the

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

10.

CASE NO. 3-19-CV-00410-EMC
DEFENDANTS' REPLY ISO MOTION
TO EXCLUDE TUCKERMAN

1    annotated mappings from Dr. Tilton's expert declaration in IPR2020-00825 (not cited in Dr.

2    Tuckerman's Materials Considered for his Invalidity Report).  Nor does Asetek contest that paragraphs

3    48 and 50 of Dr. Tuckerman's Non-Infringement Report are virtually verbatim copies of paragraphs

4    2 and 4 of the Corrected Supplemental Declaration from Dr. Tilton in IPR2020-00825 (not cited in

5    Dr. Tuckerman's Materials Considered for his Non-Infringement Rebuttal Report).  Asetek does not

6    dispute that its counsel penned Dr. Tilton's initial drafts.  Rather, Asetek reproduces testimony

7    showing Dr. Tuckerman evaded questions to quantify how much of his report he wrote and/or changed

8    after misrepresenting to CoolIT's counsel under oath that he wrote his report.  (Opp. at 16.)

9         Asetek justifies Dr. Tuckerman's unfamiliarity with his reports through a series of excuses and

10    *ad hominem* attacks on CoolIT's counsel.  None are persuasive.  Asetek claims that Dr. Tuckerman

11    was "thrown off by IPR jargon and procedural terms such as 'Final Written Decision,'" but that does

12    not explain why he tried to conflate an expert IPR declaration—which he clearly knows about given

13    the Opposition *admits he had prepared one for Asetek before* (*see* Opp. at 14)—with a tribunal

14    decision.  A more plausible explanation is that Dr. Tuckerman realized during his deposition that

15    Asetek's counsel ported Dr. Tilton's opinions into his expert report, and he ran damage control.

16         Asetek offers little explanation (beyond attacking counsel) to demystify why Dr. Tuckerman

17    (1) did not understand basic obviousness concepts, including his grounds, despite purporting to offer

18    his own obviousness opinions; or (2) why he took inordinately long to answer basic questions about

19    his reports (if he did at all).[8]  Likewise, the Opposition is silent on why two paragraphs from Dr.

20    Tilton's IPR declaration appear nearly verbatim in Dr. Tuckerman's report, except to echo Dr.

21    Tuckerman's testimony that there is "no clearer or better way to put" almost 300 words of text.[9]

22    Asetek seems to suggest that Dr. Tuckerman's behavior can be explained away because he "submitted

23

24    proper inquiry should consider more than Dr. Tuckerman's bald testimony; it requires close attention
     to detail within the record generally.

25    [8] Dr. Tuckerman's lack of familiarity with basic obviousness concepts is curious, given that he
     regularly uses terms of art in patent law throughout both reports. (*See, e.g.*, Ex. 8, ¶ 48 ("inherent
     disclosure"), ¶¶ 47, 52, 59 ("written description support"); Ex. 1, ¶¶ 31, 66, 76, 114 ("reasonable

26    expectation of success"), ¶¶ 66, 76 ("rearrangement/reconfiguration of prior art elements according to
     known methods to obtain predictable results").)

27    [9] The first three sentences in paragraph 49 in Dr. Tuckerman's Non-Infringement Report are also
     virtually verbatim to paragraph 3 in Dr. Tilton's Corrected Supplemental Declaration. (*Compare* Ex.

28    8, ¶ 49, *with* Ex. 17, ¶ 3.)

1   four lengthy reports, covering a range of subject matter" and had not worked as an expert before.

2   (Opp. at 17.)  But Dr. Tuckerman's inexperience, while relatable, cannot legitimize Asetek's failure

3   to satisfy its Rule 26 obligations.  Moreover, Dr. Tuckerman and Asetek's counsel set Dr. Tuckerman's

4   deposition schedule where he sat for four depositions across two weeks, where each deposition was

5   directed to a single report. Dr. Tuckerman had adequate time to prepare, if he had prepared his reports.

