# EXHIBIT 23

```
 1                UNITED STATES DISTRICT COURT
 2               NORTHERN DISTRICT OF CALIFORNIA
 3                    SAN FRANCISCO DIVISION
 4                 CASE NO:  3:19-CV-0410-EMC
 5
 6    ASETEK DANMARK A/S,                              )
                                                       )
 7            PLAINTIFF AND                            )
              COUNTER-DEFENDANT,                       )
 8                                                     )
          V.                                           )
 9                                                     )
      COOLIT SYSTEMS, INC.,                            )
10                                                     )
              DEFENDANT AND                            )
11            COUNTER-CLAIMANT,                        )
                                                       )
12    COOLIT SYSTEMS USA INC., COOLIT                  )
      SYSTEMS ASIA PACIFIC LIMITED, COOLIT             )
13    SYSTEMS (SHENZHEN) CO., LTD.,                    )
                                                       )
14              DEFENDANTS,                            )
                                                       )
15    CORSAIR GAMING INC., AND CORSAIR                 )
      MEMORY, INC.,                                    )
16                                                     )
                DEFENDANTS.                            )
17    _____            )
18
19            VIDEOTAPED REMOTE ZOOM DEPOSITION
20                 HIMANSHU POKHARNA, PH.D.
21                 MONDAY, JANUARY 10, 2022
22
23
24    JOB NO. 5008259
25    REPORTED BY:  DAYNA HESTER, C.S.R. 9970
```

Page 1

```
 1    VIDEOTAPED REMOTE ZOOM DEPOSITION OF HIMANSHU
 2    POKHARNA, PH.D., TAKEN ON BEHALF OF PLAINTIFF AND
 3    COUNTER-DEFENDANT ASETEK DANMARK A/S, AT 9:05 A.M.,
 4    MONDAY, JANUARY 10, 2022, WITH THE WITNESS, COURT
 5    REPORTER, AND VIDEOGRAPHER APPEARING REMOTELY VIA
 6    ZOOM VIDEOCONFERENCE, BEFORE DAYNA HESTER, C.S.R.
 7    NO. 9970.
 8
 9    APPEARANCES OF COUNSEL:
10    FOR PLAINTIFF AND COUNTER-DEFENDANT
      ASETEK DANMARK A/S:
11
          FINNEGAN, HENDERSON, FARABOW,
12        GARRETT & DUNNER LLP
          BY:  ARPITA BHATTACHARYYA, ESQ.
13             (PRESENT VIA ZOOM VIDEOCONFERENCE)
          3300 HILLVIEW AVENUE, 2ND FLOOR
14        PALO ALTO, CALIFORNIA  94304-1203
          (650) 849-6600
15        ARPITA.BHATTACHARYYA@FINNEGAN.COM
16
      FOR DEFENDANTS CORSAIR GAMING INC., CORSAIR MEMORY
17    INC., AND COOLIT SYSTEMS INC. AND
      THE WITNESS:
18
          DICKINSON WRIGHT PLLC
19        BY:  KENNETH DYER, ESQ.
               (PRESENT VIA ZOOM VIDEOCONFERENCE)
20        800 WEST CALIFORNIA AVENUE, SUITE 110
          SUNNYVALE, CALIFORNIA  94086
21        (408) 701-6170
          KDYER@DICKINSONWRIGHT.COM
22
23
24
25       -- APPEARANCES CONTINUED ON NEXT PAGE --
```

