Robert F. McCauley (SBN 162056)
robert.mccauley@finnegan.com
Arpita Bhattacharyya (SBN 316454)
arpita.bhattacharyya@finnegan.com
Jeffrey D. Smyth (SBN 280665)
jeffrey.smyth@finnegan.com
**FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP**
3300 Hillview Avenue
Palo Alto, California 94304
Telephone: (650) 849-6600
Facsimile: (650) 849-6666

Attorneys for Plaintiff and Counterdefendant ASETEK DANMARK A/S and Counterdefendant ASETEK USA, INC.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

ASETEK DANMARK A/S,

Plaintiff and Counterdefendant,

ASETEK USA, INC.,

Counterdefendant,

v.

COOLIT SYSTEMS, INC.,

Defendant and Counterclaimant,

COOLIT SYSTEMS USA INC., COOLIT SYSTEMS ASIA PACIFIC LIMITED, COOLIT SYSTEMS (SHENZHEN) CO., LTD.,

Defendants,

CORSAIR GAMING, INC. and CORSAIR MEMORY, INC.,

Defendants.

CASE NO. 3:19-cv-00410-EMC

**ASETEK DANMARK A/S'S REPLY IN SUPPORT OF ITS MOTION FOR JUDICIAL ESTOPPEL TO PREVENT DEFENDANTS FROM TAKING NONINFRINGEMENT POSITIONS INCONSISTENT WITH PRIOR INVALIDITY POSITIONS**

Date: May 5, 2022
Time: 1:30 PM
Location: Courtroom 5, 17th Floor
Judge: Hon. Edward M. Chen

**REDACTED VERSION FOR PUBLIC FILING**

**TABLE OF CONTENTS**


I. INTRODUCTION ........................................................................................................1

II. ARGUMENT ...............................................................................................................2

A. Defendants' Purported Non-Infringement Position is Meritless ............................2

1. The prior art Ryu device is different from the structures of CoolIT's accused products ..........................................................................3

2. Defendants' expert's testimony and CoolIT's documents show that the part of the Tamriel that Defendants refer to as a second receptacle is instead a subcomponent of the "reservoir" in Tamriel ...............................5

3. Defendants' alleged non-infringement position is legally incorrect and their characterization of components within the "reservoir" as receptacles excludes preferred embodiments in the Asetek patents ...........7

4. CoolIT's "reservoir" arguments in the prior IPRs are completely inconsistent with their current non-infringement position.........................10

B. CoolIT Invalidated Asetek's Patents Based on a Collection of Components That Allegedly Formed a "Reservoir," and Defendants Should be Estopped From Taking a Contrary Non-Infringement Position ...........................................11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Accent Packaging, Inc. v. Leggett & Platt, Inc.*, 707 F.3d 1318 (Fed. Cir. 2013) .......... 9, 10

*Contour IP Holding, LLC v. GoPro, Inc.*, 3:17-cv-04738-WHO, 2021 WL 1022854 (N. D. Cal. Mar. 17, 2021) .......... 14

*Genentech, Inc. v. Chiron Corp.*, 112 F.3d 495 (Fed. Cir. 1997) .......... 7

*Gillette Co. v. Energizer Holdings, Inc.*, 405 F.3d 1367 (Fed. Cir. 2005) .......... 7

*New Hampshire v. Maine*, 532 U.S. 742 (2001) .......... 13

*Oxygenator Water Technologies, Inc. v. Tennant Company*, No. 20-cv-358 (ECT/HB), 2021 WL 3661587 (D. Minn. Aug. 18, 2021) .......... 14

*Samsung Elecs. Co., Ltd v. NVIDIA Corp.*, 160 F. Supp. 3d 866 (E.D. Va. 2015) .......... 14

*SkyHawke Techs., LLC v. Deca Int'l Corp.*, 828 F.3d 1373 (Fed. Cir. 2016) .......... 14

*Trustees of Columbia Univ.in City of New York v. NortonLifeLock, Inc.*, No. 3:13-cv-808, 2019 WL 7040931 (E.D. Va. Dec. 20, 2019) .......... 14

