1   COOLEY LLP
    HEIDI L. KEEFE (178960)
2   (hkeefe@cooley.com)
    REUBEN H. CHEN (228725)
3   (rchen@cooley.com)
    DANIEL J. KNAUSS (267414)
4   (dknauss@cooley.com)
    ALLIE LEEPER (307310)
5   (aleeper@cooley.com)
    DEEPA KANNAPPAN (313573)
6   (dkannappan@cooley.com)
    3175 Hanover Street
7   Palo Alto, CA  94304-1130
    Telephone:   (650) 843-5000
8   Facsimile:   (650) 849-7400

    DUSTIN M. KNIGHT (*pro hac vice*)
    (dknight@cooley.com)
    11951 Freedom Drive, 16th Floor
    Reston, VA 20190
    Telephone: (703) 456-8000
    Facsimile: (703) 456-8100

    GREENBERG TRAURIG, LLP
    KYLE D. CHEN (SBN 239501)
    kchen@gtlaw.com
    1900 University, Avenue, 5th Floor
    East Palo Alto, CA 94304
    Telephone:   (650) 289-7887
    Facsimile:   (650) 328-8508

9
10  Attorneys for Defendant and Counter-claimant
    COOLIT SYSTEMS, INC. and Defendants
    CORSAIR GAMING, INC. and CORSAIR
11  MEMORY, INC.

12                  UNITED STATES DISTRICT COURT

13              NORTHERN DISTRICT OF CALIFORNIA

14                  SAN FRANCISCO DIVISION

15

16

17  ASETEK DANMARK A/S,                        Case No.  3:19-cv-00410-EMC

18              Plaintiff and                  **DEFENDANTS' REPLY IN SUPPORT OF**
                Counter-defendant,             **THEIR MOTION FOR SUMMARY**
                                               **JUDGMENT**
19      v.
                                               Date:       May 5, 2022
20  COOLIT SYSTEMS, INC.,                      Time:       1:30 pm
                                               Location:   Courtroom 5, 17th Floor
21              Defendant and                  Judge:      Hon. Edward M. Chen
                Counter-claimant,

22
    CORSAIR GAMING, INC. and CORSAIR
23  MEMORY, INC.,

24              Defendants.

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

CASE NO. 3:19-CV-00410-EMC
DEFENDANTS' REPLY ISO MOTION FOR
SUMMARY JUDGMENT

**TABLE OF CONTENTS**

Page

I.   Introduction ........................................................................................................... 1

II.  Argument ............................................................................................................... 1

A.   Summary judgment of noninfringement should be granted because equivalents of "curved" *shaped* blades cannot cover completely straight *shaped* blades as a matter of law........................................................... 2

1.   Asetek's *nonlinear* "curved" blades specifically exclude CoolIT's *linear* blades and thus cannot cover them under DOE ......... 2

2.   There is no material disputed issue of fact regarding Asetek's failure to sustain DOE under the function-way-result analysis .......... 3

a.   The "way" is undisputedly different ....................................... 3

b.   Asetek has no evidence to meet the "result" test .................... 4

3.   None of the cases cited by Asetek supports its DOE theory, and all of them are readily distinguishable ............................................. 5

B.   Summary judgment of non-infringement by Tamriel should be granted under stipulated constructions of "reservoir" and "chamber" ........................ 9

1.   No material factual dispute exists on Tamriel's structures to preclude summary judgment of non-infringement ............................. 9

2.   Tamriel does not meet the "single receptacle" requirement ............. 11

3.   Asetek's nesting doll theory does not preclude summary judgment because Tamriel's first structure can function as a receptacle independently of and even away from Tamriel's second structure ................................................................................ 11

4.   Asetek's DOE theory fails because "single receptacle" specifically excludes Tamriel's two receptacles............................... 13

5.   Asetek's arguments based on patent specifications not at issue are irrelevant and fail on the merits .................................................. 13

C.   Summary judgment of validity over *Antarctica* is warranted because Asetek has no empirical evidence that Antarctica has "microchannels" and also because Asetek cannot show by clear and convincing evidence that the Asetek sample is representative of products on-sale before the priority date of CoolIT's patents.................................................. 14

III.  Conclusion ........................................................................................................... 15

i

CASE NO. 3:19-CV-00410-EMC
DEFENDANTS' REPLY ISO MOTION FOR
SUMMARY JUDGMENT

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Hallmark Ins. Co. v. Or. Interiors, Inc.*,
  No. 3:17-cv-00344-SB, 2018 U.S. Dist. LEXIS 208702 (D. Or. Dec. 11, 2018)......................5

*Asetek Danmark A/S v. CMI USA Inc.*,
  852 F.3d 1352 (Fed. Cir. 2017)......................................................................................10

*Asyst Techs., Inc. v. Emtrak, Inc.*,
  402 F.3d 1188 (Fed. Cir. 2005)........................................................................................2

*Athletic Alternatives, Inc. v. Prince Mfg., Inc.*,
  73 F.3d 1573 (Fed. Cir. 1996)..........................................................................................2

*Bell Atl. Network Servs., Inc. v. Covad Commc'ns Grp., Inc.*,
  262 F.3d 1258 (Fed. Cir. 2001).......................................................................................13

*Bicon, Inc. v. Straumann Co.*,
  441 F.3d 945 (Fed. Cir. 2006)...........................................................................................7

*Capital Bridge Co. v. IVL Techs. Ltd.*,
  No. 04-cv-4002, 2006 WL 2585529 (S.D.N.Y. 2006),
  *aff'd*, 232 F. App'x 987 (Fed. Cir. 2007)........................................................................3

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986).........................................................................................................5

*Deere & Co. v. Bush Hog, LLC*,
  703 F.3d 1349 (Fed. Cir. 2012)....................................................................................7, 8

*Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*,
  469 F.3d 1005 (Fed. Cir. 2006).........................................................................................8

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
  535 U.S. 722 (2002).........................................................................................................9

*Gilliam v. Nev. Power Co.*,
  488 F.3d 1189 (9th Cir. 2007) ..........................................................................................5

*Graver Tank & Mfg. Co. v. Linde Air Products Co.*,
  339 U.S. 605 (1950).........................................................................................................8

