Robert F. McCauley (SBN 162056)
robert.mccauley@finnegan.com
Arpita Bhattacharyya (SBN 316454)
arpita.bhattacharyya@finnegan.com
Jeffrey D. Smyth (SBN 280665)
jeffrey.smyth@finnegan.com
**FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, LLP**
3300 Hillview Avenue
Palo Alto, California 94304
Telephone:   (650) 849-6600
Facsimile:   (650) 849-6666

Attorneys for Plaintiff and Counterdefendant
ASETEK DANMARK A/S and
Counterdefendant ASETEK USA, INC.

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| ASETEK DANMARK A/S,<br><br>　　　　　Plaintiff and<br>　　　　　Counterdefendant,<br><br>ASETEK USA, INC.,<br><br>　　　　　Counterdefendant,<br><br>　　　v.<br><br>COOLIT SYSTEMS, INC.,<br><br>　　　　　Defendant and<br>　　　　　Counterclaimant,<br><br>COOLIT SYSTEMS USA INC., COOLIT SYSTEMS ASIA PACIFIC LIMITED, COOLIT SYSTEMS (SHENZHEN) CO., LTD.,<br><br>　　　　　Defendants,<br><br>CORSAIR GAMING, INC. and CORSAIR MEMORY, INC.,<br><br>　　　　　Defendants. | CASE NO. 3:19-cv-00410-EMC<br><br>**ASETEK DANMARK A/S'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE CERTAIN OPINIONS OF DR. JOHN P. ABRAHAM UNDER *DAUBERT* FOR MISCONSTRUING AND MISAPPLYING THE PARTIES' STIPULATED CLAIM CONSTRUCTION**<br><br>Date:　　　May 5, 2022<br>Time:　　　1:30 PM<br>Location:　Courtroom 5, 17th Floor<br>Judge:　　　Hon. Edward M. Chen |

# TABLE OF CONTENTS

I. Introduction ..................................................................................................................1

II. Dr. Abraham's Noninfringement Arguments are Based on Improper Claim
Construction Arguments ..............................................................................................1

III. Defendants' Opposition Mischaracterizes the Structure of the Lower Chamber in the
H100i and the Experts' Reports/Opinions Regarding Same ........................................3

IV. Defendant's Interpretation of "Reservoir," and Their Argument That the H100i
Avoids Infringement Because the Cold Plate Allegedly Contains A "Receptacle,"
Would Exclude Asetek's Preferred Embodiments ......................................................8

V. Judge Tigar's Nesting Doll Analogy Is Spot On .......................................................10

VI. Dr. Abraham's Distorted Reinterpretation of "Reservoir" Contradicts CoolIT's
Arguments at the PTAB ..............................................................................................11

VII. Conclusion ..................................................................................................................11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Apple Inc. v. Samsung Elecs. Co.*,
  No. 11-cv-01846-PSG, 2014 WL 660857 (N.D. Cal. Feb. 20, 2014) ......................................1, 3, 4

*Arctic Cat Inc. v. Bombardier Prods., Inc.*,
  No. 14-cv-62369, 2016 WL 9402395 (S.D. Fla. 2016), vacated in part, 876 F.3d
  1350 (Fed. Cir. 2017), related appeal 876 F.3d 1350 (Fed. Cir. 2017) ..........................................3

*EMC Corp. v. Pure Storage, Inc.*,
  154 F. Supp. 3d 81 (D. Del. 2016) .................................................................................................3

*Fujifilm Corp. v. Motorola Mobility LLC*,
  No. 12–CV– 03587–WHO, 2015 WL 1265009 (N.D. Cal. 2015) ..................................................1

*Huawei Techs., Co v. Samsung Elecs. Co*,
  340 F. Supp. 3d 934 (N.D. Cal. 2018) ...............................................................................1, 2, 3

*Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*,
  87 F. Supp. 3d 928 (N.D. Cal. 2015) .............................................................................................1

*MediaTek Inc. v. Freescale Semiconductor, Inc.*,
  No. 11–CV–05341–YGR, 2014 WL 971765 (N.D. Cal. Mar. 5, 2014) ..................................1, 2, 3

I.      Introduction

Dr. Abraham's noninfringement opinion improperly delves too far into claim construction territory. He relies extensively on various extrinsic evidence to import or add limitations to the parties' stipulations about the construction of "reservoir." Dkt. 400-5, ¶¶53-55 and 85-89. This is improper and should be excluded under precedent from this district and *Daubert*.

