1  Robert F. McCauley (SBN 162056)
   robert.mccauley@finnegan.com
2  Arpita Bhattacharyya (SBN 316454)
   arpita.bhattacharyya@finnegan.com
3  Jeffrey D. Smyth (SBN 280665)
   jeffrey.smyth@finnegan.com
4  **FINNEGAN, HENDERSON, FARABOW,**
     **GARRETT & DUNNER, LLP**
5  3300 Hillview Avenue
   Palo Alto, California 94304
6  Telephone:    (650) 849-6600
   Facsimile:    (650) 849-6666
7
   Attorneys for Plaintiff and Counterdefendant
8  ASETEK DANMARK A/S and
   Counterdefendant ASETEK USA, INC.
9

10              **UNITED STATES DISTRICT COURT**
              **NORTHERN DISTRICT OF CALIFORNIA**
11               **SAN FRANCISCO DIVISION**

12

13  ASETEK DANMARK A/S,                        CASE NO. 3:19-cv-00410-EMC

14                    Plaintiff and            **ASETEK DANMARK A/S AND ASETEK**
                      Counterdefendant,        **USA, INC.'S REPLY IN SUPPORT OF**
15                                             **MOTION FOR PARTIAL SUMMARY**
    ASETEK USA, INC.,                          **JUDGMENT**
16
                      Counterdefendant,
17                                             Date:        May 5, 2022
              v.                               Time:        1:30 PM
18                                             Location:    Courtroom 5, 17th Floor
    COOLIT SYSTEMS, INC.,                      Judge:       Hon. Edward M. Chen
19
                      Defendant and
20                    Counterclaimant,

21  COOLIT SYSTEMS USA INC., COOLIT
    SYSTEMS ASIA PACIFIC LIMITED,
22  COOLIT SYSTEMS (SHENZHEN) CO.,
    LTD.,
23
                      Defendants,
24
    CORSAIR GAMING, INC. and CORSAIR
25  MEMORY, INC.,

26                    Defendants.

27

28

1

2 **<u>TABLE OF CONTENTS</u>**

3   I.   THE CLAIMED "PLATE" SHOULD BE CONSTRUED TO REQUIRE A RIGID
         MATERIAL BASED ON THE INTRINSIC RECORD AND THE PTAB'S FINAL
4        DECISION ...................................................................................................................1

5        A.   The PTAB's Final Written Decision in the IPR Against CoolIT's '266 Patent
              Led to Asetek's Request for Claim Construction .......................................................1
6
         B.   Courts Routinely Consider Claim Construction During Summary Judgment ........3
7
         C.   Claim Construction of "Plate" Should Not Be Left for the Jury to Decide ............6
8
         D.   Asetek's Proposed Claim Construction is Supported by the Written
9             Description, the Prosecution History, and the PTAB's Decision; CoolIT's
              Broad Plain and Ordinary Meaning Interpretation Based Only on Extrinsic
10            Evidence is Not ...................................................................................................7

11            1.   Material is an important defining characteristic of the "plate" ..................7

12            2.   The intrinsic record and the PTAB's final decision support Asetek's
                   proposed construction of "plate" as requiring rigid materials ....................9
13
              3.   CoolIT has not shown written description support for "plate" made of
14                 compliant material to support its plain meaning interpretation, nor can
                   it. In any event, CoolIT is collaterally estopped from litigating the
15                 written description issue in the district court .............................................11

16  II.  UNDER THE PROPER CONSTRUCTION OF "PLATE" AS A MANIFOLD
         BODY MADE OF RIGID MATERIAL, THE COURT SHOULD GRANT
17       SUMMARY JUDGMENT OF NON-INFRINGEMENT FOR ASETEK'S GEN 5, 6,
         AND 7 PRODUCTS BECAUSE THERE IS NO GENUINE DISPUTE THAT THE
18       ALLEGED "PLATE" IN THESE PRODUCTS IS MADE OF A COMPLIANT
         MATERIAL ...............................................................................................................12
19
20  III. ASETEK'S ALTERNATIVE WRITTEN DESCRIPTION ARGUMENT IS NOT
         UNTIMELY BECAUSE IT IS PREDICATED ON THE COURT GIVING "PLATE"
         A BROAD PLAIN MEANING INTERPRETATION .......................................................12
21
     IV. DEFENDANTS HAVE FAILED TO IDENTIFY EVIDENCE THAT CLEARLY
22      AND CONVINCINGLY SHOWS THAT A PERSON SKILLED IN THE ART
        WOULD HAVE BEEN MOTIVATED TO COMBINE THE PRIOR ART
23      REFERENCES IN OBVIOUSNESS GROUNDS 4-9 AND WOULD HAVE
        REASONABLY EXPECTED SUCCESS IN DOING SO ...............................................13

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ActiveVideo Networks, Inc. v. Verizon Commc'ns., Inc.*,
    694 F.3d 1312 (Fed. Cir. 2012)................................................................................13, 14

*Aircraft Tech. Publishers v. Avantext, Inc.*,
    No. C 07-4154 SBA, 2009 WL 3817944 (N.D. Cal. Nov. 10, 2009)..............................4

*Apple, Inc. v. Samsung Elecs. Co.*,
    No. 12-CV-00630-LHK, 2014 WL 660857 (N.D. Cal. Feb. 20, 2014)................................ *passim*

*Ariad Pharms., Inc. v. Eli Lilly & Co.*,
    598 F.3d 1336 (Fed. Cir. 2010) (en banc).......................................................................2

*Asia Vital Components Co. v. Asetek Danmark A/S*,
    377 F. Supp. 3d 990 (N. D. Cal. 2019) ..................................................................13, 15

*Atlantic Research Marketing Systems, Inc. v. Troy*,
    659 F.3d 1345 (Fed. Cir. 2011)......................................................................................11

*Boston Scientific Corp. v. Johnson & Johnson*,
    534 F. Supp. 2d 1062 (N.D. Cal. 2007) ...........................................................................3

*Broadcom Corp. v. Emulex Corp.*,
    732 F.3d 1325 (Fed. Cir. 2013)......................................................................................15

*DSS Tech. Mgmt., Inc. v. Apple Inc.*,
    885 F.3d 1367 (Fed. Cir. 2018)......................................................................................14