6           Asetek attacks individual examples from CoolIT's opening brief, citing to *Accentra*, *Icon-IP*,

7   *NetFuel* and *Seitz*, but none of these cases present facts evincing the multiple indicia of a Rule 26

8   violation present here and discussed in CoolIT's briefs.  In *NetFuel*, the record demonstrated the expert

9   drafted significant parts of his report, whereas Dr. Tuckerman admits Asetek's counsel wrote his initial

10  drafts here.  The *Accentra* court denied exclusion in a "close call" where the expert's participation

11  approached "the limits of what Rule 26(a)(2)(B) will allow" for a five-page report at issue where the

12  expert verbally discussed with counsel her opinions while counsel drafted the report at the same time

13  over three-to-four hours.  *NetFuel* and *Accentra* are a far cry from the present circumstances, where

14  Asetek's counsel penned the first drafts of two reports that collectively span hundreds of pages.

15          *Sietz* similarly discusses a scenario where counsel wrote the first draft but "the substantive

16  content was based on what [the expert] communicated to [counsel]" *after* the expert reviewed relevant

17  material, had numerous meetings with counsel, and formed his own opinions on the matter. Contrary

18  to *Sietz*, Dr. Tuckerman's testimony, however, identifies that most of the "back and forth" occurred

19  *after* the initial drafts.  Similarly, the court in *Icon-IP* only declined to strike an expert report under

20  Rule 37 where information, analysis, and opinions in the report came from the expert, inapposite to

21  the present facts where Dr. Tilton's opinions appear (sometimes verbatim) throughout Dr.

22  Tuckerman's reports.  Asetek also relies on *NetFuel* to justify including Dr. Tilton's opinions in Dr.

23  Tuckerman's Non-Infringement Rebuttal Report.  But the court in *NetFuel* agreed with the *Icon-IP*

24  decision because claim charts were necessarily directed to the same claims and prior art references.

25  That is fundamentally different than mirroring *annotations* to prior art references or verbatim copying

26  of technical explanations from another expert in an IPR that Dr. Tuckerman never participated in.

27          **D.      Dr. Tuckerman's DOE opinions are demonstratively unreliable**

28          Contrary to Asetek's incorrect assertion, Dr. Tuckerman's DOE opinions on "curved" versus

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

12.

CASE NO. 3-19-CV-00410-EMC
DEFENDANTS' REPLY ISO MOTION
TO EXCLUDE TUCKERMAN

1    "straight" blades do not, and cannot, stand on their own.   The reason is straightforward—

2    Dr. Tuckerman never performed the independent function-way-result test nor employed the

3    insubstantial difference methodology *required* under DOE.   (*See, e.g.*, Opp. at 20 ("there is no test or

4    methodology involved in Dr. Tuckerman's DOE opinions"); *see also* ECF No. 425 (Asetek Opp. to

5    Mtn. to Excl. Stein) at 5-6 ("*Dr. Tuckerman … relied on Dr. Stein's report and opinion … under the*

6    *doctrine of equivalents.*") (emphasis added).)   As explained in the co-pending *Daubert* motion on the

7    Expert Report of Dr. Carl-Frederik Stein Regarding Pump Impeller Designs and Performances and the

8    reply in support, Dr. Stein's opinions are irrelevant and unreliable for simulating the wrong things.

9    And thus Dr. Tuckerman's opinions, to the extent they rely on Dr. Stein should also be stricken.

10         Even without reliance on Dr. Stein's opinion, Dr. Tuckerman's opinions are unreliable because

11    they are based on a demonstratively illogical hypothetical claim that equates "curved blades" to "non-

12    radial blades."   Indeed, Dr. Tuckerman admitted that his DOE opinions were based on incorrect

13    definitions of "radial" versus "non-radial" blades and attempted to correct them during his deposition.

14    Dr. Stein acknowledged the error by calling Dr. Tuckerman's definitions a "typo" and offering his

15    own definitions of "radial" versus "non-radial" blades.   (Opening Br. at 21; Ex. 20 at 68:3-18.)