Page 2

```
 1     APPEARANCES OF COUNSEL (CONTINUED):
 2     FOR DEFENDANTS CORSAIR GAMING INC., CORSAIR MEMORY
       INC., AND COOLIT SYSTEMS INC. AND
 3     THE WITNESS:
 4          GREENBERG TAURIG, LLP
            BY:  KYLE D. CHEN, ESQ.
 5               (NOT PRESENT)
            1900 UNIVERSITY AVENUE, 5TH FLOOR
 6          EAST PALO ALTO, CALIFORNIA  94303-2283
            (650) 289-7887
 7          KCHEN@GTLAW.COM
 8
       FOR DEFENDANTS AND COUNTER-CLAIMANT COOLIT ENTITIES
 9     AND CORSAIR ENTITIES:
10          COOLEY LLP
            BY:  REUBEN CHEN, ESQ.
11               (NOT PRESENT)
            3175 HANOVER STREET
12          PALO ALTO, CALIFORNIA   94304
            (650) 843-5000
13          RCHEN@COOLEY.COM
14
       ALSO PRESENT:
15
            SOSEH KEVORKIAN, VIDEOGRAPHER
16          (PRESENT VIA ZOOM VIDEOCONFERENCE)
17
18
19
20
21
22
23
24
25
                                              Page 3
```

```
1              THE WITNESS:  Figure 7 contradicts that.        13:26
2              THE REPORTER:  Thank you.                        13:26
3     BY MS. BHATTACHARYYA:                                     13:27
4        Q.   What is the basis for your statement that         13:27
5     Figure 7 contradicts Figure 6 of Bonde?                   13:27
6              MR. DYER:  Objection.  Asked and answered.       13:27
7              THE WITNESS:  Because of two reasons.            13:27
8              One, the Channel 92 are pointed to twice         13:27
9     in both sections of Figure 7.                             13:27
10             And on top of that, he points to two             13:27
11    separate sections as -- and I will find the exact         13:27
12    phrase he used, but it's in Column 7 of what you          13:28
13    read -- as kind of separate entrances in                  13:28
14    microchannels that are separately marked as 92 in         13:28
15    those two sections.                                       13:28
16             And I may be incorrect, but I do not             13:28
17    recall the disclosure saying they are continuous or       13:28
18    they are discontinuous.                                   13:28
19    BY MS. BHATTACHARYYA:                                     13:28
20       Q.   Let's turn to Paragraph 74 of your expert         13:28
21    report, which is Exhibit 349.                             13:28
22       A.   Yeah.                                             13:28
23       Q.   Aside from the time when you inspected the        13:28
24    Antarctica device in Asetek's counsel's office in         13:29
25    Palo Alto, have you -- have you seen or inspected an      13:29
```

Page 117

| | | |
|---|---|---|
| 1 | Antarctica device at any other time? | 13:29 |
| 2 |     A.   No, I have not. | 13:29 |
| 3 |     Q.   When you inspected the Antarctica device | 13:29 |
| 4 | in Asetek's counsel's office, you took some | 13:29 |
| 5 | measurements with a caliper of the width between the | 13:29 |
| 6 | microchannels in the Antarctica device; right? | 13:29 |
| 7 |     A.   Yeah.  Yeah.  The gap between the | 13:29 |
| 8 | microchannel -- the gap between the two fins. | 13:29 |
| 9 |     THE REPORTER:  The gap between the two -- | 13:29 |
| 10 | the gap between the two... | 13:29 |
| 11 |     THE WITNESS:  The two fins.  Two fins. | 13:29 |
| 12 | BY MS. BHATTACHARYYA: | 13:30 |
| 13 |     Q.   When you measured the -- the gap between | 13:30 |
| 14 | the two adjacent fins, you took that measurement | 13:30 |
| 15 | at -- at the top of the gap between the fins; right? | 13:30 |
| 16 |     A.   Yes.  Those gaps appeared to be machined | 13:30 |
| 17 | where I would expect the gap on top to be the | 13:30 |
| 18 | representative of the entire gap. | 13:30 |
| 19 |     If at all, the -- because of -- the reason | 13:30 |
| 20 | they are machined and not cast or not extruded, the | 13:30 |
| 21 | top might be the narrowest point on this. | 13:30 |
| 22 |     And, therefore, I inspected the device for | 13:30 |
| 23 | its substantial kind of gap in uniform because, | 13:31 |
| 24 | again, if it were not a machined part and extruded | 13:31 |
| 25 | part, like the aluminum channels might be, then I | 13:31 |

Page 118

```
 1    would inspect both the bottom and the top.  Then I      13:31
 2    would get detailed measurement of bottom and top        13:31
 3    because they would be different.  In this case, they    13:31
 4    were the same.                                          13:31
 5            And, therefore, what we have recorded here      13:31
 6    is the top of the channels.  There is no machine        13:31
 7    that could -- well, let me take that back.              13:31
 8            There is no mass-produced machining.  This      13:31
 9    was clearly made using -- it seemed to me a saw or      13:31
10    some sort of end mill.  And those saws and end mills    13:31
11    should produce channels that have uniform gap           13:31
12    between them.  And I visually inspected and verified    13:31
13    that to the best of my ability that, you know, a        13:31
14    human eye can.                                          13:32
15            And, therefore, I took the measurements         13:32
16    where it was easy to take measurements without          13:32
17    introducing other errors.                               13:32
18       Q.   You did not take any measurements at the        13:32
19    base of the -- the microchannels on the Antarctica      13:32
20    device; right?                                          13:32
21       A.   It's not reasonable because at the base         13:32
22    there was a little bit of a radius.  And, you know,     13:32
23    that's not really representative of the channel gap.    13:32
24    And I took it in a place which is representative of     13:32
25    the gap and not because -- in a U channel, right,       13:32
```