*Trustees in Bankr. of N. Am. Rubber Thread Co. v. United States*, 593 F.3d 1346 (Fed. Cir. 2010) .......... 13

*Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295 (Fed. Cir. 2007) .......... 9

## I. INTRODUCTION

Defendants contend that the argument Asetek is attempting to estop Defendants from making—that the claimed "reservoir" cannot include multiple components or subcomponents connected or integrated together—is "hypothetical," "not tethered to the actual infringement issue," and that there has been no dispute between the parties on whether multiple components or subcomponents "can be included within the 'reservoir.'" Dkt. 413 at 1, 3, 11. Not so, and Defendants' lengthy opposition to Asetek's motion, plus their prior attempt to estop Asetek from taking this position, show otherwise. Defendants also mischaracterize the actual non-infringement issue to avoid estoppel. The position that Asetek is attempting to estop Defendants from taking is not whether other components, such as the impeller, "can be included within the 'reservoir'"; rather, the actual issue is whether Defendants should be estopped from arguing that multiple components or subcomponents cannot be connected or integrated together to form the "reservoir," and they should be. *Id.* at 3.

If Defendants indeed do not intend to argue to the jury that multiple components or subcomponents cannot be integrated to form the "reservoir," then Defendants should not have any problem agreeing to the estoppel requested by Asetek. But they refuse to do that, and their reason seems clear. If Defendants lose their disputed non-infringement position that their accused products have "two separable receptacles" defining the claimed chambers (instead of a "single receptacle"), then Defendants will argue, contrary to their successful arguments to the PTAB, that the "reservoir" cannot have multiple components or subcomponents connected to form a single receptacle. Therefore, Asetek brought this estoppel motion to preclude Defendants from contradicting their representations to the PTAB by arguing to the Court and/or the jury that the "reservoir" cannot be formed by multiple components or subcomponents.

If Defendants indeed do not intend take (or potentially take) the position that a "reservoir" having multiple connected components or subcomponents cannot infringe the accused products, then Defendants should stipulate to that, but thus far they have refused to do so. Dkt. 342 at 9-12 (Defendants previously attempting to estop Asetek from arguing that "reservoir" can have multiple

connected components)[1]; *id.* at 22-28 and 41-45 (Defendants arguing they should not be collaterally or judicially estopped despite CoolIT's prior IPR positions that the "reservoir" in prior art references are formed by multiple components or subcomponents). Otherwise, Defendants should be estopped from having anyone testify to or argue that position to the jury or this Court because that argument will be contrary to the positions CoolIT advanced in the PTAB in IPRs against Asetek's patents.

## II. ARGUMENT

Knowing that Defendants will eventually argue that multiple components cannot form the claimed "reservoir," Asetek's motion correctly argued the following: "Through Dr. Abraham's noninfringement opinions, CoolIT is likely to take the position that multiple components cannot form the 'reservoir' recited in Asetek's claims." Dkt. 402 at 7. Instead of addressing Asetek's estoppel argument, Defendants' opposition improperly focuses on their purported non-infringement position that the accused products have "two separable receptacles" instead of a "single receptacle." But that is a non-sequitur. Asetek is well aware of Defendants' alleged non-infringement position, disagrees with it, and has addressed it separately in other papers (*see* Dkt. 400 and Dkt. 426-3). Nevertheless, Asetek is readdressing the impropriety of Defendants' alleged non-infringement position here to respond to their opposition, explain why their position is meritless, and explain why Defendants will inevitably resort to the argument that Asetek is asking the Court to estop Defendants from making.