*Hilgraeve Corp. v. Symantec Corp.*,
  265 F.3d 1336 (Fed. Cir. 2001).........................................................................................4

*Invitrogen Corp. v. Clontech Lab'ys, Inc.*,
  429 F.3d 1052 (Fed. Cir. 2005).........................................................................................3

*Laitram Corp. v. Cambridge Wire Cloth Co.*,
  863 F.2d 855 (Fed. Cir. 1988)...........................................................................................4

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

ii

CASE NO. 3:19-CV-00410-EMC
DEFENDANTS' REPLY ISO MOTION FOR
SUMMARY JUDGMENT

1

**TABLE OF AUTHORITIES**
(continued)

2

Page(s)

3

*Novartis Corp. v. Ben Venue Lab'ys, Inc.*,
   271 F.3d 1043 (Fed. Cir. 2001)..................................................................................3

4

*In re Papst Licensing GmbH & Co. KG Litig.*,
   967 F. Supp. 2d 22 (D.D.C. 2013) ............................................................................7

5

6

*Sage Prods., Inc. v. Devon Indus., Inc.*,
   126 F.3d 1420 (Fed. Cir. 1997)................................................................................13

7

*Schumer v. Lab'y Comput. Sys., Inc.*,
   308 F.3d 1304 (Fed. Cir. 2002)...........................................................................3, 11

8

9

*SciMed Life Sys. v. Advanced Cardiovascular Sys.*,
   242 F.3d 1337 (Fed. Cir. 2001)....................................................................2, 3, 8, 9

10

*TechSearch, L.L.C. v. Intel Corp.*,
   286 F.3d 1360 (Fed. Cir. 2002)......................................................................3, 11, 15

11

12

*Theis v. Graco, Inc.*,
   763 F. App'x 641 (9th Cir. 2019) ..............................................................................3

13

*Vehicular Techs. Corp. v. Titan Wheel Int'l, Inc.*,
   212 F.3d 1377 (Fed. Cir. 2000)..................................................................................7

14

15

*Voda v. Cordis Corp.*,
   536 F.3d 1311 (Fed. Cir. 2008)............................................................................5, 6

16

*Whirlpool Corp. v. LG Elecs., Inc.*,
   1:04-CV-100, 2006 WL 2035215 (W.D. Mich. July 18, 2006)..................................4

17

18

*Wilson Sporting Goods Co. v. David Geoffrey & Associates*,
   904 F.2d 677 (Fed. Cir. 1990)....................................................................................8

19

20

21

22

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

iii

CASE NO. 3:19-CV-00410-EMC
DEFENDANTS' REPLY ISO MOTION FOR
SUMMARY JUDGMENT

1

## I.    INTRODUCTION

2          Unable to rebut CoolIT's summary judgment arguments on the merits, Asetek's opposition is

3    reduced to misrepresentations of inapplicable case law and errors in logical syllogisms.  Asetek's

4    arguments should, respectfully, be rejected and summary judgment granted.

5          *First*, summary judgment of noninfringement of the "curved blades" limitation under Asetek's

6    DOE theory is proper.  Asetek admits that the claimed "curved blades" are *non*linear and that the

7    CoolIT blades are linear.  The inquiry should end here because to find the linear CoolIT blades an

8    "equivalent" of the *non*linear claimed "curved blades" would violate the specific exclusion principle,

9    which is a corollary to the vitiation/all-limitations rule.  Separately, Asetek's DOE theory also fails

10   the "way" and "result" prongs in the function-way-result analysis.  As to "way," it is undisputed the

11   computer simulation Asetek relies on shows that CoolIT's blades and the allegedly equivalent curved

12   blades drive cooling liquid in different ways.  As to "result," Asetek has no evidence at all because

13   Asetek's expert never simulated the *actual* CoolIT impeller blades nor the accused device that the

14   blades operate in.  Summary judgment should, therefore, be granted.  Further, all of Asetek's cited

15   cases are distinguishable.

16         *Second*, summary judgment of noninfringement of the "single receptacle" limitation for

17   Tamriel is proper because there is no factual dispute regarding its structures, only differing labels

18   assigned to them by the parties.  Under the plain meaning of "receptacle," Tamriel indisputably has a

19   first receptacle including the claimed "upper chamber" and a separate second receptacle containing

20   the claimed "lower chamber."  Thus, by having two receptacles instead of one, Tamriel does not have

21   a "single receptacle" containing both the "upper chamber" and the "lower chamber" as required by the

22   stipulations on "reservoir" and "chamber."  Summary judgment should, as a result, be granted.

23         *Third*, the Court can and should also grant summary judgment of validity over *Antarctica*

24   because Asetek has no empirical evidence to support its conclusory opinion that *Antarctica* has

25   "microchannels."  Asetek only offers conclusory testimonies that are legally insufficient to meet its

26   high burden.  Further, Asetek cannot satisfy its burden of showing that the only *Antarctica* sample

27   provided is representative of *Antarctica* products sold before the priority date of CoolIT's patents.

28   ## II.    ARGUMENT

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

1

CASE NO. 3:19-CV-00410-EMC
DEFENDANTS' REPLY ISO MOTION FOR
SUMMARY JUDGMENT

**A.    Summary judgment of noninfringement should be granted because equivalents of "curved" *shaped* blades cannot cover completely straight *shaped* blades as a matter of law**

> **1.    Asetek's *nonlinear* "curved" blades specifically exclude CoolIT's *linear* blades and thus cannot cover them under DOE**

Asetek's expert, Dr. Tuckerman, admits *both* that the claimed "curved" blades require "non-linearity" and that CoolIT's blades are "linear." (*Compare* Ex. 27[1], 12/30/2021 Tuckerman Tr., at 53:5-8 ("A definition of curved blade. A blade that has an -- an *arc* to it. It's not – it's *not* everywhere *linear*.") and 57:1-3 ("A curve, to me, implies that there is, you know, some *nonlinearity* to the shape of the blade so that it, you know, has an *arc* to it.") *with id.* at 248:25 ("the CoolIT *linear* but not radial blades") and 251:4-9 ("BY MS. BHATTACHARYYA [Asetek's counsel]: Q    And by '*linear* nonradial blades,' are you referring to CoolIT's impeller blades? THE WITNESS: Yes. That's what I'm referring to in this case, yes.") (emphasis added; objection omitted).)  Put together, these two admissions preclude Asetek's DOE theory because the *nonlinearity* required by "curved blades" specifically excludes "the CoolIT *linear* … blades," as held by the Federal Circuit:

> [T]he patentee cannot assert the patent against a metallic device on the ground that a *metallic* device is equivalent to a *non-metallic* device. The unavailability of the doctrine of equivalents could be explained either as the product of an impermissible vitiation of the "non-metallic" claim limitation, or as the product of a clear and binding statement to the public that metallic structures are excluded from the protection of the patent.