II.     Dr. Abraham's Noninfringement Arguments are Based on Improper Claim Construction Arguments

As Judge Orrick noted in *Fujifilm Corp. v. Motorola Mobility LLC,* No. 12–CV– 03587–WHO, 2015 WL 1265009 (N.D. Cal. 2015), cited in Defendants' opposition, an expert "[a]rguing claim construction to the jury is inappropriate because it risks confusion and the likelihood that a jury will render a verdict not supported by substantial evidence." *Id*. at *5-6 (quoting *MediaTek Inc. v. Freescale Semiconductor, Inc.*, No. 11–CV–05341–YGR, 2014 WL 971765, at *4 (N.D. Cal. Mar. 5, 2014); *see also Huawei Techs., Co v. Samsung Elecs. Co*, 340 F. Supp. 3d 934, 949 (N.D. Cal. 2018) (expert witnesses are not permitted to argue claim construction to a jury); *Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*, 87 F. Supp. 3d 928, 945 (N.D. Cal. 2015) (similar (summarizing *MediaTek*)). Expert opinions should be excluded when they "'exceed the bounds' of the plain and ordinary meaning of the claim terms" and "delv[e] too deeply into claim construction to be presented to the jury[.]" *Huawei Techs.*, 340 F. Supp. 3d at 967 (citing *Apple Inc. v. Samsung Elecs. Co.*, No. 11-cv-01846-PSG, 2014 WL 660857, at *6 (N.D. Cal. Feb. 20, 2014) and *Fujifilm*, 2015 WL 1265009, at *6). Similarly, an expert opinion should be stricken when it "'extend[s] too far into the territory of claim construction' to be presented to the jury." *Fujifilm*, 2015 WL 1265009, at *6 (citing *MediaTek Inc.*, 2014 WL 971765, at *6.

In the *MediaTek* decision quoted in *FujiFilm*, Judge Gonzalez Rogers granted a motion to preclude the defendant's expert from arguing thinly veiled claim construction positions to the jury like those offered by Dr. Abraham here. Judge Gonzalez Rogers found it was a "pretense" that the expert would supposedly be testifying only about the "understanding that someone of ordinary skill in the art would have as to ... certain terms that were never previously identified for claim construction." *Id*. at *2, *4 Because the proposed expert testimony "relie[d] heavily on the

prosecution history, specifications, and even provisional applications to explain and expound upon a specific meaning and/or requirements of the terms identified," and "a fair reading of the expert report reveals an intention to argue claim construction" to the jury, she ruled that the expert's testimony "extend[ed] too far into the territory of claim construction" to be presented to the jury. *Id*. at *5–6 (also noting that extrinsic evidence "is not appropriate for presentation to a jury [by an expert] and is properly excluded at trial"). Accordingly, she granted the plaintiff's motion to preclude the expert from explaining the meaning of the terms to the jury under the alleged guise of plain and ordinary meaning. *Id*. at *7.