*Fujifilm Corp. v. Motorola Mobility LLC*,
    No. 12-CV-03587-WHO, 2015 WL 757575 (N.D. Cal. Feb. 20, 2015) .........................5

*Gentex Corp. v. Donnelly Corp.*,
    69 F.3d 527 (Fed. Cir. 1995)...........................................................................................4

*Huawei Technologies, Co, Ltd v. Samsung Electronics Co, Ltd.*,
    340 F. Supp. 3d 934 (N.D. Cal. 2018) ........................................................................5, 12

*Innogenetics, N.V. v. Abbott Labs.*,
    512 F.3d 1363 (Fed. Cir. 2008)......................................................................................13

*InTouch Techs., Inc. v. VGO Commc'ns, Inc.*,
    751 F.3d 1327 (Fed. Cir. 2014)................................................................................13, 14

*Laitram Corp. v. Morehouse Indus., Inc.*,
    143 F.3d 1456 (Fed. Cir. 1998)........................................................................................4

*In re Magnum Oil Tools Int'l, Ltd.*,
   829 F.3d 1364 (Fed. Cir. 2016).............................................................................15

*MediaTek, Inc. v. Freescale Semiconductor, Inc.*,
   No. 11–CV–5341 YGR, 2014 WL 2854705 (N.D. Cal. June 20, 2014) ...............................14, 15

*MediaTek, Inc. v. Freescale Semiconductor, Inc.*,
   No. 11–CV–5341 YGR, 2014 WL 971765 (N.D. Cal. Mar. 5, 2014)...........................................6

*Microsoft Corp. v. Enfish, LLC*,
   662 F. App'x 981 (Fed. Cir. 2016) ...........................................................................14

*New Railhead Mfg., LLC v. Vermeer Mfg. Co.*,
   298 F.3d 1290 (Fed. Cir. 2002)...............................................................................10

*Novartis Pharms. Corp. v. West-Ward Pharms. Int'l Ltd.*,
   923 F.3d 1051 (Fed. Cir. 2019)...............................................................................14

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
   521 F.3d 1351 (Fed. Cir. 2008).................................................................................5

*Pers. Web Techs., LLC v. Apple, Inc.*,
   848 F.3d 987 (Fed. Cir. 2017).................................................................................13

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005).................................................................................8

*PowerOasis. Inc. v. T-Mobile USA, Inc.*,
   522 F.3d 1299 (Fed. Cir. 2008).................................................................................9

*SanDisk Corp. v. Memorex Prods., Inc.*,
   415 F.3d 1278 (Fed. Cir. 2005).................................................................................3

*Securus Techs., Inc. v. Glob. Tel*Link Corp.*,
   701 F. Appx. 971 (Fed. Cir. 2017)...........................................................................14

*Stern v. SeQual Techs., Inc.*,
   840 F. Supp. 2d 1260 (W.D. Wash.), *aff'd*, 493 F. App'x 99 (Fed. Cir. 2012)............................4

*Tech. Licensing Corp. v. Videotek, Inc.*,
   545 F.3d 1316 (Fed. Cir. 2008)...............................................................................10

*TQ Delta, LLC v. Cisco Sys., Inc.*,
   942 F.3d 1352 (Fed. Cir. 2019)...............................................................................14

*Vitronics Corp. v. Conceptronic, Inc.*,
   90 F.3d 1576 (Fed. Cir. 1996)...................................................................................8

*z4 Techs., Inc. v. Microsoft Corp.*,
   No. 06–cv–142 (E.D. Tex. Apr. 12, 2006) *aff'd,* 507 F.3d 1340 (Fed. Cir. 2007).........................4

*Zoho Corp. v. Sentius Int'l, LLC*,
    494 F. Supp. 3d 693 (N.D. Cal. 2020) ........................................................................11

**Statutes**

35 U.S.C. § 112, ¶ 1 ..................................................................................................10

**Other Authorities**

6 Annotated Patent Digest § 40:63.60 ........................................................................4

Fed. R. Civ. P. 26(e)(1)(A) ........................................................................................3

1

2

## I. THE CLAIMED "PLATE" SHOULD BE CONSTRUED TO REQUIRE A RIGID MATERIAL BASED ON THE INTRINSIC RECORD AND THE PTAB'S FINAL DECISION

3          Instead of directly addressing the merits of Asetek's proposed construction of "plate," CoolIT

4    primarily raises a procedural argument that Asetek's request for claim construction should be ignored

5    as "untimely." CoolIT asks this Court to disregard the final judgment of the PTAB which drove

6    Asetek's claim construction request, and to give "plate" a plain and ordinary meaning in spite of the

7    PTAB's finding that there is no written description support for plate made of compliant materials.

8    CoolIT's procedural arguments are contrary to the law and facts in this case, as well as hypocritical

9    given that CoolIT similarly requested claim construction after a PTAB ruling on one of its patents

10   (explained below). CoolIT's reliance on extrinsic evidence that are at odds with intrinsic evidence to

11   argue that the material of the "plate" is unimportant is also misplaced.

12

13

### A. The PTAB's Final Written Decision in the IPR Against CoolIT's '266 Patent Led to Asetek's Request for Claim Construction

14          CoolIT's opposition argues that their infringement theories always mapped the compliant

15   EPDM manifolds in Asetek's Gen 5, 6, and 7 products to the claimed "plate," and that Asetek did not

16   supplement its interrogatory responses to identify the non-infringement position based on "plate"

17   before the close of fact discovery on August 31, 2021. Dkt. 423 at 2-3. CoolIT's arguments ignore that

18   the PTAB's final written decision discussing written description support for plate did not issue until

19   October 12, 2021—i.e., close to 1.5 months after close of fact discovery—and almost a month after

20   the parties exchanged initial expert reports on September 16, 2021.

21          In the final written decision, the PTAB not only agreed with Asetek that there was no written

22   description support for "manifold body defin[ing] a pair of compliant surfaces" in the 2007 Provisional

23   (*see* Dkt. 394-5 at 23, 30), the PTAB additionally found the following:

24   • In discussing disclosure in CoolIT's 2011 Provisional of the benefits of compliant insert 334

25      over rigid plate 240, the PTAB stated: ***"This is objective, intrinsic evidence that the inventor,***

26      ***as of 2011, did not consider plate 240 to be made of what he described in the 2011 Provisional***

27      ***as being compliant material."*** *Id.* at 24-25 (emphasis added).