16    Asetek's only answer is to try to deny these mistakes.   But they establish the unreliability of the reports.

17   **1.      Dr. Tuckerman's DOE opinions are unreliable because the "curved**
         **blades" limitation captures its equivalents' antithesis--"radial blades"**
18

19         In its opposition, Asetek does not, nor can it, provide a logical basis for Dr. Tuckerman's and

20    Dr. Stein's arguments that "curved blades" are equivalents of "non-radial" blades.   But common sense

21    dictates that "the range of equivalents cannot be divorced from the scope of the claims." *Vehicular*

22    *Techs. Corp. v. Titan Wheel Int'l, Inc.*, 212 F.3d 1377, 1382 (Fed. Cir. 2000).   The two experts'

23    "curved" equivalents are so impermissibly divorced from the original limitation's admitted *nonlinear*

24    requirement that "curved blades" can now capture their equivalents' antithesis: "radial blades" under

25    the doctors' definitions.   (*See* Ex. 19 (12/30/2021 Tuckerman Tr.) at 53:6-8 ("curved blade [is] *not*

26    everywhere *linear*.") and 57:1-3 ("curve … implies … some *nonlinearity*") (emphasis added).)

27         As an initial matter, Dr. Tuckerman's and Dr. Stein's various definitions of straight/radial

28

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

13.

CASE NO. 3-19-CV-00410-EMC
DEFENDANTS' REPLY ISO MOTION
TO EXCLUDE TUCKERMAN

versus curved/non-radial blades have something in common.   They are all based on a *two-dimensional* view of the impeller and its blades by observing them along the impeller's axis of rotation, as shown on the right. (*See, e.g.,* Ex. 28 (12/31/2021 Tuckerman Tr.) at 198:12-15 ("the infringement report was in the context of a … *two-dimensional* projection") (emphasis added); *see also* Ex. 19 (12/30/2021 Tuckerman Tr.) at 53:9-23 ("Q What is your definition of radial blades? A … as I'm looking down on the axis of rotation, … the blades that I'm looking at would need to be along the … the radius of that circle."); *see also id.* at 55:22-56:13; Ex. 29 (01/12/2022 Stein Tr.) at 179:1-3 and 284:18-24.



Ex. 11 at 63 (excerpt; thin red arrow original; eye and thick red arrow added)

But as admitted by both Dr. Tuckerman and Dr. Stein, the impeller blades are three dimensional objects.  (*See* Ex. 28 (12/31/2021 Tuckerman Tr.) at 198:23-24; *see also* Ex. 29 (01/12/2021 Stein Tr.) at 242:15-21.)  By looking at the blades only from a two-dimensional perspective along the impeller's axis of rotation when defining the "curved" equivalents, they cause the original "curved blades" limitation to capture blades that are "radial" in two dimensions but are curved in the third dimension, as shown on the right.  (*See* Ex. 29 (01/12/2021 Stein Tr.) at 240:2-11 ("If the impeller is viewed from the bottom, in the same axis of rotation …, does the impeller, as shown on Page 2 in Exhibit 356, satisfy your definition of a radial impeller? … THE WITNESS: If viewed as a *two-dimensional* on the x, this would be *radial*.") (emphasis added; objection omitted); *see also id.* at 239:7-9 and 239:24-240:1 ("Seen as a two-dimensional thing, if it was a two-dimensional structure like this, it would be radial with my definition."); *see also id.* at 244:17-245:2 (Q. … Dr. Stein, … would you agree that the impeller shown in Exhibit 356 to have curved blades? … THE WITNESS: As I said before, *this plane has blades that are* <u>*curved*</u> in the r, zed direction.") (emphasis added; objection omitted).)  This issue conclusively demonstrates how unreliable Dr. Tuckerman's and Dr. Stein's opinions based on their methodology of defining the

Ex. 30 (Exhibit 356 (excerpts))

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

14.

CASE NO. 3-19-CV-00410-EMC
DEFENDANTS' REPLY ISO MOTION
TO EXCLUDE TUCKERMAN

1    "curved" equivalents only on a two-dimensional plane are, when in reality impeller blades are three

2    dimensional objects, as they also admit.[10]   Thus, Dr. Tuckerman's methodology in defining the

3    "curved" equivalents is unreliable, causing his DOE opinions to be fundamentally unreliable.   His

4    opinions, therefore, should be stricken.