Veritext Legal Solutions
866 299-5127

|    |                                                              |       |
|----|--------------------------------------------------------------|-------|
| 1  | you could always go back and -- you know, in a U             | 13:32 |
| 2  | take some distance measurement that is kind of               | 13:32 |
| 3  | like -- you know, could be anything.                         | 13:32 |
| 4  |         But to a person of ordinary skill in the             | 13:33 |
| 5  | art, a mechanical engineer who understands how these         | 13:33 |
| 6  | devices function, how these devices are machined, I          | 13:33 |
| 7  | believe I took the measurement at the right place,           | 13:33 |
| 8  | which is the top.                                            | 13:33 |
| 9  |    Q.   And I'm not asking you what is the best              | 13:33 |
| 10 | way to take measurement.                                     | 13:33 |
| 11 |         I -- I just want to get it -- I just want            | 13:33 |
| 12 | to note, when you inspected the Antarctica device in         | 13:33 |
| 13 | Asetek's counsel's office, you only took                     | 13:33 |
| 14 | measurements at the -- at the top of the                     | 13:33 |
| 15 | microchannels and you did not take any measurements          | 13:33 |
| 16 | at the base; right?                                          | 13:33 |
| 17 |    A.   Yeah.  Because at the base it is fraught             | 13:33 |
| 18 | with most errors and -- and inconsistencies, which           | 13:33 |
| 19 | are pretty apparent in this entire argument from --          | 13:33 |
| 20 | from Dr. Tuckerman, which, you know, sometimes talks         | 13:33 |
| 21 | about .6 to .7 and sometimes talk about .9 to                | 13:33 |
| 22 | point -- 1.0.  And sometimes talks about .93.                | 13:33 |
| 23 |         But he -- I can explain away a lot of                | 13:34 |
| 24 | those inconsistencies because the way the                    | 13:34 |
| 25 | measurement was done was not in a place that was             | 13:34 |

Page 120

```
 1    appropriate for the measurement of the gap of the      13:34
 2    channel.                                               13:34
 3            But to answer your question, yes, I did        13:34
 4    not measure it at a place where I did not think it     13:34
 5    was reasonable to measure that gap.                    13:34
 6        Q.   So you -- so you did not measure the --       13:34
 7    the microchannels of the Antarctica at the base;       13:34
 8    right?                                                 13:34
 9        A.   Yeah.  Not at the point where there is        13:34
10    like -- there is a possibility of inconsistent         13:34
11    measurement, where there is a possibility of making    13:34
12    a measurement that is smaller than the tool that was   13:34
13    used to create that gap.  That's clearly               13:34
14    inconsistent and not really representative of the      13:34
15    gap.                                                   13:34
16            The tool was .93 based on the testimony        13:34
17    that I read from Dr. Tuckerman.  And he measured .9.   13:34
18    There is no person -- a person of ordinary skill --    13:35
19    or there is no reasonable person who can say that      13:35
20    they can make a gap using a tool to make that gap      13:35
21    that is smaller than the tool itself.  Just simply     13:35
22    physically impossible.                                 13:35
23            And that's the reason that I did not take      13:35
24    a measurement at a place which is                      13:35
25    indeterminate because it has a feature that is, you    13:35
```

Page 121

| | | |
|---|---|---|
| 1 | know, just impossible to really measure. | 13:35 |
| 2 | I can measure literally, probably even, | 13:35 |
| 3 | you know, zero width at -- at the -- you know, at | 13:35 |
| 4 | the bottom of that particular section.  Right.  That | 13:35 |
| 5 | is not representative of the gap. | 13:35 |
| 6 | To a person of ordinary skill, when you | 13:35 |
| 7 | see a gap, this is the gap that is present between | 13:35 |
| 8 | those two channels.  And that's what I measured. | 13:35 |
| 9 | Q.   Dr. Pokharna, did you or did you not take | 13:35 |
| 10 | any measurements of the microchannels in the | 13:35 |
| 11 | Antarctica device at the base of the channel? | 13:36 |
| 12 | A.   The base of the channels are | 13:36 |
| 13 | indeterminant; so I did not take any measurement in | 13:36 |
| 14 | the place where I did not think it made any sense. | 13:36 |
| 15 | Q.   Dr. Pokharna, did you or did you not take | 13:36 |
| 16 | any measurements of the microchannels in the | 13:36 |
| 17 | Antarctica device at the base of the microchannel? | 13:36 |
| 18 | MR. DYER:  Objection.  Asked and answered. | 13:36 |
| 19 | THE WITNESS:  I could take a zero | 13:36 |
| 20 | measurement also at the base, and I think that is | 13:36 |
| 21 | also nonsensical. | 13:36 |
| 22 | BY MS. BHATTACHARYYA: | 13:36 |
| 23 | Q.   Dr. Pokharna, I'll keep asking the | 13:36 |
| 24 | question.  If you want to -- did you or did you not | 13:36 |
| 25 | take any measurements of the width of the | 13:36 |