### A. Defendants' Purported Non-Infringement Position is Meritless

Defendants' alleged non-infringement position that the accused products have "two separable receptacles" defining the chambers (instead of a "single receptacle") is meritless for several reasons. Based on prior filings in this case, Defendants are likely aware that their alleged non-infringement position will fail because: 1) the term "single receptacle" in the stipulated construction of "reservoir" does not preclude the presence of other smaller alleged receptacles within the larger receptacle forming the claimed "reservoir"; and/or 2) the component that Defendants refer to as a second smaller

[1]Defendants previously attempted to estop Asetek from arguing that "[a]n 'upper/pump chamber' and a 'lower/thermal exchange chamber' cannot be separable ***components*** screwed together, plugged or put together, or otherwise connected by tubing to become a single receptacle of the claimed 'reservoir.'" Dkt. 342 at 9 (emphasis added); *see also id.* ("The claimed 'reservoir' is . . . ***not two components*** . . . that are separable being screwed together.") (emphasis added); *see also id.* at 10 and 11.

receptacle within a larger receptacle is not actually a receptacle, rather it is a subcomponent of the "reservoir." Therefore, Defendants are attempting to evade estoppel and leave open the possibility of arguing to the jury that multiple components cannot be connected or integrated to form the claimed "reservoir." But Defendants should not be permitted to do that under estoppel law.

**1. The prior art Ryu device is different from the structures of CoolIT's accused products**

Defendants' estoppel arguments based on Ryu are meritless. This is because CoolIT's Tamriel design is distinctly different from Ryu. Dkt. 386-5, ¶153. Specifically, in Ryu, the pump device (pump driving unit 30) and the heat exchanging device (water jacket 20) are separate and independent modules that are stacked on top of each other. *Id*. In contrast, in the Tamriel, the subcomponent forming the upper/pump chamber is nestled *within* a single receptacle, i.e., the "reservoir," that also includes the lower/thermal exchange chamber. *Id.* That is, ***unlike Ryu's stacked components, the subcomponent defining the upper/pump chamber in Tamriel is housed within a larger single receptacle—the claimed "reservoir"—which also defines the lower/thermal exchange chamber.***

The following side-by-side annotated pictures of the Ryu and the Tamriel demonstrates the distinction between them:



Dkt. 386-5, ¶¶140, 141, 147, 148, 153 (annotations added).

In Ryu, pump driving unit 30 may be spatially separated from the water jacket 20, with the two stand-alone modules connected together by a "connection pipe (28)," as shown in Ryu Fig. 2(b) (above). In contrast, the subcomponent forming the upper/pump chamber in the Tamriel is permanently affixed to the "reservoir" housing with six screws and is not separable from the "reservoir" housing without significant fluid loss. Dkt. 386-5, ¶153. In addition to the screws in the Tamriel, there are mating features (referred to as [REDACTED] in CoolIT's documents) that are interconnected with [REDACTED] on the "reservoir" housing to couple/mate the upper/pump chamber subcomponent with the "reservoir" housing. *Id.* at ¶149. A user who desired an operable product would not consider separating the upper/pump chamber subcomponent from the Tamriel housing because the pump unit would be factory-sealed, and so decoupling of the subcomponent would cause the cooling liquid in the system to leak out and destroy the product. *Id.*; *see also* Ex. A at 57:13-59:16 (CoolIT's VP of Engineering testifying that [REDACTED]

Thus, unlike Ryu's separable pump driving unit 30 and water jacket 20, the subcomponent forming the upper/pump chamber in Tamriel is not "separable" or "removable" from the "reservoir" housing. Dkt. 386-5, ¶¶149, 153; *contra* Dkt. 413 at 4. And in fact, removal of that subcomponent would break or permanently damage important features of the device, such as the circuit board:

> [T]he part that's not shown on the CAD diagram is this top impeller that goes in here, and it's actually kind of interesting because there was six screws, and one of them was actually obscured by the circuit board. So you actually have to, like, pull the circuit board off to access the sixth screw, essentially breaking it. So obviously not intended for user disassembly.

Ex. B at 185:17-24; *see also id.* at 201:19-202:10. Nor is there any benefit or utility to the alleged separability or removability of the subcomponent defining the upper/pump chamber in the Tamriel. *Id.* at 202:14-203:15, 205:15-211:5. In contrast, the copper heat-exchanging interface (i.e., copper microchannel cold plate) in Asetek's design is attached to the "reservoir" using screws and is designed to be removable "at the factory level" for two reasons: 1) to allow Asetek to "swap in a new

microchannel plate . . . and change nothing" else if "Intel or AMD puts out their next chip with a different heat map," and 2) to avoid using a permanent bonding mechanism, such as welding, because of the "thermal expansion mismatch" between the copper cold plate and the plastic "reservoir" housing. *Id.* at 202:14-203:15. Thus, contrary to Defendants' allegation, the removability of the copper cold plate in Asetek's patented invention is not comparable to the alleged removability of the subcomponent defining the upper/pump chamber in the Tamriel.