*SciMed Life Sys. v. Advanced Cardiovascular Sys.*, 242 F.3d 1337, 1347 (Fed. Cir. 2001) (emphasis added); *see also id.* ("'specific exclusion' principle is 'a corollary to the "all limitations" rule'") (quoting *Athletic Alternatives, Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573, 1582 (Fed. Cir. 1996)).  Just like a claimed "<u>non</u>-metallic" device specifically excludes and cannot equivalently cover a "metallic" device, Asetek's claimed "<u>non</u>linear[ ]" curved blades specifically exclude and cannot equivalently cover CoolIT's "linear" blades.  *See id.*  That is, Asetek's DOE theory vitiates the admitted "nonlinearity" requirement of the "curved" limitation and fails under the "specific exclusion principle" as a corollary to the "all limitations rule."  *See id.*; *see also Asyst Techs., Inc. v. Emtrak, Inc.*, 402 F.3d

---

[1] All references to "Ex. 27" through "Ex. 31" are exhibits to the Reply Declaration of Reuben H. Chen in Support of Defendants' Reply Brief in Support of Their Motion for Summary Judgment, being filed concurrently herewith.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

2

CASE NO. 3:19-CV-00410-EMC
DEFENDANTS' REPLY ISO MOTION FOR
SUMMARY JUDGMENT

1188, 1195 (Fed. Cir. 2005) (holding that, under the "specific exclusion" principle, "the term '*mounted*' can fairly be said to specifically exclude objects that are '*unmounted*'") (emphasis added); *accord. Capital Bridge Co. v. IVL Techs. Ltd.*, No. 04-cv-4002, 2006 WL 2585529, at *8 (S.D.N.Y. 2006), *aff'd*, 232 F. App'x 987 (Fed. Cir. 2007) (granting summary judgment of no infringement where claim required use of *wireless* connections and the accused product used *wired* connections, finding that *wireless* connection could not encompass a *wired*-connection under the DOE).

In sum, Asetek's undisputed admissions that the claimed "curved" blades are nonlinear and that CoolIT blades are linear dispose of the inquiry because the nonlinear "curved" blades specifically exclude CoolIT's linear blades and cannot cover them under DOE.  *SciMed*, 242 F.3d at 1347.

**2.     There is no material disputed issue of fact regarding Asetek's failure to sustain DOE under the function-way-result analysis**

**a.     The "way" is undisputedly different**

It is undisputed the purported CoolIT blades drive the cooling liquid in a "way" that is different from that of the purported "backward-curved blades" in Dr. Stein's simulation.  (ECF No. 426-3, Asetek's Opposition ("Opp.") at 8.)  Indeed, Asetek admitted that Dr. Stein was "very happy to look at blades of slightly *different* lengths"—which confirms the liquid driven by the "backward-curved blades" traveled a *different* distance than that if driven by the purported CoolIT blades.  (*Id.* at 7 (emphasis added).)  In a futile attempt to hide this difference, Dr. Stein offered an unsupported, conclusory statement that this undisputed difference in the *ways* the blades drive the fluid was a "triviality."  But he provided no explanation and no evidence to show the difference was trivial.  (*Id.* at 7-8); *see Schumer v. Lab'y Comput. Sys., Inc.*, 308 F.3d 1304, 1315-16 (Fed. Cir. 2002) (noting that "testimony is insufficient if it is merely conclusory"); *Novartis Corp. v. Ben Venue Lab'ys, Inc.*, 271 F.3d 1043, 1050-51 (Fed. Cir. 2001) (noting that an expert must set forth an "explicit factual foundation" for his opinions); *accord TechSearch, L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1371 (Fed. Cir. 2002); *Invitrogen Corp. v. Clontech Lab'ys, Inc.*, 429 F.3d 1052, 1080 (Fed. Cir. 2005); *Theis v. Graco, Inc.*, 763 F. App'x 641, 641-42 (9th Cir. 2019).

Because it is undisputed that the purported CoolIT blades drive the liquid in an admittedly different way than that of the backward curved blades, the simulation fails at least the "way" prong of

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

3

CASE NO. 3:19-CV-00410-EMC
DEFENDANTS' REPLY ISO MOTION FOR
SUMMARY JUDGMENT

1    the function-way-result analysis.  Thus, summary judgment can and should be granted.

2                    **b.       Asetek has no evidence to meet the "result" test**

3           Further, Asetek's purported simulation results and related expert testimonies fail to provide

4    *any* evidence to meet the "result" prong.  It is undisputed that the purported evidence relied upon by

5    Asetek was not derived from or otherwise based on any actual CoolIT device accused in this case.  As

6    such, it is irrelevant.  Indeed, Asetek does not dispute that the actual CoolIT impeller and the actual

7    CoolIT device that the impeller operates in were never simulated by Dr. Stein nor analyzed by Dr.

8    Tuckerman for DOE.  (Opp. at 10.)  Asetek nonetheless argues that this "is a non-issue because the

9    appropriate comparison for the DOE analysis is between CoolIT's impeller blades and backward-

10   curved blades[.]"  (*Id.*)  But Asetek is wrong for at least two reasons.  First, contrary to Asetek's

11   misrepresentation, the '362 patent does not just "generically recite curved blades" (*id.*) because the

12   surrounding claim language, "an *impeller* having curved blades," in the asserted claim 17 of the '362

13   patent makes clear the "curved blades" at issue operate as part of an impeller.  (ECF No. 1-1, '362

14   patent, claim 17 (emphasis added).)  That is, how the claimed impeller operates in a device as a whole,

15   including its blades, matters as the claim language dictates.  Second, the admission that Dr. Stein

16   simulated the non-CoolIT impeller in a non-CoolIT device (*i.e.*, a so-called "'generic' pump" (Opp.