As in *MediaTek*, Dr. Abraham's opinion on what "a single receptacle that is divided into two chambers" "actually means" (Dkt. 400-5, ¶¶53-55) is improper because it "exceeds the bounds" of the parties' stipulation and delves too deeply into extrinsic evidence and claim construction to be presented to a jury. *Huawei Techs.*, 340 F. Supp. 3d at 967). **And worse, Dr. Abraham adds multiple limitations to the parties' stipulated construction of "reservoir" ("single receptacle defining a fluid flow path"), and also adds multiple limitations to the parties' stipulation that the claimed "reservoir" is a "single receptacle that is divided into two chambers," based on his personal spin on extrinsic evidence.** This extrinsic evidence includes the structure of a Cooler Master Seidon 120V product not at issue in this action, Asetek's and its expert's arguments in the CMI USA trial and the jury verdict, and the prior art Ryu reference. Dkt. 400-5 ¶¶53-55. The new limitations he seeks to add to the stipulated "a single receptacle that is divided into two chambers" include:

- "the **same** single-receptacle component" must "contain[] within it two chambers on its top and bottom, respectively" (Dkt. 400-5, ¶54)
- "the structure separating the two chambers is **within** the same single receptacle and divides such single receptacle **from within** and **into** the two chambers **within it**. The two chambers do not have their own separate and seperable [sic] enclosures, and they depend on the single receptacle to enclose them. This is in sharp contrast to the prior art (such as Ryu) and CoolIT's new design (*see* figure below), of which the upper/pump chamber and the lower/thermal exchange chamber are separate and separable and **have their own separate and separable boundary walls**" (Dkt. 400-5, ¶55)

None of the above limitations were even discussed (Dkt 400-2, ¶8), much less included in the parties' stipulation that the claimed "reservoir" is "a single receptacle that is divided into two chambers." Nor did any of Asetek's experts (Drs. Tilton or Tuckerman) ever agree with them. Under the *MediaTek*, *FujiFilm, Huawei* decisions from this district, Dr. Abraham should not be permitted to add these new limitations to the parties' stipulated construction and present them to the jury. As in *MediaTek*, "a fair reading of the expert report reveals an intention to argue claim construction" to the jury (*MediaTek*, 2014 WL 971765, at *5), and Dr. Abraham should be precluded from doing that.[1]

Moreover, the opinions by Dr. Abraham where he delves into extrinsic evidence to narrow the parties' stipulated construction of "reservoir" are also unreliable and should thus be excluded under the *Daubert* standard. *EMC Corp. v. Pure Storage, Inc.*, 154 F. Supp. 3d 81, 109 (D. Del. 2016). Arguing claim construction to the jury also usurps the role of the court and increases the risk of jury confusion, and should not be allowed. *Apple, Inc. v. Samsung Elecs. Co.*, No. 12-CV-00630-LHK, 2014 WL 660857, at *3 (N.D. Cal. Feb. 20, 2014) ("Arguing claim construction to the jury is inappropriate because it risks confusion and the likelihood that a jury will render a verdict not supported by substantial evidence.").

### III. Defendants' Opposition Mischaracterizes the Structure of the Lower Chamber in the H100i and the Experts' Reports/Opinions Regarding Same

In their opposition, Defendants argue that the cold plate in the accused H100i device is the only portion of the lower chamber that contains volume/fluid and that performs the thermal exchange function of the lower chamber. That is incorrect, as explained below. And from that incorrect premise, Defendants erroneously contend that "a key factual point Dr. Abraham makes here is that Asetek's infringement theory [for the accused H100i] *requires* the copper device's volume that can receive and contain liquid to satisfy the 'lower chamber *providing the thermal*

---

[1] Defendants' citation to *Arctic Cat Inc. v. Bombardier Prods., Inc.*, No. 14-cv-62369, 2016 WL 9402395, *7 (S.D. Fla. 2016), vacated in part, 876 F.3d 1350 (Fed. Cir. 2017), related appeal 876 F.3d 1350 Fed. Cir. 2017), does not change the analysis. For the reasons explained in Asetek's motion and herein, Dr. Abraham's opinion should be precluded because it is not "reliable and helpful," unlike the expert opinion that was not excluded in *Arctic Cat.* Allowing Dr. Abraham to argue claim construction to the jury will only confuse them, as explained in the *MediaTek* and *FujiFilm* decisions discussed above.