28

1
2
3
4

- "The inventor's substitution of the phrase 'rigid plate' for the phrase 'plate 240' [in the '266 patent] is objective, intrinsic evidence that as of 2012 [when the '266 patent was filed], ***the inventor considered plate 240 (which he was contrasting with compliant insert 334) to be made of a*** <u>***rigid, rather than compliant, material***</u>**."** *Id.* at 26 (emphasis added).

5
6
7

- "Nothing in the 2007 Provisional would have indicated to a POSITA that ***the inventor envisioned making plate 240 of a compliant material*** in order to perform a gasketing or sealing function.**"** *Id.* at 28-29 (emphasis added).

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Despite the PTAB's above findings that there is no disclosure prior to 2011 of the plate 240 (i.e., the "plate") being made of a compliant material, CoolIT's expert subsequently mapped the claimed "plate" to the compliant EPDM manifold in Asetek's Gen 5, 6, and 7 products in his Infringement Report (served November 3, 2021). After Asetek's counsel studied the PTAB's above findings and CoolIT's expert's Infringement Report, and also consulted with Asetek's expert (Dr. Tuckerman) regarding same, the need to construe "plate" consistent with the PTAB's findings first came into focus. Bhattacharyya Decl., ¶7. The papers exchanged by the parties during the IPR trial did not bring to light this claim construction dispute because CoolIT's IPR papers focused primarily on a legal argument about written description requirement under *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc) and "blaze marks" (such as seal and bendable tabs) providing written description for compliant plate, not whether plate 240 itself was made of compliant material (or not). *Id.*; *see* Ex. A, slide 11. Accordingly, Asetek's main focus during the IPR trial was to counter CoolIT's meritless legal arguments and scientifically incorrect "blaze mark" positions. Bhattacharyya Decl., ¶7. The PTAB disagreed with CoolIT's written description arguments and its unscientific positions on the alleged "blaze marks," and additionally found that there was no indication the inventor possessed "plate" made of a compliant material in 2007 (as summarized in the bullet points above). Accordingly, there is no written description support for "plate" made of compliant material in the 2007 Provisional. Thus, it was the PTAB's final written decision, CoolIT's expert's Infringement Report, and Asetek's counsel's discussions of the PTAB's decision and the Report with Asetek's expert that led to Asetek's request for claim construction of "plate." *See id.* Contrary to CoolIT's allegations, Asetek did not strategically withhold "plate" from the prior two

1  rounds of claim constructions. *Id.*

2  Nor is Asetek "ambush[ing]" CoolIT with claim construction during summary judgment, as

3  alleged by CoolIT. *See* Dkt. 423 at 10-11. Following the issuance of the PTAB's decision and

4  discussions with Dr. Tuckerman, Asetek promptly disclosed its claim construction and non-

5  infringement position in Dr. Tuckerman's Non-Infringement Report served on December 8, 2021.

6  Dkt. 394-4, ¶¶41-53. Thus, contrary to CoolIT's allegation, Asetek timely complied with its Rule 26

7  disclosure obligations by supplementing its non-infringement disclosure "in writing" and "during the

8  discovery process." Fed. R. Civ. P. 26(e)(1)(A) (requiring supplementation or correction of discovery

9  responses "in a timely manner . . . if the additional or corrective information has *not otherwise been*

10  *made known to the other parties during the discovery process or in writing*.") (emphasis added). In

11  response, CoolIT buried its head in the sand—CoolIT's expert did not supplement his Infringement

12  Report, nor did he substantively respond to the PTAB's findings on written description during his

13  subsequent deposition in January 2022 (even though he admitted during his deposition that he knew

14  the PTAB disagreed with him). Ex. B at 95:8-96:18. Thus, CoolIT's complaint that it had "two mere

15  weeks to marshal arguments and evidence in support of its opposition to" Asetek's claim construction

16  and noninfringement arguments is completely groundless. *See* Dkt. 423 at 12. CoolIT has had close to

17  four months to develop its opposition, and it has been doing so, as evident from CoolIT's counsel's

18  extensive questioning of Asetek's expert during his deposition regarding the claim term "plate." *See,*

19  *e.g.,* Ex. C at 177:14-188:23.

20  **B.   Courts Routinely Consider Claim Construction During Summary Judgment**

21  Although Asetek does not believe that its claim construction request is belated under the

22  circumstances described in the preceding section, Asetek agrees that the Court "retains discretion to

23  hear belated claim construction arguments." *Boston Scientific Corp. v. Johnson & Johnson,* 534 F.

24  Supp. 2d 1062, 1074 (N.D. Cal. 2007); *see also SanDisk Corp. v. Memorex Prods., Inc.*, 415 F.3d

25  1278, 1292 (Fed. Cir. 2005). And in this case, Asetek respectfully submits that claim construction of

26  "plate" has become necessary following the PTAB's final written decision to resolve the parties'

27  disputes over alleged infringement and validity, and respectfully requests that the Court construe

28  "plate" (and not give it plain and ordinary meaning).

Contrary to CoolIT's arguments, a motion for summary judgment is not an improper means to construe disputed claim terms, and courts in this and other districts routinely do so. As another court in this district and the Federal Circuit have explained, "claim construction presents a question of law for the Court to decide. As such, the Federal Circuit has held that claims may be construed by way of a motion for summary judgment." *Aircraft Tech. Publishers v. Avantext, Inc.*, No. C 07-4154 SBA, 2009 WL 3817944, at *3 (N.D. Cal. Nov. 10, 2009) (citing *Gentex Corp. v. Donnelly Corp.*, 69 F.3d 527, 530 (Fed. Cir. 1995) ("Claim interpretation is a question of law amenable to summary judgment.") and *Laitram Corp. v. Morehouse Indus., Inc.*, 143 F.3d 1456, 1462 (Fed. Cir. 1998) (affirming motion for summary judgment on issues of claim construction)) (internal citation omitted); *Stern v. SeQual Techs., Inc.*, 840 F. Supp. 2d 1260, 1266 (W.D. Wash.) (construing a claim term in a summary judgment motion even though that claim term was not raised in the parties' prior joint claim construction statement), *aff'd*, 493 F. App'x 99 (Fed. Cir. 2012); *z4 Techs., Inc. v. Microsoft Corp.*, No. 06–cv–142 (E.D. Tex. Apr. 12, 2006) (construing an additional claim term during jury trial because it had become central to defendant's litigation arguments) *aff'd*, 507 F.3d 1340 (Fed. Cir. 2007); 6 Annotated Patent Digest § 40:63.60 (Westlaw Matthews Treatise on Patent Law) ("Should a summary judgment motion raise an issue of claim construction for a claim term that the court had not previously construed during the claim-construction phase of the case, the court may construe that claim term as part of the summary judgment proceeding.") (citing additional cases).