5              **2.      Asetek's opposition does not cure Dr. Tuckerman's illogical definitions of
                  the "curved" equivalents nor their inconsistencies**

6

7              Asetek's opposition attempts to provide various excuses for the lack of reliability in Dr.

8    Tuckerman's DOE opinions, but none can save his opinions from being stricken.   For example, Asetek

9    cites *Wilson Sporting Goods Co. v. David Geoffrey & Associates* for the proposition that the

10   equivalency doctrine is to expand the right to exclude to equivalents of what is claimed.   904 F.2d 677,

11   684-85 (Fed. Cir. 1990).   While such proposition is correct by itself without considering other factors,

12   that is not what Asetek's DOE theory does because, as explained above, the original "curved"

13   limitation is now being used to literally captures its antithesis: "radial blades."   Asetek's other excuses

14   are all similar.   For example, both experts argued that straight and radial are the same in the undefined

15   "pump technology," so curved is equivalent to non-radial, etc.   But as already demonstrated above,

16   defining the equivalents of "curved" as "non-radial" does not work in the real world that is three

17   dimensional.   Asetek also argues that Dr. Tuckerman's DOE opinions do not need to be examined by

18   settled case law on how to determine reliability.   The brief then adds unsupported attorney argument

19   that "[t]hey simply used different coordinate systems to define the term—Dr. Tuckerman using a cartesian

20   coordinate system $(x, y, z)$; Dr. Stein used a cylindrical coordinate system $(r, \theta, z)$."   (Opp. at 25.)   But

21   none of these excuses are supported, nor can they save Dr. Tuckerman's unreliable DOE opinions.

22   **III.    CONCLUSION**

23            For the foregoing reasons, Defendants respectfully request that the Court grant their Motion

24   and exclude Dr. Tuckerman's opinions discussed in its Motion (ECF No. 397).

25

26

27   [10] Asetek's expert attempted to explain away this issue by claiming *radial* but "curved" blades were
     not used in "pump technology."   (Ex. 29 (01/12/2022 Stein Tr.) at 285:22-286:23.)   But the '362
     patent has no clear and unmistakable disclaimer of the captured blades. *Aylus Networks, Inc. v.*
28   *Apple Inc.*, 856 F.3d 1353, 1359 (Fed. Cir. 2017). "Pump technology" was also undefined.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

15.

CASE NO. 3-19-CV-00410-EMC
DEFENDANTS' REPLY ISO MOTION
TO EXCLUDE TUCKERMAN

1

2     Dated:          April 21, 2022                    /s/ Reuben H. Chen

3                                                        COOLEY LLP
                                                         HEIDI L. KEEFE (178960)
4                                                        (hkeefe@cooley.com)
                                                         REUBEN H. CHEN (228725)
5                                                        (rchen@cooley.com)
                                                         DANIEL J. KNAUSS (267414)
6                                                        (dknauss@cooley.com)
                                                         ALEXANDRA LEEPER (307310)
7                                                        (aleeper@cooley.com)
                                                         DEEPA KANNAPPAN (313573)
8                                                        (dkannappan@cooley.com)
                                                         3175 Hanover Street
9                                                        Palo Alto, CA  94304-1130
                                                         Telephone:   (650) 843-5000
10                                                       Facsimile:    (650) 849-7400

11                                                       DUSTIN M. KNIGHT (*pro hac vice*)
                                                         (dknight@cooley.com)
12                                                       11951 Freedom Drive, 16th Floor
                                                         Reston, VA 20190
13                                                       Telephone: (703) 456-8000
                                                         Facsimile: (703) 456-8100

14                                                       *Attorneys for Defendant and Counter-claimant*
                                                         *COOLIT SYSTEMS, INC. and Defendants*
15                                                       *CORSAIR GAMING, INC. and CORSAIR*
                                                         *MEMORY, INC.*
16
                                                         GREENBERG TRAURIG, LLP
17                                                       KYLE D. CHEN (SBN 239501)
                                                         (kchen@gtlaw.com)
18                                                       1900 University Avenue
                                                         East Palo Alto, CA 94303
19                                                       Telephone: (650) 289-7887
                                                         Facsimile: (650) 328-8508
20
                                                         *Attorneys for Defendant CoolIT Systems, Inc.*
21

22

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

16.