Page 122

|    |                                                              |       |
|----|--------------------------------------------------------------|-------|
| 1  | microchannels in the Antarctica device at the base           | 13:36 |
| 2  | of those channels?                                           | 13:36 |
| 3  | MR. DYER:  Same objection.                                   | 13:37 |
| 4  | THE WITNESS:  Like I said before, at the                     | 13:37 |
| 5  | base I can measure even zero, and that's not                 | 13:37 |
| 6  | something that I would put my reputation on by               | 13:37 |
| 7  | calling something what is not.                               | 13:37 |
| 8  | I took the measurement where it made                         | 13:37 |
| 9  | sense.  And -- and -- and verified that I believe at         | 13:37 |
| 10 | least eight times, and I stand behind my                     | 13:37 |
| 11 | measurements.                                                | 13:37 |
| 12 | BY MS. BHATTACHARYYA:                                        | 13:37 |
| 13 | Q.  Again, that doesn't answer my question.                  | 13:37 |
| 14 | I'll ask you a different question.                           | 13:37 |
| 15 | Would you agree, Dr. Pokharna, that when                     | 13:37 |
| 16 | you inspected the Antarctica device in Asetek's              | 13:37 |
| 17 | counsel's office, you did not take any measurements          | 13:37 |
| 18 | of the width of the microchannels in the Antarctica          | 13:37 |
| 19 | device at the base of those microchannels?                   | 13:37 |
| 20 | A.  It's something that I do not think that I                | 13:37 |
| 21 | could take any consistent measurements on.  And,             | 13:37 |
| 22 | therefore, I did not take any measurements on a              | 13:37 |
| 23 | place which is indeterminant and is going to be              | 13:37 |
| 24 | subjected to an incorrect and erroneous measurement.         | 13:37 |
| 25 | So I -- yeah.  I mean, since I don't even                    | 13:38 |

Page 123

```
 1    providing rebuttal testimony in the future depending     14:49
 2    on the Court's ruling on any upcoming motion to          14:49
 3    exclude or strike.                                        14:49
 4            Thank you.                                        14:49
 5            MS. BHATTACHARYYA:  No further questions         14:49
 6    for Dr. Pokharna.                                         14:49
 7            MR. DYER:  Okay.  And I have no questions        14:49
 8    for Dr. Pokharna.                                         14:49
 9            MS. BHATTACHARYYA:  Thank you,                   14:49
10    Dr. Pokharna.                                             14:49
11            THE VIDEOGRAPHER:  Okay.                         14:49
12            THE WITNESS:  Thank you, Counselors.             14:49
13            Thank you, Madam Reporter.                        14:49
14            THE VIDEOGRAPHER:  We are going off the          14:49
15    record at 2:49 p.m.                                       14:49
16            And this concludes today's testimony given       14:49
17    by Dr. Himanshu Pokharna.  The total number of media     14:49
18    units used was seven and will be retained by              14:49
19    Veritext.                                                 14:49
20            (Whereupon, at 2:49 p.m., the deposition
21            of HIMANSHU POKHARNA, Ph.D. was
22            adjourned.)
23                     --- oOo ---
24
25
```

Page 157

```
 1    STATE OF CALIFORNIA                              )
 2    COUNTY OF LOS ANGELES                            )  SS.
 3
 4              I, Dayna Hester, C.S.R. No. 9970, in
 5    and for the State of California, do hereby certify:
 6              That, prior to being examined, the witness
 7    named in the foregoing deposition was by me duly
 8    sworn to testify to the truth, the whole truth, and
 9    nothing but the truth;
10              That said deposition was taken down by me
11    in shorthand at the time and place therein named and
12    thereafter reduced to typewriting under my
13    direction, and the same is a true, correct, and
14    complete transcript of said proceedings;
15              That if the foregoing pertains to the
16    original transcript of a deposition in a Federal
17    Case, before completion of the proceedings, review
18    of the transcript {  } was {  } was not required;
19              I further certify that I am not interested
20    in the event of the action.
21              Witness my hand this 14th day of
22    January, 2022.
23
24                   Certified Shorthand Reporter
25                   for the State of California
```

Page 159