Moreover, the upper/pump chamber subcomponent in Tamriel is not a functionally independent device like pump driving unit 30 of Ryu. Dkt. 386-5, ¶153. More specifically, the pump driving unit 30 and water jacket 20 of Ryu are stand-alone modules and each module is a Field Replaceable Unit (FRU) that can be replaced by a user. *Id.* Unlike Ryu, the subcomponent in the Tamriel is not a FRU and is not intended to be replaced by a user. *Id.* Nor is it intended to be replaced in the factory floor. Ex. B, 202:14-203:15, 205:15-211:5.

**2. Defendants' expert's testimony and CoolIT's documents show that the part of the Tamriel that Defendants refer to as a second receptacle is instead a subcomponent of the "reservoir" in Tamriel**

With respect to the Tamriel, Defendants have argued that the subcomponent shown below in the red box, which nestles into the "reservoir" housing, is a separate receptacle defining the pump chamber, and not just a chamber or compartment within the reservoir. Dkt. 413 at 3, 4. But CoolIT's own documents refer to that subcomponent as [REDACTED] (*see* COOLIT0036076) or [REDACTED] (*see* COOLIT0035859-64). Dkts. 426-5 and 426-6. And the same "reservoir" housing in the Tamriel also includes the lower/thermal exchange chamber of the "reservoir," which is referred to as [REDACTED]. *See* Ex. C (COOLIT0035848-56). That is, CoolIT's own documents confirm that the upper/pump chamber subcomponent is a "chamber"/compartment designed to fit within the "reservoir" housing via mating and interconnecting features; it is not a separate receptacle as argued by Defendants. *See id.* Asetek's expert agrees with CoolIT's documents that the subcomponent forming the upper/pump chamber in the Tamriel is ***not*** a receptacle; rather it is "a compartment within the reservoir housing." Dkt. 386-5, ¶150.



Dkt. 386-5, ¶147.

Nor is the subcomponent forming the upper/pump chamber in Tamriel a receptacle under CoolIT's expert's own definition of receptacle. In the IPR involving Asetek's '196 patent (IPR2021-01196), CoolIT's expert Dr. Pokharna testified that a receptacle is a structure that can "receive and accommodate" liquid, and further asserted that if there are one or more "openings" in the structure such that it cannot "hold" or "accommodate" liquid, then the structure is not a receptacle. Ex. D, 21:17-20, 23:24-25:21. Because the subcomponent forming the upper/pump chamber in Tamriel has two openings for liquid to enter and exit the upper/pump chamber, as shown below, the subcomponent is not a receptacle per CoolIT's expert's own definition.



Dkt. 386-5, ¶147 (annotations added).

**3. Defendants' alleged non-infringement position is legally incorrect and their characterization of components within the "reservoir" as receptacles excludes preferred embodiments in the Asetek patents**

Defendants' alleged noninfringement opinion that the Tamriel has two receptacles instead of a "single receptacle" is contrary to the law. Specifically, Defendants' position that the asserted claims require that the "reservoir" just have one receptacle within it, to the exclusion of other receptacles, ignores the word "comprising" in the preamble of independent claim 17 of the '362 patent (Dkt. 400-3). Importantly, the word "comprising" in the claim preamble is open-ended and allows for additional, unrecited elements within an infringing device. *Genentech, Inc. v. Chiron Corp*., 112 F.3d 495, 501 (Fed. Cir. 1997) ("'Comprising' is a term of art used in claim language which means that the named elements are essential, but other elements may be added and still form a construct within the scope of the claim."); *Gillette Co. v. Energizer Holdings, Inc*., 405 F.3d 1367, 1371-73 (Fed. Cir. 2005) (finding that a claim to "a safety razor blade unit comprising a guard, a cap, and a group of first, second, and third blades" encompasses razors with more than three blades because the transitional phrase "comprising" in the preamble is open-ended). Accordingly, devices covered by the '362 patent claims can have additional sub-chambers or receptacles, including inside the "reservoir," so long as there is a single overarching receptacle comprising upper and lower chambers. The Tamriel indisputably has a larger overarching receptacle, i.e., the "reservoir," as shown below. The presence of other smaller receptacles within the "reservoir" that define the upper or lower chambers would not change that fact because of the word "comprising" in the preamble.