17   at 9)) shows his results cannot demonstrate anything relevant to how the *actual* CoolIT impeller blades

18   perform during real operations.  *See Laitram Corp. v. Cambridge Wire Cloth Co.*, 863 F.2d 855, 859

19   (Fed. Cir. 1988) (finding application of DOE legally flawed; testing of accused products that do not

20   simulate normal operating conditions are generally not relevant to showing infringement); *see also*

21   *Hilgraeve Corp. v. Symantec Corp.*, 265 F.3d 1336, 1343 (Fed. Cir. 2001) ("tests are not probative of

22   infringement during normal operation of the accused products"); *Whirlpool Corp. v. LG Elecs., Inc.*,

23   1:04-CV-100, 2006 WL 2035215, at *10 (W.D. Mich. July 18, 2006) ("Testing of accused products

24   that do not simulate normal operating conditions are generally not relevant to showing infringement.").

25   Thus, no relevant evidence exits to meet the "result" prong.

26          In sum, because it is undisputed that the simulation results and related expert testimonies are

27   not based on any CoolIT device nor obtained under normal operating conditions, they are irrelevant

28   and cannot support the "result" test under Asetek's DOE theory.  Thus, summary judgment should be

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

4

CASE NO. 3:19-CV-00410-EMC
DEFENDANTS' REPLY ISO MOTION FOR
SUMMARY JUDGMENT

1    granted for lack of evidence. *Celotex Corp. v. Catrett*, 477 U.S. 317, 317-18 (1986).

2    **3.    None of the cases cited by Asetek supports its DOE theory, and all of them are readily distinguishable**

3

4    Asetek attempts to rely on *Voda v. Cordis Corp.* to argue "curved" can cover "straight" under

5    DOE.  But *Voda* does not support Asetek's argument and actually held the *converse* based on vastly

6    different facts that do not apply here.  536 F.3d 1311, 1326–27 (Fed. Cir. 2008).  According to Asetek,

7    "*Voda* clearly shows that straight may be mapped to curved … under DOE," so "vice versa," curved

8    may be mapped to straight under DOE.  (Opp. at 3.)  But, as an initial matter, "a true statement's

9    converse is not necessarily true."  *See Am. Hallmark Ins. Co. v. Or. Interiors, Inc.*, No. 3:17-cv-00344-

10   SB, 2018 U.S. Dist. LEXIS 208702, at *26 n.5 (D. Or. Dec. 11, 2018) (citing *Gilliam v. Nev. Power*

11   *Co.*, 488 F.3d 1189, 1196 n.7 (9th Cir. 2007)).  For example, you can say: "slightly curved is like

12   mostly straight," which makes sense.  But you cannot then say, *vice versa*: "slightly straight is like

13   mostly curved," or even "straight is like curved," which does not make sense.

14   Indeed, that is how Asetek attempts to nonsensically apply *Voda*, which actually does not

15   support Asetek's "vice versa" theory.  The *Voda* court found the equivalents of a "straight" or

16   "substantially straight" portion of a claimed catheter could cover an <u>*insubstantially* curved</u>—or

17   <u>*substantially* straight</u>—portion of a redesigned catheter.  But it does not follow that "vice versa," the

18   equivalents of the *nonlinear* "curved" blades can therefore cover CoolIT's *linear* blades here.  This is

19   at least because, admittedly and undisputedly, Asetek's claimed "curved" blades are plainly nonlinear

20   and CoolIT's blades are plainly linear, so the dichotomy between the two is definitive and clear.  In

21   contrast, *Voda* dealt with concepts such as insubstantial curvature and substantial straightness that are

22   simply not present here.

23   The facts in *Voda* explain why.  The claimed "straight" portion was part of "an *elongate <u>flexible</u>*

24   *tubular member* in a relaxed state," which by common sense was prone to bending and having some

25   slight curvature at least due to its flexibility to begin with.[2]  *See id.* at 1316 (emphasis added).  As the

26   *Voda* patentee pointed out, even a "straight portion 40" of *a preferred embodiment in the patent*

27

28   ───────────────

[2] In contrast, CoolIT's linear blades are made of *rigid* plastic materials that are not prone to curving or bending, as further explained below.

Cooley LLP
Attorneys at Law
Palo Alto

5

Case No. 3:19-cv-00410-EMC
Defendants' Reply ISO Motion for
Summary Judgment

*specification* had "some very slight curvature":



> The catheter 36 includes a distal end portion formed by a straight portion 40, a curved portion 42, another straight portion 44 and a tip portion 46. **The straight portion 40 extends at an angle to the straight portion 38**, and the curved portion 42 extends from the straight portion 40 for approximately 180°.

Ex. 1, at 12:50-56 (emphasis added). As the Court can see, the portion 40 does has some very slight curvature as it transitions to curve 42.[5] Different "straight portions" were described in the specification and claims of the '625 Patent because Dr. Voda and his counsel were faced with the difficult problem of trying to describe, in words, the appearance of his catheter shape. Some of the portions were very short. (*See also* Fig. 7, excerpted above).

(Ex. 31, *Voda v. Cordis Corp.*, No. 5:03-cv-01512-L, ECF No. 78 at 16 (W.D. Okla. Nov. 16, 2004) (highlighting added).) "In those instances," the *Voda* patentee continued, "the importance of the particular 'straight portion' was not that it was 'straight' in the sense of having no curves, but that it was extending at an angle (or different direction) from the preceding portion, as the above language and figure make clear." (*Id.*) The patent alone described "straight" as including slight curvatures. It is no wonder that in *Voda*, the Federal Circuit credited the expert's testimony that the curvature added to the redesigned portion was so "insubstantial" that the "cardiologists would have difficulty distinguishing the two during use." That is, the redesigned portion with only slight curvature was *substantially* straight and covered by the "straight" or "substantially straight" limitation under DOE. *Voda*, 536 F.3d at 1327. This can be seen by comparing the nearly identical preferred embodiment in the patent (left) with an accused product (right):




(*See* Ex. 31, *Voda*, ECF No. 78 at 1 (a side-by-side comparison of "Figure 7 from Dr. Voda's patents (on the left) to a photo of Cordis' XB catheter (on the right)" reproduced above, showing that the

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

CASE NO. 3:19-CV-00410-EMC
DEFENDANTS' REPLY ISO MOTION FOR
SUMMARY JUDGMENT

1  horizontal straight portion of Cordis' XB catheter (blue, on the right) is not completely straight and

2  has some slight curvature.).)