*exchange function.*'" Dkt. 420 at 6. But Dr. Abraham never made any such statement in his report or otherwise; instead, this is new and unsupported attorney argument in Defendants' opposition that Defendants attempt to dress up as their expert's opinion, but which is not there. *Id.*[2] Tellingly, Defendants' opposition does not cite to Dr. Abraham's report or anything else he said for this alleged "key factual point" he supposedly made. Instead, they cite to attorney argument in a previous filing, but even that makes a different point than the argument(s) in Defendant's opposition. Dkt. 420 at 6. (citing Dkt. 342 at 2 of 48).[3]

Moreover, Defendant's argument that Asetek supposedly "requires" the H100i cold plate to contain fluid or volume for Asetek's infringement position is incorrect. This argument is based on Defendants' misrepresentations in their opposition that "there is **virtually** no space *within* the [lower chamber of the H100i] for Asetek to map the to the 'lower chamber/compartment' to provide the required thermal exchange function under the parties' stipulation." Dkt. 420 at 6 (underline and bold type added). This assertion misrepresents the structure of the H100i, in which the volume of the lower chamber/compartment extends above the cold plate and includes the plastic cavity(ies) in the housing above the cold plate, which are part of the lower chamber. This assertion also misrepresents what Dr. Abraham and Dr. Tuckerman said about the lower chamber of the H100i; both of their reports state there is volume above the cold plate. And this assertion is also inconsistent with Defendants' assertion that the lower chamber in the H100i allegedly has two receptacles (explained below).

---

[2] Defendants' opposition repeats the same sort of misrepresentation many times, claiming that Dr. Abraham supposedly "explained" various things that he never mentioned, followed by no cites to Dr. Abraham. *See, e.g.,* Dkt. 420 at 1-3.

[3] Later their brief, Defendants similarly but incorrectly argue that "Asetek *needs* the volume in the 'second separable receptacle,' *i.e.*, the copper [cold plate] device, to map to the 'lower chamber/compartment to provide the required thermal exchange function . . . ." Dkt. 420 at 6-7. Although they cite to two paragraphs in Dr. Abraham's report for this argument, his report does not say that. *Id*. at 7 (citing Dkt. 400-5 at ¶¶85-86). The cited paragraphs of the Abraham report say only that the cold plate supposedly has a receptacle; they do not state or support the assertions in Defendants' opposition that there is virtually no volume in the top plastic half of the lower chamber, that the top plastic half of the lower chamber does not contribute to the "required thermal exchange function," or that Asetek's infringement positions requires or needs the cold plate to contain volume to perform the thermal exchange function. All of these are new attorney arguments, not opinions in Dr. Abraham's report.

1   To begin with, Defendants' use of the word "virtually" in their assertion that there is
2   "virtually no volume" in the H100i lower chamber other than in copper cold plate is a tacit
3   admission that there *is* volume in the lower chamber in addition to any volume in the cold plate.
4   Furthermore, the photos Defendants include in their opposition to support their incorrect assertion
5   actually show the opposite, i.e., grooves and spaces in the plastic portion of the lower chamber that
6   have volume and contain fluid:



Dkt. 420 at 6. The above photo (from Defendant's opposition) shows a disassembled H100i, showing the copper cold plate removed and sitting separately from the upper portion of the lower chamber (i.e., the black plastic housing portion that includes a groove and recesses that line up with the structure of the cold plate). In the photo, the product has been opened like a clamshell, revealing the two interior sides of the lower chamber, the bottom portion (the copper cold plate) and the top portion (the black plastic portion). When the unit is assembled, those two sides are brought and screwed together, and together they form the interior of the lower chamber of the reservoir. As mentioned, the black plastic housing portion of the lower chamber (shown above) includes grooves and other recesses similar in depth and character to the exhaust manifold groove in the copper cold plate that Dr. Abraham argues holds volume/fluid and is itself a "receptacle" in his report and annotation below:



Dkt. 420 at 4. Thus, Defendants' argument in their opposition that there is "virtually no space" within the upper, plastic portion of the lower chamber is incorrect and disproved by their own photos, in addition to not being included in their expert's opinion.