The facts in the cases cited by CoolIT are readily distinguishable. In particular, in none of those cases did the party requesting claim construction identify any recent event, such as the PTAB's final decision here, that triggered the need for new claim construction. Here, during the Court's prior claim constructions, the PTAB's decision—which is the main thrust of Asetek's proposed claim construction of "plate"—did not even exist. And there are additional distinguishing facts between the present case and those cited by CoolIT. In *Apple, Inc. v. Samsung Elecs. Co.*, for example, the court declined to "complete the Sisyphean task of providing definitive guidance as to a term's plain and ordinary meaning" in part because of "[p]ractical considerations specific to th[at] case." No. 12-CV-00630-LHK, 2014 WL 252045, at *4-5 (N.D. Cal. Jan. 21, 2014). The court explained that it had previously "warned the parties" that "given the fast-approaching [] trial date, the Court would not treat the

1    summary judgment phase of this case as a chance for the parties to make additional claim construction

2    arguments." *Id.* at *4. The court additionally noted its prior experience with the particular litigants in

3    that case endlessly making claim construction-related arguments, and that "[r]esolving those disputes

4    has taken on a 'whack-a-mole' character, one for which the returns have quickly diminished." *Id.*

5    Nevertheless, the court concluded that it would "carefully consider" disputes over claim scope even

6    at the summary judgment stage "as 'part of the infringement analysis, not part of the claim

7    construction.'" *Id.* Specifically, the court explained that "in determining whether an infringement or

8    anticipation argument fits within the plain and ordinary meaning of a term," the court would review

9    "'the written description and other parts of the specification,' as those tools 'may shed contextual light

10   on the plain and ordinary meaning'"; the court would simply not define the term's plain and ordinary

11   meaning. *Id.* at *5. Here, in contrast, Asetek is not asking the Court to define the plain and ordinary

12   meaning of "plate"; rather, Asetek has requested claim construction of "plate" under *O2 Micro Int'l*

13   *Ltd. v. Beyond Innovation Tech. Co*., 521 F.3d 1351, 1361 (Fed. Cir. 2008) because of events that

14   transpired in the PTAB (which Asetek could not have known during the claim construction stage).

15       Similarly, in *Huawei Technologies, Co, Ltd v. Samsung Electronics Co, Ltd*., the court agreed

16   to consider "the written description and other parts of the specification" for "contextual light" in

17   determining plain and ordinary meaning of claim terms en route to determining the parties' *Daubert*

18   motions. 340 F. Supp. 3d 934, 947-49, 961 (N.D. Cal. 2018). Lastly, in *Fujifilm Corp. v. Motorola*

19   *Mobility LLC*, the court noted that "[t]he parties' only disagreement concerns whether, in deciding

20   [the summary judgment] motion, [the court] must decide precisely what [the] plain and ordinary

21   meaning" of certain claim terms are. No. 12-CV-03587-WHO, 2015 WL 757575, at *4-5 (N.D. Cal.

22   Feb. 20, 2015). That is not the case here. Asetek is not asking the Court to provide greater detail on

23   the plain and ordinary meaning of "plate"; rather Asetek is requesting claim construction of the term

24   because of the parties' disputes over its meaning in view of the written description, prosecution history,

25   and the PTAB's decision.

26       Moreover, CoolIT's untimeliness arguments are disingenuous given that it previously asked

27   the Court to construe the claim term "matingly engaged" in its U.S. 9,057,567 patent after the PTAB

28   issued an adverse final written decision on September 30, 2021, finding all asserted claims of that

1   patent invalid. Specifically, in a hearing before this Court on October 7, 2021, CoolIT's counsel argued

2   that because of "the IPR decision that came out last week . . . there is actually an additional claim

3   construction issue that [] arose because of the IPR" and that the Court "will have to address that claim

4   construction dispute" regarding the term "matingly engaged."[1] Ex. D at 35:4-19. In response, the Court

5   noted that "[i]f something is absolutely necessary, the Court will do it" if the Court "is convinced" that

6   it is necessary. *Id.* at 35:20-23. For CoolIT to now argue that Asetek should have raised the issue of

7   claim construction of "plate" during the earlier claim construction stages, not after the PTAB's

8   decision, is hypocritical and baseless. Just like CoolIT's counsel's argument that an "additional claim

9   construction issue" of "matingly engaged" "arose because of the IPR" against the '567 patent, the

10  "additional claim construction issue" of "plate" similarly "arose because of the IPR" against the '266

11  patent. *See id.* at 35:4-19. Ultimately, the Court declined to move forward with CoolIT's '567 patent

12  because all asserted claims in that patent were found invalid by the PTAB. *Id.* at 36:6-37:24.

13      **C.    Claim Construction of "Plate" Should Not Be Left for the Jury to Decide**

14          While it may be proper for parties to introduce evidence of the plain and ordinary meaning of

15  claim terms not construed by the court at trial, here the dispute is not one of plain and ordinary

16  meaning. Rather, Asetek's position is that "plate" should be construed based on the written description,

17  prosecution history, and the PTAB's decision. If claim construction of "plate" is left unanswered, the

18  parties would have to introduce the extensive intrinsic evidence (i.e., both the written description and

19  prosecution history), the PTAB's decision, and CoolIT's extrinsic evidence to the jury to argue

20  infringement/non-infringement, which would amount to improper claim construction before the jury.