Dkt. 386-5, ¶149.

In fact, Defendants' counsel (who also represent Cooler Master and CMI) made a similar argument in the *Asetek v. CMI USA* case that the accused Cooler Master products did not infringe because of the presence of a copper sub-chamber (which they termed a receptacle) within a larger receptacle defining a "reservoir." *See Asetek v. CMI USA, Inc., et al.*, Case 4:13-cv-00456, Dkt. 426. Judge Tigar disagreed with that argument, explaining "it could be that even if the copper sub-chamber is a receptacle, ***that would not change the fact that the reservoir is a single receptacle divided into an upper chamber and lower chamber – the lower chamber would merely include or consist entirely of a smaller receptacle or sub-chamber***. For example, nesting dolls contain many receptacles. But the smaller dolls – or receptacles – do not affect whether the biggest doll is a 'single receptacle'." *Id.* at ECF p. 6 (emphasis added).

Judge Tigar is correct. Due to the "comprising" language in the preamble, a product with an overarching single receptacle structure can satisfy the patent claims notwithstanding the presence of smaller receptacles or sub-chambers within the larger overarching receptacle. Asetek never agreed to (nor it would agree to) Defendants' erroneous non-infringement argument that the single receptacle defining the claimed "reservoir" cannot have any other smaller receptacle within it. If Defendants' erroneous argument is taken to its logical but ridiculous conclusion, then they could point to any nook or cranny within the larger overarching "single receptacle" that can hold or accommodate some liquid, call that nook or cranny another receptacle that at least partially defines a chamber within the boundaries of the "single receptacle," and claim they therefore avoid infringement because they don't have a "single receptacle" divided into an upper and a lower chamber. And that is exactly what Defendants have done: for the Tamriel, Defendants' expert is pointing to the subcomponent defining the upper/pump chamber as a second receptacle (defining the upper chamber) within the "reservoir," and for the H100i Liquid Cooler, the expert is pointing to the cold plate as another receptacle (partially defining the lower chamber) within the "reservoir" to argue noninfringement. Dkt. 400-5, ¶¶54-55, 85-86. But Defendants' non-infringement argument fails for the same reasons noted by Judge Tigar in the CMI USA case (quoted above). *Asetek,* Case 4:13-cv-00456, Dkt. 426 at ECF p. 6.

Further, the preferred embodiments in Asetek's patents demonstrate conclusively that Defendants' interpretation of "reservoir" as prohibiting other smaller receptacles within it from

defining chambers would exclude those preferred embodiments, and therefore Defendants' interpretation cannot be correct. *Accent Packaging, Inc. v. Leggett & Platt, Inc.*, 707 F.3d 1318, 1326 (Fed. Cir. 2013) ("[A] claim interpretation that excludes a preferred embodiment from the scope of the claim is rarely, if ever, correct."); *see also Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1305 (Fed. Cir. 2007) (courts "normally do not interpret claim terms in a way that excludes disclosed examples in the specification."). For example, the embodiments shown in Figures 17 and 20 of the '196 patent (Dkt. 400-4) have several internal components/regions that are capable of holding or accommodating cooling liquid and that define the chambers, and thus would be smaller receptacles within the "reservoir" per Defendants' interpretation:




Dkt. 400-4, Figs. 17, 20 (annotated above). In particular, the subcomponent forming the upper/pump chamber in the Tamriel is not materially different from impeller cover 46A in the embodiments shown in Figures 17 and 20, above, but nowhere do Asetek's patents describe impeller cover 46A (or other subcomponents such as intermediate member 47 and heat-exchanging interface 4) as receptacles. Dkt. 386-5, ¶150. Defendants' interpretation of "reservoir" would exclude the preferred embodiments because the embodiments all have various spaces/regions, such as impeller cover 46A and heat-

exchanging interface 4, that contain fluid to the same extent as the subcomponent defining the upper/pump chamber in the Tamriel and the cold plate in the H100i Liquid Cooler do. That is, under Defendants' interpretation of "reservoir" (which precludes other smaller receptacles within the reservoir), the preferred embodiments (which comprise multiple smaller receptacles within the larger receptacle defining the reservoir 14) could not practice the claimed invention. That would conflict with the Federal Circuit's precedent in *Accent Packaging* and similar cases.

**4. CoolIT's "reservoir" arguments in the prior IPRs are completely inconsistent with their current non-infringement position**

CoolIT's prior inconsistent positions taken in the IPRs against Asetek's '354 patent further demonstrate the errors in Defendants' non-infringement position. In particular, CoolIT's argument in an IPR against Asetek's '354 patent (IPR2020-00523), i.e., that the prior art Shin reference discloses a "reservoir," was entirely opposite to Defendants' current non-infringement position and exposes the error and contradiction in Defendants' present arguments to this Court.

Specifically, CoolIT argued that Shin "discloses a reservoir (e.g., an integrated structure) for providing liquid cooling of computing components." Dkt. 402-10 at 12. CoolIT further alleged that "a POSITA would understand that Shin discloses a reservoir (e.g., a receptacle containing a heat sink 4, flexible hose 6, coolant discharge section coupler 7, water supply coupler 9, and impeller case 11) configured to circulate a cooling liquid therethrough." *Id.* at 13-14. CoolIT included color-coded figures to show the five components that CoolIT asserted were part of the alleged "reservoir," reproduced below:




*Id.* at 15-16. In CoolIT's annotated figures, the components identified in dark blue, pink, green, light blue, and yellow are part of an integrated structure that CoolIT alleged was a "reservoir" within the

meaning of Asetek's patent claims. *Id*. Notably, some of the alleged reservoir components are even separated by a motor vibration absorbing member (19) and connected by tubing. And CoolIT's position that Shin disclosed a "reservoir" was a key part of CoolIT's argument that one of ordinary skill would have been motivated to combine Shin and Batchelder. *Id.* at 44.

CoolIT's prior position in the IPR that impeller case 11 of Shin (shown above in yellow) and heat sink 4 of Shin (shown in blue) together form the claimed "reservoir" is completely inconsistent with their current non-infringement position that the "reservoir" can only have a single receptacle.

CoolIT's arguments about Duan in an IPR against Asetek's '355 patent (IPR2020-00522) similarly demonstrate that CoolIT previously argued that multiple components that likely can hold or accommodate liquid (and thus can be deemed as receptacle under Defendants' interpretation of that term in this case) are connected or integrated together to form the claimed reservoir. *See* Dkt. 402 at 1-3. CoolIT's IPR arguments show the impropriety of their litigation-driven non-infringement position that the claimed "reservoir" can only have single receptacle (and no other receptacle within the boundaries of that single receptacle).

### B. CoolIT Invalidated Asetek's Patents Based on a Collection of Components That Allegedly Formed a "Reservoir," and Defendants Should be Estopped From Taking a Contrary Non-Infringement Position

Asetek has shown that all three elements of judicial estoppel are met. Dkt. 402 at 7-10. In response, Defendants attempt to sidestep their prior inconsistent statements by drawing red outlines around the alleged "reservoir" in Duan and Batchelder and arguing that they each have a "single receptacle," and by not squarely addressing the estoppel issue of ***multiple components*** forming the "reservoir." Dkt. 413 at 5-6. Defendants, however, do not dispute (nor can they) that the IPR petitions argued that multiple components are connected or integrated together to form the alleged "reservoir" in Duan.