3  　　　　Asetek's *converse* argument does not analogously apply to the facts here.  The impeller blades

4  at issue in this case are made of rigid, inflexible plastic materials to withstand and produce the pressure

5  of the flowing cooling liquid during operation.  (*See, e.g.*, Ex. 3[3], 12/08/2021 Abraham Non-

6  Infringement Rep., ¶¶ 149-150 (showing a pressure (P) versus flow

7  rate (Q) chart CoolIT blades produced during operation); *see also id.*,



8  ¶ 65 (showing photo of rigid plastic impeller blades, reproduced at

9  right).)  Thus, for example, Asetek does not, nor can it, argue that,

10  under *Voda*, CoolIT's blades are *substantially* curved due to

11  flexibility to be covered by the "curved" limitation under DOE.  This

12  is because CoolIT's blades are admittedly (and rigidly) "linear" in their *shape* and literally are "not

13  curved" at all as Asetek admits.  (*See, e.g.*, Ex. 27, 12/30/2021 Tuckerman Tr., at 251:5-9 ("Q

14  　　　　And by '*linear* nonradial blades,' are you referring to CoolIT's impeller blades? THE

15  WITNESS: Yes.") (emphasis added; objection omitted); *see also* Opp. at 2 (admitting CoolIT's

16  "impeller blades ... are not literally 'curved' in *shape*") (emphasis added).)[4]

17  　　　　The other cases cited by Asetek fair no better.  For example, in *Deere & Co. v. Bush Hog, LLC*,

18  for example, the Federal Circuit found no vitiation because "the district court [erroneously] construed

19  'contact' to require 'direct contact,' and thus [erroneously] found that allowing 'no direct contact'

20

21  _____

   [3] All references to "Ex. 1" through "Ex. 26" are exhibits to the Declaration of Reuben H. Chen in
22  Support of Defendants' Notice of Motion and Motion for Summary Judgment (ECF No. 387-1),
   filed on March 31, 2022.
   [4] Further, in contrast to *Voda*, which focused on the *shapes* of substantially straight or insubstantially
23  curved portions of *flexible* catheters, Asetek argument is that CoolIT's blades are "non-radial," which
   has little to do with the "curved blades" original scope.  Thus, *Voda* is further inapplicable here.  *See*
24  *In re Papst Licensing GmbH & Co. KG Litig.*, 967 F. Supp. 2d 22, 33 (D.D.C. 2013) (distinguishing
   *Voda*: "the lower court's finding of infringement by equivalents [was upheld] because ... the
25  difference in *shape* ... was ... insubstantial") (emphasis added); *Vehicular Techs. Corp. v. Titan Wheel*
   *Int'l, Inc.*, 212 F.3d 1377, 1382 (Fed. Cir. 2000) (common sense dictates that "the range of equivalents
26  cannot be divorced from the scope of the claims"); *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 955–
   56 (Fed. Cir. 2006) ("We hold that the district court correctly rejected [Plaintiff's] theory that the
27  trumpet-shaped surface of the neck of [Defendant]'s root member, which [Plaintiff] characterizes as
   concave, is equivalent to the convex, frusto-spherical basal surface of the abutment that is described
28  in the [asserted] patent.").

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

7

CASE NO. 3:19-CV-00410-EMC
DEFENDANTS' REPLY ISO MOTION FOR
SUMMARY JUDGMENT

would vitiate the court's construction." 703 F.3d 1349, 1355-57 (Fed. Cir. 2012). But no such erroneous claim construction exists here, and the admissions by Asetek's expert that "curved" blades require "nonlinearity" and that CoolIT's blades are "linear" are clear-cut and undisputed. (*Compare* Ex. 27, 12/30/2021 Tuckerman Tr., at 53:5-8 and 57:1-3 *with id.* at 248:25 and 251:5-9); *see SciMed*, 242 F.3d at 1347. Thus, *Deere* does not apply here.

Similarly, in another case cited by Asetek, *Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, the Federal Circuit found a factual dispute on the shape equivalency because the patentee's expert declared that "the hollow conically-shaped portion of the [accused] receiver member--was insubstantially different from the corresponding 'spherically-shaped' limitation[.]" 469 F.3d 1005, 1020 (Fed. Cir. 2006). That is, there was a dispute on whether a conical shape was substantially the same as a spherical shape. Here, there is no such dispute because Asetek's own expert admitted that the claimed "curved" blades have "nonlinearity" and that CoolIT's blades are "linear." (*Compare* Ex. 27, 12/30/2021 Tuckerman Tr., at 53:5-8 and 57:1-3 *with id.* at 248:25 and 251:5-9); *see SciMed*, 242 F.3d at 1347. Thus, *Depuy* does not apply here.

Contrary to Asetek's argument, *Graver Tank & Mfg. Co. v. Linde Air Products Co.* does not stand for the proposition that shapes generally do not matter in a DOE analysis. 339 U.S. 605, 610 (1950). That case dealt with the equivalency between chemical compositions of "two electric welding compositions or fluxes" and the issue of "whether the substitution of the manganese … is a change of such substance as to make the doctrine of equivalents inapplicable[.]" *Id.* Thus, the context in *Graver* does not support Asetek's overgeneralized proposition that shapes never matter under DOE.[5] *Id.* at 609 ("What constitutes equivalency must be determined against the context of the patent, the prior art, and the particular circumstances of the case.").

Finally, Asetek cites *Wilson Sporting Goods Co. v. David Geoffrey & Associates* for the proposition that the equivalency doctrine is to expand the right to exclude to equivalents of what is claimed. 904 F.2d 677, 684-85 (Fed. Cir. 1990). While such proposition is correct by itself without

---

[5] In fact, the *Depuy* case cited by Asetek shows that shapes *can* matter under DOE. 469 F.3d 1005, 1020 (identifying a dispute on whether "the hollow conically-shaped portion of the receiver member--was insubstantially different from the corresponding 'spherically-shaped' limitation.")