And moreover, both Dr. Abraham and Asetek's expert, Dr. Tuckerman, made statements in their respective reports from which it is clear that the volume in the lower chamber in the H100i is not just volume in the copper cold plate, but also includes the volume in the plastic housing structure above the cold plate. Dkt. 400-5 ¶92 (referring to the copper cold plate/"heat exchanging interface" as only "part of the lower chamber"; "That is, even after the removal of the copper component, the heat exchanging interface is still attached to the single-receptacle 'reservoir' containing within it the lower chamber. In other words, there is no way to remove just the 'heat exchanging interface' without also removing part of the 'lower chamber' from the 'reservoir.'"); Dkt 386-5 ¶58 ("Each of the upper chamber and the lower chamber [in the H100i] is surrounded by boundary walls, as shown above, and each contains fluid."), ¶275, ¶282.

1  Dr. Tuckerman similarly testified that the "lower chamber" is not just the copper cold plate,
2  but includes the pieces and the volume in the housing structure above the cold plate, as illustrated
3  below:



17  *Id*. at ¶275. The "lower chamber" extends from the "horizontal wall" (at the top of the lower
18  chamber) to the copper cold plate. *Id.* at ¶280; *also see* image below. And contrary to Defendants'
19  assertion, the copper cold plate (i.e., the "heat exchanging interface") is part of and included by the
20  "reservoir" as expressly required by claims 17 and 19 of the '362 patent ("separably thermally
21  coupling *a heat exchanging interface of a reservoir*."). Dkt. 228-5.



Dkt. 386-5, ¶278-79.

**IV. Defendant's Interpretation of "Reservoir," and Their Argument That the H100i Avoids Infringement Because the Cold Plate Allegedly Contains A "Receptacle," Would Exclude Asetek's Preferred Embodiments**

Defendants argue in their opposition that Asetek's "interpretation" of Dr. Abraham's noninfringement opinion is supposedly wrong, and from that they attempt to brush aside various challenges to their noninfringement positions. Asetek did not misinterpret Dr. Abrahams' report; Defendants' brief repeatedly attempts to recast Dr. Abraham's opinions with unsupported attorney argument claiming that Dr. Abraham explained or made key points that he did not make and that are not supported by cites to his report.  E.g., Dkt. 420 at 1-3. With respect to Asetek's point that Dr. Abraham's application of "receptacle" in his noninfringement opinion would exclude Asetek's preferred embodiments and is thus improper, Asetek did not misinterpret Dr. Abraham's noninfringement opinion for the H100i. Dr. Abraham's noninfringement expert report states that the manifold groove in the copper cold plate in the H100i (see his annotated photo below) is "capable of holding coolant (with proper orientation)" and is thus a receptacle (Dkt. 400-5, ¶¶85-87):



13  *Id*. And based on that opinion, Dr. Abraham opined that the H100i does not infringe the '362 patent

14  claims because the lower chamber, which includes the cold plate, allegedly "has two receptacles,"

15  rather than a single receptacle:

16  > [I]t is my opinion that Dr. Tuckerman is incorrect, and that what he has identified as a "lower/thermal exchange chamber" actually consists of multiple receptacles. . . . **Because what Dr. Tuckerman points to as the lower/thermal exchange chamber actual [sic] has two receptacles, the accused product does not infringe.**

19  Dkt. 400-5, ¶87 (emphasis added). Defendants' opposition, is frankly, confusing and hard to follow,

20  but they now appear to argue that Dr. Abraham's opinion is not that the H100i avoids infringement

21  because the unit as a whole contains two receptacles, but instead that H100i avoids infringement

22  because part of the lower chamber (the cold plate) is separable, and because the lower chamber

23  allegedly contains two receptacles. *See* Dkt. 420 at 2. But even accepting that revision or

24  clarification from Defendants, Dr. Abraham's application of "receptacle" would still exclude

25  Asetek's preferred embodiments, and thus should be excluded as unreliable under *Daubert*. To focus

26  on a single example, the bowl-shaped impeller cover 46A in Figures 17 and 20 in the '196 patent

1  defines pump chamber 46, is separable from the reservoir housing 14, and is capable of holding or
2  accommodating coolant:



Dkt. 400-4 Figs. 17 and 20 (annotations added). Defendants' argument that Figures 17 and 20 from the '196 patent are irrelevant because that patent is currently stayed ignores that the parties agreed that their stipulated construction of "reservoir" applied equally to all of the patents asserted by Asetek, including the '362, '196, and '601 patents. Dkt. 237 at 2; Dkt. 67 at 1.