21  *MediaTek, Inc. v. Freescale Semiconductor, Inc.*, No. 11–CV–5341 YGR, 2014 WL 971765, at *5

22  (N.D. Cal. Mar. 5, 2014) ("[T]estimony grounded in the prosecution history to discern the meaning of

23  a claim is properly excluded from presentation to the jury. . . . Similarly, while the court may, in its

24  discretion, consider extrinsic evidence . . . such evidence, if required, is not appropriate for

25  presentation to a jury and is properly excluded at trial."). Thus, contrary to CoolIT's arguments, the

26  proper meaning and scope of "plate" should be decided by the Court so that the jury is not confused

27  by competing expert testimony that delves too deeply into claim construction. *Apple, Inc. v. Samsung*

28

---

[1] This term was incorrectly transcribed as "mainly engaged." Bhattacharyya Decl., ¶8.

ASETEK'S REPLY ISO MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:19-CV-00410-EMC

1    *Elecs. Co.*, No. 12-CV-00630-LHK, 2014 WL 660857, at *3 (N.D. Cal. Feb. 20, 2014) ("Arguing

2    claim construction to the jury is inappropriate because it risks confusion and the likelihood that a jury

3    will render a verdict not supported by substantial evidence.").

**D.    Asetek's Proposed Claim Construction is Supported by the Written Description, the Prosecution History, and the PTAB's Decision; CoolIT's Broad Plain and Ordinary Meaning Interpretation Based Only on Extrinsic Evidence is Not**

**1.    Material is an important defining characteristic of the "plate"**

7    CoolIT argues that the plain meaning of "plate" is defined by "its structure, relationship to

8    other components, and function, not by a material it is made of." Dkt. 423 at 15. CoolIT is incorrect

9    that material is unimportant in defining the "plate." Asetek does not disagree that the "plate" is a flat

10   structure (as evidenced by Asetek's proposed construction of "plate" as "flat manifold body made of

11   a compliant material"). Dkt. 394 at 7. But as explained in Asetek's summary judgment motion, ***the***

12   ***rigid vs. compliant material is an important defining characteristic that limits the scope of the term***

13   ***"plate" in the context of CoolIT patents***. *Id*. at 11-13. Specifically, CoolIT's 2011 Provisional

14   explicitly contrasted the rigid plate 240 disclosed in the 2007 Provisional with the compliant manifold

15   body (i.e., compliant insert 334) first disclosed in the 2011 Provisional, and touted the benefits of

16   compliant over rigid materials. *Id.* at 11-12. In CoolIT's '266 patent, which claims priority to the 2011

17   Provisional, CoolIT again distinguished the earlier-disclosed rigid plate 240 from the new compliant

18   insert 334. *Id.* at 12-13. Based on these disclosures in CoolIT's later publications, ***the PTAB found***

19   ***that plate 240, which is the only written description for the term "plate" anywhere in CoolIT's***

20   ***patents, is "made of a rigid, rather than compliant, material."*** Dkt. 394-5 at 25-26. Thus, CoolIT's

21   statement that the "intrinsic record does not specify a material requirement in any of the Asserted

22   CoolIT Patents" is incorrect. Dkt. 423 at 16. The specifications of the CoolIT patents, plus the

23   prosecution histories of the patents (*see* Dkt. 394 at 14-15), specify that plate 240 (i.e., the "plate") is

24   rigid. CoolIT cannot now argue that the rigid vs. compliant material characteristic is unimportant in

25   distinguishing the claimed "plate" from the later-disclosed compliant manifold body, or that "plate"

26   should be construed so broadly that it covers both rigid and compliant plates.

27   Nevertheless, CoolIT attempts to rely on extrinsic evidence alone to argue that the material of

28   the "plate" need not be considered. Dkt. 423 at 16-18. Specifically, CoolIT relies on its expert's

declaration (submitted with CoolIT's opposition), multiple textbooks and dictionary definitions, and the plain meaning definition of "plate" in other unrelated court decisions to argue that the "plate's material was not a critical feature" of CoolIT's invention, that "the intrinsic record does not specify a material requirement," and that "plate" should be defined only by its structure. *Id.* at 16-18. However, CoolIT's same expert argued in the IPR that the patent disclosure teaches a "few material choices" and that a skilled would likely choose a non-rigid (compliant) material for plate 240, which contradicts his present position that there is no material requirement for "plate." Ex. E at 52:2-54:19. CoolIT further identifies "scientific articles, patents, and publications" to argue that "non-rigid plates" were known in the art prior to CoolIT's alleged invention date of August 2007. Dkt. 423 at 17-18. But whether "non-rigid plates" were known before August 2007 does not address whether the inventor possessed a "plate" made from a compliant (non-rigid) material by the time of the invention, and thus whether there is written description support for "plate" made of compliant (non-rigid) material. And the PTAB unequivocally found based on the intrinsic record that there was no such written description. *See* Dkt. 394-5 at 23, 26, 30. And accordingly, "plate" cannot be broadly construed to encompass compliant materials as urged by CoolIT.

Importantly, CoolIT's elevation of extrinsic evidence over the intrinsic record of the patents is contrary to fundamental principles of claim construction. As the Federal Circuit explained in *Phillips v. AWH Corp.*, "extrinsic evidence in general [is] less reliable than the patent and its prosecution history in determining how to read claim terms," and that "a court should discount any expert testimony that is clearly at odds with the claim construction mandated by the claims themselves, the written description, and the prosecution history, in other words, with the written record of the patent." 415 F.3d 1303, 1318 (Fed. Cir. 2005) (citation and quotation marks omitted). As the Federal Circuit additionally explained in the seminal *Vitronics Corp. v. Conceptronic, Inc.* case, "[i]n most situations, an analysis of the intrinsic evidence alone will resolve any ambiguity in a disputed claim term. In such circumstances, it is ***improper to rely on extrinsic evidence***. In those cases where the public record unambiguously describes the scope of the patented invention, reliance on any extrinsic evidence is improper." 90 F.3d 1576, 1583 (Fed. Cir. 1996) (citations omitted and emphasis added). That is the case here, where the intrinsic record unambiguously establishes the importance of the rigid vs.

1    compliant material characteristic of the claimed "plate." Therefore, the Court should not rely on

2    CoolIT's litigation-driven extrinsic evidence, which contradicts the intrinsic evidence, to find that the

3    "plate" should not be defined by its material.