With respect to Batchelder, however, Defendants rely on a testimony of a different expert in a different IPR (not the IPR against Asetek's '354 patent) to argue, incorrectly, that "CoolIT never used Batchelder's Figures 7 or 8 to show any disclosure or teaching of the 'single receptacle' in the claimed 'reservoir.'" Dkt. 413 at 8 (citing CoolIT's expert's deposition testimony in IPR2021-01196). But the following paragraph in the IPR petition against Asetek's '354 patent demonstrates that CoolIT in fact

relied on Batchelder's Figures 7 and 8 (depicted below) to show disclosure of the claimed "reservoir" in Batchelder:

> Thus, Batchelder discloses a reservoir (e.g., a spreader plate 20) that an includes an upper chamber (or compartment) as the space below top surface 26 in FIG. 2 and the space below upper stamped plate 208 and channel forming sheet 210 in FIGS. 7 and 8. Batchelder's reservoir also includes a lower chamber (or compartment) as the flow channels 50, the space above lower surface 24 in FIG. 2 and above upper stamped plate 204 in FIGS. 7 and 8.

Dkt. 402-10 at 18. And there can be no dispute that the alleged "reservoir" (heat spreader plate 20) in Figures 7 and 8 comprises multiple components. Dkt. 402-11 at 8:4-12.




Dkt. 402-10 at 18 (CoolIT's annotation of Batchelder's Figures 7 and 8 in prior IPR).

Defendants attempts to distinguish statements about Shin in the '354 IPR are especially misleading. Defendants argue that CoolIT never argued in the IPR that "Shin on its own taught a reservoir that was a single receptacle." Dkt. 413 at 7 (emphasis in original). That is incorrect. The following statement from the '354 IPR petition is contrary to the spin Defendants are now attempting to put on their prior inconsistent statement:

> "Shin also discloses a **reservoir (e.g., an integrated structure)** for providing liquid cooling of computing components . . . a POSITA would understand that Shin discloses **a reservoir (e.g., a receptacle containing a heat sink 4, flexible hose 6, coolant discharge section coupler 7, water supply coupler 9, and impeller case 11)** configured to circulate a cooling liquid therethrough."
>
> Dkt. 402-10 at 12-14 (emphases added).

CoolIT supported its IPR arguments with a declaration from its IPR expert, Dr. Marc Hodes, which explained "a POSITA would understand that Shin discloses or suggests a reservoir (the structural combination of heat sink 4, flexible hose 6, coolant discharge section coupler 7, water supply coupler 9, and impeller case 11) configured to circulate a cooling liquid there-through." Ex. E, ¶ 58. And Dr. Hodes confirmed his opinion that Shin's combination of multiple components formed a "reservoir" during his deposition. Dkt. 402-5 at 54:16-55:11. Although CoolIT's IPR expert initially testified that he would not consider Shin to have a "reservoir" or "single receptacle," *see id.* at 36:4-7, when he was confronted with his declaration (in the IPR against Asetek's '354 patent), he backtracked and admitted that he ***in fact disclosed Shin as having the claimed "reservoir" in the '354 patent IPR***, that he had not reviewed his declaration for the '354 patent IPR before testifying about the '355 patent IPR, and that "reservoir" means the same for both patents, *see id.* at 54:16-57:5. He then tried to flip flop during redirect after a long discussion with CoolIT's counsel. *See id.* at 81:1-16. Defendants' attempt to distance themselves from CoolIT's prior position regarding "reservoir" in Shin is specious at best.

Defendants' next argument that the prior inconsistent positions about Shin, Duan and Batchelder were "never used to persuade the PTAB" also misses the mark. Dkt. 413 at 9-10. The law on judicial estoppel is clear: "[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *Trustees in Bankr. of N. Am. Rubber Thread Co. v. United States*, 593 F.3d 1346, 1353-1354 (Fed. Cir. 2010) (*quoting New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)). There is no requirement for the prior inconsistent statement to have been disputed or litigated for judicial estoppel to apply; all that is required is that a party "assume[ed] a certain position in a legal proceeding, and succeed[ed] in maintaining that position." *Id.* Therefore, even though Asetek did not dispute the meaning of "reservoir" or CoolIT's mapping of the claimed "reservoir" to the prior art Duan, Batchelder, and Shin references in the IPRs, Defendants cannot now take inconsistent positions regarding "reservoir" in the district court. The PTAB accepted CoolIT's argument that Duan, Batchelder, and Shin individually disclose the claimed "reservoir." Dkt. 402 at 9. That is, CoolIT did

succeed in "maintaining" the position that multiple separate components in Duan, Batchelder, and Shin form a "reservoir," thus establishing the second judicial estoppel factor.