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

8

CASE NO. 3:19-CV-00410-EMC
DEFENDANTS' REPLY ISO MOTION FOR
SUMMARY JUDGMENT

considering other factors, that is not what Asetek's DOE theory does because it *also* vitiates the admitted "nonlinearity" requirement of the "curved" blades that specifically exclude CoolIT's "linear" blades. Indeed, contrary to its incorrect assertion, Asetek does not just attempt "to claim those insubstantial alterations that were not captured in drafting the original patent claim but which could be created through trivial changes" under *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 733 (2002). Instead, Asetek actually attempts to rewrite the claims and capture "linear" blades with its "nonlinear[ ]" limitation under DOE, which is prohibited. *See SciMed*, 242 F.3d at 1347.

In sum, none of the cases cited by Asetek can save its DOE theory from summary judgment.

**B.** **Summary judgment of non-infringement by Tamriel should be granted under stipulated constructions of "reservoir" and "chamber"**

**1.** **No material factual dispute exists on Tamriel's structures to preclude summary judgment of non-infringement**

Contrary to Asetek's assertion, there is no disputed fact on the structures of Tamriel, only on their labels. It is undisputed that Tamriel has a first structure (in yellow below) containing the alleged "upper chamber" and a separate second structure (in blue below) containing the alleged "lower chamber." Asetek labels the first structure as a "subcomponent" and the second structure as a "reservoir housing," while CoolIT labels the first structure as a first separable "receptacle" and the second structure as a second separable "receptacle." (Opp. at 15-16 (excerpt (Ex. 28 at



COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

CASE NO. 3:19-CV-00410-EMC
DEFENDANTS' REPLY ISO MOTION FOR
SUMMARY JUDGMENT

COOLIT0036076 (shades and texts in color added)); Ex. 29 at COOLIT0036086 (excerpt (shades and texts in color added)).)

As can be seen above-left, Tamriel's two structures (yellow[6] and blue) are separable because they are removably coupled together by screws.[7] Asetek's position is that the first structure is not a "receptacle," but a "subcomponent" defining "top chamber" that is "mated/interconnected" with the second structure to form a "single receptacle." (Opp. at 16.)  CoolIT's position is that the first structure is a first separable "receptacle" containing the alleged "upper chamber" and the second structure is a second separable "receptacle" containing the alleged "lower chamber."  They are separable because the two structures can be separated by removing the screws.  Asetek does not dispute the second structure is a receptacle because Asetek calls it a "*reservoir* housing," which is a receptacle under the parties' stipulations.

In sum, the issue boils down to only whether Tamriel's first structure is a "receptacle."  If it is, then Tamriel does not meet the "single receptacle" requirement because under the parties' stipulations, both of the alleged "upper chamber" and "lower chamber" must each be divided "compartment[s] within the [*same* single receptacle]" of the "reservoir."[8]

---

[6] An additional portion of the first structure (yellow) that includes the impeller assembly, etc., sits on top and is not shown in COOLIT0036076 (left) but is shown in COOLIT0036086 (right). (*See* Exs. 28-29.)

[7] Asetek claims its expert's testimony that the two structures, if separated, would "destroy the product" creates a factual dispute on their separability.  (Opp. at 16.)  But Asetek is wrong because it litigated this issue before and had the Federal Circuit affirmed that two structures in products accused under the *same* '362 patent are "*removably* coupled" together by screws even if separating them would "damage the products[.]"  *See Asetek Danmark A/S v. CMI USA Inc.*, 852 F.3d 1352, 1359-60 (Fed. Cir. 2017) (emphasis added); (*see also* ECF No. 387 CoolIT's Opening Br. ("Opening Br.") at 20-21).

[8] As explained in CoolIT's opening brief, the issue for determining non-infringement is based on the stipulated claim constructions and the stipulated facts about the '362 patent below:

   (1) "reservoir" means "single receptacle defining a fluid flow path";

   (2) "chamber" means "compartment within the reservoir" with "reservoir" construed as above;

   (3) *The claimed "reservoir" in Asetek's invention is a single receptacle that is divided into an upper chamber and a lower chamber*, with the upper chamber providing the pumping function and the lower chamber providing the thermal exchange function.

As stipulated, because "chamber" means "compartment within *the* reservoir" that means "single receptacle defining a fluid flow path," each claimed "chamber" is a "compartment within *the* single receptacle defining a fluid flow path."  It follows that the claimed "upper chamber" and "lower chamber" are, respectively, the upper compartment and lower compartment *within* the <u>same</u> "single receptacle" of the "reservoir."

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

10

CASE NO. 3:19-CV-00410-EMC
DEFENDANTS' REPLY ISO MOTION FOR
SUMMARY JUDGMENT

## 2.     Tamriel does not meet the "single receptacle" requirement

Tamriel's first structure (yellow) is a "receptacle" under the word's plain meaning.  The only available evidence in the record on the meaning of "receptacle" is provided by CoolIT's expert: "one that receives and contains something."  (Ex. 3, 12/08/2021 Abraham Non-Infringement Rep., ¶¶ 85-86 (Merriam-Webster's Collegiate Dictionary: "receptacle" is "one that receives and contains something").)  Under this meaning, Tamriel's first structure is indisputably a "receptacle" because it receives and contains the cooling liquid in the portions pointed to by the arrows, as shown below:



(Ex. 7, Tuckerman 11/03/2021 Rep., ¶¶ 309-310 (red annotations original; other annotations added).)  Asetek suggests that because its expert calls Tamriel's first structure a "subcomponent" rather than a "receptacle," somehow that creates a factual dispute.  But it does not because Asetek's expert never applied any specific plain meaning of "receptacle" to explain why Tamriel's first structure is not a "receptacle."  Instead, he only insisted in conclusory statements that it is not and that it is instead a "subcomponent."  (*See, e.g.*, *id.*, ¶ 50.)  But "[a] party may not overcome a grant of summary judgment by merely offering conclusory statements."  *TechSearch*, 286 F.3d at 1371 (citation omitted); *see also Schumer*, 308 F.3d at 1315-16 ("testimony is insufficient if it is merely conclusory").  By having *two* receptacles each respectively containing the "upper chamber" and "lower chamber" instead of just *one* containing both, Tamriel does not meet the "single receptacle" requirement, and summary judgment should be granted.