## V.   Judge Tigar's Nesting Doll Analogy Is Spot On

Defendants' argument that Judge Tigar's nesting doll analogy is irrelevant is erroneous. Defendants' argument is premised on their assertion that the cold plate in the H100i is not part of the recited reservoir, or is outside the reservoir (which, like most of Defendants' other arguments is not supported by any citation to Dr. Abraham or his report). Dkt. 420 at 16. But that premise/argument is incorrect. Claims 17 and 19 clearly recite that the "heat exchanging interface" (the cold plate) is both part of the recited reservoir, and is removable from the reservoir. The first element of claim 17 recites "thermally coupling a heat exchanging interface of a reservoir . . . the heat exchanging interface being removably coupled to the reservoir . . ." Dkt. 228-5 claim 1, 20:31-44. Claim 19

depends from 17 and recites the same limitations. Id. claim 19. Thus, the claims themselves establish that the "heat exchanging interface" (cold plate) is part of the reservoir and is removable from the reservoir, and Figure 15 shows that the heat exchanging interface 4 forms the base of the lower chamber (which is placed thermal contact with the CPU). *Id*. Fig. 15. The same is true of the cold plate in the H100i: it is also part of and removable from the reservoir. Dkt. 386-5, ¶275 (showing the cold plate is removable and still part of the "reservoir"). Thus, Judge Tigar's nesting doll analogy remains compelling and illustrates the fallacy of Dr. Abraham's noninfringement argument. This is yet another reason why Dr. Abraham's infringement theory/opinion should be precluded as unreliable under *Daubert*.

### VI. Dr. Abraham's Distorted Reinterpretation of "Reservoir" Contradicts CoolIT's Arguments at the PTAB

Defendants' argument that their expert is not contradicting CoolIT's representations to the PTAB boils down to a bald assertion that he supposedly said nothing contradictory (he did) and that Asetek is supposedly taking CoolIT's IPR statements out of context (Asetek did not). Asetek's position is that there are multiple receptacles (within the alleged "single receptacle" of Duan) that are defined by the multiple components connected or integrated to form the alleged "reservoir" in Duan. Defendants have never disputed that position with any expert testimony, and in their opposition, they try to avoid their inconsistent positions by drawing a thick red outline around Duan's separate accommodation chamber 21 and cap 4 components to argue that these separate components are parts of a "single receptacle." Dkt. 420 at 17. But this unsupported attorney argument does not dispel Asetek's point that Dr. Abraham's noninfringement position should be precluded under *Daubert* because it is inconsistent with CoolIT's allegations in the IPR that the separate accommodation chamber and cap define separate receptacles in Duan.

### VII. Conclusion

Paragraphs 53-55 and 85-89 of Dr. Abraham's noninfringement opinion improperly delve too far into claim construction territory and should be excluded under precedent from this district and *Daubert*.

11

ASETEK'S REPLY ISO ITS MOTION TO EXCLUDE CERTAIN
OPINIONS OF DR. J. ABRAHAM UNDER *DAUBERT*
CASE NO. 3:19-CV-00410-EMC

| | | |
|---|---|---|
| 1 | Dated: April 21, 2022 | FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP |

By: ___/s/ Arpita Bhattacharyya___
    Arpita Bhattacharyya
    Attorneys for Plaintiff and Counterdefendant
    ASETEK DANMARK A/S and
    Counterdefendant ASETEK USA, INC.