4              **2.    The intrinsic record and the PTAB's final decision support Asetek's**
                        **proposed construction of "plate" as requiring rigid materials**

5

6              CoolIT blatantly mischaracterizes the PTAB's final decision in the IPR against its '266 patent

7    to argue that the decision is not relevant to the claim construction of "plate." Dkt. 423 at 19-20.

8    CoolIT's argument that the PTAB did not construe the term "plate," and based it priority determination

9    on the phrase "manifold body defin[ing] a pair of compliant surfaces,"[2] ignores that in order to show

10   benefit of priority to the alleged 2007 date invention—which required CoolIT to show written

11   description support for a manifold body made of compliant materials in the 2007 Provisional —CoolIT

12   argued to the Board that "the inventor possessed a plate 240 made from a compliant material by August

13   9, 2007" and that the disclosure in the 2007 Provisional was "consistent with plate 240 being made

14   from a compliant material." Dkt. 394-11 at 21-28. But the PTAB rejected each of these arguments, in

15   which CoolIT attempted but failed to show that plate 240 was made of a compliant material. Dkt. 394-

16   5 at 24-29. The PTAB instead agreed with Asetek that there was no written description support for a

17   plate made of compliant material in the 2007 Provisional. *Id.* at 23, 30; *see also* Dkt. 394 at 2-3

18   (identifying the PTAB's specific findings). Indeed, the PTAB specifically found that the 2007

19   Provisional provided written description support only for a plate made of rigid material. Dkt. 394-5 at

20   24-29. But now in this case, in which CoolIT is asserting patents that claim priority to the 2007

21   Provisional (which discloses only a rigid plate), CoolIT is improperly attempting to construe the

22   claimed "plate" more broadly, and beyond the written description, to include plates made of compliant

23   materials. In so doing, CoolIT is trying to improperly capture compliant material subject matter,

24   disclosed for the first time in 2011, into the scope of its earlier-filed patent claims, which is

25   impermissible. *See PowerOasis. Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1309-11 (Fed. Cir. 2008).

26

27   _____
     [2] A "manifold body defin[ing] a pair of compliant surfaces" is the same as a manifold body made of

28   a compliant material. Bhattacharyya Decl., ¶9. Even CoolIT does not argue otherwise (nor can it).
     *See* Dkt. 394-11 at 21 (CoolIT arguing that the priority challenge reduces to whether "the inventor
     had possession of a manifold body made from a 'compliant' material.").

CoolIT's argument that plate 240 is only one embodiment in the '266 specification, and claim construction should not be limited to that, misses the mark because there is no written disclosure of a "plate" made of compliant material and the intrinsic record makes a clear distinction between rigid and compliant materials, as the PTAB found, thus imposing a limit on the scope of the claimed "plate." *See* Dkt. 394 at Section II, A. Indeed, it is well established that the scope of the claim cannot exceed the inventor's disclosure in the specification. *See id.* at 9-11 (discussing cases finding that the claim scope cannot exceed the written disclosure). ***In order for CoolIT to get a broad interpretation of "plate" that includes compliant materials, CoolIT must show written description support for "plate" made of compliant material. But CoolIT cannot do that (and has not even attempted to do that in its opposition).*** CoolIT tried unsuccessfully to show written description support for "plate" made of compliant material during the IPR by pointing to its only embodiment—plate 240. But the PTAB disagreed and expressly found that there is no written description support for plate 240 being made of a compliant material. *See* Dkt. 394 at Section II, A. That should be the end of the written description inquiry. CoolIT's arguments that the terms "plate" and "manifold body" are not interchangeable,[3] and CoolIT's legally erroneous argument that written description inquiry for priority determination is different from regular written description analysis,[4] are incorrect and beside the point.

The prosecution history of CoolIT's patent further supports limiting the scope of "plate" to rigid materials. Dkt. 394 at 14-15. CoolIT's attempted spin on the statements in the prosecution histories is incorrect and mischaracterizes the prosecution histories. By distinguishing Nelson's stiff and rigid plate 36 from the claimed compliant manifold, CoolIT clearly and unmistakably made the material of the plate/manifold body an important defining characteristic. CoolIT's express differentiation of rigid vs. compliant plate during prosecution contradicts its present (incorrect)

---

[3] CoolIT's argument that "plate" and "manifold body" are not interchangeable contradicts it prior attempt at the PTAB to rely on plate 240 to show support for "manifold body" made of compliant material. Dkt. 394-11 at 21-28; *see also* Dkt. 394-5 at 23, 24 (the PTAB equating "manifold body" to "plate").

[4] To claim the benefit of an earlier priority date, the earlier disclosure must meet the written description requirement under Section 112, ¶1. *Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1326 (Fed. Cir. 2008) ("[A] claim in a later application receives the benefit of the filing date of an earlier application so long as the disclosure in the earlier application meets the requirements of 35 U.S.C. § 112, ¶ 1, including the written description requirement, with respect to that claim."); *New Railhead Mfg., LLC v. Vermeer Mfg. Co.*, 298 F.3d 1290, 1294 (Fed. Cir. 2002) (same for a non-provisional application to be afforded the priority date of a provisional application).

1   position that "plate" should be construed broadly to include both rigid and compliant materials.

2          **3.    CoolIT has not shown written description support for "plate" made of compliant material to support its plain meaning interpretation, nor can it. In any event, CoolIT is collaterally estopped from litigating the written description issue in the district court**

3

4

5          As discussed above, CoolIT must show written description support for "plate" made of

6   compliant material to get a broad plain meaning interpretation of "plate" that includes plates made of

7   compliant material. CoolIT has not (and cannot) show that. CoolIT asserts that its expert has not had

8   an opportunity to address written description for "plate" made of compliant material (even though

9   Asetek addressed its claim construction of "plate," the written description issue, and related non-

10  infringement position in Dr. Tuckerman's Non-Infringement Report served on December 8, 2021).

11  Dkt. 423 at 23. The truth is that CoolIT (and its expert) had a full and fair opportunity to show written

12  description for "plate" made of compliant material at the PTAB. It tried and failed. CoolIT should not

13  be allowed to continue to litigate this same written description issue in this Court. Furthermore, CoolIT

14  and its expert have had more than four months to consider Dr. Tuckerman's expert opinion on this

15  subject, and CoolIT's expert submitted an expert declaration along with its opposition in an attempt

16  to thwart Asetek's motion for summary judgment, but the expert said nothing to attempt to show

17  written description because it is simply not there, as established previously in the PTAB proceeding.