The cases cited by CoolIT are inapposite and none of them held that judicial estoppel only applies if the prior inconsistent position was disputed or actually litigated. In *Oxygenator Water Technologies, Inc. v. Tennant Company,* the district did not find judicial estoppel because the "record [did] not show that [patent owner] has prevailed in IPR based on any of these [IPR] positions," and therefore, whether patent owner's invalidity arguments in the IPR are inconsistent with its claim construction positions in the district court "is beside the point." No. 20-cv-358 (ECT/HB), 2021 WL 3661587, at *4 n.2 (D. Minn. Aug. 18, 2021). Unlike *Oxygenator*, here CoolIT did prevail on its invalidity arguments directed to the "reservoir" invalidity argument in the IPRs. Therefore, Defendants would derive an unfair advantage if they were to prevail on their contrary non-infringement positions here. *See Trustees of Columbia Univ.in City of New York v. NortonLifeLock, Inc.*, No. 3:13-cv-808, 2019 WL 7040931, at *4–6 (E.D. Va. Dec. 20, 2019) (applying judicial estoppel when litigant prevailed on one claim construction in IPR proceedings before raising a contrary proposed construction in district court).

In *SkyHawke Techs., LLC v. Deca Int'l Corp.*, the Federal Circuit found that the Board's claim construction would not bind patent owner SkyHawke because "judicial estoppel only binds a party to a position that it advocated and successfully achieved," and SkyHawke "clearly did not advocate the claim construction ultimately adopted by the Board." 828 F.3d 1373, 1376 (Fed. Cir. 2016). Here, in contrast, Defendants should be bound by the "reservoir" arguments in the IPRs because CoolIT advocated those arguments and achieved success when the PTAB accepted CoolIT's arguments and found Asetek's claims invalid.

In *Samsung Elecs. Co., Ltd v. NVIDIA Corp.*, the district court declined to apply judicial estoppel because it found, among other things, that the prior statements were not clearly inconsistent. 160 F. Supp. 3d 866, 872-75 (E.D. Va. 2015). The same cannot be said for CoolIT's prior inconsistent statements regarding "reservoir" in the IPRs. Similarly, in *Contour IP Holding, LLC v. GoPro, Inc.*, the district court declined to apply judicial estoppel because it found there was "no clearly inconsistent prior statement." 3:17-cv-04738-WHO, 2021 WL 1022854, at *4 (N. D. Cal. Mar. 17, 2021). Contrary

to Defendants' assertion, however, in neither *Samsung* nor *Contour* did the district court decline to apply judicial estoppel because the alleged prior inconsistent position was not disputed or litigated by the opposing party.

Indeed, Defendants would derive an unfair advantage if CoolIT were permitted to invalidate Asetek's patents in the PTAB by asserting that the multiple components of Duan, Batchelder, and Shin form a "reservoir," but then have Defendants make a contrary non-infringement argument—that multiple components of the Tamriel or the H100i Liquid Cooler cannot form the claimed "reservoir"—in the district court. Accordingly, the third judicial estoppel factor is met.

In sum, Asetek has shown that the three elements of judicial estoppel are met. CoolIT has successfully argued at the PTAB that the claimed "reservoir" can be formed by connecting or integrating multiple components and Defendants cannot now take a clearly inconsistent position to avoid infringement. Judicial estoppel applies and the Court should bar Defendants from taking inconsistent positions.

Dated: April 21, 2022

FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP

By: */s/ Arpita Bhattacharyya*
Arpita Bhattacharyya
Attorneys for Plaintiff and Counterdefendant ASETEK DANMARK A/S and Counterdefendant ASETEK USA, INC.