## 3.     Asetek's nesting doll theory does not preclude summary judgment because Tamriel's first structure can function as a receptacle independently of and even away from Tamriel's second structure

Cooley LLP
Attorneys at Law
Palo Alto

11

Case No. 3:19-cv-00410-EMC
Defendants' Reply ISO Motion for
Summary Judgment

1    Asetek argues that Tamriel's first structure (referred to by Asetek as "the top chamber

2  subcomponent") is "only a smaller receptacle contained within [Tamriel's second structure, *i.e.*,] the

3  larger receptacle that forms the reservoir housing, just like 'nesting dolls contain many receptacles.'"

4  (Opp. at 18.)  But this argument is both incorrect[9] and irrelevant.  (*See* Ex. 3, 12/08/2021 Abraham

5  Non-Infringement Rep., ¶¶ 235-239.)  This is because the surrounding walls of the so-called "reservoir

6  housing" within which "the top chamber subcomponent" is allegedly "nestled" are merely for cosmetic

7  purposes.  These walls just avoid a visually displeasing parting line between Tamriel's first and second

8  structures appearing on the ***outside*** of the overall device, and do not serve any pumping function and,

9  in fact, do not even touch any liquid.  It is important to note that the "reservoir" corresponds to a

10  "single receptacle defining a *fluid flow path*" containing two *fluidly functioning* chambers, and is not

11  merely a "housing" to house components as incorrectly characterized by Asetek.  As CoolIT's expert

12  explains in his report, if the walls surrounding the purported "top chamber subcomponent" are

13  removed (colored in light blue on the below-left), the device will function fluidly just the same, as

14  shown below:



Tubing (gasket)

20    As shown above, the first structure (yellow) in Tamriel does not need the surrounding walls

21  (light blue) of the second structure (blue) to function fluidly, which are dry and serve no fluid related

22  function.  That is, Tamriel simply does not have a single receptacle divided into a fluidly functional

23  "upper chamber" and a fluidly functional "lower chamber."  Rather, the two structures are two

24  separably functional receptacles being connected by tubing (gasket) and removably coupled by screws

25  (above-right).  (*See* Ex. 3, 12/08/2021 Abraham Non-Infringement Rep., ¶¶ 235-239.)  To drive home

---

[9] It is incorrect because there is no doll within a doll, and at least a portion of the first structure including the upper chamber is above the top of the second structure, as shown in Ex. 28 at COOLIT0036076 (pump volute) and Ex. 29 at COOLIT0036086 (impeller assembly), on p. 9 and p. 11 (showing pump volute and impeller assembly in topside view). (*See* n.6 *supra*.)

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

12

CASE NO. 3:19-CV-00410-EMC
DEFENDANTS' REPLY ISO MOTION FOR
SUMMARY JUDGMENT

the point, Dr. Abraham had a demo made to show that Tamriel's two structures can function as two

receptacles independently of and away from each other, just like the prior art Ryu, as shown below:



(*See id.*, ¶¶ 241-245 (red arrow added).)   Tamriel's first structure is a "receptacle" that can fluidly

function independently of and away from the second structure.  Thus, summary judgment is warranted.

### 4.   Asetek's DOE theory fails because "single receptacle" specifically excludes Tamriel's two receptacles

The requirement that the "single receptacle" of the claimed "reservoir" includes within it both

the "upper chamber" and "lower chamber" precludes Tamriel's two separate receptacles each

respectively containing only one of the two chambers.  This is because "[t]he concept of equivalency

cannot embrace a structure that is specifically excluded from the scope of the claims."  *See, e.g.*, *Sage

Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1424–25 (Fed. Cir. 1997) (affirming summary

judgment of noninfringement under DOE and refusing to find as an equivalent a slot with ***two

constrictions below*** to be the equivalent of a slot with one constriction above and ***one below***); *Bell Atl.

Network Servs., Inc. v. Covad Commc'ns Grp., Inc.*, 262 F.3d 1258, 1280 (Fed. Cir. 2001) (finding

claim required *two* unidirectional channels and accused product used a *single* two-way channel,

therefore, a finding of equivalents would vitiate the unidirectional limitation).   Thus, summary

judgment should be granted as to Asetek's DOE theory.

### 5.   Asetek's arguments based on patent specifications not at issue are irrelevant and fail on the merits

Asetek argument that Tamriel's first structure (referred to by Asetek as "the top chamber

subcomponent") "fulfills the same function as the impeller cover 46A in Asetek's preferred

embodiment (shown in Figure 17 of the '196 patent …)" is both irrelevant and meritless.  (Opp. at 17.)

Currently, only the '362 patent is at issue, so any arguments based on Figure 17 of the '196 patent

should be ignored on procedural grounds alone.  (*See* ECF No. 384, Scheduling Order (specifying

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

13

CASE NO. 3:19-CV-00410-EMC
DEFENDANTS' REPLY ISO MOTION FOR
SUMMARY JUDGMENT

current motions are only about the '362 patent).)  But even on the merits, as shown above, Tamriel's first structure can still operate as a receptacle independent of and away from the second structure, unlike the impeller cover 46A that can only function within the rest of the device.  Thus, Asetek's arguments do not create any factual dispute that precludes summary judgment.