18         Contrary to CoolIT's assertion, the identical issue of written description for "plate" made of

19  compliant material was before the PTAB because there is no distinction between the terms "plate" and

20  "manifold body" in the context of CoolIT's patents. *See* fn. 3, *supra.* Specifically, at the PTAB,

21  CoolIT's only argument for patentability was that the challenged claims 1, 2, 5, and 9 of the '266

22  patent are entitled to the 2007 priority date because the 2007 Provisional allegedly shows that "the

23  inventor had possession of a manifold body made of compliant material, ***namely plate 240***." Dkt. 394-

24  5 at 22-23. The PTAB rejected that argument and found there was no written description support for

25  plate made of compliant material. *Id.* at 23-24.

26         CoolIT's attempts to distinguish *Zoho Corp. v. Sentius Int'l, LLC*, 494 F. Supp. 3d 693 (N.D.

27  Cal. 2020) and *Atlantic Research Marketing Systems, Inc. v. Troy*, 659 F.3d 1345 (Fed. Cir. 2011) are

28  misplaced. Dkt. 423 at 24. Both of those cases stand for the proposition that there must be written

1  description support for the ***full scope*** of the claim. The fact that CoolIT can show support for "plate"

2  made of rigid material (i.e., plate 240) is beside the point. CoolIT has not (and cannot) show written

3  description support for plate made of compliant material, without which "plate" should not be

4  construed broadly to include plates made of compliant material.

**II.    UNDER THE PROPER CONSTRUCTION OF "PLATE" AS A MANIFOLD BODY MADE OF RIGID MATERIAL, THE COURT SHOULD GRANT SUMMARY JUDGMENT OF NON-INFRINGEMENT FOR ASETEK'S GEN 5, 6, AND 7 PRODUCTS BECAUSE THERE IS NO GENUINE DISPUTE THAT THE ALLEGED "PLATE" IN THESE PRODUCTS IS MADE OF A COMPLIANT MATERIAL**

8  CoolIT argues that there is a dispute between the parties whether the EPDM manifolds in

9  Asetek's Gen 5, 6, and 7 products "fall[] within the plain meaning of the term 'plate' in the context of

10  the claims," and that the parties should "introduce evidence at trial to illustrate the plain meaning" and

11  have the jury decide infringement. Dkt 423 at 15. But that is not the correct issue. Asetek's position is

12  that "plate" should be construed by the Court as a manifold body made of rigid (non-compliant)

13  material, and that under that proper construction, the Court should grant summary judgment that

14  Asetek's Gen 5, 6, and 7 products are non-infringing because there is no dispute of material fact that

15  the EPDM manifolds (i.e., the alleged "plate") in Asetek's Gen 5, 6, and 7 products are compliant

16  (non-rigid) and thus fall outside the scope of "plate" as properly construed. Whether CoolIT expert

17  considers the EPDM manifolds as "plate" under its plain and ordinary meaning is not relevant to

18  Asetek's summary judgment motion.

**III.   ASETEK'S ALTERNATIVE WRITTEN DESCRIPTION ARGUMENT IS NOT UNTIMELY BECAUSE IT IS PREDICATED ON THE COURT GIVING "PLATE" A BROAD PLAIN MEANING INTERPRETATION**

21  CoolIT cannot legitimately claim any unfair surprise or "harm" from Asetek's written

22  description-based invalidity argument because the exact same matter—written description for plate

23  made of compliant material—was litigated between the parties in the PTAB. Moreover, Asetek's

24  invalidity theory is directly driven by claim construction of "plate," which the Court has not decided

25  yet. Moreover, this invalidity issue arose alongside the issue of claim construction of "plate" following

26  the PTAB's IPR decision, so Asetek could not have raised it before. In a similar situation, Judge Orrick

27  explained that he is "'extremely reluctant' to dispose of substantive invalidity attacks based on

28  procedural defects." *Huawei,* 340 F. Supp. 3d at 998 (citation omitted). The same should apply here.

**IV.     DEFENDANTS HAVE FAILED TO IDENTIFY EVIDENCE THAT CLEARLY AND CONVINCINGLY SHOWS THAT A PERSON SKILLED IN THE ART WOULD HAVE BEEN MOTIVATED TO COMBINE THE PRIOR ART REFERENCES IN OBVIOUSNESS GROUNDS 4-9 AND WOULD HAVE REASONABLY EXPECTED SUCCESS IN DOING SO**

"In order to survive summary judgment, [Defendants] must provide evidence that, viewed through the lens of summary judgment, clearly and convincingly shows 'that a person of ordinary skill in the art would have been motivated to combine the prior art in the way claimed by the '362 patent claims at issue and had a reasonable expectation of success in doing so.'" *Asia Vital Components Co. v. Asetek Danmark A/S*, 377 F. Supp. 3d 990, 1011 (N. D. Cal. 2019) (citing *Pers. Web Techs., LLC v. Apple, Inc.*, 848 F.3d 987, 991 (Fed. Cir. 2017)). Here, Defendants have failed to identify evidence that clearly and convincingly shows that a skilled artisan would have been motivated to combine the prior art and would have had a reasonable expectation of success in doing so.

In its summary judgment motion, Asetek pointed out that Dr. Abraham's obviousness opinions for Grounds 4-9 failed to explain ***how*** or ***why*** the prior art references would have been combined to arrive at the '362 patent claims. Dkt. 394 at 22-25. In response, Defendants do not identify any evidence in the record that explains how the references would have been combined, or why a skilled artisan would pick out the references in Grounds 4-9 and combine them in the manner claimed. *InTouch Techs., Inc. v. VGO Commc'ns, Inc.,* 751 F.3d 1327, 1353-54 (Fed. Cir. 2014) (requiring "meaningful explanation for why one of ordinary skill in the art would be motivated to combine [the particular] references at the time of this invention."); *Innogenetics, N.V. v. Abbott Labs.,* 512 F.3d 1363, 1373 (Fed. Cir. 2008) (requiring "motivation to combine particular references to reach the particular claimed method"); *ActiveVideo Networks, Inc. v. Verizon Commc'ns., Inc.*, 694 F.3d 1312, 1327 (Fed. Cir. 2012) (requiring explanation of "how specific references could be combined . . . or how any specific combination would operate or read on the asserted claims"). Instead, Defendants simply point to ¶¶695, 697, 701-706 in Dr. Abraham's Invalidity Report (Dkt. 396) that copy-paste paragraphs from Shin, Ryu, Wu, Yu, and Batchelder to show that each reference is "attempting to solve similar issues and each disclose or teach known techniques that can be used for one another." *See* Dkt. 396 at ¶¶695, 697, 701-706. Contrary to Defendants' assertion, however, these paragraphs in the Report do not explain why a skilled artisan would have picked Shin, Ryu, Wu, Yu, and Batchelder

(as opposed to other references) to combine in the manner claimed, nor do they explain how a skilled artisan would have combined them and how the proposed combination would have worked.