### C. Summary judgment of validity over *Antarctica* is warranted because Asetek has no empirical evidence that Antarctica has "microchannels" and also because Asetek cannot show by clear and convincing evidence that the Asetek sample is representative of products on-sale before the priority date of CoolIT's patents

Summary judgment of validity over *Antarctica* should be granted because Asetek fails to present any empirical evidence regarding *Antarctica's* alleged "microchannels."  Asetek alleges that "CoolIT turns a blind eye toward[s] all the [] testimony" identified in Asetek's opposition brief.  (Opp. at 23.)  Not so.  To the contrary, CoolIT addressed all of Asetek's purported evidence of *Antarctica's* microchannels.  (Opening Br. at 23-24.)  None of it can overcome summary judgment.  First, it is undeniable that Asetek's expert Dr. Tuckerman failed to rely on any empirical evidence to support his conclusory opinions.  Dr. Tuckerman admitted he never recorded any measurements of microchannels.  (Ex. 24 at 138:14-20; Ex. 13 at 14:22-15:3.)  Dr. Tuckerman also admitted that he did not rely on delinquent Exhibit 275[10] for his opinion.  (Ex. 13 at 29:16-30:13.)  Indeed, regarding Exhibit 275 he admitted that (1) he did not speak to anyone at Asetek to confirm what the materials depicted were and (2) he is unable to independently verify what the photo of the "machining document" says—he was not provided the document, he does not speak or read Danish, and he never had the document translated.[11]  (Ex. 25 at 13:1-13; Ex. 13 at 18:22-19:2, 22:4-16, 24:20-25:6.)  Nor could Exhibit 275 even satisfy Asetek's burden to prove invalidity by clear and convincing evidence because it only allegedly shows information regarding a machining tool used to create *Antarctica's* channels, *not* the actual *Antarctica* product[12]—let alone any proof that what is shown in the photo was the specific

---

[10] CoolIT has filed a motion to strike Exhibit 275.  (ECF No. 389.)

[11] Asetek alleges that Dr. Tuckerman "was able to confirm based on a legend below the picture of the blades in Exhibit 275 that the blades were indeed 'intended to give [] a nominal 1-millimeter' cut." (Opp. at 23 (alteration in original).)  Asetek appears to be pointing to the truncated box label at the bottom of picture.  It is unclear what the box label represents and, in any event, since Dr. Tuckerman spoke to no one at Asetek and cannot verify what the label represents, it would hardly be evidence, let alone clear and convincing evidence, even if Exhibit 275 were not struck (which it should be).

[12] Dr. Pokharna testified that "the width of a channel is always more than the width of the tool being used." (Ex. 30, 1/10/22 Pokharna Depo at 125:24-127:17.)

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

CASE NO. 3:19-CV-00410-EMC
DEFENDANTS' REPLY ISO MOTION FOR
SUMMARY JUDGMENT

machining tool used to create the channels in the sole *Antarctica* sample produced in this case. In fact, Dr. Tuckerman testified that it was "not necessarily that particular Antarctica unit" that was made by the tool and "there was no representation made that the particular tool was used on that particular Antarctica." (Ex. 13 at 24:20-25:6.)

Second, it is undeniable that Mr. Eriksen's testimony is uncorroborated testimony of an interested inventor and CEO and, further, that he admitted that his testimony regarding the widths of *Antarctica's* channels was a "best guess." (Ex. 10 at 117:20-25.) As such, neither Dr. Tuckerman's testimony nor Mr. Eriksen's testimony is based on any empirical evidence. As the party bearing the burden of proof and, further, needing to carry that burden by clear and convincing evidence, Asetek has no such evidence to point to. Summary judgment is, therefore, warranted.

Separately. summary judgment is warranted because Asetek cannot carry its burden to show that the specific *Antarctica* sample it produced is representative of the *Antarctica* products on sale prior to August 9, 2007. Asetek does not dispute that it did not produce evidence during discovery showing when the sample was manufactured or linking the sample to the single spreadsheet of sales data. In its opposition, Asetek submits a declaration from Mr. Eriksen, who provides the conclusory opinion that there was "only one version/generation of the cold plate" and, further, the sample he gave to Asetek's counsel "is representative of the cold plates in all the Antarctica kits sold in the U.S. in 2004-2006." (Ex. I, ¶¶ 4, 5.) Mr. Eriksen's conclusory statements are provided without any factual support, and "[a] party may not overcome a grant of summary judgment by merely offering conclusory statements." *TechSearch*, 286 F.3d at 1371 (citation omitted). As the party bearing the burden, it was incumbent on Asetek to provide the necessary proof during discovery. Asetek failed to do, and summary judgment is, therefore, warranted because Asetek cannot show that the specific *Antarctica* sample it provided is representative of the Antarctica products on sale prior to August 9, 2007.

### III.   CONCLUSION

For the foregoing reasons, summary judgment of non-infringement of the '362 patent, and validity of the '330, '284, and '266 patents over *Antarctica*, should be granted.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

15

CASE NO. 3:19-CV-00410-EMC
DEFENDANTS' REPLY ISO MOTION FOR
SUMMARY JUDGMENT

| | |
|---|---|
| 1 | Dated:          April 21, 2022                    /s/ *Reuben H. Chen* |
| 2 | COOLEY LLP |
| | HEIDI L. KEEFE (178960) |
| 3 | (hkeefe@cooley.com) |
| | REUBEN H. CHEN (228725) |
| 4 | (rchen@cooley.com) |
| | ALLIE LEEPER (307310) |
| 5 | (aleeper@cooley.com) |
| | DEEPA KANNAPPAN (313573) |
| 6 | (dkannappan@cooley.com) |
| | 3175 Hanover Street |
| 7 | Palo Alto, CA  94304-1130 |
| | Telephone:    (650) 843-5000 |
| 8 | Facsimile:     (650) 849-7400 |
| 9 | DUSTIN M. KNIGHT (*pro hac vice*) |
| | (dknight@cooley.com) |
| 10 | 11951 Freedom Drive, 16th Floor |
| | Reston, VA 20190 |
| 11 | Telephone: (703) 456-8000 |
| | Facsimile: (703) 456-8100 |
| 12 | |
| | *Attorneys for Defendant and Counter-claimant* |
| 13 | *COOLIT SYSTEMS, INC. and Defendants* |
| | *CORSAIR GAMING, INC. and CORSAIR* |
| 14 | *MEMORY, INC.* |
| 15 | GREENBERG TRAURIG, LLP |
| | KYLE D. CHEN (SBN 239501) |
| 16 | (kchen@gtlaw.com) |
| | 1900 University Avenue |
| 17 | East Palo Alto, CA 94303 |
| | Telephone: (650) 289-7887 |
| 18 | Facsimile: (650) 328-8508 |
| 19 | *Attorneys for Defendant CoolIT Systems, Inc.* |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

16

CASE NO. 3:19-CV-00410-EMC
DEFENDANTS' REPLY ISO MOTION FOR
SUMMARY JUDGMENT