Specifically, Dr. Abraham's conclusory assertion in these paragraphs that the asserted prior art references are "attempting to solve similar issues" is not legally sufficient to establish a motivation to combine. *Securus Techs., Inc. v. Glob. Tel\*Link Corp.*, 701 F. Appx. 971, 977 (Fed. Cir. 2017) (finding the "broad characterization" of the references as falling within the same alleged field, without an explanation of "how or why" they would be combined, was insufficient to support obviousness); *Microsoft Corp. v. Enfish, LLC*, 662 F. App'x 981, 990 (Fed. Cir. 2016) (affirming finding of no motivation to combine where appellant "gave no reason for the motivation of a person of ordinary skill to combine [the two references] except that the references were directed to the same art or same techniques"); *DSS Tech. Mgmt., Inc. v. Apple Inc.*, 885 F.3d 1367, 1374-77 (Fed. Cir. 2018) (mere "similarities" between prior art references not sufficient for motivation to combine). Nor is Dr. Abraham's assertion that the references "teach known techniques that ***can*** be used for one another" (emphasis added) legally sufficient because it is a "conclusory reference[] to [his] belief that one of ordinary skill in the art *could* combine these references, not that they *would* have been motivated to do so." *InTouch Techs.*, 751 F.3d at 1352 (emphases in original); *ActiveVideo*, 694 F.3d at 1327.

At bottom, Dr. Abraham's conclusory, *ipse dixit* opinion that a skilled artisan would have been motivated to combine the references, without explanation of how or why they would have been combined, does not raise genuine issues of material fact. *TQ Delta, LLC v. Cisco Sys., Inc.*, 942 F.3d 1352, 1359, 1362-63 (Fed. Cir. 2019).

But even if the Court were to find a motivation to combine the references in Grounds 4-9 (it should not for the reasons explained above and in Asetek's opening brief), the obviousness allegations in Grounds 4-9 still fail as a matter of law because Defendants failed to identify legally sufficient evidence that a person skilled in the art would have had a reasonable expectation of success in combining the asserted references. *Novartis Pharms. Corp. v. West-Ward Pharms. Int'l Ltd.*, 923 F.3d 1051, 1062-63 (Fed. Cir. 2019) (separating the motivation to combine and reasonable of success inquiries, and affirming finding of no obviousness because the defendant failed to prove reasonable expectation of success by clear and convincing evidence); *MediaTek, Inc. v. Freescale Semiconductor,*

14

1    *Inc.*, No. 11–CV–5341 YGR, 2014 WL 2854705, at *2 (N.D. Cal. June 20, 2014) (requiring a separate

2    showing of reasonable expectation of success) (citation omitted); *see also* Dkt. 394 at 25 (citing cases).

3         Defendants simply point to ¶¶ 712-714 of Dr. Abraham's Invalidity Report (Dkt. 396) to argue

4    that he identified reasonable expectation of success for Grounds 4-9. Dkt. 423 at 24. But ¶¶ 712-714

5    simply make conclusory statements that each reference individually is enabled, and that "a POSA []

6    would have been able to put them together in a known way with predictable results and a reasonable

7    expectation of success." Dkt. 396, ¶713. Such a conclusory, single-sentence assertion is not legally

8    sufficient to clearly and convincingly shows that there would have been a reasonable expectation of

9    success in combining the references in Grounds 4-9. *In re Magnum Oil Tools Int'l, Ltd.*, 829 F.3d

10   1364, 1380 (Fed. Cir. 2016) (finding conclusory statements insufficient to prove obviousness); *Asia*

11   *Vital Components*, 377 F. Supp. 3d at 1011, 1013-14 (finding AVC's expert's opinion insufficient

12   because he did not explain "how combining the prior art references would have resulted in a workable

13   and smaller device, let alone in the specific invention of the '362 patent."); *Broadcom Corp. v. Emulex*

14   *Corp.*, 732 F.3d 1325, 1335 (Fed. Cir. 2013) (finding that even if there "might have [been] some

15   motivation . . . the record does not show any reasonable expectation [of success]," and requiring "a

16   plausible rational[e] as to why the prior art references would have worked together.") (citation and

17   quotation omitted). Thus, contrary to Defendants' argument, there is no factual issue for the jury to

18   decide regarding reasonable expectation of success for Grounds 4-9. *MediaTek*, 2014 WL 2854705,

19   at *7-8 (finding Freescale's expert opinion "entirely too conclusory to create a genuine factual

20   dispute," and that "[s]imply arguing against MediaTek's facts in a summary manner, without evidence

21   to establish a dispute, does not suffice" to avoid summary judgment of no obviousness).

22        Given that fact and expert discovery have closed, and Defendants failed to present legally

23   sufficient evidence on motivation to combine and reasonable expectation of success for Grounds 4-9,

24   summary judgment of no invalidity of claims 17 and 19 of the '362 patent under Grounds 4-9 is

25   appropriate. *Asia Vital Components*, 377 F. Supp. 3d at 1014.

26

27

28

1    Dated: April 21, 2022                FINNEGAN, HENDERSON, FARABOW,
                                              GARRETT & DUNNER, LLP
2

3                                       By:   /s/ Arpita Bhattacharyya
                                              Arpita Bhattacharyya
4                                             Attorneys for Plaintiff and Counterdefendant
                                              ASETEK DANMARK A/S and
5                                             Counterdefendant ASETEK USA, INC.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

16